IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 4:CR-96-00239 |
| | : | Civil No. 4:CV-01-00510 |
| v. | : | (Muir, J.) |
| | : | |
| DAVID PAUL HAMMER | : | **ELECTRONICALLY FILED** |

**UNITED STATES' RESPONSE TO PETITIONER'S
MOTION TO DIRECT THE UNITED STATES MARSHALS TO
TRANSPORT HAMMER TO THE HOSPITAL OF THE UNIVERSITY
OF PENNSYLVANIA, NEUROPSYCHIATRY CENTER
ON NOVEMBER 17, 2004, FOR PURPOSES OF CONDUCTING
A MAGNETIC RESONANCE IMAGING (MRI), A POSITRON EMISSION
TOMOGRAPHY (PET) SCAN, AND ASSOCIATED TESTING; FOR AN EXTENSION
OF TIME FOR PROVIDING ANY SUPPLEMENTAL REPORT GENERATED
AS A RESULT OF THE TESTING CONDUCTED; AND, FOR AN ORDER
<u>DIRECTING EXPEDITING BRIEFING/ANSWER BY THE GOVERNMENT</u>**

<u>Procedural History</u>.

For purposes of this issue, relevant procedural history begins with an order of this Court dated September 9, 2004.  This Court indicated that all requests for discovery should be filed by October 15, 2004.  Another aspect of this same entry required that by October 29, 2004, the defense provide any expert opinion reports to the prosecution.

Defense counsel filed on October 26, 2004, a request for a detailed neurological examination of defendant at the University of Pennsylvania Hospital in Philadelphia on a date certain.  Also requested was expedited briefing on that subject as well as an extension of time in this Court's order for production of expert reports.  In an order dated October 26, 2004, this Court required that any response to this proposed course of action be filed by

November 5, 2004.  Herewith presented are observations and objections to the defense requests.

Counter-Statement of Facts.

Pertinent information in determining whether the defense request should be granted centers in four particular areas.  This includes Hammer's background, how neurological exams are conducted in this area for sentenced federal prisoners, past and present diagnoses of Hammer by defense experts, and matters which are known and unknown in the defense request.

**Hammer's Background.**  As this Court may recall from trial testimony, David Paul Hammer committed his first serious criminal offense at a hospital in Oklahoma.  This involved a hostage-taking situation in 1978.

Hammer escaped twice from Oklahoma State Custody.  On both occasions, Hammer committed criminal acts when he returned to the community involving, in one episode, the theft of a car and, in another, an attempted murder of a person with a .22 caliber pistol which he found in that person's truck.

David Paul Hammer admitted his guilt having strangled Andrew Marti.  This Court's sentence of death is distinct from the approximately 1200 year sentence which Oklahoma authorities previously imposed in his case.

**Neurological Examinations In This and the Eastern District of Pennsylvania.**  The health services administrator at the Allenwood Penitentiary provided background regarding how MRIs or

PET scans are conducted in this area for sentenced federal prisoners who are thought to have medical ailments in need of diagnosis.  One alternative used by medical personnel at the Lewisburg as well as Allenwood penitentiaries is to have a mobile MRI drive onto the prison grounds where such tests are conducted. Dr. Gur, without providing much in the way of detailed explanation, claims that any MRI examination within a prison would be inadequate.  (Motion of Defendant, ¶ 5.)  Moreover, pursuant to Bureau of Prisons' escorted trips, MRIs of prisoners can be done at one non-hospital location near Lewisburg, the Evangelical Community Hospital in Lewisburg, and also at the Geisinger Medical Center, Danville, Pennsylvania.  PET scans, as requested by defense counsel, can be conducted only at the Evangelical Community Hospital or Geisinger Medical Center.

Contact was made with Donald Heemer, formerly employed with the Marshal in the Eastern District of Pennsylvania for many years and presently Chief Deputy for this District, as well as United States Marshals' Service representatives who are familiar with medical needs for unsentenced federal inmates in the Eastern District.  The United States Marshal's Service is not thought to have taken any federal prisoner within at least the last seven years to the University of Pennsylvania Hospital for neurological examinations, as requested in this case.

**Diagnoses Past and Present.**  This Court may recall that at trial, relying upon the testimony of Dr. Robert Sadoff, the

defense raised was that at the time of Marti's strangling, Hammer suffered from Disassociative Identity Disorder (hereinafter "DID.")

The defense in 1998 also presented evidence, albeit during the penalty phase, that Hammer suffered frm an Organic Brain Disorder.  This conclusion was based upon testing which Dr. Gelbort performed.

