# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

_____ _

UNITED STATES OF AMERICA,

      Respondent,

      v.

DAVID PAUL HAMMER,

      Petitioner.

_____

: 
: 
:     Criminal No. 4:CR–96-239
: 
:     Judge Muir
: 
: 
: 
: 
: 
: 
: 

## PETITIONER'S REPLY TO THE GOVERNMENT'S OPPOSITION TO PETITIONER'S SECOND POST-CONVICTION MOTION FOR DISCOVERY

Petitioner, DAVID PAUL HAMMER, through undersigned counsel, hereby replies to the Government's *Brief in Opposition* (hereafter, *BIO*) to Petitioner's *Second Post-Conviction Motion For Discovery* and in support thereof, states the following.

### Procedural History Relevant To This Motion

On September 22, 2004, undersigned counsel sent a letter to Assistant United States Attorney Martin requesting supplemental discovery. On September 27, 2004 Mr. Martin responded by letter stating that the Government agreed to

provide some of the requested items but refusing to provide still other items requested by Petitioner.

On October 15, 2004, Mr. Hammer filed his *Second Post-Conviction Motion for Discovery*, with an accompanying *Memorandum of Law*. On October 29, 2004, the Government filed its *Brief in Opposition*. Based upon the Government's *BIO*, and subsequent exchanges between the parties, the number of disputed items requiring the Court's intervention have been reduced. This reply addresses only those items still in dispute.[1]

### ARGUMENT

**A.  Memoranda or other writings and correspondence between BOP Mental Health Providers and/or their Supervisors and the Office of the United States Attorney.**

In the discovery motion, Mr. Hammer requested all documents and correspondence between BOP mental health providers and/or their supervisors and the United States Attorney's office generated in regard to this prosecution and related forensic evaluations. *Motion* at ¶¶ 6-8; *Memorandum in Support* at pages

---

[1]In its *BIO*, the Government sets forth those items which it believes do not require the Court's intervention (*BIO*, at 3-5). Petitioner largely agrees with the Government's assessment in this regard, with the following addition. Since the filing of Petitioner's Second Post-Conviction Motion for Discovery, the Government has permitted inspection of the physical evidence that was gathered in this case. Based upon this inspection, counsel will shortly be filing a request for blood and DNA testing.

6-8.  He explained that these documents are relevant and material to the conflict of interests claims raised in the *Petition* and, thus viewed, may contain exculpatory and impeachment material requiring disclosure  under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).[2]

In its *BIO* the Government does not claim that there are no such documents. Instead, it asserts that these documents are protected by the attorney/client and/or work-product privilege.  Further, Government has refused to accede to Mr. Hammer's request that it provide a privilege-log to assist the Court in sorting through and ruling upon the privilege assertions.

> **1.    The Government has fallen far short of establishing the existence of an attorney-client privilege which would shield the requested documents from disclosure.**

Initially, the Government's assertion of attorney-client privilege in the context of this case is nothing short of startling.   Throughout his participation in these proceedings, Dr. Wolfson repeatedly held himself out to the Court, parties, witnesses, and collateral sources, as a non-partisan and neutral court expert.  He bristled at the notion that he was working for or on the behest of the prosecution.[3]

---

[2]It is clear that impeachment materials are disclosable under <u>Brady</u>, and its progeny.  <u>See e.g.</u> <u>Giglio v. United States</u>, 405 U.S. 150, 153-56 (1972).

[3]<u>See</u> *Affidavit of James K. Wolfson, M.D.*, attached as Exhibit 2 to the Government's Brief in Opposition to Motion to Modify Sentence (filed on

While Dr. Wolfson's position in this regard may have been in accord with the relevant statutes and BOP regulations and practices, Petitioner has viewed it with skepticism. Indeed, his ostensible status as a neutral "non-partisan" expert is central to one of Petitioner's conflict of interest claims: that a BOP employee has a conflict in evaluating the mental health of a prisoner charged with a murder that occurs in BOP custody. In any event, the assertion of the attorney-client privilege is plainly inconsistent with the Government's position that Dr. Wolfson was a neutral, detached, and non-partisan expert. Moreover, it is consistent with the concerns and related claims presented by Petitioner with regard to the conflicts of interest under which all of the BOP mental health employees performed their duties in this case.

