# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

      Respondent,

      v.

DAVID PAUL HAMMER,

      Petitioner.

:
:
:
:
:
:
:
:
:
:
:
:

Criminal No. 4:CR–96-239

Judge Muir

**REPLY TO THE GOVERNMENT'S RESPONSE TO MR. HAMMER'S MOTION TO DIRECT THE UNITED STATES MARSHALS TO TRANSPORT HAMMER TO THE HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA, NEUROPSYCHIATRY CENTER FOR PURPOSES OF CONDUCTING A MAGNETIC RESONANCE IMAGING (MRI), A POSITRON EMISSION TOMOGRAPHY (PET) SCAN AND ASSOCIATED TESTING; FOR AN EXTENSION OF TIME FOR PROVIDING ANY SUPPLEMENTAL REPORT GENERATED AS A RESULT OF THE TESTING CONDUCTED**

# EXHIBIT "A"

**SUPPLEMENTAL DECLARATION OF RUBEN C. GUR, PH.D.
PURSUANT TO 28 U.S.C. SUBSECTION 1746 & 18 PA. C. S. SECTION 4904**

I, Ruben C. Gur, Ph.D., do hereby declare and verify as follows:

1.      I previously signed a declaration in the case of United States v. Hammer, wherein I outlined my professional qualifications and experience and described my recommendations for further evaluation and testing of Mr. Hammer in order to confirm the existence of, and expand upon the nature and extent of Mr. Hammer's brain dysfunction, including a high resolution volumetric MRI study and a positron emission tomography (PET) scan. My prior affidavit is adopted and incorporated herein.

2.      As I explained in my prior affidavit, most hospitals do not have the requisite equipment, certifications and staff who are qualified to conduct the type of specialized testing that I have recommended. In fact, I know of only two in Pennsylvania that do: the University of Pennsylvania Medical Center in Philadelphia, and the University of Pittsburgh Medical Center.

3.      Although MRIs are routinely done in the clinical setting, the protocols necessary for the quantitative MRI that I have recommended are far more thorough and comprehensive, and are not routinely found in clinical MRI facilities. While it is possible to implement the specialized protocols in a clinical MRI setting, it is highly unlikely that staff at a facility with only clinical MRI capabilities has the expertise necessary to implement those protocols and any results from testing conducted in this manner could be compromised and unreliable.

4.      Regarding the conduct of a PET scan, I know of no facilities between Philadelphia and Pittsburgh with a PET scan. The PET scan necessary for the testing I have recommended requires a cyclotron to generate the short-lived isotopes for blood-flow measurements that only have a half-life of two minutes. Observation and measurement of these short-term isotopes is an integral aspect of this study.

5.      In sum, the only two facilities in the Commonwealth of Pennsylvania with proper equipment, staff experience and certifications necessary to insure a reliable and accurate outcome, are located at Pittsburgh and Philadelphia. I have no preference between the two for conducting Mr. Hammer's testing, and suggested the Philadelphia facility mainly because it is geographically much closer to Lewisburg. Conducting these tests at any other facility will likely lead to a result that is inaccurate, unreliable or otherwise useless for the forensic studies that I have recommended.

Ruben C. Gur, Ph.D.

Dated: 11/8/2004