# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| Respondent, | :     Criminal No. 4:CR–96-239 |
| | : |
| v. | :     Judge Muir |
| | : |
| DAVID PAUL HAMMER, | :     Electronically Filed |
| | : |
| Petitioner. | : |

**PETITIONER'S MOTION FOR LEAVE TO CONDUCT FORENSIC TESTING**

# EXHIBIT "A"

## DECLARATION/AFFIDAVIT OF DR. ALBERT B. HARPER
## PURSUANT TO 28 U.S.C. § 1746 AND 18 Pa.C.S. § 4904

I, Dr. Albert B. Harper, do hereby declare and verify as follows:

1)      I am the Director of the Henry C. Lee Institute of Forensic Science, University of New Haven, West Haven, CT 06516. I am a forensic scientist and have been qualified as an expert in forensic science in Maine, Connecticut, New York, Florida and Pennsylvania.

2)      On October 26, 2004 at the FBI offices in Williamsport , Pennsylvania I viewed the physical evidence collected at the crime scene in the case of United States v. Hammer.

3)      This evidence included the clothing worn by the victim and defendant on the night in question and the pillows and sheets from the bed on which the victim was found as well as torn strips of bed sheets some of which were braided and knotted. This evidence also included cotton swabs, slides, test tubes, nail clippings and hair samples all of which were preserved and prepared in the course of the autopsy of the victim.

4)      I viewed the clothing and bedding under an Ultralite ALS. This alternate light source is designed to reveal human biological material such as: semen, blood, urine and saliva which is not visible to the naked eye. This examination revealed numerous human biological stains that have not been previously identified or tested.

5)      Specifically, I examined under the Ultralite ALS: Govt. Ex. 15 (two pillows, one white and one salmon colored), Govt. Ex. 16 (a salmon colored bed sheet), Govt. Ex. 17 (two salmon colored bed sheets) and Govt. Exhibits 9, 10, 24 and 107 (various pieces of a salmon colored torn sheets). All of these items were positive for human biological material which was not visible to the naked eye.

6)    I also examined under the Ultralite ALS:  Govt. Ex. 19 (a salmon colored sock), Govt. Ex. 25 (a piece of a salmon colored thermal shirt sleeve), Govt. Ex. 28.1 (victim Marti's salmon colored T-shirt), Govt. Ex. 28.2 (victim Marti's salmon colored first pair of boxer shorts) and Govt. Ex. 28.3 (victim Marti's second pair of salmon colored boxer shorts worn over the first pair).  All of these items were positive for human biological material which was not visible to the naked eye.

7)    I also examined Govt. Ex. 26.1 (white sneakers), Govt. Ex. 26.3 (salmon colored boxer shorts and socks), Govt. Ex. 26.4 (Hammer's salmon colored T-shirt) and Govt. Ex. 26.5 (a salmon colored towel).  All of these items were positive for human biological material which was not visible to the naked eye.

8)    It is my professional opinion to a reasonable degree of scientific certainty that all of these items contain a sufficient amount of biological material that would permit DNA samples to be extracted and testing to be conducted and valid results obtained.

9)    It is also my professional opinion to a reasonable degree of scientific certainty that the finger nail clippings, the anal and penile swabs and slides taken from the victim and prepared as part of the autopsy as well as a tube of his blood can and should be re-tested whether or not the sample was previously tested.  The DNA testing performed at that time was a PCR based test that was of limited discriminatory power.  It is now possible to test biological samples of limited quantity with highly specific results using more extensive DNA technology.

10)    Finally, my review of the laboratory reports and trial testimony reveals that the penile slide prepared from a swab taken from the victim at the autopsy and the oral slide prepared from a swab taken from the victim at the autopsy were never tested.  I examined both of these slides during my review of the evidence.  It is my professional opinion to a reasonable degree of

scientific certainty that these slides can be tested to determine the presence of human biological material and, if such material is found, further testing can be conducted to determine DNA.

11)    I hereby certify that the facts set forth above are true and correct to the best of my personal knowledge and belief, subject to 28 U.S.C. § 1746 and Pa. C.S. § 4904.

Dr. Albert B. Harper