**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

_____

UNITED STATES OF AMERICA,

               Respondent,

       v.

DAVID PAUL HAMMER,

               Petitioner.

_____

:
:
:
:
:
:
:
:
:
:
:
:
:

Criminal No. 4:CR–96-239

Judge Muir

Electronically Filed

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION
FOR LEAVE TO CONDUCT FORENSIC TESTING**

Petitioner, David Paul Hammer, through undersigned counsel, respectfully

submits this Memorandum of Law in Support of his Motion for Leave to Conduct

Forensic Testing.

**FACTUAL BACKGROUND**

On October 26, 2004, pursuant to an agreement between the parties, Dr. Albert

Harper, a forensic expert retained by Petitioner, viewed the autopsy and crime scene

evidence at the FBI offices in Williamsport, Pennsylvania. See Affidavit of Dr. Albert B. Harper attached hereto at ¶ 2. Specifically, Dr. Harper, utilizing an Ultralite ALS, viewed the clothing of the decedent and Petitioner as well as the bedding from the cell. Id. at ¶ 4. Dr. Harper's examination revealed numerous human biological stains on these items of evidence that had not been previously identified or tested. Id. at ¶ 4. Dr. Harper found that these stains contain a sufficient amount of biological material that would permit DNA samples to be extracted and testing to be conducted and valid results obtained. Id. at ¶ 8.

Dr. Harper also examined the penile and the oral slides prepared from swabs taken from the decedent during the autopsy. Id. at ¶ 10. These slides have never been tested for the presence of human biological material. Id. Dr. Harper concluded that these slides can be tested for human biological material and if such material is found further testing can be conducted to determine DNA. Id.

Dr. Harper also reviewed the DNA test results on the items obtained during the autopsy as well as the materials tested. Id. at ¶ 9. Dr. Harper concluded that the testing performed by the FBI laboratory prior to the start of the 1998 trial were PCR based tests that were of limited discriminatory power. Id. Dr. Harper concluded that it would now be possible to test these materials with highly specific results using more extensive DNA technology. Id.

Petitioner requests that the court order forensic testing of all of these items of evidence.  The items to be tested are: decedent's and Petitioner's clothing confiscated on the night in question (Govt. Exhibits 19, 25, 26.1, 26.3, 26.4, 26.5, 28.1, 28.2 and 28.3); the bedding confiscated from the cell on the night in question (Govt. Exhibits 9-10, 15-17, 24 and 107); and, the oral and penile slides prepared during the autopsy of the decedent.  Petitioner further requests that the matters that were already subjected to DNA testing prior to trial i.e., decedent's finger nail clippings, anal and penile swabs taken from the victim, and a tube of the victim's blood  be re-tested using the more specific and extensive DNA technology available today.

## ARGUMENT

It is beyond reproach that "[C]ourt's throughout the country have found that DNA is highly probative of guilt and innocence, and DNA testing is becoming the leading basis upon which wrongfully convicted individuals have secured releases from convictions." Cherrix v. Braxton, 131 F.Supp.2d 756, 766 (E.D. Va. 2000); affirmed In re Braxton, 258 F. 3d 250 (4th. Cir.  2001).  Indeed, in the past few years alone, post-conviction DNA testing has resulted in the release of over sixty-five wrongly convicted individuals from prison. See Cynthia Bryant, "When One Man's DNA Is Another Man's Exonerating Evidence," 33 Colum. J.L. & Soc. Probs. 113, 117-134 (2000).  See also National Commission on the Future of DNA Evidence,

"Convicted By Juries, Exonerated By Science: Case Studies In The Use Of DNA Evidence To Establish Innocence After Trial."

Federal Rule of Civil Procedure 34(a) provides: "Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on the requestor's behalf, to . . . inspect . . . and test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served . . . ." Rule 26(b) provides: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . For *good cause*, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to discovery of admissible evidence."

A petitioner establishes "good cause" whenever "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy, 520 U.S. at 908-09 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 299 (1969)).[1] Under such

---

[1] Harris v. Nelson led to the adoption of the Rules Governing Section 2254 Cases. In particular, the discovery provisions of Rule 6 are intended to be "consistent with Harris." Advisory Committee's Note on Habeas Corpus Rule 6; Bracy v. Gramley, 520 U.S. at 909.

4

circumstances, discovery *must* be allowed -- "it is the *duty* of the courts to provide the necessary facilities and procedures for an adequate inquiry." Id.[2]  Since the purpose of post-conviction discovery "is to ensure that the facts underlying a [habeas] claim are adequately developed." Johnston v. Love, 165 F.R.D. 444, 445 (E.D. Pa. 1996), a court must allow discovery whenever "a petitioner has provided a sufficient basis for believing that discovery may be necessary to adequately explore a petitioner's claim for relief."  Id.  Accordingly, a court may not deny a petitioner's discovery motion "if there is a sound basis for concluding that the requested discovery might allow him to demonstrate" his entitlement to relief.  Id.

