IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 4:cr-96-00239 |
| | : | Civil No. 4:CV-02-00510 |
| v. | : | (Judge Muir) |
| | : | |
| DAVID PAUL HAMMER | : | **ELECTRONICALLY FILED** |

**GOVERNMENT'S BRIEF IN OPPOSITION TO PETITIONER'S MOTION
FOR LEAVE TO CONDUCT FORENSIC TESTING**

Procedural History.

On November 4, 1998, this Court sentenced David Paul Hammer to die by lethal injection for the first degree murder of Andrew Marti.  On November 22, 2004, petitioner's counsel filed a motion for leave to conduct forensic testing.  Simultaneously, a brief supporting that request was filed.  Herewith presented is the prosecution's opposition to such relief.

Counter-Statement of Facts.

The United States will rely in pertinent part upon excerpts from the trial record in this case as well as its pleading filed on February 4, 2003.  These will be repeated in argument. Additionally, Dr. Thomas Callaghan, who testified at trial and presently is Chief of the "CODIS" Unit, the Combined DNA Index Unit System, and custodian of the National DNA Index System, was consulted about information provided by defense expert, Dr. Albert Harper.  The following response was provided by Dr. Callaghan.

The technology has improved since 1997 to allow for faster, cheaper, and more discriminating DNA testing.  However, Dr. Callaghan advised that he is aware of no forensic testing now or then which would indicate <u>when</u> human biological materials, such as semen, would first be placed on an item of clothing or on a person's body.

As to the actual testing proposed by Hammer, not all DNA forensic laboratories are equal in terms of their quality according to Dr. Callaghan.  Forensic laboratories that participate or produce profiles that are included in the National DNA Index System must follow the FBI's quality assurance standards and are subject to external audit by the FBI. Moreover, a proper protocol should be followed which allows for some residual materials to remain, especially for the penile and oral slides or swabs.  Consequently, the FBI protocol should be utilized if testing is to proceed and it should occur at a laboratory which, in the view of the FBI, will provide reliable results.

<u>Issue.</u>

Whether petitioner has made a sufficient threshold showing to justify a forensic examination of certain swabs, smears, and clothing articles, some of which have never been tested for DNA materials in an effort to demonstrate that Hammer engaged in sex with Marti when that fact was never disputed at trial and the

proposed tests can provide little relevant information regarding when the two may have engaged in homosexual activity.

Argument.

1. **Introduction**.

Hammer invokes the post-conviction discovery rule, Rule 6 of the Rules Governing Section 2255 Proceedings in the United States District Courts, as authority for the proposition that he should be granted custody of forensic materials in the possession of the government and to conduct DNA testing by a defense expert, using methodologies to be determined by the defense. Rule 6 allows discovery only with leave of court, upon a upon a showing of reasons amounting to "good cause" for discovery. Rule 6(a); (b). "Good cause," in turn, contemplates a showing that the requested discovery would provide a factual basis for the grant of relief on the merits of one or more of the petitioner's underlying challenges to his conviction and sentence. *See Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (applying the 28 U.S.C. § 2254 counterpart to Rule 6).

As explained *infra*, Hammer's motion fails because the requested discovery would not entitle him to a grant of Section 2255 relief no matter what the outcome of the proposed testing. Further, his request extends significantly beyond the scope of what is commonly understood as "discovery" because it seeks to alter the evidentiary value of forensic materials in the

government's possession, as a consequence of the defense's assuming custody and control of the materials sought and conducting such tests as the defense determines.  Although recently-enacted federal legislation, 18 U.S.C. § 3600, does authorize, under tightly-delineated circumstances, post-conviction DNA testing of forensic materials, that statute does not entitle Hammer to the access he seeks.  Hammer does not expressly invoke Section 3600, which provides an independent cause of action in the federal courts; he fails to satisfy Section 3600's specific prerequisites for a valid motion for DNA testing; and he seeks a degree of control over forensic materials beyond that generally contemplated by Section 3600.  The Court should deny Hammer's motion in its entirety.

2.    **There Is No Need for DNA Testing in this Case Because Hammer Fails to Identify a Cognizable Section 2255 Claim on which the Court may grant relief**.

Hammer has not shown "good cause" under Rule 6 because the proposed testing will not provide a basis for relief on the merits of his Section 2255 claims.  Hammer killed the victim, Andrew Marti, while the two men were in a locked prison cell containing no one else, with Marti restrained to his bed.  Hammer immediately confessed to a planned murder and later pleaded guilty.  All the DNA evidence in the world does the defense no good unless they can prevail on their theory that Hammer was incapable of voluntarily confessing and entering a valid plea,

and those claims are themselves barred for the reasons set forth in the government's previously-filed opposition to Hammer's Section 2255 motion.  Hammer cannot overcome the various bars to his claims, for the reasons set forth in the government's prior opposition.  To the extent that Hammer asserts his supposed "actual innocence" as a free-standing basis for relief, that claim fails.  *See Herrera v. Collins*, 506 U.S. 390, 416-19 (1993).  Even had *Herrera* held that "actual innocence" claims were cognizable, Hammer's theory, that the killing of Marti occurred in the course of sex play gone awry, would not entirely exculpate him from all criminal liability, and thus would not present a case of "actual innocence."

