IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA　:
　　　　　　　　　　　　　　　　:
　　　v.　　　　　　　　　　　　:　No. 4:CR-96-239
　　　　　　　　　　　　　　　　:
DAVID PAUL HAMMER,　　　　　　:　(Judge Muir)

ORDER

December 14, 2004

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On November 4, 1998, this court sentenced David Paul Hammer to die by lethal injection for the first degree murder of Andrew Marti.  The relevant history of this case since the imposition of the sentence of death is set forth in prior orders and we will not repeat that history other than as needed to address the pending matter.

This case is presently on the April, 2005, trial list for a hearing on Hammer's second amended § 2255 motion.  On November 29, 2004, Hammer filed a document entitled "Petitioner's Motion for Leave to Conduct Forensic Testing" and brief in support thereof.  The Government filed a brief in opposition on December 8, 2004.  The motion became ripe for disposition on December 10, 2004, with the filing of Hammer's reply brief.

Hammer requests that various items of evidence be tested for the presence of biological materials.  Hammer is now contending that he is actually innocent of first degree murder. He claims that the killing occurred during a consensual sexual act.  Specifically, he claims that during anal intercourse he engaged in an erotic asphyxiation of his partner and that the killing was not premeditated.

In the motion for forensic testing Hammer states in relevant part as follows:

> 4.   Forensic evidence tending to show a sexual encounter/relationship between Petitioner and the decedent is highly relevant to this litigation. Such evidence would support a finding of accidental death during consensual sex and would cast doubt on the veracity of Petitioner's statement to the investigators shortly after the body was discovered as well as the reliability of his guilty plea.
>
> 5.   Petitioner requests that the court order forensic testing . . .  The items to be tested are: decedent's and Petitioner's clothing confiscated on the night in question (Govt. Exhibits 19, 25, 26.1, 26.3, 26.4, 26.5, 28.5 and 28.3); the bedding confiscated from the cell on the night in question (Govt. Exhibits 9-10, 15-17, 24 and 107); and the oral and penile slides prepared during the autopsy of the decedent. Petitioner further requests that the matters that were already subjected to DNA testing prior to trial, i.e., decedent's finger nail clippings, anal and penile swabs taken from the victim, and a tube of the victim's blood be re-tested using more specific and extensive DNA technology available today.
>
> 6.   Petitioner has good cause for the testing he requests: Evidence tending to show a sexual encounter/relationship between Petitioner and the decedent is directly relevant to Claims I, VI, VII and XIII of his Amended Motion to Vacate and Set Aside Conviction and Sentence.
>
> 7.   This evidence is also relevant to show "actual innocence" of first degree murder and specifically to rebut the Government's procedural default arguments raised in its Brief in Opposition to the Motion to Modify Sentence for Relief Under Section 2255. . . .

Hammer supports his motion with an unsworn declaration under penalty of perjury from Dr. Albert B. Harper, who is the director of the Henry C. Lee Institute of Forensic Science.  Dr. Harper in his declaration states that it is his "professional opinion to a reasonable degree of scientific certaintly that all of [the items

of evidence] contain a sufficient amount of biological material that would permit DNA samples to be extracted and testing to be conducted and valid results obtained." Paragraph 8 of the declaration. He further states that "[i]t is [his] professional opinion to a reasonable degree of scientific certainty that the finger nail clippings, the anal and penile swabs and slides taken from the victim and prepared as part of the autopsy as well as a tube of his blood can and should be re-tested whether or not the sample was previously tested." Paragraph 9 of the declaration. He points out that "[t]he DNA testing performed at the time . . . was of limited discriminatory power" and "[i]t is now possible to test biological samples of limited capacity with highly specific results using more extensive DNA technology."  Id.

The Government argues that Hammer is not entitled to DNA testing because he has not shown "good cause" under Rule 6 of the Rules Governing Section 2255 Proceedings in the United States District Courts.  We disagree with the Government's position for the reasons outlined below.

A petitioner establishes "good cause" whenever "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  Bracey v. Gramley, 520 U.S. 899, 908-909 (1997)(quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).  The Government has asserted that Hammer's claims set forth in the Second Amended § 2255 motion are procedurally barred, i.e., Hammer has waived the

3

claims or "defaulted" on the claims. In order to overcome that procedural bar, Hammer must either show cause for the default and prejudice resulting therefrom, or actual innocence of the crime of which he was convicted. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

In this case in addition to asserting cause and prejudice for the default, Hammer has asserted that he is actually innocent of first degree murder, that his guilty plea was the result of his mental infirmities and that executing him would result in a miscarriage of justice. The Court of Appeals for this Circuit has noted that the actual innocence or miscarriage of justice doctrine applies when a first degree murder conviction results from a defaulted constitutional violation, and there is a reasonable probability that absent the constitutional error the defendant would have only been guilty of the lesser degree of homicide. In re Minarik, 166 F.3d 591, 607 (3d Cir. 1999("'actual innocence' of the crime charged would include the situation where the new evidence would show the petitioner not guilty of first degree murder, though guilty of some lesser offense."). We are satisfied that Hammer has show "good cause" for the forensic testing. However, we will require the parties to attempt to agree on a proposed order outlining the scope and extent of the testing.[1]

---

[1] The Government in its opposition brief stated:

> As to the actual testing proposed by Hammer, not all DNA forensic laboratories are equal in terms of their quality . . . Forensic

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. Hammer's motion for forensic testing is granted as set forth below.

2. Within 20 days of the date hereof, the Government and Hammer shall present to the court a proposed order outlining the scope and extent of the forensic testing.

3. If the parties are unable to agree on a proposed order, each side within 25 days from the date hereof shall present a proposed order and the court will hold a hearing on the matter, if necessary, to resolve any factual differences in the proposed orders.

_____
MUIR, U.S. District Judge

MM:gs

---

laboratories that participate or produce profiles that are included in the National DNA Index System must follow the FBI's quality assurance standards and are subject to external audits by the FBI. Moreover, a proper protocol should be followed which allows for some residual materials to remain, especially for the penile and oral slides or swabs. Consequently, the FBI protocol should be utilized which, in the view of the FBI, will provide reliable results.