# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

_____

UNITED STATES OF AMERICA,

        Respondent,

        v.

DAVID PAUL HAMMER,

        Petitioner.

_____

:
:
:    Criminal No. 4:CR–96-239
:
:    Judge Muir
:
:    (electronically filed)
:
:
:
:
:

## PETITIONER'S RESPONSE TO THE GOVERNMENT'S
## SUR-REPLY REGARDING PETITIONER'S
## MOTION TO AMEND

DAVID PAUL HAMMER, through his counsel, respectfully submits this

_Response_ to the Government's Sur-Reply regarding Petitioner's Motion to Amend

his Section 2255 Petition.

Petitioner has filed a _Motion_ seeking leave to supplement and amend his

habeas petition in this, the sole forum in which his capital conviction and death

sentence will be reviewed.  As described more fully in the Motion to Amend (*"HMA"*) and Reply ("*HRB*"), and despite the Government's argument to the contrary, this Court has the authority to grant Hammer leave to supplement and amend for a number of reasons.  The Government's Sur-Reply ("*GSR*") relies on mischaracterizations of Hammer's position, misrepresentations of the context of prior proceedings, and misapprehensions of controlling authority in support of its erroneous position that this Court does not have the authority to grant Hammer's requested leave to supplement and amend.

## A.    Hammer is entitled to equitable tolling

As presented in his *Reply Memorandum*, there are several reasons why Mr. Hammer is entitled to equitable tolling.  The Government's *Sur-Reply* contains a number of erroneous arguments, which are addressed below.

### 1.    Equitable Tolling Based Upon this Court's Finding that Prior Counsel Were Unqualified and Unjustifiably Failed to Plead Some of the Claims Contained in the Instant Amendment.

Petitioner has argued that he is entitled to equitable tolling because he was represented by unqualified counsel, as found by this Court in its order of June 4, 2004.  See *Brief in Support of Motion to Amend* (*BMA*)  at 2-3.  The Government erroneously argues that Hammer "abandoned" this argument.  *GSR* at 1-2.  Of course, Hammer was not relying on any "argument" regarding the qualification of

prior Section 2255 counsel but, instead, this Court's *finding* that prior Section 2255 counsel was unqualified (*United States v. Hammer*, 4:CR-96-0239, Order, June 4, 2004).  Obviously, Petitioner cannot "abandon" a finding made by this Court, which stands as the law of the case.[1]  In any event, to clear up any remaining confusion, Petitioner did not and does not abandon his reliance on this Court's finding.

Moreover, as described more fully in Hammer's *Reply Brief*, attorney neglect provides only one of many bases for finding equitable tolling appropriate. *HRB* at 11-15.  As noted in his *Motion to Amend*, upon their assignment to this case, present counsel were under a legal and ethical obligation (that the Government does not dispute) to conduct an independent review and investigation.  That was even more true in view of this Court's finding that prior counsel were unqualified.

Having conducted this review and investigation, present counsel have discovered, developed and pled supplemental facts supporting the averments in the

---

[1]See  Hamilton v. Leavy, 322 F.3d 776, 786-87 (3d Cir. 2003) ("The law of the case doctrine limits relitigation of an issue once it has been decided in an earlier stage of the same litigation. . . . We apply the doctrine with the intent that it will promote finality, consistency, and judicial economy") (internal quotation marks and citations omitted).

Second Amended Petition as well as further legal bases requiring relief. This Court's finding that prior Section 2255 counsel was unqualified, combined with the circumstances leading up to and following appointment of present counsel, therefore, provides support for a finding of equitable tolling on the basis of attorney neglect as described in Fahy v. Horn, 240 F.3d 239 (3d Cir. 2001).

