IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Crim. No. 4:CR-96-00239 |
| | : Civil No. 4:CV-01-00510 |
| v. | : (Muir, J.) |
| | : |
| DAVID PAUL HAMMER | : **ELECTRONICALLY FILED** |

**UNITED STATES' BRIEF IN OPPOSITION TO PETITIONER'S
MOTION FOR AN ORDER PERMITTING COUNSEL TO BE
PRESENT AT THE GOVERNMENT'S MENTAL HEALTH EVALUATION**

<u>Procedural History</u>.

For purposes of this issue, relevant procedural history begins on March 23, 2005, when Hammer's counsel filed a motion and supporting brief for an order permitting counsel and an investigator to be present at the government's mental health evaluation of Hammer and uncontested request for expedited briefing.  In an order dated March 24, 2005, this court granted relief and required the government to respond to issue by April 4, 2005.  Herewith presented are legal arguments directed against Hammer's most recent request for relief.

<u>Counter-Statement of Facts</u>.

Petitioner's submission included a letter to Hammer's counsel from the government dated March 22, 2005, in which it is stated that government <u>experts</u> "oppose your proposed physical presence as well as other experts during their examinations." (Petitioner Exhibit 3, p. 1.)   Attached, as government exhibit 1, is a sworn statement from Dr. Daryl Matthews, a psychiatrist hired by the government to examine Hammer and to respond to his

experts who claim that petitioner was incompetent on June 22, 1998, and at various other times to enter a guilty plea or to waive any rights or suffered from Dissociative Identity Disorder or other serious mental health problems as early as 1996.  Dr. Matthews, in that statement, indicates the negative effect which other individuals' physical presence would have on his ability to conduct fair and accurate mental health examinations.

Issue.

Whether either the Sixth or Fifth Amendment entitle Hammer to have present his attorney and an investigator during mental health testing conducted by government-hired experts which otherwise could have a negative impact on those experts' abilities to conduct a complete and undistracted examination.

Argument.

### 1.  Introduction.

Hammer's request actually has two components.  Initially, by relying upon one case slightly on point and others generally referring to the Sixth Amendment's right to effective counsel, Hammer seeks to have an attorney, as well as an investigator, present during the examination which had been proposed for April 11 and 12, 2005, but which now has been postponed to a later date.  (Motion, ¶ 6, p. 3; Brief, pp. 2-6.)  Additionally, without citing any authority, Hammer's counsel requests that "this Court further direct that the Government disclose to the defense any testing it expects its experts to conduct during the

evaluation and the nature and scope of the evaluation the government intends to conduct through its experts."  (Brief, p. 7.)

The principal issue raised by Hammer has been uniformly rejected by Courts of Appeals, as well as, with one exception, District Courts.  Moreover, in a recent analogous decision, the Court of Appeals for this Circuit has indicated that for periodic mental competency evaluations, there is no Constitutional right for counsel to be present.  As to the other request for relief, there has been more definitive Supreme Court decisions on that subject matter.  It is submitted that the government's letter to petitioner's counsel in which they indicate that their experts will conduct a mental health examination to contest what petitioner's experts already have concluded provides sufficient notice under the circumstances.  Consequently, this Court should deny Hammer relief.

**2.   The Presence of Hammer's Counsel and An Investigator During A Mental Health Examination.**

Dr. Matthews, the proposed government expert, has set forth a rationale which addresses the potential "prejudice or harm"

which counsel for Hammer claim is absent in the record.[1]  Indeed,
several Courts of Appeals decisions have been premised on the
potential harm which the presence of an attorney or even
investigator may bring with him or her to attend a mental health
interview or testing session.  *United States v. Byers*, 740 F.2d
1104, 1122 (D.C. Cir. 1983), *cert. denied*, 464 U.S. 1046 (1984)
(*en banc* plurality opinion); *United States v. Cohen*, 530 F.2d 43,
48 (5th Cir.), *cert. denied*, 429 U.S. 855 (1976); *United States
v. Greene*, 497 F.2d 1068, 1079-80 (7th Cir. 1974), *cert. denied*,
420 U.S. 909 (1975); *United States v. Albright*, 388 F.2d 719, 726
(4th Cir. 1968).  Other District Court cases have also reached
this conclusion. *Rogers v. Director*, *TDCJ-ID*, 864 F. Supp. 584,
594 (E.D. Tex. 1994), *aff'd sub nom. Rogers v. Scott*, 70 F.3d 340
(5th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996); *Godfrey v.
Francis*, 613 F. Supp. 747 (N.D. Ga. 1985), *aff'd sub nom. Godfrey*

