## Westlaw.

Not Reported in F.Supp.2d
2004 WL 2091999 (N.D.Ill.)
(Cite as: 2004 WL 2091999 (N.D.Ill.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
**UNITED STATES** OF AMERICA, Plaintiff,
v.
Ronald **MIKOS**, Defendant.
**No. 02 CR 137-1.**

Sept. 16, 2004.

Sean M. Berkowitz, United States Attorney's Office, Chicago, IL, for Plaintiff.

Ronald Mikos, Chicago, IL, pro se.

Cynthia Louise Giacchetti, Law Office of Cynthia Giacchetti, John M. Beal, Richard H. McLeese, Attorney at Law, Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*

GUZMAN, J.

*1 Before the Court is the sole remaining controversy raised in Defendant Ronald Mikos' response to the Government's Motion Regarding Mental Health Evidence: whether the Court must order defense counsel to be present during a Government expert's examination, interview, testing, procedure, or contact involving Defendant. For the reasons provided in this Memorandum Opinion and Order, the Court answers that inquiry in the negative.

*PROCEDURAL HISTORY*

The Government moved for the entry of a proposed order regarding mental health evidence. Defendant Mikos responded to the Government's proposed order with objections and proposed provisions of his own. At a status hearing held in early August, the parties acknowledged that they had resolved all of the issues raised in the Government's motion regarding mental health evidence, except one. In Defendant Mikos' response to the government's motion, he suggests the following Proposed Paragraph 10 as a condition of any mental health examination by a Government expert: "Defense counsel may be present with the Defendant during any examination, interview, testing, procedure, or contact of any kind [ (hereinafter "examination") ] by any expert for the Government." (Def.'s Resp. Gov't's Mot. & Mem. Regarding Mental Health Evidence at 15.) Defendant argues that counsel's presence is required by the counsel guarantee of the Sixth Amendment to the U.S. Constitution. The Government disagrees and objects to Proposed Paragraph 10.

*DISCUSSION*

The question presented is to the extent that this capital Defendant asserts an insanity defense, whether defense counsel's exclusion at a Government expert's examination of Defendant violates Defendant's rights to assistance of counsel guaranteed by the Sixth Amendment. The Sixth Amendment to the U.S. Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." This constitutional guarantee was a result of "the recognition and awareness that an unaided layman had little skill in arguing the law or in coping with an intricate procedural system." *United States v. Ash*, 413 U.S. 300, 307, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). "[T]he core purpose of the counsel guarantee was to assure 'Assistance' at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor." *Id.* at 309. However, the counsel guarantee has been extended to "critical confrontations of the accused by the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality," *i.e.*, "critical stages of the proceedings." *United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (internal quotations omitted).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**GOVERNMENT EXHIBIT**
2

Not Reported in F.Supp.2d                                                                      Page 2
2004 WL 2091999 (N.D.Ill.)
**(Cite as: 2004 WL 2091999 (N.D.Ill.))**

Defendant first relies on *Estelle v. Smith*, 451 U.S. 454, 470-71, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). The *Estelle* Court held that a defendant has a Sixth Amendment right to assistance of counsel before submitting to a psychiatric interview by a government expert because that is a critical stage of the criminal process. *Id.* at 469. More specifically, the Court held that after a capital defendant is formally charged, a psychiatric examination without first notifying counsel that the examination will address the issue of defendant's future dangerousness violates the defendant's Sixth Amendment right to counsel. *Id.* at 471. However, the *Estelle* Court stated: "Respondent does not assert, and the Court of Appeals did not find, any constitutional right to have counsel actually present during the examination. In fact, the Court of Appeals recognized that 'an attorney present during the psychiatric interview could contribute little and might seriously disrupt the examination." ' *Id.* n. 14 (quoting *Smith v. Estelle*, 602 F.2d 694, 708 (5th Cir.1979)). Defendant concedes that the *Estelle* Court did not decide whether the presence of counsel during the government's psychiatric examination was required by the Sixth Amendment.

