# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | 96-cr-239 |
| Respondents, | : | |
| | : | Honorable Malcolm J. Muir |
| -against- | : | United States District Judge |
| | : | |
| DAVID PAUL HAMMER, | : | |
| | : | |
| Petitioner. | : | |
| | : | |

_____

### PETITIONER'S BRIEF IN REPLY TO THE GOVERNMENT'S *BRIEF IN OPPOSITION* TO THIRD AMENDED MOTION FOR SECTION 2255 RELIEF

Michael Wiseman
Supervisory Assistant Federal Defender
Attorney ID #PA 75342
Capital Habeas Corpus Unit
Federal Court Division
Defender Association of Philadelphia
Suite 545 West–The Curtis Center
215-928-0520
(Michael_Wiseman@fd.org)

Anne L. Saunders
Asst. Federal Public Defender
Attorney ID #PA 48458
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
717-782-3843
(Anne_Saunders@fd.org)

Counsel for David Paul Hammer

Dated:     May 9, 2005
           Philadelphia, PA

### PRELIMINARY STATEMENT

On November 30, 2004 Petitioner through counsel filed a motion for leave to file a third amendment to his pending Section 2255 Motion.  Following briefing, on January 27, 2005 this Court granted the Motion in part, and denied it in part.  This Court also ordered that Petitioner and the Government file briefs in support and in opposition to the portions of the third amendment that were either granted or provisionally granted.  Petitioner filed his brief on February 25, 2005.  The Government filed its *Brief in Opposition* on April 20, 2005 (hereafter, *BIO*).  Petitioner hereby files his *Brief in Reply*.

### INTRODUCTION AND STATEMENT OF THE ISSUES

The Government's *BIO* is replete with sound legal argument.  It meticulously, mechanically, and – for the most part – accurately, sets forth the law of procedural default, waiver, time bar, and other procedural defenses that are typically raised by the prosecution in post-conviction litigation.  However, despite its technical proficiency, it has little connection to the true facts of this case.

If David Paul Hammer, or his litigation, were of a garden variety, it would by now be at an end.  If David Hammer were merely a vexing litigant, who occasionally changed his mind or waived a right, the doctrines and defenses raised by the Government would apply.  If David Hammer had truly engaged in knowing,

1

intelligent and voluntary actions that placed his death penalty litigation in the precarious posture that it appears to presently rest, the argument contained in the Government's *BIO* would and should prevail.

But, as this Court and undoubtedly the Government are aware, Mr. Hammer is no garden variety litigant, and his case is far off the beaten track. While the Government regales the Court with a litany of Mr. Hammer's waivers and defaults, it utterly refuses to consider that Mr. Hammer is not a well man. On the contrary, he suffers from multiple mental health deficits which have a profound impact on his reasoning ability and his judgment. In a phrase, David Paul Hammer lacks capacity to make knowing, intelligent and voluntary waivers of his rights – particularly in a death penalty case, and especially when the documents which counsel will now review, show a deep-seeded desire to die – a desire which itself is driven by his mental infirmities.

Pursuant to this Court's order, counsel for Petitioner have reviewed the voluminous files of all prior counsel and provided hundreds of pages of discovery to the Government. This discovery consists of letters between Mr. Hammer and his various counsel, letters between counsel, and the notes generated by counsel. From the hundreds of pages, the Government finds significance from two documents (see *BIO* at 5, introducing Government's Exhibits 5 and 6, attached to

the *BIO*).  Yet, the Government has failed to discuss any of the other hundreds of pages which provide prior counsels' bird's-eye view of their ill client; contains their notations of his illness; of his suicidal ideation; his pathological fluctuations and overall lack of capacity to waive his rights – now or in the past.

