IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :
                          :
        v.                :   No. 4:CR-96-239
                          :
DAVID PAUL HAMMER         :   (Judge Muir)


ORDER

August 8, 2005

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On November 4, 1998, this court sentenced David Paul Hammer to die by lethal injection for the first degree murder of Andrew Marti.  On July 14, 2005, a hearing commenced on Hammer's third amended § 2255 motion.  The hearing so far has lasted ten days and the 11th day is scheduled to commence on August 9, 2005. During the hearing the Government and Hammer submitted a document to the court entitled "Stipulated Findings of Fact Relating to DNA Testing."  Defendant's Exhibit 14.

That document is vague in at least one respect. In paragraph 15 the parties use the terms " throat and   gum swabs" (emphasis added) relating to biological materials of Andrew Marti. It is not clear to the court to what the parties are referring.  At trial the evidence revealed that during the autopsy of Andrew Marti, Dr. Funke obtained swabs "[f]rom his mouth, from his genital region, and from his anal region."  Doc. 456, Transcript, Vol. 3, June 4, 1998, page 89, lines 24 and 25.  The purpose of this order, in part, is to direct the Government and Hammer to clarify whether or not several swabs were taken from different regions of the victim's mouth.

Also, paragraph 16 of the stipulations appears to us to need clarification.  That paragraph states as follows:

> "Specifically, this analysis consisted of [Short Tandem Repeat] testing for the presence of DNA. To a reasonable degree of scientific certainty these tests as they related to the gum swabs (2S05-061-12A) were positive for the presence of <u>sperm fractions</u> and non-sperm fractions matching Marti's DNA profile."

(Emphasis added.)  It is unclear to the court how the gums swabs which were apparently taken from Andrew Marti, the victim, could be positive for the presence of "sperm fractions ... matching Marti's DNA profile."

Also, paragraph 4 of the stipulation states as follows:

> 4.  Of the 12 "unknown" items submitted for analysis three were pre-screened for the presence of sperm/semen.  These items were Marti's t-shirt (Government Trial Exhibit 28.1), Hammer's t-shirt (Government Trial Exhibit 26.4) and a sock found near Marti's mouth (Government Trial Exhibit 19).

The trial trancript in this case reveals two items of evidence referred to as bloody "socks."  Governments Exhibits 19 and 25. Testimony at trial indicated the DNA testing of the bloody sock (Government exhibit 19) revealed the DNA profile of Andrew Marti. Doc. 461, Transcript, Vol. 4, June 8, 1998, page 45, lines 12 through 14.  However, it is not clear whether or not there was any testing of Government Exhibit 25 which was described by Mark Traxler, a Special Investigative Agent, with the Bureau of Prisons, as "a homemade sock that had a blood stain on it." Doc. 462, Transcript, Vol. 5, June 9, 1998, page 28, lines 8 through 10. Counsel for the Government in his question to Traxler described Government Exhibit 25 as a "another item of orange cloth or

clothing." Id. at lines 4 through 7.

The two bloody "socks" become important because Carlyle R. Thompson, a Special Agent with the FBI, testified at trial that Hammer after the incident during an interview stated that he "took a sock and stuffed it in Marti's mouth, and used a strip of sheet to secure the sock around and tied it off at the back of his head." Doc.467, Transcript, Vol. 6, June 10, 1998, page 110, lines 15 through 17.

NOW, THEREFORE, IT IS HEREBY ORDERED:

Counsel shall before the conclusion of the evidentiary hearing clarify the stipulation of facts relating to the matters raised in the background of this order and present evidence or a stipulation relating to whether or not Government Exhibit 25 was tested for the presence of Andrew Marti's blood or DNA.

s/Malcolm Muir
MUIR, U.S. District Judge

MM:gs

3