## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,               :

          Respondent,               :    Criminal No. 4:CR–96-239

                  :    Judge Muir

          v.               :

DAVID PAUL HAMMER,               :

          Petitioner.               :

**FILED**
**WILLIAMSPORT, PA**

SEP 2 6 2005

MARY E. D'ANDREA, CLERK
Per_____
Deputy Clerk

## PETITIONER'S FOURTH
## AMENDMENT TO SECTION 2255 MOTION

1.    Petitioner files the foregoing Amendment to his already-filed Section 2255 Motion and its prior Amendments.

2.    This Amendment is a supplement to – and does not replace – the prior Section 2255 Motion and its prior Amendments.

3.    All prior allegations contained in the initial Section 2255 Motion and its prior Amendments are incorporated as if fully set forth herein.

1

## Amended Ground For Relief

**The Government Violated Petitioner's Right to Due Process Guaranteed By the Fifth, Sixth and Eighth Amendments When it Failed to Disclose Several F.B.I. 302 Statements Containing Exculpatory Evidence Relevant to the Guilt and Penalty Phases of Trial and Which Support Petitioner's Prior Challenge to the Veracity fo Mr. Hammer's Confession, Supports Impeachment of a Key Government Witness and Thus Vitiates the Alleged Voluntariness Of Mr. Hammer's Plea Of Guilty.**

4.     Both prior § 2255 counsel and current § 2255 counsel requested the disclosure of all Brady material in the possession of the Government prior to the commencement of the evidentiary hearing currently in progress concerning this case.

5.     Current counsel filed a Motion for Discovery which sought, among other things all prior undisclosed F.B.I. 302 Reports. The Government opposed this disclosure and the Court denied it.

6.     In a letter dated October 29, 2004, Assistant United States Attorney Frederick Martin opposed Mr. Hammer's request for disclosure of previously undisclosed FBI 302 statements, noting that "[T]here is less need for wholesale disclosure now than there was in 1998." (Emphasis in original).

7.     At trial and during these § 2255 proceedings, Mr. Hammer sought the timely disclosure of Brady material. See Brady v. Maryland, 373 U.S. 83, 87 (1963). As evidenced by review of the FBI 302 statements released to undersigned counsel pursuant to this Court's Order, the Government failed to comply with its basic due

2

process obligations in this case. The statements withheld from trial counsel and more recently section 2255 counsel, are material. The content of three of the statements (attached as an exhibit to this Amendment) strongly support Petitioner's defense that the death of Mr. Marti arose accidentally during consensual sex.

8.     As discussed below, the Government's failure to disclose the FBI 302 statements of Albert Ray Johnson, Royce Lee Fowler and Gaylon Don Ball violated Mr. Hammer's right to a fair trial, right to present a defense, right to due process, right to effective counsel and his right to be free from cruel and unusual punishment, warranting a new trial and/or a new sentencing hearing.

9.     Indeed, prior to the commencement of Mr. Hammer's trial in 1998, trial counsel, Mr. Travis and Mr. Ruhnke, also sought from the Government all relevant FBI 302 statements and any and all evidence constituting Brady material.

10.     On September 21, 2005, Mr. Hammer learned for the first time that the lead investigative FBI agent assigned to this case, Special Agent Anthony Malouc, interviewed a number of prisoner/witnesses concerning their knowledge of both Mr. Hammer's sexual practices and his mental health and whether Mr. Hammer had ever previously disclosed he was the victim of childhood sexual abuse and took formal 302 statements that had not been turned over to any defense counsel throughout these

proceedings.[1]

11.    Upon oral motion by undersigned counsel, this Court Ordered the Government to disclose to Mr. Hammer's § 2255 counsel the 302 statements from the witnesses referenced in Agent Malocu's testimony.

12.    On September 22, 2005, the Government complied with this Court's Order and turned over approximately thirty-three previously undisclosed witness statements.

