IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :
                               :
        v.                     :   No. 4:CR-96-239
                               :
DAVID PAUL HAMMER             :   (Judge Muir)

ORDER
September 27, 2005

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On November 4, 1998, this court sentenced David Paul Hammer to die by lethal injection for the first degree murder of Andrew Marti. We are presently in a hearing on Mr. Hammer's third amended § 2255 motion. The purpose of this order is to direct counsel to address a certain issue in their closing arguments. Before we set forth the issue about which we are particularly concerned, we will first outline the procedures which are utilized during a trial of an individual charged with capital murder and then the claims raised in Hammer's third amended § 2255 motion.

Under the Federal Death Penalty Act of 1994, if a jury finds a defendant guilty of the charge of first-degree murder or a defendant pleads guilty to first-degree murder, the jury then must determine whether he should receive the death penalty. This determination requires that the jury pass through several stages. Initially, during deliberations in the penalty phase of the trial the jury must determine whether the defendant had the requisite "intent" in committing the offense to warrant imposing the death penalty. 18 U.S.C. § 3591(a)(2). If the jury determines beyond a reasonable doubt that the defendant had at least one of the required "intent" factors set forth in § 3591(a)(2), the jury

proceeds to the second stage.  However, if the jury does not find the requisite intent, the deliberations are over and the death penalty cannot be imposed.

If the jury reaches the second stage of deliberations during the penalty phase, the jury must consider the statutory aggravating factors set forth in the government's notice of intent to pursue the death penalty.  18 U.S.C. § 3592(c).  For the death penalty to be imposed, the jury must find that the government has proven beyond a reasonable doubt at least one statutory aggravating factor.  If the jury so finds, they proceed to the next and third stage of the penalty phase deliberations.  If the jury does not find at least one statutory aggravating factor, the death penalty cannot be imposed.

The third stage of the penalty phase deliberations involves the jury considering any non-statutory aggravating factors alleged by the government.  Finally, the fourth stage involves the jury (1) weighing the statutory and non-statutory aggravating factors which the jury has found to exist beyond a reasonable doubt by a unanimous vote against any mitigating factors and (2) deciding whether the aggravating factors outweigh all the mitigating factors found to exist.[1]  "Based upon this consideration, the jury by a

_____

[1] 18 U.S.C. § 3593(c) provides in relevant part that "[t]he burden of establishing the existence of any mitigating factor is on the defendant, and is not satisfied unless the existence of such a factor is established by a preponderance of the evidence." Section 3593(d) states in relevant part as follows:

> A finding with respect to a mitigating factor may be made by 1 or more members of the jury, and any member of the jury who finds the existence of a

unanimous vote" shall recommend either death or life imprisonment. 18 U.S.C. § 3593(e).

The Federal Death Penalty Act of 1994, as noted above, is a weighing statute, i.e., a jury in deciding whether to recommend the imposition of the death penalty is obliged to weigh the aggravating circumstances and mitigating circumstances and only recommend the imposition of the death penalty if the aggravating circumstances sufficiently outweigh the mitigating circumstances. Under a weighing statute such as the Federal Death Penalty Act of 1994, the failure appropriately to consider mitigating circumstances can have an adverse affect on the weighing process and result in an inappropriate sentencing outcome. Errors regarding either aggravating factors or mitigating factors "conceivably could distort the weighing process, thus calling into question the propriety of a death sentence." Lisa R. Duffet, Habeas Corpus and Actual Innocence of the Death Sentence After Sawyer v. Whitley: Another Nail Into the Coffin of State Capital Defendants, 44 Case W. Res. L. Rev. 121, 148 (1993).

Hammer has raised several claims in his third amended § 2255 motion. The claims can be grouped into five general categories. First, there are claims relating to the validity of the change of plea proceeding which was held on June 22, 1998. Second, there is a challenge to the proceedings which permitted

---

mitigating factor may consider such factor established for purposes of this section regardless of the number of jurors who concur that the factor has been established.

Hammer to discharge counsel and decide on his own whether or not to pursue a direct appeal. Third, there are numerous claims of ineffective assistance of counsel. Fourth, there is a claim that failure to review Hammer's conviction and the propriety of the sentence by us will result in a miscarriage of justice. Fifth, there is a claim that the Government failed to disclose <u>Brady</u> material which was relevant to both the guilt and penalty phases of the trial.

In this order we will primarily focus on a part of Hammer's fourth claim. Specifically, Hammer claims that it would be a miscarriage of justice if he were executed.[2]

In the third amended § 2255 motion, Hammer has raised two types of "actual innocence" claims. The first type relates to a claim that Hammer is actually innocent of the offense of premeditated murder. Hammer claims that Marti's death resulted from accidental erotic asphyxiation during a sexual act between Marti and Hammer.

---

[2]See Doc.805, Hammer's Traverse to Government's Brief In Opposition to the Motion to Modify Sentence or Relief Under Section 2255 and Request for Evidentiary Hearing, page 11 ("Hammer asserts alternatively that a manifest injustice, within the meaning of prevailing law, would result if he does not receive full review of each of his claims concerning . . . his sentencing . . . ."); Id., pages 2 and 3 ("Because death 'is qualitatively different from a sentence of imprisonment, however long . . . there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment.' . . . The Court is, thus, required to view all claims – and all alleged procedural bars to review of those claims – with an eye toward assuring the accuracy of the underlying conviction and sentence. . . . Counsel seeks only to assure that this sentence is not carried out if any questions remain concerning the accuracy of the . . . sentence or the procedures utilized to secure [it].").

