IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : Crim. No. 4:CR-96-263
 : Civil No. 4:CV-02-510
 v. :
 : (Muir, J.)
DAVID PAUL HAMMER : **ELECTRONICALLY FILED**

<u>**UNITED STATES' FINDINGS OF FACT**</u>
AS ANNOTATED BY COUNSEL FOR HAMMER

1. Hammer, during the July 2000 argument before the Court of Appeals, felt that the issues raised by his counsel were unlikely to succeed.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

2. The Third Circuit hardly was moved by the issues raised by counsel so as to refuse to dismiss the appeal in the "interests of justice." *United States v. Hammer*, 226 F. 3d at 233, n.4 and 237.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

3. In response to Mr. Ruhnke's sentencing phase opening statement, this Court advised counsel, out of the hearing of the jury, that if counsel intended to question the sufficiency of the factual basis for Hammer's plea of premeditated murder, the court would revoke Hammer's guilty plea and resume the guilt/innocence trial forthwith.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

4. After Mr. Ruhnke responded that he was not seeking to have the plea withdrawn, this Court allowed the defense to proceed.

Undisputed _____ Disputed _____ Undisputed but Objected To __√__

5. Hammer, in connection with his plea, did not expressly deny the element of premeditation and indeed indicated basic agreement with the Government's factual proffer.

Undisputed _____ Disputed __√__ Undisputed but Objected To _____

6. This Court could rely solely upon the testimony of Dr. Funke that strangulation simply requires at least 90 seconds to cut off blood flow to the brain and, hence, establish premeditation.

Undisputed _____ Disputed __√__ Undisputed but Objected To _____

7. Additional "strong" evidence of premeditation is supported as well by the testimony of inmates Classen and Yager some of Hammer's admissions to FBI Agent Thompson and even the circumstances surrounding the discovery of Marti's body.

Undisputed _____ Disputed __√__ Undisputed but Objected To _____

8. The introduction of the entirety of Hammer's confessional note to Leonard Yager, which was never refuted or contested by Defendant, also provides, to the extent that it is needed, a further and alternate factual basis which supports his entry of a guilty plea.

Undisputed _____ Disputed __√__ Undisputed but Objected To _____

2

9.    Hammer's videotaped interview with the defense expert, Dr. Sadoff, supposedly under hypnosis, in which he would inconsistently use the present tense to describe past events, revealed that his mental health defense based upon "Dissociative Identity Disorder" (hereinafter "DID") was foundering badly.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

10.    Hammer was not a sentenced federal offender in federal custody.

Undisputed __✓__    Disputed ____    Undisputed but Objected To ____

11.    Hammer as an Oklahoma State prisoner was allowed into the Federal Prison System pursuant to 18 U.S.C. § 5003.

Undisputed __✓__    Disputed ____    Undisputed but Objected To ____

12.    That Hammer was a contract prisoner and its impact on Hammer's belief was brought out in the testimony from Dr. Wolfson prior to entry of the guilty plea.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

13.    If an insanity verdict was returned by the jury, Hammer could have been returned to Oklahoma to allow that sovereign to deal with the supposed Dissociative Identity Disorder (hereinafter referred to as "DID"), or other mental maladies, especially since Hammer's Oklahoma convictions occurred earlier in time.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

3

14.    The contract between Oklahoma and the Bureau of Prisons, which allowed for Hammer's custody in federal prison, could have been terminated by either party by providing sixty (60) days notice of such action according to ¶ 18 of that document.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

15.    The contract was provided to trial counsel by the prosecution by letter dated December 16, 1996.

Undisputed __✓__    Disputed _____    Undisputed but Objected To _____

16.    David Paul Hammer was no neophyte to the criminal justice system in 1998.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

17.    Hammer had the advice of two experienced attorneys at least up through the time the jury returned its verdict and for the filing of timely post-verdict motions.

Undisputed _____    Disputed _____    Undisputed but Objected To __✓__

18.    Hammer's competence up until June 22, 1998, had never been in serious dispute by either the prosecution, Dr. Sadoff or even in the reports of other defense experts, Drs. Gelbort and Grassian.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

19.    Dr. Sadoff in his report noted the various medicines which defendant ingested but found no problems regarding Hammer's competency and opined that he was competent.

4

Undisputed ____    Disputed _✓_    Undisputed but Objected To ____

20.    Hammer's counsel did not believe that their client was incompetent to enter his plea of guilty on June 22, 1998.

Undisputed ____    Disputed _✓_    Undisputed but Objected To ____

21.    Nothing which occurred during the guilty plea colloquy, or Defendant's demeanor and behavior on that day or succeeding days until the jury returned its verdict suggested that Hammer did not know what was occurring or could not assist his counsel.

Undisputed ____    Disputed _✓_    Undisputed but Objected To ____

22.    The medication in question in Hammer's case, Synthroid, in 1998, was not even prescribed for mental health purposes.

Undisputed ____    Disputed _✓_    Undisputed but Objected To ____

23.    Synthroid is utilized to treat a thyroid condition.

Undisputed _✓_    Disputed ____    Undisputed but Objected To ____

24.    Dr. Wolfson elaborated at the October 1, 1998, competency hearing on Hammer's history of Synthroid use as well as potential effect which refusing to take that medication might have on his mental capacity.

Undisputed ____    Disputed _✓_    Undisputed but Objected To ____

25.    "Any [thyroid] illness takes a fair amount of time to develop. . . ."

Undisputed ____    Disputed _✓_    Undisputed but Objected To ____

26. Synthroid, even in combination with other medications, "would not . . . have any deleterious effect on Hammer's ability to reason or think."

