**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>DAVID PAUL HAMMER,<br><br>Petitioner. | Criminal No. 4:CR–96-239<br><br>Judge Muir |

**PETITIONER'S PROPOSED FINDINGS OF FACT
PART IV[1]**

**CONTENTS**

| | | |
|---|---|---|
| XXXX | Bernard Halloran | 310 |
| XXXXI | Richard Snyder | 314 |
| XXXXII | Guy Fleck | 317 |
| XXXXIII | William Elliot, Ph.D. | 318 |
| XXXXIV | Anthony S. Maluco | 321 |
| XXXXV | Jack P. Luhrman | 335 |

---

[1]All numbers are sequential and continue from *Petitioner's Proposed Findings of Fact, Part III.*

## XXXX    Bernard Halloran

1515. In December, 1997, Lt. Bernard Halloran was employed at the Springfield Federal Medical Facility.

_✓_ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1516. Lt. Halloran was responsible for transported Mr. Hammer to a clinic for purposes of an MRI.

_✓_ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1517. Mr. Hammer was on elevated security status while at Springfield.

_✓_ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1518. Lt. Halloran had to design security procedures for the transport that addressed Mr. Hammer's heightened security status.

___ Undisputed          _✓_ Disputed          ___ Undisputed But Objected To

1519. Mr. Hammer was not told of the date and time of the transport.

_✓_ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1520. The transport was scheduled for 4:00 am.

_✓_ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1521. Ten officers were assigned to the transport.

_✓_ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1522. All the officers were armed.

310

___✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1523. All officers were armed with .9 millimeter handguns and the perimeter officers were armed with Colt submachine guns (the .9 millimeter version of the M-16).

___✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1524. A minimum of three officers responded to Mr. Hammer's cell to begin the transport.

___✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1525. Lt. Halloran could not recall whether or not the team wore black fatigues or correctional uniforms.

___✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1526. Lt. Halloran wore black fatigues on many transports.

___✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1527. The black fatigues are the solid black version of the camouflage BDUs worn by the military.

____ Undisputed          ___ Disputed          ___✓ Undisputed But Objected To

1528. Mr. Hammer was taken from his cell to the R&D section prior to the transport.

___✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

311

1529. In the R&D section, all inmates are processed, change clothes and placed in temporary restraints.

___✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1530. Inmates are also strip-searched in the presence of a minimum of three officers.

___✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1531. Mr. Hammer was secured in full correctional restraints including handcuffs, leg-irons, a Martin chain, the black box padlock and a stun belt.

___✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1532. A stun belt involves a device in which, in cases where the inmate gets out of control, an officer can push a button that incapacitates the inmate with electricity from a battery pack on the inmate's waist.

___✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1533. If the stun belt is activated, there is a possibility that the inmate will self-defecate; self-urinate or be incapacitated for a period of time.

___✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1534. Inmates are informed of the potential reactions to activating the stun belt.

___✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

312

1535. Lt. Halloran had control of the stun belt on Mr. Hammer's transport.

__✓__ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1536. After processing Mr. Hammer through R&D, MR. Hammer was taken to the transport vehicles.

__✓__ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1537. Five vehicles were used for Mr. Hammer's transport.

__✓__ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1538. The officers outside with the vans were the officers in possession of the Colt submachine guns.

____ Undisputed          __✓__ Disputed          ___ Undisputed But Objected To

1539. There were at least two armed advanced guards at the hospital.

__✓__ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1540. Mr. Hammer believed that if the officer in control of the stun belt was a certain distance away from him (Mr. Hammer) the belt would activate.

____ Undisputed          __✓__ Disputed          ___ Undisputed But Objected To

1541. When they arrived at the hospital, Mr. Halloran left the van without Mr. Hammer.

__✓__ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1542. Mr. Hammer called after Mr. Halloran as a result of his belief

313

regarding the belt activation.

