**APPENDIX**
**EXCERPT FROM GOVERNMENT'S MERITS BRIEF IN**
**UNITED STATES V. DAVID PAUL HAMMER, NO. 98-9011 (3D CIR.)**

III.    IF PRESERVED, THE JURY'S FAILURE TO FIND
SUPPOSEDLY UNDISPUTED MITIGATING FACTORS
DOES NOT WARRANT VACATING THE DEATH
SENTENCE.

Relying on Lockett v. Ohio, 438 U.S. 586 (1978), and Eddings v.

Oklahoma, 455 U.S. 104 (1982), Hammer asserts that the Eighth Amendment

required the jury to unanimously find, consider, and give mitigating effect to the

following factors that he characterizes as "uncontradicted" or "conceded" by the

Government: (a) Hammer's "present" suffering from a "major mental disease or

defect" (proffered factor No. 4), (b) Hammer's suffering from "cognitive

deficits" (proffered factor No. 5), (c) Hammer's having been sexually abused as

a child (proffered factor No. 7), (d)  Hammer's having done "good things"

despite his adulthood behind bars (proffered factor No. 11), (e) Hammer's

remorse (proffered factor No. 13), and (f) Hammer's acceptance of responsibility

(proffered factor No. 14).  Appellant's Brief at 57-62.  Although Hammer thus

relies on Eighth Amendment authority, he in effect raises a due process claim

that the jury's failure to find these mitigating factors was against the weight of the

evidence.  As explained infra, Hammer's claim does not state a cognizable basis for relief and is otherwise without merit.

A.    Standard of review

To the extent that, as explained infra, Hammer's claim was not preserved below, his claim is reviewed only for plain error.  See Argument I.A, supra.  To the extent even cognizable in a capital prosecution under the FDPA, a jury's unanimous rejection of proffered mitigating factors does not provide a basis for disturbing the death sentence unless it can be determined, under the Jackson v. Virginia, 443 U.S. 307 (1979), standard, that no reasonable jury could have failed to find it established by a preponderance of the evidence.  United States v. McCullah, 76 F.3d 1087, 1112 (10th Cir. 1996), reh'g denied, 87 F.3d 1136 (10th Cir. 1996), cert. denied, 520 U.S. 1213 (1997); United States v. Hall, 152 F.3d 381, 413 (5th Cir. 1998), reh'g denied, 161 F.3d 10 (5th Cir. 1998), cert. denied, 119 S. Ct. 1767 (1999).

B.    Hammer's claim is not preserved and thus is reviewable only for plain

error

Hammer asserts, without citing authority, that he need not have preserved his claim because it "is reflective of specific findings made by the jury at the

conclusion of their deliberations."  Appellant's Brief at 2.  However, given

Hammer's position that the jury was obligated as a matter of law to accord

mitigating weight to the identified factors, Appellant's Brief at 60, 62, Hammer

should have requested, to preserve his claim, a jury instruction directing the jury

to find and give mitigating weight to those factors.  Further, Hammer filed a

motion for a new sentencing after the jury's verdict, see Hammer, 25 F. Supp.

2d at 534-35, and prior to the district court's imposition of sentence giving legal

effect to the jury's death sentence verdict, 18 U.S.C. § 3594; JA 8314-16.

Although he could have advanced his present claim as a ground not to impose

sentence pursuant to the jury's "recommendation," § 3594, he did not do so.

Accordingly, Hammer's present claim is reviewable only pursuant to the plain

error doctrine, see Argument I.A, supra.

C.    Hammer's claims do not state a cognizable basis for relief

Hammer's claims do not rise to the level of plain error; indeed, for several

reasons, they do not state cognizable grounds for relief.

1.    Hammer's claim fails because the jury was not precluded from
giving effect to mitigating evidence

First, contrary to Hammer's assertion, Lockett and Eddings impose no

requirement on a capital sentencing jury to give mitigating effect or weight to any

particular evidence.  Rather, Lockett and Eddings merely stand for the principle that the "Eighth Amendment requires that the jury be able to consider and give effect to all relevant mitigating evidence offered by [the defendant]."  Boyde v. California, 493 U.S. at 377-78 (emphasis added); see Weeks v. Angelone, 120 S. Ct. at 732.  Accordingly, the Eighth Amendment is only violated if there exists a reasonable likelihood that the jurors believed themselves precluded from considering relevant mitigating evidence proffered by a capital defendant. Weeks, 120 S. Ct. at 732; Boyde, 494 U.S. at 386.  This same standard applies to Hammer's statutory claim, see Appellant's Brief at 57, under Section 3595(c). Jones, 527 U.S. at 388, 390 & n.9.  Here, of course, Hammer does not suggest that the court's instructions in any way prevented the jury from giving effect to the evidence offered by the defense.

