IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Crim. No. 4:CR-96-239 |
| | : Civil No. 4:CV-02-510 |
| v. | : |
| | : (Muir, J.) |
| DAVID PAUL HAMMER | : **ELECTRONICALLY FILED** |

**UNITED STATES' BRIEF IN SUPPORT OF MOTION
TO ALTER OR AMEND JUDGMENT**

**Procedural History.**

In an order dated December 27, 2005, this Court denied Hammer's Section 2255 motion as amended insofar as it attacked his plea of guilty to the first degree murder of the victim, Andrew Marti, but vacated Hammer's death sentence for the Marti murder on the grounds that the government violated its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and that the jury's findings at the sentencing hearing were "defective" insofar as the jury failed to find ostensibly undisputed mitigating factors. *United States v. Hammer*, __ F. Supp. 2d __, 2005 WL 3536206, at *125 (M.D. Pa. Dec. 27, 2005). As explained below, this Court is respectfully urged to alter and amend that portion of its decision vacating Hammer's death sentence. It is believed that the Court's decision is fatally flawed in that a critical factual finding is contrary to uncontroverted evidence admitted at the post-conviction hearing, and both of the Court's grounds for vacating the death sentence depend on extensions of

existing law that are barred by the *Teague v. Lane*, 489 U.S. 288 (1989), non-retroactivity doctrine.

**Statement of Facts.**

    1.   Guilt/Innocence Trial and Guilty Plea

The Government's rebuttal presentation at the conclusion of the guilt/innocence trial was interrupted by Hammer's changing his plea of not guilty to a plea of guilty to Count 1, first-degree murder.  JA 5778-94.[1]  After Hammer indicated an intention to plead guilty, the Court held an evidentiary hearing on Hammer's competence to plead guilty.  JA 5784-872.  The Court also conducted a colloquy with Hammer to confirm that the plea was knowingly, voluntarily, and intelligently made.  JA 5778-884. During the colloquy, Hammer acknowledged that he had discussed the elements of first-degree murder with counsel "extensively" and that he understood them.  JA 5875-76.  Hammer acknowledged that by pleading guilty he was relieving the Government of the burden of proving premeditation and other elements of murder beyond a reasonable doubt.  JA 5878-83.

The Government proffered, as a supplement to the evidence the Court had already received at the trial, JA 5884, the following factual basis for the plea:

> [Assistant U.S. Attorney Frederick E. Martin]: . . . .  The facts in the indictment

---

[1]  References to "JA" identify the Joint Appendix from Hammer's aborted direct appeal to the Third Circuit.

that are relevant indicate that the Allenwood Penitentiary is on exclusive federal property as of April 13, 1996.  And that Mr. Hammer at that location willfully with malice aforethought and with premeditation strangled Andrew Marti with a cord or a homemade garrotte.

\*          \*          \*

With respect again to the evidence, Mr. Hammer solicited Mr. Marti as a cellmate. Once Mr. Marti was his cellmate he persuaded him to engage in a hostage scenario, whereby Mr. Marti would allow himself to be tied to the bed in an effort to have Mr. Marti transferred more quickly to another federal institution.

Mr. Hammer persuaded, or succeeded in persuading Mr. Marti to do this.  Also prepared items, including cloth restraints, to facilitate the ruse, and when Mr. Marti was tied, all of his limbs were tied to various aspects of the cell, he indicated--he basically put a sock in Mr. Marti's mouth, then put him in a sleeper hold and rendered him unconscious.

After doing so he took a cloth, a strip of cloth, and used that to finally strangle Mr. Marti to death.  Mr. Hammer said to several inmates that that what--that is what he intended to do.  And they have testified to that effect in this proceeding.

He also wrote letters after the fact, after the killing of Mr. Marti, basically saying that I did what I told you I was going to do, and that was to strangle Mr. Marti, and all of these--the preplanning and the statements to the inmates, as well as Mr. Hammer's written statements following the murder support the prosecution--prosecution's conclusion that this murder occurred in cold blood with premeditation.

JA 5885-86.  Hammer responded that he agreed with the proffer "in substance," JA 5886, and he acknowledged, "I did in fact with these hands kill Andrew Marti," JA 5887.  Hammer added that he disagreed with one aspect of the proffer:

> Defendant Hammer: Well, the fact that I solicited [Marti] to move into my cell.  It was a--it was a mutual decision for him to move in there with me, and the ruse for the hostage scenario, that was not accurate. That's something I told the FBI I did, along with Marti, braid the sheets, braid the restraints, but we used them for other purposes.
>
> The bottom line is I tied him up, I tied him to the bed and I killed him.  And I'm responsible for that.

