PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 06-9000 and 06-9001

———————

UNITED STATES OF AMERICA,
                    Appellee/Cross-Appellant
          v.

DAVID PAUL HAMMER,
                    Appellant/Cross-Appellee

———————

Appeals from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 96-cr-00239)
District Judge:  Honorable Malcolm Muir

———————

Argued January 14, 2009

Before:  McKEE, RENDELL and NYGAARD,
          Circuit Judges.

(Filed: May 11, 2009)

———————

Anne L. Saunders, Esq.
Office of Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA  17101

Matthew Stiegler, Esq.     **[ARGUED]**
Defender Association of Philadelphia
Federal Court Division
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA  19106

Michael Wiseman, Esq.
Defender Association of Philadelphia
Federal Capital Habeas Corpus Unit
The Curtis Center, Suite 545 West
Independence Square West
Philadelphia, PA  19106
    *Counsel for Appellant/Cross-Appellee*

Gwynn X. Kinsey, Jr., Esq.     **[ARGUED]**
U.S. Department of Justice
Criminal Division, Capital Case Unit
1331 F. Street, N.W., Room 336
Washington, DC 20530

Frederick E. Martin, Esq.
Office of United States Attorney
240 West Third Street, Suite 316
Williamsport, PA 17701
    *Counsel for Appellee/Cross-Appellant*

---

OPINION OF THE COURT

---

RENDELL, Circuit Judge.

David Paul Hammer pled guilty to murder in 1998 and was sentenced to death. He appeals from the District Court's denial of relief under 28 U.S.C. § 2255 for his guilt-phase claims. The government appeals from the District Court's order that Hammer be resentenced. We will dismiss the appeals, as we lack jurisdiction because the orders of the District Court are not final.

## I. Factual Background[1]

In April of 1996, while a prisoner at USP Allenwood, Hammer killed his cellmate, Andrew Marti. After tying Marti to the bed frame and gagging him with a pair of socks, Hammer strangled Marti using a rope made of strips of braided sheets.

---

[1] The District Court opinion contains an exhaustive detailing of the facts of this case. *See United States v. Hammer*, 404 F. Supp. 2d 676 (M.D. Pa. 2005). We will not extensively revisit them here. We discuss the events of the trial, the penalty phase, and the post-conviction proceedings to provide context and background information, but note that, because we conclude that we have no jurisdiction based on lack of finality, they are not essential to our reasoning or conclusion.

He was charged with first degree murder, and the government declared its intention to seek the death penalty.

After a psychiatric evaluation, Hammer presented an insanity defense. A forensic psychiatrist testified that Hammer suffered from dissociative identity disorder (formerly known as multiple personality disorder) and that one of his alter personalities[2] killed Marti; therefore, the defense argued, Hammer himself was not legally responsible. A government expert testified that Hammer did not suffer from the disorder and was responsible for his actions. About three weeks into the trial, Hammer told the court that he wanted to plead guilty. After another psychiatric evaluation, Hammer was deemed competent and pled guilty on June 22, 1998. At the change of plea proceeding, the government gave a brief summary of the evidence, and the court asked Hammer if he concurred. Hammer disagreed with some of the summary's details, but acknowledged that he tied Marti to the bed and killed him, and that before the incident he told other inmates that he was going to kill Marti. Hammer's acknowledgment of responsibility for Marti's death led the court to find intent to kill and premeditation.

The penalty phase lasted three weeks. For a jury to recommend the death penalty, it must find that the government

---

[2] The defense's forensic psychiatrist testified that Hammer had four alter personalities:  1) Jocko, a violent male; 2) Tammy, a female; 3) Wilbur, a child; and 4) Jasper, a chimpanzee.  He contended that Jocko killed Marti.

has proven at least one statutory aggravating factor beyond a reasonable doubt.  18 U.S.C. § 3592(c).  The *Hammer* jury found the following statutory aggravating factors unanimously and beyond a reasonable doubt:  1) that Hammer intentionally killed Marti and that he did so after substantial planning and premeditation; and 2) that he had previously been convicted of several felony offenses involving the use of a firearm.  The jury also found the following non-statutory aggravating factors, unanimously and beyond a reasonable doubt:  1) that Hammer represented a continuing danger to the lives and safety of others because he was likely to commit criminal acts of violence; and 2) that he caused harm to Marti's family as a result of the murder.

