IN THE UNITED STATES DISTRICT COURT

            FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


United States of America        :
                                :
     vs                         :     96-CR-239
                                :
                                :
David P. Hammer                 :


        BEFORE:          Honorable Malcolm Muir

        PLACE:           Williamsport, Pennsylvania

        PROCEEDINGS:     Pretrial Conference

        DATE:            Tuesday, July 28, 2009

        REPORTED BY:     Joan D. Steinbach, RMR
                         Official Court Reporter


APPEARANCES:

For the United States:   Frederick E. Martin, Esquire
                         United States Attorney's Office
                         240 West Third St., Suite 316
                         Williamsport, PA   17701


For the Defendant:       James V. Wade, Esquire
                         Federal Public Defender's Office
                         100 Chestnut Street
                         Suite 306
                         Harrisburg, PA   17101

(2:30 p.m., convene.)

THE COURT:  I'm surprised that you came up here for this.  We could have avoided it, I think, but glad to have you here anyhow.

MR. WADE:  Well, I think now after we've had -- Fred and I have had some discussions you're probably right, Judge. Initially I just wanted to -- I was going to do it informally just to make sure there was no problems with who I might suggest to be added to the defense team, but I've talked it over with my colleagues in the SHU unit, the Capital Habeas Units that are on Hammer's case, talked it over with Fred, talked it over with Marty, and I wanted to recommend Ron Travis be added to the team at this time.

It's sort of a transitional period right now.  And I told the rest of the attorneys by e-mail that I didn't intend for them to be here, that it was just -- I envisioned Fred and I talking about the situation, where we're transitioning from a collateral process to a trial process now and we need to add a trial attorney to this process.

THE COURT:  Does it look like it's going to be retried as to the penalty phase?

MR. MARTIN:  We don't really know.

MR. WADE:  That's --

MR. MARTIN:  Which leads to --

MR. WADE:  That's why I wanted to invite Fred here

also because of that.  Go ahead, Fred.

MR. MARTIN:  And the "we don't know" answer, Your Honor, is based upon the fact, I think it's a mutual recognition that 11 years have passed since the filing of the request for imposition of the death penalty.  I have not kept up with Mr. Hammer's life, even though I know it's been mostly spent at the Terre Haute penitentiary.  Things could change, and the 2255 proceedings, as you know, maybe touched a little on what was going on in Terre Haute but not in any great depth.

So we are, as you may also know, losing Marty Carlson as the U. S. Attorney, and we have a brand new Attorney General in Washington who should review the case, we believe, from the beginning to make sure that the appropriate punishment is the death penalty.

So as part and parcel of Mr. Wade's request for counsel, it would be good to have someone who's familiar with many of the facts, and certainly Mr. Travis would be that person, and by the same token we want to start with a semi clean slate in terms of reconsidering whether or not we should proceed to get the death penalty.

THE COURT:  Well, does Mr. Hammer want Mr. Travis?

MR. WADE:  Yes, he does, Your Honor.

THE COURT:  Hammer does have counsel now, though.

MR. WADE:  That's right, he does.

THE COURT:  Will Travis be added?

MR. WADE:  I would -- because it's two, you know, two Federal Defender's offices, I would just add him to that team. The reason for that is that they have -- if it goes to a trial, the two Habeas Units have developed some mitigation that could be useful in the mitigation trial.  They also think that their information might be useful to both the local review here in the Middle District of Pennsylvania and in the national review in the Department of Justice in Washington, D.C.  The information so -- but they've never presented that information to the Attorney General, or to the local, and Ron Travis has done that.  He has made presentations regarding whether death authorization is appropriate in a particular case.

MR. MARTIN:  I think in at least ten cases or so I know Ron has done this, so he's more schooled in it than your office is particularly.

MR. WADE:  Yeah, yeah, I think he is.  So we intended to add him to the team that's already in place, though I think over time he'll be assuming a bigger role because of the nature of this case.

THE COURT:  Well, I'm 94 years and ten-twelfth and the joke around the office is I'm going to survive everybody involved here except Hammer.

What motion do you want to present today or -- or do you want to schedule or what?

MR. WADE:  What I was going to do, I actually did

have drafted -- I wasn't intending on filing it today because --

THE COURT:  No problem.

MR. WADE:  But I was going to file something called Notice to Designate Counsel, and I'll lay out the background of this and then I'm going to suggest the court appoint Ron Travis pursuant to the CJA.

THE COURT:  Would it be objectionable to ask government counsel whether they have any objection to that?

MR. WADE:  Normally it's an ex parte matter but I don't have a problem in this particular case.

THE COURT:  If you don't think it's advisable that's okay with me.

MR. WADE:  In this particular case I don't think -- unless you don't want to be on the spot.

MR. MARTIN:  I think what -- and we've discussed this before -- we certainly have no major objections to present, but we think that it might be advisable to have a video presentation with Hammer on video asking him if Mr. -- if he wishes Mr. Travis to represent him.  Basically to somewhat pin him down and make sure that we don't have any backing up on that.

THE COURT:  Well, how can we set that up?  We can do it downstairs, of course.

MR. MARTIN:  Yes, Your Honor.

OFFICIAL COURT REPORTER

MR. WADE:  Is it the technical courtroom?

MR. MARTIN:  Courtroom number three is -- and I'm pretty sure that in fact, I think didn't we -- I think we had some presentations during the 2255, but I'm not sure if it was -- you know, one was from I think Springfield, but I'm not sure if it was from Terre Haute, but I'm sure they have a connection so that we can do that.

THE COURT:  Do you recall where he was?

THE LAW CLERK:  We had a video downstairs from -- probably Springfield.

