## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :

                         :    NO. 4:96-CR-00239

                         :

       v.                  :

                         :    (Judge Muir)

DAVID PAUL HAMMER    :

                         :

       Defendant        :    (Electronically Filed)

## MOTION FOR ACCESS OF VIDEOGRAPHER TO SPECIAL CONFINEMENT UNIT AT UNITED STATES PENITENTIARY TERRE HAUTE

AND NOW, this 21st day of December, 2009, comes Defendant Hammer, by and through his attorney, and files the within Motion seeking the entry of an Order directing that the defense retained videographer be granted access to the Special Confinement Unit at United States Penitentiary Terre Haute, along with equipment, for the purpose of making a video recording of Defendant Hammer regarding the death of Andrew Hunt Marti.   This recording may be used by defense counsel in their presentation to the government with respect to the pending

decision about whether to again seek the death penalty.  In support thereof counsel asserts as follows:

1.      David Paul Hammer was convicted of killing of Andrew Hunt Marti as a result of an incident that occurred in the Special Housing Unit in April of 1996 and sentenced to death.

2.      Following §2255 litigation, this Court issued an Opinion and Order vacating Mr. Hammer's death sentence. (Doc. 1216).  Appeals from the December 2005 Order were taken by both the Government and Mr. Hammer.  The Third Circuit Court of Appeals ruled on May 11, 2009, that it did not have jurisdiction. The Mandate of the Third Circuit Court of Appeals, issued on July 6, 2009 (Doc. 1244).  On July 9, 2009, this Court entered an Order giving the government sixty (60) days to move to place this case on the trial list; otherwise, the Court would impose a sentence of life imprisonment without the possibility of parole. (Doc. 1245).

3.      Discussions between counsel for the government and counsel for Mr. Hammer led to a mutual decision that the case would go through the federal authorization process for a second time before both the United States Attorney for the Middle District of Pennsylvania and the Department of Justice Capital Crimes Unit.  The federal authorization process permits the defense to make a presentation demonstrating why a sentence of death is not appropriate in Mr. Hammer's case.

4.    Defense counsel has retained a videographer to film a video to be used as part of Mr. Hammer's presentation to the local United States Attorney as well as to the Capital Crimes Unit. The video will present a variety of reasons as to why the government should forego seeking the death penalty.

5.    Counsel are considering including footage of Mr. Hammer in this video. However, they have been advised by BOP officials that such videotaping will not be permitted absent a court order. It is anticipated that the videotaping would take place within one of the contact visiting rooms located within the Special Confinement Unit at United States Penitentiary Terre Haute.

6.    The BOP's refusal to permit this videotaping contrasts with the many instances in this, and other cases, where still and video footage has been permitted to take place on federal death row, and in other federal maximum security facilities.

7.    Mr. Hammer has appeared by video in court proceedings in this case.

8.    The government was permitted to videotape mental health evaluations conducted in this case in §2255 proceedings.

9.    Attached hereto as Exhibit 1 is a list of materials government expert Martell was permitted to bring into the institution as part of the evaluation conducted, including a video camera, tripod, and related items, a cell phone and a laptop computer.

10.    The videoing undertaken by the government included the room in which the testing occurred and also the cell of David Paul Hammer.

11.    As part of the preparation and investigation in conjunction with the original trial, the Private Investigator for the defense was granted access to the Special Housing Unit at United States Penitentiary Allenwood for the purpose of photographing various aspects of the Special Housing Unit.

12.    The staff working within federal death row has access to a camera and is apparently permitted to photograph death row inmates with visitors.

13.    Undersigned counsel is aware that the Bureau of Prisons has conducted media tours of the Administrative Maximum facility in Florence, Colorado.

14.    Undersigned counsel is aware of the existence of diagrams and photographs depicting a typical cell at the Administrative Maximum facility, although counsel does not know whether these items were created by Bureau of Prisons personnel or were created by individuals not employed by the Bureau of Prisons.

