IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,        )
                                 )
                                 )
        vs.                      )        Criminal No: 4:CR- 96-0239
                                 )
DAVID PAUL HAMMER,               )
                                 )

## DECLARATION OF HECTOR JOYNER

1.      I, Hector Joyner, am currently employed by the Federal Bureau of Prisons (hereafter "BOP" ), and assigned to the Federal Correctional Complex, Terre Haute, Indiana (hereafter "FCC Terre Haute"). I began employment with the BOP in 1995, and have been assigned to FCC Terre Haute since December 10, 2006. My position is that of Chief Correctional Supervisor. As Chief Correctional Supervisor, part of my responsibilities include the overall supervision of the custodial staff assigned to the complex and I am also in charge of the overall security of the institution.

2.      I make this declaration in support of the United States' Brief in Opposition to Defendant's Motion for Access of Videographer to Special Confinement United at the USP Terre Haute.

3.      The Federal Correctional Complex consists of a minimum security Federal Prison Camp, a medium security Federal Correctional Institution, and the United States Penitentiary High Security.

1

**Government Exhibit 1**
**Page 1 of 6**

4.    My experience with the Bureau were in positions of increasing responsibility in Correctional Services (Security), beginning as an entry level correctional officer and advancing to my current position. I have worked at facilities of every security level.

5.    As a Complex Captain, I am the resident expert on all custodial and security questions arising at the complex and have full and final technical responsibility when problems occur during the course of any given shift. I provide leadership and direction to the three Correctional Services Departments in institutional security. I plan, develop, and administer the regulations which ensure strict security in the operation of the correctional facilities at the complex. In my capacity as Complex Captain, I have access to Bureau policies and files.

6.    Inmate David Paul Hammer Register Number 24507-077, is presently confined at the USP in the Special Confinement Unit (SCU). I am familiar with inmate Hammer, his background, his conditions of confinement, and his security and custody classification.

7.    I am also familiar with Hammer's Motion for Access of Videographer to the SCU at USP Terre Haute.

8.    The USP SCU[1] is a high security, facility housing maximum custody sentenced inmates in single occupancy cells. Maximum custody is the highest custody level that can be assigned to an inmate. The SCU is the only facility of its type in the Bureau, although there are many other United State Penitentiaries. It is designed to house inmates who have been convicted and sentenced to death. and require an uncommon level of security due to their serious records of

---

[1] The current USP Terre Haute opened in March of 2005. The old USP Terre Haute is now a medium security facility. Inmates from the SCU at the former USP Terre Haute were not moved to the new institution until approximately July 12, 2005.

2

institutional misconduct, involvement in violent or escape-related behavior, or due to the nature of their offense. Inmates are designated to the SCU after they have been sentenced to death. The unique security and control procedures implemented to control these inmates are designed to enhance the safety of staff, inmates, visitors, and the public. The SCU currently confines 51 inmates who are sentenced to death, 4 high security inmates and 1 administrative detention inmate.

9. I understand in April 2005, a government expert was allowed into USP Terre Haute SCU in conjunction with a mental health evaluation. I was informed in this instance, the expert put up a tri-pod and video taped the mental health evaluation of Hammer. This video taped incident was a controlled, isolated incident and occurred at the former USP Terre Haute, SCU. At that time, the SCU only housed approximately 32 inmates, plus 2 non-death sentence inmates.

10. I also have been informed that previously a video tape of a former inmate was allowed in conjunction with his clemency petition. This video tape was allowed prior to this inmate's execution date which was June 19, 2001. This video tape was also conducted under controlled circumstances. There were fewer inmates within the SCU and this video tape was also conducted at the former USP Terre Haute, SCU.

11. In January 2001, the SCU housed twenty-one inmates who were sentenced to death.

12. If the court was to order a video tape of Hammer to be taken, there is also a concerns that the video tape may be utilized for purposes other than to present it to the United States Attorneys office and Capital Crimes Unit. It my understanding that Hammer has at least

3

one personal website which is entitled Death Row Speaks. Further, allowing a video tape of one inmate in the SCU would have a disruptive influence on the other inmates confined in the SCU. The issue of equal treatment of inmates within the unit is a matter which has to be taken into consideration. If such a request was permitted for Hammer, other inmates would expect similar requests to be approved. Further, allowing a video tape of one inmate could potentially elevate them to a level of notoriety within the unit and thereby create disruption to the orderly running of the institution.

13.    It is my understanding that any photographs of the SCU at the new institution were taken by staff under controlled situations before inmates sentenced to death was transferred to the unit. Furthermore, to the best of my knowledge, no video cameras have been allowed into the SCU since the inmates were transferred from the existing SCU to the SCU at the new USP Terre Haute in July 2005.

14.    It is my determination, based on sound correctional judgment, that allowing video recording equipment onto the complex and into the SCU to videotape Hammer threatens and is detrimental to the order and security of the SCU and may violate the privacy of other individuals. The possibility exists that the person bringing the equipment onto the complex and into the SCU would photograph the following:

   a.    Paths of entry onto the complex;
   b.    Paths to and from each institution at the complex;
   c.    Perimeter security for each institution at the complex (e.g., number of observation towers, distance between the observation towers, height of the observation towers, number of walls, height of the walls, number of fences, height of the fences, and concentration of razor wire between the fences);
   d.    Location of the SCU on the complex;
   e.    Paths of entry into the SCU;

4

f.   Number and types of grills inside the SCU;
g.   Locking mechanisms utilized on the grills;
h.   Types of security devices utilized inside and outside of the SCU;
I.   Keys on the belts of staff;
j.   Location of equipment storage areas;
k.   Location of offices;
l.   Staff; and
m.   Inmates.

The photographing of these and other areas would allow an individual to create a basic blueprint of the complex and institution to develop a plan to assault and/or escape from the SCU.

15.   The potential for damage to the video equipment exists when the equipment is required to go through the x-ray machine before it is brought into the institution.  Also, the threat exists that some sort of contraband could be secreted in the equipment which is brought into the institution.

16.   Finally, in order to accommodate the video taping of Hammer, the USP would have to be locked down (all movement stopped) and all areas would be secured  in order to escort the individual to the SCU.

5

**Government Exhibit 1**
**Page 5 of 6**

Pursuant to the provisions of 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of information, knowledge, and belief.

Executed on this _14th_ day of January 2010, at Terre Haute, Indiana.

_____
Hector Joyner, Chief Correctional Supervisor

6

**Government Exhibit 1
Page 6 of 6**