Westlaw.

Not Reported in F.Supp.2d, 2006 WL 59559 (S.D.N.Y.)
**(Cite as: 2006 WL 59559 (S.D.N.Y.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
UNITED STATES OF AMERICA,
v.
Kevin JACKSON, et al., Defendants.
**No. 04 CR. 801(PKC).**

Jan. 9, 2006.

*MEMORANDUM AND ORDER*

CASTEL, J.

*1 On August 5, 2004, the government filed an indictment that had been returned by the Grand Jury naming six defendants as part of a drug conspiracy. One of the overt acts alleged in the indictment was that four specifically identified defendants caused the death of one Dennis Paulk.

As of November 23, 2004, a Seventh superseding indictment had been filed and the number of defendants had grown to twelve. In addition to the death of Dennis Paulk, the indictment alleged that defendant Sheldon Fuller a/k/a David Campbell and another co-conspirator shot and killed two individuals who had been extorting members of the conspiracy.

On November 24, 2004, I raised the issue of whether certain of the defendants were eligible for the imposition of the death penalty and noted that "[e]ach death-eligible defendant may apply to the Court for the assignment to him of a second lawyer who is 'learned in the law applicable to capital cases....' 18 U.S.C. § 3005." (Docket Entry # 30) FN1

> FN1. At this juncture, the government apparently did not view the case as containing death-eligible counts. In opposition to

the motion of defendant Montaque to sever, it argued that "Montaque misfires in casting this case as involving capital charges and possible death sentence. No charge in the indictment exposes any defendant to the death penalty." (Memorandum of January 26, 2005 at 12; Docket Entry 59)

Thereafter, at a conference held on February 17, 2005, I announced that, on April 28, 2005, I would set a trial date. (*See* Minute Entry for February 17, 2005)

Passing over the extensive motion practice that has transpired in this case, on April 26, 2005 the government filed an Eleventh superseding indictment. The number of defendants had grown to thirteen and, among other things, RICO and RICO conspiracy counts were added. The identity of the two murder victims (in addition to Mr. Paulk) were alleged as was the identity of the four defendants who are alleged to have directly participated in the murders. Cooper, Fuller and Thomas were alleged to have participated in the murders of Rohan Bailey and Camila Edmonds. Defendants Brown, Jackson, King and Phillips were alleged to have participated in the murder of Dennis Paulk. Thus, seven defendants were potentially exposed to the death penalty. Since April 26, 2005, no new death-eligible counts or defendants have been added.

On April 28, I heard from the government and counsel for the defendants on the expected length of the trial which the government predicted to be from six to eight weeks. I took account of the need for trial preparation by the government and the defendants in a trial of this magnitude, the need for counsel for death-eligible defendants to retain mitigation experts and develop mitigation evidence and the need for the government carefully to consider, through the internal Department of Justice deliberative process, whether it wished to seek the death penalty. I also considered the right of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2006 WL 59559 (S.D.N.Y.)
(Cite as: 2006 WL 59559 (S.D.N.Y.))

public and the defendants, especially the non-death eligible defendants, to a speedy trial. I also considered the interest of the government in a joint conspiracy trial without the need for a severance to those defendants who insisted on their speedy trial rights. A practical consideration was the difficulty of scheduling a multi-defendant trial; with the large number of CJA appointed attorneys who have trial commitments to other judges in this and other Districts, finding a suitable trial date was no small feat. I set the trial of this action for March 6, 2006 at 10:00 a.m., then over ten months away.

*2 On April 28, at the request of the government, I set a date of August 15, 2005 for defendants' counsel to submit mitigation packages to the government in connection with the D.O.J.'s internal deliberative process to determine whether to seek the death penalty.[FN2] *See* United States Attorneys' Manual ("USAM") § 9-10.010 et seq. On June 1, I extended that date to September 23, 2005. These were mistakes on my part. The Attorney General's capital case review procedure to determine whether, in the exercise of discretion, to seek the death penalty is not part of the judicial function. The USAM "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." USAM § 1-1.000; *see also New York Times Co. v. Gonzales,* 382 F.Supp.2d 457, 484 n. 18 (S.D.N.Y.2005) ("the DOJ's death penalty protocol contained in the United States Attorneys' Manual ... consists of an internal DOJ policy directing the exercise of prosecutorial discretion that courts have almost uniformly concluded confers no enforceable rights on a criminal defendant") (citation omitted); *United States v. Feliciano,* 998 F.Supp. 166, 169 (D.Conn.1998) (collecting cases). It is unquestionably useful and important for the Attorney General to obtain the views of the front line prosecutors and defense counsel as part of that process but it is a process for the Attorney General to administer as he sees fit. My erroneous involvement, at the government's invitation, in setting deadlines for the submission of mitigation packages

led to applications by defense counsel for extensions of time to make submissions to the D.O.J. It is not hard to imagine how diligent defense counsel could subjectively believe-no matter how objectively thorough his or her own investigation-that there was yet a stone to be unturned in uncovering a complete and accurate profile of a defendant. At this stage, it was and is up to the Attorney General and his designees to assess whether they have sufficient information to determine whether to file a notice of intention to seek the death penalty under 18 U.S.C. § 3593(a). The government has represented to this Court that, after filing a notice of intent to seek the death penalty, it will consider additional information submitted by defense counsel and it reserves to itself the right to withdraw a previously filed notice. USAM § 9-10.090. For essentially this reason, on September 27, 2005, I denied the application of death eligible defendants to postpone the trial date of March 6, 2006.

