UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
| | : | |
| v. | : | Honorable Joel H. Slomsky |
| | : | |
| DAVID PAUL HAMMER, | : | Capital Case |
| | : | |
| Defendant | : | |

**DEFENDANT'S MOTION TO PRECLUDE THE GOVERNMENT FROM PROCEEDING WITH A CAPITAL PROSECUTION BECAUSE IT'S DECISION NOT TO DE-AUTHORIZE THIS CASE, VIOLATED IT'S STANDARDS FOR CAPITAL PROSECUTIONS IN VIOLATION OF THE FIFTH, SIXTH AND EIGHTH AMENDMENTS**

David Paul Hammer, by his counsel, pursuant to the Fifth, Sixth, and Eighth Amendments to the United States Constitution, respectfully requests that this Court preclude the Government from capitally prosecuting Mr. Hammer and, in support thereof, states the following.

**A.     Background.**

1.     This matter is before the Court for capital resentencing following the partial grant of § 2255 relief.  United States v. David Paul Hammer, 404 F. Supp. 2d 676, 800 (M.D. Pa. 2005).

2.      Following the above decision, the Department of Justice conducted a review to determine whether or not it would elect to continue to pursue a capital prosecution or conversely would de-authorize the capital prosecution.    Defense counsel provided submissions to both the United States Attorney for the Middle District and the Department of Justice Capital Crimes Unit.  On January 7, 2011, the Government announced it's decision to continue this matter as a capital prosecution when it filed a Motion for Penalty Phase Proceeding.  Doc. 1300.

3.      The matter was reassigned to the Honorable Joel H. Slomsky.  After a status conference, the Court issued a scheduling order directing that motions be filed by May 2, 2011.  Judge Slomsky subsequently issued a revised Order granting an extension that all motions be filed by May 19, 2011.

**B.      The Government Failed to Follow It's Own Policies and Procedures.**

4.      The Department of Justice ("DOJ") promulgated specific protocols for determining whether or not to capitally prosecute an accused.  Those protocols are described in the United States Attorneys' Manual.  <u>See</u> United States Attorneys' Manual, Death Penalty Protocol. § 9-10.010 <u>et seq</u>. (hereafter Protocol) [1]

---

[1]These protocols are published on the Department of Justice's website at http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/10mcrm.htm#9 -10.010.

5.    The Protocol provides that "[e]ach [capital] decision must be based upon the facts and law applicable to the case and be set within a framework of consistent and even-handed national application of Federal capital sentencing laws." Protocol, § 9-10.030.  It further provides that "[a]rbitrary or impermissible factors . . . will not inform any stage of the decision-making process." Id.

6.    Paramount in the consideration under the Protocol is the opinion of the victim's family.  In a subsection entitled "Consultation with the Family of the Victim," (separate and distinct from the general section articulating the standards for determining whether or not to capitally prosecute), the Protocol requires that the victim's family be consulted "concerning the decision on whether to seek the death penalty." Protocol § 9-10.070.  That section further requires that '[t]his consultation should occur in addition to notifying victims of their rights under 18 U.S.C. § 3771." Id.

7.    In their submission to the DOJ in support of de-authorizing Mr. Hammer's case, counsel provided the United States Attorney and the DOJ with a post-section 2255 statement of the victim's family clearly indicating that they did not want the case to continue.  See Exhibit A.  Once the DOJ filed notice of its decision to proceed capitally – contrary to the desires of the victim's family – it became apparent to counsel that the DOJ had no contact with the victim's family while it was

deciding whether to continue this matter as a capital case.  Nor did the DOJ notify the family that, despite their clearly stated desire, the Government intended to pursue the death penalty against Mr. Hammer.[2]  The Government's failure to seek the view of the family and to therefore take them into account, is directly contrary to its own standards and violated Mr. Hammer's federal due process and equal protection rights. See Protocol § 9-10.070; see also § 9-10.170  (indicating that "[t]he victim's family must be notified of all final decisions regarding the death penalty"), and accompanying *Brief in Support*.

