UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
| v. | : | Honorable Joel H. Slomsky |
| DAVID PAUL HAMMER, | : | Capital Case |
| Defendant | : | |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO
BAR CAPITAL PROSECUTION BECAUSE THE GOVERNMENT
FAILED TO INDICT ON EITHER THE STATUTORY INTENT
FACTORS OR STATUTORY AGGRAVATING FACTORS**

David Paul Hammer, by his counsel, pursuant to the Fifth, Sixth, and Eighth

Amendments to the United States Constitution, respectfully submits his *Brief in*

*Support of Motion to Bar Capital Prosecution Because the Government Failed to*

*Indict On Either the Statutory Intent Factors Or Statutory Aggravating Factors*.

**A.    Background.**

When it obtained its indictment against Defendant, the Government failed to

present either the *mens rea* eligibility factor or any statutory aggravating factors to

the grand jury.  Instead, the Government presented two murder counts, one of which

was subsequently dismissed by the Court.  Although the Government did ultimately

1

file its "Notice of Intent to Seek the Death Penalty," it did not obtain a superceding indictment prior to commencement of Mr. Hammer's trial. After Mr. Hammer's death sentence was vacated, the Government filed a Motion for Penalty Phase Proceeding,

In the absence of a grand jury indictment with respect to the *mens rea* (intent) or statutory aggravating factors, permitting this case to proceed capitally would violate the Fifth Amendment.

> **B.    The Government is Precluded from Proceeding with  Capital Resentencing Because There Was No Grand Jury Determination of the *Mens Rea* Eligibility Factors or Statutory Aggravating Circumstances in Violation of the Fifth Amendment.**

The Indictment Clause of the Fifth Amendment provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury….

The grand jury has long been considered a shield against government arbitrariness:

> Historically, this body has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or

other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.

Wood v. Georgia, 370 U.S. 375, 390 (1962); see also United States v. Dionisio, 410 U.S. 1, 17 (1973) (noting the "historic role" of the grand jury "as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor"). For these reasons, the power of the grand jury extends beyond merely determining whether or not there exists probable cause to believe the accused committed a crime. Instead,

> In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense – all on the basis of the same facts. Moreover, "[t]he grand jury is not bound to indict in every case where a conviction can be obtained." United States v. Ciambrone, 601 F.2d 616, 629 (CA2 1979) (Friendly, J., dissenting).

Vasquez v. Hillary, 474 U.S. 254, 263 (1986).

In light of the historical importance of the Grand Jury and its attending powers, the Supreme Court held more than a century ago that once "an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." Stirone v. United States, 361 U.S. 212, 216 (1960) (citing Ex parte Bain,

3

121 U.S. 1, 7 (1887); see also id. at 218 ("The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge"). Although subsequent precedent has recognized that an indictment with technical defects may survive constitutional scrutiny,[1] the substantive requirement that the indictment include the elements of the offenses intended to be charged remains. See United States v. Cotton, 535 U.S. 625, 631 (2002) (reaffirming "the proposition that 'an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form'" (citing Russell v. United States, 369 U.S. 749, 770 (1962))).

Similarly, the Government must present the *mens rea* eligibility requirement and statutory aggravating factors it intends to pursue at trial to the grand jury in order for a prosecution to proceed as a capital case. In Jones v. United States, 526 U.S. 227, 243 n.6 (1999), the Court found that both the Fifth Amendment due process guarantee and the notice and jury trial guarantees of the Sixth Amendment require that "any fact ... that increases the maximum penalty for a crime must be charged in an indictment." See also Apprendi v. New Jersey, 530 U.S. 466, 476 (2000) (same);

---

[1]See Hagner v. United States, 285 U.S. 427, 431 (1932); United States v. Willaman, 437 F. 3d 354, 360-61 (3d Cir. 2006) (finding grand jury foreperson's failure to sign the indictment a "technical deficiency" that did not require relief).

Cotton, 535 U.S. at 627 (same).

