UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
| v. | : | Honorable Joel H. Slomsky |
| DAVID PAUL HAMMER, | : | Capital Case |
| Defendant | : | |

**DEFENDANT'S MOTION TO PRECLUDE THE CAPITAL PROSECUTION OR, IN THE ALTERNATIVE, DISMISS THE INTENT FACTORS AND/OR SUBSTANTIAL PLANNING AND PREMEDITATION AGGRAVATING FACTOR BECAUSE THE GOVERNMENT'S DELIBERATE FAILURE TO DISCLOSE EXCULPATORY MATERIALS DIRECTLY DISPUTING THE GOVERNMENT'S CASE VIOLATED MR. HAMMER'S FIFTH, SIXTH AND EIGHTH AMENDMENT RIGHTS[1]**

Defendant, David Paul Hammer, through counsel, moves to bar the capital prosecution or, in the alternative, dismiss the intent factors and substantial planning and premeditation statutory aggravating factor and, in support states the following.

**A.    Background.**

1.    On September 18, 1996, the Government filed its indictment against Mr. Hammer alleging two counts of murder arising from the death of Andrew Marti. Doc.

_____

[1]All emphasis is supplied unless otherwise noted. The trial and post-conviction record is cited as Notes of Testimony (NT) followed by the date of the proceeding and page number.

# 1.   Prior to the commencement of Mr. Hammer's 1998 trial, trial counsel, Mr. Travis and Mr. Ruhnke, sought from the Government all FBI 302 statements and all material required to be disclosed pursuant to Brady v. Maryland, 373 U.S. 83 (1963). See United States v. Hammer, 404 F. Supp.2d 676, 785 (M.D. Pa. 2006) (Finding of Fact (hereinafter "*FF*") No. 1629)).

2.   Trial began on June 3, 1998.  On June 22, 1998, Mr. Hammer entered a guilty plea to Count 1 of the indictment.  NT 6/22/98, 120-21.[2]  Following a penalty hearing, the jury unanimously found the mens rea required for the eligibility phase and two statutory aggravating factors: (1) that Mr. Hammer was previously convicted of two or more state or federal offenses punishable by a term of more than one year involving use of a firearm; and, (2) that he committed the murder after substantial planning and premeditation.  After weighing mitigating and aggravating factors, the jury returned a verdict of death.  Doc. 572.

3.   The Government's penalty phase theory posited that Mr. Hammer "lulled" Mr. Marti into agreeing to a "hostage ruse," in order to facilitate the murder. During his summation, the prosecutor relied heavily on the use of ropes braided from sheets to tie Mr. Marti up as part of the "hostage ruse," as support for both the intent

---

[2]"NT" refers to the Notes of Testimony of the cited proceedings.

factors[3] and the substantial planning and premeditation aggravating factor (18 U.S.C. 3592(c)(9). See e.g. NT 7/21/98, 108 (prosecutor argued that the braided ropes were indicia of the gateway intent factors). The prosecutor argued that the jury should find the substantial planning and premeditation aggravating factor because of the significant amount of time it would have taken Mr. Hammer to braid the ropes. NT, 7/21/98, 89. The prosecutor contended that the jury had "to factor in what time it took to make heavy duty restraints to keep a six foot four, two hundred pound man in place." Id. The prosecutor also argued that tying Mr. Marti to the bed must have been part of the purported "hostage ruse" because "how many people would willingly want to be tied down by another inmate who they've only met for, what less than four

---

[3]The Government's 1997 *Notice of Intent to Seek the Death Penalty* noticed three intent factors:

1.   Intentional Killing. The Defendant intentionally killed Andrew Marti. 18 U.S.C. § 3591(a) (2) (A);

2.   Intentional Infliction of Serious Bodily Injury. The Defendant intentionally inflicted serious bodily injury that resulted in the death of Andrew Marti. 18 U.S.C. § 3591 (a) (2) (B); and

3.   Intentional Acts to Take Life or Use Lethal Force. The Defendant intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Andrew Marti died as a direct result of the act. 18 U.S.C. § 3591(a) (2) (C).

or five days." Id. at 85. The prosecutor contended that tying Mr. Marti up was "essential preplanning" warranting the finding of the aggravating factor. Id. at 84.

