UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
|  | : |  |
| v. | : | Honorable Joel H. Slomsky |
|  | : |  |
| DAVID PAUL HAMMER, | : | Capital Case |
|  | : |  |
| Defendant | : |  |

**BRIEF IN SUPPORT OF
DEFENDANT'S MOTION TO PRECLUDE THE CAPITAL PROSECUTION OR, IN THE
ALTERNATIVE, DISMISS THE INTENT FACTORS AND/OR SUBSTANTIAL
PLANNING AND PREMEDITATION AGGRAVATING FACTOR BECAUSE THE
GOVERNMENT'S DELIBERATE FAILURE TO DISCLOSE EXCULPATORY
MATERIALS DIRECTLY DISPUTING THE GOVERNMENT'S CASE VIOLATED MR.
HAMMER'S FIFTH, SIXTH AND EIGHTH AMENDMENT RIGHTS[1]**

Defendant, David Paul Hammer, through counsel, respectfully submits this

*Brief in Support* of his *Motion* to bar the capital prosecution or, in the alternative,

dismiss the intent factors and substantial planning and premeditation statutory

aggravating factor.

Judge Muir found that the Government's failure to disclose FBI 302 reports

---

[1]All emphasis is supplied unless otherwise noted. The trial and post-conviction record is cited as Notes of Testimony (NT) followed by the date of the proceeding and page number.

that directly disputed Government arguments in support of aggravation and challenging mitigation constituted Brady error in violation of the Fifth Amendment. United States v. Hammer, 404 F. Supp. 2d 676, 801 (M.D. Pa. 2005). The Court concluded that the Government's misconduct "materially interfered with defense counsel's ability to adequately conduct their investigation and their ability to prepare and present the best defense available to Mr. Hammer" Id. 404 F. Supp. 2d at 789-90.

Judge Muir also found that the Government capitalized on its own misconduct during closing argument. Hammer, 404 F. Supp. 2d at 796, 798. The Government made these arguments knowing that there existed evidence directly disputing its contentions and also knowing that the reason the defense had not presented that evidence was because the Government failed to disclose that evidence. See Napue v. Illinois, 360 U.S. 264, 271 (1959); Giglio v. United States, 405 U.S. 150 (1972); Carter v. Rafferty, 826 F.2d 1299 (3d Cir. 1987).

Despite the prosecution's misconduct that impacted Mr. Hammer's basic right to present a defense and challenge the Government's case, the prosecution now seeks to subject Mr. Hammer to capital resentencing.

After thirteen (13) years, Mr. Hammer is forced to face yet another capital sentencing trial – albeit hopefully one in which all exculpatory evidence has been disclosed – because of the Government's prior intentional misconduct. He has

languished on death-row, uncertain of his fate for all these years and must now endure the stress and hardship of again fighting for his life because of the Government's misconduct.  See United States v. Harper, 729 F.2d 1216, 1223 (9th Cir. 1984) ("Enduring a trial that entails the possibility of a death penalty imposes a hardship 'different in kind' from enduring the discomfiture of any other trial. The emotional stress and strain of a trial in a capital case are extreme in character and sui generis. We consider the ordeal of undergoing such a trial a truly substantial hardship").

For the reasons described in the *Motion* and below, resentencing is constitutionally and legally barred.  At a minimum, the Government must be precluded from pursuing the intent factors and/or the substantial planning and premeditation aggravator, and prohibited from contesting Mr. Hammer's childhood sexual abuse mitigation.

> **A.    Resentencing Would Violate the Fifth Amendment's Bar Against Double Jeopardy.  Alternatively, the Government Should Be Precluded from Pursuing the Intent Factors and/or the Substantial Planning and Premeditation Aggravating Factor.**

In Oregon v. Kennedy, 456 U.S. 667, 676 (1982), the Supreme Court held that retrial is barred if prosecutors engage in conduct "intend[ed] ... to subvert the protections afforded by the Double Jeopardy Clause." Although Kennedy involved a situation where the prosecution provoked a mistrial, at least two other circuits have

recognized the rationale in extending <u>Kennedy</u> to cases in which the prosecution's misconduct is not discovered until after trial and conviction under certain limited circumstances. See <u>United States v. Wallach</u>, 979 F.2d 912, 916 (2nd Cir. 1992); <u>United States v. Cotton</u>, 130 F.3d 805, 807 (7th Cir. 1997).

