UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
| v. | : | Honorable Joel H. Slomsky |
| DAVID PAUL HAMMER, | : | Capital Case |
| Defendant | : | |

**DEFENDANT'S BRIEF IN SUPPORT OF STRIKING THE
NON-STATUTORY AGGRAVATING CIRCUMSTANCE
REGARDING "VICTIM IMPACT"**

A review of the Government's 1997 Notice of Intent to Seek the Death Penalty, (specifically sections C.3.a and b), shows that the victim impact allegations are so generalized and vague, that the factor, as noticed, violates due process and the Eighth Amendment.  See, United States v. Bin Laden, 126 F.Supp.2d 290, 304 (S.D.N.Y. 2001) ("An oblique reference to victims' 'injury, harm, and loss,' without more, does nothing to guide defendants' vital task of preparing for the penalty phase of trial."); United States v. Cooper, 91 Fed.Supp.2d 90, 111 (D.D.C. 2000) (requiring government to include "more specific information concerning the extent and scope of the injuries and losses suffered by each victim, his or her family member, and other

1

relevant individuals, as to each victim's 'personal characteristics' that the government intends to prove."); United States v. Glover, 43 Fed.Supp.2d 1217, 1224 (D.Kan. 1999) ("The court finds that the defendant is entitled to greater specificity as to the 'seriousness of emotional injury the government claims the defendant caused [the victim]."); United States v. Illera Plaza, 179 Fed.Supp.2d 464, 475 (E.D. Pa. 2001) ("The government suggests no reason why, in this case, it would be unable to produce a summary of its victim impact evidence similar to the ones required by these three courts. Therefore, in order to allow the defendant to adequately prepare responses to sentencing phase evidence, and in order to allow the court to determine if a pre-sentence hearing will be necessary to review that evidence, the government will be ordered to submit an outline of its proposed victim impact evidence.") As currently Noticed, this non-statutory aggravating factor should be dismissed on vagueness grounds.

Further, the victim impact factor does nothing to narrow the class of murderers for whom the death penalty is available since victim impact evidence flows from the commission of virtually any offense punishable under 18 U.S.C. § 3591. Since injury and loss to family and friends naturally flows whenever there is a death, murder or otherwise, there exists no murder for which this non-statutory aggravating factor could not be alleged. This non-statutory aggravating factor must therefore be

dismissed as it does nothing to narrow the class of persons eligible for the imposition of a sentence of death. The factor fails to "channel the sentencer's discretion by 'clear and objective' standards that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process of imposing a sentence of death.'" Lewis v. Jeffers, 497 U.S. 764, 774 (1990) (quoting Godfrey v. Georgia, 446 U.S. 420, 428 (1980)). Allowing the Government to pursue an aggravating factor which does not guide and channel the jurors' discretion renders the process unconstitutional.

A court must exercise its authority to keep even non-statutory factors within constitutional bounds. See United States v. Allen, 247 F.3d 741, 758-59 (8th Cir. 2001); United States v. McVeigh, 944 Fed.Supp.2d 1478, 1486 (D.Col. 1996) (trial court has the authority to exercise control over the non-statutory factors in which the government seeks to rely). In assessing the propriety of whether the government should be permitted to assert and attempt to prove a non-statutory aggravating factor, the minimum standard which this Court should apply is whether the factor, as pled, is both "aggravating" and "other" than the factors pled in the indictment or the death notice. 18 U.S.C. § 3592(c). See, United States v. Cuff, 38 Fed.Supp.2d 282, 288 (S.D.N.Y. 1999) (use of a firearm is not a proper non-statutory aggravator because "[a] predicate to fulfilling the constitutional conditions for an aggravating factor is that the disputed factor be an aggravating factor in the first place.")

