UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
| | : | |
| v. | : | Honorable Joel H. Slomsky |
| | : | |
| DAVID PAUL HAMMER, | : | Capital Case |
| | : | |
| Defendant | : | |
| _____ | : | _____ |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION
TO STRIKE NON-STATUTORY AGGRAVATING FACTOR
OF FUTURE DANGEROUSNESS**

In the Government's 1997 Notice of Intent to Seek the Death Penalty, it alleges that Mr. Hammer will be a so-called "future danger." For a variety of reasons, this non-statutory aggravating factor is constitutionally infirm, and should be stricken.

Because the only two possible sentences for Mr. Hammer are life imprisonment or death, this aggravating factor is too broad. Because Mr. Hammer will spend the rest of his life in custody, the assertion of his future dangerousness must be limited to alleged future dangerousness in a prison setting, i.e., the possible danger Mr. Hammer might present to other inmates or prison officials. Therefore, this factor is overly broad and vague, and therefore violative of the Eighth Amendment.

1

Any evidence to be offered in support of an alleged aggravating factor must also be subjected to the balancing test under 18 U.S.C.§3593(c).  The applicable balancing test provides that information sought to be presented may be excluded "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."  A review of the four bases in the Notice by which the Government offers to support this factor leads to the conclusion that none of them is probative with respect to Mr. Hammer's asserted future dangerousness in the prison environment and, even if some probative value is assigned, that the probative value clearly is outweighed by the unfair prejudice which would arise via the evidence being presented to the jurors.  Each of the four categories set forth by the Government will be discussed.

In section C.2.a. of the Notice, the Government references two written comments and Mr. Hammer's silence with respect to remorse "shortly after" the killing of Mr. Marti as supportive of the future dangerousness factor.  With respect to the assertion that Mr. Hammer "Do[es] not fear the death penalty or anything else the Government can do to me" is neither an act of violence nor a predictor of future acts of violence.  Whether Mr. Hammer fears the death penalty or any other action taken by the Government against him, does not support a conclusion that he is likely to commit criminal acts of violence in the future.  The writing containing these words

2

was created in mid-April 1996, over 16 years ago.  Since the language used does not predict future acts of violence by Mr. Hammer, it has no probative value in assessing the future dangerousness of Mr. Hammer in the prison context.

However, even if one chooses to assign some probative value to the written words, that probative value is clearly outweighed by the danger of unfair prejudice.

The Government also points to Mr. Hammer's silence, shortly after the death of Mr. Marti, in expressing no remorse with respect to the death of Mr. Marti.  Under the Fifth Amendment, Mr. Hammer clearly was permitted to remain silent. To then use this silence as evidence to support the finding of the existence of a non-statutory aggravating factor to be weighed in favor of a sentence of death is a constitutionally infirm argument. Cf., Estelle v. Smith, 451 U.S. 454 (1981) (statements obtained in violation of the Fifth and Sixth Amendments may not be used in penalty phase); Doyle v. Ohio, 426 U.S. 610, 619 (1976) (use of post-arrest silence violates the Fifth Amendment); United States v. Jackson, 390 U.S. 570, 582-83 (1968).

This is not an instance where the Government is alleging that words spoken by Mr. Hammer are properly interpreted as evidencing no remorse, rather this is a circumstance where the Government interprets silence as a lack of remorse.  The use of the silence by Mr. Hammer shortly after the killing as a predicate for the jurors to conclude Mr. Hammer lacked remorse lacks the "heightened reliability" demanded

3

of aggravating factors.  See United States v. Walker, 910 F.Supp. 837, 855 (N.D.N.Y. 1995) (finding comments supporting "lack of remorse" aggravating factor tied to epithet subject to "[n]umerous competing inferences" and thus holding that the statement "will not bear the weight of being singled out . . . and presented to the jury as non-statutory aggravating factor").

Given these limitations, the probative value of the evidence of Mr. Hammer's silence is clearly outweighed by its potential for prejudice.  Lack of remorse is a powerfully prejudicial finding and it should not be entertained when it rests on a reed as thin as Mr. Hammer's asserted silence.  Basing the "lack of remorse" assertion on Mr. Hammer's failure to make any public expression of remorse violates Mr. Hammer's Fifth Amendment right to remain silent, his Sixth Amendment right to a fair trial, and also violates the Eighth Amendment because it is inherently unreliable. See Lesko v. Lehman, 925 F.Supp.2d 1527, 1543-45 (3d Cir. 1991); Davis, 912 F.Supp. at 946 ("allegation of lack of remorse encroaches dangerously on an offender's constitutional right to put the Government to its proof").

The "lack of remorse" factor based on Mr. Hammer's silence would also violate the Eighth Amendment because of the need for "heightened reliability."  Mr. Hammer's "silence" shortly after the killing can be attributed to multiple factors, not just the lack of remorse.  It is therefore highly speculative and not reliable to permit

its use.

In <u>Davis</u>, the very basis for "lack of remorse," which the Government asserts in the instant Notice, was rejected as an improper basis for proving "lack of remorse." <u>Davis</u>, 912 F.Supp. at 946.  Even in holding that evidence other than Davis' silence would be permitted, the court cautioned that "Threatening words and bravado, without affirmative acts, are simply too slippery to weigh as indicators of character; too attenuated to be relevant in deciding life or death; and whatever probative value they may have is far outweighed by the danger of unfair prejudice and confusion of the issues." <u>Id.</u> at 945.  <u>United States v. Nguyen</u>, 928 F.Supp. 1525 at 1541-1542 (D. Kan. 1996).

