UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
|  | : |  |
| v. | : | Honorable Joel H. Slomsky |
|  | : |  |
| DAVID PAUL HAMMER, | : | Capital Case |
|  | : |  |
| Defendant | : |  |
| _____ | : | _____ |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION
TO STRIKE NON-STATUTORY AGGRAVATING FACTOR
OF FUTURE DANGEROUSNESS**

In the Government's 1997 Notice of Intent to Seek the Death Penalty, it alleges

that Mr. Hammer will be a so-called "future danger." For a variety of reasons, this

non-statutory aggravating factor is constitutionally infirm, and should be stricken.

**A.      The Future Danger Non-statutory Aggravation Factor Noticed In
This Case Must Be Dismissed.**

Because the only two possible sentences for Mr. Hammer are life imprisonment

or death, this aggravating factor is too broad. Because Mr. Hammer will spend the

rest of his life in custody, the assertion of his future dangerousness must be limited

to alleged future dangerousness in a prison setting, i.e., the possible danger Mr.

Hammer might present to other inmates or prison officials. Therefore, this factor is

overly broad and vague, and therefore violative of the Eighth Amendment.

Any evidence to be offered in support of an alleged aggravating factor must also be subjected to the balancing test under 18 U.S.C.§ 3593(c). The applicable balancing test provides that information sought to be presented may be excluded "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." A review of the four bases in the Notice by which the Government offers to support this factor leads to the conclusion that none of them is probative with respect to Mr. Hammer's asserted future dangerousness in the prison environment and, even if some probative value is assigned, that the probative value clearly is outweighed by the unfair prejudice which would arise via the evidence being presented to the jurors. Each of the four categories set forth by the Government will be discussed.

In section C.2.a. of the Notice, the Government references two written comments and Mr. Hammer's silence with respect to remorse "shortly after" the killing of Mr. Marti as supportive of the future dangerousness factor. With respect to the assertion that Mr. Hammer "Do[es] not fear the death penalty or anything else the Government can do to me" is neither an act of violence nor a predictor of future acts of violence. Whether Mr. Hammer fears the death penalty or any other action taken by the Government against him, does not support a conclusion that he is likely

to commit criminal acts of violence in the future. The writing containing these words was created in mid-April 1996, over 16 years ago. Since the language used does not predict future acts of violence by Mr. Hammer, it has no probative value in assessing the future dangerousness of Mr. Hammer in the prison context.

However, even if one chooses to assign some probative value to the written words, that probative value is clearly outweighed by the danger of unfair prejudice.

The Government also points to Mr. Hammer's silence, shortly after the death of Mr. Marti, in expressing no remorse with respect to the death of Mr. Marti. Under the Fifth Amendment, Mr. Hammer clearly was permitted to remain silent. To then use this silence as evidence to support the finding of the existence of a non-statutory aggravating factor to be weighed in favor of a sentence of death is a constitutionally infirm argument. Cf., Estelle v. Smith, 451 U.S. 454 (1981) (statements obtained in violation of the Fifth and Sixth Amendments may not be used in penalty phase); Doyle v. Ohio, 426 U.S. 610, 619 (1976) (use of post-arrest silence violates the Fifth Amendment); United States v. Jackson, 390 U.S. 570, 582-83 (1968).

This is not an instance where the Government is alleging that words spoken by Mr. Hammer are properly interpreted as evidencing no remorse, rather this is a circumstance where the Government interprets silence as a lack of remorse. The use of the silence by Mr. Hammer shortly after the killing as a predicate for the jurors to

conclude Mr. Hammer lacked remorse lacks the "heightened reliability" demanded of aggravating factors. See United States v. Walker, 910 F.Supp. 837, 855 (N.D.N.Y. 1995) (finding comments supporting "lack of remorse" aggravating factor tied to epithet subject to "[n]umerous competing inferences" and thus holding that the statement "will not bear the weight of being singled out . . . and presented to the jury as non-statutory aggravating factor").

