UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA  :  Criminal No. 4:CR-96-0239
                          :
        v.                :  (Judge Slomsky)
                          :
 DAVID PAUL HAMMER        :  **ELECTRONICALLY FILED**

## BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR INFORMATIONAL OUTLINES

**Procedural History.**

Relevant procedural history for purposes of considering the issue discussed herein begins on September 18, 1996, when the grand jury returned an indictment against defendant, David Paul Hammer.  He was charged *inter alia* with killing Andrew Marti at the Allenwood Federal Correctional Complex, United States Penitentiary, White Deer, Pennsylvania on April 13, 1996, in violation of 18 U.S.C. § 1111.

On April 9, 1997, the United States, in accordance with 18 U.S.C. § 3593(a) filed its notice of intent to seek the death penalty.  The District Court, the Honorable Malcolm Muir, on August 24, 1997, allowed defense counsel to file various pleadings challenging multiple aspects of death penalty proceedings, by June 18, 1997.  Hammer's attorneys filed approximately thirteen (13) motions.

The prosecution filed its responses.  In a series of orders beginning on September 19, and continuing through October 9, 1997, granted Hammer some relief while denying other motions

which sought to limit or preclude the death penalty proceeding from going forward.

Following jury selection for both a guilt and penalty phase, trial began on June 2, 1998, and continued until June 22, 1998. On that day, after fourteen (14) days of trial, defendant, with the assistance of counsel, withdrew his prior not guilty plea and admitted his guilt to having killed Marti with premeditation and malice aforethought.

The hearing contemplated by 18 U.S.C. § 3593(b) to determine whether the death penalty should be imposed began on June 30, 1998, and continued until July 20, 1998.  Counsel presented closing arguments on July 21, 22, and 23, 1998.  The jury began its deliberations on July 23, 1998, and returned its death penalty verdict on July 24, 1998.  Ultimately, after denying new trial motions, Judge Muir on November 4, 1998, imposed the death penalty.

On direct appeal, the Third Circuit granted Hammer's motion for voluntary dismissal of the appeal, *United States v. Hammer*, 226 F. 3d 229 (3rd Cir. 2000), *cert. denied*, 532 U.S. 959 (2001), and denied his rehearing petition seeking reinstatement of the appeal. *See United States v. Hammer*, 239 F.3d 302 (3rd Cir.), *cert. denied*, 534 U.S. 831 (2001).  The Supreme Court denied certiorari.  *Hammer v. United States*, 534 U.S. 831 (2001).

On March 29, 2002, Hammer sought relief by proceedings under 28 U.S.C. § 2255.  After multiple revisions of pleadings, as well as pre-hearing motions, Judge Muir conducted an evidentiary proceeding beginning on July 14, 2005, and continuing intermittently until September 29, 2005.  Ultimately, in an opinion dated December 27, 2005, denied Hammer's request to withdraw his guilty plea but granted him a new penalty phase hearing on two separate bases.  *United States v. Hammer*, 404 F. Supp. 2d 676 (M.D. Pa. 2005).

Both the prosecution and defendant timely appealed aspects of that decision to the Court of Appeals.  On May 11, 2009, the Third Circuit concluded that it lacked jurisdiction to review Judge Muir's § 2255 order due to the absence of a final judgment in the underlying criminal prosecution and remanded proceedings for another penalty hearing pursuant to § 3593. *United States v. Hammer*, 564 F.3d 628 (3d Cir. 2009).

Hammer subsequently submitted a voluminous request for the Department to reconsider its prior decision to seek the death penalty. *See United States Attorneys' Manual* 9-10.150 (providing for reconsideration of decision to seek the death penalty based on a showing of changed circumstances). On January 7, 2011, the United States Attorney filed notice of the Department's decision to continue to seek the death penalty.

The Honorable Malcolm Muir on January 7, 2011, entered an order re-assigning this case to another judge.  This Court thereafter received the case and in an order dated January 26, 2011, established a briefing schedule for special pre-hearing motions.  Hammer's attorneys, beginning on May 18 and continuing through May 23, 2011, filed a series of motions and supporting briefs.  Herewith presented is the opposition submitted to defendant's motion for informational outlines.

**Counter-Statement of Facts.**

Defendant seeks informational outlines regarding three aggravating factors referenced in the prosecution's notice of intent to seek the death penalty.  The prosecution will rely upon transcripts of proceedings to respond to defendant's claim of "changed circumstances" which, in their view, justify this relief.

