UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :  Criminal No. 4:CR-96-0239
                          :
         v.             :  (Judge Slomsky)
                          :
DAVID PAUL HAMMER       :  **ELECTRONICALLY FILED**

**BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO STRIKE NON-STATUTORY
<u>AGGRAVATING FACTOR OF FUTURE DANGEROUSNESS</u>**

**Procedural History.**

Relevant procedural history for purposes of considering the issue discussed herein begins on September 18, 1996, when the grand jury returned an indictment against defendant, David Paul Hammer. He was charged *inter alia* with killing Andrew Marti at the Allenwood Federal Correctional Complex, United States Penitentiary, White Deer, Pennsylvania on April 13, 1996, in violation of 18 U.S.C. § 1111.

On April 9, 1997, the United States, in accordance with 18 U.S.C. § 3593(a) filed its notice of intent to seek the death penalty. The District Court, the Honorable Malcolm Muir, on August 24, 1997, allowed defense counsel to file various pleadings challenging multiple aspects of death penalty proceedings, by June 18, 1997. Hammer's attorneys filed approximately thirteen (13) motions. In one submission, Motion Docket No. 152, defense counsel sought to preclude consideration of the non-statutory aggravating factor, future dangerousness.

The prosecution filed its responses.  In a series of orders beginning on September 19, and continuing through October 9, 1997, the Court granted Hammer some relief while denying other motions which sought to limit or preclude the death penalty proceeding from going forward.  On September 30, 1997, Judge Muir entered an order (docket no. 206) denying relief concluding that "[f]uture dangerousness to the lives and safety of other persons has been found to be a legitimate aggravating factor that a jury can consider during the penalty phase."  (Citations omitted.)

Following jury selection for both a guilt and penalty phase, trial began on June 2, 1998, and continued until June 22, 1998. On that day, after fourteen (14) days of trial, defendant, with the assistance of counsel, withdrew his prior not guilty plea and admitted his guilt to having killed Marti with premeditation and malice aforethought.

The hearing contemplated by 18 U.S.C. § 3593(b) to determine whether the death penalty should be imposed began on June 30, 1998, and continued until July 20, 1998.  Counsel presented closing arguments on July 21, 22, and 23, 1998.  The jury began its deliberations on July 23, 1998, and returned its death penalty verdict on July 24, 1998.  Ultimately, after denying new trial motions, Judge Muir on November 4, 1998, imposed the death penalty.

On direct appeal, the Third Circuit granted Hammer's motion for voluntary dismissal of the appeal, *United States v. Hammer*, 226 F. 3d 229 (3d Cir. 2000), *cert. denied*, 532 U.S. 959 (2001), and denied his rehearing petition seeking reinstatement of the appeal. *See United States v. Hammer*, 239 F.3d 302 (3d Cir.), *cert. denied*, 534 U.S. 831 (2001).  The Supreme Court denied certiorari.  *Hammer v. United States*, 534 U.S. 831 (2001).

On March 29, 2002, Hammer sought relief by proceedings under 28 U.S.C. § 2255.  After multiple revisions of pleadings, as well as pre-hearing motions, Judge Muir conducted an evidentiary proceeding beginning on July 14, 2005, and continuing intermittently until September 29, 2005.  Ultimately, in an opinion dated December 27, 2005, denied Hammer's request to withdraw his guilty plea but granted him a new penalty phase hearing on two separate bases.  *United States v. Hammer*, 404 F. Supp. 2d 676 (M.D. Pa. 2005).

Both the prosecution and defendant timely appealed aspects of that decision to the Court of Appeals.  On May 11, 2009, the Third Circuit concluded that it lacked jurisdiction to review Judge Muir's § 2255 order due to the absence of a final judgment in the underlying criminal prosecution and remanded proceedings for another penalty hearing pursuant to § 3593. *United States v. Hammer*, 564 F.3d 628 (3d Cir. 2009).

