C:\CASEFILES\HAMMER\CA3\OPENING.BRF.wpd.January 31, 2000

Docket No. 98-9011

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA

- versus -

DAVID PAUL HAMMER,

Appellant.

*On Appeal from a Final Judgment of Conviction
and Sentence of Death Entered in the
United States District Court for the
Middle District of Pennsylvania*

<u>Sat below</u>:  Hon. Malcolm Muir, Senior Judge,
and a Jury

## Opening Brief, and Initial Appendix Materials, on Behalf of Appellant

**Ronald C. Travis**
Rieders, Travis, Humphrey,
Harris, Waters & Waffenschmidt
161 West Third Street
Williamsport, PA 17703
(570)323-8711 (voice)
(570)323-4192 (fax)

**David A. Ruhnke**
Ruhnke & Barrett
47 Park Street
Montclair, NJ 07042
(973)744-1000 (voice)
(973)746-1490 (fax)
RNBARR@EMAIL.MSN.COM

Stand-by Counsel to Appellant, *Pro Se*

<u>On the Brief</u>:

David Paul Hammer, *Appellant Pro Se*
David A. Ruhnke, Esquire
Ronald C. Travis, Esquire

**Opposition Brief to Indictment Challenge
Government Exhibit 1
Page 1 of 8**

## POINT TWELVE

**MR. HAMMER'S SENTENCE OF DEATH WAS IMPOSED IN VIOLATION OF THE GRAND JURY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION SINCE THE INDICTMENT DID NOT ALLEGE THE ELEMENTS OF A CAPITAL OFFENSE.[69]**

The Fifth Amendment to the Constitution of the United States provides in pertinent part as follows:

> No person shall be held to answer for a capital, or otherwise infamous crime unless on a presentment or indictment of a Grand Jury . . . .

The indictment in this case charged a violation of 18 U.S.C. § 1111(first-degree murder within the special Maritime and Territorial Jurisdiction of the United States). [A0065.] The indictment, while alleging that the murder was premeditated, did not allege any of the intent categories set forth at 18 U.S.C. § 3591(a)(2); neither did the indictment allege any of the aggravating factors eventually set forth in the government's notice of intent to seek the death penalty filed on April 9, 1997. [A0067.] This was not a death-penalty prosecution until the government decided to make it so. And, while the Office of the United States Attorney and the Department of Justice may be

---

[69]Standard of Review: The error complained of is one of law. This Court's standard of review is plenary. Although this issue was not raised below, the essence of the argument is that the indictment failed to charge a capital offense since it failed to allege the state-of-mind and aggravating factor elements of a capital case. The failure of an indictment to charge an offense may be raised for the first time on appeal. *See, e.g., Virgin Islands v. Pemberton*, 813 F.2d 626, 631 (3d Cir. 1987); *United States v. Wander*, 601 F.2d 1251, 1259 (3d Cir. 1979).

a lot of things, for sure, neither is a Grand Jury.

The method chosen by the government to expose Mr. Hammer to capital punishment was contrary to the express language of the Fifth Amendment and, if upheld on appeal, would defeat the requirement that only a Grand Jury may bring capital and other serious charges. At common law, it was mandated that indictments be used in all cases warranting serious punishment. See *Smith v. United States*, 360 U.S. 1, 9 (1959) ("The Fifth Amendment made the rule mandatory in federal prosecutions in recognition of the fact that the intervention of a Grand Jury was a substantial safeguard against oppressive and arbitrary proceedings."). More than a century ago, the Supreme Court refused to sanction judicial modification of indictments, stating:

> If it lies within the province of a court to change the charging part of an indictment the great importance which the common law attaches to an indictment by grand jury as a prerequisite to a prisoner's trial for a crime, and without with the Constitution says no person shall be held to answer, may be frittered away until its value is almost destroyed.

*Ex Parte Bain*, 121 U.S. 1, 10 (1887). This aspect of *Ex Parte Bain* has been reaffirmed in numerous cases. *See, e.g., United States v. Miller*, 471 U.S. 130, 142-143 (1985).

In *Stirone v. United States*, 361 U.S. 212, 217 (1960), a unanimous Supreme Court held a defendant may not be tried "on charges that are not made in the indictment against him, and therefore 'after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." The procedure

followed in the instant case, which allows *prosecutors* to transform non-capital charges to capital charges, poses a far greater threat to the grand jury process than the intervention of judges.

The most celebrated purpose of the grand jury is to serve as a buffer between the government and the citizens and to protect individuals from the abuse of arbitrary prosecution. *United States v. Dionisio*, 410 U.S. 19, 33 (1973); *see also, Wood v. Georgia*, 370 U.S. 375, 390 (1962); *Russell v. United States*, 369 U.S. 749, 770-771 (1962). As explained by the Supreme Court in *Dionisio*:

> Properly functioning the grand jury is to be the servant of neither the government nor the courts but of the people. As such, we assume that it comes to its task without bias or self interest. Unlike the prosecutor or the policemen it has no election to win or executive appointment to keep.

*Dionisio*, 410 U.S. at 35; *see also, Stirone v. United States, supra*, 361 U.S. at 218.

