UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :   Criminal No. 4:CR-96-0239
                                :
          v.                    :   (Judge Slomsky)
                                :
 DAVID PAUL HAMMER              :   **ELECTRONICALLY FILED**

**BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO DECLARE THE FEDERAL DEATH PENALTY ACT
UNCONSTITUTIONAL BECAUSE IT IS INCOMPREHENSIBLE
TO JURORS AND RESULTS IN THE ARBITRARY
<u>APPLICATION OF THE DEATH PENALTY</u>**

**Procedural History.**

Relevant procedural history for purposes of considering the issue discussed herein begins on September 18, 1996, when the grand jury returned an indictment against defendant, David Paul Hammer.  He was charged *inter alia* with killing Andrew Marti at the Allenwood Federal Correctional Complex, United States Penitentiary, White Deer, Pennsylvania on April 13, 1996, in violation of 18 U.S.C. § 1111.

On April 9, 1997, the United States, in accordance with 18 U.S.C. § 3593(a) filed its notice of intent to seek the death penalty.  The District Court, the Honorable Malcolm Muir, on August 24, 1997, allowed defense counsel to file various pleadings challenging multiple aspects of death penalty proceedings, by June 18, 1997.  Hammer's attorneys filed approximately thirteen (13) motions.  In one of these, defense counsel challenged the Constitutionality of the Federal Death

Penalty Act (hereinafter FDPA) on Eighth Amendment and other grounds.

The prosecution filed its responses.  In a series of orders beginning on September 19, and continuing through October 9, 1997, the court granted Hammer some relief while denying other motions which sought to limit or preclude the death penalty proceeding from going forward.  On September 18, 1997, this Court declined to find the FDPA unconstitutional "[r]elying on controlling Supreme Court precedent. . . . " Order of 9/18/97 (docket #190).

Following jury selection for both a guilt and penalty phase, trial began on June 2, 1998, and continued until June 22, 1998.  On that day, after fourteen (14) days of trial, defendant, with the assistance of counsel, withdrew his prior not guilty plea and admitted his guilt to having killed Marti with premeditation and malice aforethought.

The hearing contemplated by 18 U.S.C. § 3593(b) to determine whether the death penalty should be imposed began on June 30, 1998, and continued until July 20, 1998.  Counsel presented closing arguments on July 21, 22, and 23, 1998.  The jury began its deliberations on July 23, 1998, and returned its death penalty verdict on July 24, 1998.  As recounted by Judge Muir, the jury followed the Court's instructions including the completion of detailed special findings regarding aggravating and

mitigating factors.  *United States v. Hammer*, 404 F. Supp. 2d 676, 683-86 (M.D. Pa. 2005).  Ultimately, after denying new trial motions, Judge Muir on November 4, 1998, imposed the death penalty.

On direct appeal, the Third Circuit granted Hammer's motion for voluntary dismissal of the appeal, *United States v. Hammer*, 226 F. 3d 229 (3d Cir. 2000), *cert. denied*, 532 U.S. 959 (2001), and denied his rehearing petition seeking reinstatement of the appeal. *See United States v. Hammer*, 239 F.3d 302 (3d Cir.), *cert. denied*, 534 U.S. 831 (2001).  The Supreme Court denied certiorari.  *Hammer v. United States*, 534 U.S. 831 (2001).

On March 29, 2002, Hammer sought relief by proceedings under 28 U.S.C. § 2255.  After multiple revisions of pleadings, as well as pre-hearing motions, Judge Muir conducted an evidentiary proceeding beginning on July 14, 2005, and continuing intermittently until September 29, 2005.  Ultimately, in an opinion dated December 27, 2005, denied Hammer's request to withdraw his guilty plea but granted him a new penalty phase hearing on two separate bases.  *United States v. Hammer*, 404 F. Supp. 2d 676 (M.D. Pa. 2005).

