UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 4:CR-96-0239 |
| | : | |
| v. | : | (Judge Slomsky) |
| | : | |
| DAVID PAUL HAMMER | : | **ELECTRONICALLY FILED** |

**BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO DECLARE THE
FEDERAL DEATH PENALTY ACT UNCONSTITUTIONAL**

**Procedural History.**

Relevant procedural history for purposes of considering the issue discussed herein begins on September 18, 1996, when the grand jury returned an indictment against defendant, David Paul Hammer. He was charged *inter alia* with killing Andrew Marti at the Allenwood Federal Correctional Complex, United States Penitentiary, White Deer, Pennsylvania on April 13, 1996, in violation of 18 U.S.C. § 1111.

On April 9, 1997, the United States, in accordance with 18 U.S.C. § 3593(a) filed its notice of intent to seek the death penalty. The District Court, the Honorable Malcolm Muir, on August 24, 1997, allowed defense counsel to file various pleadings challenging multiple aspects of death penalty proceedings, by June 18, 1997. Hammer's attorneys filed approximately thirteen (13) motions. Among those pleadings, defense counsel sought a ruling that the Federal Death Penalty Act ("FDPA") contravened the Fifth and Eighth Amendments.

The prosecution filed its responses.  In a series of orders beginning on September 18, and continuing through October 9, 1997, the court granted Hammer some relief while denying other motions which sought to limit or preclude the death penalty proceeding from going forward.  In its first entry on September 18, 1997, the district court upheld the FDPA's constitutionality.

Following jury selection for both a guilt and penalty phase, trial began on June 2, 1998, and continued until June 22, 1998. On that day, after fourteen (14) days of trial, defendant, with the assistance of counsel, withdrew his prior not guilty plea and admitted his guilt to having killed Marti with premeditation and malice aforethought.

The hearing contemplated by 18 U.S.C. § 3593(b) to determine whether the death penalty should be imposed began on June 30, 1998, and continued until July 20, 1998.  Counsel presented closing arguments on July 21, 22, and 23, 1998.  The jury began its deliberations on July 23, 1998, and returned its death penalty verdict on July 24, 1998.  Ultimately, after denying new trial motions, Judge Muir on November 4, 1998, imposed the death penalty.

On direct appeal, the Third Circuit granted Hammer's motion for voluntary dismissal of the appeal, *United States v. Hammer*, 226 F. 3d 229 (3d Cir. 2000), *cert. denied*, 532 U.S. 959 (2001), and denied his rehearing petition seeking reinstatement of the appeal. *See United States v. Hammer*, 239 F.3d 302 (3d Cir.), *cert. denied*, 534

U.S. 831 (2001).  The Supreme Court denied certiorari.  *Hammer v. United States*, 534 U.S. 831 (2001).

On March 29, 2002, Hammer sought relief by proceedings under 28 U.S.C. § 2255.  After multiple revisions of pleadings, as well as pre-hearing motions, Judge Muir conducted an evidentiary proceeding beginning on July 14, 2005, and continuing intermittently until September 29, 2005.  Ultimately, in an opinion dated December 27, 2005, denied Hammer's request to withdraw his guilty plea but granted him a new penalty phase hearing on two separate bases.  *United States v. Hammer*, 404 F. Supp. 2d 676 (M.D. Pa. 2005).

Both the prosecution and defendant timely appealed aspects of that decision to the Court of Appeals.  On May 11, 2009, the Third Circuit concluded that it lacked jurisdiction to review Judge Muir's § 2255 order due to the absence of a final judgment in the underlying criminal prosecution and remanded proceedings for another penalty hearing pursuant to § 3593. *United States v. Hammer*, 564 F.3d 628 (3d Cir. 2009).

Hammer subsequently submitted a voluminous request for the Department for reconsider its prior decision to seek the death penalty. *See United States Attorneys' Manual* (USAM) 9-10.150 (providing for reconsideration of decision to seek the death penalty based on a showing of changed circumstances). On January 7, 2011, the United States Attorney filed notice of the Department's decision to continue to seek the death penalty.

