# Exhibit A

April 14, 2011

Frederick E. Martin, AUSA
Federal Building
240 West Third Street
Suite 316
Williamsport, PA  17701

      Re:   United States vs. David Hammer

Dear Fred:

On April 5, 2011, I attended the Federal Public Defender's CJA training program. During one phase of the training, United States Attorney Smith discussed the government's obligations to comply with Pennsylvania Rule of Professional Conduct 3.8 regarding providing discovery for both the guilt phase and sentencing. As I understood the comments made by United States Attorney Smith, he stated that your office is subject to Pa. Rule 3.8 and that there has been interoffice training concerning not only the provision of "evidence" but also "information" in the form of summaries of the content of documents when the documents themselves may not be discoverable under FRCP 16 or when the document itself might otherwise be considered Jencks material.

Based upon my understanding of what U.S. Attorney Smith stated, we would request the following documents, or, in the alternative, if you believe the documents themselves should not be disclosed, we would request the "informational" summary of the non-disclosed documents:

1)    David Paul Hammer's entire Central Inmate File. Although we recently were provided with an update on his central file, from past cases I believe that certain portions of the file were not duplicated and provided on the basis that certain portions of the file are exempt from disclosure under the Freedom of Information Act. Although we did receive items which were stamped FOI EXEMPT, it is my understanding that that stamp represents a determination by the BOP that the documents are "exempt" from non-disclosure as opposed to those being documents which are not to be disclosed under the Act. As I understood U.S. Attorney Smith's

Frederick E. Martin, AUSA
April 14, 2011
Page Two

---

presentation, it is those types of documents which fall under the "informational" summary of content as he described.

2) A copy of all FBI 302s which were created in conjunction with the investigation and prosecution of the instant case, including any and all reports pertaining to investigations undertaken with respect to alleged aggravating factors, and investigations undertaken with respect to mitigating circumstances as asserted by the defense.

3) I previously requested a copy of the DHO files created and maintained with respect to the various administrative write ups Mr. Hammer has received and provided to you a copy of those write ups. In response to this request, you forwarded a letter of April 12th advising me that the secretary of the Disciplinary Hearing Office at Terre Haute advised that there are no separate DHO files maintained. We believe that there are, in fact, separate DHO files as same have been produced and displayed at DHO hearings which Mr. Hammer attended. Included in those files are photographs, primarily of Mr. Hammer's wrists which memorialize the fact that on the occasions when he was written up for assaultive conduct with respect to the staff at Terre Haute, these incidents occurred because in violation of the "front cuff" order, the officer cuffed Mr. Hammer's hands to the rear and while escorting Mr. Hammer was pulling or tugging on the handcuffs which caused injuries to Mr. Hammer's wrists. The updated central file material provided to me does not include any photographs. We are not suggesting that there is a special file consisting of all of the Hammer write ups, but we believe that each of the individual write ups are maintained in DHO files and likely assigned numbers consistent with the number of the write up or may be maintained by either date of incident or date of hearing. All of this information is on the list of write ups I previously provided to you.

4) Pursuant to the Capital Crimes protocol, Section 9-10.070 requires consultation with the family of the victim concerning the decision on whether to seek the death penalty. Section 9-10.080 (8) of that protocol requires consideration of the views of the victim's family on seeking the death penalty and that other victim impact evidence should be provided. While recognizing that there is decisional authority which appears to support a position that we are not entitled to a copy of the actual written submission made by the office of the United States Attorney for the Middle District of Pennsylvania, my understanding of what US Attorney Smith said on April 5, 2011, is that we would be entitled an "informational outline" which would advise us of any and all contacts made by the government with the Marti family during the course of the reconsideration of whether

Frederick E. Martin, AUSA
April 14, 2011
Page Three

---

this case should once again be authorized for death, and a summary of the position of the Marti family in that regard.

5)   Further, with respect to the protocol, Section 9-10.080A(5), we would ask for an informational outline with respect to the Death penalty act assessment undertaken by the Office of the United States Attorney for the Middle District of Pennsylvania, including the mitigating factors deemed applicable by the office.

We thank you in advance for your cooperation in providing this requested "information" or copies of the requested documents.

Very truly yours,

RIEDERS, TRAVIS, HUMPHREY, HARRIS,
WATERS & WAFFENSCHMIDT

Ronald C. Travis, Esquire

RCT/srb