# Exhibit A



FILED

FEB 22 2010

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.                                                    CRIMINAL ACTION NO. 2:98cr47

RICHARD THOMAS STITT,

Defendant.

*MEMORANDUM OPINION AND ORDER*

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 17, 1999, after a jury trial and subsequent penalty phase, the Court sentenced Richard Thomas Stitt ("Defendant") to death on each of three counts of Murder During a Continuing Criminal Enterprise in violation of 21 U.S.C. § 848(e)(1)(A) (2000). The Court also sentenced Defendant to life imprisonment for Continuing Criminal Enterprise in violation of 21 U.S.C. § 848(a), (c) (2000) and Murder With a Firearm During a Drug Trafficking Crime in violation of 18 U.S.C. § 924(i)(2)(l) (2000). In addition, Defendant was sentenced to various lesser terms of imprisonment on seven other counts.

On May 25, 2001, the United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit") affirmed Defendant's convictions and sentences. *United States v. Stitt*, 250 F.3d 878, 900 (4th Cir. 2001). On May 13, 2002, the United States Supreme Court denied certiorari. *Stitt v. United States*, 535 U.S. 1074 (2002). On May 13, 2003, Defendant filed a motion to Vacate, Set Aside or Correct a Sentence Previously Imposed pursuant to 28 U.S.C. § 2255 (2000).

415

Defendant argued that his sentence was invalid, among other reasons, because of ineffective assistance of counsel. On April 1, 2005, the Court entered a Memorandum Opinion & Order vacating Defendant's three death sentences on the basis of ineffective assistance of counsel and stating that the Court "shall schedule a hearing to correct the sentence as may appear appropriate." *Stitt v. United States*, 369 F. Supp. 2d 679, 695, 700 (E.D. Va. 2005). This Court declined to permit the United States to seek the death penalty, but imposed life without parole on Defendant. *Stitt v. United States*, 475 F. Supp. 2d 571, 578 (E.D. Va. 2007). The Fourth Circuit reversed this Court's decision to sentence Defendant to life imprisonment without calling a new sentencing jury. The case was remanded for a new capital sentencing hearing conducted pursuant to 21 U.S.C. § 848(g). *United States v. Stitt*, 552 F.3d 345, 356 (4th Cir. 2008).

Now before the Court are the Government's Second Amended Notice of Intent to Seek the Death Penalty; Defendant's Motion in Limine as to the Government's Notice of Procedures to Follow in Sentencing; and Defendant's Motion to Strike the Government's Second Amended Notice of Intent to Seek the Death Penalty. On October 26, 2009, the Government filed its Second Amended Notice of Intent to Seek a Sentence of Death in the above-styled case. On November 25, 2009, the Government filed a Notice of Procedures to Follow in the Sentencing Hearing. On December 18, 2009, Defendant filed a Motion in Limine as to the Government's Notice of Procedures. Additionally, Defendant filed a Motion to Strike the Government's Notice of Intent to Seek the Death Penalty and Anticipatory Election of Procedures on December 31, 2009. The Government responded to Defendants Motions on January 26, 2010. Defendant filed a reply on February 3, 2010.

The Court held a hearing on these matters on February 8, 2010. At the hearing, the Court

denied the Government's Second Amended Notice of Intent to Seek the Death Penalty. Furthermore, the Court held that it would follow the provisions of 21 U.S.C. § 848 (g)-(r), and apply the Confrontation clause at Defendant's resentencing hearing. Finally, the Court directed the parties to convene within the next 20 days to determine the witness list for the resentencing hearing. This Memorandum Opinion and Order further expiates the Court's rulings.

## II.  DISCUSSION

### A. Government's Filling of Amended Notice of Intent to Seek the Death Penalty

In its Motion to Strike, Defendant argues that the Government failed to seek leave of Court to file the October 2009 Amended Notice, and that the Government has not proffered good cause to amend. There is essentially a two part inquiry for the Court to determine whether or not to allow an Amended Notice of Intent to Seek the Death Penalty under both the Federal Death Penalty Act ("FDPA") and the former Anti-Drug Abuse Act ("ADAA"): (1) Good Cause; and (2) Prejudice. Title 21 U.S.C. § 848(h)(2) (repealed) states that "the court may permit the attorney for the Government to amend this notice for good cause shown." Title 18 U.S.C. § 3593(a) also states that a court "may permit the attorney for the government to amend the [death] notice upon a showing of good cause."

The good cause requirement in § 3593(a) "must focus on the diligence of the government in uncovering the new information contained in the Amended Death Notice and the timing of when that information was obtained. Absent reasonable diligence there can be no good cause." *United States v. Cuong Gia Le*, 316 F. Supp. 2d. 343, 349 (E.D. Va. 2004). The burden is on the government to show good cause for amending the Death Notice. *Id.* Furthermore, the Government may present any information relevant to an aggravating factor for which notice has been provided. The information is admissible regardless of its admissibility under the rules

3

governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. *See* 18 U.S.C. § 3593(c); *See also United States v. Pitera*, 795 F. Supp. 571, 573 (E.D.N.Y. 1992) (holding that good cause is demonstrated where "the government's application was made in good faith and the defendant was not prejudiced").

