## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
|  | : |  |
| v. | : | Honorable Joel H. Slomsky |
|  | : |  |
| DAVID PAUL HAMMER, | : | Capital Case |
|  | : |  |
| Defendant | : |  |
| _____ | : | _____ |

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DECLARE THE FEDERAL DEATH PENALTY ACT UNCONSTITUTIONAL BECAUSE IT IS INCOMPREHENSIBLE TO JURORS AND RESULTS IN THE ARBITRARY APPLICATION OF THE DEATH PENALTY

Mr. Hammer, through counsel, herein submits his *Reply Brief in Support of Motion to Declare the Federal Death Penalty Act Unconstitutional Because it is Incomprehensible to Jurors and Results in the Arbitrary Application of the Death Penalty* and, in support thereof, states the following:

The government raises various misleading and inconsistent objections to Mr. Hammer's motion. For the reasons described below and in the prior submissions, this Court should reject those objections and declare the Federal Death Penalty Act ("FDPA") unconstitutional.

In addressing defendant's motion the government never even discusses – let alone defends – the incomprehensible language of the FDPA. The defense motion,

on the other hand, lays out and explains in detail the utter complexity of the overall structure of the FDPA and the confusing nature of the many differing and contradictory sections of the FDPA. The absence in the government's reply of any such analysis or defense of the FDPA is not surprising. The government simply cannot defend the indefensible or deny the undeniable. The FDPA is, at a minimum, confusing to experienced criminal law practitioners and it is without question incomprehensible to any juror.

Initially, the government argues that the motion should be denied because it "could have been presented in 1997 as part of the defendant's earlier effort to have the FDPA declared unconstitutional." Doc. 1358 at 6.[1] Then just four pages later in the very same pleading the government argues that this motion should be denied because the "claim is not ripe." Id. at 10. These contradictory arguments should be rejected. Defendant's motion is based on the complexity of the statutory configuration of the FDPA which was enacted in 1994 and court decisions and empircal studies covering a 28 year period from 1979 to 2007. This motion was not filed too soon and it was not filed too late as the government confusingly contends,

---

[1]The Court's order granting Mr. Hammer a new penalty hearing on the basis of the government's misconduct rendered the direct appeal proceedings a legal nullity. Whatever issues Mr. Hammer may or may not have raised during the initial direct appeal has no relevance on this Court's determination of whether or not the FDPA is unconstitutional.

rather it is timely and ripe for adjudication by this Court.

The government also contends that this Court should deny defendant's motion because it is based on "an odd mixture" referencing and relying in part on academic studies and "has the character of a Brandeis brief." Doc. 1358 at 5-7. In <u>Oregon v. Muller</u>, 208 U.S. 412 (1908), Justice Louis Brandeis pioneered the use of social science data to establish facts that were material to the legal issues in the case, earning the name "Brandeis Brief." Justice Thurgood Marshall followed the same technique in <u>Brown v. Board of Education</u>, 349 U.S. 294 (1955). Counsel welcomes the comparison, for the data that demonstrates the inherent arbitrariness and incomprehensibility of the FDPA that is material in this case rivals in persuasiveness to the data successfully employed by Justice Brandeis and Justice Marshall in their landmark cases winning legal redress for women and African American children. The defendant is happy to be in the company of Justice Brandeis and Justice Marshall, having provided this Court with empirical date demonstrating that the FDPA is incomprehensible and unconstitutional.

The government also contends that the defendant's motion should be denied because the defendant cannot meet its burden of showing a "reasonable likelihood" that the instructions will mislead the jury into sentencing the defendant to death. And that the defendant "has not – and cannot – offer any evidence that rebuts the well-

settled presumption that the jury will follow *this* Court's instructions at the penalty phase of *this* case.  Doc. 1358 at  9-10 (Emphasis in the original).

