**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
|  | : |  |
| v. | : | Honorable Joel H. Slomsky |
|  | : |  |
| DAVID PAUL HAMMER, | : | Capital Case |
|  | : |  |
| Defendant | : |  |
| _____ | :_____ |  |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF**
**MOTION FOR INFORMATIONAL OUTLINES**

Mr. Hammer, through counsel, herein submits his *Reply Brief in Support of Motion for Informational Outlines* and, in support thereof, states the following:

**A.      Response to Counter-statement of Facts.**

The government contends that it will rely on "transcripts of proceedings" to respond to Mr. Hammer's claim that the circumstances have changed since the first trial, conducted in 1998, requiring the utilization of informational outlines. Doc. 1348 at 4. However, the government provides no references to transcripts which challenge the accuracy of the assertions made about what the government presented at the time of the first trial to support the substantial planning and premeditation and future dangerousness arguments or the victim impact evidence as presented by the government in its closing and the changed circumstances. A significant foundation

to support the substantial planning and premeditation aggravator was the alleged time it would have taken for Mr. Hammer to weave the ropes purportedly created for the sole purpose of killing Mr. Marti. The government can hardly contest that there are not "changed circumstances" regarding this aspect of the theory and that, in light of the District Court's specific finding that the government withheld substantial evidence directly disputing this theory and argument, the government's theory regarding this aggravating factor has been diminished, if not completely eviscerated.

In support of the future dangerousness aggravating factor, the government presented evidence and argued that because Mr. Hammer was a contract prisoner from the state of Oklahoma, there was a possibility that he would be returned to that system in which he had successfully escaped on two prior occasions, and had undertaken a third unsuccessful escape attempt. In the 14 years since the original death verdict, counsel for Mr. Hammer have not been able to find one document in Mr. Hammer's Central Inmate File supporting the concept that either the state of Oklahoma or the BOP has raised the subject of returning Mr. Hammer to Oklahoma.

Likewise, the government asserted that although Mr. Hammer would be locked up, he had, outside the prison walls, certain people whom the government classified as "groupies," and that these people would be able to – and willing to – engage in acts of violence as directed by Mr. Hammer. In the time which has passed since July of

1998, there is absolutely nothing that the defense team is aware of that supports the government's prediction.

During the first penalty hearing, the government relied on victim impact evidence. That evidence also has changed as reflected in the signed statement from Mr. Marti's parents concerning their desire as far as an ongoing prosecution.

These and other changed circumstances from the evidence pursued by the government in 1998 leave the defense team without sufficient information to enable the defense to properly prepare for the retrial.

**B.      The "Non-typical" Nature of this Retrial Is Precisely What Makes Informational Outlines Appropriate.**

The government characterizes the retrial as a "non-typical" sentencing hearing premised on the fact that there was a penalty phase conducted in July of 1998. Doc. 1348 at 4. It is the government's apparent view that, as a result of the proceedings in 1998, all the defense team needs to do is review the multiple transcripts from the original trial and the Section 2255 proceedings and, from that review, the defense will be able to adequately prepare. Doc. 1348 at 9. While the defense agrees that this resentencing proceeding is anything but a "typical" penalty hearing, it is precisely what makes this proceeding "non-typical," that requires informational outlines. As described in the prior submissions, the circumstances have changed in very

3

significant ways, particularly surrounding the government's aggravation. In addition to the changed circumstances regarding the substantial planning and premeditation and future dangerousness aggravation and the victim impact evidence described above and in the prior submissions, the conduct from the 1980s presented during the 1998 trial is now even more stale than it was in 1998.

If the government's argument constitutes a statement that the only evidence it intends to present is the identical evidence it presented in the 1998 trial, then it is correct that there is no need for informational outlines. However, the government's brief makes no such concession and, in fact, in its conclusion indicates that the defense teams knows "most" of the information the government will present in support of substantial planning and premeditation, future dangerousness, and victim impact. It is the unknown information arising from the use of the word "most" which gives this Court pause. That alone provides sufficient basis for an order for informational outlines.