In compliance with this Court's order on expert reports, defense counsel, on October 29, 2004, provided seven expert reports to the prosecution, five of which related to Hammer's mental health.  In summary, they are as follows.

A different psychiatrist, Dr. Richard Kluft, according to his report, believes that Hammer suffered from DID at the time of the killing.  Still another physician, Dr. Blumberg, believes that Hammer suffers from distinct disorders under the Diagnostic and Statistical Manual, 4th Edition Revised, Post-traumatic Stress Disorder and Bipolar Disorder.

Dr. Gelbort, in a supplemental report, adheres to this 1998 diagnosis of Organic Brain Disorder.  This is the same conclusion reached by Dr. Gur, who seeks to conduct additional testing to further elaborate on this joint conclusion.

Finally, the defense provided a 1997 report by Dr. Stewart Grassian.  This did not reach a particular diagnosis but purportedly describes Hammer's mental state in April 1996 after

4

being held in prolonged confinement in "very stringent conditions."

**The Defense Proposal.**  While the defense requests is specific as to date and location (Motion of Defendant, ¶¶ 5 & 10), there are many unknowns inherent in it as noted by the United States Marshals' Service.  It is not apparent why the University of Pennsylvania hospital was selected for this examination other than Dr. Gur's noted familiarity and attachment to that facility.  However, it is worth noting that Dr. Gur has conducted examinations at other facilities.  *(See* Motion of Defendant, p. 4, fn. 1.)

It is unknown when Dr. Gur first was contacted by the defense in this case.  It is submitted that this information is needed for this Court to determine whether an extension of time for filing a report is appropriate.

At least to the United States Marshals' Service it is unknown what are "the protocols and requirements for these testing procedures" and why "this testing can [not] occur at Lewisburg Penitentiary or any other federal institution." (Motion of Defendant, ¶ 5.)  If nothing else, the United States Marshals' Service needs to know, to provide appropriate security, the anticipated duration of these tests.  Moreover, the defense seeks in addition to an MRI and PET scan, "associated neuropsychological testing."  This latest form of examination also is completely unknown and, consequently, what, if any,

security risks are thereby posed also is unknown.  (But see Motion of Defendant, ¶ 7.)

<u>Issue</u>.

Whether this Court, in its discretion, should effectively extend the time limit for discovery in this case by allowing neurological examinations to be conducted at a particular location in another jurisdiction, especially since there are grave concerns regarding the security threat posed by David Paul Hammer's release into the community, no safer alternatives apparently have been considered, and the proposed examinations may confirm only a conclusion reached by another defense expert who testified at trial.

<u>Argument</u>.

Defense counsel provides little in the way of applicable decisional law to support this request for relief.  (Brief of Defendant, pp. 4-6.)  No one disputes the general proposition in capital cases for the need by counsel to pursue potential issues.

But this is a pending § 2255 petition.  This Court would have the authority in accordance with Rule 6(a) of the Rules Governing § 2255 Proceedings to allow for issues to be explored. Traditionally, and by way of analogy, examinations such as those sought by defense counsel in this case are governed by Federal Rule of Civil Procedure 35.  But this Court set October 15, 2004, as the cutoff date for pursuing discovery.  In the absence of an explanation from the defense why this matter could not be raised

earlier, it would be within this Court's discretion not to allow the examination to take place now. *Cf. Deputy v. Taylor*, 19 F.3d 1485, 1493 (3rd Cir.), *cert. denied*, 512 U.S. 1230 (1994).

The prosecution assumes for sake of argument that "good cause" has been shown in Dr. Gur's affidavit attached to the defense pleadings. But even if it is necessary to conduct neurological examinations at this time, multiple questions are begged as to why this must be done at a particular location.[1]

As previously noted, Dr. Gur has conducted the examination which he proposes to pursue with David Paul Hammer at locations <u>other</u> than the University of Pennsylvania. (Motion of Defendant, p. 4 fn. 1.) Certain matters cannot be disputed. David Paul Hammer, while perhaps not as lethal as Michael O'Driscoll, remains a particularly dangerous offender who, in the opinion of the United States Marshal, would pose an escape risk as well as a danger to the community if transported for neurological examinations. *Cf. United States v. O'Driscoll*, 250 F. Supp. 2d 443, 452 (M.D. Pa. 2002). There are closer locations within a ten or twenty minute automobile drive from the Lewisburg

---

[1]  The United States Marshal's Service believes it is wholly imprudent, even if this Court orders relief specifically requested by defense counsel, to have these examinations done on November 17, 2004. The defense request was not made under seal and, for that reason, is known by the public and presumably known as well by David Paul Hammer. In the event the time is to be set by this Court's order, such matter should be under seal and the date selected at the mutual convenience of the United States Marshal's Service, to arrange for necessary manpower, as well as for Dr. Gur's availability.