The inconsistency in the Government's position provides another important reason to provide the requested documents. That the Government perceived the forensic evaluators in this case to be "clients" fuels Petitioner's concerns and his

---

February 4, 2003) at ¶ 9 ("Petitioner contends that my employment with the Federal Bureau of Prisons prevents me from being neutral, and thus unsuitable to conduct evaluations of competence pursuant to 18 USC 4241[]. This contention is so off-base that its presence must represent either deliberate disingenuity or a worryingly fundamental lack of sophistication about our role in such cases." Dr. Wolfson then cited authority holding out that such evaluators work for Court and not the United States Attorney. Id. All of this leaves open the question: where is the attorney-client relationship?

claims that these experts labored under an improper ethical conflict.[4]  That these

evaluators would be considered "clients" of the law office (i.e. the Office of the

United States Attorney) that prosecuted Mr. Hammer and now seeks his execution,

infects the legitimacy of the proceedings that occurred in this Court leading up to

the acceptance of Mr. Hammer's guilty plea, and his subsequent waiver of

appellate rights.

In light of the Government's view of the record to date – indicating that

none of the BOP mental health personnel were "clients" of the United States

Attorney, but were operating as independent and neutral court experts – it is

incumbent upon the Government to further explain this apparent inconsistency in

support of its assertion of the attorney-client privilege.[5]  It is essential that the

_____

[4]Such ethical conflicts will be a prominent portion of the presentation that Petitioner intends to make at the evidentiary hearing.  For instance, in compliance with this Court's directive, counsel recently provided to the Government the report of Dr. Donald Bersoff, a national expert in the field of mental health ethics and the law, who Petitioner will call at the hearing.  His report illustrates the presence in this prosecution of no fewer than three major areas of ethical conflict.

[5]In their only attempt at demonstrating that the BOP and its personnel were clients of the United States Attorney, the Government relies on its representation of BOP interests in the litigation of a pre-trial motion filed by trial counsel regarding the conditions of Mr. Hammer's confinement and access to his trial counsel.  This misses the mark by quite a bit.  There can be an attorney client relationship for one purpose but not another.  This representation obviously does not speak to whether there was a similar relationship with regard to the forensic evaluations conducted in this case.

Government make a far-more specific showing of what documents are implicated by Petitioner's request, and the precise nature of the privilege asserted.  After all, the party asserting a privilege bears the burden of establishing it.  In re Lindsey, 158 F.3d 1263, 1270 (D.C.Cir. 1998) 1270 ("the party claiming the privilege bears the burden of proving that the communications are protected . . . "[O]nly communications that seek 'legal advice' from 'a professional legal advisor in his capacity as such' are protected . . .[and then, only when] confidential communications made between clients and their attorneys . . .  are for the purpose of securing legal advice of services").  Thus, in order to invoke attorney/client privilege, the Government must demonstrate that the holder of the purported privilege (here the questioned BOP employees) "is or sought to become a client" of the United States Attorney's Office; that the United States Attorney was acting as the questioned BOP employees lawyer during the communications; and, that the communications were designed to obtain either an opinion on law, legal services, or assistance in some legal proceeding.  On the state of this record, the Government has a long road to travel – the Government has not asserted or proven any of these elements necessary to establishing the privilege.

Petitioner has proposed submission of a privilege log to assist in devining

the scope and propriety of the Government's assertions.[6]  Whether that tool is used, or some other mechanism is employed, as the record currently stands, the Government has not made a sufficient showing to sustain the privilege.[7]

Absent a further meritorious showing, Petitioner submits that the requested documents must be ordered disclosed.

**2.    There is no work-product privilege precluding disclosure of the evidence requested**.

The Government's contention that the materials requested are protected under a purported "work-product" privilege is likewise inadequate and incorrect.

---

[6]  The Government's failure to provide Petitioner and the Court with a "privilege log" on the grounds that they were not provided with enough time is specious.  Obviously, the two day turn-a-round in its response time did not allow the Government to generate such a log.  But that turn-a-round time did not prevent them from generating a log since then.

[7]For instance, the Government has failed to explain, as they are required to do when asserting the attorney-client privilege, how the privilege applies to the materials sought. Federal Rules of Civil Procedure Rule 26 B(5) requires the following:

**(5) Claims of Privilege or Protection of Trial Preparation Materials.** When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

The work-product doctrine was first elaborated by the Supreme Court in <u>Hickman v. Taylor</u>, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), in order to protect against unwarranted intrusion into the files and mental impressions of attorneys and to promote "the interests of clients and the cause of justice." <u>Id.</u> at 510-11, 67 S.Ct. at 393-94.  The work-product doctrine "provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." <u>Coastal States Gas Corp. v. Department of Energy</u>, 617 F.2d 854, 864 (D.C.Cir.1980).

Initially, on its face this privilege does not apply at all to any of the requested documents generated by BOP personnel.  Thus, this Court should summarily order that those documents be disclosed.

Moreover, even as to those documents generated by the United States Attorney, this privilege is far from absolute:

> We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases.  Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had.  Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts.  Or they might be useful for purposes of impeachment or corroboration.