The United States Supreme Court has explained that "[t]he very nature of the writ [of habeas corpus] demands that [habeas proceedings] be administered with the

---

[2] Accord McDaniel v. United States District Court, 127 F.3d 886, 888 (9th Cir. 1997) (where Petitioner "presented specific allegations . . .[he] is entitled to discovery"); Johnston v. Love, 165 F.R.D. 444, 445 (E.D. Pa. 1996) (Rule 6's "history makes clear that its purpose is to ensure that the facts underlying a habeas corpus claim are adequately developed, and that it is a court's obligation to allow discovery in cases in which a petitioner has provided a sufficient basis for believing that discovery may be necessary to adequately explore a petitioner's claim for relief."  Accordingly, "a court may not deny a habeas corpus petitioner's motion for leave to conduct discovery if there is a sound basis for concluding that the requested discovery might allow him to demonstrate that he has been confined illegally."); Gaitan-Campanioni v. Thornburgh, 777 F. Supp. 1355, 1356 (E.D. Tex. 1991) ("Although discovery is permitted only by leave of the court, the court should not hesitate to allow discovery, where it will help illuminate the issues underlying the applicant's claim.").

initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." Harris, 394 U.S. at 291. This is never more so than in the context of capital cases, in which the unique finality and irreversibility of the sentence require heightened procedural safeguards. E.g., Turner v. Murray, 476 U.S. 28, 35 (1986) ("The risk of racial prejudice infecting a capital sentencing proceeding is especially serious in light of the complete finality of the death sentence.").

In granting DNA testing in a post-conviction case, the Cherrix court found that where, as here:

> [t]here are claims of constitutional error, there has been an advancement in DNA technology that could demonstrate a viable claim of actual innocence, and the habeas petitioner faces execution, the court acted within its discretion in finding that good cause was shown to make limited processes of discovery available to Cherrix.

Cherrix, 131 F.Supp. at 775. Likewise, Petitioner's request for DNA testing to support his claim of innocence in the context of these proceedings constitutes "good cause."

Petitioner has good cause for the testing he requests. Evidence tending to show a sexual encounter/relationship between Petitioner and the decedent is directly relevant to four claims contained in his *Amended Motion to Vacate and Set Aside*

6

*Conviction and Sentence* and to the corresponding arguments made in his

*Memorandum of Law in Support of Amended Motion to Vacate and Set Aside*

*Conviction and Sentence:*

● **Claim I:** Petitioner avers that the guilty plea was accepted without an adequate factual basis and that the factual basis provided was false and misleading. Petitioner further avers that during the plea colloquy he never admitted that the killing was with premeditation and malice aforethought but instead simply said his hands caused Marti's death. Petitioner, when asked about the ropes during the plea colloquy denied he had braided the ropes as part of a plan to strangle Marti and instead "insisted that the ropes were made and used by the pair for 'other,' intimating sexual, purposes." See Memorandum of Law in Support of Amended Motion to Vacate and set Aside Conviction and Sentence at p.10.

●**Claim VI:** Petitioner avers that the Government knew or should have known that Hammer's statement was materially false and unreliable, yet presented it to the jury. Petitioner avers that his actions in falsely confessing were "entirely consistent with a false confession fo first degree murder to cover up evidence of an accidental killing during a sexual encounter with motive to incriminate being both remorse and fear of reprisal in prison if the encounter was learned by other inmates." See Amended Motion to Vacate and Set Aside Conviction and Sentence at p. 23.

●**Claim VII:** Petitioner avers that the Government presented and failed to correct important evidence which it or its agents knew or should have known was false or misleading such that there exists a reasonable probability that the results of all proceedings could have been different. Petitioner further avers that FBI Agent Callaghan testified falsely and misled the jury when he stated that he had not been provided any DNA samples taken from Marti's mouth and if he had they would have been of no relevance because he had no samples to compare them to. Petitioner also avers that the clothing of both Marti and decedent should have been tested. See Amended Motion to Vacate and Set Aside Conviction and Sentence at p. 24-25.

●**Claim XIII:** Petitioner avers that trial counsel was ineffective for failing to investigate the veracity of Petitioner's statement and to "otherwise investigate the veracity of conclusions drawn regarding the physical evidence and pathology findings was below prevailing norms of reasonable competent counsel." <u>See</u> Amended Motion to Vacate and Set Aside Conviction and Sentence at p. 30.