3. **There Is No Need for DNA Testing in this Case Because the testing would not provide a valid factual basis for a grant of relief, even had Hammer's claims not been barred**.

Even had the Section 2255 claims, for which Hammer maintains DNA testing is needed, not been barred, the proposed DNA testing would not provide a basis for a grant of relief on those claims. It is worthwhile to know the precise history and character of Hammer's statements as well as to review matters at trial to determine what value, if any, additional forensic testing proposed by the defense would provide.

Initially, on the morning of April 13, 1996, in his statement to agents of the Federal Bureau of Investigation,

Hammer mentioned <u>nothing</u>, one way or another, about engaging in sexual relations with Marti.  See Government Exhibit 1.  During his hypnotic interview in late 1997 with Dr. Robert Sadoff, it is believed that Hammer said he had engaged generally in sex with Marti.  This testimony was presented at trial through the playing of a videotape of part of that session.

Finally, a recently retained expert by Hammer's new attorneys, Dr. Neil Blumberg, interviewed Hammer on October 21, 2004.  A copy of part of his report is attached as Government Exhibit 2.  Dr. Blumberg at ¶ 25 of his sworn statement indicates that Hammer told him that "he then engaged in anal intercourse with Mr. Marti during which time he partially asphyxiated Mr. Marti as he had previously done on other occasions."  At least two inmates who testified for the prosecution at trial, Yager and Classen, indicated that Hammer expressed to them an interest in having sex with Marti, as well as indicating his interest in killing Marti.  Other witnesses, including those for the defense, testified at trial that Hammer had sexual relations with other inmates at Allenwood.  Consequently, the prosecution conceded during the rebuttal argument that Hammer engaged in homosexual relations with four persons other than Marti while he was housed in Allenwood's Special Housing Unit.  (Transcript of July 21, 1998, p. 132.)  However, the prosecution noted that the tests conducted by the FBI did not confirm the presence of any semen on

6

the anal swab.  (Transcript of July 23, 1998, p. 135.)  It is noteworthy that for all of the testing proposed, Hammer does not seek retesting of the anal examination.

At trial Thomas Callaghan testified about various forensic tests which the FBI Laboratory conducted.  Marti's DNA was found on certain items of evidence including a sock and a pillowcase. An anal swab taken from Marti during the autopsy was examined. It proved negative for the presence of sperm.

Post-conviction DNA testing generally <u>may</u> have resulted in the release of wrongly convicted individuals in other circumstances.  (Brief of Defendant, p. 3.)  However, the tests proposed by the defense, even if they support the proposition that Hammer engaged in sex with Marti, will have no significant effect, if any, in upholding any defense theory in this case.

To be sure, when the defense can show that DNA testing would establish facts warranting a grant of relief on the post-conviction petition, appropriate forensic examinations might be warranted.  But that merely begs the question as to what occurred at trial?  The plain fact of the matter is that there was never any dispute with the then defense claim by the prosecution that Marti and Hammer had engaged in homosexual relations.  In its opening, defense counsel noted that Marti's bondage was "part of some plan, kinky homosexual activity between Mr. Hammer and Mr. Marti."  (Trial Transcript ("TT"), June 3, 1998, pp. 24-25, 37-

39.)   Following presentation of evidence in the guilt phase, which was short-lived due to Hammer's entry of a guilty plea, and the continuation of evidence in the penalty phase, the prosecution, in closing, did not dispute that sometime between April 9, 1996 until April 13, 1996, when Marti's lifeless body was discovered, that the two cellmates probably had on one or more occasion engaged in homosexual activities.

This view of the prosecution has not changed over time. That is, it was conceded in the response filed February 4, 2003, that Hammer and Marti probably engaged in homosexual activities. (See page 56.)   Consequently, there is no rationale for conducting forensic tests on issues which are not in dispute.

One further observation is pertinent.  With respect to Hammer's most recent claim that he engaged in anal sex with Marti immediately prior to killing him, it is the understanding of the prosecution that even if such testing confirmed the presence of DNA, there would be no "carbon dating" available.  That is to say, the forensic tests would not reveal whether the homosexual activity occurred on April 9, 10, 11, 12, or just prior to or even after Hammer's supposed accidental killing of Marti early on April 13, 1996.  In the event that the defense expert could establish a time at which homosexual activity took place through DNA analysis, the United States would reconsider this matter and may acquiesce in forensic testing.

Hammer fares no better in claiming that these proposed tests would demonstrate his "actual innocence."  (Motion, p. 4, ¶ 7.) Even if positive, these tests would reveal that Hammer and Marti engaged in homosexual activities during a four day period in April 1996.  Hammer engaged in such behavior with approximately four other inmates in the Special Housing Unit in 1995 and early 1996.  But he did not kill those persons.  In short, Hammer's undisputed inclination to engage in homosexual activities are of no interest.