The Government's contention that "*Fahy* specifically notes . . . that deficient performance by federal collateral counsel does not amount to an extraordinary circumstance" justifying equitable tolling in a capital case is wrong. *GSR* at 8-9. Indeed, the very page cited by the Government, 240 F.3d at 245, discusses the distinction between the rule in *non-capital* cases (attorney neglect does not meet the standard justifying equitable tolling) and a *capital* case (attorney neglect does meet that standard in light of the grave consequences).[2] For these reasons, as well as those set forth in Hammer's prior submissions, equitable tolling based upon attorney-neglect in a capital case is appropriate.

---

[2]For the same reasons, the Government's reliance on Johnson v. Hendricks, 314 F.3d 159 (3d Cir. 2002) and David v. Hall, 318 F.3d 343 (1st Cir. 2003) is equally unavailing because each of these cases involved attorney-neglect in a *non-capital* case.

## 2.    Equitable Tolling Based Upon Mental Infirmity.

The Government's contention that Hammer "falls far short" of meeting the standard for tolling on the basis of mental impairment as articulated by Nara v. Frank, 264 F. 3d 310 (3d Cir. 2001), is likewise meritless. *GSR* at 7.  As described more fully in the *Second Amended Petition* as well as in Hammer's *Motion to Amend* and his *Reply*, there exists substantial and compelling evidence demonstrating the invalidity of Hammer's prior waivers before this Court and the Third Circuit, for a number of reasons, including:  Hammer's mental impairments that directly impacted his capacity to make a knowing, intelligent and voluntary waiver; and the pervasive conflicts of interest with the mental health professionals relied upon by this Court and the Third Circuit in reaching a contrary determination with respect to Hammer's capacity to waive his rights at trial, during appellate proceedings, and during earlier phases of the post-conviction proceedings.[3]  These same impairments similarly impacted Hammer's capacity to properly and timely raise and litigate meritorious claims requiring relief from his invalid conviction and death sentence in prior Section 2255 proceedings.

---

[3]The Government does not dispute Hammer's ability to supplement his previously filed petition with the facts and averments in the proposed Third Amended Petition with respect to evidence he expects to present regarding these impairments and the impact of those impairments on his ability to enter a knowing, intelligent and voluntary waiver at trial and on direct appeal.

At an evidentiary hearing, Hammer will demonstrate that he suffers from multiple cognitive, emotional and mental illnesses that have directly affected his capacity to "make a rational choice with respect to continuing or abandoning . . . litigation" and/or that his mental, emotional and cognitive disorders "substantially affect[ed] his capacity" to make a reasoned choice during prior purported waivers of rights. Rees v. Peyton, 384 U.S. 312, 314 (1966) (*per curiam*). He has already supported these contentions with expert reports which he has provided to the Government, and he will offer these opinions at the hearing. There is no question but that Hammer's impairments affected his post-conviction waivers, just as these impairments affected his trial and post-trial waivers. That is precisely what Hammer will prove at an evidentiary hearing.

Contrary to the Government's narrow view, the absence of a prior finding of incompetency does not diminish Hammer's entitlement to an evidentiary hearing to demonstrate his mental incapacity during the habeas proceedings under Nara. *GSR* at 7. Nara does not hold that an evidentiary hearing on mental-impairment-equitable-tolling is only appropriate where there has been a prior adjudication of incompetency. Indeed, recognizing the fluidity of competency, the Nara Court noted that "there was no evidence in the record that Nara's current mental status affected his ability to present his habeas petition." Nara 264 F.3d at 320.

Concluding that the petitioner had "presented evidence of ongoing, if not consecutive, periods of mental incompetency," Nara required an evidentiary hearing to explore the impact of the petitioner's mental illness on his ability to prosecute his habeas petition. Id. Thus, contrary to the Government's contention, the existence or absence of a prior *adjudication* of competency is not dispositive. Instead, the determination rests on whether or not the petitioner has proffered sufficient evidence that his mental impairments affected his ability to prosecute the habeas petition.