---

[1]  Hammer's counsel claim that "the government opposition is based on merely seeking a tactical litigation advantage." (Brief, p. 6.)  But the government has not attended any of mental health examinations conducted by Hammer's chosen experts. Indeed, petitioner's counsel made arrangements directly with the Bureau of Prisons for this to occur without any notice to counsel in these proceedings or "invitation" to send representatives to attend.  That Bureau of Prisons' employees may have been within some distance of the examination, as they are in all cases of visitation, does not suggest that the government has any "tactical litigation advantage" on this mental health issue. Indeed, the defense course of conduct as well as revelation only in a letter dated March 17, 2005, of their interest in being present suggests that if any side is engaging in tactics, it is not the prosecution.

*v. Kemp,* 836 F.2d 1557 (11th Cir.), *reh'g denied*, 842 F.2d 339, *cert. dismissed sub nom., Zant v. Godfrey*, 487 U.S. 1264 (1988).

Normally, psychological or psychiatric testing of individuals does not take place before an audience of even individuals concerned for that person's well-being, such as family or legal representatives, where confidentiality is not otherwise a concern.  Thus, Dr. Matthews' observations are somewhat self-evident.  Deference to his professional opinion, moreover, is appropriate under these circumstances.

By the same token, David Paul Hammer hardly is a neophyte to the criminal justice system or mental health examinations.  Many have occurred during the course of this litigation by both defense and governmental mental health experts and at least two evaluations took place in his case even before Hammer killed Andrew Marti.  This situation, contrary to petitioner's counsel's suggestion regarding the balancing of a persons Constitutional "right with the cost of effectuating it," (Brief, pp. 6-7), hardly cries out for the attendance of legal personnel to aid a guileless person from possibly being misled or "tricked" by government-hired experts.

It does not appear that the Third Circuit has directly ruled on this issue.  However, in discussing the appropriate role of petitioner's counsel at any periodic mental health re-evaluations, this Circuit's decision found, relying upon *Estelle v. Smith*, 451 U.S. 454 (1981), that "counsel did not have a right

under the Sixth Amendment to be present and observe the 1984 Deitz examination." (Citation omitted.) *Re v. Snyder*, 293 F.3d 678, 682 (3rd Cir.), *cert. denied*, 537 U.S. 979 (2002).

In the face of this directly applicable or analogous decisional law, Hammer relies primarily upon *Thomas-Bey v. Smith*, 869 F. Supp. 1214 (D. Md. 1994), *aff'd mem.*, 67 F.3d 296 (4th Cir. 1995). (Brief, p. 4.) However, recently another jurist, Judge Guzman of the United States District Court for the Northern District of Illinois, was not only confronted with the same issue in a capital case, but also made reference to the authority set forth in *Thomas-Bey v. Smith, supra*. This decision, *United States v. Mikos*, while not reported in F. Supp. 2d, is attached and may be found at 2004 WL 2091999 (N.D. Ill. 2004). (Government Exhibit 2.) At page 2 of his opinion, Judge Guzman analyzes that authority as follows:

> The crux of the *Thomas-Bey* court's holding, however, was that counsel in that case utterly failed to provide effective assistance 'when he consented to the prosecution's request without any reasoned consideration or investigation.' *Id.* at 1227. The court's mention of counsel's failure to attend the interview was made only in the context that it was yet another opportunity for counsel to discover whether the psychiatrist was acting in the role as expert for the prosecution and whether he intended to ask questions relating to future dangerousness for purposes of investigating the scope of the interview. *Id.* at 1227 n. 7. In the instant case, however, Defendant and his counsel are fully aware of the fact that the mental health expert is hired by the Government. Further, to the extent that