**\*2** Defendant also relies on *Houston v. State*, in which the Alaska Supreme Court held that the guarantee of effective assistance of counsel provided in Alaska's constitution required the presence of defense counsel during a mid-trial psychiatric interview which was conducted by the prosecution pursuant to a court order. 602 P.2d 784, 795-96 (Alaska 1979). However, the Alaska Supreme Court is "not limited by decisions of the United States Supreme Court or the United States Constitution when [it] expound[s][its] state constitution; the Alaska Constitution may have broader safeguards than the minimum federal standards." *Roberts v. State*, 458 P.2d 340, 342-43 (Alaska 1969). Thus, how the Alaska Supreme Court chooses to interpret the counsel guarantee provided in Alaska's constitution is not particularly useful in determining the federal standard that this Court must apply.

Next, Defendant relies on *Thomas-Bey v. Smith*, in which a district court in Maryland held that counsel was ineffective for his consenting to a post-trial psychiatric interview of the defendant by the prosecution's expert psychiatrist, his failure to attend the interview, and his failure to investigate whether the psychiatrist was hired by the State and whether the psychiatrist intended to and did ask questions relating to future dangerousness. 869 F.Supp. 1214, 1225-27 (D.Md.1994), *aff'd mem.*, 67 F.3d 296 (4th Cir.1995). The crux of the *Thomas-Bey* court's holding, however, was that counsel in that case utterly failed to provide effective assistance "when he consented to the prosecution's request without any reasoned consideration or investigation." *Id.* at 1227. The court's mention of counsel's failure to attend the interview was made only in the context that it was yet another opportunity for counsel to discover whether the psychiatrist was acting in the role as expert for the prosecution and whether he intended to ask questions relating to future dangerousness for purposes of investigating the scope of the interview. *Id.* at 1227 n. 7. In the instant case, however, Defendant and his counsel are fully aware of the fact that the mental health expert is hired by the Government. Further, to the extent that Defendant asserts an insanity defense and/or raises mitigation issues, Defendant and his counsel are aware of the fact that issues relating to the rebuttal of such theories will be well within the scope of any examination conducted by the Government's expert. *See Buchanan v. Kentucky*, 483 U.S. 402, 425, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987) (stating that *Estelle* put counsel on notice that if a mental status defense is raised, defendant should anticipate the prosecution's use of psychological evidence in rebuttal). To be clear, the Government either already has provided or will provide Defendant and his counsel notice of the scope of the examination prior to its occurrence. Accordingly, the Court finds *Thomas-Bey* distinguishable and unpersuasive. [FN1]

> FN1. Further, the Fourth Circuit, in affirming the district court's ruling that counsel had provided ineffective assistance, also addressed counsel's failure to attend the interview in the context of his failure to make a reasonable investigation or make a reasonable decision that would render other particular investigations unnecessary. *Thomas-Bey v. Nuth*, 67 F.3d 296 (4th Cir.1995) (unpublished). It is important to note that the Fourth Circuit in *Thomas-Bey* neither

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 2091999 (N.D.Ill.)
**(Cite as: 2004 WL 2091999 (N.D.Ill.))**

Page 3

questioned nor overruled *United States v. Albright*, 388 F.2d 719, 726 (4th Cir.1968), in which it held that "a defendant has no federal or state constitutional right to have his attorney present during a psychiatric examination conducted at the instance of the prosecutor."