Petitioner intends to introduce at the evidentiary hearing most of the documents provided in discovery.  While, he would normally await that opportunity, in view of the Government's reliance on **just two** of these documents, Petitioner will now provide a summary of the most significant.  The following chart catalogs Petitioner's prior counsels' observations regarding his mental illness; they record his suicidal thoughts; and his pathological inability to make a decision and stick to it.  To provide context, counsel has annotated the following list with relevant objective benchmarks occurring in this litigation.[1]

| Date | Type of Document | Content |
|---|---|---|
| 9/30/96 | Counsel notes | "Has told Ron and me he has problems w/mitigation. DP a blessing. Given to cooperate. Not stop anyone from doing his job.  'Tomorrow I may feel different.'" |

---

[1]As noted, counsel intend to use all of the referenced documents at the upcoming evidentiary hearing.  Because they are voluminous, counsel has not attached them to this *Brief*.  However, should the Court wish to review them prior to the hearing, counsel can provide them in either hard-copy form or on a disc.

| Date | Type of Document | Content |
|------|------------------|---------|
| 10/18/96 | Counsel notes | "People are scared of Jocko.  Comes out from time to time.  Nasty.  Gets ∆ in trouble."  Leonard will say heard Jocko say, 'I'm going to kill this guy.  Want the death sentence, can't do anything to me anyway.' . . . Final escape-death sentence. 'Final escape' DPH wanted death sentence [But doesn't. Jocko does.  Jocko is tired of doing time.]" |
| 11/13/96 | Counsel notes | "DPH up late at night talking w/Marti and Jocko" . . . Discussion of stages.  May change mind.  May change it again and again. Conflicted." |
| 11/18/96 | Counsel notes | "Psychotic?  Close to, borderline to.  Out of control." |
| 12/5/96 | Counsel notes | "Picture of monkey on wall.  Jasper.  Spoke to Jasper.  Jocko would talk to him and he'd ask Jasper what he thinks. |
| 12/9/96 | Counsel notes | "Needs to see me and Ron.  Wants to change his 'plea' to guilty. . . . If not have what he's entitled to, then just stick needle in my arm.   Not all that committed to doing what we want in the first place.  Doesn't take a lot to knock him off balance." |
| 12/12/96 | Counsel notes | "Hammer talking about pleading guilty.  Fighting penalty?" |
| 12/19/96 | Counsel notes | "Always wanted to be executed." |
| 12/24/96 | Counsel notes | "Very emotional meeting yesterday.  'Released a burden.'  Ron sat in on the interview.  Just sat still.  Pictures of Jasper. . . Jasper doesn't live inside |

4

| Date | Type of Document | Content |
|------|------------------|---------|
| | | him.  Jocko does.  Jasper is afraid of Jocko. . . .Writing above ___ is Celtic.  Doesn't know what it means.  Jocko wrote it.  Celtic Runes writing.  Jocko knows, but can't tell him.  Something to do with White supremacy.  $\triangle$ has problems with mental illness label.  Mind is only thing he has going for him.  Does not want forced medication." |
| 3/9/97 | Counsel notes | "DPH not want to see anyone else re: MPD.  Told Classen going to move a guy in to kill him . . . Why?  I want a death sentence." |
| 3/19/97 | Counsel notes | "For last few days been feeling suicidal.  All of this would be done with." |
| 3/31/97 | Counsel Letter | "...the client has indicated an unwillingness to participate in the hypnosis session." |
| 4/17/97 | Counsel notes | "DPH very down today on idea of mitigating evidence." |
| 4/18/97 | Note between counsel | "Hammer called me on 4/18.  He told me that he did not want you to visit next week and does not want Jill to visit. . . He says he is not in the 'mood' and does not want to go through the 'stuff' associated with a visit." |
| 4/27/97 | Letter Hammer to Government | "I am writing directly to you as I am willing to plead guilty to the murder of Andrew Marti . . . and stipulate to all of the aggravating factors set forth in [the USA's death notice].  I will waive any hearing pursuant to 18 USC 3593, and if a hearing is required by statute, I will stipulate to the aggravating circumstances and waive presenting |