13.    The statements disclosed by the Government contain relevant Brady material that should have been disclosed to Mr. Hammer at the time of trial.  The information detailed below would have corroborated Mr. Hammer's defense that Mr. Marti was bound to the bed in cell 103 as a result of consensual homosexual sex, as argued to the jury by Mr. Travis in his opening statement.

14.    Moreover, this information would have allowed defense counsel to further undercut the veracity of Mr. Hammer's statement to the FBI on April 13, 1996; effectively cross examine inmate witnesses; effectively cross examine Government expert witnesses and would have also been relevant evidence to present during Mr. Hammer's capital sentencing hearing.

---

[1] As a result of his investigation and observations, Agent Malocu testified at trial that he believed there was a "high likelihood" that a defense of auto-erotic death would be presented. See Notes of Testimony 6/11/98 at 106.

15.   Moreover, the evidence contained in the 302 statements disclosed to defense counsel for the first time on September 22, 2005, would have further provided trial counsel with evidence contradicting elements of both the Government's opening and closing argument to the jury.

16.   Indeed, because the Government failed to disclose this highly relevant Brady material until seven years after Mr. Hammer decided to abandon his right to stand trial and enter a plea of guilty, Mr. Hammer did not have the opportunity to weigh the import of the information contained in the 302 statements discussed below before deciding to abandon trial and plead guilty, or before deciding to abandon his post-trial rights, and direct appeal.

17.   During the trial Mr. Hammer presented the affirmative defense of not guilty by reason of insanity.  The predicate factual basis supporting this defense was the diagnosis by Dr. Robert Sadoff, M.D., who concluded that Mr. Hammer suffers from Dissociative Identity Disorder.

18.   Dr. Sadoff testified during trial that as part of his evaluation of Mr. Hammer, he conducted a hypnosis session with the assistance of Dr. Dubin, wherein Mr. Hammer was hypnotized in order to further explore whether Mr. Hammer suffered from Dissociative Identity Disorder.

19.    The videotape from this hypnosis session, which was played both at trial and during these § 2255 proceedings, revealed that on the night of the murder, Mr. Hammer and Mr. Marti engaged in consensual homosexual sex involving bondage and erotic asphyxiation.  While under hypnosis Mr. Hammer stated that after he and Mr. Marti engaged in sex, Jocko emerged and killed Mr. Marti.

20.    Mr. Hammer also stated while under hypnosis that earlier in the day, he and Mr. Marti had made the braided ropes for use as bondage during consensual sex.

21.    Indeed, in his opening statement to the jury, defense counsel Ronald Travis, Esq., told the jury that Mr. Marti was tied to the bed during "kinky homosexual activity":

> The evidence in the this case in the mental health field is going to show that as part of the evaluation and assessment that was done by Dr. Robert Sadoff...And during the hypnotic session he relived the early morning hours of April 13, 1996.  And as part of that process, it was developed that the tying was voluntary and the tying was part of some plan; kinky homosexual activity between Mr. Hammer and between Mr. Marti.

Notes of Testimony, 6/3/98 at 5.

22.    Similarly, during his penalty phase closing argument, Mr. Travis reminded the jury on two separate occasions that Mr. Marti was bound to the bed not as the result of a ruse, but as a result of consensual "sexual bondage." Notes of Testimony, 7/23/98 at 3, 4.

23.    The Government, on the other hand, argued vehemently that there was no consensual sex; that Mr. Marti was tricked into allowing Mr. Hammer to tie him to the bed under a false hostage ruse; and that Mr. Hammer intended all along to kill Mr. Marti.

24.    What the Government failed to disclose dramatically changes the evidentiary picture and would have allowed Mr. Hammer to present affirmative evidence supporting his version of events. On June 3, 1998, Special Agents Malocu and Traxler conducted a telephone interview of Mr. Albert Ray Johnson, Jr., who was incarcerated at the Great Plains Correctional Facility in Hinton, Oklahoma.