The second type of "actual innocence" claim is a claim that the death sentence is inappropriate under all of the circumstances. The use of the terminology "actual innocence" in this context seems somewhat odd. However, the United States Supreme Court has used the language "actual innocence of the death penalty" on several occasions. See, e.g., Sawyer v. Whitley, 505 U.S. 333, 335 (1992); Schlup v. Delo, 513 U.S. 298, 323 (1995). In essence what the Supreme Court was attempting to convey by using the terminology "actual innocence of the death penalty" is that a miscarriage of justice would result if a defendant were executed.[3] We will refer to the second type of claim as a miscarriage of justice or manifest injustice claim.

We are unaware of any court opinion setting forth the standard to be applied for determining whether or not a miscarriage of justice would result if a death sentence imposed on a defendant under the Federal Death Penalty Act of 1994 were carried out. The

---

[3]One commentator has noted that "'innocence,' within the capital context, can encompass more than mere factual innocence of the crime; it can include defendants who are 'innocent' in terms of the sentence or who do not deserve to die. Therefore, claims of innocence in habeas corpus apply to both the defendant who has not committed the crime charged and the defendant who has been inappropriately sentenced to death." Lisa R. Duffet, Habeas Corpus and Actual Innocence of the Death Sentence After Sawyer v. Whitley: Another Nail Into the Coffin of State Capital Defendants, 44 Case W. Res. L. Rev. 121, 122 (1993).

cases of <u>Sawyer</u>[4] and <u>Schlup</u>[5] set forth standards developed for the review of habeas petitions filed by defendants sentenced to death under state laws.  In those cases there were concerns of comity, federalism, and the finality of state court judgments. <u>Sawyer</u>, 505 U.S. at 338("These cases are premised on our concern for the finality of state judgments of convictions and the 'significant costs of federal habeas review.'"); Schlup, 513 U.S. at 318 ("The broadening of the scope of the writ created the risk that repetitious filings by individual petitioners might adversely affect the administration of justice in the federal courts.  Such filings also posed a threat to the finality of state-court judgments and to principles of comity and federalism."). Moreover, the defendants in those cases had already received multiple layers of review of the propriety of their death sentences.   The concerns relating to finality of state court judgments and the costs associated with federal habeas review have no relevance to the present case.  Refusing to review all of Hammer's claims on the merits will not decrease the costs associated with this case.  We have already engaged in a lengthy trial and post-conviction hearing which is the first post-conviction hearing relating to Hammer's conviction and sentence

---

[4]Under <u>Sawyer</u> for a habeas petitioner to show that he is "actually innocent" of the death penalty imposed he must show by clear and convincing evidence that but for constitutional error, no reasonable juror would have found petitioner eligible for death penalty under applicable state law.

[5]Under <u>Schlup</u> the habeas petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent.

that has been conducted.

In the present case, because Hammer withdrew his direct appeal there has been no complete review of the propriety of the death sentence imposed in this case.[6]   When a defendant does not pursue an appeal, generally any issues that could have been raised on appeal are waived and cannot be raised in a § 2255 proceeding. However, the claims are not waived if the defendant can show cause for the waiver and prejudice resulting from the waiver, or a miscarriage of justice or manifest injustice.

As noted we are unaware of any court opinion setting forth the standard for determining a miscarriage of justice under the particular circumstances of this case.   The standards that we are considering are as follows:

Executing a defendant would be a miscarriage of justice if (1) no rational fact finder examining the trial record and the evidence presented during the § 2255 hearing would impose a death sentence;

(2) one or more jurors erroneously disregarded mitigating evidence and if such evidence had been properly considered one or more jurors more likely than not would have elected to impose a life sentence;

---

[6]In our opinion of October 9, 1998, relating to Hammer's ability to discharge counsel and decide whether to pursue an appeal, we did perform a sua sponte review of the evidence and concluded that the recommendation of the jury was supported by the evidence presented during trial. United States v. Hammer, 25 F.Supp.2d 518, 520-521 (M.D.Pa. 1998).  However, we did not have the benefit of the legal arguments and evidence submitted during the present hearing.

(3) the proceedings which led to the sentence of death were flawed because the Government failed to disclose information to the defense which could have resulted in one or more jurors electing to recommend a sentence of life imprisonment;

(4) a rational fact finder viewing the mitigating evidence disregarded by the jury and the evidence presented during the § 2255 hearing more likely than not would have imposed a life sentence;

(5) a constitutional violation more likely than not resulted in a capital sentence for one who should not have been sentenced to death; or

(6) a combination of (1), (2), (3),(4) and (5).

During closing arguments, counsel shall address the issue of what standard or standards the court should apply in determining whether a miscarriage of justice will occur if Hammer is executed.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

Counsel in their closing arguments shall address the issues raised in the background of this order.


s/Malcolm Muir
_____
MUIR, U.S. District Judge


MM:gs

8