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

27. Hammer spoke with Attorney Travis at length on Sunday, June 21, 1998, about Hammer's expressed desire to enter a guilty plea to the charge which he faced.

Undisputed _____    Disputed _____    Undisputed but Objected To __✓__

28. Hammer spoke with Travis and Ruhnke for over one-half hour on June 22, 1998, about Hammer's interest in entering a guilty plea.

Undisputed _____    Disputed _____    Undisputed but Objected To __✓__

29. Instead of hearing only from a defendant regarding the nature and possible effects of medication, this Court received testimony from a medical doctor about that subject matter as well as his opinion on Hammer's competency.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

30. This Court, after receiving the testimony of two experts in the field of mental health, as well as from defendant himself, concluded that Hammer was competent to enter a guilty plea.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

31. The United States Attorney's Office asked that a psychiatrist, rather than a psychologist, perform an evaluation

6

of defendant following Dr. Sadoff's examination, pursuant to 18 U.S.C. § 4242(a), since Dr. Sadoff was a psychiatrist.

Undisputed _____    Disputed _____    Undisputed but Objected To __✓__

32.   Bureau of Prisons' Program Statement No. 6000.05 at p. 4 (09/15/96) guided Dr. Wolfson's conduct in 1998.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

33.   Dr. Wolfson was reluctant at first to involve himself in the mental competency evaluation of Hammer for fear of learning privileged or self-incriminatory information from Hammer during his examination.   (TT Vol. 14, pp. 15-22.)

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

34.   Dr. Wolfson did not agree to participate in the competency evaluation until Hammer insisted that Dr. Mitchell also sit in at all times.   (TT Vol. 14, p. 23.)

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

35.   That Dr. Wolfson disagreed with Dr. Sadoff's diagnosis of Dissociative Identity Disorder did not transform him into a government agent.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

36.   Dr. Wolfson advised the jury and this Court on July 13, 1998, that he did not consider himself a pawn of the United States Attorney's Office.   (TT Vol. 22, pp. 146-149.)

Undisputed _____    Disputed _____    Undisputed but Objected To ✓__

37.  Dr. Wolfson had an easier time obtaining Bureau of Prisons' records than did defense experts.

Undisputed __✓__    Disputed ____    Undisputed but Objected To ____

38.  The defense had no difficulty in obtaining federal records or those from the State of Oklahoma as the testimony of defense expert Jill Miller demonstrated.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

39.  Hammer's trial attorneys at the competency examination in June 1998, focused on what questions Dr. Wolfson asked their client about DID, as well as what concerns Hammer raised about returning possibly to Springfield.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

40.  Dr. Wolfson's inquiries with Hammer showed appropriate restraint, especially given that a penalty phase would occur after any guilty plea.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

41.  Hammer and his counsel sought Dr. Mitchell's participation in both competency examinations in 1998.  *United States v. Hammer,* 25 F. Supp. 2d at 520.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

42.  Hammer alone decided when to enter a guilty plea during the rebuttal stage of proceedings after the jury had heard 14 days of testimony.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

8

43. The prosecution had misgivings about Dr. Mitchell solely doing an evaluation of defendant in August 1998.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

44. Trial counsel brought Dr. Wolfson's participation in evaluating Hammer's competence to enter a guilty plea to the jury's attention.

Undisputed _____    Disputed _____    Undisputed but Objected To __✓__

45. Hammer was well aware of the appellate issues raised by his stand-by counsel, Attorneys Ruhnke and Travis, in briefs filed with the Court of Appeals as his presentation in July 2000 demonstrated.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

46. Even if Circuit Judge Greenberg advised Hammer on July 18, 2000, that the best Hammer could hope for was a new penalty phase, Hammer knew otherwise as his appellate brief so indicated.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

47. The Court of Appeals relied upon this Court's multiple, uncontradicted findings that defendant always had the mental capacity or competency to make decisions.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

48. As an aid to its decision-making authority, the Third Circuit considered additional materials submitted directly by Hammer, defendant's own presentation at oral argument, and "the advice of all counsel (including stand-by counsel) [none of whom]

9

suggested that there was <u>any</u> question about Hammer's competence."

*United States v. Hammer*, 226 F.3d at 232 n. 2.

Undisputed _____    Disputed _____    Undisputed but Objected To __✓__

49.    The Court of Appeals had before it defendant's "entire record [including both parties opening briefs] and concluded that, in the circumstances, the interests of justice [did] not require that Hammer be compelled to appeal or that [the court] review the proceedings on the merits."    *United States v. Hammer*, 226 F.3d at 237.

Undisputed _____    Disputed _____    Undisputed but Objected To __✓__

50.    Hammer's decision to waive appeal was unilateral and never sought or bargained for by the prosecution.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

51.    Hammer articulated quite logical reasons to Drs. Mitchell and Wolfson when they conducted their initial competency examination of him in June 1998 prior to his entry of a guilty plea.    (TT Vol. 14, pp. 92-94.)

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

52.    Hammer provided cogent, albeit disputable, reasons for not pursuing review by the Third Circuit.    *United States v. Hammer*, 226 F.3d at 233-34.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

53.    The United States did not ask or bargain for Hammer's guilty plea during the rebuttal phase of the trial.

10

Undisputed _____    Disputed _____    Undisputed but Objected To __✓__

54. There is virtually no doubt as to Hammer's guilt of having murdered Marti, having been discovered alone at approximately 3:00 a.m., in the most secure aspect of a federal prison, in which the only other person in the cell, the murder victim, had all of his limbs tied to a bed and died as a result of manual strangulation.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

55. Nothing in the circumstances, especially where appointed *Amicus* effectively presented arguments on his present position before the Third Circuit, support the defense request that "The previous decision [by the Court of Appeals on waiver of direct appeal] to the contrary should be reconsidered." (Third Amended Petition, p. 40.)