____ Undisputed        ✓ Disputed        ___ Undisputed But Objected To

1543. The return trip to the prison involved the same procedures.

____ Undisputed        ✓ Disputed        ___ Undisputed But Objected To

## XXXXI    Richard Snyder

1544. Richard Lynn Snyder is a counselor at the United States Penitentiary in Allenwood, Pennsylvania.

✓ Undisputed        ___ Disputed        ___ Undisputed But Objected To

1545. Mr. Snyder's duties as inmate counselor include housing assignments, work assignments, processing inmate visit requests, processing inmate telephone lists, handling administrative remedies and addressing inmate requests of staff members.

✓ Undisputed        ___ Disputed        ___ Undisputed But Objected To

1546. Mr. Snyder testified that Mr. Hammer was assigned to his caseload and that he worked as Mr. Hammer's counselor from July of 1995 through 1999, when Mr. Hammer was transferred to a different facility.

✓ Undisputed        ___ Disputed        ___ Undisputed But Objected To

1547. Mr. Snyder testified that as counselor, he made daily rounds on the cell block and saw Mr. Hammer daily.

314

✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1548. Mr. Snyder testified that Mr. Hammer appeared "depressed" during the course of his capital trial and "seemed very upset when he did receive the death penalty."

✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1549. Mr. Snyder told this Court that his caseload included one hundred and twenty inmates in general population and about five to thirty-five in the Special Housing Unit for a total of one hundred and twenty five to one hundred and fifty-five inmates on his caseload on any given day.

✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1550. Mr. Snyder's responsibilities included participating as a member of the Unit Disciplinary Committee that conducts reviews of inmate complaints.

✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1551. Mr. Snyder was also responsible for "mainline duty" three days a week.

✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1552. Mainline duty is where the counselor is present in the dining area during the noon meal to address any issues from inmates on his caseload.

✓ Undisputed          ___ Disputed          ___ Undisputed But Objected To

315

1553. This task would take forty-five minutes to an hour each of the three days he was responsible for fulfilling this duty.

__✓__ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1554. Normally, when Mr. Snyder saw Mr. Hammer it was to deliver his legal mail.

____ Undisputed          _✓_ Disputed          ___ Undisputed But Objected To

1555. Mr. Snyder also testified that Mr. Hammer was locked down in his cell for all but five hours a week.

____ Undisputed          _✓_ Disputed          ___ Undisputed But Objected To

1556. When he was out of his cell for those five hours per week he would nonetheless be alone and not in contact with other inmates.

____ Undisputed          _✓_ Disputed          ___ Undisputed But Objected To

1557. Mr. Hammer was also not allowed to have a television in his cell.

__✓__ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1558. Mr. Snyder testified that although Mr. Hammer never complained about his single cell status, such complaints would have been futile since Mr. Hammer would never have been allowed to have a cell mate.

__✓__ Undisputed          ___ Disputed          ___ Undisputed But Objected To

1559. Mr. Snyder testified that almost all of his interactions with Mr.

316

Hammer occurred with Mr. Hammer on one side of his cell door and Mr. Snyder on the other.

____✓ Undisputed          ____ Disputed          ____ Undisputed But Objected To

1560. Mr. Snyder acknowledged that his interactions with Mr. Hammer were generally fairly short in duration.

____ Undisputed          ____✓ Disputed          ____ Undisputed But Objected To

1561. Mr. Snyder told this Court that he has observed Mr. Hammer depressed, sad, upset, agitated and witnessed Mr. Hammer crying.

____✓ Undisputed          ____ Disputed          ____ Undisputed But Objected To

1562. He also reported Mr. Hammer could be cooperative at times and was "very moody."

____ Undisputed          ____✓ Disputed          ____ Undisputed But Objected To

1563. Mr. Snyder acknowledged that he observed this moodiness on the part of Mr. Hammer on a fairly regular basis over a period of years.