The text of the FDPA further undercuts any claim that a failure to find proffered mitigating factors presents a cognizable issue.  See Hall, 152 F.3d at 412.  The FDPA does not require the jury to return "special findings" regarding which mitigating factors the jury found to exist or the number of jurors who found a particular mitigating factor.  Rather, Section 3593(d) provides:

> Return of special findings.--The jury, or if there is no jury, the
> court, shall consider all the information received during the hearing.

> It shall return special findings identifying any aggravating factor or factors set forth in section 3592 found to exist and any other aggravating factor for which notice has been provided under subsection (a) found to exist.  A finding with respect to a mitigating factor *may be made* by 1 or more members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such factor established for purposes of this section regardless of the number of jurors who concur that the factor has been established.

§ 3593(d) (emphasis added).  Moreover, in contrast to the scope of appellate review of death sentences imposed under the Anti-Drug Abuse Act of 1988, which by statute includes consideration of whether the evidence supports the jury's failure to find particular mitigating factors, 21 U.S.C. § 848(q)(3), the FDPA conspicuously omits such a requirement from its appellate review provisions, 18 U.S.C. § 3595(c)(2).

> 2.    <u>Hammer's claim fails because a jury is not required to give effect to proffered non-statutory mitigating factors</u>

Second, even assuming that a jury's failure to find undisputed <u>statutory</u> mitigating factors presents a cognizable basis for relief, Hammer's claim still is not cognizable insofar as all of the factors he identifies as ostensibly "undisputed" were <u>non-statutory</u>.  As explained <u>infra</u>, the mere fact that defense counsel has identified a series of circumstances that <u>defense</u> <u>counsel</u> (not Congress) deems mitigating, and the Government does not dispute that the proffered propositions

Government Exhibit 1<br>Page __5__ of __14__

are factually supported, hardly dictates to the jury that it must, as Hammer

presently argues, Appellant's Brief at 60, 62, give any mitigating weight to those

factors in the final weighing process.

Courts have recognized that there is a two-step inquiry in determining

whether a proffered non-statutory mitigating factor exists in the case: (a) whether

the proponent has satisfied his burden of establishing the factor as a factual

matter; and (b) whether the proffered factor is indeed mitigating.  The text of the

FDPA, preliminarily, implicitly recognizes this two-step process, insofar as it

defines non-statutory mitigating factors (quite apart from the final weighing

process) as "factors in the defendant's background, record, or character or any

other circumstance of the offense that mitigate against imposition of the death

sentence," 18 U.S.C. § 3592(a)(8).   Further, a number of state appellate

decisions have expressly recognized this two-step process under various state

death penalty "weighing" statutes.  See, e.g., McKoy v. North Carolina, 494

U.S. 433, 441 n.7 (1990) (noting that according to North Carolina state appellate

decisions, a capital sentencing jury must apply this two-step process in finding

non-statutory mitigating factors); Booth v. State, 327 Md. 142, 169-70, 608 A.2d

162, 175 (reciting the settled Maryland rule that the two-step process applies to

non-statutory mitigating factors), <u>cert. denied</u>, 506 U.S. 988 (1992); <u>see</u> <u>State v.</u>

<u>Hutchinson</u>, 898 S.W.2d 161, 173-74 (Tenn.) (holding, based in part on non-

Tennessee decisions that applied the two-step process, that a defendant is not

entitled to an instruction identifying proposed non-statutory factors as mitigating),

<u>cert. denied</u>, 516 U.S. 846 (1995).

Construing the FDPA consistently with its literal terms to require the jury

to determine whether a proffered factor is indeed mitigating would not violate the

Eighth Amendment and statutory requirement that juries not be <u>prevented</u> from

considering and giving effect to constitutionally relevant mitigating evidence.

<u>Jones</u>, 527 U.S. at 381, 390 & n.9.  Although the Supreme Court has stated that

the sentencer in a capital case may not "refuse to consider, <u>as a matter of law</u>,

any relevant mitigating evidence," <u>Eddings v. Oklahoma</u>, 455 U.S. 104, 113-14

(1982), this does not mean that a sentencer may not decide for itself whether

proffered evidence is indeed mitigating as a prerequisite to weighing the evidence

as a mitigating factor.