JA 5887.  Hammer reiterated that he was guilty of first-degree murder as charged.  JA 5888, 5893.  The Court found Hammer competent to plead guilty and accepted the plea.  JA 5891-94.

2.   The Capital Sentencing Hearing

At the capital sentencing hearing the Government's proof included evidence of, among other proffered aggravating factors, the statutory aggravating factor that Hammer had previously been convicted of two or more State or Federal offenses punishable by a term of imprisonment for more than one year, involving the use or threatened use of a firearm, 18 U.S.C. § 3592(c)(2); JA 68-69, 322, and the non-statutory aggravating factor of future dangerousness, JA 72-73, 326.  FBI Special Agent Anthony Malocu testified that in 1978, Hammer pleaded guilty in an Oklahoma

state court to pointing a weapon at another after having previously been convicted of a felony. JA 6397-98. From 1978 through the present, Hammer lived almost all of his adult life behind bars, his incarceration being interrupted mainly by multiple escapes and attempted escapes. JA 6397-404. Hammer committed additional offenses during his escapes. See JA 5969-75, 6397-404.

During a 1983 period of escape, Hammer kidnaped, shot, and attempted to murder Thomas Upton. JA 6402, 5968-75, 5979. The Government introduced the Oklahoma state conviction of robbery with a firearm and shooting with intent to kill that Hammer received in 1984 for this incident. JA 6149-50, 6158, 6186-89. The Government also introduced underlying facts of the incident through Mr. Upton himself, JA 5968-75, 5979, David Walter (a reporter), JA 5980-88, and William Louis Earl Keel (an Oklahoma state prosecutor), JA 6149-50, 6158, 6186-89. Mr. Walter recounted that Hammer told him in an interview that, had he known that Upton would survive the six head wounds Hammer inflicted, Hammer would "have reloaded the gun and shot him six more times." JA 5985.

A BOP staff psychologist, Stephen Karten, Ph. D., testified that he interviewed Hammer shortly after the murder of Marti and did not note "anything unusual with his mental status at all." JA 6006. Hammer did not indicate having any episodes of

headaches or blackouts and did not refer to himself in the plural or evidence having any alter ego personalities.  JA 6009.  FBI special agents involved in prior incidents, in which Hammer had threatened a federal judge and made false bomb threats at a courthouse, testified that Hammer did not refer to alter personalities or to himself in the plural when interviewed in connection with those incidents.  JA 6292-311.

Marti's brother (Michael Marti) and father (Robert Marti) testified in connection with the victim impact aggravating factor.  JA 6206-55.  The Government also introduced Hammer's guilty plea in this case.  JA 6441-47.  The Government concluded its case in chief by adopting its evidence at the guilt/innocence phase.  JA 6487.

Hammer's case at sentencing mainly involved presentation of psychiatric, social, and family history testimony.  The Government's rebuttal evidence included testimony indicating that, even under the highest security arrangements, inmates such as Hammer can present a threat to guards and other inmates.  See JA 7497, 7616-30.

At the conclusion of the capital sentencing hearing, the jury recommended a sentence of death.  JA 336.  As the 18 U.S.C. § 3591(a)(2) threshold intent factor, the jury found that Hammer intentionally killed Marti.  JA 318.  The jury unanimously found both of the two statutory aggravating factors submitted for

deliberation (previous convictions of two or more offenses involving the use or attempted use of a firearm and substantial planning and premeditation), JA 322-25, and both of the non-statutory aggravating factors submitted (future dangerousness to the lives and safety of others and harm to the victim's family as a result of the offense), JA 326-29.

The jury also made findings of proffered mitigating factors, as follows. All of the factors refer to the defendant's condition, and except as noted by citation, all of the factors are of the "non-statutory" (i.e., 18 U.S.C. § 3592(a)(8)) variety:

| Mitigating factor | Jurors finding the factor |
|---|---|
| Impaired capacity (§ 3592(a)(1)) | 0 |
| Duress (§ 3592(a)(2)) | 0 |
| Disturbance (§ 3592(a)(6)) | 1 |
| Presently-existing major mental disease or defect | 0 |
| Cognitive deficits | 1 |
| Violent and abusive childhood | 12 |
| Victim of child sexual abuse | 6 |
| Attempted to seek treatment while young | 12 |
| Would be sentenced to life without release if not death | 12 |
| Prison staff can prevent Hammer's future violence | 3 |
| Has done some good things | 5 |
| Family and friends will suffer from Hammer's death | 12 |

Remorse                                                          1

Acceptance of responsibility                                     1

Any other factor (§ 3592(a)(8))                                  0

JA 330-33.