The jury was then presented with 15 possible mitigating factors,[3] and required to determine whether or not Hammer had proven any of them by a preponderance of the evidence.  The jury found unanimously that Hammer had proved the following mitigating factors:  1) Hammer was the product of a violent, abusive, and chaotic childhood; 2) he attempted to seek help for mental difficulties while he was a child; 3) he would be sentenced to life in prison with no possibility of release if he were not sentenced to death; and 4) his friends and family would be adversely affected by his execution.  The jury  found unanimously that Hammer had *failed* to prove by a

---

[3] The mitigating factors covered Hammer's mental state at the time of the killing, his mental, emotional, and family history, his time in prison, and his level of remorse and acceptance of responsibility.

preponderance of the evidence that: 1) at the time of his offense his capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law was significantly impaired; 2) at the time of the offense he was under substantial duress; and 3) he suffers from a major mental disease or defect.  The jury was not unanimous as to the remaining factors.

The jury decided that the aggravating factors sufficiently outweighed the mitigating factors and recommended a death sentence on July 24, 1998.  A week later, Hammer filed a pro se motion to discharge counsel.  After a lengthy inpatient psychiatric evaluation, he was found competent, and the District Court granted his motion to discharge counsel.  On November 4, 1998, the court sentenced Hammer to die by lethal injection.

Hammer appealed his conviction but then vacillated repeatedly over the course of several years, filing a motion to dismiss the appeal, a motion to recall the mandate, a petition for rehearing en banc, and a petition for a writ of certiorari. Hammer filed a § 2255 motion, and then moved to dismiss it. The District Court granted the motion and dismissed counsel. On appeal, we vacated that order, granted a certificate of appealability, and remanded with instructions to determine whether, once and for all, Hammer wanted to proceed under § 2255. *United States v. Hammer*, No. 04-9001 (3d Cir. June 3, 2004) (per curiam order).

The District Court appointed the Federal Public Defender to represent Hammer, who filed a third amended § 2255 motion challenging both the guilt and penalty phases of his trial.  The

District Court rejected all of Hammer's claims relating to the guilt phase of his trial, namely, his attacks on the change of plea proceedings, the validity of the proceedings allowing him to decide pro se whether to appeal, and counsel's effectiveness. The court did grant relief as to Hammer's penalty phase claims, holding that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it did not turn over certain materials to the defense until the § 2255 hearing in September, 2005, long after the trial.  Among those materials were 33 "302 statements" from the FBI that summarized interviews with prison inmates.  Some of the statements indicated that Hammer had previously braided sheets into ropes for use during sex.   Hammer contends that these statements were exculpatory and relevant to the aggravating factor of substantial planning, and therefore he was entitled to a new penalty phase.  The District Court found that the government's failure to turn over the 302 statements violated *Brady* and tainted the jury's determination that Hammer killed Marti after substantial planning and premeditation.  The court also found that some of the jury's findings on mitigating factors were erroneous.

The District Court vacated Hammer's sentence and gave the government 60 days to move for a new penalty phase; the court said that if the government failed to so move, it would impose a life sentence.  The government moved for the new penalty phase, but resentencing has not yet occurred.  Hammer appeals the District Court's denial of guilt-phase relief, and the government appeals the District Court's order vacating the death penalty and granting resentencing.

7

## II. Jurisdiction

Hammer argues that we do not have jurisdiction over the government's appeal of the order that he be resentenced because there is no final, appealable order until the resentencing has occurred. The government maintains that we do have jurisdiction.

On May 30, 2006, Hammer filed a Suggestion of Jurisdiction Impediment as to the government's appeal. On December 12, 2006, we declined to dismiss Hammer's appeal for lack of jurisdiction, and on December 21, 2006, we declined to dismiss the government's appeal for lack of jurisdiction.[4] On March 21, 2007, Hammer filed a petition for a Writ of Certiorari challenging jurisdiction, and we stayed the appeals. The Supreme Court denied the petition. *Hammer v. United States*, 128 S. Ct. 43 (2007).

The issue before us is whether we have jurisdiction to review an order under 28 U.S.C. § 2255 granting a new sentencing hearing but denying a new trial in a capital murder prosecution. We will deal first with the appeal from the grant of a new penalty phase. Remarkably, this is an issue of first impression in the Third Circuit.

---

[4]The denial by a motions panel of a motion to dismiss for lack of jurisdiction acts as a referral to the merits panel. *Reilly v. City of Atlantic City*, 532 F.3d 216, 223 (3d Cir. 2008).

**A. Jurisdiction Over the Government's Appeal of the Grant of a New Penalty Phase**

Under § 2255, if the district court finds that the petitioner is entitled to relief, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." The statute also provides that an "appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus." 28 U.S.C. § 2255.