MR. MARTIN:  It was the ADX, I think in Colorado.  I know those two facilities do have it and I'm certain that Terre Haute has it as well.

THE COURT:  Well, that's one thing.  What else?  We can set up a schedule for that.  How far off do you think we need to schedule it about?  A month or two weeks?

MR. WADE:  I would go for the longer period only because I don't know what Mr. Travis' schedule is and he'll want to be probably part of this too.  And I do contemplate that you will also see a second motion, a motion to enlarge the time period in the July 9th order.

THE COURT:  Yes.

MR. WADE:  Are you filing that?

MR. MARTIN:  Yes, we'll be doing that.

MR. WADE:  The government will be filing that but

that will allow this reconsideration of the death authorization process.

THE COURT:  Well, this is one of the few cases where I don't think there is any rush, so we'll work it out any way you want to do it.

MR. WADE:  Okay.  I think I'll file the Notification to Designate Counsel and then the scheduling may be -- are you going to move to have the colloquy with Hammer?

MR. MARTIN:  That's how we could respond to your --

MR. WADE:  Instead of doing a notification do you want me to file a motion, do a motion to designate counsel and that way you can respond to the motion?

MR. MARTIN:  That would probably be the easiest and then we will file a separate motion asking for additionally beyond the 60 days that the court originally gave us to resolve some of these matters.

THE COURT:  How much time would you like on that, 90 days additional?

MR. MARTIN:  I think probably more than that.  I do not know what the usual turnaround time with -- timeframe is for the Capital Crimes Unit, in the sense that they have a timeframe within which they want to take -- and I assume that Mr. Travis and Mr. Wiseman and maybe Ms. Saunders would go down and make a personal presentation down in Washington, and that's the formal way that we did it back in 1997.  So I assume that's

what we would do again.

MR. WADE:  Our office was involved in the potential case with Williams where they made a presentation, Tom Thornton of my office, so they were still using that process as of March, I think.  Wasn't that when that happened, March of 2009?

MR. MARTIN:  I don't -- I'm not that familiar.

MR. WADE:  You don't go to the DC one?

MR. MARTIN:  No.

THE COURT:  Do you want to file a motion and give us a time limit?

MR. MARTIN:  Yes, after I've consulted with Mr. Kinsey and --

MR. WADE:  You'll reply, but I won't put any time, in other words, I'll just ask for the designation and you'll reply to that.

MR. MARTIN:  Yes.

THE COURT:  Get the concurrence.

MR. WADE:  Yeah.

MR. MARTIN:  We'll been concurring, strangely, since your office and I have been communicating regularly about these things.

MR. WADE:  In anticipation that I might convert this from a notice to a motion I did put a certificate of concurrence that says -- to see if you had any objection -- that I certify that Assistant United States Attorney Frederick

Martin consents in this designation so long as the court conducts a colloquy of Mr. Hammer via video conferencing.  I was trying to capture the flavor of what you -- that's why I wasn't going to file it until we worked out the final details of it.  So if that would be acceptable, I'll convert this to a motion and make that statement in my motion.

MR. MARTIN:  Yep.

THE COURT:  What else can we talk about today?

MR. WADE:  I think that -- I agree with you, I don't think there's much more to talk about.  We kind of worked it out as we were going along through this process.

THE COURT:  When -- by what date would you be willing to agree to file that motion?

MR. WADE:  By the end of this week, this Friday.

THE COURT:  Let's say -- do you need any order from us?

MR. WADE:  I do not need an order, I think I can just file the motion.

THE COURT:  All right.  And when you file your motion, try to give us an outside date at which the government will have done everything it needs to do.

MR. MARTIN:  In one sense, though, Your Honor, it's contingent upon Mr. Travis' being brought into it, which is --

MR. WADE:  I mean, I've talked to Ron just to make sure I wasn't designating a person that didn't want to do this.

OFFICIAL COURT REPORTER

And he -- he indicated he's willing to do this.

THE COURT:  Well, do you want to wait until after you talk to Hammer or what?

MR. WADE:  At least Ron Travis, I think.

MR. MARTIN:  I think that would be good because I'm not sure how much time Ron might need for the presentation.  I don't know, because the ball is more in his court initially than it is ours.

MR. WADE:  And from what I understand, while he's familiar with the facts of the Hammer case, obviously, the Capital Habeas Units have developed things that might be helpful in that presentation which they'll want to pass on to him.

THE COURT:  Well, I don't think we probably should set any precise limits today.  You gentlemen just keep working at it.

MR. WADE:  I do think, because of the number of attorneys you need to consult with on your side of the Department of Justice, and I also should consult with Ann Saunders and Michael Wiseman about their -- what they feel it's going to take to do a transition and to get together a presentation with Ron.

MR. MARTIN:  Right.

THE COURT:  Anything further?

MR. MARTIN:  No, I think that's -- there's a number

of issues that we have to grapple with but I think that's all we can do today.

MR. WADE:  I do too, Judge.

THE COURT:  All right.  That's fine.

(2:46 p.m., court adjourned.)

REPORTER'S CERTIFICATE

I, Joan D. Steinbach, Official Court Reporter for the United States District Court for the Middle District of Pennsylvania, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the within-mentioned proceedings had in the above-mentioned and numbered cause on the date or dates hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my supervision.

s/Joan D. Steinbach_____
Joan D. Steinbach, RMR
Official Court Reporter

REPORTED BY:

JOAN D. STEINBACH, RMR
Official Court Reporter
United States District Court
Middle District of Pennsylvania
240 West Third Street, Suite 415
Williamsport, PA 17701-6438
(570)772-5769

(The foregoing certificate of this transcript does not apply to any reproduction of the same by any means unless under the direct control and/or supervision of the certifying reporter.)

OFFICIAL COURT REPORTER