15.    Counsel is aware that in conjunction with death penalty prosecutions, as well as in conjunction with a non-capital prosecution for attempted escape, lawyers, private investigators, and other experts have been permitted to tour the Administrative Maximum facilities and photographs have been taken depicting

4

various scenes, including fencing, guard towers, and the type of barbed wire in place at the Administrative Maximum facility.

16. It is believed and therefore asserted that in conjunction with the prosecution of various federal inmates for crimes committed within federal institutions that non-Bureau of Prisons employees such as defense lawyers, defense private investigators, defense mitigation investigators, and defense future dangerousness experts have been permitted to tour various federal facilities and to have produced photographs of different sites therein relevant to the case being litigated.

17. Prior to his execution, Juan Garza was confined in the Special Confinement Unit at United States Penitentiary Terre Haute.

18. In conjunction with the Juan Garza clemency submission, a videographer with appropriate video equipment was granted access to the Special Confinement Unit at United States Penitentiary Terre Haute to videotape comments of Mr. Garza.

19. In February of 2005, prior to the newly constructed Special Confinement Unit being opened, the Bureau of Prisons conducted a media tour of the facility which included print media, photographers, and videographers.

20. As a result of the media tour, television stations in and around Terre Haute broadcast footage of the tour and the print media provided photographs as

well as an oral description of the facility. Attached as Exhibit 2 to this Motion is the story and photographs published on the front page of the Terre Haute Tribune-Star concerning the tour.

21. The video recording access being requested is for the purpose of the possible inclusion of statements in the presentations to be made relating to the federal authorization process.

22. The video access being requested would not include taking any video footage which would depict staff, the hallways, the doors and locks, or any other sensitive items.

23. To the extent that the Bureau of Prisons is concerned that the video personnel would video items outside of the designated room for shooting the video, this concern can be eliminated by the staff hand carrying the video equipment from the visitors' entrance area to the housing area where David Paul Hammer is being housed.

24. Although counsel for Hammer has suggested the appropriate place for the videotaping would be in the contact visiting room, which is physically large enough to accommodate multiple individuals and the video equipment on the visitor's side, counsel is not adverse to having the Bureau of Prisons designate another area, such as the teleconferencing room, for the shooting of the video.

25.    In order to avoid unnecessary litigation, undersigned counsel contacted the Warden at United States Penitentiary Terre Haute and requested approval for the videographer, with equipment, to be admitted to the Special Confinement Unit in order to videotape comments of David Paul Hammer for possible inclusion in the video presentation during the authorization process. The Warden denied that request but indicated that if the government agreed to the shooting of such a video, the denial would be reconsidered.

26.    Mr. Hammer's counsel do not believe the prosecution has standing to object to the defense team's determination of what information is necessary to develop an appropriate presentation for the authorization process. Nevertheless, in an effort to reach an accommodation and to avoid the necessity of filing the instant Motion, undersigned counsel contacted AUSA Frederick Martin to see whether he would advise the Warden that our request should be reconsidered. Mr. Martin indicated he would not intercede with the Warden insofar as our request for permission to videotape comments of David Paul Hammer.

27.    Counsel and the videographer recognize that the video team would be required to cooperate with and pass the standard security process and that the equipment to be used in the creation of the video would also be subject to inspection and approval.

28.   The requested authorization will have no impact on guards, staff, or other inmates.

29.   The requested authorization will have no impact on the allocation of prison resources and create no burden on the staff.

30.   Although visitors to the Special Confinement Unit where David Paul Hammer is housed use the common entrance for processing, such visitors are separately escorted to the visiting area for individuals housed in the Special Confinement Unit.

31.   Visitation for Special Confinement Unit inmates does not take place in the common visitation area for non-SCU inmates.

32.   The visitors for non-SCU inmates are escorted to a common visitation area to the right once the building main entrance is entered.