> FN2. In an Order dated April 29, 2005 (Docket Entry # 99), I set forth a process to ensure that each death eligible counsel who could not afford defendant had the opportunity to have counsel appointed from the District's panel of CJA counsel designated for death eligible cases. *See* Revised Plan for Furnishing Representation Pursuant to the Criminal Justice Act at B, adopted January 7, 2005. I also set forth a procedure for any defendant to apply for a second counsel learned in the law applicable to capital cases. 18 U.S.C. § 3005.

On December 16, the government submitted its proposed jury instructions. Late in the afternoon on January 6, 2006, the government delivered a letter to Chambers seeking a sixty day extension of the trial date because it has not yet decided whether it intends to seek the death penalty. The belated nature of the request, the government says, is due to the fact that the last defense counsel did not submit a complete mitigation package to it until January 2, 2006 and the Attorney General and his designees

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 59559 (S.D.N.Y.)
**(Cite as: 2006 WL 59559 (S.D.N.Y.))**

have not completed their internal review process. [FN3]

> FN3. I note that the Attorney General appropriately reserves the right to "authorize exceptions" to the capital case review protocol. *See* USAM § 9-10.120.

**\*3** At a conference before me today, the government did not dispute that a continuance of sixty days (and no longer) was unrealistic given the need to coordinate the schedules of the twelve sets of defense counsel. I asked the government whether it would move-or join in a defense motion-to sever the non-death eligible defendants, and it did not have a position to take at today's conference. Certain of the death-eligible defendants predictably argued that the needs of all can be comfortably accommodated by severing the death-eligible defendants from those who are not, a result that would give the seven death-eligible defendants an extensive preview of the government's case at the trial of the five non-death-eligible defendants.

All applications to adjourn the trial date are denied. All applications to sever are denied without prejudice.

A postponement of the trial date, set long ago, would either require a severance of the non-death-eligible defendants or test the limits of their right to a speedy trial. The government has a legitimate interest in a joint trial. Indeed, there is a presumption in favor of a joint trial which, among other reasons, vindicates the public's interest in efficient use of jurors and judicial resources. *See United States v. Salameh,* 152 F.3d 88, 115 (2d Cir.1998) ("This preference [for joint trials] is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme.") (citations omitted), *cert. denied,* 525 U.S. 1112 (1999). Constitutional and other considerations may, of course, overcome this presumption.

Here, an adjournment for sixty days is a knowingly

unrealistic request. Counsel who are on this District's list of those eligible for appointment in death penalty cases, as well as those who have been appointed as the second so-called "learned" counsel, could not be reasonably expected to be free of other trial commitments sixty days hence. Unless I were prepared to strip the defendants of their existing counsel with whom they have now developed a rapport and who, presumably, have diligently prepared for the March 6 trial, I estimate that a trial date in the neighborhood of eight to twelve months hence would be necessary in order to accommodate all schedules.

I am mindful of the teachings of *Williams v. Taylor,* 529 U.S. 362 (2000) and *Wiggins v. Smith,* 539 U.S. 510 (2003), interpreting the constitutional right to effective representation of counsel in the context of the investigation and presentation of mitigation evidence in a capital case. I have considered the American Bar Association, *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (revised ed. February 2003), 31 Hofstra L.Rev. 913 (2003). Nothing that has been presented to me leads me to doubt that each defendant would receive effective representation comfortably in excess of the constitutional standard. Months ago-principally in June and July, 2005, counsel retained mitigation experts in this case. I have no reason to doubt the thoroughness of their work.

**\*4** If the defendants' and the public's right to a speedy trial is to work in harmony with the government's right to seek the death penalty in the appropriate case and its right to seek a joint trial of members of a single criminal enterprise, ten months advance notice of a trial date should be adequate, absent extraordinary circumstances that I do not find to be present here. I have considered all other arguments of the defendants and the government and I find them to be unpersuasive.

If, between now and the trial date, the government elects to file a section 3593(a) notice (as it indicated in its January 6 letter it may do), I will enter-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 59559 (S.D.N.Y.)
**(Cite as: 2006 WL 59559 (S.D.N.Y.))**

tain an application by a defendant to postpone the trial, sever the defendant from the trial or strike the section 3593(a) notice in whole or in part upon a showing by the defendant that the statutory aggravating factors under 21 U.S.C. § 848 or the non-statutory aggravating factors could not reasonably have been anticipated. But, at present, this is not a death penalty case because no section 3593(a) notice has been filed, and I will direct the Clerk to issue the quantity of juror summonses necessary in a non-death penalty, multi-defendant criminal trial.

On April 28, 2005, I directed the government to disclose its Rule 404(b) evidence sixty days prior to the March 6 trial, and I expect compliance with that order. Today, the government agreed to make its 3500 material available on February 20, 2006. The next conference will be held on February 16, 2006 at 10:00 a.m.

SO ORDERED.

S.D.N.Y.,2006.
U.S. v. Jackson
Not Reported in F.Supp.2d, 2006 WL 59559 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.