8.      Similarly, the Protocol requires consideration of national (and local) consistency in authorizing capital prosecutions.  Protocol § 9-10.130 (B).

9.      This prosecution was among the first cases considered for capital prosecution under the Anti-Terrorism and Effective Death Penalty Act of 1996.  The death verdict was among the first returned.  Nationally, and within the Middle District of Pennsylvania, it has been rare for a prisoner-on-prisoner killing to result in a capital prosecution or death verdict.

---

[2]Counsel's contact with the victim's family was conducted through a suitably trained victim outreach specialist.  That person has had contact with the family both before and after the DOJ's decision to continue the case as a capital prosecution. Counsel's representations herein are based upon their contact with the victim outreach specialist.  Should the Government contest any of the facts underlying this aspect of the motion, or any other, Defendant requests that the Court conduct a pre-trial hearing to make findings necessary to the resolution of this motion.

10.    Counsel have identified 86 prison murder cases in which the Government decided not to seek the death penalty at trial. See Exhibit B. The available data on these cases demonstrates that a number of cases were not selected for capital prosecution, even though the circumstances of a number of those cases involved significantly greater aggravation. Additionally, there have been capitally authorized cases in which more aggravated cases resulted in life verdicts.

11.    Unlike a number of non-capital prison-killing cases, Mr. Hammer had never before taken a life. This fact significantly distinguishes him from those cases where death has been sought.

12.    In the California RICO prosecution against members of the Aryan Brotherhood (Exhibit B), which involved thirteen murdered prisoners, the four defendants who were capitally prosecuted all received life sentences. These defendants were Barry Mills, head of the Aryan Brotherhood, T.D. Bingham, Mills' right-hand man, Wayne Bridgewater and Mike Houston. Bridgewater and Houston were identified as having been directly involved in the brutal killing of two African-American prisoners at USP-Lewisburg.

13.    Additionally, in the case of William and Rudy Sablon, who also engaged in a particularly brutal killing of their cellmate, the jury reached a life verdict. In the Southern District of Illinois, two alleged white supremacist gang members (McIntosh

and Knorr) stabbed an African-American inmate to death on the orders of a third individual, Sahakin.  The months-long trial resulted in a hung jury during the guilt phase.   Rather than retry these three individuals, the capital prosecution was withdrawn and the case was pursued as part of the California RICO prosecution. Before the trial went forward in California, the Government withdrew its notice of intent to seek the death penalty.

14.   In the O'Driscoll case in the Middle District of Pennsylvania, the defendant was sentenced to life after a two-month jury trial, although he had a prior murder and multiple armed robberies.  The facts were far more gruesome than those in Mr. Hammer's case:  O'Driscoll taped a knife to each hand, pounced on the victim while he slept and inflicted multiple stab wounds.  The victim fought his way out of the cell and sought staff assistance.  O'Driscoll pursued and continued to stab him. When the victim sank to the floor, O'Driscoll sat on top of him and continued to stab him, as a half dozen guards tried to stop the attack.

15.   Since 1996 there have been six completed prosecutions of prisoner deaths in the Middle District and one is pending.  In two of the six completed cases, including Mr. Hammer's, there were two authorizations.  The pending prosecution has also been authorized as to two co-defendants.  Thus, of the seven prisoner deaths which have been prosecuted in the Middle District, there have been authorizations in

three of the seven. During this same time-frame, there have been three potential civilian defendant death penalty cases and none of them have been capitally prosecuted.

16.    Under § 9-10.130 of the Protocol, the government is required to avoid geographically based disparate treatment. An almost 50% authorization rate for prisoner cases, coupled with a zero authorization rate for civilian cases, demonstrates that prisoner-defendants in the Middle District of Pennsylvania are receiving disparate treatment when compared with other parts of the United States. And, within that group, Mr. Hammer's case is not among the more aggravated.