In Ring v. Arizona, 536 U.S. 584, 609 (2002), the Court held that factors which make a defendant eligible for the death penalty are "the functional equivalent of an element of a greater offense." See also Sattazahn v. Pennsylvania, 537 U.S. 101, 111, 112 (2003) ("murder plus one or more aggravating circumstances" is a distinct "offense" separate from "'murder' simpliciter").

Accordingly, the Government violates the Indictment Clause by seeking death after failing to present both the *mens rea* eligibility factors and the statutory aggravating factors to the grand jury. Indeed, the Government has conceded as much in similar cases. See United States v. Robinson, 367 F.3d 278, 283 (5th Cir. 2004) (noting the Government's concession that the indictment was "constitutionally deficient" because it failed to allege the "statutory aggravating factors that [made] Robinson eligible for the death penalty").

The Government cannot now cure this defect because jeopardy has already attached,[2] and to now advance charges that were not properly presented before – and

_____

[2] Jeopardy attached when the jury was empaneled and sworn in at Mr Hammer's 1998 trial. United States v. Martin Linen Supply Co., 430 U.S. 564, 570 (1977). At that same time, Mr. Hammer faced potential jeopardy of death for the distinct but uncharged greater offense of murder simpliciter plus death-eligibility element and statutory aggravating circumstances. However, when the Government went to trial without presenting these factors in the indictment, it terminated its right to proceed as though death-eligibility and aggravating factors had been presented in the

as to which jeopardy has therefore terminated – would violate Petitioner's Fifth Amendment Double Jeopardy protections.

Mr. Hammer was denied his Fifth Amendment right to a grand jury determination of whether or not probable cause existed with regard to the greater offense of capital murder. Because the constitutional error went to the core of the Grand Jury *requirement* itself (as opposed to constituting merely an error in the grand jury *process*), it is structural error and prejudice is presumed. United States v. Gonzales-Lopez, 548 U.S. 140, 148-49 (2006); see also Bank of Nova Scotia v. United States, 487 U.S. 250, 257 (1988) (noting that where (as here) "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair," prejudice is presumed and dismissal is required).

Indeed, any attempt to apply a harmless error analysis would require "unguided speculation" about how a "reasonable grand juror" may have voted based on evidence the grand juror never heard. See Bank of Nova Scotia, 487 U.S. at 257 (concluding that structural error presumes prejudice and "any inquiry into harmless error would have required unguided speculation"); Gonzales-Lopez, 548 U.S. at 148 (structural

---

indictment. In a procedurally identical case, where the sentence was vacated and the matter remanded for a new penalty hearing, the Government conceded that a superceding indictment was barred by double jeopardy. See United States v. Davis, 380 F.3d 821, 825 (5th Cir. 2004) (noting that the Government conceded that jeopardy had attached and, as a result, the Government was "precluded from re-indicting").

errors "'defy analysis by "harmless-error" standards' because they 'affec[t] the framework within which the trial proceeds,' and are not 'simply an error in the trial process itself'" (quoting <u>Arizona v. Fulminate</u>, 499 U.S. 279, 310-11 (1991))).

A harmless error analysis for trial errors is appropriate because the court can review both the error itself and the proceedings in which the error occurred to determine the impact of that error. The same cannot be said of constitutional error arising from the failure to include elements of the offense in an indictment. Such an error can never be reviewed in light of the proceedings in which the error occurred because those proceedings are cloaked in secrecy. And reviewing trial evidence to determine what a rational grand jury would have done ignores the very powers and discretion afforded the Grand Jury itself. <u>See</u> <u>Vasquez v. Hillary</u>, 474 U.S. at 263 ("even if a grand jury's determination of probable cause is confirmed in hindsight by a conviction . . . , that confirmation in no way suggests that the [constitutional error] did not impermissibly infect the framing of the indictment and, consequently, the nature or very existence of the proceedings to come").[3]

———————————

[3]Moreover, any attempt to conduct an analysis based on the prior sentencing is similarly flawed and speculative, particularly where, as in this case, the District Court vacated the death sentence because the Government failed to disclose exculpatory evidence that directly impacted the reliability of the Government's intent and aggravating factors. Thus, whatever credit that would normally be given to the jury's findings on the intent and aggravating factors do not exist here. For this reason as well, this Court should reject any attempt to apply a post-hoc harmless error