4. The Government also relied heavily on certain aspects of Mr. Hammer's statement to the FBI indicating that Mr. Hammer took various steps to "lull" Mr. Marti into agreeing to the "hostage ruse." The prosecutor highlighted during closing argument that Mr. Hammer purportedly wrote to another inmate, Martin Guererro, defending Mr. Marti and asking Mr. Guererro not to believe the rumors about him. Once again, the Government relied on the time and process it took to craft and draft that letter as support for the intent factor and substantial planning and premeditation aggravating factor. See e.g., NT 7/21/98, 87-88 (arguing that the offer to send the letter to Guererro was part of a "lulling system" to entice Mr. Marti into agreeing to the "hostage ruse").

5. During the § 2255 proceedings, counsel again requested production of all 302 reports and Brady material.[4] Judge Muir ruled:

> The final item in dispute is a request by Hammer that the government disclose "all previously undisclosed 302 statements, interview summaries and BOP witness reports, summaries or related documents." The Government prior to trial was required to provide Hammer with any exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).

---

[4]In an October 29, 2004 letter the Government opposed Mr. Hammer's request for disclosure of previously undisclosed FBI 302 statements, noting that "[T]here is less need for wholesale disclosure now than there was in 1998."

\* \* \*

There is no indication that the Government has not complied with the requirements of *Brady* or its progeny.

\* \* \*

We see no reason to order the Government to do something which it was and is required to do under the law when there is nothing other than pure speculation and unsupported allegations by Hammer that the Government failed to comply with *Brady* and the Jenks Act.

Hammer, 404 F. Supp.2d at 781.  The Court also noted that "[t]he Government has [a] continuing duty to disclose Brady material." Id.

6.      An evidentiary hearing was conducted from July 5, 2005 until September 29, 2005.

7.      On September 21, 2005 – the twenty-eighth day of the thirty-one day hearing – the Government disclosed thirty-three FBI 302 statements that had not been disclosed to Mr. Hammer at the time of his trial.  The disclosure arose when the lead investigative FBI agent assigned to this case, Special Agent Anthony Malocu, testified that he had interviewed a number of prisoner/witnesses concerning their knowledge of both Mr. Hammer's sexual practices as well as his background and mental health.  Agent Malocu testified that he had asked these witnesses about Mr. Hammer's sexual practices because he knew, before trial, that "a defense of accidental death due to autoerotic sexual activity was highly likely." Hammer, 404

F. Supp.2d at 781; NT 6/11/98, 106.  He also "probably shared [t]his opinion with the prosecuting attorney.  Id., 404 F. Supp.2d at 781.

8.      Even after Special Agent Malocu testified about his interviews with prison inmates, the Government resisted full disclosure of the 302s.  See NT 9/21/05, 20.[5]  Nevertheless, Judge Muir directed that the Government provide all of the 302s and, the next day, the Government turned over approximately thirty-three previously undisclosed witness statements.  See United States v. David Paul Hammer, 404 F. Supp. 2d at 782 (*FF* 1594: "As a result of a Court order during the evidentiary hearing, Agent Malocu turned over a number of 302's to Mr. Hammer's counsel that had not previously been disclosed to counsel at the time of trial or during appellate and Section 2255 proceedings").

9.      Included in that post-conviction disclosure were the 302s of Royce Lee Fowler, Martin Guererro, and Gaylon Don Ball (attached herein as Exhibit A).  See Hammer, 404 F. Supp. 2d at 783 (Fowler); id. at 784 (Guererro); id. at 784-85 (Ball).  Agent Malocu had turned over each of these 302s to the Government prosecutor before Mr. Hammer's trial.  Hammer, 404 F. Supp. 2d at 784 (*FF* 1612; Fowler); id.

---

[5]Apparently, it was the Government's position that it was only obliged to disclose the 302s of those witnesses that Special Agent Malocu could actually recall by name, regardless of his testimony about the contents of the interviews with other inmates.  NT 9/21/05, 20.