<u>Wallach</u> noted the danger in not extending <u>Kennedy</u> to post-conviction discovery of prosecutorial misconduct under certain circumstances:

> [I]f *Kennedy* is not extended to this limited degree, a prosecutor apprehending an acquittal encounters the jeopardy bar to retrial when he engages in misconduct of sufficient visibility to precipitate a mistrial motion, but not when he fends off the anticipated acquittal by misconduct of which the defendant is unaware until after the verdict. There is no justification for that distinction.

979 F.2d at 916. <u>Cotton</u> recognizes the same flaws in limiting the double jeopardy bar to just those cases in which the prosecutor's misconduct resulted in a mistrial:

> Confined to cases in which the defendant is goaded into moving for a mistrial, whether the motion is granted or denied, *Kennedy* would leave a prosecutor with an unimpaired incentive to commit an error that would not be discovered until after the trial and hence could not provide the basis for a motion for a mistrial, yet would as effectively stave off an acquittal and thus preserve the possibility of a retrial.

130 F. 3d at 805.

The Government withheld evidence that went to the very heart of its theories regarding the intent factors and the substantial planning and premeditation aggravator. The prosecution was well-aware of the import of the 302s regarding the

braided ropes and Mr. Hammer's sexual activities, as reflected in the lead investigator's testimony regarding his purpose in interviewing these witnesses.[2] Nor can the Government credibly contend that it was not aware of the import of the Guerrero 302, specifically denying all aspects of the purported "Guerrero letter" theory. As Judge Muir found, these theories, (the ropes and the letter's ostensible corroboration of the "hostage ruse"), formed critical aspects of the Government's arguments in support of death. Had the jury known the evidence not disclosed by the Government, it is likely that it would have rejected death. Nor can the prosecution claim ignorance to the impact of witness evidence indicating that Mr. Hammer discussed his history of childhood abuse, including sexual abuse, long before the issue became relevant to any capital proceeding on the Government's contention that Mr. Hammer's background "[w]as not as severe as he would like you to believe." NT 7/21/98, 149.

In short, the Government was able to "fend[] off the anticipated acquittal" by successfully withholding this critical evidence for years. Wallach, 979 F.2d at 916. Under these circumstances, dismissal of the capital prosecution is required.

---

[2]And, even if it were not clear prior to trial, and it was, there was no question of the critical importance of the contents of these 302s once counsel argued in the guilt phase opening "[t]hat the tying was voluntary, and the tying was part of some plan, some kinky homosexual activity between Mr. Hammer and Mr. Marti." NT 6/3/98, 25.

Moreover, where, (as here), as a result of the Government's misconduct, and the subsequent death of three of the 302 witnesses, Mr. Hammer was not only precluded from presenting this evidence in the first trial, he is also unable to present significant portions of this evidence during the resentencing. For this reason as well, dismissal is warranted. At a minimum, for each of these reasons, the Government should be precluded from proceeding on the intent factors and the substantial planning and premeditation aggravating factor and prohibited from disputing Mr. Hammer's childhood sexual abuse mitigation.

> **B.    Mr. Hammer's Fifth Amendment Due Process Rights Preclude Resentencing Because the Government's Constitutional Violations are Further Exacerbated by the Subsequent Death of Three of the Witnesses Whose 302s the Government Suppressed. Alternatively, Dismissal of the Intent Factors and the Substantial Planning and Premeditation Aggravator Is Required.**

There is no question that, as Judge Muir held, the Government's failure to disclose the material exculpatory evidence contained in the 302s pretrial violated Brady. Hammer, 404 F. Supp. 2d at 801. Generally, the appropriate remedy for a Brady violation or violations is the grant of a new trial. See Giglio v. United States, 405 U.S. 150, 154 (1972) ("A new trial is required if [the *Brady* violation] could ... in any reasonable likelihood have affected the judgment of the jury.").