Under <u>Payne v. Tennessee</u>, 501 U.S. 808, 827 (1991), the Government is entitled to offer evidence of harm to the family to the extent it is relevant.  Evidence concerning victim impact may be presented, provided that this information is "aggravating," that is, "worse" than just murder.  18 U.S.C. § 3593(a) ("Factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the…victim's family.")  However, Congress has not stated that victim impact is a valid factor in every murder.  Any factor, including victim impact, to be properly pled must meet the rest of the explicit criteria of the statute, that the factor be "other" and that it be "aggravating."  A review of the language of the section of the Notice in the instant case clearly shows that the government has failed to meet this minimum pleading requirement, and therefore the factor must be dismissed.

It should be noted that <u>Payne</u> did not consider the circumstances under which the use of victim impact evidence as an independent factor aggravating a murder and counted separately in a weighing statute, is permissible.  If the harm shown by victim impact evidence is simply the harm implicit in any murder, it violates the Eighth Amendment, as well as the FDPA, to permit the jury to weigh it once again in deciding whether to impose a sentence of death.

Any Noticed aggravating factor, to be properly presented to the jurors, must

meet the "'"heightened standard of reliability' the Supreme Court has required in death penalty cases, and 'any aggravating factor should be excluded if it is based on evidence whose probative value is outweighed by the danger of unfair prejudice to the defendant, confusion of the issues, or likelihood that the jury will be misled. <u>See</u>, 18 U.S.C. §3593(c).'" <u>United States v. Fell</u>, 372 F.Supp.2d 753, 763 (D.Vt. 2005).

It is undeniable that family testimony can be emotional which presents an extreme challenge to the family member who is called upon to present such testimony.[1]  Indeed, in the first penalty phase hearing, the father of Andrew Marti had an emotional display requiring a court recess.  By its very nature, this type of evidence has overwhelming prejudicial impact on the jurors.[2]

---

[1] <u>See</u> <u>United States v. Johnson</u>, 363 Fed.Supp.2d 1043, 1107 (N.Dist.Iowa 2005):

> I can say, without hesitation, that the 'victim impact' testimony presented in [the co-defendant's] trial was the most forceful, emotionally powerful, and emotionally draining evidence that I have heard in any kind of proceeding in any case, civil or criminal, in my entire career as a practicing attorney and federal judge spanning nearly 30 years.

[2] <u>See</u>, Bryan Myers & Edith Greene, *The Prejudicial Nature of Victim Impact Statements*, 10 Psychol. Pub. Pol'y & L. 492 (2004) (exploring extent to which victim impact statements are prejudicial to death sentence determinations); Niru Shanker, *Getting a Grip on Payne and Restricting the Influence of Victim Impact Statements in Capital Sentencing: The Timothy McVeigh Case and Various State Approaches Compared,* 26 Hastings Const. L.Q. 711, 740 (1999) ("thanks in part to poorly articulated parameters in *Payne v. Tennessee*, 501 U.S. 808, 111 Sc.D. 2597, 115 L.Ed.2d 720 (1991)), victim impact testimony in capital sentencing walks a fine line between allowing particularized attention to the damage caused by the crime on the

Because of the overwhelmingly prejudicial impact of this evidence, courts must be vigilant to ensure that victim impact evidence stays within proper bounds. See Payne, 501 U.S. at 831 (O'Connor, J., concurring) (noting that, while there is no *per se* bar of the presentation of victim impact evidence under the Eighth Amendment, Due Process considerations remain). The death notice in this case generically alleges "victim impact evidence," claiming without explanation that "[t]he defendant caused injury, harm and loss to the [victim's] family because of the victim's personal characteristics as an individual human being and the impact of the death upon the [victim's] family." Several courts have found such generic language inadequate because it does nothing to guide the defendant's penalty phase preparation or assist the court in performing the crucial task of limiting the scope of victim impact evidence or determining if it is indeed "aggravating."