One could argue that Mr. Hammer's words in the letter that if "given the opportunity, I will kill again" constitute a threat by Mr. Hammer to commit an act of violence in the future.  However, those words are also subject to the interpretation that they are mere words, without affirmative acts, and evidenced a sense of warped bravado on the part of Mr. Hammer, and therefore fail the "heightened reliability" standard applicable in a federal capital prosecution.

Cast in this light, the Court should preclude the Government from presenting evidence of this written statement by Mr. Hammer in a document created over 16 years ago.

The Court should also consider the fact that Mr. Hammer did, in fact, have the "opportunity" to kill again during a period of time he was housed at the Oklahoma City Transfer facility and was placed in a cell with another prisoner. The Government is well aware of this occurrence as during the closing argument at the first trial the Government pointed to this incident as an indicator that on occasion the Bureau of Prisons makes mistakes. Given the fact Mr. Hammer had the "opportunity" and did not kill again supports the conclusion that the written threat is not supportive of a future dangerousness conclusion.

In section C.2.b. of the Notice, the Government asserts that evidence concerning threatening letters to prosecutors and judges sent by Mr. Hammer in August of 1989 and December of 1989 is probative of this aggravating factor. The recipients of those writings were called by the Government to testify at trial. Although the individuals testified about receiving the threatening letters, no evidence was presented that there were any affirmative acts undertaken beyond the threatening letters. In accordance with the <u>Davis</u> and <u>Nguyen</u> rationale, the threatening words should be excluded as evidence.

Moreover, the letters were written over 21 years ago. No evidence was presented that since the letters were sent over 21 years ago that there have been other threatening letters to the identified individuals or to any other individuals. These

letters are stale in the extreme and shed no light on this factor.  Even if one assigns some probative value to these 1989 letters, that assigned probative value is clearly outweighed by the danger of unfair prejudice.  Thus, the Court should preclude the Government from presenting evidence concerning them.

Subsection C.2.c. of the Notice concerns a threat by Mr. Hammer to blow up a public building in Oklahoma of November 9, 1989.  According to the Notice, this threat caused widespread panic and disrupted the state Government and its criminal justice system.  The threat is also stale, as it too happened over 21 years ago.  At the penalty phase trial held in July 1998, testimony was presented concerning the incident and no testimony was presented that anyone suffered any physical injuries or suffered any harm beyond the disruption caused as a result of the evacuation of the building. No evidence was presented that other than the November 1989 false threat Mr. Hammer had engaged in any similar type conduct at any other point in time.  Because of the nature of the alleged conduct and the passage of time since the conduct, proof of this event has no probative value with respect to the question of whether Mr. Hammer will engage in criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of prison officials and inmates.

Even if some probative value to this incident is properly assigned, the assigned probative value is far outweighed by the danger of unfair prejudice.  This Court

should preclude the Government from offering evidence of this 1989 incident in support of the claim that a penalty of death should be imposed based on the future danger Mr. Hammer represents to the lives and safety of prison officials and inmates.

Subsection C.2.d. of the Notice concerns two successful escapes and one attempted escape while Mr. Hammer was housed in the Oklahoma state prison system. The dates of these three incidents were October 16, 1981, almost 30 years ago, September 20, 1982, and October 28, 1983, over 26 years ago. At the initial penalty phase trial, the Government maintained that since Mr. Hammer is a contract prisoner between Oklahoma and the federal Government, either party could terminate that contractual arrangement and Mr. Hammer would be returned to the Oklahoma state system. This prediction of what might happen in the future concerning Mr. Hammer's place of incarceration has turned out to be inaccurate inasmuch as Mr. Hammer has continued to be housed in federal institutions since July of 1998.

At the original penalty phase the Government presented evidence concerning the two successful escapes and the attempted escape from the Oklahoma incarceration. The facts presented by the Government at the original penalty hearing are prejudicial to Mr. Hammer, violate the Eighth Amendment, and the balancing required by the Federal Death Penalty Act to permit introduction of these 30 year old incidents. The staleness is highlighted by the fact that the Government has not

noticed any attempted or successful escapes since Mr. Hammer had his custody transferred to the federal system, weigh against the allowance of this evidence being offered in support of the future dangerousness claim.

## Conclusion

The Government seeks to prove this aggravating factor by resorting to stale, vague and speculative evidence. Introduction of some of it would also violate Mr. Hammer's right to remain silent. The Court should preclude it.

/s/   Ronald C. Travis

Ronald C. Travis
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
570-323-8711 (telephone)
570-323-4192 (facsimile)
rtravis@riederstravis.com


/s/   Anne Saunders

Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
Anne_Saunders@fd.org


Dated:      May 19, 2011
            Philadelphia, PA

/s/   Michael Wiseman

Michael Wiseman
James McHugh
James Moreno
Federal Community Defender
Eastern District Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA 19106
215-928-1100 (telephone)
215-928-0826 (facsimile)
Michael_Wiseman@fd.org
James_McHugh@fd.org
James_Moreno@fd.org

## Certificate of Service

I, Michael Wiseman, hereby certify that the foregoing was served upon counsel for the Government concurrently with its filing, by filing the same with this Court's ECF system and by email.

/s/    Michael Wiseman

Michael Wiseman