Given these limitations, the probative value of the evidence of Mr. Hammer's silence is clearly outweighed by its potential for prejudice.  Lack of remorse is a powerfully prejudicial finding and it should not be entertained when it rests on a reed as thin as Mr. Hammer's asserted silence.  Basing the "lack of remorse" assertion on Mr. Hammer's failure to make any public expression of remorse violates Mr. Hammer's Fifth Amendment right to remain silent, his Sixth Amendment right to a fair trial, and also violates the Eighth Amendment because it is inherently unreliable. See Lesko v. Lehman, 925 F.Supp.2d 1527, 1543-45 (3d Cir. 1991); Davis, 912 F.Supp. at 946 ("allegation of lack of remorse encroaches dangerously on an offender's constitutional right to put the Government to its proof").

The "lack of remorse" factor based on Mr. Hammer's silence would also violate the Eighth Amendment because of the need for "heightened reliability."  Mr. Hammer's "silence" shortly after the killing can be attributed to multiple factors, not

just the lack of remorse.  It is therefore highly speculative and not reliable to permit its use.

In <u>Davis</u>, the very basis for "lack of remorse" which the Government asserts in the instant Notice was rejected as a proper basis for proving "lack of remorse." <u>Davis</u>, 912 F.Supp. at 946.  Even in holding that evidence other than Davis' silence would be permitted, the court cautioned that "Threatening words and bravado, without affirmative acts, are simply too slippery to weigh as indicators of character; too attenuated to be relevant in deciding life or death; and whatever probative value they may have is far outweighed by the danger of unfair prejudice and confusion of the issues." Id. at 945.  <u>United States v. Nguyen</u>, 928 F.Supp. 1525 at 1541-1542 (D. Kan. 1996).

One could argue that Mr. Hammer's words in the letter that if "given the opportunity, I will kill again" constitute a threat by Mr. Hammer to commit an act of violence in the future.  However, those words are also subject to the interpretation that they are mere words, without affirmative acts, and evidence a sense of warped bravado on the part of Mr. Hammer, and therefore fail the "heightened reliability" standard applicable in a federal capital prosecution.

Cast in this light, the Court should preclude the Government from presenting evidence of this written statement by Mr. Hammer in a document created over 16

years ago.

The Court should also consider the fact that Mr. Hammer did in fact have the "opportunity" to kill again during a period of time he was housed at the Oklahoma City Transfer facility and was placed in a cell with another prisoner. The Government is well aware of this occurrence as during the closing argument at the first trial the Government pointed to this incident as an indicator that on occasion the Bureau of Prisons makes mistakes. Given the fact Mr. Hammer had the "opportunity" and did not kill again supports the conclusion that the written threat is not supportive of a future dangerousness conclusion.

In section C.2.b. of the Notice, the Government asserts that evidence concerning threatening letters to prosecutors and judges sent by Mr. Hammer in August of 1989 and December of 1989 is probative of this aggravating factor. The recipients of those writings were called by the Government to testify at trial. Although the individuals testified about receiving the threatening letters, no evidence was presented that there were any affirmative acts undertaken beyond the threatening letters. In accordance with the <u>Davis</u> and <u>Nguyen</u> rationale, the threatening words should be excluded as evidence.

Moreover, the letters were written over 21 years ago. No evidence was presented that since the letters were sent over 21 years ago that there have been other

threatening letters to the identified individuals or to any other individuals. These letters are stale in the extreme and shed no light on this factor. Even if one assigns some probative value to these 1989 letters, that assigned probative value is clearly outweighed by the danger of unfair prejudice. Thus, the Court should preclude the Government from presenting evidence concerning them.

Subsection C.2.c. of the Notice concerns a threat by Mr. Hammer to blow up a public building in Oklahoma on November 9, 1989. According to the Notice, this threat caused widespread panic and disrupted the state Government and its criminal justice system. The threat is also stale, as it too happened over 21 years ago. At the penalty phase trial held in July 1998, testimony was presented concerning the incident and no testimony was presented that anyone suffered any physical injuries or suffered any harm beyond the disruption caused as a result of the evacuation of the building. No evidence was presented that other than the November 1989 false threat Mr. Hammer had engaged in any similar type conduct at any other point in time. Because of the nature of the alleged conduct and the passage of time since the conduct, proof of this event has no probative value with respect to the question of whether Mr. Hammer will engage in criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of prison officials and inmates.