**Argument.**

A.    HAMMER IS NOT FACING A TYPICAL SENTENCING HEARING WHERE INFORMATIONAL OUTLINES MAY BE APPROPRIATE OR NECESSARY.

There is no constitutional right to advance notice of the government's evidence in aggravation at a capital sentencing hearing.  *Gray v. Netherland*, 518 U.S. 152, 167-68 (1996).  The Federal Death Penalty Act (FDPA) provision requiring the government to provide notice of its intent to seek the death penalty likewise does not require provision of evidentiary detail.  18 U.S.C. § 3593(a).  Rather, it requires the

government, at a reasonable time before trial, to provide "a notice . . . stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and the government will seek death." *Id.* at § 3593(a)(1). In addition, the statute requires the notice to "set[] forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." *Id.* at § 3593(a)(2). These provisions mandate notice that the death penalty will be sought, and a statement of the aggravating factors upon which the government will rely; there simply is no requirement that the government detail in advance its evidence of these factors.

Accordingly, under the plain language of the statute, the defendant's claim of inadequate notice and insufficient evidentiary detail must fail. The case law supports this result. A defendant is entitled to notice of the charges against him, and the factors that could subject him to capital punishment. *See Stirone v. United States*, 361 U.S. 212, 218 (1960); § 3593(a)(2). Here, as in all FDPA prosecutions, the Indictment and Notice are the government's mechanisms for satisfying this imperative. Federal courts across the country agree that the government is not required to preview or reveal the specific proof it will offer in support of aggravating factors. *See United States v.*

*Higgs*, 353 F.3d 281, 325 (4th Cir. 2003) ("[T]he FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor . . . not notice of the specific evidence that will be used to support it"); *United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999) ("The Government is not required to provide specific evidence in its Notice of Intent"); *United States v. LeCroy*, 441 F.3d 914, 930 (11th Cir. 2006) (defendant not entitled to notice of evidence supporting aggravating factors); *United States v. Gooch*, No. CR 04-128-23, 2006 WL 3780781, at *21 (D.D.C. 2006) (denying motion to require government to provide factual basis for aggravating factors and distinguishing defendant's attempt to find out, not "what" government will use, but "how" it will use it); *United States v. Solomon*, 513 F. Supp. 2d 520, 539 (W.D. Pa. 2007); *United States v. Mayhew*, 380 F. Supp. 2d 936, 943 (S.D. Ohio 2005); *United States v. Taylor*, 316 F. Supp. 2d 730, 738 (N.D. Ind. 2004); *United States v. Roman*, 371 F. Supp. 2d 36, 42 (D.P.R. 2005). Here, Hammer has been provided adequate notice sufficient for counsel to prepare for the April 2012 proceeding. Accordingly, the Court should deny the defendant's motion for informational outlines.

Defense counsel, however, argue they cannot prepare for the penalty stage, without further information from the government regarding the evidence it intends to rely upon to prove <u>some</u> of

the aggravating factors identified in the Notice of Intent to Seek the Death Penalty. In making this argument, Hammer relies upon a number of district court decisions from other districts, and in particular focuses upon district court decisions from the Eastern and Western[1] Districts of Pennsylvania. (Brief of Defendant at 3.) Those cases involved far more complex criminal conduct spanning a number of years and charged in multi-count indictments. *See, e.g., United States v. Llera Plaza*, 179 F. Supp. 2d 464 (E.D. Pa. 2001) (indictment charged three defendants with a total of 15 capital counts involving multiple murders in furtherance of a complex drug conspiracy)*; United States v. Solomon*, 513 F. Supp. 2d 520 (W.D. Pa. 2007)(indictment charged defendants in a nine-count indictment with participation in a five-year drug conspiracy involving the murder of a potential witness). In contrast to those cases, this case involves a simple fact pattern with a single defendant and a single act of violence (two inmates in a cell -- one alive and the other dead from strangulation with limbs secured) and charged in a one-count indictment.

Further, other cases defendant cites can, in many instances, be distinguished based on the aggravating factors with regard to

---

[1] In *United States v. Minerd*, 176 F. Supp. 2d. 424, 449 (W.D. Pa. 2001), a case cited by defendant, Judge Cohill recognized his authority to order a "bill of particulars" or IO, but found that given the particular notice, no relief was appropriate.

which the court ordered the government to provide further information.  Here, Hammer requests a court order requiring the government to provide three distinct "informational outlines." In four of the cases defendant cites, the district court ordered the government to provide an informational outline only with respect to victim impact evidence.  *United Stats v. Solomon*, 513 F. Supp. 2d at 535; *United States v. Wilson*, 493 F. Supp. 2d 364, 378 (E.D.N.Y. 2006); *United States v. Bin Laden*, 126 F. Supp. 2d 290, 304-305 (S.D.N.Y. 2001).  In *United States v. Kaczynski*, 1997 WL 34626785 at *19 (E.D. Cal. November 7, 1997), the court ordered only that the government identify any unadjudicated misconduct it intended to rely on to support an non-statutory aggravating factor that claimed "[t]he defendant has committed two other murders and numerous other significant acts of violence and attempted acts of violence and has made threats of violence against others."