3

Hammer subsequently submitted a voluminous request for the Department to reconsider its prior decision to seek the death penalty. *See United States Attorneys' Manual* 9-10.150 (providing for reconsideration of decision to seek the death penalty based on a showing of changed circumstances). On January 7, 2011, the United States Attorney filed notice of the Department's decision to continue to seek the death penalty.

The Honorable Malcolm Muir on January 7, 2011, entered an order re-assigning this case to another judge.  This Court thereafter received the case and in an order dated January 26, 2011, established a briefing schedule for special pre-hearing motions.  Hammer's attorneys, beginning on May 18 and continuing through May 23, 2011, filed a series of motions and supporting briefs.  Herewith presented is the opposition submitted to defendant's motion to strike the non-statutory aggravating factor of future dangerousness.

**Counter-Statement of Facts.**

The Government's notice of intention to seek the death penalty against Hammer alleged the future dangerousness non-statutory aggravating factor as follows:

> 2.  Future Dangerousness of the Defendant.  The Defendant is likely to commit criminal acts of violence in the future and thereby would pose a continuing and serious threat to society. *Simmons v. South Carolina*, 114 S. Ct. 2187, 2193 (1994).

a.   Hammer advised a fellow inmate in a written statement after the murder that 'given the opportunity, I will kill again.' He further indicates in the same written statement that he 'do(es) not fear the death penalty or anything else the Government can do to me.'  Finally, Hammer's statements to the Federal Bureau of Investigation, the prison psychologist, and to other inmates shortly after the killing of Marti reveal NO remorse for the victim but some pity for his family.

b.   Hammer also previously has threatened prosecutors and judges who have placed him in prison or denied him release. Specifically, in December 1989, Hammer sent threatening letters to Chief Judge David L. Russell of the United States District Court for the Western District of Oklahoma and in August 1989, he sent threatening letters to an Oklahoma State Judge and Prosecutor in his 1984 convictions.

c.   Hammer has threatened to blow up public buildings in Oklahoma on November 9, 1989.  This caused widespread panic as well as disrupted the Oklahoma State government and its criminal justice system.

d.   Hammer has escaped or attempted to escape on multiple occasions.  These occurred on October 16, 1981, September 20,1983, and October 28,1983.  When he has successfully escaped, Hammer, thereafter, committed acts of violence.

Attached as Government Exhibit 1, are excerpts from Hammer's initial brief filed with the Third Circuit Court of Appeals. This argument alludes to non-statutory aggravating factors.

**Introduction.**

Hammer raises several constitutional and statutory claims attacking, as a general proposition, the propriety of a non-

statutory aggravating factor of future dangerousness.  He also challenges the sufficiency of the evidence to support the allegation of future dangerousness in this particular case.  As explained below, Hammer's claims fail.

Initially this is defendant's second challenge to the very same factor.  He fails to demonstrate why reconsideration is appropriate.  Beyond that, future dangerousness has a long, well-established pedigree as a proper mitigating factor.  Hammer's suggestion that the factor alleged here is not factually sustainable does not state a valid basis for pre-hearing relief.  On its merits, moreover, his factual assertion strains the limits of credulity given that Hammer's capital offense was a premeditated prison murder committed by a serial violent offender serving the functional equivalent of a life sentence.

**Arguments.**

      1.   <u>Initially Hammer's Claim Is Itself Barred As Untimely Presented</u>.

Hammer initially presented a broad challenge to the prosecution's presentation of non-statutory, aggravating factors to the jury in the penalty phase.  On September 30, 1997, Judge Muir denied relief.  In the prior direct appeal, Hammer indeed raised his present challenge to the non-statutory, aggravating factors.  *United States v. Hammer*, No. 98-9011, Appellant's Opening Brief at 108-110 (3d Cir. filed Jan. 28, 2000) (Government Exhibit 1).  Hammer later successfully moved for a

voluntary dismissal of the appeal prior to resolution of this claim.  *See Hammer*, 226 F.3d at 237.  He thereby expressly and voluntarily relinquished his claim.