The trial courts in *United States v. Nguyen*, 928 F Supp. 1525 (D.Kans. 1996) and *United States v. Spiven*, 958 F. Supp. 1523, 1528 (D.N.M. 1997) rejected a similar argument by holding the alleged aggravating factors were sentencing facts which did not have to be presented to the grand jury as apart of the indictment process. These decisions are not binding precedent for this court. An assertion that the aggravating factors which serve to convert a non-capital charge into a capital charge are mere sentencing considerations rather than an integral part of the charge itself does violence to the express wording of the Fifth Amendment to the United States Constitution and misses the point of having a Grand jury at all.

In order to be exposed to a sentence of death under the FDPA, there must be alleged as a "gateway," one of four specified of mental states. Thus, 18 U.S.C. § 3591(a)(2) requires proof that the defendant:

(A)   intentionally killed the victim; [or]

(B)   intentionally inflicted serious bodily injury that resulted in the death of the victim; [or]

(C)   intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with the offense, and the victim dies as a direct result of the act; or

(D)   intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a result of the act.

Since none of these mental states was made part of the indictment by the Grand Jury, the Fifth Amendment guarantee has been breached. In the instant case the gateway mental state was alleged only through the filed by the government. It was, therefore, not the grand jury indictment which required Mr. Hammer to answer for a "capital, or other infamous crime," but, rather, the prosecutor. The notice, in effect, substituted for the indictment, something the Fifth Amendment forbids.

It is, moreover, no answer to the above argument that, in any event, the jury must eventually pass on the gateway mental state. If that argument were accepted, any case

could be brought without allegation of an essential element and a jury could cure the Grand jury's inaction. In short, the statute violates the Fifth Amendment's grand jury clause because it abrogates to an agent of the Executive branch of the government, the Attorney General of the United States, a decision that the Constitution reserves to an independent grand jury housed within the Judiciary. Moreover, this is not a case in which the elements of the offense itself narrowly describes a class of murderers, leaving only consideration of strictly sentence-related aggravators to the penalty phase.

The *Smith* test is not satisfied by having an indictment under statutes that carry death as potential punishment. *Furman v. Georgia,* supra, essentially control this point. In pre-*Furman* days the indictment in states with a grand jury system would charge an offense potentially punishable by death, and the jury would be given unbridled sentencing discretion. Thus, prior to *Furman* it was enough for the grand jury to indict under a statute carrying death as a possible punishment. There was no further statutory provision in existence that set forth additional elements that had to be proved in order to hold the accused to answer for a capital crime. Since *Furman,* however, capital sentencing decisions have to be channeled and the discretion of sentencers guided in such a way that arbitrariness and caprice are theoretically rooted out. Application of *Smith,* in a post-*Furman* world, requires that the grand jury, and not the Attorney General, make the determination that the defendant possessed the requisite mental state

that requires him to stand trial for his life.[70]

Put another way, after *Furman* there are no offenses that carry the automatic penalty of death simply because one is convicted of the underlying conduct made criminal by a statute. This was the thrust of the Supreme Court's invalidation in 1976 of the post-*Furman* death penalty schemes initially adopted by North Carolina and Louisiana. *Woodson v. North Carolina, supra*; *Roberts v. Louisiana, supra*. The point of those two cases is that while arbitrariness must be controlled, that cannot be at the cost of removing all discretion and making the death penalty automatic for certain classes of murders or murderers. In *Sumner v. Shuman*, 483 U.S. 66 (1987), the Court held that it violates the Eighth Amendment for the legislature to provide that one convicted of a crime shall receive the death penalty, no matter how heinous that crime may be. The defendant cannot receive the capital penalty until additional facts are proved, so as to narrow the class of those who are eligible for death beyond the narrowing provided by requiring conviction of the underlying offense.

Thus, one is not "held to answer" for a capital crime until it is alleged in a formal pleading that one meets some additional standards, beyond those set out as elements of the offense charged. In this case, these additional standards are contained in the

---

[70]This issue has not arisen in state death penalty jurisprudence because the indictment clause is not applicable to the States. *Hurtado v. California*, 110 U.S. 516 (1884). The issue has not come up in the context of the 21 U.S.C. § 848(e) cases because the underlying statute has its own *mens rea* elements for homicide which must be charged by the grand jury as elements of the offense.

**Opposition Brief to Indictment Challenge**
**Government Exhibit 1**
**Page 7 of 8**

penalty statute, 18 U.S.C. §§ 3591-94. Under the Fifth Amendment indictment clause, however, the allegation of facts that, if proven, will justify a capital penalty is uniquely the function of an independent body of citizen grand jurors. In violation of this elementary principle, Congress has passed the death penalty statute at issue and left it to prosecutors to allege the existence of those facts said to justify a capital sentence.

This argument has found favor in the area of forfeitures, as well, with the requirement that the scope of such takings be alleged by a grand jury in an indictment. F.R.Crim.P. 7(c)(2). *See also, United States v. Seifuddin*, 820 F.2d 1074 (9th Cir. 1987). (Penal forfeitures require adherence to grand jury guarantee.)

Because the indictment returned with respect to Mr. Hammer did not set forth any aggravating factors or any of the requisite mental states required for Mr. Hammer to have been death eligible, the capital prosecution of Mr. Hammer was undertaken in violation of the Fifth Amendment. The sentence of death must be set aside.