Both the prosecution and defendant timely appealed aspects of that decision to the Court of Appeals.  On May 11, 2009, the Third Circuit concluded that it lacked jurisdiction to review Judge Muir's § 2255 order due to the absence of a final judgment

in the underlying criminal prosecution and remanded proceedings for another penalty hearing pursuant to § 3593. *United States v. Hammer*, 564 F.3d 628 (3d Cir. 2009).

Hammer subsequently submitted a voluminous request for the Department for reconsider its prior decision to seek the death penalty. *See United States Attorneys' Manual* 9-10.150 (providing for reconsideration of decision to seek the death penalty based on a showing of changed circumstances). On January 7, 2011, the United States Attorney filed notice of the Department's decision to continue to seek the death penalty.

The Honorable Malcolm Muir on January 7, 2011, entered an order re-assigning this case to another judge.  This Court thereafter received the case and in an order dated January 26, 2011, established a briefing schedule for special pre-hearing motions.  Hammer's attorneys, beginning on May 18 and continuing through May 23, 2011, filed a series of motions and supporting briefs.  Herewith presented is the opposition submitted to defendant's motion to declare the Federal Death Penalty Act unconstitutional because it is incomprehensible to jurors.

**Counter-Statement of Facts.**

Despite the fact that defense counsel rely upon multiple studies on death penalty juries, the prosecution does not believe that an evidentiary hearing is needed since Hammer's challenge essentially is legal in nature.

**Argument.**

1.    The Insubstantial Underpinnings of Hammer's Claim.

The context and timing of Hammer's motion to challenge the FDPA by itself should give this Court pause to grant relief. Defendant's attorneys accurately set forth the process by which jurors are presented with issues in death penalty prosecutions. (Motion at ¶¶ 2-14.)  Their primary complaints appear to be that it "is unreasonable to expect reasonably intelligent jurors to parse this melange of concepts and to properly apply these concepts in making the determination of the appropriate sentence to impose."  (Motion at ¶ 19.)

Their supporting legal argument is an odd mixture.  It has the character of a *Brandeis* brief in that it references multiple, academic studies of capital juries, all but three[1] of which pre-date 1997.  (Brief of Defendant at 3-8.)

Similarly largely untimely is the legal authority to which the defense refers.  (Brief of Defendant at 2-8.)  All of the Supreme Court cases cited antedate 1997 and do not appear directly to support their claim.  In fact, the only post-1998 precedent cited as persuasive (and certainly not binding authority), is a 2007 New Mexico State case in which a jurist dismissed the "'death notice' . . . in part, because the findings

---

[1]  It is not known whether any of the jurors who heard the evidence against Hammer in 1998 and returned a sentence of death recommendation were the subjects of those studies.

of the C[riminal] J[ustice] P[roject] . . . .    (Brief of Defendant at 7, Fn. 2.  Emphasis Supplied.)  In short, a review of this request suggests that it could have been presented in 1997, as part of defendant's earlier effort to have the FDPA declared unconstitutional.  Further undercutting this argument as well is its non-specific character.

Hammer asserts that "[t]he jurors inculcated in the culture of unanimity from the first phase deliberations will be expected to understand that, unlike the first phase, a lack of unanimity is not a failure but a legally cognizable outcome."  (Motion at ¶ 16.)  Given defendant's guilty plea, there will be no "first phase" in April 2012, only a penalty proceeding.

Beyond that, Hammer's counsel have a complete record of how jurors behaved in a familiar, capital case -- their client's proceeding in 1998.  But they do not refer to those proceedings in any fashion to support their argument that the triers of fact were "confused."[2]Given these documented omissions and flaws in

---

[2]  The prosecution acknowledges that Judge Muir in § 2255 proceedings concluded that the jury erred in not finding certain mitigating factors. *United States v. Hammer*, 404 F. Supp. 2d 676, 800 (M.D. Pa. 2005).  However, the court did not criticize those triers of fact for their actions, but based his decision on "[t]he newly presented evidence relating to mental illness . . . ."  *Id*. (Emphasis supplied.)  In point of fact, given Hammer's history of manipulation during his life, including the infamous "Jocko" videotape, the jurors understandably would have been reluctant to credit much of the details presented at the original trial and penalty phase.

defendant's reasoning, this Court should deny relief particularly given substantial, if not uniform, authority to the contrary.