The Honorable Malcolm Muir on January 7, 2011, entered an order re-assigning this case to another judge.  This Court thereafter received the case and in an order dated January 26, 2011, established a briefing schedule for special pre-hearing motions.  Hammer's attorneys, beginning on May 18 and continuing through May 23, 2011, filed a series of motions and supporting briefs. Herewith presented is the opposition submitted to defendant's motion to declare the Federal Death Penalty Act unconstitutional.

**Argument.**

### Introduction

Hammer's attorneys effectively renew their August 1, 1997, motion, which Judge Muir denied on September 18, 1997.  As may be expected, the constitutionality of the FDPA served as an integral aspect of their initial challenge to the Third Circuit.  It, like many other arguments, was abandoned in 2000 when Hammer then withdrew his appeal and claimed that he wished to die.

Their present argument includes statistics which have developed over the last decade.  They also rely upon the same dissenting opinions from Supreme Court Justices and Circuit Judges.  *See United States v. Hammer*, 25 F. Supp. 2d 518, 537-38 (M.D. Pa. 1998). Notwithstanding their steadfastness, more recent decisional law at the Supreme Court, as well as the Circuit and District Court levels has developed which supports the legality of the FDPA.  This Court is respectfully urged to follow this precedent.

4

A.    THE FDPA IS NOT UNCONSTITUTIONAL AND DOES NOT OPERATE IN AN ARBITRARY, CAPRICIOUS AND IRRATIONAL MANNER.

Defendant argues that the FDPA has operated in an arbitrary, capricious and irrational manner since its enactment, in violation of the Eighth Amendment.  (Brief of Defendant at 1-7.)  Distilling the argument to its essence, the defendant claims that the FDPA is invalid first, because the federal death sentence is sought infrequently, and imposed even more infrequently; and second, because it is meted out indiscriminately to some death-eligible defendants, but not to others.

Hammer relies on concurring opinions in *Furman v. Georgia*, 408 U.S. 238 (1972), which struck down "first generation" state death penalty statutes nearly 40 years ago.  (Brief of Defendant at 4, Fn. 2.)  He eschews any analysis of the Supreme Court's robust death penalty jurisprudence since *Furman*, which clarified and colored the meaning and application of that case and upheld various "second generation" capital statutes. He similarly avoids the holdings of the various United States Courts of Appeal squarely and unanimously rejecting his argument.

As these cases demonstrate, the constitutionality of the FDPA hinges not on outcomes, *i.e.*, who and how many are prosecuted for capital crimes, and who and how many are in fact executed, but rather on process: whether the prosecution decision and the discretion of the sentencing body are appropriately guided so as to limit the potential for arbitrariness and promote a "heightened reliability"

in death sentencing. *See, e.g., Murray v. Giarratano*, 492 U.S. 1, 8-9 (1989).  In point of fact, the Second Circuit has held that, "[t]he FDPA does not undermine 'heightened reliability,' it promotes it." *United States v. Fell*, 360 F.3d 135, 144 (2d Cir. 2004).

In the decades since *Furman*, the Supreme Court has repeatedly explained the import of *Furman* and the fundamental principle of its capital punishment jurisprudence: "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia*, 428 U.S. 153, 189 (1976); *see also McCleskey v. Kemp*, 481 U.S. 279, 302, 305-07 (1987) (citing *Gregg*).  The *Furman* Court was not, therefore, concerned with the exercise of prosecutorial discretion to seek the death penalty or the ultimate number of cases in which the death penalty was imposed, but rather, with the need to channel and limit the discretion of the sentencing body.  The lack of any such guidance in the statutory schemes at issue in *Furman* rendered them unconstitutional.