In the instant case, the Government seeks to amend the Notice filed on August 13, 1998 by adding non-statutory aggravating factors, and deleting the prior non-statutory aggravating factor of "future dangerousness." The primary function of non-statutory aggravating factors is to provide the jury with "all possible relevant information about the individual defendant whose fate it must determine." *United States v. Jordan*, 357 F. Supp. 2d 889, 903 (E.D. Va. 2005) (quoting *Jurek v. Texas*, 428 U.S. 262, 276 (1976)); *see also United States v. O'Reilly*, 545 F. Supp. 2d 630, 634 (E.D. Mich. 2008). "When a jury finds the Government proved at least one non-statutory aggravating factor beyond a reasonable doubt, it must determine if that factor(s) and the statutory aggravating factors sufficiently outweigh mitigating factors to impose a death sentence." *O'Reilly*, 545 F. Supp. 2d at 634.

The October 2009 Notice restates the same statutory aggravating factors listed in the August 1998 Notice. Essentially, the October 2009 Notice identifies three types of non-statutory aggravating factors: (1) Defendant's prior convictions; (2) Prior acts of unadjudicated misconduct; and (3) Victim Impact. Among the new non-statutory aggravating factors alleged in the October 2009 Notice are: an allegation that in 1998, an incarcerated Defendant attempted to obstruct justice by directing a coconspirator to lie to law enforcement officers (Am. Notice, 10, ¶ 60); a 2004 incident of Defendant allegedly threatening his girlfriend from prison (Am. Notice, 11, ¶ 61); other alleged incidents of violence from approximately 1992- 1996; and the inclusion

4

of "victim impact" allegations (*e.g.* Am. Notice, 20, ¶¶ 62-63). According to the Government's Notice of Procedures to Follow In the Sentencing Hearing, the Government intends to establish these aggravators by calling live witnesses, introducing transcripts of testimony from the first trial, and hearsay evidence. Furthermore, the Government intends to present victim impact evidence through live testimony by family members of the murder victims, victim statements, or prior recorded testimony.

The Government argues in its Response to Defendant's Motion to Strike that it easily meets the "good cause" threshold because the Amended Notice reflects the full extent of Defendant's criminal activity which the Government will be able to prove. Furthermore, although some of the Government's evidence involves a new alleged offense and victim impact, the Government contends that this does not necessarily mean that the evidence will be so unduly prejudicial as to render the sentencing fundamentally unfair and violate due process. The Government argues that the seven months between when the Government filed its Amended Notice and the anticipated commencement of voir dire in this case (May, 2010) is enough time for Defendant to prepare to meet the evidence the Government intends to introduce against him. Therefore, the Defendant is not prejudiced.

It is undisputed that the Government did not attempt to make a good cause showing *before* filing its Amended Death Notice. Instead, the Government waited until after the filing of the October 2009 Amended Death Notice to attempt to make its case of good cause for the amendment and after Defendant moved to strike. However, "the failure to file a motion for leave to amend the Death Notice setting forth the requisite good cause is at best a procedural misstep, but not a fatal error. This is so because while the statute mandates a showing of good cause, it does not prescribe the procedure by which the showing should be made." *Cuong Gia Le*, 316 F.

5

Supp. 2d at 347.  Therefore, the Government must still make a showing of good cause regardless of when this showing is made.

The sentencing jury should have the benefit of the most inclusive view of the Defendant's conduct.  *Zant v. Stephens*, 462 U.S. 862, 879 (1983); *Jurek*, 428 U.S. at 276; *see also United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999) (allowing amendment to notice of intent for good cause when at least one of the instances of violence occurred after the filling of the original notice and had a bearing on the factor of future dangerousness); *United States v. Pretlow*, 770 F. Supp. 239, 242 (D.N.J. 1991) (finding good cause where new factors had plausible connection to facts).  However, what is clear from the case law that the Government presents is that these were not cases in which the Defendant had been previously sentenced and was currently facing a resentencing based on a prior error, and an amended notice of intent to seek the death penalty with additional aggravators.  For example, the Government cites *United States v. Pitera*, 795 F. Supp. 571, 573 (E.D.N.Y. 1992) for the notion that a court may permit an amendment for additional crimes to a death penalty notice for good cause and when there is no prejudice.  However, in that case, the defendant was *always* on notice of the government's intent to rely on the seven additional homicides in seeking the death penalty, and the amendment would have been allowed *before* the defendant was sentenced.  Similarly in *United States v. Cuff*, 38 F. Supp. 2d 282, 285 (S.D.N.Y. 1999), the two murders that the court allowed the government to add to the death notice occurred after the passage of the FDPA, but *before* the defendant was originally sentenced.