On the contrary, that is precisely what happened in the prior penalty hearing *in this case*.  There is no question that Judge Muir attempted to carefully instruct the jury as to all of the critical aspects of the FDPA that were necessary for the jury to render a fair, just and correct verdict.  These instructions were carefully decided upon by the court in an attempt to permit the jury to comply with all of the procedural and evidentiary safeguards built in to the FDPA to prevent the rendering of an erroneous and arbitrary death sentence.  Despite these best efforts by Judge Muir, the jury did just that.  It rendered a death verdict that Judge Muir found was deeply flawed  – to the severe prejudice of the defendant.  See United States v. Hammer, 404 F Supp. 2d 676 (M.D. Pa. 2006).

Specifically, Judge Muir found that all 12 jurors got it wrong when they all failed to find that at the time of trial Mr. Hammer suffered from a major mental disease  –  despite the fact the jurors heard unrebutted evidence that Mr. Hammer suffered from major depressive disorder.  Hammer, 404 F Supp. 2d at 790-91.  Judge Muir also found that 11 out of the 12 jurors got it wrong in not finding that Mr. Hammer  suffered from cognitive deficits – since the jury heard unrebutted evidence that Mr. Hammer did, in fact, suffer from cognitive deficits.  Id.  Judge Muir also

found that 6 jurors got it wrong when they failed to find that Mr. Hammer was a victim of sexual abuse as a child – despite the fact the jury heard unrebutted evidence of such abuse.  Id.  Finally, Judge Muir found that 7 jurors erred when they failed to find that Mr. Hammer had done certain good deeds in his life  –  despite the fact that the government conceded this issue in its closing statement.  Id.

So despite Judge Muir's best efforts in carefully instructing the jury, the 12 jurors *in this case* made a total of 36 mistakes while arriving at the erroneous conclusion that Mr. Hammer was deserving of death and thereby committing errors numbers 37 through 48.[2]   This astonishing error rate more than rebuts the presumption that the jurors have not and can not follow the instructions *in this case* and clearly establishes a "reasonable likelihood"of error *in this case*.  This Court –

---

[2]The government's attempts to explain these flaws in the jury's findings as being a result of Mr. Hammer's purported "history of manipulation" and its skewed view of what it terms the "infamous 'Jocko' videotape," and what was actually a videotape of Mr. Hammer's evaluation by Dr. Sadoff.  Doc. 1358 at 6, n. 2.  Notably absent from the government's (mis)characterization of that videotape is the recognition that during the Section 2255 hearing, the government's own expert witnesses acknowledged that the emotionality displayed by Mr. Hammer while describing his background of horrendous abuse and neglect was similar to that expressed during their own evaluations and involved genuine displays of pain and psychological trauma.  The government's present caustic view of mental illness aside, what troubled Judge Muir most was that the jury failed to find mitigation that was uncontroverted and that *government did not dispute*.  The fact that, despite Judge Muir's careful instructions, the jury failed to find conceded mitigation evidence demonstrates that the process is unconstitutional.

with this known and proven error rate *in this case* – along with the empirical data culled from over 20 years of studies – has all the evidence it needs to grant this motion. This Court cannot and should not tinker with the FDPA with the hopes of correcting this fatally flawed and incomprehensible statute.

Respectfully submitted,

/s/    Ronald C. Travis                    /s/    Michael Wiseman

Ronald C. Travis                          Michael Wiseman
Rieders, Travis, Humphrey, Harris,        James J. McHugh, Jr.
Waters & Waffenschmidt                    James Moreno
161 West Third Street                     Federal Community Defender
PO Box 215                                Eastern District Pennsylvania
Williamsport, PA  17703-0215              Suite 540 – The Curtis Center
570-323-8711 (telephone)                  Philadelphia, PA 19106
570-323-4192 (facsimile)                  215-928-1100 (telephone)
rtravis@riederstravis.com                 215-928-0826 (facsimile)
                                          Michael_Wiseman@fd.org
                                          James_McHugh@fd.org
/s/    Anne Saunders                      James_Moreno@fd.org

Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
Anne_Saunders@fd.org

Dated:      June 27, 2011
            Philadelphia, PA

## Certificate of Service

I, Michael Wiseman, hereby certify that the foregoing was served upon counsel for the Government concurrently with its filing, by filing the same with this Court's ECF system and by email.

/s/   Michael Wiseman

Michael Wiseman