The government references a number of cases which it believes support the conclusion that the request for informational outlines should be denied. Doc. 1348 at 6. Initially, none of these cases involved the unique circumstances presented in this case where significant changes have occurred surrounding the nature and extent of the aggravators for which Mr. Hammer requests an informational outline. Even

disregarding this critical distinction, the government's reliance on these cases is legally and factually flawed. For example, United States v. Higgs, 353 F.3d 281, 325 (4th Cir. 2003), involved a posttrial direct appeal raising the admissibility of particular evidence not previously disclosed to the defendant. The Fourth Circuit found that since the defendant had received presumably sufficient notice of the aggravating factor, there was no violation of the FDPA or due process. Id. Nothing in Higgs involved the situation here, where the defendant raises pretrial the inadequacy of the notice of intent – particularly in light of the changed circumstances – in providing Mr. Hammer with sufficient information in order to adequately prepare his defense.[1]

United States v. Battle, 173 F.3d 1343, 1347 (11th Cir. 1999), involved an appeal raising the propriety of the District Court's order permitting the government to amend the notice of intent. Remarkably, the reason the government sought to amend the notice was to provide specific evidence regarding an aggravator already in the notice, not add any additional factors. Thus, not only does the case not support the government's position that it need not provide Mr. Hammer with more information, but it would appear that the government was at least cognizant in that

---

[1]For the same reasons, the government's reliance on Gray v. Netherland, 518 U.S. 152, 167-69 (1996) is similarly flawed.

case of the need to provide sufficient notice of the aggravation evidence in order to permit the defense to adequately respond to the charges. United States v. LeCroy, 441 F.3d 914, 930 (11th Cir. 2006), while involving a question of adequacy of the notice, it does not appear that LeCroy either requested a Bill of Particulars or Informational Outline, nor is there any indication that, like here, the circumstances had changed between the time of the filing of the notice and the trial that substantially weakened or altered the aggravation noticed by the government.

In United States v. Gooch, 2006 WL 3780781 at *20-21 (D. D.C. 2006), although the District Court, rejected the defense request for more specificity as to the mental state gateway requirements, it did require the government provide more specific information regarding victim impact, something Mr. Hammer has requested. Id. 2006 WL 3780781 at 23. Thus, Gooch supports Mr. Hammer's request.

The government's reference to United States v. Taylor, 316 F. Sup. 2d 730, 738 (N.D. Ind. 2004), involves a discussion of the defendant's motion to dismiss the substantial planning and premeditation factor on the basis that the factor is unconstitutionally vague and on the basis that the government tendered no evidence which indicated any planning or premeditation took place let alone substantial planning and premeditation. There is no discussion of a Bill of Particulars or Informational Outlines. Later, the Court discusses the defense request that certain

non-statutory aggravators be struck, because the Notice failed to provide sufficient information, id. 316 F. Supp. 2d at 740-41, but, again, there is no discussion concerning the propriety of granting a Bill of Particulars or an informational outline. Nor is there any discussion of the propriety of requiring an informational outline or Bill of Particulars in United States v. Mayhew, 380 F. Supp. 2d 936, 948 (S.D. Ohio 2005).[2]

The government's reliance on United States v. Roman, 371 F. Supp. 2d 36, 42 (D. Puerto Rico 2005), is similarly flawed.  There, the defense raised a challenge to the aggravation just before the penalty hearing was set to begin.  Id. 371 F. Supp. 2d at 44.  The District Court noted that there is no question that the court has an inherent authority to "prescribe procedure 'to preserve the integrity of the judiciary by ensuring that a conviction rests on appropriate considerations validly before the jury.'" Id. 371 F. Supp. 2d at 44-45 (*citing* United States v. Hasting, 461 U.S. 499, 505 (1983)).  The Court further noted that "[i]t is essential that courts exercise that

---

[2]Although the District Court in United States v. Solomon, 513 F. Supp. 2d 520, 539 (W.D. Pa. 2007), did find that a Bill of Particulars was not an appropriate remedy, there was apparently no request for an informational outline.  Moreover, that case was not, as in this case, a situation in which the circumstances surrounding the notice filed by the government had been substantially changed in light of subsequent litigation and information.  Accordingly, Solomon is distinguishable and, to the extent that Court's analysis could be applicable, and it is not, this Court should elect to exercise its inherent supervisory authority in light of the different circumstances and grant Mr. Hammer's motion.

authority to ensure the integrity of capital sentencing proceedings." Id. 371 F. Supp. 2d at 45. Applying these principles, the Court ultimately granted, in part, and denied, in part, the at-trial motion to exclude aggravating factors. Id. 371 F. Supp. 2d at 52. Thus, nothing in Roman, supports the government's position that this Court should not order an informational outline. Indeed, the Roman Court's analysis indicates the contrary.