Penitentiary where these tests could be conducted as contrasted with the at least three hour proposed automobile trip to Philadelphia.  The locations within the Middle District of Pennsylvania at which MRIs or PET scans may be conducted for sentenced prisoners are better known to law enforcement officials here as inmates, from time-to-time, are escorted to these locations for MRIs or other required medical evaluations. Indeed, this Court may remember that Michael Leggett was sent to the Geisinger Medical Center for a neurological examination.  *See generally, United States v. Leggett*, 162 F.3d 237 (3rd Cir. 1998), *cert. denied*, 528 U.S. 868 (1999).  By contrast, the United States Marshal's Service is wholly unfamiliar with the University of Pennsylvania Hospital as it relates to neurological examinations.  Generally speaking, even apart from the distance, in the view of the Marshals' Service there are increased security concerns in taking Hammer to an urban area than there would be at the proposed alternative sites within the Middle District of Pennsylvania.

Finally, the overall value of such proposed examinations is unknown.  To be sure, the proposed MRI, PET scan, and other tests would relate to issues raised in the Second Amended Motion to Vacate.  (Brief of Defendant, p. 2.)  But Dr. Gur already has reached the diagnosis of Organic Brain Disorder.  Moreover, Dr. Gelbort made this same diagnosis at trial and presented testimony to that effect in 1998.  It would appear that these test results,

8

even assuming that they are positive, would be cumulative to opinions and evidence already possessed by the defense.

Giving the above-stated, well-founded, and undisputed, reasons advanced by the United States Marshal's Service in opposition to transporting Hammer, as requested by the defense, as well as the expert evidence already secured by Hammer's attorneys, it is submitted that this Court should not grant relief unless compelling and hitherto unknown reasons are advanced by his counsel which would justify the substantial security measures which necessarily would be taken in terms of manpower, distance, and length of time out of confinement.

Conclusion.

The United States Marshal's Service believes that the defense proposal, as stated, poses an apparently unnecessary but extremely dangerous threat to the security of the community.  If necessary, testimony will be provided at a hearing conducted by this Court regarding the Marshals concerns.  Under the circumstances, it is respectfully suggested that this Court need

not at this late hour and for those reasons grant defendant's request for a neuropsychological evaluation at the University of Pennsylvania Hospital on November 17, 2004.

Respectfully submitted,

THOMAS A. MARINO
United States Attorney

By___s/Frederick E. Martin_____
FREDERICK E. MARTIN
Assistant United States Attorney
PA 57455
Herman T. Schneebeli Federal Bldg.
240 West Fourth Street, Suite 316
Williamsport, PA 17701-6465
Tele:  (570) 326-1935
FAX:  (570) 326-7916
Electronic Mail:
Fred.Martin@usdoj.gov

Dated: November_5__, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA       : Crim. No. 4:CR-96-00239
                               :
           v.                  : (Muir, J.)
                               :
DAVID PAUL HAMMER              :  **ELECTRONICALLY FILED**


### CERTIFICATE OF SERVICE

　　　I hereby certify that I caused a true and correct copy of the foregoing

**UNITED STATES' RESPONSE TO PETITIONER'S
MOTION TO DIRECT THE UNITED STATES MARSHALS TO
TRANSPORT HAMMER TO THE HOSPITAL OF THE UNIVERSITY
OF PENNSYLVANIA, NEUROPSYCHIATRY CENTER
ON NOVEMBER 17, 2004, FOR PURPOSES OF CONDUCTING
A MAGNETIC RESONANCE IMAGING (MRI), A POSITRON EMISSION
TOMOGRAPHY (PET) SCAN, AND ASSOCIATED TESTING; FOR AN EXTENSION
OF TIME FOR PROVIDING ANY SUPPLEMENTAL REPORT GENERATED
AS A RESULT OF THE TESTING CONDUCTED; AND, FOR AN ORDER
DIRECTING EXPEDITING BRIEFING/ANSWER BY THE GOVERNMENT**

to be electronically mailed on November 5 , 2004 to:

ADDRESSEE:
　　　　　Anne L. Saunders, Esquire
　　　　　Anne_Saunders@fd.org


　　　　　　　　　　　　　　　 s/Frederick E. Martin
　　　　　　　　　　　　　　　FREDERICK E. MARTIN
　　　　　　　　　　　　　　　Assistant United States Attorney