<u>Hickman</u>, 329 U.S. at 511.  For these reasons, the Third Circuit has concluded:

8

> Of course, where the same document contains both fact and legal theories of the attorney, the adversary party is entitled to discovery of the facts. It would represent a retreat from the philosophy underlying the Federal Rules of Civil Procedure if a party could shield facts from disclosure by the expedient of combining them or interlacing them with core work product.

Bogosian v. Gulf Oil Corporation, 738 F.2d 587, 595 (3d Cir. 1984). Thus, Petitioner is entitled to any "facts" contained in the documents that do not implicate the Government's theories, mental impressions or thoughts of its lawyers.

As to theories and/or mental impressions that are contained in these documents, Petitioner submits that the privilege would have to yield in view of the allegations presented by Petitioner. When a claim of conflict of interest is made, it necessarily requires exposition into the mental impressions of those who are party to the alleged conflict. See Federal Rule of Civil Procedure 26(b)(3) (protecting from federal discovery the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning this litigation.") Court's construing the privilege have determined that even when attorney work product contains mental impressions or opinions, such matters are not protected by this privilege when those mental impressions and/or opinions are themselves in issue. Hartman v. Banks, 164 F.R.D. 167, 169-70 (E.D. Pa. 1995)

9

("an exception exists . . . work product can be discovered in cases in which the opinions of an attorney or his agent are themselves at issue."); Frazier v. SEPTA, 161 F.R.D. 309, 318 (E.D. Pa. 1995) ("We have recognized, however, an exception to the rule that pertains where counsel's mental impressions and opinions are directly at issue") (citations omitted); Marshall v. Nationwide Mutual Ins. Co., 1994 WL 263776, at *1 (E.D. Pa. 1994) ("The strategy, mental impressions and opinions of [defendant insurance company's] agents concerning the handling of the claim are directly at issue.  When mental impressions and opinions are directly at issue in a case, courts have permitted an exception to the strict protection of Rule 26(b)(3) and allowed discovery," of ostensible attorney work product) (citing Truck Ins. Exchange v. St. Paul Fire & Mariner Ins. Co., 66 F.R.D. 129 (E.D. Pa. 1975); Bird v. Penn Central Co., 61 F.R.D. 43 (E.D. Pa. 1973)).

Here, the United States Attorney's opinions and impressions regarding the work being done on this case by BOP personnel are part and parcel and are highly relevant to Petitioner's conflict claims.

Finally, even if these materials fall within the "work-product" privilege, and they do not, disclosure is nevertheless required because Mr. Hammer has demonstrated a "substantial need" for the documents and that the failure to

produce the documents would result in "undue hardship." Fed. R. Civ. P. 26(b)(3). The documents, memoranda and correspondence provide a critical form of proof of the conflict of interest claim raised in the *Petition* that cannot be obtained through other sources.

The material requested constitutes exculpatory material under <u>Brady</u> and its progeny. The Government is under a continuing duty to disclose such exculpatory material. <u>Imbler v. Pachtman</u>, 424 U.S. 409, 427 n.25 (1976). The materials requested support and demonstrate the basis for relief from Mr. Hammer's unconstitutional and invalid conviction and death sentence and contain the material impeachment evidence for government experts presented at the time of trial directly relevant to those experts' credibility and reliability. Thus, for this reason as well, any claim of purported work-product privilege does not preclude disclosure.

**B.  Petitioner's Request To Depose The Government's Mental Health Witnesses Is Consistent With The Federal Rules of Civil Procedure, Will Further Judicial Economy And Is Not Unduly Burdensome.**

The Government also opposes Petitioner's request to depose Drs. Wolfson, Karten and Mitchell, ostensibly on the grounds that it would be burdensome to travel out-of-state to conduct the depositions and that any such questioning could

take place during the course of the evidentiary hearing.

This, of course, does not provide justification for Petitioner's legitimate interest in deposing Drs. Wolfson, Karten and Mitchell well in advance of the evidentiary hearing.  Indeed, to allow the Government to evade the questioning of these witnesses, under oath, prior to the evidentiary hearing, will potentially delay the resolution of this case.  Clearly, the Government does not want to subject its witnesses to pointed questioning related directly to the nature of Petitioner's claims for relief that could throw into sharp focus the validity and factual bases for these claims.

Indeed, as a result of Petitioner's proposed depositions, further discovery may be warranted.  In the interest of judicial economy this routine discovery procedure should take place before the evidentiary hearing; not during the hearing itself.  E.g. Hickman, 329 U.S. at 507 ("The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise").