Forensic evidence of a sexual encounter/relationship between Petitioner and Marti, is also relevant to rebut the Government's procedural default argument. Specifically, the Government argues that Petitioner's withdrawal of his appeal "precludes this court generally from considering the issues raised in his Amended Petition." <u>See</u> Government's Brief in Opposition to Motion to Modify Sentence for Relief Under Section 2255 at pp. 4-6. The Government, however, concedes, as it must, that a showing of "actual innocence" by Petitioner would overcome this procedural bar. <u>Id.</u> at pp. 5-7. Forensic evidence establishing a sexual relationship/encounter between Petitioner and Marti, would certainly support Petitioner's argument that this was an accidental killing during a consensual sexual encounter and that he is "actually innocent" of first degree murder.

Furthermore, the Government has conceded in its *Brief in Opposition to the Amended Motion to Vacate Conviction and Sentence* that no tests were done on the clothes of Hammer and Marti and that the oral swabs were never subjected to DNA comparison and that the "swabs, as well as Hammer's and Marti's clothing in 1998 and through today, *exist and can be tested by the defense.*" Brief in Opposition to

Motion to Modify Sentence at 59.  Finally, the Government has also conceded that

Petitioner's statement "indicated that he did have sex with Marti" and that the issue

of whether Hammer's confession is misleading and his guilty plea based at least in

part on a lie is a "credibility determination for this court."  Id. at p. 56-57.

The testing described by Dr. Harper is critical to the full and fair development

of Petitioner's post-conviction claims for relief and is predicated on Dr. Harper's

careful review of the evidence.  Simply put, forensic testing is critical to this case.

Furthermore, Dr. Harper reports that advances in DNA technology since the

time of Petitioner's trial could lead to additional evidence of his innocence:

> The DNA testing performed at that time was a PCR based
> test that was of limited discriminatory power.  It is now
> possible to test biological samples of limited quantity with
> highly specific results using more extensive DNA
> technology.

Affidavit of Dr. Albert Harper, at ¶ 9.  (attached hereto).  The evidence  Petitioner

seeks to test has either never been tested or has been tested by outdated  methods.

Clearly,  if the tests were to reveal DNA evidence supporting Petitioner's claim of

actual innocence or the four claims contained in his *Amended Motion to Vacate*

*Conviction and Sentence*, he would be entitled to relief.

Furthermore, the materials Petitioner seeks to have tested are still in existence

and there can be no legitimate reason to preclude DNA testing, particularly given the

fact that nationwide, such testing has allowed countless numbers of previously convicted and death-sentenced individuals to prove their innocence, thus averting the most perverse miscarriage of justice possible: the execution of an innocent person.

## CONCLUSION

The forensic testing requested by Petitioner can be conducted and concluded in a timely manner. For these reasons, and because Petitioner believes that in order to adequately investigate and fully and fairly present his claims for relief, the proposed analysis and examination of the physical evidence in this case is critical. Accordingly, Petitioner requests that the Court issue an Order permitting the testing of this evidence.

Respectfully submitted,

s/ Anne L. Saunders

ANNE L. SAUNDERS, ESQUIRE
Asst. Federal Public Defender
Attorney ID #PA 48458
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. (717) 782-3843
Fax No. (717) 782-3966
(Anne_Saunders@fd.org)

s/ Michael Wiseman

MICHAEL WISEMAN, ESQUIRE
Supervising Assistant Federal Defender
Attorney ID#PA 75342
Defender Association of Philadelphia
Federal Court Division-Capital Habeas Unit
Suite 545 West – The Curtis Building
Independence Square West
Philadelphia, PA 19106
(Michael_Wiseman@fd.org)

Dated: November 29, 2004

# CERTIFICATE OF SERVICE

I, Anne Saunders, of the Federal Public Defender's Office do hereby certify that on this date I served a copy of the foregoing *Memorandum of Law in Support of Petitioner's Motion for Leave to Conduct Forensic Testing* via Electronic Case Filing, or by placing a copy in the United States mail, first class in Harrisburg, Pennsylvania, addressed to the following:

Frederick E. Martin, Esquire
United States Attorney's Office
Herman T. Schneebeli Federal
Building
Suite 316
240 West Third Street
Williamsport, PA.  17701-6465

Gwynn X. Kinsey, Jr., Esquire
United States Department of Justice
Criminal Division, Capital Case Unit
1331 F. Street, N.W.
Washington, D.C. 20530

Date:  November 29, 2004

Respectfully submitted,

s/ Anne L. Saunders
ANNE L. SAUNDERS, ESQUIRE
Asst. Federal Public Defender
Attorney ID #PA 48458
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. (717) 782-3843
Fax No. (717) 782-3966
(Anne_Saunders@fd.org)
Attorney for David Paul Hammer