4. **Hammer's Specific Prayer for Relief Is Flawed and Would not Be Proper in a Motion Under Section 3600.**

Assuming *arguendo* that Hammer has shown good cause under Rule 6, there still are serious problems inherent in his request for relief, which extend beyond the scope of what normally may be considered proper discovery. (Motion, p. 5, ¶ 10.)  Specifically, what defense counsel requests, in part, are as follows:

> Petitioner requests that Dr. Harper be permitted to designate the forensic evidence to be tested and that he be permitted to submit this evidence for DNA testing at a <u>certified laboratory chosen by Dr. Harper</u>. Furthermore, because there is <u>significant quantities</u> of this evidence, the government will be able to retain sufficient portions of the forensic evidence identified by Dr. Harper.

(Motion, p. 5, ¶ 10.)  (Emphasis supplied.)  As the Counter-Statement of Facts indicate, not every "certified laboratory" provides accurate and fair analysis, and the defense proposal

9

necessarily affects the evidentiary value of the materials, which have remained in the government's or the Court's custody since the time of Hammer's offense.

Although recently-enacted 18 U.S.C. § 3600 authorizes, under tightly-delineated circumstances, post-conviction DNA testing of forensic materials, that statute does not entitle Hammer to the access he seeks.  Hammer does not expressly invoke Section 3600, which provides an independent cause of action in the federal courts; he utterly fails to satisfy Section 3600's very specific prerequisites for a valid motion for DNA testing; and he seeks a degree of control over forensic materials beyond that generally contemplated by Section 3600.

Section 3600 imposes, in pertinent part, the following prerequisites to a valid request for post-conviction DNA testing:

> (1) The applicant asserts, under penalty of perjury, that the applicant is actually innocent of –
> (A) the Federal offense for which the applicant is under a sentence of imprisonment or death;
>
> *          *          *
>
> (5) The proposed DNA testing is reasonable in scope, uses scientifically sound methods, and is consistent with accepted forensic practices.
>
> (6) The applicant identifies a theory of defense that –
> (A) is not inconsistent with an affirmative defense presented at trial;  and
> (B) would establish the actual innocence of the applicant of the Federal or State offense

10

> referenced in the applicant's assertion under paragraph (1).
>
> (7) If the applicant was convicted following a trial, the identity of the perpetrator was at issue in the trial.
>
> (8) The proposed DNA testing of the specific evidence may produce new material evidence that would –
> (A) support the theory of defense referenced in paragraph (6);  and
> (B) raise a reasonable probability that the applicant did not commit the offense.

18 U.S.C. § 3600(a)(1), (4)-(8).

Hammer fails to meet any of these requirements.  With regard to the issue of innocence and the theory of the defense, Hammer has not sworn under perjury that he is in fact innocent of the murder; he cannot show that the identity of the perpetrator of the killing was at issue at the murder trial and guilty plea; and his theory that the killing of Marti occurred in the course of sex play gone awry would not entirely exculpate him from all criminal liability.  § 3600(a)(1), (6), (7), (8).  Further, Hammer has failed to provide specific facts concerning the proposed testing methodology and protocols to ensure that Section 3600(a)(5) is satisfied.  Finally, even if Hammer could satisfy the Section 3600(a) elements, his request that the government release forensic materials to the defense runs afoul of Section 3600(c)(1), which contemplates that the FBI will ordinarily conduct any DNA analysis.

11

Conclusion.

That tests previously were not conducted does not mean the tests should be conducted now.  (Motion, ¶ 7.)  That technology exists now which did not exist in 1998, does not mean that necessarily be utilized now.  (Motion, ¶ 3.)  Finally, that tests may confirm part of the allegations in the Amended Petition, does not mean that those tests necessarily should be conducted.

Neither at trial nor in these § 2255 proceedings has the prosecution disputed that David Paul Hammer may have engaged in homosexual activity with Andrew Marti at some point when the two lived together in the Special Housing Unit, Cell 103, in April 1996.  Consequently, there is no need to conduct forensic testing on articles of clothing, smears, or slides which would confirm that which is not contested.

Respectfully submitted,

THOMAS A. MARINO
United States Attorney


By s/Frederick E. Martin
FREDERICK E. MARTIN
Assistant United States Attorney
PA 57455
Herman T. Schneebeli Federal Bldg.
240 West Third Street, Suite 316
Williamsport, PA  17701-6465
Tele:  (570)326-1935
FAX:   (570)326-7916
Electronic Mail:
Fred.Martin@usdoj.gov

Dated: December ___8___, 2004

12

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 4:CR-96-00239 |
| | : | Civil No. 4:CV-02-00510 |
| v. | : | (Judge Muir) |
| | : | |
| DAVID PAUL HAMMER | : | **ELECTRONICALLY FILED** |

### CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing

**GOVERNMENT'S BRIEF IN OPPOSITION TO PETITIONER'S MOTION
FOR LEAVE TO CONDUCT FORENSIC TESTING**

to be electronically filed on December  8  , 2004 to:

ADDRESSEE:      Anne L. Saunders, Esquire
                Anne_Saunders@fd.org

                Michael Wiseman, Esquire
                Michael_Wiseman@fd.org


                     s/Frederick E. Martin
                    FREDERICK E. MARTIN
                    Assistant United States Attorney

13