As the averments in the Second Amended Petition and those averments in the Third Amended Petition the Government concedes are proper supplement to the claims previously raised demonstrate, Hammer suffers from cognitive, mental and emotional impairments that affected his capacity to make knowing, intelligent and voluntary choices during the section 2255 proceedings, as well as during trial and appellate proceedings. Thus, as in Nara, Hammer has pled that, at an evidentiary hearing, he will present "evidence of ongoing, if not consecutive, periods" of mental incapacity.

Moreover, to the extent that there has not been a prior finding of incompetence is itself a result of Hammer's mental infirmities. His unknowing, unintelligent and involuntary guilty plea terminated the ultimate finding in this

regard. His waiver of direct appeal rights and his earlier vacillations regarding post-conviction litigation have likewise prevented a genuine competency proceeding from occurring – those in fact are the very claims before the Court.

In the final analysis, David Hammer is either playing games with this Court (through his on-again, off-again litigation) or he is very disturbed. Counsel have proffered significant evidence showing that it is the latter. He is entitled to a hearing on this set of claims and allegations. If counsel convinces this Court that Hammer is in fact disturbed and his litigation "decisions" have been adversely effected by his disturbances, he is not only entitled to equitable tolling, but to relief.

Moreover, as described in the *Second Amended Petition* and in the *Proposed Third Amendment*, the prior competency determinations were legally and constitutionally flawed as a result of the Court's reliance on conflicted mental health experts and improper and unconstitutional competency proceedings. To say that Hammer cannot present evidence of his mental incapacity during section 2255 proceedings in support of equitable tolling on the basis of prior constitutionally flawed and invalid competency findings – especially in light of the grave consequences of this capital case – sets basic norms of due process and equity on its head.

The Government also argues that Petitioner is not entitled to equitable tolling based upon his mental infirmities because counsel "conceded" that he was competent to agree to litigate claims of ineffective counsel in his Section 2255 petition. *GSR* at 8-9.

As Nara and other authority have recognized, competency and capacity to make rational decisions regarding whether or not to litigate is a fluid concept that can fluctuate depending on the nature of the mental illness, the nature of treatment provided, other external influences such as conditions of confinement, and the nature of the decision being made at the moment in time. As already noted, Hammer will present expert testimony demonstrating that (1) Hammer's cognitive impairments are affected by medication, his environment and the impulsivity attendant with his brain damage; (2) his mental and emotional impairments are affected by medications, his conditions of confinement and other external factors; and (3) these factors, individually and combined, impacted Hammer's capacity to make reasoned judgments and determinations regarding the Section 2255 proceedings.

Expert testimony will also demonstrate that Hammer is continually fluctuating in and out of competency depending on these factors. In short, while he may be competent one day, that does not mean he remains competent at all

times.

The actual circumstances leading up to the October 6, 2004, hearing further undercuts the Government's position that any perceived concession by counsel during that hearing constitutes a concession that he was competent during prior proceedings.  As this Court is aware, the issue of proceeding or waiving in that hearing arose out of the initial request that trial counsel, Ronald C. Travis, Esquire, be appointed as second counsel in order to facilitate the transition from prior section 2255 counsel to newly appointed counsel.  Recognizing that there were ineffective assistance of counsel claims raised in the Second Amended Petition, this Court initially took issue with the request and set deadlines for Hammer to notify the Court with respect to his intentions regarding the ineffective assistance of counsel claims.  Thus, the *waiver* would have occurred if Hammer had elected to have Mr. Travis remain as his counsel.

As the record demonstrates, Mr. Hammer elected to litigate the ineffective assistance of counsel claims thereby vitiating any need for that *waiver*.  Thus, contrary to the Government's contention, counsel's only "concession" during that hearing was that Hammer had elected to litigate, that his competency fluctuated and that his decision to litigate was a knowing one.  That does not, as the Government erroneously contends, diminish Hammer's claims that his *waiver*

10

during trial, post-trial and appellate proceedings were invalid as a result of his mental, emotional and cognitive impairments, nor does it diminish the evidence Hammer expects to present demonstrating the impact of his disabilities on his capacity to prosecute his habeas claims.