> Defendant asserts an insanity defense and/or raises mitigation issues, Defendant and his counsel are aware of the fact that issues relating to the rebuttal of such theories will be well within the scope of any examination conducted by the Government's expert. *See Buchanan v. Kentucky*, 483 U.S. 402, 425, 107 S. Ct. 2906, 97 L. Ed. 2d 336 (1987) (stating that *Estelle* put counsel on notice that if a mental status defense is raised, defendant should anticipate the prosecution's use of psychological evidence in rebuttal). To be clear, the Government either already has provided or will provide Defendant and his counsel notice of the scope of the examination prior to its occurrence. Accordingly, the Court finds *Thomas-Bey* distinguishable and unpersuasive. [FN1.]
>
> [FN1.] Further, the Fourth Circuit, in affirming the district court's ruling that counsel had provided ineffective assistance, also addressed counsel's failure to attend the interview in the context of his failure to make a reasonable investigation or make a reasonable decision that would render other particular investigations unnecessary. *Thomas-Bey v. Nuth*, 67 F.3d 296 (4th Cir. 1995) (unpublished). It is important to note that the Fourth Circuit in *Thomas-Bey* neither questioned nor overruled *United States v. Albright*, 388 F.2d 719, 726 (4th Cir. 1968), in which it held that 'a defendant has no federal or state constitutional right to have his attorney present during a psychiatric examination conducted at the instance of the prosecutor.'

In short, Hammer's reliance upon *Thomas-Bey v. Smith, supra* is misplaced in multiple respects.

Their citations to two other cases also do not advance Hammer's position. (Brief, p. 5.) To be sure, in *Richey v. Mitchell*, 395 F.3d 660 (6th Cir. 2005), that Court of Appeals

noted the importance of counsel to provide effective assistance under the Sixth Amendment.  However, that case did not involve a mental health expert but observed multiple deficiencies in that counsel's selection and use of a defense expert.  Consequently, *Richey v. Mitchell,* 395 F.3d at 683-84 lends no support.

Finally,[2] in *Dees v. Caspiri*, 904 F.2d 452 (8th Cir.), *cert. denied*, 498 U.S. 970 (1990), it is true that there was criticism of defense counsel in that case for not garnering expertise necessary to cross-examine the prosecution's expert.  However, *Dees* involved a forensic expert who examined photographs and casts, not conducting any mental health tests.  904 F.2d at 455.  Moreover, although defense counsel should have secured more technical information to cross-examine the government's expert effectively, this did not require his attendance at the time the expert conducted testing on behalf of the State of Missouri.

The government submits that Judge Guzman's decision in *United States v. Mikos, supra*, is persuasive and is directly on point.  Moreover, thought should be given as to the extent of Hammer's legal position.  Nowhere in studies, which this Court

---

[2]  Hammer's attorneys also rely upon ABA Standards for defense counsel in Death Penalty cases.  (Petitioner Exhibit 4; Brief, p. 4.)  But the provision cited relates to "the defense case concerning penalty."  This proceeding already occurred in July 1998.  Instead, Hammer, in this collateral proceeding, has put into issue his mental status  and competence in that and other years.  Under any circumstances, ABA guidelines do not have the force of law or necessarily set forth that standard of conduct which the Sixth Amendment requires.

can order pursuant to 18 U.S.C. §§ 4241, 4242, and 4247(b), is there provision for an attorney to be present for the duration of any examinations.  It is submitted that Hammer's suggestion would engraft this additional purported safeguard, a proposition which Congress apparently did not believe was necessary or advisable. Consequently, this Court, under all of the circumstances, should deny Hammer's request that an investigator and one of his counsel be present during any examinations at Terre Haute.