Lastly, Defendant relies on *Baumann v. United States*, 692 F.2d 565, 578 (9th Cir.1982), in which the court held that "a routine presentence interview of an individual convicted of a noncapital federal offense is not ... a critical stage of the proceeding in which counsel's presence or advice, is necessary to protect the defendant's right to a fair trial." The *Baumann* court distinguished *Estelle* and held that the defendant had no constitutional right to notice of a presentence interview or opportunity to seek advice of his attorney in making the decision whether to submit to the interview. *Id.* at 577-78. With regard to such notice and advice prior to submitting to an interview, the *Baumann* court stated that "there is a substantial difference between a psychiatric examination of the defendant in a capital case which seeks to elicit evidence from the defendant relating to the critical aggravating factor of dangerousness, and a 'routine' presentence interview restricted to gathering information upon which the district court, in its discretion, may rely when imposing sentence." *Id.* at 576 (citations omitted). Thus, *Baumann'* s holding and its language that distinguishes *Estelle* merely iterates *Estelle'* s limited holding, discussed above, and fails to address the issue of whether the Sixth Amendment's counsel guarantee requires counsel's presence during an interview of a defendant by a government mental health expert.

**\*3** The Government argues that the Sixth Amendment's counsel guarantee does not require counsel's presence at an examination of Defendant by a government mental health expert because the examination in and of itself does not constitute a critical stage of the proceedings. In order for a particular event to constitute a critical stage of the proceedings, the accused must find himself "confronted, just as at trial, by the procedural system, or by his expert adversary, or by both." *Ash,* 413 U.S. at 310. In such situations, the accused must "require[ ] aid in coping with legal problems or assistance in meeting

his adversary." *Id. at 313.* Lastly, an event will not be considered a critical stage of the proceedings where "no possibility arises that the accused might be misled by his lack of familiarity with the law or overpowered by his professional adversary." *Id. at 317.*

The Supreme Court has held that critical stages of the proceedings at which defendant is subject to trial-like confrontation, and thus entitled to the presence of counsel, include a post-indictment identification line-up, *United States v. Wade,* 388 U.S. 218, 236-37, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and a defendant's communications with an undisclosed undercover informant acting for the Government, *United States v. Henry,* 447 U.S. 264, 274, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), *Massiah v. United States,* 377 U.S. 201, 205-06, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). However, in *United States v. Ash,* 413 U.S. at 321, the Supreme Court held that identification of a defendant through a photographic display is not a critical stage of the proceedings.

The question, then, is whether the government expert's psychiatric examination of Defendant constitutes a trial-like confrontation such that Sixth Amendment protections apply. On that issue, there is ample binding authority in this Circuit. In *United States v. Bohle,* the Seventh Circuit held that it was not an abuse of discretion for a trial court to exclude defense counsel at a government psychiatrist's examination of the defendant. 445 F.2d 54, 67 (7th Cir.1971), *overruled on other grounds in United States v. Lawson,* 653 F.2d 299, 303 n. 12 (7th Cir.1981). The *Bohle* court quoted with approval *United States v. Albright,* 388 F.2d 719, 726 (4th Cir.1968), and held that from:

"[f]rom the intimate and personal nature of the examination, we are satisfied that, except in the unusual case, presence of a third party in a legal and non-medical capacity, would severely limit the efficacy of the examination, and that if defendant's privilege against self-incrimination is given full effect with regard to his inculpatory statements to his examiner, the need for the presence of an attorney is obviated."

*Bohle,* 445 F.2d at 67. The *Bohle* court also stated that " 'the instant case involves a psychiatric examination whose subjective nature requires an atmosphere that is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 2091999 (N.D.Ill.)
**(Cite as: 2004 WL 2091999 (N.D.Ill.))**

conducive to freedom of expression on the part of the examinee." ' *Id.* (quoting *Durst v. Superior Court*, 222 Cal.App.2d 447, 452-53, 35 Cal.Rptr. 143, 147 (1963)). In *United States v. Greene*, 497 F.2d 1068, 1079-80 (7th Cir.1974), the Seventh Circuit reaffirmed *Bohle'*s holding and held that where defense counsel has consented to a defendant's examination by a government mental health expert, exclusion of defense counsel from the examination does not violate defendant's Sixth Amendment rights.