5

| Date | Type of Document | Content |
|---|---|---|
| | | any evidence of mitigation.  Thus allowing for imposition of the death penalty as desired by the United States Government. . . In return for my pleading guilty to a sentence of death, I request the following. 3. That the implementation of the death sentence pursuant to 18 USC 3596, be carried out within ninety (90) days of sentencing and the waiver of appeals by me . . . |
| 4/28/97 | Counsel notes | "Contacted Baracsh and offered to plead guilty to both counts in the indictment and to the agg factors.  Letter already sent.  Willing to plead guilty and stipp to agg factors.  Waive hearing.  Will stip to agg factors and allow imposition of death penalty.  Will proceed pro se.  'I've had enough.  I'm just tired.  Deep in my heart _____ the same.  Fed up.' Not want to die.  Can't be any worse than this. . . My whole intention all along was to ask for a death sentence at penalty. . . Not going to do it himself.  'Make them kill me.'" |
| 4/28/97 | Counsel notes | "Change of heart?  Not 100% Not likely.  Depends on the gov't.  How they act. . . Has spent whole life worrying about what others think. . . Keep on going.  Motion to go pro se. . . It's all or nothing.  Won't plead guilty without guarantee of stipulations.  'I'm going to make them kill me.'" |
| 8/1/97 | Counseled motions | Requesting relief in multiple respects, including, *inter alia*, striking of the death notice; declaring the Federal Death Penalty Act unconstitutional; and seeking to strike specific aggravating factors |

6

| Date | Type of Document | Content |
|------|------------------|---------|
| 8/12/97 | Pro Se Motion | Request for Hearing to Change Plea; to Stipulate to Aggravating Factors Contained in the Notice of Intent to Seek Death Penalty; and Waiver of Any and All Mitigation Evidence |
| 8/18/97 | Counsel notes | "Jocko taking over a lot more last few days. Wants to talk with me. Pissed off.  Jocko knows what everyone does.  DPH doesn't always know what DPH doing.  Rough weekend.  Might hear from Jocko." |
| 8/28/97 | Counsel notes | "Hard for him to go through this stuff.  Has to be done.  A great toll.  Can't just turn it off." |
| 9/18/97 | Letter Hammer to Ruhnke | "I am not at all pleased with the thought of an insanity defense to the crime charged.  All I have is my mind, everything else has been taken.  What if they committed me, forced me to take drugs?  I need a lawyer!" |
| 9/19/97 | Counsel notes | "People don't understand.  Jocko 'punishing me severely' for the other day. . . 'Rope' will make me sleep I'm suicidal.  Severely. . . Stigma of having a mental illness.  If not convicted, then back to dungeon in OSP. |
| 9/27/97 | Letter Hammer to Travis: | "I would like to spend some time planning the guilt stage of trial, I want to know as much as possible, as soon as possible." |
| 6/22/98 | Guilty Plea | |
| 6/25/98 | Counsel notes | "P/C with DPH.  When would life sentence start? Alert court not put on any mitigation.  Desire – no |

| Date | Type of Document | Content |
|---|---|---|
| | | mitigation.  Opening address on his behalf?  Have to do that much.  No closing.  Not call any witnesses on mitigation.  Not have to put any on.  Would really like not to have any counsel and let gov't do what it has to do.  Has thought and thought.  Knows how we feel.  Can get us both released from case.  Have to do what he thinks is right. . .  Part of it is fear of going back to OK.  Not saying I want a death penalty. |
| 6/30/98 | Penalty hearing commenced | |
| 7/24/98 | Jury death verdict | |
| 7/30/98 | Counsel notes | "Unless court orders date/time, director of B.P. will set date not later than 60 days.  Wants judge to set a date.  Filed motion to have us removed from case.  Difference of opinion – no post-trial. No appeals. Satisfied.  Wants immediate sentence. Has made up mind.  Wants to think on it for a few days.  'I'm a realist.'  Best is a new sentencing hearing.  'This gives me control and lets me say goodbye.'  'Has thought about it for weeks and weeks."  Wants me there at the execution. I am as adamantly committed to this decision as I was to the decision to plead guilty." |
| 7/31/98 | Pro se motion | Seeking Discharge of Court Appointed Counsel and Request for Immediate Sentencing |
| 8/3/98 | Hearing held on Pro se Motion to Discharge Counsel | |