25.    Mr. Johnson told the Government agents that Mr. Hammer engaged in consensual sexual activities that included bondage:

> JOHNSON indicated that **HAMMER was a homosexual and was into bondage. He and his homosexual cell mates would tie each other up and whip each other with rope or electrical cord.** Hammer and his sexual partners would come to the cell door playing with each other.

302 FBI Statement of Albert Ray Johnson, at 1 (attached hereto)(emphasis added).

26.    Mr. Johnson reports that he met up again with Mr. Hammer in 1995 at the United States Penitentiary in Allenwood, Pennsylvania in 1995. According to Mr. Johnson:

> While incarcerated in the Special Housing Unit, HAMMER engaged in sexual activity with his cell mate who was identified as a white male with

7

a first name of TONY, having long stringy hair. JOHNSON never really talked to HAMMER's cell mate, but did talk with HAMMER on many occasions. HAMMER and his cell mate would tie each other up and bite each other. They would yell over to JOHNSON's cell and make a lot of noise. HAMMER and his cell mate would typically stay up all night engaging in sexual activity. They would tie each other up using braided sheets. When one would fall asleep, the other would tie him up.

Id. at 3.

27.    In an earlier statement given to the FBI by Mr. Johnson dated December 6, 1996, Mr. Johnson described Mr. Hammer as a sadomasochist:

> HAMMER had a cell partner "TONY LNU", a white male approximately 26 years of age...TONY and HAMMER would beat up each other periodically for the pain, as both were sadomasochist.

Statement of Albert Ray Johnson dated December 6, 1996 at 2 (attached hereto).

28.    Not only did Mr. Johnson tell the FBI that Mr. Hammer engaged in bondage related sexual activities, but that he – Mr. Johnson – knew Hammer had used "braided sheets" in the past for sexual activity. This information would have been critical to trial counsel's efforts to investigate and present evidence supporting Mr. Travis' opening statement to the jury regarding the consensual "kinky homosexual activity" engaged in by Mr. Hammer and Mr. Marti on the morning of April 13, 1996.

29.    Mr. Johnson's knowledge concerning Mr. Hammer's prior usage of home-made, braided ropes for sexual bondage would have contradicted the Government's argument that the braiding of the ropes demonstrates "substantial

planning" because "you have to factor in what time it took to make heavy duty restraints to keep a six foot four, two hundred pound man in place." Notes of Testimony 7/21/98, at 89. If the ropes were made for sexual purposes, as demonstrated by Mr. Hammer's prior conduct, and evidence of this practice was available through a witness interviewed by the Government, this information should have been disclosed to defense counsel, particularly in light of the Government's argument – which the defense could not contest factually given the fact the Government failed to disclose Mr. Johnson's statement prior to trial.

30. The evidence contained within Mr. Johnson's FBI 302 Statement concerning Mr. Hammer's prior usage of braided ropes for sexual activity – namely bondage – would have countered the Government's assertion that the tying of Mr. Marti to the bed was "essential preplanning." NT 7/21/98, at 84.

31. The FBI 302 statement of Mr. Royce Lee Fowler was also disclosed to undersigned counsel for the first time on September 22, 2005. Mr. Fowler was interviewed by Special Agents Malocu and Traxler at the United States Penitentiary at Lewisburg, Pennsylvania, on June 3, 1998.

32. Mr. Fowler reported that he lived with Mr. Hammer in the Special Housing Unit known as "the hole" at the United States Penitentiary at Leavenworth for approximately nine months sometime in 1995. Mr. Fowler stated that Mr. Hammer

"was a homosexual and that he was weird." Statement of Royce Lee Fowler at 1 (attached hereto).

33.    Mr. Fowler told the Government agents two specific facts that would have refuted the Government's theme that Mr. Hammer's rendition of his history of childhood abuse was "not as severe as he would like you to believe" NT 7/21/98, at 149.  Mr. Folwer's statement also shows that he was aware of Mr. Hammer having engaged in consensual sexual bondage well before Mr. Marti's death.