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

56. By May 1998, attorneys for the Bureau of Prisons never received any written Administrative TORT claim or lawsuit from the Marti family or any representative regarding the death or murder of Andrew Marti in April 1996, at the Allenwood Penitentiary.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

57. Dr. Wolfson could not have been concerned about the liability of the United States regarding the death of Andrew Marti when he testified at trial since there were no timely filed

11

lawsuits or Administrative TORT claims received by the Bureau of Prisons' attorneys.

Undisputed _____ Disputed _✓_ Undisputed but Objected To _____

58. Hammer supplied a detailed affidavit under penalty of perjury in 1997 regarding two instances in which he claimed to have been abused by correctional officers at the Medical Center for Federal Prisoners in Springfield, MO.

Undisputed _____ Disputed _✓_ Undisputed but Objected To _____

59. A videotape of the days upon which Hammer said he was assaulted fails to corroborate any of Hammer's claims.

Undisputed _____ Disputed _✓_ Undisputed but Objected To _____

60. David Paul Hammer did not claim before the Court of Appeals on his direct appeal that he was "innocent."

Undisputed _____ Disputed _✓_ Undisputed but Objected To _____

61. Periodically, during trial David Paul Hammer would speak to his attorneys about an incident that had occurred in Court.

Undisputed _____ Disputed _✓_ Undisputed but Objected To _____

62. Hammer had access to the Federal Rules of Criminal Procedure during his trial and penalty phase.

Undisputed _____ Disputed _✓_ Undisputed but Objected To _____

63. Hammer had access to daily transcripts during the penalty phase of the proceedings.

Undisputed _____ Disputed _✓_ Undisputed but Objected To _____

12

64. Hammer does not deny having strangled Marti, even in his Third Amended Petition (page 46).

Undisputed _____    Disputed _____    Undisputed but Objected To __✓

65. Several of the claims advanced by Hammer antedate the entry of his guilty plea on June 22, 1998.  (Third Amended Petition, Grounds 9, 13, 15, 22.)

Undisputed _____    Disputed _____    Undisputed but Objected To __✓

66. Defendant's competence in criminal proceedings for over twenty years had never been called into question.  *United States v. Hammer*, 25 F. Supp. 2d at 522.

Undisputed _____    Disputed __✓    Undisputed but Objected To _____

67. A correctional officer testified for the defense that Marti wanted to live with Hammer.  (TT Vol. 7, pp. 148-49.)

Undisputed _____    Disputed __✓    Undisputed but Objected To _____

68. The prosecution stated that both inmates sought to live together.

Undisputed __✓    Disputed _____    Undisputed but Objected To _____

69. Hammer, either directly, based upon his self-proclaimed familiarity with the law, or through "learned counsel" who then represented him, knew that then-existing Rule 32(e) allowed for a change of heart regarding his plea until sentencing occurred.

Undisputed _____    Disputed __✓    Undisputed but Objected To _____

70. A dispassionate review of the facts presented during the guilty plea colloquy, as well as closing arguments in the

13

penalty phase, simply do not indicate that the prosecution vouched for or claimed that the entirety of Hammer's statement to the FBI following the murder of Andrew Marti was true.

Undisputed _____ Disputed _✓_ Undisputed but Objected To _____

71. With his DID defense, the prosecution sought to portray defendant as a manipulator, if not a malingerer, as well as a person who historically engaged in fraudulent behavior.

Undisputed _____ Disputed _____ Undisputed but Objected To _✓_

72. Dr. Sadoff conceded that Hammer was the type of person whose life was marked by "fraudulent behavior." (TT Vol. 11, pp. 44-47.)

Undisputed _____ Disputed _____ Undisputed but Objected To _✓_

73. Only two people could know with certainty what occurred between approximately 1:00 a.m. and 3:00 a.m. in SHU cell 103 on April 13, 1996, one of whom is dead and the other is Hammer.

Undisputed _____ Disputed _✓_ Undisputed but Objected To _____

74. That Marti died in the early morning hours was the subject of the officers' testimony, who conducted the "counts" and discovered the body. (TT Vol. 2, pp. 23-28.)

Undisputed _____ Disputed _✓_ Undisputed but Objected To _____

75. Dr. Funke indicated that marks on the victim's extremities suggested that he struggled in his arm and leg restraints. (TT Vol. 3, pp. 76-77.)

Undisputed _____ Disputed _✓_ Undisputed but Objected To _____

14

76.  Officers testified that the homemade ropes were so tightly applied they could not untie them but, instead, had to cut them with scissors. (TT Vol. 2, pp. 154-155.)

Undisputed __✓__  Disputed _____  Undisputed but Objected To _____

77.  Officers took a Polaroid photograph of Marti in Special Housing Unit Cell 103 at approximately 3:00 a.m. which showed that he was in the lower bed of a bunk bed with his face down and laying on his stomach.

Undisputed __✓__  Disputed _____  Undisputed but Objected To _____

78.  Hammer, in his statement to officials on the morning of the killing, did not make any reference whether he had sex with Marti.

Undisputed _____  Disputed _____  Undisputed but Objected To __✓__

79.  That Marti and Hammer at one time may have engaged in sex while living together in the Special Housing Unit was never disputed by the prosecution.

Undisputed _____  Disputed __✓__  Undisputed but Objected To _____

80.  Marks on Marti's neck and his overall physical condition confirmed that he was strangled, that conclusion of Dr. Funke remaining unassailable.