____ Undisputed          ____✓ Disputed          ____ Undisputed But Objected To

## XXXXII    Guy Fleck

1564. Guy Fleck is a federal correctional officer with the Bureau of Prisons.

____✓ Undisputed          ____ Disputed          ____ Undisputed But Objected To

1565. In April of 1996 Mr. Fleck was a special investigative support

317

technician at the United States Penitentiary in Allenwood.

__✓__ Undisputed        ___ Disputed        ___ Undisputed But Objected To

1566. Mr. Fleck admitted that he had no personal knowledge of who wrote the runes over the cell door in cell 103.

____ Undisputed        __✓_ Disputed        ___ Undisputed But Objected To

1567. Mr. Fleck admitted that he has no idea whether or not Mr. Hammer and Mr. Marti engaged in homosexual activity the night of April 13, 1996.

____ Undisputed        __✓_ Disputed        ___ Undisputed But Objected To

## XXXXIII   William Elliot, Ph.D.

1568. William N. Elliot, Ph.D., is the former Chief Psychologist at the United States Penitentiary at Terra Haute.

__✓_Undisputed        ____Disputed        ____Undisputed But Objected To

1569. Dr. Elliot received his Doctor in Philosophy, Counseling Psychology from Indiana State University, Terra Haute, Indiana in 1985.

__✓_Undisputed        ____Disputed        ____Undisputed But Objected To

1570. Dr. Elliot has no formal training in forensic psychology.

__✓_Undisputed        ____Disputed        ____Undisputed But Objected To

1571. Dr. Elliot testified that he is not board certified in forensic psychology.

___✓Undisputed      _____Disputed      _____Undisputed But Objected To

1572. Dr. Elliot testified, and the Court so finds, that he is not a forensic psychologist and was not called upon by the Government to conduct a forensic evaluation of Mr. Hammer.

___✓Undisputed      _____Disputed      _____Undisputed But Objected To

1573. Dr. Elliot testified that while employed by the Bureau of Prisons, he never conducted any type of formal psychological evaluation of Mr. Hammer, including clinical or forensic.

_____Undisputed      __✓Disputed      _____Undisputed But Objected To

1574. Dr. Elliot described his contact with Mr. Hammer as "generally routine in nature" and added that most, if not all, of his interactions with Mr. Hammer occurred through the food slot in Mr. Hammer's cell door.

__✓Undisputed      _____Disputed      _____Undisputed But Objected To

1575. Dr. Elliot admitted that he never evaluated or even questioned Mr. Hammer about symptoms related to Post Traumatic Stress Disorder or Dissociative Identity Disorder.

_____Undisputed      __✓Disputed      _____Undisputed But Objected To

1576. Dr. Elliot acknowledged that his contacts with Mr. Hammer were limited to weekly rounds whereby he would stop outside of Mr. Hammer's cell

319

door to conduct so-called monthly mental status checks.

_____Undisputed    __✓_Disputed    _____Undisputed But Objected To

1577. Monthly status checks are neither a clinical nor a forensic psychological evaluation.

_____Undisputed    __✓_Disputed    _____Undisputed But Objected To

1578. Monthly status checks involve determining whether or not there are obvious signs of pathology rather than clinical or forensic diagnosis.

__✓_Undisputed    _____Disputed    _____Undisputed But Objected To

1579. Dr. Elliot admitted that he never inquired about Mr. Hammer's background, social history, family history or prior mental health diagnoses.

__✓_Undisputed    _____Disputed    _____Undisputed But Objected To

1580. Dr. Elliot admitted that he was unaware that Mr. Hammer had previously been diagnosed as suffering from Dissociative Identity Disorder or Post-Traumatic Stress Disorder until contacted by Mr. Martin.

__✓_Undisputed    _____Disputed    _____Undisputed But Objected To

1581. Dr. Elliot acknowledged, as stated in his written report, that it was difficult for him to recall specific interactions with Mr. Hammer during the years in question – 1999 through 2001.

_____Undisputed    __✓_Disputed    _____Undisputed But Objected To

320

## XXXXIV    Anthony S. Maluco

1582. On April 14, 1996 FBI Agent Anthony Maluco was assigned as the case agent to investigate the death of Andrew Marti.