Indeed, in <u>Buchanan v. Angelone</u>, 522 U.S. 269 (1998), the Court

indicated that a jury may be granted broad discretion to determine whether a

proffered fact is mitigating, as follows:

Government Exhibit 1

Page  7  of  14

In the selection phase, our cases have established that the sentencer may not be precluded from considering, and may not refuse to consider, any constitutionally relevant mitigating evidence. Penry v. Lynaugh, 492 U.S. 302, 317-318, 109 S. Ct. 2934, 2946-2947, 106 L. Ed. 2d 256 (1989); Eddings v. Oklahoma, 455 U.S. 104, 113-114, 102 S. Ct. 869, 876-877, 71 L. Ed. 2d 1 (1982); Lockett v. Ohio, 438 U.S. 586, 604, 98 S. Ct. 2954, 2964-2965, 57 L. Ed. 2d 973 (1978). However, the State may shape and structure the jury's consideration of mitigation so long as it does not preclude the jury from giving effect to any relevant mitigating evidence. Johnson v. Texas, 509 U.S. 350, 362, 113 S. Ct. 2658, 2666, 125 L. Ed. 2d 290 (1993); Penry, supra, at 326, 109 S. Ct., at 2951; Franklin v. Lynaugh, 487 U.S. 164, 181, 108 S. Ct. 2320, 2331, 101 L. Ed. 2d 155 (1988). Our consistent concern has been that restrictions on the jury's sentencing determination not preclude the jury from being able to give effect to mitigating evidence. Thus, in Boyde v. California, 494 U.S. 370, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990), we held that the standard for determining whether jury instructions satisfy these principles was "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Id., at 380, 110 S. Ct., at 1198; see also Johnson, supra, at 367-368, 113 S. Ct., at 2669.

But we have never gone further and held that the state must affirmatively structure in a particular way the manner in which juries consider mitigating evidence. And indeed, our decisions suggest that complete jury discretion is constitutionally permissible. See Tuilaepa [v. California, 512 U.S. 967,] 978-979, 114 S. Ct. [2630,] 2638-2639 [(1994)] (noting that at the selection phase, the State is not confined to submitting specific propositional questions to the jury and may indeed allow the jury unbridled discretion); [Zant v.] Stephens, [462 U.S. 862,] 875, 103 S. Ct. [2733,] 2741-2742 [(1983)] (rejecting the argument that a scheme permitting the jury to exercise "unbridled discretion" in determining whether to impose the death penalty after it has found the defendant eligible is

unconstitutional, and noting that accepting that argument would require the Court to overrule Gregg [v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976)]).

Buchanan, 522 U.S. at 276-77; see Weeks, 120 S. Ct. at 732.

Thus, a sentencer's decision not to give weight to proffered non-statutory mitigating factors on the ground that the factors are not mitigating does not violate the rule of Lockett and Eddings. Johnson v. Wainwright, 778 F.2d 623, 629 (11th Cir. 1985), cert. denied, 484 U.S. 872 (1987); accord Graham v. Collins, 506 U.S. 461, 490 (1993) (Thomas, J., concurring) ("By requiring that sentencers be allowed to "consider" all "relevant" mitigating circumstances, we cannot mean that the decision whether to impose the death penalty must be based upon all of the defendant's evidence, or that such evidence must be considered the way the defendant wishes"). An instruction allowing the jury to determine whether a proffered factor is mitigating does not "prevent" the consideration of defense evidence, Boyde, 494 U.S. at 380, confers constitutionally permissible discretion on the jury, Buchanan, 522 U.S. at 276-77, and is consistent with the statutory requirement that the jury "consider" whether proffered evidence is indeed mitigating, § 3592(a).

The conclusion a jury is not constitutionally required to find proffered non-

statutory mitigating factors is bolstered by <u>Tuilaepa v. California</u>, 512 U.S. 967 (1994). There the defense challenged three selection phase factors to be considered by the jury at a California capital sentencing hearing (the circumstances of the offense, the defendant's prior criminal activity, and the age of the defendant) on the ground that the jury is not advised on how to consider the factors in determining sentence and indeed may rely on the factors not as mitigating factors but rather in support of a death sentence. <u>Id</u>. at 975-80. The Court rejected Tuilaepa's vagueness and other constitutional challenges to these factors. <u>Id</u>. Thus, death penalty sentencing instructions may constitutionally allow a jury to determine whether a particular selection phase factor is indeed mitigating. <u>See</u> <u>California v. Brown</u>, 479 U.S. 538, 543 (1987) (O'Connor, J., concurring) (noting that what makes a defendant's character or background mitigating is "that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional or mental problems, <u>may</u> be less culpable than defendants who have no such excuse" (emphasis added)).