   3.   The 2005 Post-Conviction Hearing

   On July 14, 2005, the Court convened the hearing on Hammer's

Third Amended Section 2255 Motion.  Hammer subsequently sought

and received leave to file a Fourth Amended Section 2255 Motion,

alleging violations of *Brady v. Maryland*, as discussed *infra*.

   In his Fourth Amended Section 2255 motion, Hammer sought to

vacate both his guilty plea and his death sentence based on the

Government's failure to disclose the following documents prior to

the guilty plea and sentencing hearing:

   1.   FBI 302 reports detailing two interviews of Albert
        Ray Johnson, in which Johnson told investigators
        that while he was incarcerated with Hammer at
        Oklahoma State Penitentiary (OSP) and USP
        Allenwood, Hammer engaged in homosexual sex with
        various cellmates, during which Hammer and the
        cellmates would "tie each other up or whip each
        other with rope or electrical cord."  *Hammer*, 2005
        WL 3536206, at *106-07.  Johnson was aware of
        Hammer's sex and bondage activities at OSP because
        Hammer and his cellmates engaged in sex play at
        the door of their cell, facing Johnson's cell
        door.  *Id*.  Johnson was aware of Hammer's sex and
        bondage at USP Allenwood because Hammer and his
        cellmate, "Tony," would yell over to Johnson's
        cell and make a lot of noise while engaging in
        all-night sex sessions.  *Id*.  Johnson provided
        Hammer with a hand-made rope for this purpose and
        also taught Hammer how to make his own ropes.  *Id*.

   2.   An FBI 302 report detailing an interview of Royce
        Lee Fowler, in which Fowler told investigators

that while he was incarcerated with Hammer at USP Leavenworth, Hammer told Fowler that Hammer's father had sexually abused Hammer, his brother, and his sister. *Hammer*, 2005 WL 3536206, at \*107-08. Hammer also told Fowler "about his liking bondage and wanting to be tied up during sex." *Id*.

3. An FBI 302 report detailing an interview of Gaylon Don Ball, in which Ball told investigators that he was incarcerated with Hammer at USP Allenwood, and that he believed Hammer was a homosexual and was having sex with Marti. *Id*. Ball did not provide any facts to substantiate his beliefs. *Id*.

*Slip. Op*. at 236-39 & 241. Further, the Court in its subsequent grant of post-conviction relief ruled that the Government should have disclosed the following additional FBI 302:

4. An FBI 302 report detailing an interview of Martin Guerrero, in which Guerrero told investigators that he knew Hammer from previously having been incarcerated with him but denied any knowledge of Marti or having received a letter from Hammer. Guerrero's denials were contrary to Hammer's assertion to investigators that Marti was at risk of retaliation by Guerrero and that, in order to gain Marti's trust and then kill him, Hammer wrote a letter to Guerrero to persuade Guerrero not to retaliate. *Hammer*, 2005 WL 3536206, at \*108.

*Slip. Op.* at 240.

On December 27, 2005, this Court denied Hammer's motion insofar as it attacked his plea of guilty to the first degree murder of Marti, but vacated Hammer's death sentence. The Court rejected Hammer's request to vacate his guilty plea based on the non-disclosure of the FBI 302s, noting that Hammer's plea to first degree murder was supported an adequate factual basis. *Hammer*, 2005 WL 3536206, at *Slip. Op.* at 269. In the Court's

view, the 302s merely cast doubt on the Government's factual assertion that Marti's co-celling with Hammer and the rope-like restraints were part of a murder plot rather than for mutual gratification. *Id*. Hammer raised these very points at the time of the plea but nevertheless voluntarily proceeded with the plea, so the recent disclosures provided no basis to set aside Hammer's conviction. *Id*.

With regard to the death sentence, however, the Court concluded that the 302s raised new doubts whether the jury would have found the statutory aggravating factor of substantial planning and premeditation, insofar as the 302s suggested that Hammer did not act with a preconceived plan to kill Marti when Hammer induced Marti to cell with him and later restrained Marti. *Hammer*, 2005 WL 3536206, at *122-24. Thus, the Court reasoned, the death sentence should be vacated under Brady. As an additional ground for vacating the death sentence, the Court concluded that the jury's findings at the sentencing hearing were "defective" insofar as the jury failed to find several supposedly undisputed mitigating factors. *Id*. at *125.