In 1963, the Supreme Court spoke directly to this finality issue in the non-capital context. In *Andrews v. United States*, 373 U.S. 334 (1963), the two petitioners challenged the constitutionality of their sentences under § 2255, arguing that they had been denied their right of allocution at sentencing. The district court granted relief, vacated the petitioners' sentences, and ordered that they be resentenced. The government appealed, and the district court stayed the resentencing. The court of appeals reversed the district court's resentencing order. *Id*. at 336.

The Supreme Court held that the court of appeals did not have jurisdiction because the district court's judgment did not become final until it granted one of the four remedies listed in § 2255: discharging the prisoners, resentencing them, granting them a new trial, or correcting their sentences. *Id*. at 340-41. The Court said that it was clear that the order granting resentencing was interlocutory, not final. "Where, as here, what was appropriately asked and appropriately granted was the

9

resentencing of the petitioners, it is obvious that there could be no final disposition of the § 2255 proceedings until the petitioners were resentenced." *Id.* at 339.  The Court cited the "long-established rule against piecemeal appeals in federal cases" and noted that the reason for the rule was particularly important in the instant case:  "Until the petitioners are resentenced, it is impossible to know whether the Government will be able to show any colorable claim of prejudicial error. . . . [U]ntil the court acts, none of the parties to this controversy will have had a final adjudication of his claims by the trial court in these § 2255 proceedings." *Id.* at 340.

While we have not before addressed the precise issue presented here, we did consider whether a grant of a new trial is a final, appealable order under § 2255 in *United States v. Allen*, 613 F.2d 1248 (3d Cir. 1980).  In *Allen*, the petitioner sought a new trial under § 2255, arguing that his conviction was based on insufficient evidence.  The district court granted the motion and the government appealed.  We found that we *did* have jurisdiction because the grant of a new trial was a final, appealable order under § 2255.  We relied on the language of the statute that specifies that the grant of a new trial is one of the four enumerated "order[s] entered on the motion" and said that "the crucial question in these cases in determining finality is whether the district court has entered one of the orders specified in paragraph 3 of § 2255." *Id.* at 1250.  We then cited *Andrews* as a situation in which the court of appeals did *not* have jurisdiction because the district court had not entered one of the four orders on the motion:  while the district court had ordered that the petitioners be resentenced, it had not actually resentenced them.

10

Neither *Andrews* nor *Allen* was a capital case. In *United States v. Stitt*, 459 F.3d 483 (4th Cir. 2006), the United States Court of Appeals for the Fourth Circuit addressed the precise situation we face here: a petitioner who was sentenced to death and sought relief under § 2255, a district court that denied relief as to the guilt-phase claims but ordered resentencing, and a government appeal of the order vacating the death sentence. The court of appeals initially affirmed the district court and remanded for resentencing. After the opinion was published, the court of appeals discovered *Andrews v. United States* and asked for supplemental briefing on the question of whether it had jurisdiction over the § 2255 appeal when the petitioner had not yet been resentenced. *Id*. at 484. The court concluded that it did not have jurisdiction.

The *Stitt* court looked to *Andrews* and found it controlling: in both cases, the district court had vacated a sentence and ordered resentencing. "In such cases, *Andrews* mandates that there is no final judgment 'until the prisoners [a]re resentenced.'" *Id.* at 485 (quoting *Andrews*, 373 U.S. at 340)). In its brief in *Stitt*, the government had cited our *Allen* decision as authority for the proposition that the district court's judgment was final; the *Stitt* court noted that *Allen* was a case in which the district court vacated the conviction and ordered a new trial, and distinguished between the order for a new trial and an order that the petitioner be resentenced. *Id.* The *Stitt* court found that it lacked jurisdiction over the appeal and remanded to the district court for resentencing.