33.   Visitors to the SCU turn to the left upon entering the building and are escorted down hallways past various staff offices.

34.   On the occasions undersigned counsel has visited the facility he has encountered no inmates on his travels from the entrance of the building to the elevator which takes him to the floor where the SCU is located.

35.   Once a visitor to the SCU arrives at that unit, the visitor is granted access to the visitor's side of the visitation area and, after signing in, is escorted to the individual visitation room where visiting with the SCU inmate takes place.

36.    During the visitation with the SCU inmate and the visitor or visitors, a staff member is seated outside the visiting area where the staff member is able to observe the parties involved in the visit while the visitation is taking place.

37.    The requested access will not jeopardize the security of the facility or have any "ripple effect" on fellow inmates or on prison staff.

WHEREFORE, for the foregoing reasons, David Paul Hammer, through counsel, respectfully request that this Honorable Court GRANT his Motion for Access of Videographer to Special Confinement Unit at United States Penitentiary Terre Haute.

Respectfully submitted,


/s/ Ronald C. Travis, Esquire
Ronald C. Travis, Esquire
PA ID#:  08819
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
(570) 323-8711 (telephone)
(570) 323-4192 (facsimile)
rtravis@riederstravis.com

/s/ Anne L. Saunders, Esquire
Anne L. Saunders, Esquire
Asst. Federal Public Defender
PA ID#:  48458
100 Chestnut Street, Ste. 306
Harrisburg, PA  17101
(747) 782-3843
Anne_Saunders@fd.org

/s/ Michael Wiseman, Esquire

Michael Wiseman, Esquire
Supervising Assistant Federal Defender
PA ID#:  75342
Suite 545 West – The Curtis Building
Independence Square West
Philadelphia, PA  19106
(215) 928-0520
Michael_Wiseman@fd.org

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :
                            :    NO. 4:96-CR-00239
                            :
            v.              :
                            :    (Judge Muir)
DAVID PAUL HAMMER           :
                            :
        Defendant           :    (Electronically Filed)

## CERTIFICATE OF NON-CONCURRENCE

Undersigned counsel was in contact with AUSA Frederick Martin concerning the filing of the instant Motion, and undersigned counsel was advised the government would not concur in the Motion.

RIEDERS, TRAVIS, HUMPHREY, HARRIS,
WATERS & WAFFENSCHMIDT

/s/ Ronald C. Travis, Esquire

Ronald C. Travis, Esquire
PA ID#: 08819
161 West Third Street
PO Box 215
Williamsport, PA 17703-0215
(570) 323-8711 (telephone)
(570) 323-4192 (facsimile)
rtravis@riederstravis.com

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :

                     :      NO. 4:96-CR-00239

                     :

         v.              :

                     :      (Judge Muir)

DAVID PAUL HAMMER        :

                     :

        Defendant       :      (Electronically Filed)

## CERTIFICATE OF SERVICE

AND NOW comes Ronald C. Travis, Esquire, Attorney for Defendant, and certifies that a true and correct copy of the foregoing Motion for Access of Videographer to Special Confinement Unit at United States Penitentiary Terre Haute, has been served upon AUSA Frederick Martin, Federal Building, Suite 316, 240 West Third Street, Williamsport, PA 17701, via ECF, or, if necessary, by first class mail, postage pre-paid, this 21st day of December, 2009.

RIEDERS, TRAVIS, HUMPHREY, HARRIS,
WATERS & WAFFENSCHMIDT

/s/ Ronald C. Travis, Esquire

Ronald C. Travis, Esquire
PA ID#: 08819
161 West Third Street
PO Box 215
Williamsport, PA 17703-0215
(570) 323-8711 (telephone)
(570) 323-4192 (facsimile)
rtravis@riederstravis.com

12

29a    Dr. Daniel A. martell    949-786-7478    p.2

**List of Materials to be brought into USP Terre Haute
For the Examination of David Paul Hammer
by Dr. Daniel A. Martell
on April 28th and 29th, 2005**

(1) Sony Digital Video Camera with tripod, cables, and multiple MiniDV digital video tapes.