17.    When cases not involving prison murders are considered, it becomes even more clear that Mr. Hammer's capital prosecution is inconsistent with national consistency and fairness standards. For example, in United States v. Diaz and Fort, CR 05-0167 (N.D. CA.), each defendant was permitted to enter a guilty plea in exchange for a forty-year sentence although the indictment involved seven gang-related murders, including the murder of an innocent child.

18.    United States v. Rudolph, 00-CR-422 (N.D. Ala.), involved multiple killings, including that of a police officer, and bombings. A plea agreement for a life sentence was accepted by the Government. In United States v. Darryl Johnson, 92-CR-159 (W.D. NY), the defendant was allowed to enter a plea for a life sentence in

a gang case involving multiple killings.  See also United States v. Wayne Perry, 92-474 (D.D.C) (guilty plea to five homicides, life sentence); United States v. McCauley, 94-121 (D.D.C.) (life plea, victim was a law enforcement officer); United States v. Rausini, 95-0318 (N.D. CA) (plea and forty-year sentence for two murders for hire of government witnesses).

19.    As of December 23, 2009, of the 429 capital cases that were ultimately "resolved," there were withdrawn Notices in 182 cases.  See Exhibit C (Affidavit of Kevin McNally, Esquire).   Of these 182 cases, 120 involved approved plea agreements, including seven cases de-authorized by Attorney General Holder.[3] Notices pertaining to United States v. Michael Dennis Williams and Antoine Johnson, 05-920 (E.D. CA) were withdrawn without a plea agreement.  Id.

20.    Thus, a review of the applicable and comparable cases demonstrates that the Government failed to consider and apply national and local consistency standards in reaching its determination to continue to capitally prosecute Mr. Hammer in direct violation of its own Protocols and Mr. Hammer's federal due process and equal protection rights.

---

[3]The seven cases are United States v. Jorge Amador, 8:05-CR-00393 (D. MD); Donald Scott Taylor, 07-1244 (D. NM); Michael Bacote, 1:07-CR-142 (E.D. Texas); Donnell Young, 3:09-0038 (M.D. TN); Emile Fort, 05-00167 (N.D. CA); Antoine Baker, 4:06-CR-00041 (E.D. AR); and Valeri Friend, 2:05-00107 (S.D. WV).

21. Whenever the Government sets up specific processes and procedures for reaching determinations, like a determination to federally prosecute or capitally prosecute an accused, the process and procedure followed by the Government must conform with due process. In addition, both due process and equal protection preclude the Government from reaching determinations on the basis of any biases.

22. As demonstrated above, the Government failed to follow its own standards in reaching its determination to capitally prosecute Mr. Hammer in violation of Mr. Hammer' federal due process rights. In addition, the Government's capital prosecution of Mr. Hammer is contrary to national and local consistency standards in violation of Mr. Hammer's federal due process and equal protection rights. Accordingly, the Government's election to capitally prosecute Mr. Hammer violates the Fifth, Sixth and Eighth Amendments.

WHEREFORE, for the reasons set forth above and in the attached Brief in Support, Mr. Hammer, through counsel, respectfully requests that this Court grant his motion to preclude the capital prosecution. Alternatively, Mr. Hammer requests that the Court order evidentiary hearings on any disputed material facts.

/s/    Ronald C. Travis

Ronald C. Travis
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
570-323-8711 (telephone)
570-323-4192 (facsimile)
rtravis@riederstravis.com


/s/    Anne Saunders

Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
Anne_Saunders@fd.org


Dated:      May 19, 2011
            Philadelphia, PA

/s/    Michael Wiseman

Michael Wiseman
James J. McHugh, Jr.
James Moreno
Federal Community Defender
Eastern District Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA 19106
215-928-1100 (telephone)
215-928-0826 (facsimile)
Michael_Wiseman@fd.org
James_McHugh@fd.org
James_Moreno@fd.org

## Certificate of Service

I, Michael Wiseman, hereby certify that the foregoing was served upon counsel for the Government concurrently with its filing, by filing the same with this Court's ECF system and by email.

/s/    Michael Wiseman

Michael Wiseman