The Third Circuit has not yet addressed this precise issue.  Counsel recognizes that some other Circuits have applied a harmless error analysis.  See United States v. Allen, 406 F. 3d 940, 945 (8th Cir. 2005); United States v. Robinson, 367 F.3d 278, 286 (5th Cir. 2004); United States v. Davis, 380 F.3d 821, 829 (5th Cir. 2004); United States v. Higgs, 353 F.3d 281, 304 (4th Cir. 2003).  Those cases, however are factually distinguishable and/or legally flawed.  For example, three of these cases address the issue in the framework of a post-conviction appeal, after the sentencing jury had considered charges pursued in violation of the Indictment Clause.  See United States v. Allen, 406 F. 3d 940, 945 (8th Cir. 2005); United States v. Robinson, 367 F.3d 278, 286 (5th Cir. 2004); United States v. Higgs, 353 F.3d 281, 304 (4th Cir. 2003).  Here, Defendant is raising the defects in the indictment pre-resentencing, in a posture that can prevent that violation from occurring in the first place.  Moreover, as the Supreme Court precedents described above demonstrate, the application of harmless error analysis is legally erroneous because of the structural nature of the constitutional error.  The error here was structural because it involved a denial of the right itself,  as opposed to an error in the process.

Further, the Third Circuit has found presumptive prejudice with respect to a similar issue –  the constructive amendment of an indictment.  See United States v.

analysis.

McKee, 506 F.3d 225, 229 (3d Cir. 2007) (the Circuit's "plain error analysis [on appeal] presumes prejudice" when a trial court constructively amends an indictment through jury instructions); United States v. Syme, 267 F. 3d 131, 149 (3d Cir. 2002) (constructive amendment of an indictment constitutes a *per se* Fifth Amendment violation); United States v. Castro, 776 F. 2d 1118, 1121-22 (3d Cir. 1985). As the Court noted:

> We have held that a constructive amendment is an exceptional category of error because it violates a basic right of criminal defendants, the grand jury guarantee of the Fifth Amendment.

McKee, 506 F. 3d at 229. The Third Circuit's analysis is consistent with the Supreme Court precedent described above. For this reason as well, this Court should reject the theories of the other Circuits and find that the defective indictment in this case constitutes a *per se* Fifth Amendment violation requiring dismissal of the capital prosecution.

### C.    Conclusion

Some things in the law are elemental. The presentation of charges to a grand jury in an indictment is one of them. The prosecution must present the charges or the jury cannot indict. The Government failed to seek an indictment on the elements of the greater offense of capital murder against Mr. Hammer. Because it failed to present these charges to the grand jury, it never capitally indicted him. The

9

Government may not change the indictment mid-trial without violating Mr. Hammer's Fifth Amendment Double Jeopardy rights. And to permit the Government to proceed capitally in the absence of a capital indictment violates Mr. Hammer's Fifth Amendment rights under the Indictment Clause. Dismissal of the capital prosecution is the only appropriate remedy.

/s/    Ronald C. Travis

Ronald C. Travis
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
570-323-8711 (telephone)
570-323-4192 (facsimile)
rtravis@riederstravis.com


/s/    Anne Saunders

Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
Anne_Saunders@fd.org


Dated:        May 19, 2011
                    Philadelphia, PA

/s/    Michael Wiseman

Michael Wiseman
James J. McHugh, Jr.
James Moreno
Federal Community Defender
Eastern District Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA 19106
215-928-1100 (telephone)
215-928-0826 (facsimile)
Michael_Wiseman@fd.org
James_McHugh@fd.org
James_Moreno@fd.org

## Certificate of Service

I, Michael Wiseman, hereby certify that the foregoing was served upon counsel for the Government concurrently with its filing, by filing the same with this Court's ECF system and by email.

/s/    Michael Wiseman

Michael Wiseman