(*FF* 1620; Guererro); id. 404 F. Supp. 2d at 785 (*FF* 1626; Ball).

10.    The undisclosed statements contained information regarding Mr. Hammer's homosexual activities that included a history of sexual bondage and use of braided ropes for consensual sex, including that some already-braided ropes had been given to Mr. Hammer, thus undercutting the Government's intent and aggravating factors.  Mr. Fowler described prior statements Mr. Hammer had made, (at a time well-before he was facing a capital prosecution), that Mr. Hammer had been sexually abused by his father.  Martin Guererro told the FBI that he had known Mr. Hammer during a prior incarceration in USP Leavenworth, but he had not received any letter from Mr. Hammer and that he did not know Mr. Marti at all, nor did he have any involvement in any threats against Mr. Marti.  Mr. Ball told the FBI that he believed that Mr. Hammer and Mr. Marti were having sex.

11.    Judge Muir held that these 302s should have been disclosed to Mr. Hammer prior to the 1998 trial pursuant to the Government's Brady obligations. Hammer, 404 F. Supp.2d at 783-785.  The Court granted Mr. Hammer relief from his death sentence, in part, because:  the suppressed 302s were relevant and material to the substantial planning and premeditation aggravating factor; they should have been disclosed to trial defense counsel; and, the Government's failure to disclose these materials violated the Fifth Amendment.  Hammer, 404 F. Supp.2d at 789 ("[t]he

Court finds, that these statements were material, relevant and critical to counter the Government's argument concerning substantial planning and premeditation during the penalty phase of this case").

12.    The Court found that the Government took full advantage of its suppression, urging the jury to find the substantial planning and premeditation aggravating factor, in part, due to the use of braided ropes and the alleged "ruse," even though the suppressed 302 reports directly contradicted these arguments:

> The Government in this case failed to disclose evidence from third parties regarding Mr. Hammer's history of engaging in sexual bondage, including evidence that in the past he had braided sheets into ropes to be used in consensual aberrant sexual activity.
>
> With respect to the aggravating circumstance of substantial planning and premeditation, Mr. Hammer's history of sexual bondage became relevant when the prosecutor during his penalty-phase opening statement emphasized the braiding of the sheets into ropes. See Finding of Fact 1637. Also, the prosecutor during his closing argument contended that the braiding of the sheets into ropes was evidence of substantial planning and premeditation. The prosecutor stated "you have to factor in what time it took to make heavy duty restraints to keep a six foot four, two hundred pound man in place." Doc. 670, Transcript, Vol. 27, July 21, 1998, page 89. The prosecutor also argued that the tying down of Mr. Marti was part of Mr. Hammer's plan to prevent Mr. Marti from reaching the duress button in Cell 103. Id. at 84. The Government also argued that the hostage ruse was essential to the plan because "how many people would willingly want to be tied down by another inmate who they've only met for, what less than four or five days." Id. at 85. The prosecutor argued that the tying was "essential preplanning" warranting the death penalty. Id. at 84

Hammer, 404 F. Supp. 2d at 798.

13.     Judge Muir also found that the suppressed Guerrero 302 statement would have allowed Mr. Hammer to confront the Government's argument that he had engaged in a "ruse" to lure Mr. Marti to move into his cell in order to kill him:

> The testimony of Martin Guerrero [whose 302 was also suppressed] would have bolstered Mr. Hammer's position that the hostage scenario was untrue.  Mr. Hammer when interviewed by FBI Special Agent Thompson stated that Mr. Marti was viewed by other inmates as an informant and that he had sent a letter to Martin Guerrero in which he informed Mr. Guerrero that he knew Mr. Marti, that he did not believe the rumors about Mr. Marti and that Mr. Guerrero should give Mr. Marti "a chance" and "to spread the word and do it as a personal favor for [Mr. Hammer]."  An FBI Agent interviewed Mr. Guerrero at the United States Penitentiary, Leavenworth, Kansas, on August 27, 1996.  The 302 statement of that interview was not disclosed to trial counsel.  During that interview Mr. Guerrero told the FBI Agent that "he never received any letter from Hammer or Andrew Hunt Marti" and "he had never heard of inmate Andrew Hunt Marti."