However, courts have recognized that under certain limited circumstances,

present here, dismissal is required.  For example, in <u>Government of the Virgin Islands v. Fahie</u>, 419 F.3d 249 (3d Cir. 2005), the Third Circuit noted "that dismissal for a *Brady* violation may be appropriate in cases of deliberate misconduct because those cases call for penalties which are not only corrective but are also highly deterrent." <u>Fahie</u>, 419 F. 3d at 254-55.  After considering the relevant legal precedents, the Court concluded:

> While retrial is normally the most severe sanction available for a *Brady* violation, where a defendant can show both willful misconduct by the government, and prejudice, dismissal may be proper.

<u>Id.</u> 419 F. 3d at 255.   The Court further indicated that, in addition to those circumstances in which it is 'intentional' or 'knowing,' misconduct is willful if it "results from a reckless disregard for a defendant's constitutional rights." <u>Id.</u> 419 F. 3d at 256.

Mr. Hammer has demonstrated that the Government's misconduct was willful in all aspects of the Court's definition.  Special Agent Malocu's testimony regarding his purpose in conducting the interviews in the first place; his testimony that he likely discussed those purposes with the prosecutor; his testimony that he turned over each of the 302s to the prosecutor; Mr. Travis' opening during the guilt phase; and, the Government's closing in the penalty hearing all demonstrate that the Government's misconduct was intentional and knowing.

Moreover, the Government's repeated attempts to avoid disclosure, pretrial, after trial and during the § 2255 hearing – particularly in light of the Government's penalty hearing theories regarding the intent factors and the substantial planning aggravating factor – demonstrates a reckless disregard for Mr. Hammer's constitutional rights. See Fahie, 419 F. 3d at 256 (noting that a pattern of non-disclosure can demonstrate recklessness and intent). Indeed, even when the proverbial cat was out of the bag regarding the Government's failure to disclose relevant, material exculpatory evidence, the prosecution nevertheless continued to argue against disclosure. See NT 9/21/05, 20. Under these circumstances, the Government's misconduct was intentional, knowing, and, at a minimum, reckless.

In addition to the prejudice found by Judge Muir, see Hammer, 404 F. Supp. 2d at 801, three of the four Brady 302 witnesses have died. Thus, not only was Mr. Hammer prevented from presenting this highly exculpatory evidence during the initial sentencing hearing, he now is forever barred from presenting significant evidence directly disputing the Government's theories in favor of death. Only dismissal or, in the alternative, preclusion of the intent factors and the substantial planning aggravator can cure this constitutional violation.

**C.      Precluding the Government from Capitally Prosecuting Mr. Hammer or, Alternatively, Dismissing the Intent Factors and Substantial Planning and Premeditation Aggravating Factor and Prohibiting the Government from Disputing Mr. Hammer's Childhood Sexual Abuse Mitigation is Required by the Fifth, Sixth and Eighth Amendments.**

There is no question that the Constitution guarantees an accused "a meaningful opportunity to present a complete defense." California v. Trombetta, 467 U. S. 479, 485 (1984).  That right is grounded in the Due Process, Compulsory Process, and Confrontation Clauses.  See Chambers v. Mississippi, 476 U.S. 683, 690 (1986); Washington v. Texas, 388 U.S. 14, 23 (1967); Davis v. Alaska, 415 U.S. 308 (1974); In re Oliver, 333 U. S. 257, 273 (1914).

Similarly, the very nature of a capital case demands heightened reliability. "Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two.  Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." Woodson v. North Carolina, 428 U.S. 280, 305 (1976); Gregg v. Georgia, 428 U.S. 153, 189 (1976); see also Beck v. Alabama, 447 U.S. 625, 637 (1980); Caldwell v. Mississippi, 472 U.S. 320, 329 (1985).

As a result of the Government's misconduct, Mr. Hammer was previously

precluded from presenting relevant witness testimony (1) directly disputing the Government's theories of intent and aggravation; and, (2) supporting mitigation evidence presented by Mr. Hammer but aggressively challenged by the Government. Because it has taken years for Mr. Hammer to vindicate the denial of his constitutional rights arising from the Government's deliberate failure to disclose this evidence, three of those previously undisclosed witnesses are now dead.

The Court of Appeals for the Third Circuit recently granted relief on a <u>Brady</u> violation and noted:

> We are at a loss to understand why prosecutors, so long after Brady became law, still play games with justice and commit constitutional violations by secreting and/or withholding exculpatory evidence from the defense. What the District Court found, and we declare now, was known and should have been revealed — years ago at the commencement of [Mr. Hammer's] trial.