---

one hand, and leaving the jury to be inundated with prejudicial outpourings irrelevant to the defendant's guilt on the other."); Wayne A. Logan, *Through the Past Darkly: A Survey of the Uses and Abuses of Victim Impact Evidence in Capital Trials*, 41 Ariz. Lire. 143, 145 (1999) ("The state of the law seven years since *Payne* establishes…[that] many of the worst fears imagined in the wake of *Payne* have been realized. Highly prejudicial victim impact evidence is now routinely before capital juries, or guidance in how it is to be used in assessing the 'death worthiness' of defendants."); Amy K. Phillips, *Thou Shalt Not Kill Any Nice People: The Problem of Victim Impact Statements in Capital Sentencing,* 35 Am.Crim.L.Rev. 93, 101-113 (1997) (arguing that capital juries have a tendency to consider improper factors in sentencing, even in the absence of victim impact statements, so that victim impact statements exaggerate the extent to which improper factors influence capital sentencings).

For example, in <u>Glover</u>, the court found inadequate a notice which alleged as victim impact that the defendant caused "serious physical and emotional injury to Christy Lewis" and "permanent harm to the family of John Brewer." 43 F.Supp.2d at 1224. The court ordered the government to specify, for example, whether Lewis suffered normal trauma or post-traumatic stress disorder. As to the "impact upon the family" allegation, the court wrote:

> [T]he defendant is entitled to greater specificity regarding this factor, to wit, which members of the family have suffered, the nature of their suffering, and the nature of the 'permanent harm.' For example, whether members of the family sought counseling or other medical treatment, such as hospitalization, and whether and to what extent members of the family suffered financial harm, are relevant considerations in discerning whether this factor is indeed 'aggravating' in this case.

<u>Id.</u>  <u>See</u> <u>also</u> <u>United States v. Rodriquez</u>, 380 F.Supp.2d 1041, 1058 (D.N.D. 2005) (requests for information concerning the nature of the evidence the government intends to rely upon to prove the non-statutory aggravating factor regarding victim impact, and for "an outline of the proposed victim impact evidence from each witness" were "justified to fulfill Defendant's objective of meaningful notice to adequately prepare a defense and meet the allegations against him.")

The constitutional problems arising from the generic and vague quality of the victim impact notice in this case, is exacerbated by the fact that the Marti family has indicated that it wishes this case to be done with, even if that means that Mr. Hammer

receives a sentence of life imprisonment.  While the victim's view of the proper punishment should not carry the day either for or against the death penalty, here the Government's already vague allegations about victim impact must be assessed in view of the family's current position.  Mr. Hammer does not know what position the family of Andrew Marti took back at the original trial in 1998 with respect to whether the family supported or opposed a sentence of death.  However, whatever position the family took back in 1998, it is clear that in 2010 and in 2011 the family wanted the United States Attorney as well as the Middle District Court to know it wanted this prosecution to come to an end, with no additional hearings, even though advocating the end of the prosecution would result in a sentence of life imprisonment without the possibility of release.

If the judicial philosophy which resulted in the allowance of victim impact evidence to be presented is to allow the family of victims to share with the jurors the harm and loss which the murder visited on the survivors, the family's decision to opt out of the opportunity to come forward and participate in the penalty phase of the trial should be honored.  Although the non-statutory aggravating factor of victim impact is generally incorporated into filed Notices in the federal system, there are some instances where this non-statutory aggravating factor is not Noticed.

Given the family's position, and the already vague and insufficient Notice of

the victim impact circumstance, this Court ought to either strike this aggravating circumstance or require the Government to present a clear indication, before trial, as to how it intends to prove this circumstance.

/s/    Ronald C. Travis

Ronald C. Travis
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
570-323-8711 (telephone)
570-323-4192 (facsimile)
rtravis@riederstravis.com


/s/    Anne Saunders

Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
Anne_Saunders@fd.org


Dated:    May 19, 2011
        Philadelphia, PA

/s/    Michael Wiseman

Michael Wiseman
James J. McHugh, Jr.
James Moreno
Federal Community Defender
Eastern District Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA 19106
215-928-1100 (telephone)
215-928-0826 (facsimile)
Michael_Wiseman@fd.org
James_McHugh@fd.org
James_Moreno@fd.org

10

## Certificate of Service

I, Michael Wiseman, hereby certify that the foregoing was served upon counsel for the Government concurrently with its filing, by filing the same with this Court's ECF system and by email.

/s/    Michael Wiseman

Michael Wiseman