Even if some probative value to this incident is properly assigned, the assigned

probative value is far outweighed by the danger of unfair prejudice. This Court should preclude the Government from offering evidence of this 1989 incident in support of the claim that a penalty of death should be imposed based on the future danger Mr. Hammer represents to the lives and safety of prison officials and inmates.

Subsection C.2.d. of the Notice concerns two successful escapes and one attempted escape while Mr. Hammer was housed in the Oklahoma State Penitentiary. The dates of these three incidents were October 16, 1981, almost 30 years ago, September 20, 1982, and October 28, 1983, over 26 years ago. At the initial penalty phase trial, the Government maintained that since Mr. Hammer is a contract prisoner between Oklahoma and the federal Government, either party could terminate that contractual arrangement and Mr. Hammer would be returned to the Oklahoma state system. This prediction of what might happen in the future concerning Mr. Hammer's place of incarceration has turned out to be inaccurate inasmuch as Mr. Hammer has continued to be housed in federal institutions since July of 1998. At the original penalty phase the Government presented evidence concerning the two successful escapes and the attempted escape from the Oklahoma incarceration. The facts presented by the Government at the original penalty hearing are prejudicial to Mr. Hammer, it violates the Eighth Amendment, and the balancing required by the Federal Death Penalty Act to permit introduction of these 30 year old incidents. The

staleness is highlighted by the fact that the Government has not noticed any attempted or successful escapes since Mr. Hammer had his custody transferred to the federal system, weigh against the allowance of this evidence being offered in support of the future dangerousness claim.

**B.      By its Terms, the FDPA Does Not Authorize the Utilization of Non-statutory Aggravating Factors**.

The FDPA statutory scheme requires the government, as part of its notice obligations, to file with the Court, and serve upon the defendant, a document that, *inter alia*, sets forth:

> [T]he aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.
>
> The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim, and the victim's family, and any other relevant information.

18 U.S.C. § 3593(a).  The statute then sets out 16 specific aggravating factors as relevant to this kind of case.  18 U.S.C. § 3592(c).  The use of non-statutory aggravating factors – with, as noted, the possible exception of victim-impact evidence[1] – is simply not authorized by the statute.  This is so because § 3592(c) of the statute contradicts § 3591(a) of the statute.  The former provides that the jury

---

[1]   Section 3593 allows for victim-impact evidence as a factor for which notice may be given.  18 U.S.C. § 3593(a)(2).

"may consider whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592(c). But § 3591(a) provides that a defendant may be sentenced to death only after a consideration by the jury of "the factors set forth in § 3592 . . . ." Section 3592 contains, as noted above, a listing of 16 statutory aggravating factors and 16 such factors only. Therefore, non-statutory factors may not be considered by a jury since they are not – and could not be – set out in § 3592.[2]

In United States v. Nguyen, 928 F.Supp. 1525, 1535 (D.Kans. 1996), the trial judge described, and rejected, the above-stated statutory argument as "hyper-literal." Yet, if Congress is going to go into the business of authorizing death sentences and executions, it has a concomitant responsibility to speak in language which is clear and unambiguous. Whatever political capital there is to be made in pursuit of the death penalty must be earned by clear legislative direction. Because the statute does not authorize non-statutory aggravating factors – except in the case of victim-impact – the non-statutory aggravating factors in this case must be dismissed.

> **C.   Non-statutory Aggravating Factors Do Not Constitutionally Limit and Guide the Discretion of the Jury, Thus Permitting Wholly Arbitrary and Capricious Death Sentences in Violation of the Eighth and Fourteenth Amendments.**

The Eighth Amendment requires that "where discretion is afforded a sentencing

---

[2]   This view of the requirements of the FDPA is reinforced by the fact that the section of the Act concerning appellate review, § 3595, makes reference only to aggravating factors considered by the jury under § 3592.

body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." Gregg v. Georgia, 428 U.S. at 189. In particular, the Supreme Court's Eighth Amendment jurisprudence since Gregg has explained that while sentencers may not be prevented from considering any relevant information offered as a reason for sparing a defendant's life, the decision to impose death must be guided by "carefully defined standards that must narrow a sentencer's discretion." McClesky v. Kemp, 481 U.S. 279 at 304. By simultaneously promoting both individualized sentencing decisions and uniform application of the death penalty, these two principles are designed to provide a "meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not." Furman v. Georgia, 408 U.S. at 313. (White, J., concurring).