In addition, not all § 3593(a) notices filed by all U.S. Attorney's Offices, citing particular statutory or non-statutory aggravating factors, are identical.  Thus, precedent in one court may be unhelpful where only "bare bones" allegations are made.  *United States v. Rodriguez*, 380 F. Supp. 2d 1041, 1044 (D.N.D. 2005), *cert. denied*, 131 S. Ct. 413 (2010); *United States v. Lujan*, 530 F. Supp. 2d 1224, 1269 (D.N.M. 2008)(granting and denying in part relief), *cert. denied*, 131 S. Ct. 1718 (2011);

and *United States v. Glover*, 43 F. Supp. 2d 1217, 1231 (D. Kan. 1999) (bare bones).

Most significantly it is submitted that <u>none</u> of these cases involve a re-sentencing hearing.  Without specifically admitting so, defense counsel have the benefit of pouring over transcripts of testimony from 1998 and even § 2255 proceedings from 2005, but remain unsatisfied with this information augmenting the notice.  Instead, they claim that "the unusual [sic] of this case" or "changed circumstances" provides a "genuine need" for an information outline in three particulars. (Brief of Defendant at 4; Motion at 3.)  But a brief review of Hammer's claims demonstrate how insubstantial they are and unrelated to the legitimate purposes for ordering an IO.

**1.    Substantial Planning and Premeditation Factor**

Defense counsel fails to demonstrate the necessity of an *IO* with respect to the Substantial Planning and Premeditation factor. Repeatedly Hammer argues that the restraints used to bind Andrew Marti were the "primary" basis for the prosecution's claim that defendant engaged in Substantial Planning and Premeditation. (Brief of Defendant at 4-5.)  While the braids were useful, they hardly were the exclusive supporting basis.  This is borne out by Judge Muir's analysis in refusing to allow Hammer to withdraw his guilty plea despite the non disclosure of some FBI interviews of inmates about his past practice of tying sheets together.  *United*

9

*States v. Hammer*, 404 F. Supp. 2d at 795-97.  Defense counsel need only read the prosecution's closing argument and other transcripts of trial testimony that there existed <u>at</u> <u>least</u> three other distinct sources of information about how long Hammer thought about killing his cell mate.  This would have included the testimony of two former inmate witnesses, Yager and Classen, the after-murder notes or "kites" sent by defendant to those inmates <u>and</u> others confirming *inter alia* that he had done what he said he would do -- kill Marti -- and his oral statement to the FBI about his at least week long interest to "F--- him [Marti] up."  *United States v. Hammer*, 404 F. Supp. at 746-55.  Thus, there simply is no need for an Information Outline in this respect. Further, the law does not require, and due process does not demand, such disclosure by the government.  <u>See, e.g.,</u> *Wilson*, 493 F. Supp.2d at 376 (rejecting defendant's request for an informational outline of evidence to support the substantial planning and premeditation aggravating factor); *Llera Plaza*, 179 F. Supp.2d at 472 (same); *Kaczynski*, 1997 WL 716487, at *20 (same).

### 2.   Future Dangerousness Factor

As to the "Future Dangerousness" factor, defense counsel repeats some of the details of the notice and some evidence presented in 1998.  (Brief of Defendant at 6.)  Counsel then asserts that "The Government should be required to provide

an *IO* setting forth how it intends to prove this aggravating factor" (in view of the fact that since 1998, he has not sent threatening letters to law enforcement officials, has not threatened to blow up buildings, has not escaped from custody, has not been returned to Oklahoma prison to serve his sentence there and has not utilized others to engage upon acts of violence on his behalf). (Brief of Defendant at 7.) That Hammer has not blatantly acted to violate the law in those particulars since his last trial should not be equated with the fact that he does not pose a future danger. His "quiet time," assuming the defense characterization is correct, can be explained through a great many reasons. It remains up to a jury to decide whether that non-statutory factor has been proven. Stated in other terms, it is not for this Court at this time to require the prosecution to provide a detailed road map of proof.