Having abandoned this issue, this Court is respectfully urged not to consider this aspect of Hammer's challenges to the April 2012 proceeding, particularly since there was no doubt regarding defendant's state of mind as well as understanding of the consequences of his actions.  *See Hammer*, 226 F.3d at 232 N. 2; *Feesers, Inc. v. Michael Foods Inc.,* 591 F.3d 191, 207 (3d Cir. 2010).

  2. <u>The FDPA Does Not Preclude the Use of Non-Statutory Aggravating Factors "By its Terms."</u>

Hammer claims that the FDPA, by its terms, prohibits the presentation of non-statutory aggravating factors to the jury.  (Motion ¶ 5.)  He argues that, because § 3591(a) states that a defendant may be sentenced to death only after jury consideration of "the factors set forth in § 3592," which lists 16 statutory aggravating factors only, non-statutory aggravating factors are barred.  This argument, in particular, strains credulity, and conveniently highlights one term of the FDPA while ignoring other statutory language furnishing important context.

It is true that § 3591 requires a jury is to consider factors set forth in § 3592 in deciding whether to impose the death penalty.  As courts have recognized, however, § 3592 "lists 16 statutory aggravating factors, and then states '[t]he jury, or

if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists.'" *United States v. Barnes*, 532 F. Supp. 2d 625, 643 (S.D.N.Y. 2008) (quoting § 3592(c), emphasis in original).  Thus, the "plain text of the FDPA . . . authorizes the use of factors not specifically enumerated in the statute," namely, the non-statutory aggravating factors.  *Id.; United States v. Robinson*, 367 F.3d 278, 292 (5th Cir. 2004) (argument that "the FDPA does not authorize the use of non-statutory aggravating factors [is] meritless"); *United States v. Nguyen*, 928 F. Supp. 1525, 1536 (D. Kan. 1996) (rejecting argument as "strained," and "hyperliteral"); *see also* § 3593(a) ("The factors for which notice is provided . . . may include . . . any other relevant information").  The defendant's proposed interpretation would, moreover, contradict the bedrock cannon that "a statute should be construed, if possible, in such a way that all of its provisions can be given effect, and so that no part of the statute is rendered inoperative or superfluous." *Nguyen*, 928 F. Supp. at 1536.

The Court should reject the defendant's claim that the FDPA precludes introduction of non-statutory aggravating factors "by its terms."

3.  <u>Non-Statutory Aggravating Factors Constitutionally
Limit and Guide the Jury's Discretion and Do Not
Permit Wholly Arbitrary and Capricious Death
Sentences.</u>

Hammer reprises his lead theory that the FDPA is unconstitutionally arbitrary and capricious – this time under mantle of a challenge to the non-statutory aggravating factor of future dangerousness.  (Motion ¶ 6.)  He asserts that the FDPA injects unconstitutional arbitrariness into capital sentencing by allowing prosecutors to "unilaterally expand the list of aggravating factors on a case-by-case basis" and offering no guidance in the selection process.  Again, he offers no case law in support of this argument.

This version of the arbitrary and capriciousness argument must fail for the same reasons that sunk its predecessors.  As discussed earlier, the FDPA, including its provisions concerning non-statutory aggravating factors, comports fully with the dictates of the Supreme Court regarding death penalty schemes.  Indeed, it essentially codifies the two-step process prescribed by the Supreme Court for death penalty sentencing by (1) narrowing the sentencer's discretion through eligibility factors (i.e., gateway intent factors under § 3591(a) and the statutory aggravating factors under § 3592(c)), and (2) individualizing the sentencing determination.  *E.g.*, *Kansas v. Marsh*, 548 U.S. 163, 173-74 (2006).  The FDPA's non-statutory aggravating factors, in combination with mitigating factors,

9

facilitate the second step, by offering "the fullest information possible concerning the defendant's life and characteristics." *See Williams v. New York*, 337 U.S. 241, 247 (1949) (stating that this is "highly relevant - if not essential" for "modern concepts of individualizing punishment"); *Gregg v. Georgia*, 428 U.S. 153, 203-04 (1976) ("We think it highly desirable for the jury to have as much information before it as possible when it makes the sentencing decision.").