2.   Decisional Law Undercuts Hammer's Claim.

This Court is hardly the first to hear complaints that the FDPA is incomprehensible to jurors based upon supposedly cogent academic studies.  Judge Pollack in *United States v. Llera Plaza*, 179 F. Supp. 2d 444, 450 Fn. 5 (E.D. Pa. 2001) confronted a similar *Brandeis* brief approach in a challenge to the FDPA and concluded as follows:

> In arguing that the aggravating factor/mitigating factor calculus is not comprehensible, defendants have drawn the court's attention to certain empirical studies based on interviews with jurors or mock jurors. *See Craig Haney et al.,* Deciding to Take a Life: Capital Juries Sentencing Instructions, 52 J. Soc. Issues 149 (1994); Craig Haney and Mona Lynch, *Comprehending Life and Death Matters: A Preliminary Study of California's Capital Penalty Instruction,* § 18 Law & Human Behavior 411 (1994); William J. Bowers, *The Capital Jury Project: Rationale, Design and Review of Early Findings,* 70 Ind. L.J. 1043 (1995).  The defendants have cited findings of these studies which may be taken to suggest that some persons find the concepts of aggravating and mitigating factors neither immediately intuitive nor amenable to clarification through standard state jury instructions. However, the studies do not establish that the concepts of aggravating and mitigating factors as used in the FDPA bear such a degree of intrinsic 'incomprehensibility' as to render them incapable of clarification through adequate jury instructions such as those to be crafted in the instant case, if a sentencing hearing is required. The studies

are thus insufficient to support the defendants' argument.

Similar conclusions have been reached by a variety of courts since that 2001 decision in the Eastern District of Pennsylvania. *United States v. Taylor*, 635 F. Supp. 2d 1246-48 (D.N.M. 2009); *United States v. Green*, 2008 WL 4000901 (W.D. Ky. 2008); *United States v. Duncan*, 2008 WL 544847 (D. Idaho 2008);  *United States v. Concepcion Sablan*, 2006 WL 1028780 (D. Colo. 2006); *United States v. Fell*, 372 F. Supp. 2d 753, 756 (D. Vt. 2005); *United States v. Perez*, 2004 WL 935260 at 2-3 (D. Conn. 2004)(finding "the empirical evidence presented by the defendant is too speculative to make assumptions about what a properly instructed jury might understand or misunderstand in this case"); *United States v. Mikos*, 2003 WL 22110948 at 17-19 (N.D. Ill. 2003)("[t]here is no justification prior to trial for this court to hold that the sentencing jury will be unable to comprehend the provisions of the FDPA or the instructions provided by the court or counsel"); *United States v. Regan*, 228 F. Supp. 2d 742, 746 (E.D. Va. 2002); *But see United States ex rel. Free v. Peters*, 806 F. Supp. 705 (N.D. Ill. 1992), *rev'd* 12 F.3d. 700 (7th Cir. 1993).

The mischief inherent in Hammer's constitutional argument begins with a basis that is contrary to law.  The "'crucial assumption' underlying the system of trial by jury is

that juries will follow the instructions given them by the trial judge." *Marshall v. Lonberger*, 459 U.S. 422, 438, n.6 (1983) (quoting *Parker v. Randolph*, 442 U.S. 62, 73 (1979)).  That assumption is "'rooted . . . in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process.'"  *United States v. Casamento*, 887 F.2d 1141, 1151 (2d Cir. 1989) (quoting *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)). The presumption is, therefore, "almost invariabl[e]." *United States v. Jass*, 569 F.3d 47, 55 & n.4 (2d Cir. 2009)); *see also, e.g., Richardson*, 481 U.S. at 206 (citing *Francis v. Franklin*, 471 U.S. 307, 325 n.9 (1985)); *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993).