To comply with principles articulated in *Furman* and *Gregg*, a death penalty statute must "(1) rationally narrow the class of death-eligible defendants; and (2) permit a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his

crime." *Kansas v. Marsh*, 548 U.S. 163, 173-74 (2006); *see also, e.g., Zant v. Stephens*, 462 U.S. 862, 877 (1983)(capital sentencing scheme must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder"); *United States v. Jones*, 527 U.S. 227, 381 (1999); *Maynard v. Cartwright*, 486 U.S. 356, 361-62 (1988).  These requirements serve to inject capital punishment proceedings with the "heightened reliability" that must accompany the death penalty decision.  *Fell*, 360 F.3d at 143 (collecting Supreme Court decisions holding that "[t]he finality of the death penalty requires a 'greater degree of reliability' when it is imposed").

Congress devised the FDPA in 1994 to codify the requirements of *Furman* and other Supreme Court decisions mandating the narrowing and individualizing functions. Unlike the first generation statutes treated in *Furman*, the FDPA establishes a multi-step procedure, reviewed above, explicitly requiring a jury to find beyond a reasonable doubt the existence of a gateway mental state factor and at least one statutory aggravating factor ("eligibility factors") to narrow the class of death eligible defendants. *See* § 3593(e)(2); *United States v. Duncan*, 2008 WL 711603 at *2 (D. Idaho Mar. 14, 2008)(No. CR-07-23-N-EJL); *United States v. Talik*, 2007 WL 4570704 at *2 (N.D.W. Va. Dec. 26, 2007) (No. Crim. A 5:06CR51)("Both the mental states and the aggravating circumstances provided for in the

FDPA do genuinely narrow the class of persons eligible for the death penalty"); *United States v. Diaz*, 2007 WL 656831 at *9 (N.D. Cal. Feb. 28, 2007)(No. CR 05-00167 WHA)("The FDPA thus narrows the class of death eligible defendants twice.  First, the jury must find one of the mental states . . . . Second, the jury must find at least one statutory aggravating factor").

The FDPA requires a jury to consider aggravating factors - statutory and non-statutory - and mitigating factors to channel its discretion and provide for an "individualized determination on the basis of the character of the individual and circumstances of the crime," before weighing aggravators and mitigators to arrive at a final decision.  *See United States v. Taylor,* 2008 WL 217115 at *8 (E.D. Tenn. Jan. 24, 2008)(No. 1:04-CR-160)(citing *United States v. Cooper*, 91 F. Supp. 2d 90, 97 (D.D.C. 2000) (referencing *Zant*, 462 U.S. at 878)); accord *United States v. Sampson*, 486 F.3d 13, 24 (1st Cir. 2007)); *United States v. Fields*, 516 F.3d 923, 945-46 (10th Cir. 2008).  In short, the FDPA complies with Supreme Court mandates concerning the death penalty decision-making process.

The Second Circuit has recognized this, holding in *Fell* that the FDPA "standard permits the jury to have before it all possible relevant information about the individual defendant whose fate it must determine . . . as a result, the FDPA does not undermine 'heightened reliability,' it promotes it." *Fell*, 360 F.3d at 144 (citing *Jurek v. Texas*, 428 U.S. 262, 276 (1976)). A multitude of