The instant case is in stark contrast to those in that here, Defendant was already sentenced once to the death penalty in 1999, and is now facing a resentencing based on prior errors. Therefore, although the jury should have the benefit of knowing as much about Defendant's

background as possible before rendering a verdict, the amendments have potentially onerous consequences for Defendant in this case. Accordingly, Defendant should be placed in exactly the same position that he was at the time of his original sentencing without the government having the benefit of establishing aggravators by new evidence obtained after the fact, or evidence that was overlooked or not used in the first sentencing. *See Stitt*, 552 F.3d at 356 (reversing district court's decision after finding that it "conflicts with our admonition that the defendant be placed in the 'same position' as if there was no error," and that "[i]n this case, that position would be awaiting a penalty phase after having been convicted of death-eligible offenses"); *see also United States v. Hadden*, 475 F.3d 652, 665 (4th Cir. 2007) (holding that the "goal of § 2255 review is to place the defendant 'in exactly the same position he would have been' had there been no error in the first instance") (quoting *United States v. Silvers*, 90 F.3d 95, 99 (4th Cir. 1996)); *United States v. Taveras*, 488 F. Supp. 2d 246, 251 (E.D.N.Y. 2007) (finding no prejudice to defendant where the new proposed notice would not add new allegations, but merely reorganized them in response to the court's ruling).

The Court finds that the risks of undue prejudice to Defendant are too great in this case to permit the admission of new non-statutory aggravating factors. Accordingly, the Government's Second Amended Notice of Intent to Seek the Death Penalty is **DENIED**.

### B. Defendant's Motion to Strike

#### 1. Procedures that the Court will Follow at the Resentencing Hearing

In its Motion to Strike, Defendant seeks to select procedures from both the ADAA and the FDPA as the procedures the Court should follow in conducting the sentencing phase hearing. The Defendant relies on *United States v. Hager*, 530 F. Supp. 2d 778 (E.D. Va. 2008) for this proposition. In that case, the court outlined each part of the capital sentencing procedures in §

848 and decided which provisions were substantive and which were procedural.  The court then applied the substantive provisions of § 848, and the procedural provisions of § 3591.  The Government argues in response that although it suggested this approach to the Fourth Circuit in *United States v. Stitt*, the Court squarely rejected the *Hager* method; therefore, this Court must apply all of the capital sentencing provisions in § 848.  Defendant denies that the *Stitt* Court rejected this approach, and argues instead that the Fourth Circuit authorized only the empaneling of a new jury under § 848.

The Government is correct that the Fourth Circuit held in *Stitt* that the savings statute, 1 U.S.C. § 109, "saves the sentencing provisions in addition to substantive laws," and furthermore that " §§ 848 (g)-(r) are saved by the Savings Statute."  *Stitt*, 552 F.3d at 354 (internal quotations omitted).  Because the Fourth Circuit held that the Savings Statute operates to save these provisions against Defendant, the Court must apply the full breadth of § 848 (e) *et seq.* at this sentencing hearing.

Having denied the Government's Second Amended Notice of Intent to Seek the Death Penalty, Defendant's Motion to Strike is **DENIED AS MOOT**.  Furthermore, the Court finds it appropriate to follow the provisions of § 848 (g)-(r) at Defendant's resentencing hearing.

### C. Defendant's Motion in Limine

Defendant requests in his Motion in Limine that the Government identify: (1) witnesses whose testimony it will provide by transcript; (2) witnesses it will present by live testimony; (3) witnesses it will present through a summary witness; and (4) witnesses it will present in any other fashion.  Additionally, Defendant requests an Order declaring that Defendant may introduce any evidence that does not challenge "the basic offenses" of conviction, and that the Confrontation

Clause will apply to the entire resentencing hearing. In its response filed on January 26, 2010, the Government did not address the substance of Defendant's Motion in Limine.