The government contends that the cases relied on by Mr. Hammer are distinguishable because those cases were more complex and it was the complexity of the cases that supported the orders for an informational outline. Doc. 1348 at 7. Contrary to the government's contention, however, the complexity of the case was not the reason for the orders granting an informational outline. United States v. Solomon, 513 F. Supp. 2d 520, 535  (W.D. Pa. 2007); United States v. Llera Plaza, 179 F. Supp.2d 464, 474-75 (E.D. Pa. 2001).[3]

---

[3]The government's contention that because some of the authorities only granted an informational outline as to victim impact evidence, this Court should not grant Mr. Hammer's request as to the other factors is likewise meritless. Doc. 1348 at 8.  If the Court has the authority to require an outline as to one aggravator, it certainly has the power to grant it as to others.  Indeed, that is precisely what occurred in United States v. Llera Plaza, 179 F. Supp.2d 464, 474-75 (E.D. Pa. 2001).  Similarly, the government's contention that, in United States v. Kaczynski 1997 WL 34626785 (E.D. Cal. 1997), the Court limited the outline to unadjudicated misconduct with respect to the non-statutory aggravating factor claiming other significant acts of violence or attempted acts of violence and threats of violence against others is incorrect.  The government was also ordered

The government's attempt to avoid an order for an informational outline here on the basis that the Notice in those cases in which an outline was ordered was "bare bones," is similarly meritless.  Doc. 1348 at 8-9.  In United States v. Rodriquez, 380 F. Supp.2d 1041 (D.N.D. 2005), the Notice identified by statutory section, the statutory aggravating factors and other non-statutory aggravating factors under §3593(a) and (c), including future danger and victim impact.  In the instant case, the government does little more than cite the statutory section in that the government sets forth the language of that section.  If the method of identifying aggravating factors in Rodriguez was "bare bones," the Notice here is no better.  In granting the request, the Rodriguez Court pointed out that the mere fact that lots of discovery material had been provided to the defense, and that the sought additional information may be found somewhere therein, does not eliminate the need for the required more specific Notice.  In directing the provision of more information, this additional information would be required with respect to substantial planning and premeditation, future dangerousness, victim impact, as well as other Noticed aggravators.

---

to provide more specific information with respect to the first non-statutory aggravating factor -- "other acts" and also with respect to the third non-statutory aggravating factor (lack of remorse).  Nevertheless, that some District Courts have ordered outlines on one aggravator, it does not mean that this Court cannot order an informational outline as to other aggravators.

Finally, the government returns to the assertion that since there was a prior penalty phase trial and there was litigation pursuant to the §2255 proceeding that this provides to the defense team sufficient information to allow a defense to be mounted. This argument is akin to the assertion made by the government in various of the above discussed cases that the "information" being sought is in the discovery and let the defense team ferret it out. Just as this discovery argument was rejected by the Courts in <u>Kaczynski</u>, <u>Rodriguez</u>, and in other instances, so too should this Court reject the government's assertion that the information can be found by reading volumes of transcripts and then speculating what the government intends to present.

**C.    The Government's Contentions Regarding the Particular Aggravators Are Unavailing.**

*1.      Substantial Planning and Premeditation.*

The government maintains that by reading the transcripts from the July 1998 proceeding and reviewing the prosecution's closing argument the defense has no need for an Informational Outline with respect to substantial planning and premeditation. Absent from the government's assertion that this information is available to the defense team via reading the closing argument and the prior transcripts is any indication that the government will not be seeking to introduce during the retrial any evidence beyond that which appears in the transcript from July 1998. If the

government is conceding that it will not present any additional evidence to support the alleged aggravating factor of substantial planning and premeditation beyond that which was presented in July of 1998, the defense agrees there is no need for an informational outline and the Court can direct that the government is limited to only the evidence and argument presented in 1998. If, however, the government intends to present additional evidence, this Court should issue an Order requiring the government to provide an Informational Outline regarding what it intends to pursue beyond that which was presented in 1998. Where, as here, the government has made qualified statements with regard to its intent, there is more than ample support for a conclusion that the government intends to present more in support of the substantial planning and premeditation.

> 2.   *Future Dangerousness Factor*.

As previously pointed out, all of the predictions made by the government as argued to the jury in July of 1998 have not come to pass. None of the 1980s conduct which occurred while he was housed in the Oklahoma system has been repeated. Mr. Hammer has not escaped or attempted to escape. Mr. Hammer has not been returned to the Oklahoma system. Mr. Hammer has not utilized others to engage in acts of violence on his behalf. In <u>Solomon</u>, the defendant had filed a Motion to strike the Notice of Intent based on the alleged insufficiency of the Notice or, in the alternative,

had requested a Bill of Particulars with respect to asking for additional information. Although the government previously took the position that an accurate prediction of future conduct can be made by looking at prior conduct, the government is apparently now taking the position that the passage of over 20 years since sending threatening letters to law enforcement, the threat to blow up a building, or escape attempts should be interpreted in some fashion other than as reflective of the likelihood of Mr. Hammer's future conduct. The government describes this time as "quiet time" and offers unspecific assertions that this "quiet time" can be explained through a great many reasons. It is the absence of any explanation of the information concerning the "great many reasons" which should be cleared up via the required Informational Outline.