The Government's assertion that these depositions would be burdensome because of the need for out-of-state travel, is easily met.  Petitioner would be more than agreeable to conduct the depositions by video-conferencing technology, which would obviate the need for any of the witnesses or lawyers to travel.

12

It is in the interest of justice and judicial economy to allow Petitioner to utilize this routine discovery procedure in order to crystalize, in advance of the evidentiary hearing, the facts relevant to Petitioner's claims for relief.

**C.    Petitioner Is Entitled To All 302 Reports and BOP Witness Interviews**.

It is beyond dispute that Petitioner is entitled to all 302 interview reports and witness statements, as well as witness statements and interview reports and summaries taken by BOP investigators.  Hiding behind what it perceives to be Petitioner's "muddled" request for the entirety of the FBI file relevant to this case, the I-Drive and all 302 reports generated, the Government does not address the substance of Petitioner's request: disclosure of <u>all</u> previously undisclosed 302 witness statements, interview summaries and BOP witness reports, summaries or related documentation.

Mr. Hammer has alleged that the confession evidence and testimony was so unreliable that the reliance on that evidence resulted in a miscarriage of justice. Counsel has become aware that a number of inmates gave statements indicating versions contrary to the version relied upon by the government at the time of trial. <u>See</u> <u>United States v. Hammer</u>, Criminal No. 4:CR–96-239, *Government's Brief in Opposition to Motion to Modify Sentence or for Relief Under Section 2255*,

(Document 791) at 88-90 (acknowledging the existence of contradictory statements by at least one other inmate).  There are other inmates who were either in Allenwood at the time of the incident or were housed near Mr. Hammer at the time of the incident or subsequent to the incident that counsel believes also gave statements to either the FBI or a prison official or investigator that similarly contradicts the version presented by the government through the various statements and inmate testimony.  These include:  Bradley Hosselkus; Michael Cole (#03296-036); Matthew Darby (#29243-004); Bradley Brown (#03447-041); Gaylon Don Ball (17290-009); Royce Fowler (#17832-009); James Gibbs (#02586-025); James Havser; Tony Jones (#07201-045); Matthew McShea ((#40044-066); Lenard Kahle; James Lee; Del Carter (#01326-061).  As a result of their investigation, counsel has learned that some, if not all of these inmates either contacted investigative officials or gave statements to the FBI, or prison investigators.

In addition to supporting the claim raised in the *Petition* with respect to the unreliability of the confessions and the theory presented by the government, these statements, correspondence and documents constitute Brady material that should have been disclosed at trial and the government remains subject to a continuing duty to disclose.  See *supra*.  Had counsel had statements from other witnesses

14

regarding different, contradictory versions of how the death occurred, counsel would have been able to challenge the reliability of the confessions and the bias and credibility of the inmate witnesses presented by the government.  For this reason as well, disclosure is both warranted and required.

## Conclusion

The materials requested by Petitioner through his Second Post-Conviction Motion For Discovery are essential to his ability to fully and fairly litigate his claims before this Court.  The Government's rationale for opposing Petitioner's request are misplaced and contrary to prevailing law.  In the interest of justice and judicial economy, Petitioner's Second Post-Conviction Discovery Motion should be granted.

Respectfully submitted,

s/ Anne L. Saunders
ANNE L. SAUNDERS, ESQUIRE
Asst. Federal Public Defender
Attorney ID #PA 48458
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. (717) 782-3843
Fax No. (717) 782-3966
(Anne_Saunders@fd.org)

 s/Michael Wiseman
MICHAEL WISEMAN,  ESQUIRE
Supervising Assistant Federal Defender
Attorney ID#PA 75342
Defender Association of Philadelphia
Federal Court Division-Capital Habeas Unit
Suite 545 West – The Curtis Building
Independence Square West
Philadelphia, PA 19106
(Michael_Wiseman@fd.org)

## CERTIFICATE OF SERVICE

I, Michael Wiseman, of do hereby certify that on this date I served a copy of

the foregoing *Reply Brief To The Government's Opposition To Petitioner's*

*Second Post-Conviction Motion For Discovery* via Electronic Case Filing, or by

placing a copy in the United States mail, first class in Harrisburg, Pennsylvania,

addressed to the following:

Frederick E. Martin, Esquire
United States Attorney's Office
Federal Building, Room 217
228 Walnut Street
Harrisburg, PA 17108

Gwynn X. Kinsey, Jr., Esquire
United States Department of Justice
Criminal Division, Capital Case Unit
1331 F. Street, N.W.
Washington, D.C. 20530

Date:  November 8, 2004

Respectfully submitted,

s/ Michael Wiseman
MICHAEL WISEMAN