Counsel did not concede that their client was competent at all times relevant to these proceedings. To their eye, he was making sense on the day that he decided to litigate these claims which were essential to his survival – nothing more, nothing less. The Government simply makes far too much of this alleged concession.

**B.     Amendment is proper for those claims and averments that relate back to the original petition.**

The Government's contentions with respect to "relation back" are similarly flawed. As described in Petitioner's *Motion to Amend* and his *Reply*, amendment is proper for a number of averments and claims because they "relate back" to claims and averments raised in the Second Amended Petition. *HRB* at 4-10. Initially, the Government contends that claims 17-21 "all present new legal claims for relief" because "that was the whole point of Hammer's decision to designate them as separate claims." *GSR* at 4. Of course, that is not the standard for determining whether or not an amendment relates back under Rule 15(c). Instead,

11

the standard is whether or not "the *claim* . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2).  Thus, the rule contemplates additional "claims" so long as those "claims" relate back to the original pleading.

As described more fully in Hammer's Reply, proposed Grounds 17-19 relate back to claims raised in the Second Amended Petition because they arise out of conduct, transactions, or occurrences set forth in the original pleading.  See *HRB* at 4-6.[4]

Next, the Government erroneously contends that "Hammer does not argue that these claims . . . arise out of the same 'conduct, transaction, or occurrence' as the original petition."  *GSR* at 4.  On the contrary, Hammer's *Reply* articulates specific claims from the Second Amended Petition in which these claims arise and how those claims relate back to the original petition.  *HRB* at 4-6.

Likewise, Hammer's *Reply* articulates how the contested additional facts and averments within various claims in the Second Amended Petition arise out of the claims raised in the original petition.  Id. at 7-10.  Contrary to the Government's contention, Hammer does not rely on a general allegation that the

---

[4]Hammer also articulates specifically how the averments in Claims 20 -22 are subject to equitable tolling.  *HRB* at 14-15.

claims arise out of the *same trial and sentencing* (*GSR* at 3-4) but, rather, that these allegations arise out of the specific transactions, conduct and occurrences pled *within the original petition*.  See *HRB* at 8-10.[5]  The Government's contention to the contrary is meritless.[6]

The Government's contention that "Hammer has until the present motion to amend prohibited his counsel from attacking the effectiveness of Mr. Ruhnke and Mr. Travis," *GSR* at 5, is curious and, more importantly, simply not true.  Indeed, the Government acknowledged that Hammer raised ineffective assistance of counsel claims in the Second Amended Petition and moved for discovery on that basis.  See *Motion for Disclosure of Trial Counsel's Papers and Files and for a Ruling on Waiver of Attorney Client Privilege*, 10/15/04 (Doc. 985).

Finally, the Government's reliance on Edwards v. Carpenter, 529 U.S. 446 (2000), to preclude Hammer from presenting evidence of ineffective assistance of counsel to demonstrate cause and prejudice is erroneous.  Edwards involved

[5]For this reason, the Government's reliance on United States v. Davenport, 217 F.3d 1341 (11th Cir. 2000) is misplaced.  There, the court held that "the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings."  Id.  at 1344.

[6]By making this argument, Hammer does not waive or "abandon" his position that United States v. Duffus, 174 F.3d 333 (3d Cir. 1999) and United States v. Thomas, 221 F.3d 430 (3d Cir. 2000) were wrongly decided.

questions of comity and the failure to exhaust claims in state court proceedings.

Edwards 529 U.S. at 452 (Describing the issue as one involving "*Carrier*'s

exhaustion" and the interplay between state procedural bars and the fair

presentation requirements of comity).  As there is no such exhaustion requirement

here, Edwards is inapplicable.

**C.      Hammer is entitled to a hearing on facts relevant to his Motion to Amend, and that Hearing Should be Combined with the Hearing on the Merits.**

The Government contends that Hammer should not have an evidentiary

hearing on the various bases supporting amendment of the petition.  *GSR* at 10.