Hammer advances the Fifth Amendment as an independent legal basis for allowing the presence of counsel during the examinations, but the Fifth Amendment creates no entitlement to the presence of counsel.  As the Supreme Court made clear in *Estelle v. Smith*, all the Fifth Amendment requires in this context is that the defendant be *advised* at the commencement of the examinations of his rights to remain silent and to consult with counsel, and that whatever he says in the examinations could be used against him.  *See* 451 U.S. at 466-69.  The government will ensure that Hammer is advised accordingly at the commencement of the examinations, bearing in mind that any refusal by Hammer to cooperate in the examinations would provide the Court with cause to bar the defense evidence to which the government's examination relates.  Citing *Buchanan v. Kentucky*, 483 U.S. 402, 422-23 (1987), Hammer acknowledges that he waived his Fifth and Sixth Amendment rights to oppose an examination by having placed his mental status at issue.  (Brief, p. 3.)  Thus,

the particular advisements that Hammer will be provided at the commencement of the examinations are (a) he may elect not to participate in the examinations, but if he does so, the Court may consider his non-cooperation and may also bar the defense evidence to which the government's examination relates; (b) he has a right to consult with counsel before proceeding with, but not during, the examinations; and (c) anything he says during the examinations can be used against him (here, in determining whether his death sentence should remain undisturbed and ultimately carried out).

Similarly, this Court should reject Hammer's request for a detailed explanation as to what the experts intend to do before they meet Hammer.  In this respect, the recent Court of Appeals decision in *Re v. Snyder, supra* at 682 is instructive.  There the defense claimed that they were unaware that a potential test of mental health competency would involve an examination of whether the person was a malinger.  As District Judge Caputo, who sat by designation at the Court of Appeals, noted "Here there was adequate notice, since his mental status had been at issue since his arrest, and there is no such additional purpose; whether *Re* was malingering was relevant to and part of the determination of his mental competence to stand trial, and it was an appropriate consideration in view of Dr. Galliani's reliance on interviews with *Re* conducted in the 1980's."  293 F.3d at 682-83. Similarly, there is no requirement under Federal Rules of

Criminal Procedure 16 and 12.2(b) and (c) that defense counsel be told in advance what particular psychological tests may be conducted to counter Hammer's claims that he was incompetent in 1998 and in later years or suffered from Dissociative Identity Disorder.  The general admonition to petitioner's counsel of the request to interview Hammer to rebut his experts' reports is sufficient notice under *Powell v. Texas*, 492 U.S. 680, 686 (1989) and *Re v. Snyder*, 293 F.3d at 682-83.

Conclusion.

For the above-stated reasons, this Honorable Court should deny Hammer's request to have an attorney and an investigator present when he is examined by government mental health experts.

Respectfully submitted,

THOMAS A. MARINO
United States Attorney

By s/Frederick E. Martin
FREDERICK E. MARTIN
Assistant United States Attorney
PA 57455
Herman T. Schneebeli Federal Bldg.
240 West Fourth Street, Suite 316
Williamsport, PA 17701-6465
Tele:  (570) 326-1935
FAX:  (570) 326-7916
Electronic Mail:
Fred.Martin@usdoj.gov

Dated: March 31 , 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA      : Crim. No. 4:CR-96-00239
                              :
            v.                : (Muir, J.)
                              :
DAVID PAUL HAMMER            : **ELECTRONICALLY FILED**


## CERTIFICATE OF SERVICE

    I hereby certify that I caused a true and correct copy of the foregoing

**UNITED STATES' BRIEF IN OPPOSITION TO PETITIONER'S
MOTION FOR AN ORDER PERMITTING COUNSEL TO BE
PRESENT AT THE GOVERNMENT'S MENTAL HEALTH EVALUATION**

to be electronically mailed on March 31 , 2005, to:

ADDRESSEE:
        Anne L. Saunders, Esquire
        Anne_Saunders@fd.org

        Michael Wiseman, Esquire
        Michael_Wiseman@fd.org


            s/Frederick E. Martin
           FREDERICK E. MARTIN
           Assistant United States Attorney