*\*4 Having found binding precedent to guide this Court's decision, the Court need look no further. However, the Government provides the persuasive authority of *United States v. Byers*, 740 F.2d 1104, 1122 (D.C.Cir.1984) (en banc), in which a plurality rejected the Sixth Amendment claim. The *Byers* plurality stated that "the defendant must be confronted either with the need to make a decision requiring distinctively legal advice--which may occur even in a context in which the prosecutor or his agents are not present--or with the need to defend himself against the direct onslaught of the prosecutor--which may require some skills that are not distinctively legal, such as the quality ... of being 'schooled in the detection of suggestive influences." ' *Id.* at 1118.

The *Byers* court held, and this Court agrees, that neither condition exists because at psychiatric interviews, defendant has no strategic legal decisions to make because: (1) once he has put his own sanity at issue he is subject to compulsory examination such that there is no right to refuse to answer the psychiatrist's answer on Fifth Amendment grounds; and (2) he is not confronted by an expert adversary because an examining psychiatrist is neither an adversary in the Sixth Amendment's sense of the term nor an expert in substantive and procedural criminal law. *Id.* at 1118-20. The *Byers* court further noted that "[t]he 'procedural system' of the law ... is evidently antithetical to psychiatric examination, a process informal and unstructured by design." *Id.* at 1120. "Even if counsel were uncharacteristically to sit silent and interpose no procedural objections or suggestions, one can scarcely imagine a successful psychiatric examination in which the subject's eyes move back and forth between the doctor and his attorney." *Id* . Finally, the *Byers* court

stated that an "attorney's presence in such a purely observational capacity, without ability to advise, suggest or object, would have no relationship to the Sixth Amendment's 'Assistance of Counsel." ' *Id.* In addition, this Court agrees with the *Byers* court's reading of *Ash,* which emphasized that " 'lack of scientific precision and inability to reconstruct an event are not the tests' for application of the Sixth Amendment guarantee." *Id.* at 1121 (quoting *Ash,* 413 U.S. at 316). Thus, the Court holds that the presence of defense counsel at Defendant's psychiatric examination by a Government expert is not required by the Sixth Amendment.

### CONCLUSION

For the foregoing reasons, the Court holds that to the extent that Defendant puts his mental condition into issue, the absence of defense counsel at Defendant's psychiatric examination by a Government expert does not violate the Sixth Amendment, which was the sole remaining controversy with regard to the Government's Motion Regarding Mental Health Evidence. Accordingly, the Court rejects Defendant's Proposed Paragraph 10.

**\*5 SO ORDERED**

2004 WL 2091999 (N.D.Ill.)

### Motions, Pleadings and Filings (Back to top)

. 2004 WL 1173316 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum Requesting Extension of Date for Filing Rule 12.2 Notice (Mar. 22, 2004)

. 2004 WL 1173314 (Trial Motion, Memorandum and Affidavit) Defendant Ronald Mikos' Motion Regarding Jury Selection Procedures (Mar. 17, 2004)

. 2004 WL 1173315 (Trial Motion, Memorandum and Affidavit) Defendant Ronald Mikos' Memorandum Regarding Jury Selection Procedures (Mar. 17, 2004)

. 2004 WL 1173313 (Trial Motion, Memorandum and Affidavit) Government's Motion and Memorandum of Law in Support of Inclusion of Capital Questions in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 2091999 (N.D.Ill.)
(Cite as: 2004 WL 2091999 (N.D.Ill.))