8

| Date | Type of Document | Content |
|------|------------------|---------|
| 8/4/98 | Order for competency evaluation (Springfield) | |
| 8/18/98 | Counsel notes | "No second thoughts" |
| 9/3/98 | Counsel notes | "May change his mind – not yet, but may.  Has taken into consideration from family and others to think about it.  And is considering . . . not as committed as he was" |
| 9/30/98 | Counsel notes | "Willing to discuss the issue.  Not inclined to file appeals.  Always has option to change mind and file appeals.  There is a 'good chance' he will file. |
| 10/1/98 | Hearing on competency to discharge counsel and waive appeal | |
| 10/23/98 | Counsel notes | "Agreement with RCT.  Will appeal to CA3 and – clemency – writ of certiorari" |
| 10/29/98 | Counsel notes | "plans to file paper with court on 11th day that he has no intention of filing a notice . |
| 11/4/98 | Sentenced to death | |
| 11/4/98 | Counsel notes | "Good spirits.  Taking control of what's left.  Press release – death wish?  Marti still alive if there hadn't been a death penalty.  Sounds relieved to take no appeals.  Wants me at execution." |

| Date | Type of Document | Content |
|---|---|---|
| 11/9/98 | Counsel notes | "making funeral arrangements . . . Needs to talk with me about living.  Opposing sides.  At conflict.  Has already several times with RCT.  Can't be doing what needs to be doing. |
| 11/10/98 | Counsel notes | Authorized filing of Notice of Appeal |
| 11/27/98 | Counsel notes | "Appeal.  Not mentally in right place now to make that decision.  1st impulse was no appeal." |
| 11/27/98 | Pro se Motion to withdraw appeal | |
| 12/18/98 | Pro se Motion to withdraw motion to withdraw appeal | |
| 3/23/99 | Pro se Motion to dismiss appeal | |
| 5/8/00 | Pro se Motion to dismiss appeal | |
| 5/00 | Pro se Motion for en banc consideration of Court's decision to "reserve decision" on pro se motion to dismiss | |
| 6/30/00 | Pro se Motion to withdraw May 8, 2000 motion to withdraw appeal | |

10

| Date | Type of Document | Content |
|---|---|---|
| 7/11/00 | Letter, Hammer to Court of Appeals | Reiterating that he wanted appeal dismissed: "Therefore, I urge this court to decide my Pro se Motion to have my appeal dismissed and not to consider the issue moot.  My only desire is to have the sentence of death implemented expeditiously, and whatever process or procedure that achieves this result fastest is what I feel is best." |
| 7/18/00 | Argument in Court of Appeals | |
| 8/31/00 | Appeal Dismissed By Court of Appeals | |
| 8/31/00 | Letter Hammer to Monica Foster | "I doubt that I could ever explain my reasoning for proceeding to execution in a way that you would understand.  I have been a fighter and a survivor all of my life, never had I given in to the state, the feds, prison officials or others without fighting.  I've been continuously incarcerated for almost 23 years. . . In truth, I'm tired, and I do not live life, I exist. . . I'm ready for whatever comes next. . . For me, death by lethal injection is a more attractive option, to growing old here. . .I have vacillated more time than I care to count on this issue, for a variety of reasons.  I go back and forth. . . .Ms. Foster, I do realize that you are busy with your clients, and I'll understand if you decline to become involved in this autopsy issue. |
| 9/21/00 | Court order setting execution date of November 15, 2000 | |