34.    First, Mr. Fowler discussed Mr. Hammer's proclivity for sexual bondage and second, he discussed the fact that Mr. Hammer told him back in 1995 that he was sexually abused as a child.

35.    The Fowler statement shows that he was aware as early as 1995 that Mr. Hammer engaged in sexual bondage:

> FOWLER has had the same girlfriend for the past 20 years.  Her name is NANCY. On one occasion when he was telling HAMMER bout how he wanted to tie NANCY up with her pantyhose, HAMMER informed FOWLER about his liking bondage and wanting to be tied up during sex.

Id. at 3.

36.    Mr. Fowler also told Agents Malocu and Traxler that:

> HAMMER had told him that his father had started to abuse HAMMER and his brother and sister when they were children.  HAMMER was approximately five or six years old.

\* \* \* \*

> Out of the blue, on one occasion, HAMMER told FOWLER about being sexually abused by his father. Hammer informed FOWLER that his daddy would make HAMMER "suck his peter." He would do the same thing to his brother and sister.

Id. at 2.

37. The Government also had in its possession a statement from Mr. Gaylon Don Ball, an inmate at the United States Penitentiary at Allenwood. Mr. Ball told Agents Malocu and Traxler that he had known Hammer for several years. He stated that:

> It is BALL's opinion that HAMMER was having sexual relations with MARTI, although he had no facts to back up his opinion.

Statement of Gaylon Don Ball, at 1 (attached hereto). Because the Government failed to disclose this statement to trial counsel, they did not interview Mr. Ball in order to ascertain the basis for his opinion and whether Ball knew of other inmates who might have information concerning the nature of the relationship between Mr. Hammer and Mr. Marti.

38. In short, the witness statements outlined above and disclosed to Mr. Hammer's current § 2255 counsel would have provided evidence of prior consensual sexual activity by Mr. Hammer involving bondage with braided ropes made from bed

sheets; would have aided counsel in their investigation of this defense, would have provided impeachment evidence for use during the cross examination of Government experts; and would have provided facts defense counsel could have marshaled in rebuttal to specific arguments the Government made during its closing argument.

39.    As a result of the failure to disclose these reports, and the resultant violation of Mr. Hammer's rights as guaranteed by the Fifth, Sixth and Eighth Amendments, Mr. Hammer is entitled to a new trial and/or sentencing hearing.

Respectfully Submitted,


s/Anne L. Saunders
ANNE L. SAUNDERS, ESQUIRE
Asst. Federal Public Defender
Attorney ID # PA 48458
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. (717) 782-3843
Fax No. (717) 782-3966
(Anne_Saunders@fd.org)

s/Michael Wiseman
MICHAEL WISEMAN, ESQUIRE
Supervising Assistant Federal Defender
Attorney ID # PA 75342
Defender Association of Philadelphia
Federal Court Division
Capital Habeas Unit
Suite 545 West – The Curtis Building
Philadelphia, PA 19106
(Michael_Wiseman@fd.org)


Dated: September 26, 2005

## CERTIFICATE OF SERVICE

I, Anne Saunders, of the Federal Defender's Office do hereby certify that on this date I served a copy of the foregoing via Electronic Case Filing or by placing a copy in the United States mail, first class, in Williamsport, Pennsylvania, addressed to the following:

Frederick Martin, Esquire
United States Attorney's Office
Herman T. Schneebeli Federal Building
Suite 316
240 West Third Street
Williamsport, PA 17701

Gwynn X. Kinsey, Jr., Esquire
United States Department of Justice
Criminal Division - Capital Case Unit
1331 F. Street, N.W.
Washington, D.C. 20530

s/Anne L. Saunders
ANNE L. SAUNDERS, ESQUIRE
Asst. Federal Public Defender
Attorney ID # PA 48458
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. (717) 782-3843
Fax No. (717) 782-3966
(Anne_Saunders@fd.org)

Dated: September 26, 2005s