Undisputed _____  Disputed __✓__  Undisputed but Objected To _____

81.  The pathologist observed that Marti was wearing a chain when he was strangled.  (TT Vol. 3, p. 87.)

Undisputed __✓__  Disputed _____  Undisputed but Objected To _____

15

82.    The defense following trial received an apparent BOP document, the importance of which was that Hammer supposedly suffered from Bipolar disorder and if un-medicated, would likely engage in "irrational behavior."

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

83.    No one on the prosecution team saw that document.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

84.    That document about Hammer's Bipolar diagnosis has no author and could have come from persons at the Regional or Central Office of the Bureau of Prisons, who must have relied on hearsay.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

85.    Hammer had been subjected to multiple diagnoses over the years, which fact was presented by Dr. Sadoff in his testimony. (TT Vol. 10, pp. 107-08.)

Undisputed __✓__    Disputed _____    Undisputed but Objected To _____

86.    The variety of diagnoses was repeated in Dr. Wolfson's testimony.    (TT Vol. 11, pp. 160-163; TT Vol. 12, pp. 55-81.)

Undisputed __✓__    Disputed _____    Undisputed but Objected To _____

87.    ". . . BOP documents from May [14,] 1998 indicate that Hammer had refused various medications . . . ."

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

88.    There is no record of a specific and contemporaneous request for that documentation by Hammer's trial counsel.

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

89.  Hammer's periodic refusal to take medication was something which all parties knew, even from trial testimony. (TT Vol. 5, pp. 187-88; Government Exhibit 1; Memorandum, p. 33.)

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

90.  No tests were done by the FBI of the clothes which Hammer and Marti wore or were comparisons made of the swabs.

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

91.  The swabs from Marti remained in existence, contrary to early defense assertions, and were tested in 2005.

Undisputed _____    Disputed _____    Undisputed but Objected To _✓_

92.  Only tests for blood and semen were conducted by the FBI.

Undisputed _____    Disputed _____    Undisputed but Objected To _✓_

93.  Blood was found on a pillow and on a sock.

Undisputed _✓_    Disputed _____    Undisputed but Objected To _____

94.  The pillow and sock both contained Marti's blood. (TT Vol. 21, p. 42.)

Undisputed _____    Disputed _____    Undisputed but Objected To _✓_

95.  No semen was found on any anal swabs or on "unbroken" slides which were examined by the FBI at their laboratory. (TT Vol. 4, pp. 43-45.)

Undisputed _____    Disputed _____    Undisputed but Objected To _✓_

96. With no semen found at all and with Marti's blood identified on objects found near the victim, there was no need for Hammer to be asked to give any blood for testing purposes.

Undisputed _____    Disputed _✓_   Undisputed but Objected To _____

97. The latex glove in Hammer's cell is seen in a videotape of Cell 103 being examined by Special Agent Thompson.

Undisputed _____    Disputed _✓_   Undisputed but Objected To _____

98. The FBI never received the latex glove from the prison, as attorneys Ruhnke and Travis knew from discovery given to them.

Undisputed _____    Disputed _✓_   Undisputed but Objected To _____

99. The latex glove and many other innocuous items in SHU Cell 103 were not thought by the Federal Bureau of Investigation to have any evidentiary value.

Undisputed _____    Disputed _✓_   Undisputed but Objected To _____

100. The defense discovered in the Winter of 2000, what appears to be a Government memo indicating, among other things, that "Mr. Marti, specifically requested to cell with Hammer . . . ."

Undisputed _✓_    Disputed _____   Undisputed but Objected To _____

101. This was the fair implication of testimony from inmate witnesses, Yager and Classen. (TT Vol. 8, pp. 81-83; TT Vol. 9, pp. 48-49.)

Undisputed _____    Disputed _✓_   Undisputed but Objected To _____

102. A supposed Bureau of Prisons' document which was discovered by Travis' law firm in 2000, is consistent with the evidence adduced at trial and does not represent anything remotely novel, let alone exculpatory or "useful," for the defense _and_ intentionally suppressed by the prosecution to Hammer's detriment.

Undisputed _____ Disputed _✓_ Undisputed but Objected To _____

103. On August 1, 1998, Defendant, who appeared before this Court, had been convicted and ultimately faced automatic imposition of the sentencing recommendation of death by the Court, pursuant to 18 U.S.C. § 3594.

Undisputed _✓_ Disputed _____ Undisputed but Objected To _____

104. This Court's reaction to defense counsel's penalty phase opening reflected surprise at their strategy that, notwithstanding Hammer's remarks during the guilty plea proceeding, the defense still was contesting the applicability of 18 U.S.C. § 3591(a)(2)(A).

Undisputed _____ Disputed _✓_ Undisputed but Objected To _____

105. This Court expressed great concern over the "magnitude" and delicacy of Hammer's apparent interest as expressed in his pleadings to discharge counsel. (HT 8/3/98 p. 4.)

Undisputed _____ Disputed _✓_ Undisputed but Objected To _____

19

106.  Hammer acknowledged in pleadings filed by Attorney Smith on September 2, 1998, that he was willing to assume the risks of proceeding without attorney assistance.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

107.  Hammer presented on September 8, 1998, his *pro se* brief, also citing *Faretta v. California*, 422 U.S. 806 (1975), which pleading he authored while undergoing the competency evaluation in Springfield, Missouri.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

108.  Timely post-trial motions filed by Hammer's trial counsel had already been decided by this Court on September 15, 1998.

Undisputed ____    Disputed ____    Undisputed but Objected To __✓__

109.  Hammer submitted a sentencing motion which was denied at sentencing.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

110.  Attorneys Smith and Ruhnke remained available, at least on a "stand-by basis," to assist Hammer after October 1, 1998.