_____Undisputed      ✓ Disputed      _____Undisputed But Objected To

1583. As case agent, Agent Maluco was in charge of the investigation into the death of Andrew Marti.

✓ Undisputed      _____Disputed      _____Undisputed But Objected To

1584. At the time of this assignment Agent Maluco had been an FBI Agent for less than five months.

✓ Undisputed      _____Disputed      _____Undisputed But Objected To

1585. Prior to becoming an FBI Agent, Agent Maluco had no previous law enforcement experience.

✓ Undisputed      _____Disputed      _____Undisputed But Objected To

1586. Prior to the Marti investigation, Agent Maluco had not been trained in the area of accidental death due to erotic asphyxiation.

✓ Undisputed      _____Disputed      _____Undisputed But Objected To

1587. Prior to the Marti investigation, Agent Maluco had never handled a case where the cause of death was found to be accidental due to erotic asphyxiation.

___✓_Undisputed     _____Disputed     _____Undisputed But Objected To

1588. Prior to the Marti investigation, Agent Maluco had never handled a case where an insanity defense had been raised.

___✓_Undisputed     _____Disputed     _____Undisputed But Objected To

1589. Agent Maluco testified at Petitioner's trial and this Court finds that the Marti investigation was the first homicide case that Agent Maluco had been assigned as the case agent.

_____Undisputed     ___✓__Disputed     _____Undisputed But Objected To

1590. Agent Maluco did not visit the scene – cell 103 – during the first week of the investigation.

___✓_Undisputed     _____Disputed     _____Undisputed But Objected To

1591. Agent Maluco made attempts to verify the information Mr. Hammer had provided to FBI Agent Carlyle Thompson in his statement on the night in question.

___✓_Undisputed     _____Disputed     _____Undisputed But Objected To

1592. Agent Maluco determined that some of the things Mr. Hammer told Agent Thompson could be authenticated and others could not be.

___✓_Undisputed     _____Disputed     _____Undisputed But Objected To

1593. Agent Maluco was the only FBI Agent to attend Marti's autopsy

322

___✓_Undisputed    _____Disputed    _____Undisputed But Objected To

1594. At the time of the Marti autopsy Agent Maluco had not received training in the area of evidence to be collected at an autopsy.

_____Undisputed    __✓_Disputed    _____Undisputed But Objected To

1595. At the autopsy, Dr. Funke collected penile, anal and oral swabs from the decedent's body.

___✓_Undisputed    _____Disputed    _____Undisputed But Objected To

1596. The oral swabs were taken from the throat and gums.

___✓_Undisputed    _____Disputed    _____Undisputed But Objected To

1597. Agent Maluco submitted the penile and anal swabs to the FBI laboratory for a comparative DNA analysis.

_____Undisputed    __✓_Disputed    _____Undisputed But Objected To

1598. Agent Maluco did not submit the oral swabs taken from both the gums and throat for testing.

___✓_Undisputed    _____Disputed    _____Undisputed But Objected To

1599. Agent Maluco did not submit the oral swabs for testing because he thought that the chances of Mr. Hammer and Mr. Marti engaging in oral sex at the time of death to be "pretty slim."

_____Undisputed    __✓_Disputed    _____Undisputed But Objected To

1600. Agent Maluco testified and this Court finds that bondage is consistent with erotic asphyxia.

_____Undisputed    _✓_Disputed    _____Undisputed But Objected To

1601. Agent Maluco testified and this Court finds that lack of evidence of semen is not inconsistent with erotic asphyxia.

_____Undisputed    _✓_Disputed    _____Undisputed But Objected To

1602. Agent Maluco testified and this Court finds that petechia is a common finding in strangling deaths.

_✓_Undisputed    _____Disputed    _____Undisputed But Objected To

1603. Agent Maluco believed, prior to trial, that a defense of accidental death due to sexual asphyxia was highly likely.