D.    <u>Hammer is incorrect in any event that all of the identified factors were established as a matter of law</u>

The propriety of reaching Hammer's claim aside, the sufficiency of the evidence to support the jury's factual determinations regarding mitigating factors

should be assessed under the <u>Jackson v. Virginia</u> standard.  <u>See</u> <u>McCullah</u>, 76

F.3d at 1112; <u>Hall</u>, 152 F.3d at 413.  Accordingly, a juror's finding regarding

the absence of mitigating factors is viewed in the light most favorable to the

prosecution and must be accepted unless no reasonable juror could reach the

challenged conclusion.  <u>McCullah</u>, 76 F.3d at 1112; <u>Hall</u>, 152 F.3d at 413.  The

evidence before the jury in this case forecloses relief under this standard.

Regarding two of the factors Hammer characterizes as "conceded" by the

Government (Hammer's "remorse" and "acceptance of responsibility"), the

pertinent pages of the record reflect that in fact the Government seriously

questioned whether Hammer's expressions of these states of mind were sincere.

JA 8039-42.  As to another factor, the Government acknowledged that Hammer

had done some"good things" while in prison as suggested by the defense, but

questioned whether this was indeed mitigating given the possibility that

Hammer's motivations for the "good deeds" were not necessarily wholly

altruistic.  JA 8050-51.  Regarding the "sexual abuse" factor, the Government

did unconditionally concede that Hammer had been generally subject to physical

abuse as a child, JA 8211 (a factor unanimously found by the jury, JA 331), but

the prosecutor with regard to sexual abuse merely acknowledged (in the absence

of corroborating medical records) that Hammer "likely" was abused, JA 8211.

Neither the Government nor the jury was obligated to accept these factors as

proved.  McCullah, 76 F.3d at 1112 (jurors are not required to believe the

testimony of witnesses simply because the testimony is not directly contradicted),

citing Maggio v. Fulford, 462 U.S. 111, 117-18 (1983).

Hammer does not contend that the Government conceded the existence of

the proffered "major mental disease" and "cognitive deficits" factors, and the

jury was not obligated to credit these as proven even if the evidence had been

uncontradicted.  McCullah, 76 F.3d at 1112.  Preliminarily, as Hammer makes

clear on page 58 of his brief, Hammer proffered his "present" (i.e., at the time of

sentencing) illness as mitigating.  JA 331.  The jury could well have determined

that Hammer's state of mind in court was irrelevant as mitigation because it did

not relate to the defendant's conduct in the offense.  Hammer emphasizes Dr.

Mitchell's testimony as unequivocally supporting the "major mental disease"

factor, but Dr. Mitchell specifically qualified his testimony about Hammer's

possible depressive disorder by noting that depressive disorders in general, and

especially in Hammer's case, are subject to periodic waxing and waning.  JA

6709-10, 6813.  Dr. Wolfson testified at trial, moreover, that his diagnosis of

Hammer as of the day of the murder was one of antisocial personality disorder. JA 5618.  Dr. Karten, who as a USP Allenwood psychologist observed Hammer from time to time prior to the murder, likewise detected no mental disease or defect.  JA 6015-16.  In summary, the evidence was not such that no rational juror could have failed to find the existence of the non-statutory mitigating factor that Hammer emphasizes.

Regarding Dr. Gelbort's testimony on the "cognitive deficits" factor, the Government on cross-examination of Dr. Gelbort raised serious questions about the credibility of his testimony concerning the cognitive disorder issue, given Dr. Gelbort's track record as an apparently pro-defendant neuropsychologist.  Dr. Gelbort had testified as an expert in approximately "two or three dozen" death penalty cases, JA 6645, which included each of the four occasions in which he had been qualified in federal court, JA 6579.  Several of the cases involved extensive travel from his place of residence.  JA 6615-16.  In none of those cases was he called by the prosecution.  JA 6644.  Hammer's sophisticated correspondence and written pleadings, e.g., JA 372-77, also raise doubts about the extent of any cognitive deficits, and the jury itself had an ample opportunity to form conclusions about Hammer's cognitive abilities based on its first-hand

observations during the lengthy trial and sentencing. For all of these reasons, the jury was not at all obliged to find that this factor applied.