**Issue.**

Whether this Court, in its discretion, should alter or amend its order of December 27, 2005, and deny Hammer relief since the rationale for awarding relief is incorrect.

**Argument.**

<u>Introduction</u>

Requests for reconsideration, pursuant to Federal Rule of Civil Procedure 59(e), are presented to this Court's sound discretion.  See generally, *New Castle County v. Hartford Acc. & Indem. Co.*, 933 F.2d 1162, 1176 (3rd Cir. 1991).  Relief is appropriate to correct manifest errors of law or fact upon which a judgment is based.  See *e.g., Database America Inc. v. Bells ought Advertising & Pub. Corp*. 825 F. Supp. 1216, 1220 (D.N.J. 1993); *Williams v. Sullivan*, 818 F. Supp. 92, 93 (D.N.J. 1993).  It is submitted that the instant situation suggests that relief, pursuant to Federal Rule of Civil Procedure 59(e), is warranted.

**I.    THE COURT SHOULD VACATE ITS GRANT OF RELIEF ON HAMMER'S *BRADY* CLAIM, WHICH IS BARRED BY THE *TEAGUE V. LANE* NON-RETROACTIVITY DOCTRINE AND LACKS MERIT IN ANY EVENT.**

In the government's closing argument at the post-conviction hearing on November 10, 2005, undersigned counsel argued that the FBI 302s summarized above were not required to be disclosed because the information contained in them was fully known and available to Hammer himself, and that any ruling that the 302s were nevertheless required to be disclosed under Brady would amount to an extension of the law that would be barred under the *Teague* non-retroactivity doctrine.  11/10/05 Tr. 72.  Case law in effect at the time when Hammer's death sentence became final on

11

direct review makes clear that "[e]vidence is not considered to be suppressed if the defendant either knew or should have known of the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. Perdomo*, 929 F.2d 967, 973 (3rd Cir. 1991). And, more specifically, the Government has had no obligation to disclose to defense counsel documents setting forth facts that the defendant himself knew or had reason to know. *United States v. Diaz*, 922 F.2d 998, 1007 (2d Cir. 1990) (holding that the Government did not improperly fail to disclose a witness's account that Diaz was not present at a meeting to set up a drug transaction; "[i]f in fact . . . Diaz was not in [the witness's] apartment during the transaction, Diaz knew that fact"); *United States v. Zuazo*, 243 F.3d 428, 431 (8th Cir. 2001) ("Having spent two days together with [the witness whose statements were not disclosed], Salaiza Zuazo was well aware of [the witness] and his potential testimony"); *Fullwood v. Lee*, 290 F.3d 663, 686 (4th Cir. 2002) ("the state did not suppress the information that came out during Fullwood's conversation with Detective Robertson because Fullwood, better than anyone, knew about his cocaine use on the night prior to the stabbing and knew that he recounted that fact to Detective Robertson"); *West v. Johnson*, 92 F.3d 1385, 1399 (5th Cir. 1996) ("Certainly West knew whether or not had taken the necklace [as he had confessed], and necessarily knew that better than the

12

prosecution could have"); *see United States v. Pellulo*, 399 F.3d

197, 216 (3rd Cir. 2005).

Without addressing the *Teague* defense, the Court rejected

the government's argument, as follows:

> In the present case the information the
> Government failed to disclose primarily
> relates to statements of third parties
> regarding what they knew and observed about
> Mr. Hammer.  The Government presented no
> evidence during the section 2255 hearing
> indicating that prior to trial in 1998 Mr.
> Hammer knew that Messrs. Johnson, Fowler,
> Ball and Guerrero were interviewed by the
> FBI.  Also, the Government presented no
> evidence that Mr. Hammer knew what those
> inmates' observations were regarding Mr.
> Hammer's behavior or what they had told the
> FBI regarding his statements or conduct.
> Furthermore, the Government presented no
> evidence that Mr. Hammer prior to trial
> understood the significance of his history of
> engaging in sexual bondage to the penalty
> phase proceedings, specifically as it related
> to the aggravating circumstance of
> substantial planning and premeditation.  The
> significance of such information could only
> be discerned by learned counsel, attorneys
> Ruhnke and Travis.  However, counsel were not
> provided with the documents.
>
> The Government in this case failed to
> disclose evidence from third parties
> regarding Mr. Hammer's history of engaging in
> sexual bondage, including evidence that in
> the past he had braided sheets into ropes to
> be used in consensual aberrant sexual
> activity.