Judge Williams wrote a concurring opinion to elaborate on the jurisdictional issue. She addressed the government's

11

argument that *Andrews* was distinguishable from *Stitt* because *Stitt* was a capital case.  The government argued in *Stitt*, as it does here, that given the procedural parallels between a capital sentencing and a trial, a capital defendant's resentencing should be considered a "new trial" for purposes of § 2255.  A capital resentencing hearing involves a jury and bears many of the hallmarks of a trial.  *See* 18 U.S.C. § 3593(b) (if the defendant is found guilty or pleads guilty to a capital offense, the judge conducts a separate sentencing hearing before a jury to determine punishment).  The government pointed out that appellate jurisdiction exists over an order granting a § 2255 petitioner a future new trial and therefore should exist over an order granting a new capital sentencing hearing.  It argued that it would be a waste of resources to postpone appellate review until after the resentencing hearing, given the possibility that the appeals court would find that resentencing was not warranted in the first place.  Judge Williams agreed that the waste of resources argument was compelling, and that the procedures required for a capital sentencing hearing closely resemble the guilt phase of a criminal trial.  She found, however, that regardless of procedural similarities between a new trial and a capital sentencing hearing, a "trial" by definition encompasses both guilt and sentencing phases:

> [A] future capital resentencing hearing, like a future non-capital resentencing hearing, is a 'resentencing' and not a 'new trial' for purposes of § 2255.  While a capital sentencing shares some of the procedural requirements afforded defendants at the guilt phase of a criminal trial the purpose of a capital sentencing hearing, like the purpose of any sentencing hearing, is to determine the

12

proper punishment to be imposed on a criminal wrongdoer, not to determine whether a defendant should be convicted of the charged crime. Accordingly, under *Andrews*, a district court's order granting a future capital resentencing hearing, such as the order at issue here, is not appealable.

*Id.* at 488.

We agree with the *Stitt* court. The Supreme Court in *Andrews* and our own court in *Allen* have held all too clearly that we do not have jurisdiction over the government's appeal of the District Court's resentencing order: a § 2255 proceeding is not final until the prisoner is resentenced. *See Andrews*, 373 U.S. at 339. Other authority supports this principle. *See, e.g.*, *United States v. Hayes*, 532 F.3d 349, 352 (5th Cir. 2008) (finding an appeal timely when the government filed it within sixty days of the defendant's resentencing, rather than sixty days of the order entitling him to be resentenced, because the order was not final until the district court resentenced the defendant); *United States v. Futch*, 518 F.3d 887, 894 (11th Cir. 2008) (concluding that § 2255 proceedings were not completed and final until the defendant had been resentenced, completing both the criminal case and the collateral § 2255 proceeding); *United States v. Hadden*, 475 F.3d 652 (4th Cir. 2007) (distinguishing between an order for a future resentencing and an order for a new trial and holding that "a district court's order that contemplates the court's correction of the prisoner's sentence at some time in the future . . . does not complete the § 2255 proceeding and is therefore not immediately appealable."); *United States v. Martin*, 226 F.3d 1042 (9th Cir. 2000) (holding

that a district court's judgment vacating a sentence does not become final and appealable until the defendant has been resentenced).

In *Allen*, we held that § 2255 laid out exactly what is a final, appealable "order entered on the motion." There are four such orders: 1) discharge the prisoner, 2) resentence the prisoner, 3) grant a new trial, or 4) correct the sentence. An order that contemplates a future resentencing but does not accomplish it is not an "order entered on the motion" and is not final and appealable. 28 U.S.C. § 2255.

As to the government's argument that a capital sentencing should be equated with a new trial, we find this to be an interesting argument but ultimately lacking in persuasive appeal. A trial determines guilt; a sentencing determines the penalty for a guilty defendant. A capital sentencing is still a sentencing: it determines what punishment an already-convicted defendant should receive.

The government notes that both the text of § 2255 and *Andrews* contemplate that the § 2255 court will resentence the petitioner, but that § 2255 does not make any provision for resentencing that involves a jury. It argues that the District Court must conduct the resentencing under its guise as the trial court, not the § 2255 court, and therefore its jurisdiction as a § 2255 court has ended and the resentencing order is final.

It is true, as the government points out, that § 2255 does not specifically contemplate the process of capital resentencing. But § 2255 applies in capital and non-capital cases alike, as the

14

statute under which federal prisoners file habeas corpus petitions. *Cf. Hain v. Mullin*, 436 F.3d 1168, 1178 & n.2 (10th Cir. 2006) (referring to federal capital trials and including both § 2254 and § 2255 proceedings as vehicles for collateral attack). The statute does not have to address specifically every feature of sentencing procedure in order to apply in the capital context. Furthermore, had Congress wanted a different rule to apply in capital cases, it could have said so.