(2) Two (2) briefcases filled with assorted neuropsychological test equipment, papers, pencils, pens, test booklets, manuals, clipboard, etc.

(3) Gateway Laptop Computer, floppy disks, and power cables.

(4) Cellular telephone to contact USAO if needed.

If you have any questions, please contact Dr. Martell at 949-760-0422 before close of business PST on 4/26/2005.

Daniel A. Martell, PH.D., ABPP

FOI-EXEMPT

**EXHIBIT**

**/**

**Attachments to Letter Dated
December 9, 2009
Page 145 of 160**

## Inmates to transfer to new, more secure facility, a part of Terre Haute's Federal Correctional Complex

By Jamie Fetty/Tribune-Star

Today it is quiet, cool and sterile. The spotless cafeteria serves no diners, the beds lay empty, televisions are silent.

But come spring, the third prison of what will soon become Terre Haute 's Federal Correctional Complex will gradually fill with life as maximum-security federal prisoners are transferred from the old building to the new.

The original building, which houses the nation's only "death row," or Special Confinement Unit, was built in 1940. The new facility is much more secure, said Chris Nickrenz, executive assistant to the warden. Specific security details are not released to the public.

The old red brick prison will become a medium-security facility, but its image appears in the new prison in the form of inmate-painted murals on walls near entrances.

In the Special Confinement Unit, prisoners spend much more time alone, but are granted a few extra amenities in their cells. Each gets a small locker and 13-inch black-and-white television, as well as a personal shower. They are allotted five to six hours of recreation time per week, said Ray Geise, complex administrator and consolidated services manager.

Recreation happens alone, in a small courtyard within the building, in one of several rectangles of tall, chain-link fence. No basketball hoops or other equipment have been installed yet, Nickrenz said, and the complex is still deciding what to add.

Currently, 32 federal prisoners await execution, but none has a confirmed date, Nickrenz said.

General-population housing is more social. Two levels of cells, each cell built to house two offenders, face into a common area of tables with printed-on checkerboards. Offenders can tune into one of a collection of televisions through a radio system, Nickrenz said. They have regular access to outdoor recreation centers, mainly basketball courts.

But such leisure is reserved for when the daily 71/2-hour work shift is done, Nickrenz said.

All prisoners work jobs, Nickrenz said. The jobs start at about 17 cents an hour, wages that are first directed to paying fines or restitution, when applicable.

The site also houses a UNICOR Federal Prison Industries factory, where inmates will make towels, blankets and other textiles, as well as ammo pouches for the military. By law, UNICOR products can be sold only to the federal government.

UNICOR can pay up to 40 cents an hour, and inmates sign up on a waiting list for those jobs.

"Programming is a huge part of the security of the institution," warden Mark Bezy said. All prisoners also are required to earn a General Education Development diploma.

The new facility will house complex programming, from educational facilities to vocational training to psychological services.

**EXHIBIT**

2

The addition of the new maximum-security U.S. Penitentiary to the existing one and the minimum-security camp on the same site will eventually bring the Terre Haute federal inmate population to about 3,000, Bezy said. The new building can house 1,200 inmates.



Death row: A cell in the Special Confinement Unit of the new federal prison at Terre Haute includes a 13-inch, black-and-white television set, a locker, a shower, table with seat, a toilet, a sink with mirror, a bed and a window. (Tribune-Star/Jim Avelis)



Might hurt: Several coils of concertina wire are part of what stands in the way for inmates seeking to escape from the new maximum security facility at the federal penitentiary in Terre Haute. The last successful escape from inside the old facility was Sept. 8, 1971, after three inmates cut a hole in a fence. Two were recaptured within an hour, the other four days later. (Tribune-Star/Jim Avelis)

source: http://www.tribstar.com/articles/2005/02/25/package/package.txt