> The prosecutor during his closing argument stated as follows:

>> Mr. Hammer was trading on his reputation for hostage taking.  That's how he got Andrew Marti into the position that ended up killing Andrew Marti. That wasn't it entirely, though.... Mr Marti was trying to solve his gang problems, which is why he would have or asked to have sent a letter by Mr. Hammer claiming to be some shot caller in his own right, sending a letter to Martine, whoever that fellow was, trying to tell Mr. Marti's associates that Mr. Marti is a stand-up con.  So you've got a whole *lulling system put into effect* by David Paul Hammer, *letters,* money, orders, radios, you name it ....

> Doc. 670, Transcript, Volume 27, July 21, 1998, pages 87-88.  The letter sent to Mr. Guerrero was allegedly part of Mr. Hammer's scheme to get Mr. Marti to agree to the hostage ruse.

Hammer, 404 F. Supp.2d at 796.[6]

14.    Judge Muir concluded that the Government's intentional suppression of the Brady material also impacted Mr. Hammer's use of his expert witnesses and his ability to effectively cross examine the Government's experts.  Hammer, 404 F. Supp.2d at 790 (Court finds "[t]hat the undisclosed 302 statements at issue would have been relevant and material information to provide to Dr. Sadoff and to use in the cross examination of Dr. Wolfson and other Government witnesses").

15.    Finally, Judge Muir found that Government's intentional suppression of the 302 statement of Royce Lee Fowler interfered with Mr. Hammer's right to present mitigation and to effectively counter the Government's argument that Mr. Hammer

---

[6]During the § 2255 proceedings, trial counsel Ruhnke testified that after the 1998 trial, he filed a Freedom of Information Act (FOIA) request seeking information from the Federal Bureau of Prisons for use in a potential clemency petition.  As a result of the FOIA request, Ruhnke learned for the first time that "on April 9, 1996, Marti requested to move in with Hammer.  There was no reported separation concerns between the two inmates and staff moved Marti in with Hammer."  See Defense Exhibit 197 (Government response to Freedom of Information Act request by Ruhnke to the Federal Bureau of Prisons) (attached as exhibit);  see also Hammer, 404 F.Supp.2d at 789.  The Government acknowledged during the § 2255 proceedings that it never provided this document.  Thus, documentation within the control of the Bureau of Prisons directly contradicted a key component of the Government's "ruse" argument.

had made up his history of child abuse for purposes of developing mitigation:

> [t]he Court finds, that the portion of Mr. Royce Lee Fowler's statement wherein he told Agent Malocu that Mr. Hammer, long before the offense in this case, related aspects of his history of sexual abuse as a child is evidence Mr. Travis would have investigated in order to rebut the Government's argument that Mr. Hammer's background "[w]as not as severe as he would like you to believe." Doc. 670, Trial Transcript July 21, 1998, page 149.

Hammer, 404 F. Supp.2d at 788.

16.     The Third Circuit dismissed the ensuing appeal and cross-appeal on jurisdictional grounds.  United States v. Hammer, 564 F.3d 628 (3d Cir. May 11, 2009).  Following remand and submissions by Mr. Hammer's counsel to the United States Attorney for the Middle District and the Department of Justice Capital Crimes Unit, the Government filed a Motion for Penalty Phase Proceeding on January 7, 2011.  Doc. 1300.

17.     Counsel have discovered that, during the course of the litigation in which Mr. Hammer sought to vindicate the Brady rights denied him at the time of his trial, three of the individuals who gave statements to the FBI that Judge Muir found the Government was required to disclose pretrial, (Mr. Ball, Mr. Guerrero, and Mr. Fowler), are now deceased.[7]

---

[7]If necessary, at an evidentiary hearing, Mr. Hammer will present evidence that each of these witnesses have died and the dates of their deaths.