<u>Breakiron v. Horn</u>, – F.3d – , 2011 WL 1458795 at * 4, n 8 (3d Cir. April 18, 2011). There should be consequences when such flouting of a defendant's constitutional rights deliberately denies him a fair determination of whether he should live or die. The appropriate consequence, now that the misconduct has been disclosed, is that the Government be estopped from asserting as true the actions its withheld evidence shows to have been false.

Under these circumstances, permitting the Government to proceed capitally

violates the Eighth Amendment's heightened reliability and procedural safeguard requirements. At a minimum, preclusion of the intent factor and substantial planning aggravation, and also prohibiting the Government from contesting the mitigation evidence of Mr. Hammer's childhood sexual abuse is required.

**D.     In Light of the Government's Deliberate Misconduct and the Subsequent Death of Previously Undisclosed Exculpatory Witnesses, This Court Should Exercise Its Supervisory Power and Preclude the Government from Capitally Prosecuting Mr. Hammer or, Alternatively, Dismissing the Intent Factors and Substantial Planning and Premeditation Aggravating Factor and Prohibiting the Government from Disputing Mr. Hammer's Childhood Abuse Mitigation.**

Even if the Fifth, Sixth and Eighth Amendments do not preclude Mr. Hammer's capital prosecution or, at a minimum, dismissal of the intent and substantial planning factors and prohibiting the Government from contesting Mr. Hammer's childhood abuse mitigation, and, as demonstrated above, they do, the relief requested is appropriate under this Court's supervisory powers to cure the prejudice arising from the Government's deliberate and wilful misconduct. The Court of Appeals for the Third Circuit has recognized that the court's "supervisory powers are broad and include implementing remedies for violations of recognized rights and remedies designed to deter illegal conduct." Fahie, 419 F. 3d at 258. In United States v. Barerro-Moreno, 951 F.2d 1089, 1091 (1991), the Ninth Circuit noted that, even

when "the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers."[3]  The Court concluded that three factors were relevant in determining whether or not the trial court should invoke its power and dismiss a prosecution:

> These powers may be exercised for three reasons: to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct.

As described above, as a result of the Government's wilful and deliberate misconduct, the exculpatory evidence was not disclosed pretrial and the Government was able to capitalize on its own misdeeds in arguing in favor of the intent factor and aggravation and against mitigation.  Also as described above, the Government continued its pattern of wilful non-disclosure post-trial, and even after the jig was up late in the §2255 proceedings, and disclosed the 302 reports only after being ordered to do so by Judge Muir.  These circumstances alone satisfy the three relevant factors and warrant the requested relief.

Moreover, as described above, a retrial does not effectively cure the Government's misconduct because in the ensuing years in which it took Mr. Hammer to vindicate the denial of his constitutional rights, three witness have died.  Mr.

---

[3]Of course, here, there is no question that the Government's misconduct did, and does, rise to the level of a due process violation.

Hammer will never be able to present their testimony. Under these circumstances, the Government should not be permitted a second bite of the capital apple.

WHEREFORE, for the reasons described above and in the *Motion*, Mr. Hammer, through his counsel, respectfully requests that this Court grant his motion to bar the capital prosecution or, in the alternative, dismiss the intent factors and/or the substantial planning and premeditation aggravating factor.

Respectfully Submitted,

/s/    Ronald C. Travis

Ronald C. Travis
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
570-323-8711 (telephone)
570-323-4192 (facsimile)
rtravis@riederstravis.com

/s/    Anne Saunders

Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
Anne_Saunders@fd.org

/s/    Michael Wiseman

Michael Wiseman
James J. McHugh, Jr.
James Moreno
Federal Community Defender
Eastern District Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA 19106
215-928-1100 (telephone)
215-928-0826 (facsimile)
Michael_Wiseman@fd.org
James_McHugh@fd.org
James_Moreno@fd.org

Dated:     May 19, 2011
               Philadelphia, PA

13

## Certificate of Service

I, Michael Wiseman, hereby certify that the foregoing was served upon counsel for the Government concurrently with its filing, by filing the same with this Court's ECF system and by email.

/s/    Michael Wiseman

Michael Wiseman