By contrast, construing § 3592(c) as authorizing the government to unilaterally expand the list of aggravating factors on a case-by-case basis injects into capital proceedings precisely the uncertainty and disparate case results that Furman found to violate the Eighth Amendment. The statute provides no guidance to prosecutors in determining how to define or select non-statutory aggravating circumstances factors in a particular case. Under such a scheme, the factors that might persuade jurors in any given case to impose death are not limited to "clear and objective"

11

criteria, Gregg, 428 U.S. at 197, but are restricted only by the imagination of the prosecutor. Particularly in conjunction with the evidentiary free-for-all created by the scope of "information" admissible at the penalty phase, the statute's standard-less procedure creates an impermissible risk that the death penalty will be imposed arbitrarily and capriciously, in violation of the Eighth Amendment.

The arbitrariness this procedure injects into the weighing process mandated by the statute is clear.  The government's unconstrained ability to allege various non-statutory aggravating factors injects impermissible randomness into the process. To permit different prosecutors, in each individual case, to create and select the factors that may be placed on "death's scale," Stringer v. Black, 503 U.S. 222, 112 S.Ct 1130 (1992) injects the very arbitrariness and capriciousness into the sentencing process that Furman sought to eradicate.

> **D.    Permitting the Department of Justice to Define Non-statutory Aggravating Circumstances after the Crime but Before Trial Violates the Ban on Ex Post Facto Laws**.

Article I, § 9, clause 3 of the United States Constitution states: "No . . . ex post facto law shall be passed."  Section 3592 permits the prosecution to manufacture out of whole cloth aggravating factors to be applied retroactively to crimes committed before the aggravating factors are identified.  A defendant's right to notice and to fair warning of the conduct that impacts upon his liberty or his life is a basic principle long recognized by the Supreme Court.  See, e.g., Bouie v. City of Columbia, 378

12

U.S. 347, 350-51 (1964); In re Oliver, 333 U.S. 257, 273 (1948). The statutory scheme which the government hopes to use to deprive Mr. Hammer of his life "makes more burdensome the punishment for a crime, after its commission . . . ." Beazell v. Ohio, 269 U.S. 167 (1925). See Lindsey v. Washington, 301 U.S. 397 (1937) (statutory change from discretionary to mandatory death penalty held barred by ex post facto clause when retroactively applied). Although the Eighth Circuit has rejected this argument by reasoning that aggravating factors are not elements but sentencing considerations, United States v. Allen, 247 F.3d 741, 759 (8th Cir. 2001), this analysis cannot survive Apprendi, Ring, Booker, and Blakely. The non-statutory aggravating factors a jury finds at the prosecutor's urging are just as necessary to a jury's finding that the death penalty shall apply as are statutory aggravating factors.

## CONCLUSION

The Government's presentation of stale, vague and speculative non-statutory future danger aggravating evidence is precluded by the Fifth and Eighth Amendments and for the reasons described above.

/s/    Ronald C. Travis

Ronald C. Travis
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
570-323-8711 (telephone)
570-323-4192 (facsimile)
rtravis@riederstravis.com


/s/    Anne Saunders

Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
Anne_Saunders@fd.org

Dated:    May 19, 2011
          Philadelphia, PA

/s/    Michael Wiseman

Michael Wiseman
James McHugh
James Moreno
Federal Community Defender
Eastern District Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA 19106
215-928-1100 (telephone)
215-928-0826 (facsimile)
Michael_Wiseman@fd.org
James_McHugh@fd.org
James_Moreno@fd.org

**Certificate of Service**

I, Michael Wiseman, hereby certify that the foregoing was served upon counsel for the Government concurrently with its filing, by filing the same with this Court's ECF system and by email.

/s/    Michael Wiseman

Michael Wiseman