Moreover, a demand for an outline at this stage is premature. Defendant continues to be incarcerated pending trial and the potential for Hammer to engage in additional acts of violence or misconduct reflective of future dangerousness continues to exist. Should the defendant, for example, engage in additional violent conduct while incarcerated in the months pending before trial commences in this matter, the government would intend to rely on that conduct as further evidence of

11

future dangerousness.  Thus, any outline of such evidence at this point in time is premature and may be incomplete.

### 3.    Victim Impact Factor

Finally, based upon the Marti's family April 2010 written statement solicited by the defense in which they disavowed further interest in the proceedings against Hammer, defense counsel claim that "a legitimate question arises concerning how the Government proposes to prove the non-statutory aggravating factor of victim impact. . . ."  (Brief of Defendant at 7.)  Much can happen between now and April 2012 in terms of what position the Marti family will take and what role they need to play in that proceeding.  The function of an *IO* is to advise the defense what grounds will be covered in this respect. Hammer's attorneys need only read the 1998 transcripts of testimony by Robert and Michael Marti to have this requisite information about how the death of Andrew Marti affected their family, not to receive a pre-hearing ruling on this particular factor.

B.    AN INFORMATIONAL OUTLINE IS NOT WARRANTED TO PROVIDE THE DEFENSE WITH A BASIS TO MOVE TO STRIKE AGGRAVATING FACTORS.

As noted, the indictment and Notice of Intent to Seek the Death Penalty, combined with the government's discovery file and the 1998 trial transcripts sufficiently provide defendants with the notice of the evidence upon which the government will rely.

12

*See Gooch*, 2006 WL 3780781, at 21 (rejecting defendant's motion for an informational outline regarding the gateway or threshold factors, holding the defendant had all the facts and "[t]he Government has no obligation to give him a preview of its evidentiary presentation.")  Insofar as Hammer argues that an *IO* is needed to provide a basis for a motion to strike the aggravating factors, as a general rule, "summary judgment does not exist in criminal cases."  *United States v. Thomas*, 150 F.3d 743, 747 (7th Cir. 1998); *cf.* Fed. R. Crim. P. 29 (providing for motions for judgment of acquittal following the parties' evidentiary presentations at guilt/innocence trials).  Thus, the sufficiency of the evidence supporting the aggravating factors should be ascertained at the penalty hearing itself.  *See Taylor*, 316 F. Supp. 2d at 738.

**CONCLUSION.**

This is not a normal capital sentencing hearing.  Defense counsel know well most, if not all, of the information the prosecution will present in support of the three aggravating factors by reading available transcripts.  Defense counsel appear

to be seeking to secure pre-hearing rulings from this Court to test those details.  There simply is no judicial authority supporting this extraordinary request.

                    Respectfully submitted,

                    PETER J. SMITH
                    United States Attorney



                    By s/Frederick E. Martin
                    FREDERICK E. MARTIN
                    Assistant United States Attorney
                    PA ID 57455
                    Herman T. Schneebeli Federal Bldg.
                    240 West Third Street, Suite 316
                    Williamsport, PA 17701-6465
                    Tele: (570) 326-1935
                    FAX: (570) 326-7916
                    Electronic Mail:
                    Fred.Martin@usdoj.gov

                    Steven D. Mellin
                    Trial Attorney For the
                    Capital Case Unit
                    Texas ID 13920380
                    1331 F Street, N.W.
                    Washington, D.C. 20530
                    Tele: 202-514-1224
                    Electronic Mail:
                    Steve.Mellin2@usdoj.gov

Dated:    June 13    , 2011

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA       :    Criminal No. 4:CR-96-0239
                               :
          v.                   :    (Judge Slomsky)
                               :
  DAVID PAUL HAMMER            :    **ELECTRONICALLY FILED**


### CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing

**BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR INFORMATIONAL OUTLINES**

to be electronically mailed on _____June 13_____, 2011, to:

ADDRESSEES:     Ronald C. Travis, Esquire
                rtravis@riederstravis.com

                Michael Wiseman, Esquire
                Michael_Wiseman@fd.org

                James J. McHugh, Jr., Esquire
                James_McHugh@fd.org

                James Moreno, Esquire
                James_Moreno@fd.org

                Anne Saunders, Esquire
                Anne_Saunders@fd.org


                    S/Frederick E. Martin
                    FREDERICK E. MARTIN
                    Assistant United States Attorney


15