In short, far from tainting the process, non-statutory aggravating factors ensure that the FDPA conforms to the Constitution's individualized sentencing mandate.  *See United States v. Fell*, 360 F.3d 135, 144 (2d Cir. 2004) (FDPA "standard permits the jury to have before it all possible relevant information about the individual defendant whose fate it must determine . . . as a result, the FDPA does not undermine 'heightened reliability,' it promotes it"); *United States v. Higgs*, 353 F.3d 281, 320 (4th Cir. 2003) (rejecting claim that "submission of non-statutory aggravating factors at the penalty phase allows for the random and unguided imposition of the death penalty by jurors").

The Court should reject the defendant's attempt to rehash his claim that the FDPA operates in an arbitrary and capricious manner, by shifting the blame to the non-statutory aggravating factor of future dangerousness.

4.    The Use of Non-Statutory Aggravating Factors Does Not Violate the Ban on *Ex Post Facto* Laws.

Hammer claims that the FDPA's authorization of non-statutory aggravating factors violates the Ex Post Facto Clause of the Constitution by allowing the prosecution to define aggravators after the commission of the crime.  (Motion ¶ 7.)  He accurately quotes the relevant black letter law, *e.g.*, *Boui v. City of Columbia*, 378 U.S. 347, 350-51 (1964) (Brief of Defendant at 12-13),  but points to no case that adopts or supports his proposed application of that law.  On the contrary, he admits that one court of appeals disagrees with his proposal.  *See United States v. Allen*, 247 F.3d 741, 759 (8th Cir. 2001) (specifically rejecting the argument).  (Brief of Defendant at 13.)  There are others.  *See Higgs*, 353 F.3d at 322.  As the Fourth Circuit held:

> Although aggravating factors do make more burdensome the punishment for the crime, non-statutory aggravating factors and mitigating factors are weighed by the jury to make the individualized determination to impose the death sentence upon a defendant who has already been found eligible.  They do not increase the possible punishment or alter the elements of the offense.

*Id.* at 322 (internal quotations and citations omitted).

The Court should follow the sound decisions of the circuit courts and reject the defendant's wholly unsupported argument.

11

5.    Hammer's Factual Challenge to the Present Future
Dangerousness Does Not State a Basis for Pre-
hearing Relief.

This Court has previously rejected Hammer's factual challenge to the future dangerousness allegation in this case, including the allegation of lack of remorse. *United States v. Hammer*, 25 F. Supp. 2d 518, 546 (M.D. Pa. 1998).  This prior ruling is subject to reconsideration only where the decision was "clearly erroneous," absent a change in the law[1] or operative facts.  *United States v. Hammer*, 2006 WL 229057, at *1 (M.D. Pa. 2006).  Hammer fails to make such a showing.

Even in cases where the defendant faced a mandatory minimum life sentence, no court has concluded that the future dangerousness non-statutory aggravating factor should be stricken.  Rather, courts in those cases have interpreted relevant Supreme Court authority, including *Simmons v. South Carolina*, 512 U.S. 154, 171 (1994), to mean that, in the context of federal death penalty statutes, government arguments regarding "future dangerousness" should be limited to the dangers posed by the defendant while serving a life sentence in prison, *see*, *e.g.*, *United States v. Peoples*, 74 F. Supp. 2d 930, 931 (W.D. Mo.

---

[1]  Hammer's present pleadings largely track those he filed in conjunction with Motion #152 filed on August 1, 1997.  That is to say, defense counsel renew now their attack on the lack of remorse and threatening statements.  (Brief of Defendant at 3-8.) Judge Muir expressly rejected those bases, *United States v. Hammer*, 25 F. Supp. 2d at 546, and, consequently, this Court need not reconsider that claim.