In a capital case, instructions are constitutionally defective if there is a "reasonable likelihood" that they misled the jury into sentencing the defendant to death. *Boyde v. California,* 494 U.S. 370, 380 (1990) (holding there was no reasonable likelihood that jurors misinterpreted allegedly ambiguous jury instruction in death penalty case). Instructions that are only arguably ambiguous or create "only a possibility of . . . [jury] inhibition" do not fall into this category. *Id.*  at 379-84; *see also Tuilaepa v. California*, 512 U.S. 967, 976 (1994) (instructions in penalty phase of capital case constitutional

because they were "phrased in conventional and understandable terms" and had "commonsense core of meaning").

Hammer has not – and cannot – offer any evidence that rebuts the well-settled presumption that the jury will follow *this* Court's instructions at the penalty phase of *this* case. *United States v. Davis*, 609 F.3d 663, 676-77 (5th Cir. 2010)(in a death penalty case, the court "presume[s] that the jury follows their instructions"). In addition, the defendant's claim is not ripe. While he may think that this Court will adopt Judge Muir's rulings, he does not know what precise instructions this Court will give the jury at the penalty phase. *Mikos*, 2003 WL 2210948 at *17. As aptly put by Judge Pollack in *Llera Plaza* rejecting the same argument based on some of the same studies:

> If the case at bar proceeds to a sentencing phase, counsel for the defendants and counsel for the government will have the opportunity to participate fully in the process of formulating the instructions which will frame the jury's deliberations. There is no reason to believe that the jury will find the collaborative handiwork of court and counsel to be incomprehensible.

*Llera Plaza*, 179 F. Supp. 2d at 450. Accordingly, the Court should reject the claim that the FDPA is incomprehensible.

**Conclusion.**

Even apart from decisional law, Hammer's argument is an untimely and deeply flawed constitutional attack on the FDPA. This Court should adhere to the established legal principle that juries follow well-considered instructions, as well as decisional law roundly rejecting the defense claim that death penalty provisions are incomprehensible.

Respectfully submitted,

PETER J. SMITH
United States Attorney

By s/Frederick E. Martin
FREDERICK E. MARTIN
Assistant United States Attorney
PA ID 57455
Herman T. Schneebeli Federal Bldg.
240 West Third Street, Suite 316
Williamsport, PA 17701-6465
Tele: (570) 326-1935
FAX: (570) 326-7916
Electronic Mail:
Fred.Martin@usdoj.gov

Steven D. Mellin
Trial Attorney For the
Capital Case Unit
Texas ID 13920380
1331 F Street, N.W.
Washington, D.C. 20530
Tele: 202-514-1224
Electronic Mail:
Steve.Mellin2@usdoj.gov

Dated: ___June 17___, 2011

11

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :   Criminal No. 4:CR-96-0239
                                  :
            v.                    :   (Judge Slomsky)
                                  :
  DAVID PAUL HAMMER               :   **ELECTRONICALLY FILED**

### CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing

**BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO DECLARE THE FEDERAL DEATH PENALTY ACT
UNCONSTITUTIONAL BECAUSE IT IS INCOMPREHENSIBLE
TO JURORS AND RESULTS IN THE ARBITRARY
APPLICATION OF THE DEATH PENALTY**

to be electronically mailed on ____June 17_____, 2011, to:

ADDRESSEES:     Ronald C. Travis, Esquire
                rtravis@riederstravis.com

                Michael Wiseman, Esquire
                Michael_Wiseman@fd.org

                James J. McHugh, Jr., Esquire
                James_McHugh@fd.org

                James Moreno, Esquire
                James_Moreno@fd.org

                Anne Saunders, Esquire
                Anne_Saunders@fd.org


                    __S/Frederick E. Martin_____
                    FREDERICK E. MARTIN
                    Assistant United States Attorney


12