other federal courts agree, specifically rejecting challenges similar or identical to those at bar. *See United States v. Caro*, 597 F.3d 608, 622-23 (4th Cir. 2010)(outlining "safeguards" established by the FDPA to meet Supreme Court standards); *Fields*, 516 F.3d at 945-46 ("In reality, statutory factors narrow the class of defendants eligible for the death penalty") (internal quotations omitted); *Sampson*, 486 F.3d at 23-24 (holding "the FDPA fully meets the requirements of guided discretion" and federal death penalty protocol "is not arbitrary"); *United States v. Barrett*, 496 F.3d 1079, 1110 (10th Cir. 2007) (identical procedures under the Anti-Drug Abuse Act "clearly narrow[] the class of persons eligible for the death penalty"); *United States v. O'Reilly*, 545 F. Supp. 2d 630, 2008 WL 284003 at *2 (E.D. Mich. 2008); *United States v. Sablan*, 2006 WL 1028780 at *3 (D. Colo. Apr. 18, 2006)(No. 00-CR-00531-WYD), *United States v. Le*, 327 F. Supp. 2d 601, 608- 09 (E.D. Va. 2004), *United States v. Llera* Plaza, 179 F. Supp. 2d 444, 451-52 (E.D. Pa. 2001). Hammer fares no better citing statistics purporting to establish that the death penalty is rarely sought and obtained in federal court. (Brief of Defendant at 5-6.)  This angle of attack, like selective reliance on *Furman*, has been rejected time and again, from the highest to the lowest levels of the federal judiciary. *Gregg*, 428 U.S. at 199 ("The existence of these discretionary stages [of prosecution of capital case] is not determinative of the issues before us"); *McCleskey*, 481 U.S. at 307 n. 28.("[t]he Constitution is not offended

by inconsistency in results based on the objective circumstances of the crime"); *Sampson*, 486 F.3d at 23-24 ("Nor does the frequency with which the federal death penalty is sought render the FDPA unconstitutional"); *United States v. Mitchell*, 502 F.3d 931, 983 (9th Cir. 2007) ("That federal executions are rare, however, does not render the FDPA unconstitutional"); *United States v. Barnes*, 532 F. Supp. 2d 625, 633 (S.D.N.Y. 2008)(bifurcated eligibility and selection decisions comply with *Gregg*; it is not for district court to overturn constitutional act of Congress even if court believes federal death penalty is arbitrary); *United States v. Hammer*, 25 F. Supp. 2d 518, 546-47 (M.D. Pa. 1998) ("The mere fact that the government has only sought the death penalty in a *de minimus* number of murder cases involving federal inmates is not sufficient to demonstrate that the prosecution of [the defendant] is arbitrary and capricious. More is required"); *United States v. O'Driscoll*, 203 F. Supp. 2d 334, 341 (M.D. Pa. 2002)(rejecting defendant's argument that because of the low number of capital prosecutions, the government's pursuit of the death penalty is arbitrary and capricious); *Sablan*, 2006 WL 1028780 at *11("I find that the FDPA, by requiring the weighing of aggravating and mitigating factors, provides clear and objective standards sufficient to guide the discretion of the jury in capital cases and meets the constitutional requirements set forth in *Furman*, and the fact that the federal death penalty is infrequently sought and imposed does not render it

unconstitutional"); *Taylor*, 2008 WL 217115 at *4 (defendant did not overcome burden against reasonable inference advanced by government that low number of federal capital defendants reflects careful government selection process).

Accordingly, the defendant's claim that the paucity of FDPA prosecutions and executions makes the statute unconstitutionally arbitrary, capricious and irrational should be rejected.

B.    THE USE OF THE SUFFICIENCY STANDARD DURING THE SELECTION PHASE OF THE TRIAL DOES NOT VIOLATE THE SIXTH AMENDMENT.

Hammer mounts a challenge to the FDPA based upon *Ring v. Arizona*, 536 U.S. 584 (2002) and other Supreme Court cases on sentencing. (Brief of Defendant at 6-9.)  In *Ring*, the Supreme Court held that, under the Sixth Amendment, the facts that render a defendant eligible for a death sentence - the requisite state of mind factors under 18 U.S.C. § 3591(a)(2) and at least one statutory aggravating factor under 18 U.S.C. § 3592(c) (collectively "eligibility factors") - are the functional equivalents of elements of the offense and must be found beyond a reasonable doubt by a jury. 536 U.S. at 601-09.  It does not follow logically as Hammer suggests, that merely because some aspects of sentencing must be proved to the jury beyond a reasonable doubt, also the weighing of aggravating and mitigating factors must follow that same standard.