### 1. Application of Confrontation Clause at the Sentencing Hearing

The Court must determine whether to apply the Confrontation Clause to the entire hearing as Defendant recommends, or only in determining statutory aggravating factors (i.e. facts essential to eligibility for death), as the Government opines in its Notice of Procedures to Follow in Sentencing Hearing. In its Notice, the Government contends, *inter alia*, that the Confrontation Clause should apply in the Government's presentation of proof as to aggravating factors set forth in § 848(n)(5), (6), (8), and (11) because these factors establish Defendant's "eligibility" for a death sentence. However, in regards to the non-statutory aggravating factors, because these factors fall under the "selection" portion of the penalty phase, the Confrontation Clause should not apply. To establish these factors, the Government intends to present live witnesses, transcripts from the testimony of witnesses from the first guilt and penalty phases, and hearsay evidence.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right... to be confronted by the witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 42 (2004). The applicability of the Confrontation Clause in capital sentencing proceedings has not been "clearly established" by Supreme Court precedents, or lower courts. *See Maynard v. Dixon*, 943 F.2d 407, 414 n.5 (4th Cir. 1991) (noting that the question of whether the Confrontation Clause applies in sentencing proceedings is undecided); *United States v. Higgs*, 353 F.3d 281, 324 (4th Cir. 2003) (noting that "[i]t is far from clear that the Confrontation Clause applies to a [federal] capital sentencing proceeding"). In *United States v. Jordan*, 357 F. Supp. 2d 889, 903 (E.D.Va. 2005), Judge Hudson held that the Confrontation Clause does not apply to

9

the "selection" phase of a capital case. A split panel of the Fifth Circuit similarly held in *United States v. Fields*, 483 F.3d 313 (5th Cir. 2007) that the Confrontation Clause does not apply to the entire sentencing phase of a capital case. Therefore, hearsay introduced in support of nonstatutory aggravating factors during the sentence phase was not excluded by the Confrontation Clause in that case.

However, as pointed out by Defendant, district courts post *Crawford* have reached the opposite conclusion. *See United States v. Sablan*, 555 F. Supp. 2d 1205, 1219-22 (D. Colo. 2007) (holding that "the existence of all the aggravating factors are constitutionally significant facts that should be found by the jury," and that "bifurcation of the penalty stage is not the proper remedy in this case"); *United States v. Mills*, 446 F. Supp. 2d 1115, 1130-31 (C.D.Cal. 2006) (holding that "confrontation rights must apply to the entirety of the penalty phase of capital trials, including the selection phase").

The Court finds that there is no clearly established federal law that the Confrontation Clause applies in a capital sentencing hearing, and more specifically a unique resentencing hearing such as this one. The Court notes that bifurcation in the way suggested by the Government is not referred to in the ADAA nor the FDPA. Furthermore, considering the substantial passage of time between Defendant's first capital sentencing in 1999 and the instant one and that imposition of the death penalty always requires increased scrutiny, the Court must ensure that the jury receives the most reliable information. Accordingly, the Court finds that the Confrontation Clause will apply throughout the "eligibility" and "selection" stages of the resentencing, and Defendant's request is **GRANTED**. Defendant shall be afforded the opportunity to confront the witnesses testifying against him.

10

## 2. Identification of Witnesses

Defendant requests in his Motion in Limine that the Government identify: (1) witnesses whose testimony it will provide by transcript; (2) witnesses it will present by live testimony; (3) witnesses it will present through a summary witness; and (4) witnesses it will present in any other fashion.

As the Court stated in the February 8, 2010 hearing, the Court understands that in ordinary circumstances before trial, the government is not required to supply a witness list for Defendant. However, considering the unique circumstances of this case, that the United States must pay for the production of all witnesses, and the Court's interest in preserving resources, the Court finds it appropriate that the parties confer to determine the witnesses each side intends to present and how they intend to present the witnesses at Defendant's resentencing.

Accordingly, Defendant's request is **GRANTED**. The parties are ordered to convene to establish a witness list.

## 3. Order Allowing Defendant to Introduce All Evidence That Does Not Challenge "Basic Offenses" of the Conviction

Finally, Defendant requests that the Court issue an Order declaring that Defendant may "introduce any evidence that does not challenge the 'basic offenses' of conviction." The Court finds that the order Defendant requests is indefinite and vague, and therefore this request is **DENIED**. The Court will employ the appropriate evidentiary rules at Defendant's resentencing hearing.

## III. CONCLUSION

Defendant's Motion in Limine as to Government's Notice of Procedures to Follow in Sentencing Hearing is **GRANTED IN PART** and **DENIED IN PART**. Defendant's request that

11

the Court order that the Confrontation Clause applies to the entire resentencing hearing is **GRANTED**. Defendant's request that the Court order the Government to identify those witnesses whose testimony it will present live, by transcript, or any other fashion is **GRANTED**. The parties are ordered to convene in order to establish a witness list for the resentencing. Defendant's request that the Court issue an order declaring that Defendant may introduce any evidence that does not challenge the "basic offenses" of conviction is **DENIED**. Because the Government's Second Amended Notice of Intent to Seek the Death Penalty is **DENIED**, Defendant's Motion to Strike Government's Second Amended Notice to Seek the Death Penalty and Defendant's Anticipatory Election of Procedures is **DENIED AS MOOT**. Furthermore, the Court will apply the provisions of 21 U.S.C. § 848 *in toto*.

 The Clerk is **DIRECTED** to send a copy of this Order to all parties.

 **IT IS SO ORDERED.**

UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 22, 2010

12