The government also urges that the Court not direct the filing of an Informational Outline because there are approximately ten months before jury selection is scheduled to start and, in this intervening period, Mr. Hammer may engage in additional acts of violence or misconduct relevant to the future dangerousness aggravator. The defense is not suggesting to the Court that to the extent Informational Outlines are ordered with respect to future dangerousness, or either of the other two factors, that this serves to preclude the government from filing a supplemental Informational Outline or an amended Informational Outline were Mr.

12

Hammer to engage in acts of violence or misconduct relevant to future dangerousness. The direction that the government provide an Informational Outline as of June 2011 would not prevent the government from attempting to rely on conduct which occurs or is discovered by the government subsequent to the filing of the Informational Outline.

### 3.   Victim Impact

In responding to the request for the Informational Outline concerning victim impact evidence, the government concedes the position taken by the Marti family as referenced in the signed writing which was previously submitted to the Department of Justice and has been submitted to this Court. The government objects to filing an Informational Outline concerning victim impact at this point in time based upon the speculation that "much can happen" between now and the time of trial. However, in making this argument, the government again excludes from consideration the fact that if "much does happen" between now and the time of trial, a supplemental Informational Outline or a new Informational Outline can be presented by the government concerning the "much" which has happened. The government acts as if the requirement it submit an Informational Outline with respect to victim impact now will serve to bind their victim impact evidence in the future if "much" does happen. Requiring an Informational Outline now merely obligates the government to provide

an outline with respect to the Noticed aggravating factor of victim impact as if the case was going to trial on June 30, 2011, as opposed to that being the date when the Court is hearing argument.

> **D.** **The Relevance, Reliability and Whether the Probative Value of the Evidence Outweighs its Prejudicial Impact Is a Determination Which Should Be Made Prior to Trial**

As noted above and in the prior submissions, the Court retains inherent authority and a constitutional gatekeeping obligation to ensure that the defendant's constitutional rights are preserved; that the jury's determination is based on reliable, probative evidence rather than arbitrary or capricious factors; and, that the probative value of the evidence outweighs any prejudicial impact. In exercising its gatekeeping function, various Courts have considered pretrial the government's ability to present evidence to establish beyond a reasonable doubt the existence of Noticed aggravators. In addition to the requested Informational Outlines assisting the defense in preparing a full and complete defense on behalf of Mr. Hammer, there is a collateral benefit in that the Informational Outlines will also serve to identify Noticed aggravating factors that are legally and factually insufficient. During the prior penalty hearing, the government was permitted to discuss the vulnerable victim and to attempt to prove up that aggravating factor only to have the Court determine that the evidence was insufficient as a matter of law. As the District Court in <u>Roman</u> noted, allowing the

government to proceed on alleged aggravating factors, merely because they have reduced same to writing, is a dangerous procedure, creates potential prejudice problems, and is a waste of judicial resources.

For the reasons described above and in the prior submissions, this Court should reject the government's contentions and grant Mr. Hammer's motion.

Respectfully submitted,

/s/ Ronald C. Travis, Esquire
Ronald C. Travis, Esquire
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
(570) 323-8711 (telephone)
(570) 323-4192 (facsimile)
rtravis@riederstravis.com

/s/ Anne Saunders, Esquire
Anne Saunders, Esquire
Assistant Federal Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Ste. 300
Harrisburg, PA  17101
(717) 782-3843 (telephone)
(717) 782-3966 (facsimile)
Anne_Saunders@fd.org

/s/ Michael Wiseman, Esquire
Michael Wiseman, Esquire
James McHugh, Esquire
James Moreno, Esquire
Federal Community Defender
Eastern District of Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA  19106
(215) 928-1100 (telephone)
(215) 928-0826 (facsimile)
Michael_Wiseman@fd.org
James_McHugh@fd.org
James_Moreno@fd.org

Dated:        June 27, 2011
                   Philadelphia, PA

## Certificate of Service

I, Michael Wiseman, hereby certify that the foregoing was served upon counsel for the government concurrently with its filing, by filing the same with this Court's ECF system and by email.

/s/    Michael Wiseman

Michael Wiseman