There is no serious question but that Petitioner is entitled to an evidentiary hearing

in which he can prove the facts he has pled which would permit him to amend his

petition.  Ample authority exists permitting evidentiary hearings relevant to a

procedural defense (such as a statute of limitations defense) in habeas

proceedings.  See e.g., Schlup v. Delo, 513 U.S. 298, 308-12 & n. 18 (1995)

(question whether defenses of procedural default and successive petition bars are

overcome by showing of actual innocence is "factually intensive" and remanding

to district court to consider the petitioner's request for hearing).

Alternatively, the Government proposes a "pre-merits" hearing, apparently

concerned that a consolidated hearing confuses and "conflates" the Court's

14

consideration of the limitations issue. *GSR* at 10. However, the witnesses called to support the issues relevant to the pre-hearing hearing, are identical to those that would be called for the merits determination. Thus, Hammer proposed consolidating the pre-hearing and the hearing, because of the obvious concerns about expenditures of resources, and judicial economy.

Since this is a hearing before a Court, rather than lay jurors, the risk of confusion and "conflation" is non-existent. This Court has discretion to permit the amendment subject to a plenary hearing.

## D.    Conclusion

For each of these reasons, as well as those set forth in Hammer's *Motion to Amend*, *Brief in Support* and *Reply*, the Government's contention that this Court is without authority to grant leave to amend is meritless. At a minimum, Hammer is entitled to present evidence supporting his bases for permitting amendment at an evidentiary hearing. For reasons of judicial economy and preservation of resources, Hammer submits that evidentiary presentation can be consolidated with the present merits hearings.

WHEREFORE, for all of these reasons, David Paul Hammer, by counsel respectfully requests that this Honorable Court GRANT his *Motion for Leave to File Supplemental and Third Amended Motion to Vacate and Set Aside Conviction and*

*Sentence Pursuant to 28 U.S.C. 2255 by a Person in Federal Custody and to File*

*Motion Exceeding Page Limitation.*

Respectfully submitted,


s/ Anne L. Saunders
ANNE L. SAUNDERS, ESQUIRE
Asst. Federal Public Defender
Attorney ID #PA 48458
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. (717) 782-3843
Fax No. (717) 782-3966
(Anne_Saunders@fd.org)


s/ Michael Wiseman
MICHAEL WISEMAN, ESQUIRE
Supervising Assistant Federal Defender
Attorney ID#PA 75342
Defender Association of Philadelphia
Federal Court Division-Capital Habeas Unit
Suite 545 West – The Curtis Building
Independence Square West
Philadelphia, PA 19106
(Michael_Wiseman@fd.org)

Dated: January 19, 2005

# CERTIFICATE OF SERVICE

I, Anne Saunders, of the Federal Public Defender's Office do hereby certify that on this date I served a copy of the foregoing *Petitioner's Response to the Government's Sur-reply Regarding Petitioner's Motion to Amend* via Electronic Case Filing, or by placing a copy in the United States mail, first class in Harrisburg, Pennsylvania, addressed to the following:

Frederick E. Martin, Esquire
United States Attorney's Office
Herman T. Schneebeli Federal Building
Suite 316
240 West Third Street
Williamsport, PA. 17701-6465

Gwynn X. Kinsey, Jr., Esquire
United States Department of Justice
Criminal Division, Capital Case Unit
1331 F. Street, N.W.
Washington, D.C. 20530


Date: January 19, 2005                Respectfully submitted,

s/ Michael Wiseman
Michael Wiseman
Supervisory Assistant Federal Defender
Attorney ID #PA 75342
Capital Habeas Corpus Unit
Federal Court Division
Defender Association of Philadelphia
Suite 545 West–The Curtis Center
215-928-0520
(Michael_Wiseman@fd.org)
Attorney for David Paul Hammer