Proposed Juror Questionnaire and Inclusion of Capital Questions During Pretrial Voir Dire (Mar. 16, 2004)

. 2004 WL 1173311 (Trial Motion, Memorandum and Affidavit) Government's Motion and Memorandum Regarding Mental Health Evidence (Feb. 09, 2004)

. 2004 WL 1173312 (Trial Motion, Memorandum and Affidavit) Government's Memorandum Regarding Timing of Mental Health Evaluations (Feb. 2004)

. 2003 WL 23524364 (Trial Motion, Memorandum and Affidavit) Agreed Motion to File Instanter (Aug. 11, 2003)

. 2003 WL 23524354 (Trial Motion, Memorandum and Affidavit) Government's Memorandum in Opposition to Defendant's Motion in Limine on Proposed Bullet Lead Expert Under Rule 702 of the Federal Rules of Evidence (Jun. 12, 2003)

. 2003 WL 23524338 (Trial Motion, Memorandum and Affidavit) Defendant's Consolidated Reply to Government's Consolidated Response to Defendant's Motions Relating to Aggravating Factors Alleged in the Special Findings of the Superseding Indictment and Specified in the Notice of Intent to Seek the Death Penalty (May. 14, 2003)

. 2003 WL 23524345 (Trial Motion, Memorandum and Affidavit) Defendant Mikos' Consolidated Reply to the Government's Consolidated Response to the Motions of Defendant Mikos to Suppress Items Seized from Storage Locker and Automobile (May. 14, 2003)

. 2003 WL 23524325 (Trial Motion, Memorandum and Affidavit) Motion in Limine to Exclude Proposed Government Expert Testimony of Paul Eugene Tangren Relating to Ballistics and Tool Marks (Apr. 28, 2003)

. 2003 WL 23524321 (Trial Motion, Memorandum and Affidavit) Motion in Limine to Exclude Government's Proposed Expert Testimony of Charles Peters Relating to Comparative Bullet lead Analysis (Apr. 22, 2003)

. 2003 WL 23524314 (Trial Motion, Memorandum and Affidavit) Government's Consolidated Response

Memorandum in Opposition to Defendant's Motions Regarding the Facial Constitutionality of the Federal Death Penalty Act and Aspects of Its Application to This Case through the Special Findings of the Superseding Indictment and the Government's Notice of Intent to Seek a Sentence of Death (Apr. 14, 2003)

. 2003 WL 23524308 (Trial Motion, Memorandum and Affidavit) Agreed Motion to Extend Briefing Schedule as to Certain Pretrial Motions (Apr. 08, 2003)

. 2003 WL 23524223 (Trial Motion, Memorandum and Affidavit) Motion to Declare the FDPA Unconstitutional, to Strike Special Findings from the Superseding Indictment, and to Dismiss the Notice of Intent to Seek the Death Penalty Because the Act Provides for Written Notice by the Government and Not for Indictmen t by the Grand Jury as Required by the Constitution (Feb. 18, 2003)

. 2003 WL 23524229 (Trial Motion, Memorandum and Affidavit) Motion to Declare the FDPA Unconstitutional, to Strike Special Findings from the Superseding Indictment, and to Dismiss the Notice of Intent to Seek a Sentence of Death Because the Relaxed Evidentiary Standard for Death Eligibility Factors in the FDP A Violates the Fifth and Sixth Amendments (Feb. 18, 2003)

. 2003 WL 23524237 (Trial Motion, Memorandum and Affidavit) Motion to Declare the FDPA Unconstitutional, to Strike Special Findings from the Superseding Indictment and to Dismiss the Notice of Intent to Seek a Sentence of Death Because Execution Denies Continued Opportunity for Exoneration in Violation of the the Fifth and Eighth Amendments (Feb. 18, 2003)

. 2003 WL 23524242 (Trial Motion, Memorandum and Affidavit) Motion to Declare the FDPA Unconstitutional, to Strike the Special Findings in the Superseding Indictment and to Dismiss the Notice of Intent to Seek a Sentence of Death Because the Death Penalty is Under All Circumstances Cruel and Unusual Punishmen t and Violates the United States Constitution (Feb. 18, 2003)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 6
2004 WL 2091999 (N.D.Ill.)
**(Cite as: 2004 WL 2091999 (N.D.Ill.))**