| Date | Type of Document | Content |
|------|------------------|---------|
| 9/22/00 | Counsel Notes | Foster notes of meeting with David Paul Hammer |
| 10/5/00 | Pro Se Motion to Preclude autopsy | |
| 10/24/00 | Court order granting Pro Se Motion to prevent autopsy | |
| 10/26/00 | Pro se motion | Motion to vacate execution date and to permit adjudication of section 2255 Motion. |
| 12/21/00 | Order | Appointing Attorneys Foster and Long-Sharp as section 2255 counsel |
| 7/21/01 | Letter Hammer to Counsel Foster & Long-Sharp | "I am greatful [sic] to you both for your willingness to try and save my life. |
| 12/16/01 | Letter Hammer to Foster | "It is my belief that until and/or unless Judge Muir issues an order relieving the two of you as my attorneys, then you are both representing me for the purpose of preparing a Petition for a Writ of Habeas Corpus . . . It is my life on the line and I will not follow blindly by while potentially life and death decisions are made. |
| 3/14/02 | Counsel notes | "Wanting to live vs. wanting to die.  This was a constant battle." |
| 3/31/02 | Letter Hammer to Foster: | "I write to thank each of you for all of your efforts and hard work on my behalf.  I am pleased with the petition filed on my behalf.  I am |

12

| Date | Type of Document | Content |
|------|------------------|---------|
| | | hopefully optimistic that we may prevail at some point." |
| 6/10/02 | Letter Hammer to Foster | "I still don't have a clear picture of exactly where we are headed, and that's startin [sic] to bug me just a bit.  Have those motions I asked Monica to file, been filed yet?  If not, then why?" |
| 6/13/02 | Letter Hammer to Foster | "It is the purpose of this letter to request in writing that each of you withdraw as my attorneys in this case.  To be blunt, I do not want either of you as my lawyers; I no longer have any confidence in your abilities to represent me in this case. . . . I implore you both to withdraw from my case now! |
| 2/26/03 | Pro se Motion | Petitioner's Pro Se Motion to Dismiss Section 2255 Petition and Request for Order Scheduling the Date for Implementation of Sentence, stating, *inter alia*: "I can no longer in good conscience continue with this request for relief pursuant to section 2255.  I do not believe that I am entitled to any relief or modification of my sentence. . . .It is with a great deal of shame and regret that I authorized the filing of this petition with claims against my trial counsel. |
| 4/13/03 | Hammer Declaration | Regarding reinstatement of his section 2255 motion stating, *inter alia*: "Having reconsidered my current situation and being unable to maintain the will to give up and die, I have decided to allow the Section 2255 Petition to continue." |
| 6/24/03 | Letter Hammer to Foster | "I'm not going to sabotage our case, by not going to the hearing if its essential.  I can't stand the |

13

| | | prospect of dealing with all the bullshit, but I'll do it . . ." |
|---|---|---|
| 11/24/03 | Letter Hammer to Foster | "Hope all is well with y'all.  As for me, I'm alright. . .I'll be in touch soon.  Please schedule a telephone call for us next week." |
| 12/1/03 | Pro se Motion | Motion to discontinue Section 2255 litigation |
| 1/16/04 | Order | Granting Hammer's Motion to withdrawn Section 2255 litigation |

Undoubtedly, the Government will contend that the monumental instability evidenced by the above summary are simply the vexatious meanderings of a manipulative, savvy and prison-wise defendant seeking to escape punishment or responsibility for his acts.  However, one must ask, if David Paul Hammer is a manipulative and malingering defendant, to what end is he manipulating?  On two prior occasions Mr. Hammer has been within days of execution.  Is it part of his master plan to waive rights up to the brink of his execution, only to pull back at the last moment?  And, even if that is his "plan," is it driven by rational thought or mental illness?  In short, if Mr. Hammer is malingering and manipulating to delay and avoid responsibility, he is not doing a particularly good job:  his claims are arguably waived, procedural barred, time-barred, and otherwise non-cognizable (see *BIO* at 5) ("This Court's authority to Review Hammer's Petition Initially is Limited by the Statute of Limitations, by the Procedural Default Doctrine, By

Hammer's Guilty Plea . . . by the Terms of § 2255 . . . by the *Teague v. Lane*, Non-Retroactivity Doctrine"), and he stands on the brink of execution for the third time – he certainly has the Government where he wants it!