Undisputed ____    Disputed ____    Undisputed but Objected To __✓__

111.  There was nothing for Hammer or his counsel to do in October 1998 except to await formal imposition by the District Court of the jury's sentencing recommendation.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

112.   This Court on October 1, 1998, conducted a colloquy with Defendant to ensure that defendant knowingly wished to waive his Sixth Amendment right to counsel.   (HT 10/1/98 pp. 121-159.) Undisputed _____   Disputed _✓_   Undisputed but Objected To _____

113.   This Court specifically advised Hammer that his very life hung in the balance regarding his request to proceed without counsel.   (HT 10/1/98 pp. 135-141.) Undisputed _____   Disputed _____   Undisputed but Objected To _✓_

114.   Hammer could hardly have been more impressively aware "about the risks of proceeding *pro se*." Undisputed _____   Disputed _✓_   Undisputed but Objected To _____

115.   Hammer's post-trial motions had already been determined which prompted this Court to focus appropriately on potential appellate proceedings and the future uses of counsel for those purposes. Undisputed _____   Disputed _✓_   Undisputed but Objected To _____

116.   Not only did Hammer himself list  potential issues for the Circuit to consider, but also he heard from defense counsel as well as the prosecution.   (HT 10/1/98 pp. 124-135.) Undisputed _____   Disputed _____   Undisputed but Objected To _✓_

117.   Hammer responded affirmatively when asked whether he possessed an adequate "understanding of the applicable issues in this case."   (HT 10/1/98 pp. 135.) Undisputed _____   Disputed _____   Undisputed but Objected To _✓_

21

118.   This Court plainly advised Hammer that if persisted in his position, he would "be completely on [his] own. . . ."  (HT 10/1/98 p. 139.)

Undisputed _____   Disputed _✓_   Undisputed but Objected To _____

119.   Hammer knew, if he persisted in his views, the difficult task of writing an appellate brief fell completely to him with imposition of the death penalty if his efforts failed.

Undisputed _____   Disputed _✓_   Undisputed but Objected To _____

120.   Attorneys Ruhnke and Travis were "reunited" with Hammer following his authorization for them to file an appeal on November 12, 1998.

Undisputed _____   Disputed _✓_   Undisputed but Objected To _____

121.   Attorneys Ruhnke and Travis prepared the appeal brief, although *eo nomine* of Hammer, with them serving as stand-by counsel.

Undisputed _____   Disputed _____   Undisputed but Objected To _✓_

122.   While swallowing a razor blade might signify "reasonable cause" of mental incompetency in certain other cases, David Paul Hammer, like Michael Leggett, hardly was the ordinary case.

Undisputed _____   Disputed _✓_   Undisputed but Objected To _____

123.   Hammer had engaged in "antics" in the past including attempts to plead guilty to the murder of Marti with self-dictated conditions on two occasions.

22

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

124.    Hammer swallowed only one razor blade, not multiple ones as suggested by the defense, and it had exceedingly small dimensions.    (Jury Section, Vol. 8, pp. 20-25.)

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

125.    The transcript of Hammer's appearance on May 14, 1998, which proceeding was delayed by the razor incident, reflects this Court's monitoring of his behavior and evidences no facts which suggested to any participants at the trial that his action was a symptom of, or prelude to, any significant mental problems. (Jury Selection, Vol. 8, p. 264.)

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

126.    On July 31, 1998, Hammer filed pleadings which suggested that he wished to proceed *pro se*.

Undisputed _____    Disputed _____    Undisputed but Objected To __✓__

127.    By August 3, 1998, Attorneys Travis and Ruhnke already had filed timely motions for a new trial or penalty phase, pursuant to Federal Rule of Criminal Procedure 29(c).

Undisputed _____    Disputed _____    Undisputed but Objected To __✓__

128.    These post-verdict issues were fully briefed by those defense counsel but denied on September 15, 1998.    *Id.* at pp. 534-37.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

23

129. While continuing to receive services from Attorneys Travis and Ruhnke, this Court recognized that Hammer had wishes which, obviously, were contrary to theirs.

Undisputed _____ Disputed __✓__ Undisputed but Objected To _____

130. On August 10, 1998, this Court deferred ruling on the request of Attorney's Ruhnke and Travis to withdraw but appointed another counsel for Hammer, Stephen C. Smith, Esquire, on that same date.

Undisputed _____ Disputed _____ Undisputed but Objected To __✓__

131. Supplemental counsel was appointed but Hammer's trial counsel were not discharged until October 9, 1998.

Undisputed _____ Disputed _____ Undisputed but Objected To __✓__

132. Attorneys Smith and Ruhnke continued to serve as Hammer's stand-by legal representative after October 1, 1998, as allowed by the Sixth Amendment for *pro se* litigants.

Undisputed _____ Disputed __✓__ Undisputed but Objected To _____

133. There was no odd behavior on Hammer's part following October 1, 1998, and consequently, no requirement to reinstate Attorney's Ruhnke and Travis, "to investigate . . . competency issues even though same was contrary to Hammer's stated desires."

Undisputed _____ Disputed __✓__ Undisputed but Objected To _____

134. This Court required defense counsel to brief post-verdict issues, which they did on August 14, 1998, as well as on September 11, 1998.

24

Undisputed _____    Disputed _____    Undisputed but Objected To __✓__

135.    Trial counsel opposed the prosecution's request that Hammer again be sent to Springfield for another competency examination in August 1998.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

136.    Attorneys Travis and Ruhnke filed, on September 2, 1998, legal arguments in support of their earlier filed effort to "bar Defendant from waving new trial motions and his Appeal of his sentence of death."