_____Undisputed    _✓_Disputed    _____Undisputed But Objected To

1604. Agent Maluco shared his opinion (that he believed that a defense of accidental death due to sexual asphyxia was highly likely) with the prosecutor, Mr. Fred Martin.

_____Undisputed    _✓_Disputed    _____Undisputed But Objected To

1605. Agent Maluco interviewed a number of inmates in federal and state prison that had contact with Mr. Hammer prior to 1996.

_✓_Undisputed    _____Disputed    _____Undisputed But Objected To

324

1606. Agent Maluco prepared written accounts of the interviews he conducted during the course of this investigation and these written accounts are identified as "302" documents.

_____✓Undisputed    _____Disputed    _____Undisputed But Objected To

1607. Agent Maluco kept a copy of the 302 documents he prepared and, prior to trial, provided a copy of all of these 302's to Assistant United States Attorney Fred Martin.

_____Undisputed    _____✓Disputed    _____Undisputed But Objected To

1608. During the course of the Marti investigation Agent Maluco received documents prepared by the Federal Bureau of Prisons.

_____✓Undisputed    _____Disputed    _____Undisputed But Objected To

1609. These documents were provided, prior to trial, to Assistant United States Attorney Fred Martin.

_____Undisputed    _____✓Disputed    _____Undisputed But Objected To

1610. As a result of Court order during the evidentiary hearing, Agent Maluco turned over a number of 302s to Hammer's counsel that had not previously been disclosed to counsel at the time of trial or during the appellate and Section 2255 proceedings.

_____✓Undisputed    _____Disputed    _____Undisputed But Objected To

325

1611. Included in those mid-hearing disclosed 302s were two 302s reflecting Agent Maluco's pretrial interviews with an inmate by the name of Albert Johnson.

___✓ Undisputed    _____ Disputed    _____ Undisputed But Objected To

1612. Anticipating a defense of accidental death due to sexual asphyxiation, Agent Maluco specifically questioned Johnson about Mr. Hammer's sexual practices.

_____ Undisputed    __✓ Disputed    _____ Undisputed But Objected To

1613. Mr. Johnson told agent Maluco that Hammer was a homosexual that was into bondage.

___✓ Undisputed    _____ Disputed    _____ Undisputed But Objected To

1614. He told Agent Maluco that Hammer and his sexual partners would tie each other up and whip each other with rope or electrical cord.

___✓ Undisputed    _____ Disputed    _____ Undisputed But Objected To

1615. Mr. Johnson also told Agent Maluco that Hammer and his cell mate would tie each other up and bite each other.

___✓ Undisputed    _____ Disputed    _____ Undisputed But Objected To

1616. Mr. Johnson told Agent Maluco that they tied each other up using braided sheets and would stay up all night engaging in sexual activity.

326

_____Undisputed    __✓__Disputed        _____Undisputed But Objected To

1617. Mr. Johnson told Agent Maluco that Hammer and his cell mate would beat each other up for the pain.

__✓__Undisputed    _____Disputed        _____Undisputed But Objected To

1618. Prior to trial, Agent Maluco prepared 302 reports documenting this information and provided a copy of this 302 report to Assistant United States Attorney Fred Martin.

__✓__Undisputed    _____Disputed        _____Undisputed But Objected To

1619. AUSA Martin never provided a copy of these reports to the defense.

__✓__Undisputed    _____Disputed        _____Undisputed But Objected To

1620.   During the pre-trial investigation Agent Maluco also interviewed an inmate by the name of Royce Lee Fowler.

__✓__Undisputed    _____Disputed        _____Undisputed But Objected To

1621. Anticipating a defense of accidental death due to sexual asphyxiation, Agent Maluco specifically questioned Fowler about Mr. Hammer's sexual practices.