*Hammer*, 2005 WL 3536206, *Slip. Op.* at 271-72.  Thus, the Court

rejected the Government's argument that Hammer knew or had reason

to know of the allegedly suppressed material on three grounds:

13

(a) there was "no evidence that Mr. Hammer knew what those inmates' observations were regarding Mr. Hammer's behavior or what they had told the FBI"; (b) there was "no evidence . . . that prior to trial in 1998 Mr. Hammer knew that Messrs. Johnson, Fowler, Ball and Guerrero were interviewed by the FBI," and (c) in any event, Hammer's knowledge of the critical facts is irrelevant because the information was not brought specifically to the attention of defense counsel.

The Court's first two points clearly lack merit. The disclosure requirement of *Brady* focuses specifically on usable, admissible and exculpatory evidence, *Wood v. Batholomew*, 516 U.S. 1, 5 (1995) (*per curiam*); *United States v. Perez*, 280 F.3d 318, 349 (2002), and "[e]vidence is not considered to be suppressed if the defendant either knew or should have known of the *essential facts permitting him to take advantage of any exculpatory evidence*." *Perdomo*, 929 F.2d at 973 (emphasis added). Contrary to the Court's suggestion, Hammer clearly knew about all of the basic facts reported by the various inmates, because, as summarized above, the inmates reported conversations and acts that Hammer knew the witnesses heard or observed. Hammer knew what limited information Johnson possessed because Hammer and, his cellmate, Tony Jones, whom defense counsel admitted having interviewed, called out to Johnson while they engaged in sex, and Johnson also directly gave Hammer a rope to use. *See* discussion

14

of Johnson's statement, *supra*.  These basic facts were fully available to Hammer and undoubtedly known by him, and the mere fact that the inmate subsequently reported the facts to investigators did not, in and of itself, provide additional, admissible exculpatory information.[2]  Ball's mere unsubstantiated suspicion that Hammer and Marti may have engaged in sex likewise did not itself provide additional, admissible exculpatory information that would "undermine confidence" in the jury's finding of substantial planning and premeditation and its imposition of a death sentence, in accordance with the standard of *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).  Indeed, witnesses Classen and Yager testified that Hammer told them he intended to have sex with Marti.

Even more troubling is the Court's categorical conclusion that Hammer's knowledge of these facts is irrelevant in assessing the *Brady* claim because defense counsel were not aware, and only defense counsel had the ability to appreciate the significance of the evidence.  *Hammer*, 2005 WL 3536206, at *123.  As a factual matter, Hammer fully appreciated all nuances of the issue of consensual bondage and sex, as made clear by his prescient objection to the Government's factual proffer in support of the

---

[2]  Hammer's prior knowledge additionally shows that he had full ability to raise his claim as part of his original Section 2255 motion.  Thus, his claim is also barred by the one-year Statute of Limitations under Section 2255.

plea.  Moreover, both defense counsel testified at the § 2255 hearing that they discussed the potential "rough sex" defense with their client.  Their notes of interviews with Hammer confirm this.

Further, as a legal matter, the Court was precluded from disregarding the settled rule that a *Brady* claim must be assessed in light what the defendant personally knew or had reason to know.  In *West*, 92 F.3d at 1399, the Fifth Circuit held that the *Teague* non-retroactivity doctrine precluded a grant of *Brady* relief under these circumstances.  Here, similarly, as previously discussed, existing law at time when Hammer's sentence became final on direct review made clear that his *Brady* claim must be assessed in light what he personally knew or had reason to know, and a Court certainly would not have "felt compelled by existing precedent" to conclude that only defense counsel's knowledge is relevant in assessing the *Brady* claim.  *O'Dell v. Netherland*, 521 U.S. 151, 156 (1997).

Thus, the Court's decision effectively applies a "new rule" that is barred in this collateral review proceeding.  The Court was not at liberty to ignore the Teague defense and address the merits of Hammer's proposed new rule.  *Caspari v. Bohlen*, 510 U.S. 383, 389 (1994) ("if the state does argue that the defendant seeks application of a new rule of constitutional law, the Court *must* apply *Teague* before considering the merits of the claim").