We can draw guidance as to the procedural questions from what happened after the initial remand for resentencing in *Stitt*. The district court refused to impanel a capital jury, concluding that the statute under which Stitt had been convicted, 18 U.S.C. § 848, had been amended since his initial sentencing and no longer provided a procedure for impaneling a new jury for reconsideration of a death sentence. *Stitt v. United States*, 475 F. Supp. 2d 571, 574 (E.D. Va. 2007). The district court said that not only did it lack the statutory authority to convene a new capital sentencing hearing, but that even if it had such authority, it would use its broad equitable powers under § 2255 to hold a new sentencing hearing without the possibility of the death penalty and without impaneling a jury. *Id.* at 576. The court said that too much time – eight years – had elapsed since the initial sentencing, and cited "the general statutory preference for a unitary jury." *Id.* at 577.

The court of appeals took a dim view of this reasoning. *United States v. Stitt,* 552 F.3d 345 (4th Cir. 2008), *petition for cert. filed*, (U.S. Apr. 24, 2009) (No. 08-10074). It found that the Savings Statute meant that Stitt could be sentenced under 18 U.S.C. § 848, and that the district court's refusal to impanel a

15

capital sentencing jury under § 2255 was an abuse of discretion. The court quoted the mandatory language from § 848: "'the judge who presided at the trial . . . *shall* conduct a separate hearing to determine the punishment to be imposed. . . . [That hearing] '*shall*' be conducted 'before a jury impaneled for the purpose of the hearing . . . .'" *Id*. at 355-56 (quoting 21 U.S.C. § 848(i)(1)).     The court then emphasized its previous "admonition that the defendant be placed in the 'same position' is if there was no error.  In this case, that position would be awaiting a penalty phase after having been convicted of death eligible offenses." *Id.* at 356.  The court of appeals remanded the case for a new capital sentencing hearing.

The *Stitt* court did not have a problem with the district court's impaneling a capital sentencing jury, and neither do we. It is undisputed that Hammer was convicted and sentenced under the Federal Death Penalty Act, 18 U.S.C. § 3593.  The FDPA has the same mandatory language that the *Stitt* court cited in 18 U.S.C. § 848:  when a defendant is found guilty or pleads guilty to a capital offense, the judge "shall" conduct a separate sentencing hearing, and the hearing "shall be conducted" before a jury impaneled for the purpose of the hearing if:  A) the defendant was convicted upon a guilty plea; B) the defendant was convicted after a bench trial; C) the jury determined that the defendant's guilt was discharged for good cause; or D) "after initial imposition of a sentence under this section, reconsideration of the sentence under this section is necessary." Hammer's resentencing fits under 18 U.S.C. § 3593(b)(2)(D). Although § 2255 does not deal directly with the procedures for impaneling a capital jury, its instruction that the § 2255 court shall resentence a defendant is clear.

16

Finally, the government cannot answer the most basic point from *Andrews*: "Until the petitioners are resentenced, it is impossible to know whether the Government will be able to show any colorable claim of prejudicial error. . . . [U]ntil the court acts, none of the parties to this controversy will have had a final adjudication of his claims by the trial court in these § 2255 proceedings." 373 U.S. at 340. The government will not be able to show prejudicial error until the District Court resentences Hammer, and it will presumably have no reason to appeal if a jury again imposes a death sentence.

**B. Jurisdiction Over Hammer's Appeal of the District Court's Denial of a New Guilt Phase**

We now turn to the defendant's appeal from the guilt phase, namely his claim of ineffectiveness of trial counsel and his challenge to the validity of the change of plea proceedings and the proceedings allowing him to decide pro se whether to appeal. We conclude that the order denying Hammer relief as to the guilt phase does not become final until he is resentenced.

At oral argument, Hammer's counsel acknowledged that it was not clear that we had jurisdiction over Hammer's appeal: he pointed to authority saying that an order denying a new trial is a final, appealable order, but also acknowledged that certain cases say that an order must be final as to all parties before it is appealable. *See Stitt*, 459 F.3d at 486 n*. In a criminal case, a final judgment requires both conviction and sentence. *Corey v. United States*, 375 U.S. 169, 174 (1963); *United States v. Lanham*, 631 F.2d 356, 357 (4th Cir. 1980); *see also* 28 U.S.C. § 1291. Although proceedings under § 2255 are civil, not

17

criminal, the statute expressly authorizes appeals to be taken "as from a final judgment on application for a writ of habeas corpus," and *Andrews* has been interpreted as applying the final judgment rule in habeas proceedings.  *See, e.g.*, *Matthis v. Zant*, 903 F.2d 1368 (11th Cir. 1990).  Thus, the order denying Hammer relief as to his guilt phase claims will not become final until he is resentenced.  Therefore, we do not have jurisdiction over his appeal.

In light of the above, we will dismiss the appeal.