**B.**    **The Court Should Bar this Capital Prosecution or, in the Alternative, Dismiss the Intent Factors and the Substantial Planning and Premeditation Aggravating Factors And Preclude the Government From Contesting Mr. Hammer's History of Sexual Abuse.**

18.    The Government intentionally suppressed FBI 302 statements that would have directly disputed many critical aspects of its contentions supporting both the intent factors and the substantial planning and premeditation aggravating factor. The Government then argued to the jury that there was no other explanation for the braided ropes, other than proof of the intent factors and substantial planning and premeditation aggravation – knowing that there existed evidence directly disputing these contentions and also knowing that the only reason the defense had not presented it was because the Government failed to disclose that evidence. The Government also argued that the letter to Mr. Guererro was proof of the intent factors and the substantial planning and premeditation aggravating factor knowing that there existed evidence directly disputing these contentions and also knowing that the only reason the defense had not presented it was because the Government failed to disclose that evidence.

19.    Barring the capital prosecution or, at a minimum, dismissing the intent factors and the substantial planning and premeditation aggravator is required for a number of reasons.

12

20.     First, resentencing violates Mr. Hammer's double jeopardy rights because there was a likelihood that the jury would have rejected the Government's contentions regarding the strength of its case for both the intent factors and the substantial planning and premeditation aggravating factors – and rejected death – had it heard the evidence contained in the 302s deliberately withheld by the prosecution. At a minimum, dismissal of the intent factors and the substantial planning and premeditation aggravator is required.

21.     Second, the capital prosecution would violate Mr. Hammer's Fifth Amendment due process rights because Mr. Hammer has suffered irrevocable prejudice as a result of the Government's deliberate failure to disclose material evidence that would have directly disputed critical aspects of the Government's case in support of the intent factors and the substantial planning and premeditation aggravator.  At a minimum, dismissal of the intent factors and the substantial planning and premeditation aggravator is required.

22.     Third, the Government's deliberate failure to disclose relevant and material exculpatory evidence denied Mr. Hammer of his Eighth Amendment rights to present relevant mitigation evidence and to the heightened reliability and procedural safeguards required in capital cases.

23.     Fourth, the Government's failure to disclose relevant and material

exculpatory evidence and the subsequent death of the 302 witnesses violates Mr. Hammer's Sixth Amendment right to compulsory process and his Fifth Amendment rights to present a defense, to a fair capital trial, and to due process.

24.    Finally, as the Government's misconduct precluded the jury from hearing and considering compelling evidence directly disputing critical aspects of the Government's case for death, this Court should exercise its supervisory powers to remedy the irrevocable prejudice arising from the death of these witnesses; to preserve the integrity of the justice system by ensuring that a capital sentencing determination rests on valid, appropriate considerations, and, to deter future illegal conduct, particularly when seeking the ultimate punishment.

WHEREFORE, for the reasons described above and in the accompanying *Brief in Support*, Mr. Hammer, through his counsel, respectfully requests that this Court grant his *Motion* to bar the capital prosecution or, in the alternative, dismiss the intent factors and/or the substantial planning and premeditation aggravating factor and to preclude the Government from challenging the fact that he was sexually abused by his father as a child.

Respectfully Submitted,

/s/    Ronald C. Travis                        /s/    Michael Wiseman

Ronald C. Travis                              Michael Wiseman
Rieders, Travis, Humphrey, Harris,            James McHugh
Waters & Waffenschmidt                        James Moreno
161 West Third Street                         Federal Community Defender
PO Box 215                                    Eastern District Pennsylvania
Williamsport, PA  17703-0215                  Suite 540 – The Curtis Center
570-323-8711 (telephone)                      Philadelphia, PA 19106
570-323-4192 (facsimile)                      215-928-1100 (telephone)
rtravis@riederstravis.com                     215-928-0826 (facsimile)
                                              Michael_Wiseman@fd.org
/s/    Anne Saunders                          James_McHugh@fd.org
                                              James_Moreno@fd.org
Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
Anne_Saunders@fd.org

Dated:       May 19, 2011
             Philadelphia, PA

## Certificate of Service

I, Michael Wiseman, hereby certify that the foregoing was served upon counsel for the Government concurrently with its filing, by filing the same with this Court's ECF system and by email.

/s/    Michael Wiseman

Michael Wiseman

15