1999); *United States v. Llera-Plaza*, 179 F. Supp. 2d 487, 464 (E.D. Pa. 2001). All of the offenses or acts listed in the prosecution's notice regarding "Future Dangerousness" took place within either the Oklahoma State or federal prison system. Accordingly, such courts have simply instructed the jury to evaluate the defendant's "future dangerousness" in the context of life imprisonment, and requested the government to "limit its sentencing phase evidence to that which is relevant to a context of life imprisonment." *Llera-Plaza*, 179 F. Supp. 2d at 487. In this case, the government expects the evidence to establish that Hammer poses a substantial risk even if incarcerated.[2] Hammer has killed in prison and vowed to do so again, abundantly demonstrating his affirmative dangerousness and lack of remorse. *United States v. Davis,* 609 F.3d 663, 675 (5th Cir. 2010) (evidence of the defendant's past dangerousness is not negated by

---

[2] Defense counsel seek "judicial screening" about this subject matter. (Motion ¶ 12.) They then review the evidence, which Judge Muir admitted, in accordance with 18 U.S.C. § 3593(c) in 1998, and find it wanting since years have passed. (Brief of Defendant at 2-9.) Two responses to this request are appropriate. "Summary judgment does not exist in criminal cases." *United States v. Thomas*, 150 F.3d 743, 747 (7th Cir. 1998); *Cf*, Fed. R. Crim. P. 29. Thus, the sufficiency of the evidence supporting the aggravating factors should be ascertained at the penalty hearing itself. *United States v. Taylor*, 316 F. Supp. 2d 730, 738 (N.D. Ind. 2004) Moreover, unlike other provisions of law, there is no exclusion of information due to the passage of time. *See* Fed. R. Evid. 609(b); 18 U.S.C. § 3281. Particularly since there are ample reasons to explain Hammer's "quiet time," this Court should allow the jury to decide whether the prosecution has demonstrated defendant's "future dangerousness."

non-violent conduct in prison "during a time when he is 'on display' while the appeal of his death sentence is pending").

**Conclusion.**

Hammer's attack on the prosecution's "future dangerousness" notice represents "old wine in an old bottle."  This Court need not revisit Judge Muir's earlier decision in this area.  Hammer's legal challenges simply are incorrect.  This Court should allow the jury to determine whether this non-statutory factor has been proven.

Respectfully submitted,

PETER J. SMITH
United States Attorney

By_s/Frederick E. Martin_____
FREDERICK E. MARTIN
Assistant United States Attorney
PA ID 57455
Herman T. Schneebeli Federal Bldg.
240 West Third Street, Suite 316
Williamsport, PA 17701-6465
Tele: (570) 326-1935
FAX: (570) 326-7916
Electronic Mail:
Fred.Martin@usdoj.gov

Steven D. Mellin
Trial Attorney For the
Capital Case Unit
Texas ID 13920380
1331 F Street, N.W.
Washington, D.C. 20530
Tele: 202-514-1224
Electronic Mail:
Steve.Mellin2@usdoj.gov

Dated: _____June 17_____, 2011

14

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA   :   Criminal No. 4:CR-96-0239
                           :
            v.             :   (Judge Slomsky)
                           :
 DAVID PAUL HAMMER         :   **ELECTRONICALLY FILED**

### CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing

**BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO STRIKE NON-STATUTORY
AGGRAVATING FACTOR OF FUTURE DANGEROUSNESS**

to be electronically mailed on ___June 17_____, 2011, to:

ADDRESSEES:    Ronald C. Travis, Esquire
               rtravis@riederstravis.com

               Michael Wiseman, Esquire
               Michael_Wiseman@fd.org

               James J. McHugh, Jr., Esquire
               James_McHugh@fd.org

               James Moreno, Esquire
               James_Moreno@fd.org

               Anne Saunders, Esquire
               Anne_Saunders@fd.org


               _S/Frederick E. Martin_____
               FREDERICK E. MARTIN
               Assistant United States Attorney

15