Congress obviously did not engraft on the FDPA a reasonable doubt standard on the final weighing process.  This is consistent with pre-FDPA federal decisions observing that doing so "confuses [two different concepts] proof of facts with the weighing of facts at sentencing." *Ford v. Strickland*, 696 F.2d 804, 818 (11th Cir. 1983).  Moreover, § 3594(e) essentially tracks verbatim the death sentencing provision of the Anti-Drug Abuse Act of 1988, 21 U.S.C. § 848(K).  Appellate decisions interpreting that statutory aspect have concluded that "sufficiently outweighs," rather than "beyond a reasonable doubt," is the correct standard sentencing juries should apply in the final determination of sentence.  *United States v. Flores*, 63 F.3d 1342, 1376 (5th Cir. 1995); *United States v. Chandler*, 996 F.2d 1073, 1091-92 (11th Cir. 1993).

Further support may be inferred from the Supreme Court's decision in *Jones v. United States*, 527 U.S. 373 (1999).  While in *Jones*, the Supreme Court did not resolve any claim concerning the weighing standard *per se*, but in reviewing generally the provision of the FDPA, the court noted the conspicuous requirements that aggravating factors be proven beyond a reasonable doubt and mitigating factors be proven by a preponderance of the evidence, whereas the final sentence determination turned on whether the aggravating factors "outweighed" the mitigating factors.  *Jones*, 527 U.S. at 377.  *Accord Walton v. Arizona*, 497 U.S. 639, 651 (1990)(finding constitutional the weighing provision of *Arizona*).  Moreover, even the dissent in *Jones* recognized that weighing is a distinct function from fact-finding.  *Jones*, 527 U.S. at 408 Fn. 8 ("weighing is not numeric:

the perceived significance, not the number, of aggravating and mitigating factors determines the decision;" "[weighing] requires qualitative not quantitive evaluation." (Citation and internal quotation marks omitted.)

Defendant's reference to state law decisions is unhelpful. (Brief of Defendant at 9.)  While not controlling, simply put, those State Supreme Court decisions conflate fact-finding with weighing, which, as previously stated, are distinctive processes.

Defendant claims under *Ring* are foreclosed by recent decisions from the Circuit Courts of Appeals, which have upheld the FDPA and rejected similar or identical challenges.  *United States v. Barrett*, 496 F.3d 1079, 1107 (10th Cir. 2007); *United States v. Sampson*, 486 F.3d 13, 31-32 (1st Cir. 2007); and *United States v. Fields*, 483 F.3d 313, 345-46 (5th Cir. 2007).  There is no basis for a contrary ruling in this case. The FDPA is constitutional as it does not preclude a jury from finding statutory aggravating factors and requires the government to prove these factors beyond a reasonable doubt.

C.   THE FDPA DOES NOT LACK A PRINCIPLED BASIS FOR DISTINGUISHING CASES IN WHICH THE DEATH PENALTY IS SOUGHT FROM THOSE WHICH IT IS NOT.

Hammer claims that the FDPA is unconstitutional because he cannot discern a principled basis for distinguishing between cases where death is imposed and cases where it is not.  (Brief of Defendant at 10.)  This argument suffers from a flaw; discrepancies in outcome do not indicate a constitutional defect in a death penalty statute, provided the law appropriately channels and guides the discretion of the sentencing body.