. 2003 WL 23524246 (Trial Motion, Memorandum and Affidavit) Motion to Declare the FDPA Unconstitutional, to Strike the Special Findings in the Superseding Indictment, and to Dismiss the Notice of Intent to Seek a Sentence of Death Because the FDPA is So Incomprehensible to Juries that it Violates the Fifth, Sixth, and Eighth Amendments (Feb. 18, 2003)

. 2003 WL 23524252 (Trial Motion, Memorandum and Affidavit) Motion to Declare the FDPA Unconstitutional, Strike Special Findings in the Superseding Indictment, and Dismiss the Notice of Intent to Seek a Sentence of Death Because the FDPA Fails to Narrow the Class of Persons Eligible for the Death Penalty in Violation of the Eighth Amendment (Feb. 18, 2003)

. 2003 WL 23524257 (Trial Motion, Memorandum and Affidavit) Motion to Declare the FDPA Unconstitutional, to Strike the Special Findings in the Superseding Indictment and to Dismiss the Notice of Intent to Seek a Sentence of Death Because the Federal Death Penalty Act Provisions Regarding Non-Statutory Aggravating Factors Violate the United States Constitution (Feb. 18, 2003)

. 2003 WL 23524264 (Trial Motion, Memorandum and Affidavit) Motion to Strike the "Substantial Planning and Premeditation" Aggravating Factor from the Special Findings in the Superseding Indictment and the Notice of Intent to Seek Death Penalty (Feb. 18, 2003)

. 2003 WL 23524269 (Trial Motion, Memorandum and Affidavit) Motion to Strike the "Particularly Vulnerable Victim" Aggravating Factor from the Special Findings in the Superseding Indictment and the Government's Notice of Intent to Seek Death Penalty (Feb. 18, 2003)

. 2003 WL 23524274 (Trial Motion, Memorandum and Affidavit) Motion to Strike the "Obstruction of Justice" Aggravating Factor from the Notice of Intent to Seek Death Penalty (Feb. 18, 2003)

. 2003 WL 23524278 (Trial Motion, Memorandum and Affidavit) Motion to Strike the "Victim Impact" Aggravating Factor from the Special Findings in the Superseding Indictment and the Notice of Intent to Seek

Death Penalty (Feb. 18, 2003)

. 2003 WL 23524282 (Trial Motion, Memorandum and Affidavit) Motion to Strike the "Lack of Remorse" Aggravating Factor from the Notice of Intent to Seek Death Penalty (Feb. 18, 2003)

. 2003 WL 23524288 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motions for Bill of Particulars with Respect to (1) Superseding Indictment's Notice of Special Findings and (2) Government's Notice of Intent to Seek a Sentence of Death (Feb. 18, 2003)

. 2003 WL 23524293 (Trial Motion, Memorandum and Affidavit) Motion for Disclosure of Exculpatory Evidence, Including Impeaching Information (Feb. 18, 2003)

. 2003 WL 23524297 (Trial Motion, Memorandum and Affidavit) Motion to Suppress Items Seized from Storage Locker (Feb. 18, 2003)

. 2002 WL 32509543 (Trial Motion, Memorandum and Affidavit) Government's Motion to Continue Status Hearing (Oct. 11, 2002)

. 1:02CR00137 (Docket)

                                        (Jun. 06, 2002)

. 2002 WL 32509537 (Trial Motion, Memorandum and Affidavit) Emergency Motion to Vacate Detention Order and Set Conditions of Release (Apr. 01, 2002)

. 2002 WL 32509672 (Trial Motion, Memorandum and Affidavit) Government's Motion in Limine to Admit Statements of Murder Victim Joyce Brannon Pursuant to Federal Rule of Evidence 804(b)(6) (2002)

. 2002 WL 32509682 (Trial Motion, Memorandum and Affidavit) Motion in Limine to Preclude Government Introduction of Evidence Relating to Subpoena for .22 Caliber Revolver (2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.