Petitioner submits that viewing Mr. Hammer as a typical malingering and manipulative prisoner, is a concrete and not particularly probing perspective.  To be sure, under this concrete and superficial approach, Mr. Hammer has barred and waived himself to his execution – as argued by the Government.  The truth of the matter, which will be proven at the hearing, is that Mr. Hammer is not a malingerer or a manipulator when it comes to his case.  He is ill, and his illness effects his ability to make decisions.  His illness makes him depressed and suicidal.  His cognitive impairments, coupled with his conditions of confinement and his dissociative identity disorder, render him unable to make judgments.  In short, Mr. Hammer "suffer[s] from a mental disease, disorder, or defect, which may substantially affect his capacity."  Rees v. Peyton, 384 U.S. 312, 314 (1966).

In his Motion seeking leave to amend the section 2255 motion, and in related briefing, counsel have proffered that they will prove that Petitioner lacked capacity to waive rights at various stages of this prosecution.  He will also prove that trial and post conviction counsel ineffectively failed to have Petitioner evaluated by competent and non-conflicted mental health experts, and to bring to

15

bear the defenses' own mental health experts who could have shed light on Petitioner's fragile mental state. To prove these points, Petitioner will offer the above documents and the opinions of a variety of mental health experts. Once he has successfully proven these points, the Government's procedural defenses will succumb.

## ARGUMENT

## I.  THE GOVERNMENT'S PROCEDURAL DEFENSES FAIL.

The Government offers a litany of procedural defenses to Petitioner's Section 2255 action. All of them are meritless as they apply to Mr. Hammer.

### A.  The Limitations Defense.

The Government contends that many of the claims presented in Petitioner's Third Amendment to the Section 2255 Motion are untimely under Section 2255's statute of limitations. As set forth in prior *Briefs*, the Government's time bar arguments fail for a variety of reasons. See, *Petitioner's Memorandum of Law in Reply to United States Brief in Opposition to Petitioner's Motion to Amend*, filed on December 20, 2004 (dkt. # 1030). In Petitioner's prior *Memorandum of Law in Reply* he explained that many of the claims relate back to existing claims and that Petitioner is entitled to equitable tolling due to his mental infirmity and post-conviction counsels' neglect in failing to raise the claims proposed in the

amendment.  His new claims are also not time barred because his initial 2255 filing was timely, and by its terms, the AEDPA time bar applies only to petitions and not individual claims.  Finally, he asserted that the AEDPA statute of limitations does not preclude review of even an untimely claim, if it asserts innocence of the offense.

The Court has already either ruled or provisionally ruled on these claims. See Court's Order of January 27, 2005.  The Government adds nothing new to this debate, with one exception.  It contends that two letters provided in discovery show that the "provisionally allowed claims are untimely because . . . Hammer and prior Section 2255 counsel affirmatively rejected those claims prior to the Third Amended Motion" (*BIO* at 6).

Petitioner intends to call prior Section 2255 counsel at the evidentiary hearing.  Counsel will testify that "they" did not reject such claims.  Rather, Mr. Hammer made yet another in series of self-destructive and mentally infirm "decisions" not to raise these claims of ineffectiveness of trial counsel.  Prior counsel will also explain the context of their letter to Mr. Hammer of June 13, 2002.  They will explain that this letter was merely their attempt to placate an irrational and – as we all know – volatile client, who was threatening to discontinue the litigation (he eventually did so on two occasions).  Thus, far from

being a counseled decision to forego claims of ineffectiveness of trial counsel, post-conviction counsel will testify that – with regard to some of the omitted claims – they did all they could to convince their mentally ill client to pursue ineffectiveness claims.  As to Mr. Hammer's "decision" to forego such claims, the Government's contention that this decision was knowing, intelligent and voluntary, will be disproven at the hearing.[2]