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

137.    Trial counsel could have utilized the September 2, 1998, submission in which to raise the claim of supposed mismanagement by the Bureau of Prisons of Hammer's psychiatric and medical condition, if such facts exited.

Undisputed _____    Disputed __✓__    Undisputed but Objected To _____

138.    Attorney Travis filed a Status Report on September 4, 1998, while Attorney Smith submitted a Motion to Return Prisoner on September 16, 1998.

Undisputed _____    Disputed _____    Undisputed but Objected To __✓__

139.    This Court, by order dated September 18, 1998, invited all counsel, including Travis and Ruhnke, to submit proposed Findings of Fact and Conclusions of Law.

Undisputed _____    Disputed _____    Undisputed but Objected To __✓__

25

140. On October 1, 1998, all attorneys, including Travis and Ruhnke, presented such a submission, as well as their comments, to this Court which, again, could have included such claims of mental health mismanagement by the Bureau of Prisons.

Undisputed _____ Disputed __✓__ Undisputed but Objected To _____

141. At the hearing on October 1, 1998, neither Attorney Ruhnke nor Attorney Travis took a passive role.

Undisputed _____ Disputed __✓__ Undisputed but Objected To _____

142. The former cross-examined Dr. Mitchell while the former acted similarly with Dr. Wolfson. (HT 10/1/98 pp. 109-15 and pp. 43-75.)

Undisputed _____ Disputed _____ Undisputed but Objected To __✓__

143. Attorney Ruhnke also presented to the Court's attention Dr. Sadoff's testimony. (HT 10/1/98 pp. 121-22.)

Undisputed _____ Disputed __✓__ Undisputed but Objected To _____

144. Part of Hammer's present arguments rely upon information developed in late 2000 by Attorney Travis following his formal discharge as counsel of record for Hammer.

Undisputed _____ Disputed __✓__ Undisputed but Objected To _____

145. It was Attorney Travis, who "discovered" the April 10, 1996, memorandum as well as other Bureau of Prisons' documents which form Ground Seven of the collateral challenge.

Undisputed _____ Disputed __✓__ Undisputed but Objected To _____

26

146. This Court, in its order of September 15, 1998, denied Hammer's first effort to obtain a new trial which included, as one basis, the supposedly inadequate factual basis for the guilty plea, which defense counsel has revived and represented as part of Ground One in these proceedings. *United States v. Hammer*, 25 F. Supp. 2d at 534-37.

Undisputed _____   Disputed __✓__   Undisputed but Objected To _____

147. That Hammer voiced on June 21, 1998, his interest in pleading guilty to Attorney Travis hardly could be described as an unanticipated development.

Undisputed _____   Disputed __✓__   Undisputed but Objected To _____

148. Hammer's mental health had been thoroughly researched by the defense, which included the retention and presentation of Dr. Robert Sadoff, Dr. Michael Gelbort, and Dr. Stuart Grassian, none of whom apparently suggested to trial counsel in their reports that Defendant was incompetent.

Undisputed _____   Disputed __✓__   Undisputed but Objected To _____

149. Dr. Sadoff had opportunities to discuss the case with defense counsel, as well as observe Hammer in court as recently as five days before Defendant entered his guilty plea. (TT Vol. 11, pp. 86-87.)

Undisputed _____   Disputed __✓__   Undisputed but Objected To _____

150. There were few, if any, forensic psychologists in June 1998, at the ready in the Williamsport area, let alone one who

27

could within a reasonable time period have read as well as digested "the inordinate amount of documentary information available regarding Hammer's then-relevant medications and psychiatric status. . . ."

Undisputed _____   Disputed _✓_   Undisputed but Objected To _____

151. The record of proceedings reveals an intelligent, if not crafty, David Paul Hammer responding to the inquiries by Drs. Wolfson and Mitchell and answering this Court's guilty plea colloquy in June 1998.

Undisputed _____   Disputed _✓_   Undisputed but Objected To _____

152. New defense counsel seem to adhere to Hammer's DID defense which Attorneys Ruhnke and Travis vigorously advanced.

Undisputed _____   Disputed _✓_   Undisputed but Objected To _____

153. The physical evidence of strangulation and restraint was unassailable, was consistent with testimony of correctional officials, as well as the pathologist, and aspects of Hammer's statements to authorities.

Undisputed _____   Disputed _✓_   Undisputed but Objected To _____

154. Chaplain Crook was one of the briefest of witnesses at trial. (TT Vol. 13, pp. 120-128.)

Undisputed _✓_   Disputed _____   Undisputed but Objected To _____

155. Chaplain Crook's testimony served only to rebut the defense claim that Hammer suffered from Dissociative Identity Disorder on April 13, 1996.

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

156.    Donn Troutman testified as a Penalty Phase witness and in a fashion similar to Reverend Crook.  (TT Vol. 16, pp. 19-37.)

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

157.    Donn Troutman provided limited information about the backgrounds of Andrew Marti and David Paul Hammer as well as the latter's statements and behavior on April 13, 1996, which did not comport with the DID defense.

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

158.    The length of Troutman's cross examination approximated his direct testimony.  (TT Vol. 16, pp. 37-61.)

Undisputed _____    Disputed _____    Undisputed but Objected To _✓_

159.    Defense counsel asked that Troutman return to testify extensively in the penalty phase of their case.  (TT Vol. 21, pp. 157-191 and Vol. 22, pp. 5-56.)

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

160.    Dr. Mitchell was brought into the case by the _defense_ on the issue of Hammer's competency.

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

161.    Dr. Mitchell testified for the _defense_ in the penalty phase.  (TT Vol. 19, pp. 132-185 and Vol. 20, pp. 13-141.)