_____Undisputed    __✓__Disputed        _____Undisputed But Objected To

1622. Mr. Fowler told agent Maluco that Hammer told him that he liked bondage and wanted to be tied up during sex.

327

_____✓ Undisputed   _____Disputed   _____Undisputed But Objected To

1623. Hammer also told Fowler that his father abused him and his sister and brother when they were children and Hammer was about 5 or 6 years old.

_____✓ Undisputed   _____Disputed   _____Undisputed But Objected To

1624. Hammer told Fowler that Hammer's dad would make him "suck his Peter" and would do the same to his sister and brother.

_____✓ Undisputed   _____Disputed   _____Undisputed But Objected To

1625.   Prior to trial,  Agent Maluco prepared a 302 report documenting this information and provided a copy of this 302 report to Assistant United States Attorney Fred Martin.

_____✓ Undisputed   _____Disputed   _____Undisputed But Objected To

1626. AUSA Martin never provided a copy of this report to the defense.

_____✓ Undisputed   _____Disputed   _____Undisputed But Objected To

1627. Also included in the mid-evidentiary hearing disclosed 302s was a 302 indicating an interview with Martin Gurrero.

_____✓ Undisputed   _____Disputed   _____Undisputed But Objected To

1628. In that interview, Mr. Gurrero stated that he knew David Hammer.

_____✓ Undisputed   _____Disputed   _____Undisputed But Objected To

1629. In that interview, Mr. Gurrero stated that he did not received a letter

from David Hammer either directly or through a third party.

___✓ Undisputed    _____ Disputed    _____ Undisputed But Objected To

1630. Mr. Gurrero's statement contradicts Mr. Hammer's April 13, 1996

302.

_____ Undisputed    __✓ Disputed    _____ Undisputed But Objected To

1631. Mr. Gurrero's statement was not provided to the defense prior to trial

or during the appellate proceedings.

___✓ Undisputed    _____ Disputed    _____ Undisputed But Objected To

1632. During the pre-trial investigation Agent Maluco interviewed an

inmate by the name of Gaylon Don Ball.

___✓ Undisputed    _____ Disputed    _____ Undisputed But Objected To

1633. Anticipating a defense of accidental death due to sexual asphyxiation,

Agent Maluco specifically questioned Ball about Mr. Hammer's sexual practices.

_____ Undisputed    __✓ Disputed    _____ Undisputed But Objected To

1634. Mr. Ball told agent Maluco that Hammer was having sexual relations

with Marti.

_____ Undisputed    __✓ Disputed    _____ Undisputed But Objected To

1635.    Prior to trial, Agent Maluco prepared a 302 report documenting

this information and provided a copy of this 302 report to Assistant United States

Attorney Fred Martin.

_____✓Undisputed    _____Disputed    _____Undisputed But Objected To

1636. AUSA Martin never provided a copy of this report to the defense.

_____✓Undisputed    _____Disputed    _____Undisputed But Objected To

1637. By letter dated December 16, 1996 the Government provided trial

counsel with various discovery items.

_____✓Undisputed    _____Disputed    _____Undisputed But Objected To

1638. These items included an Oklahoma Department of Corrections letter

dated November 2, 1993 with an attachment dated October 1,1993 that had been

sent to the Federal Bureau of Prisons in support of Mr. Hammer's transfer to the

BOP from the Oklahoma Department of Corrections.

_____✓Undisputed    _____Disputed    _____Undisputed But Objected To

1639. Agent Maluco read portions of the November 2, 1993 letter and the

October 1, 1993 attachment and this Court finds that while incarcerated in

Oklahoma: Mr. Hammer claimed responsibility for the murder of an Enid man

Carl I. Singer in June of 1985 and Mr. Hammer claimed responsibility for murder

of a Maryville, Tennessee man, Kenneth Kenner, in November of 1986.

_____✓Undisputed    _____Disputed    _____Undisputed But Objected To

1640. Agent Maluco investigated Mr. Hammer's involvement in the

330

Kenneth Kenner murder for use as an aggravating factor in the Marti murder trial.