Neither of the *Teague* exceptions to non-retroactivity applies because the new rule is not one "forbidding criminal punishment of certain primary conduct [or] prohibiting a certain category of punishment for a class of defendants because of their status or offense," and is not a "watershed rule[] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *O'Dell*, 521 U.S. at 157.

Finally, even assuming that Hammer's *Brady* claim was not barred and cast doubt on the jury's finding of substantial planning and premeditation, this would not warrant setting aside the death sentence. The presence of an invalid aggravating factor does not affect a death sentence where the jury is able to "give weight to the same facts and circumstances under the rubric of some other, valid sentencing factor." *Brown v. Sanders*, __ U.S. __, 2006 WL 47402 (U.S. Jan. 11, 2006). Here, the jury was free to consider all aspects of the planned nature of the offense under other factors identified in the death penalty notice, particularly the future dangerousness factor.

### II.  THE COURT SHOULD VACATE ITS GRANT OF RELIEF ON HAMMER'S "FAILURE TO FIND UNDISPUTED MITIGATING FACTORS" CLAIM, WHICH IS BARRED BY THE TEAGUE V. LANE NON-RETROACTIVITY DOCTRINE AND LACKS MERIT IN ANY EVENT.

In the government's closing argument at the post-conviction hearing, undersigned counsel also argued that granting relief on

Hammer's "failure to find undisputed mitigating factors" claim would amount to an extension of the law that would be barred under the *Teague* non-retroactivity doctrine.  11/10/05 Tr. 64. Without discussing the *Teague* defense, the Court held that Hammer was entitled to a new sentencing hearing based on his claim despite his procedural default of the claim on direct review, because a failure to review his claim would amount to a "miscarriage of justice or manifest injustice."  *Hammer*, 2005 WL 3536206, at *125; *Slip. Op.* at 275.

As set forth in the Government's October 13, 2005 post-hearing brief, existing law at time when Hammer's sentence became final on direct review made clear that (a) Hammer's "failure to find mitigating factors" claim was without merit, and (b) a failure to review or grant relief on his claim by no means amounted to "miscarriage of justice" or other circumstance sufficient to excuse his default of this claim on direct review. A court certainly would not have "felt compelled by existing precedent" to conclude that relief was required, *O'Dell*, 521 U.S. at 156; indeed, this Court held that existing precedent does not clearly answer the question of what constitutes a "miscarriage of justice or manifest injustice" in the context of this case. Further, caselaw has not heretofore established that a jury is ever compelled to find a non-statutory aggravating factor, or that a jury's failure to find a mitigating factor presents a

reviewable, cognizable claim on appeal.  Neither of the *Teague*

exceptions to non-retroactivity, discussed above, remotely

applies to the multiple new rules applied by the Court with

regard to Hammer's mitigating factors claim.  Finally, for the

reasons previously argued, Hammer's claim is procedurally barred

and without merit in any event.

**Conclusion**.

        For the above-stated reasons, it is respectfully requested

that this Court review its Order of December 27, 2005, and amend

it by denying altogether Hammer's § 2255 petition.

                                        Respectfully submitted,

                                        THOMAS A. MARINO
                                        United States Attorney




                                        By_____s/Frederick E. Martin_____
                                        FREDERICK E. MARTIN
                                        Assistant United States Attorney
                                        PA 57455
                                        Herman T. Schneebeli Federal Bldg.
                                        240 West Fourth Street, Suite 316
                                        Williamsport, PA 17701-6465
                                        Tele: (570) 326-1935
                                        FAX: (570) 326-7916
                                        Electronic Mail:
                                        Fred.Martin@usdoj.gov

                                        GWYNN X. KINSEY, Jr., Esquire
                                        U.S. Department of Justice
                                        601 D Street, N.W., Room 6131
                                        Washington, DC 20530
                                        Telephone:  (202) 353-9721
                                        FAX:  (202) 353-9779
Dated:  January 12, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA      : Crim. No. 4:CR-96-239
                                  : Civil No. 4:CV-02-510
        v.                   :
                                  : (Muir, J.)
DAVID PAUL HAMMER           : **ELECTRONICALLY FILED**


### CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing

**UNITED STATES' BRIEF IN SUPPORT OF MOTION
TO ALTER OR AMEND JUDGMENT**

to be electronically mailed on January 12, 2006, to:

ADDRESSEE:

Anne L. Saunders, Esquire
Anne_Saunders@fd.org

Michael Wiseman, Esquire
Michael_Wiseman@fd.org


s/Frederick E. Martin
FREDERICK E. MARTIN
Assistant United States Attorney