In support of his claim, Hammer relies on selective quotation of two Supreme Court cases, *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982), and *Kennedy v. Louisiana*, 554 U.S. 407, 425 (2008), and on more than four pages of summaries of federal cases in which the death penalty could have been, and in some cases was, imposed. However, he cites no case that specifically adopts or endorses his viewpoint. This is undoubtedly because the Supreme Court and other federal courts have, over and over, rejected identical arguments made by other capital defendants. *See, e.g., McCleskey v. Kemp,* 481 U.S. 279, 306-07 (defendant cannot prove a constitutional violation by demonstrating that other similarly situated defendants did or did not receive the death penalty); Sampson, 486 F.3d at 24-25 (holding that case summaries are "wholly inadequate to prove that the death penalty has been imposed in an arbitrary manner" because they are "devoid of details and fail to account for the objective circumstances of the underlying crimes"); *United States v. Barnes*, 532 F. Supp. 2d 625, 633-34 (S.D.N.Y. 2008)(holding that arguments premised upon case summaries are "not supported by the case law"); *see United States v. Taylor,* 2008 WL 217115 at *4-5 (E.D. Tenn. Jan. 24, 2008)(holding defendant has not shown that the FDPA violates the constitutional requirement of fair and consistent sentencing proceedings); *United States v. Solomon*, 2007 WL 1468794 at *2 (W.D. Pa. May 14, 2007)(No. 02:05CR385) (refusing to find Eighth Amendment violation where case law does not support defendant's view); *United States v. James*, 2007 WL 914249 at *5 (E.D.N.Y. Mar. 24, 2007) (No. 02 CV 0778(SJ)) (finding FDPA provides a principled basis for seeking the death penalty).

The quotations grafted from *Eddings*, 455 U.S. at 112 ("that capital punishment be imposed fairly, and with reasonable consistency, or not at all"), and *Kennedy*, 554 U.S. at 425 ("When the law punishes by death, it risks its own sudden descent into brutality, transgressing the constitutional commitment to decency and restraint"; "[C]apital punishment must 'be limited to those offenders who commit "a narrow category of the most serious crimes" and whose extreme culpability makes them 'the most deserving of execution'"), are the only legal support the defendant offers. (Brief of Defendant at 10.)  The *Kennedy* language does nothing to advance his position; it merely states in different terms the central tenet of the Supreme Court's death penalty jurisprudence: that capital punishment statutes must narrow the class of eligible offenders and permit an individualized determination of each defendants' culpability.

The *Eddings* quotation is taken out of context. In *Eddings*, the Supreme Court reversed a state death sentence of a 16-year-old defendant because the trial court refused to consider as a mitigating circumstance the defendant's unhappy upbringing and emotional disturbance, including evidence of turbulent family history and beatings by a harsh father.  *See Eddings*, 455 U.S. at 113.  In *Sampson*, the First Circuit ruled on a claim similar to the one Hammer makes here, and specifically explained why the quoted language of *Eddings* should not be used to support the defendant's argument. It stated that such reliance on *Eddings*:

> [I]gnores the remainder of the *Eddings* Court's discussion of consistency, in which the Court recognized that a consistency produced by ignoring individual differences is a false consistency. Indeed, the thrust of Eddings is that those who make sentencing decisions must be permitted to focus on the individual characteristics of the defendant and the circumstances of the crime. And, finally, the argument cannot survive *McCleskey*, in which the Court stated that the Constitution is not offended by inconsistency in results based on the objective circumstances of the crime. Numerous legitimate factors may influence . . . a defendant's ultimate sentence, even though they may be irrelevant to his actual guilt.

Sampson, 486 F.3d at 24-25; see also *Taylor*, 2008 WL 217115 at *4 (analogizing defendant's reliance on *Eddings* to his misguided reliance on *Furman* in support of arbitrariness challenge to FDPA; holding defendant did not establish FDPA had unfair or inconsistent procedures, and his "emphas[is] on the effect of the FDPA" was an "unavailing argument"). Accordingly, the defendant's reliance on *Eddings* is unpersuasive and should be disregarded by the Court.

More importantly, the conclusion Hammer draws from FDPA case summaries is wrong. The FDPA does provide a principled process for determining when the death penalty should be imposed - one that affords exactly the discretionary sentencing endorsed by *McCleskey*. See 408 U.S. at 306-07. There are opportunities at each junction of the eligibility and selection procedure for the sentencing body to exercise discretion favoring the defendant. Thus, unlike the process in *Eddings*, the FDPA mandates consideration of any mitigating factor found by any single juror by a preponderance of the evidence. § 3593(c) - (e). In sum, the statute prescribes a reasoned framework

to guide the sentencing body in making eligibility and selection decisions.  Defendant's attempt to show arbitrariness or capriciousness by presenting varying outcomes of other federal death penalty prosecutions should fail.