The Government also argues that Petitioner's contention that he is entitled to equitable tolling because of his mentally infirmity is unsound because there has not been a prior finding of incompetence.  (*BIO* at 13).  This argument overlooks that Petitioner's prior counsel ineffectively litigated the competency question, and that the prior findings were made by ethically conflicted and not suitably experienced mental health professionals.

### B.    The Procedural Default Defense.

The Government argues that Petitioner's record-based trial claims are procedurally defaulted because of his "decision" not to appeal (*BIO*, at 18-26).

---

[2]The Government states that current counsel "stipulated that Hammer was making a competent, knowing, intelligent and voluntary election to proceed with his ineffective assistance of counsel claims" and that this stipulation binds Petitioner for all time as to all decisions.  *BIO* at 13-14.  Petitioner has already addressed the significant flaws in this argument in his *Response to the Government's Sur-Reply Regarding Petitioner's Motion to Amend* (filed on January 19, 2005) (dkt. #1041), at pages 9-11.

Again, this "decision" will be challenged at the upcoming hearing as the product of Petitioner's mental incapacity.

Moreover, as set forth in *Petitioner's Reply to the Governments Brief in Opposition to Petitioner's Motion for Leave to Conduct Forensic Testing* (filed on December 10, 2004 (dkt. # 1023) at pages 4-6, the miscarriage of justice standard permits review of even a procedurally defaulted claim, if the defaulted claim has resulted in the conviction of one who is actually innocent. Murray v. Carrier, 477 U.S. 478, 496 (1986). The Third Circuit has recognized that "actual innocence" does not mean complete innocence. Rather, it means that the petitioner is actually innocent of the offense for which he was convicted. See e.g. In re Minarik, 166 F.3d 591, 607 (3d Cir. 1999). Many of the claims that the Government contends are procedurally defaulted are reviewable through the prism of actual innocence.

### C.    The "Guilty-Plea" Defense.

The Government contends that Petitioner's guilty plea precludes a collateral challenge to either the plea or events that preceded it (*BIO*, at 26-28). This obviously does not apply to Petitioner's challenges to his competency to plead guilty, and the related questions of whether this Court's competency determination relied upon unqualified and/or conflicted expert opinion, and/or the ineffective assistance of counsel.

19

### D.    Non-Constitutional Errors.

Contrary to the Government's contention (*BIO*, at 28-31) none of the claims raised by Petitioner rely solely on a federal law that is unrelated to a constitutional violation.  Moreover, Reed v. Farley, 512 U.S. 339, 348-49 (1994) holds that non-constitutional claims are cognizable in post-conviction proceedings, if they implicate a "fundamental defect" in the proceedings resulting in a miscarriage of justice or unfair proceedings.  Each of the claims raised by Petitioner meet the standard set forth in Reed and are fully cognizable.

### E.    Teague v. Lane is Inapplicable to Any Claim Raised by Petitioner.

The Government's contention that many of Petitioner's claim are Teague-barred because they rely on "novel interpretations" of the Constitution (*BIO*, at 31-35) is wrong.  All of Petitioner's claims are firmly rooted in established United States Supreme Court precedent, including those cases addressing trial competency, ineffective assistance of counsel, and due process of law.

### F.    The Third Circuit's Dismissal of the Appeal.

In its final procedural defense, the Government contends that the  Third Circuit's decision to dismiss his appeal has a "preclusive effect" on the "relitigation" of a variety of issues (*BIO* at 35-37).  This is wrong.  Issues related

to ineffective assistance of appellate counsel are obviously available in collateral proceedings.  See Roe v. Flores-Ortega, 528 U.S. 470, 476 (2000) (applying Strickland standard to consideration of appellate counsel's ineffectiveness); United States v. Mannino, 212 F.3d 835 (3d Cir. 2000) (same).  In view of Petitioner's contention that trial/appellate counsel ineffectively failed to properly litigate Petitioner's competency to waive his appellate rights, this claim is unquestionably cognizable.