Undisputed _✓_    Disputed _____    Undisputed but Objected To _____

162.    The awards, which Reverend Crook, Mr. Troutman, and Dr. Mitchell received from the Warden, were part of the Bureau of

Prisons' policy and specifically former Program Statement No. 3451.03 which was available to the public upon request.

Undisputed __✓__  Disputed ____  Undisputed but Objected To ____

163.  Reverend Crook, Mr. Troutman, and Dr. Mitchell testified in the past for the prosecution in other cases and did not receive any monetary award for their testimony even though a Bureau of Prisons' Program Statement allowed for such actions.

Undisputed ____  Disputed __✓__  Undisputed but Objected To ____

164.  Individuals within the Bureau of Prisons believed that monetary rewards were justified for these employees, none of whom even served in a direct law enforcement capacity in this case.

Undisputed ____  Disputed __✓__  Undisputed but Objected To ____

165.  Reverend Crook, Mr. Troutman, and Dr. Mitchell provided valuable assistance to the Allenwood Penitentiary, including staff and inmates, following the events of April 13, 1996, as well as their testimony over two years later.

Undisputed ____  Disputed __✓__  Undisputed but Objected To ____

166.  The prosecution may have communicated with the Warden to advise him of his three employees' actions at trial.

Undisputed ____  Disputed __✓__  Undisputed but Objected To ____

167.  Based upon the timing and other factors, such a potential award did not affect the testimony which Dr. Mitchell, Reverend Cook, and Mr. Troutman presented at trial, whether for the prosecution or the defense.

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

168.    The prosecution provided appropriate impeachment material data for inmate witnesses Yager and Classen.

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

169.    The Justice Department, to avoid this potential Fifth Amendment issue and out of an abundance of caution, now requires that at least statutory aggravating factors be presented to a Grand Jury as this Court is aware from presiding over *United States v. O'Driscoll*, M.D. Pa. Crim. No. 4:CR-01-00277. (Memorandum, p. 48.)

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

170.    Notwithstanding the filing of multiple pre-trial issues in 1997 by competent and "learned" counsel, *United States v. Hammer*, 25 F. Supp. 2d at 527 n. 8, none of them raised the Fifth Amendment issue or anticipated *Apprendi*.

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

171.    Hammer and James Hauser both briefly were incarcerated in 1996 at the Federal Correctional Institution of the Allenwood Correctional Complex.

Undisputed _____    Disputed _____    Undisputed but Objected To _✓_

172.    Incidents, such as the Marti killing, spur some inmates, such as Hauser, to "volunteer" on their own, to secure information from putative defendants.

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

31

173. The Bureau of Prisons, except in very rare circumstances, is powerless to prevent self-motivated inmates from acting on their own to ask questions of fellow prisoners who may have committed crimes for which they later hope to be "rewarded" in some fashion.

Undisputed _____ Disputed _√_ Undisputed but Objected To _____

174. Special Agent Malocu once met Hauser on December 5, 1996, at Hauser's insistence.

Undisputed _____ Disputed _√_ Undisputed but Objected To _____

175. The details which Hauser provided were, at best, superfluous or contradictory to both the defense and prosecution, as well as from other information provided by inmates at the Allenwood Penitentiary.

Undisputed _____ Disputed _√_ Undisputed but Objected To _____

176. Hauser was convicted of fraudulent securing of a controlled substance.

Undisputed _____ Disputed _____ Undisputed but Objected To _√_

177. Hauser initially was in the Special Housing Unit of the Federal Correctional Institution due to a disciplinary violation.

Undisputed _____ Disputed _____ Undisputed but Objected To _√_

178. Hauser wanted placement in a half-way house, which privilege he forfeited when incarcerated at Federal Correctional

32

Institution, McKean, since he tested positive for drug usage at that facility.

Undisputed _____    Disputed _____    Undisputed but Objected To _✓_

179.    Hauser and his wife both sought Hauser to be interviewed by the Federal Bureau of Investigation.

Undisputed _____    Disputed _____    Undisputed but Objected To _✓_

180. Hammer had been known as an inmate interested in homosexual relations with other inmates since 1982 according to testimony presented by the defense.  (TT, Vol. 8, p. 8, 20.)

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

181.    Several inmates from the Oklahoma State prison as well as a Chaplain there testified at trial in effect that they believed Hammer had multiple personalities.  (TT, Vol. 8, pp. 8, 40, 70.)

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

182.    Hammer's trial attorneys made requests for specific interviews of their client by the FBI or other law enforcement agencies as noted in Attorney Travis' letters dated June 9, 1997 and June 30, 1997.

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

183.    Hammer's trial attorneys stated in a letter dated June 21, 1997, from Attorney Ruhnke that they possessed "some information . . . that Mr. Hammer had a habit of falsely

33

implicating himself in various crimes for his own purpose."
(Emphasis supplied.)

Undisputed __✓__ Disputed ____ Undisputed but Objected To ____

184. Hammer's trial attorneys in the same June 21, 1997 letter specifically made a request that [the prosecution] disclose any and all information which the government has developed (or is chargeable with knowledge of pursuant to *Kyles*) of such situations [in which Mr. Hammer may have confessed falsely to other crimes]."

Undisputed __✓__ Disputed ____ Undisputed but Objected To ____

185. In response to the request for exculpatory materials, the prosecution listed in its letter to Attorney Ruhnke, dated June 27, 1997, several examples of instances in which it indicated that Hammer's statements to law enforcement personnel were false but indicated that it had not yet determined to what extent Hammer's contacts with law enforcement official in the past involved false "statements" and indicated that it would "provide as many details as is possible about matters to which Mr. Hammer claimed involvement or knowledge. . . ."