___✓___Undisputed    _____Disputed    _____Undisputed But Objected To

1641. Agent Maluco determined that Mr. Hammer had falsely implicated himself in this murder.

___✓___Undisputed    _____Disputed    _____Undisputed But Objected To

1642. The government advised trial counsel by letter dated September 17, 1997 of this determination.

___✓___Undisputed    _____Disputed    _____Undisputed But Objected To

1643. Mr. Hammer falsely confessed to the murder of Kenneth Kenner.

___✓___Undisputed    _____Disputed    _____Undisputed But Objected To

1644. Agent Maluco further read from the November 2, 1993 letter and the October 1, 1993 attachment and this Court finds that: Mr. Hammer stated at one time he had knowledge concerning the murder of Karen Silkwood and that he was involved.

___✓___Undisputed    _____Disputed    _____Undisputed But Objected To

1645. No evidence was ever found to support this claim concerning Silkwood.

___✓___Undisputed    _____Disputed    _____Undisputed But Objected To

1646. The Court finds that Hammer falsely confessed to being involved in

331

the Silkwood murder.

___✓___Undisputed   _____Disputed   _____Undisputed But Objected To

1647. In 1993 Mr. Hammer alleged he had hired someone to murder a Youngstown, Ohio man, and to prove his involvement had instructed the killer to place a quarter in the victim's mouth.

___✓___Undisputed   _____Disputed   _____Undisputed But Objected To

1648. Mr. Hammer referred to this as the "two bit killing".

___✓___Undisputed   _____Disputed   _____Undisputed But Objected To

1649. No evidence was ever found to support this claim.

✓  *Undisputed*

1650. The Court finds Mr. Hammer's confession to this murder to be false.

___✓___Undisputed   _____Disputed   _____Undisputed But Objected To

1651. Agent Maluco investigated Mr. Hammer's claim of being responsible for the death of Karen Silkwood for use as an aggravating factor in the Marti murder trial.

_____Undisputed   ___✓___Disputed   _____Undisputed But Objected To

1652. Agent Maluco determined, and this Court finds, that these claims were false.

_____Undisputed   ___✓___Disputed   _____Undisputed But Objected To

1653. Agent Maluco read from an Oklahoma Police Department Report

dated August 20, 1986 which summarized a telephone call with Mr. Hammer during which he confessed to the murder of Donna Laughton: "the victim's name was Donna Laughton and she was carried as Jane Doe for three months. . . . Hammer used two names of that victim. Terry was one name and LaDonna was the other. . . . Hammer couldn't have killed Donna Laughton because she was still alive two days after Hammer was put into jail. That was confirmed during the original investigation. Therefore, approximately two years ago when Hammer confessed, he was confronted with the important fact that he couldn't have killed Donna Laughton because of the times. Hammer finally admitted that he didn't want to spend 1240 years in jail and wanted to die. This is the reason he confessed."

__✓__Undisputed    _____Disputed    _____Undisputed But Objected To

1654. The Court finds that Mr. Hammer falsely confessed to the murder of Donna Laugton in August, 1986.

__✓__Undisputed    __·__Disputed    _____Undisputed But Objected To

1655. Prior to 1996, Mr. Hammer claimed to have knowledge as to the identity of the Una-bomber.

__✓__Undisputed    _____Disputed    _____Undisputed But Objected To

1656. These claims were investigated by the FBI and determined to be false.

333

_✓_Undisputed        _____Disputed        _____Undisputed But Objected To

1657. The Court finds Hammer's statements regarding the Una-bomber to be false.

_✓_Undisputed        _____Disputed        _____Undisputed But Objected To

1658. In November 9, 1989 Mr. Hammer claimed to have planted bombs in the Oklahoma State Capital Building and the Oklahoma County Courthouse.