D.    THE FDPA DOES NOT VIOLATE THE EVOLVING "STANDARDS OF DECENCY" OF THE EIGHTH AMENDMENT.

Hammer claims that the death penalty is cruel and unusual punishment in violation of the Eighth Amendment as it violates "evolving standards of decency." (Brief of Defendant at 13-15.) Indeed, this claim is foreclosed by Supreme Court and Second Circuit precedent. *See, e.g.*, *Gregg*, 428 U.S. at 169, 187 (holding that the death penalty is not cruel and unusual punishment and explaining that capital punishment is an essential function as an expression of society's moral outrage at particularly offensive conduct); *Id.* at 207, 226 (White, J., concurring); *See United States v. Quinones*, 313 F.3d 49, 61 (2d Cir. 2002)("[t]he Supreme Court expressly held in Gregg that, to the extent our standards of decency have evolved since the enactment of the Constitution, they still permit punishment by death for certain heinous crimes such as murder") Accordingly, the defendant's argument in support of his motion should be rejected.

E.    THE FDPA DOES NOT VIOLATE THE FIFTH AND EIGHTH AMENDMENTS.

Hammers's generalized argument asserting that the FDPA violates the Fifth and Eight Amendments does not contain new or separate arguments from those in the previous sections of his brief in support of the motion to declare the FDPA unconstitutional.  Instead, the final aspect of his brief simply quotes various Justices and Circuit

Judges expressing their concerns regarding the death penalty. (Brief of Defendant at 15-18.)  Those doubts, even when repeatedly presented, do not provide a basis for finding the FDPA unconstitutional.

**Conclusion.**

Hammer's attorneys have not advanced any persuasive arguments, let alone controlling or pertinent decisional law, to support their claim that in diverse fashions the FDPA is unconstitutional. Consequently, this Court should deny defendant relief and allow the resentencing hearing to go forward.

Respectfully submitted,

PETER J. SMITH
United States Attorney

By____s/Frederick E. Martin_____
FREDERICK E. MARTIN
Assistant United States Attorney
PA ID 57455
Herman T. Schneebeli Federal Bldg.
240 West Third Street, Suite 316
Williamsport, PA 17701-6465
Tele: (570) 326-1935
FAX: (570) 326-7916
Electronic Mail:
Fred.Martin@usdoj.gov

Steven D. Mellin
Trial Attorney For the
Capital Case Unit
Texas ID 13920380
1331 F Street, N.W.
Washington, D.C. 20530
Tele: 202-514-1224
Electronic Mail:
Steve.Mellin2@usdoj.gov

Dated: ___June 20_____, 2011

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA       :   Criminal No. 4:CR-96-0239
                               :
            v.                 :   (Judge Slomsky)
                               :
 DAVID PAUL HAMMER             :   **ELECTRONICALLY FILED**

## CERTIFICATE OF SERVICE

    I hereby certify that I caused a true and correct copy of the foregoing

**BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO DECLARE THE
FEDERAL DEATH PENALTY ACT UNCONSTITUTIONAL**

to be electronically mailed on ___June 20_____, 2011, to:

ADDRESSEES:     Ronald C. Travis, Esquire
                rtravis@riederstravis.com

                Michael Wiseman, Esquire
                Michael_Wiseman@fd.org

                James J. McHugh, Jr., Esquire
                James_McHugh@fd.org

                James Moreno, Esquire
                James_Moreno@fd.org

                Anne Saunders, Esquire
                Anne_Saunders@fd.org



                 s/Frederick E. Martin
                FREDERICK E. MARTIN
                Assistant United States Attorney


19