Moreover, in making its decision, the Court of Appeals made fact finding based upon its observations of Mr. Hammer during argument via video conference.  See United States v. Hammer, 226 F.3d 229, 232 (3d Cir. 2000) (noting that Hammer spoke with "great intelligence, logic and force, addressed the legal issues with considerable skill, demonstrated a total command of the record and was calm and in total control of himself").  This was an unfortunate, if not improper, method for determining Mr. Hammer's competency.  Appellate courts should not engage in fact finding.  Amanfi v. Ashcroft, 328 F.3d 719, 730 (3d Cir. 2003) ("an appellate court is not the appropriate forum to engage in fact-finding in the first instance"); Montrose Medical Group v. Mutual of New York, 243 F.3d 773, 786 n.12 (3dCir. 2001) ("appellate courts should not step in when the resolution of an issue requires the exercise of discretion or fact finding.").

21

Obviously, the Court of Appeals was not made aware of the many available opinions regarding Mr. Hammer's mental health or of the conflicted status of the BOP experts. Moreover, the colloguy conducted hardly serves as a substitute for the opinion of a qualified and non-conflicted mental health expert. See Hull v. Freeman, 932 F.2d 159, 168 (3d Cir. 1991). ("[F]ew lawyers possess even a rudimentary understanding of psychiatry. They therefore are wholly unqualified to judge the [mental health] of their clients."). The same is certainly true of judges, who in this instance had only their brief view of Mr. Hammer via video conference upon which to base their conclusion.

## II.    PETITIONER'S SUBSTANTIVE CLAIMS.

The Government's discussion of Petitioner's substantive claims dispute the facts and expert opinions that have been proffered by Petitioner. Accordingly, Petitioner will rely upon the legal discussion contained in *Petitioner's Brief in Support of Supplemental and Third Amended Motion* (dkt. #1049) filed February 25, 2005. As to the factual disputes raised by the Government, Petitioner submits that the facts that will be proven at the hearing will undercut each of the arguments made by the Government.

Respectfully Submitted,

/s/ Michael Wiseman

| | |
|---|---|
| Michael Wiseman | Anne L. Saunders |
| Supervisory Assistant Federal Defender | Asst. Federal Public Defender |
| Attorney ID #PA 75342 | Attorney ID #PA 48458 |
| Capital Habeas Corpus Unit | Federal Public Defender |
| Federal Court Division | Middle District of Pennsylvania |
| Defender Association of Philadelphia | 100 Chestnut Street, Suite 306 |
| Suite 545 West–The Curtis Center | Harrisburg, PA 17101 |
| 215-928-0520 | 717-782-3843 |
| (Michael_Wiseman@fd.org) | (Anne_Saunders@fd.org) |

Counsel for Petitioner

Dated:        Philadelphia, PA
                  May 9, 2005

## CERTIFICATE OF SERVICE

I, Michael Wiseman, hereby certify that on this date I served a copy of the foregoing via Electronic Case Filing, or by placing a copy in the United States mail, first class, addressed as follows:

| | |
|---|---|
| Frederick E. Martin, Esquire | Gwynn X. Kinsey, Jr., Esquire |
| United States Attorney's Office | United States Department of Justice |
| Herman T. Schneebeli Federal Building | Criminal Division, Capital Case Unit |
| Suite 316 | 1331 F. Street, N.W. |
| 240 West Third Street | Washington, D.C. 20530 |
| Williamsport, PA.  17701-6465 | |

Date: May 9, 2005

s/ Michael Wiseman
Michael Wiseman

23