Undisputed __✓__ Disputed ____ Undisputed but Objected To ____

186. During the trial, Hammer's attorneys alluded to the false information which Hammer gave law enforcement personnel about the Karen Silkwood murder while the prosecution also alluded to Hammer's similar false "statements" so that he could

34

visit more conveniently his friend, Sam Young, in Michigan. (TT, Vol. 28, pp. 94-101; Vol. 29, pp. 24-25; 30.)

Undisputed _____   Disputed __✓__   Undisputed but Objected To _____

187. Hammer's trial attorneys received from the prosecution through a cover letter dated December 16, 1996, documents from the Oklahoma Department of Corrections which *inter alia* referred to Hammer's unsubstantiated and false claims that he was responsible for the death of Carl I Singer of Enid, Oklahoma, in June 1985, had a hand in the killing of Kenneth Kenner in Tennessee, was involved in the murder of Karen Silkwood, and was responsible for the 1993 murder of an unidentified Youngstown, Ohio, man.

Undisputed __✓__   Disputed _____   Undisputed but Objected To _____

188. Hammer was transferred to the Special Housing Unit at the Federal Correctional Institution, Allenwood Federal Correctional Complex, on April 17, 1996, and continued to stay there until October 28, 1996, since there were several cooperating inmates incarcerated in the SHU at the Allenwood Penitentiary who may have been subject to intimidation or threats if Hammer had remained at the Penitentiary.

Undisputed _____   Disputed __✓__   Undisputed but Objected To _____

189. James Hauser was placed in the SHU on October 24, 1996, for a second time in the Fall of that year based upon

35

concerns for his safety, the inmate having suffered an unexplained laceration to his nose.

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

190.    Hammer's trial counsel in their opening argument in the guilt phase challenged at length the truthfulness of their client's statement to the Federal Bureau of Investigation and noted that Marti's bondage "was part of some plan, kinky homosexual activity between Mr. Hammer and Mr. Marti." (TT, 6-3-98, pp. 24, 25, 37-39.)

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

191.    In a letter dated April 27, 1997, written by Hammer to the United States Attorney's Office indicated a willingness to enter a guilty plea on certain specified conditions.

Undisputed _✓_    Disputed _____    Undisputed but Objected To _____

192.    Hammer's trial attorneys knew by letters dated March 25, 1997 and April 14, 1997, from the prosecution that Hammer may have sent multiple inmates "kites" or letters including at least inmates Darby, Larimore, Classen, and Kahle.

Undisputed _____    Disputed _✓_    Undisputed but Objected To _____

193.    Hammer's trial attorneys received as an attachment to a letter from the prosecution dated January 15, 1997, an article from "The Advocate," a gay newspaper, dated April 17, 1987, in which not only is there reference to Hammer's purported involvement in the Kenner homicide in Tennessee, but also

36

involvement in the killing of Carl Singer of Enid, Oklahoma, and his friend, Bobbie Bickham of Oklahoma City, in the Summer of 1985, as well as the killings of two girls in the 1970's, none of which were substantiated by law enforcement officials.

Undisputed __✓__ Disputed ____ Undisputed but Objected To ____

194. Hammer's defense counsel received by letters dated January 10, and July 31, 1997, a copy of the roster of inmates in the Special Housing Unit at the Allenwood Penitentiary on April 9, 1996, which listing included James Lee, Bradley Brown, Leonard Kahle, Gaylon Don Ball, and Mark Jordan, only the latter of whom was called by the defense to testify at trial.

Undisputed ____ Disputed __✓__ Undisputed but Objected To ____

195. Hammer's counsel learned by letter dated March 4, 1997, from the prosecution that their client had purportedly information about the "UNABOMBER," as well as other interviews of him by the FBI which involved false information, which fact was noted to the jury by the prosecution in its closing argument.

Undisputed __✓__ Disputed ____ Undisputed but Objected To ____

196. Hammer's counsel by letter dated June 30, 1997, knew that their client had apparently been interviewed by someone about the Karen Silkwood murder.

Undisputed ____ Disputed __✓__ Undisputed but Objected To ____

197. The prosecution offered in a letter to Hammer's attorneys dated May 21, 1998, to have the matter of who prepared

37

an apparently forged letter "Q-29" from Hammer to Judge Muir to resolve whether disclosures of that person's identity should occur, which offer the defense never pursued.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

198.    By letter dated May 29, 1998, with attachments, Hammer's attorneys became aware of the substance of testimony which inmate Michael Cole would provide, if called to testify.

Undisputed ____    Disputed __✓__    Undisputed but Objected To ____

Respectfully submitted,

THOMAS A. MARINO
United States Attorney


By_____ s/FREDERICK E. MARTIN_____
FREDERICK E. MARTIN
Assistant United States Attorney
PA 57455
Herman T. Schneebeli Federal Bldg.
240 West Fourth Street, Suite 316
Williamsport, PA 17701-6465
Tele: (570) 326-1935
FAX: (570) 326-7916
Electronic Mail:
Fred.Martin@usdoj.gov

Dated: October 6, 2005

38

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     : Crim. No. 4:CR-96-263
                           : Civil No. 4:CV-02-510
      v.                    :
                           : (Muir, J.)
DAVID PAUL HAMMER       : **ELECTRONICALLY FILED**

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing

**UNITED STATES' FINDINGS OF FACT**
AS ANNOTATED BY COUNSEL FOR HAMMER
to be electronically mailed on _October 6_, 2005 to:

ADDRESSEE:

Anne L. Saunders, Esquire
Anne_Saunders@fd.org

Michael Wiseman, Esquire
Michael_Wiseman@fd.org

FREDERICK E. MARTIN
Assistant United States Attorney