_✓_Undisputed        _____Disputed        _____Undisputed But Objected To

1659. The FBI investigated those claims and determined they were false – no bombs were ever discovered.

_✓_Undisputed        _____Disputed        _____Undisputed But Objected To

1660. The Court finds Hammer's claims to have planted bombs to be false.

_✓_Undisputed        _____Disputed        _____Undisputed But Objected To

1661. Mr. Hammer's trial attorneys were provided prior to trial with the FBI reports documenting false claims.

_✓_Undisputed        _____Disputed        _____Undisputed But Objected To

1662. The FBI report provided to trial counsel concerning the false bomb threats also included Oklahoma State Penitentiary Warden James Saffle's characterization of Mr. Hammer as a "chronic liar."

_____Undisputed        _✓_Disputed        _____Undisputed But Objected To

334

## XXXXV   Jack P. Luhrman

1663. On April 13, 1996 Mr. Luhrman was on duty as a the compound officer at USP-Allenwood.

___✓__Undisputed    _____Disputed    _____Undisputed But Objected To

1664. As compound officer, Mr. Luhrman had the only set of keys to cell 103.

_____Undisputed    __✓__Disputed    _____Undisputed But Objected To

1665. Mr. Luhrman unlocked the door of cell 103, helped secure Hammer and helped cut the restraints off of Marti's arms and legs.

_____Undisputed    __✓__Disputed    _____Undisputed But Objected To

1666. At that time, Officer Luhrman had very little training in crime scene preservation.

_____Undisputed    __✓__Disputed    _____Undisputed But Objected To

1667. At that time, Officer Luhrman's instructions were to wait for the lieutenant for instructions on the crime scene.

___✓__Undisputed    _____Disputed    _____Undisputed But Objected To

1668. Officer Luhrman had seen braided ropes in other inmates' cells before the evening of April 13, 1996.

_____Undisputed    __✓__Disputed    _____Undisputed But Objected To

335

1669. Officer Luhrman left nothing in cell 103 after responding to the scene.

✓ Undisputed _____ Disputed _____ Undisputed But Objected To

1670. Officer Luhrman saw no one else leave any items in cell 103.

✓ Undisputed _____ Disputed _____ Undisputed But Objected To

1671. Mr. Luhrman testified and this Court finds that it is common knowledge that homosexual activity takes place in the penitentiary.

✓ Undisputed _____ Disputed _____ Undisputed But Objected To

1672. Mr. Luhrman testified and this Court finds that it is common for inmates to attempt to prevent guards and other prison personnel from witnessing these homosexual acts.

_____ Undisputed ✓ Disputed _____ Undisputed But Objected To

1673. Mr. Luhrman did not see any signs of struggle inside cell 103.

✓ Undisputed _____ Disputed _____ Undisputed But Objected To

Respectfully Submitted,


s/ Michael Wiseman
MICHAEL WISEMAN, ESQUIRE
Supervising Assistant Federal Defender
Attorney ID#PA 75342
Defender Association of Philadelphia

336

Federal Court Division-Capital Habeas Unit
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
Tel. No. (215)928-0520
(Michael_Wiseman@fd.org)

s/ Anne L. Saunders
ANNE L. SAUNDERS, ESQUIRE
Asst. Federal Public Defender
Attorney ID #PA 48458
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. (717) 782-3843
(Anne_Saunders@fd.org)

Dated:        October 5, 2005
              Philadelphia, PA

337

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      : Crim. No. 4:CR-96-263
                                          : Civil No. 4:CV-02-510
               v.                         :
                                          : (Muir, J.)
DAVID PAUL HAMMER                   : **ELECTRONICALLY FILED**

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing

**PETITIONER'S PROPOSED FINDINGS OF FACT**
**PART IV AS ANNOTATED BY FREDERICK E. MARTIN, ESQUIRE**

to be electronically mailed and postage paid in the United States mail on October __6__, 2005 to:

ADDRESSEE:
         Anne L. Saunders, Esquire
         Anne_Saunders@fd.org

         Michael Wiseman, Esquire
         Michael_Wiseman@fd.org

                                       _____s/Frederick E. Martin_____
                                       FREDERICK E. MARTIN
                                       Assistant United States Attorney