**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA      :
                              :        NO. 4:96-CR-00239
                              :        Capital Case
              v.              :
                              :        (Judge Slomsky)
DAVID PAUL HAMMER            :
                              :
          Defendant           :        (Electronically Filed)

## DEFENDANT'S BRIEF IN OPPOSITION TO GOVERNMENT'S MOTION FOR RECONSIDERATION OF PARAGRAPH 2 IN THE ORDER OF JUNE 13, 2011

A.    BACKGROUND

On June 13, 2011, this Court entered an Order providing that during the videoconference appearance of Mr. Hammer on June 13, 2011, his hands were not to be in restraints, which would enable him to take notes during the proceeding. Eight days after the Order was entered, on June 21, 2011, at 1:30 p.m., AUSA Martin circulated an e-mail to Attorneys Travis and Wiseman advising counsel for Mr. Hammer that "Terre Haute officials advised me (AUSA Martin) that during

the videoconferencing hearing set for the end of this month in this case, they intend to have your client in leg restraints, a Martin chain and have one hand cuffed and attached to the chain. This I assume is the standard practice at that unit for videoconferences. Moreover, that would still leave one hand available to him for use for writing." Mr. Martin's e-mail message further stated, "This is not in exact compliance with Judge Slomsky's recent Scheduling Order, but it follows its spirit in that your client will be able to write." Counsel for Mr. Hammer reported back to AUSA Martin that we objected to Terre Haute's proposed modification of the Judge's Order and we hoped that he would be able to convince the officials at Terre Haute to comply with the Order directing there be no hand restraints during the conference. Since advising the government of the defense team objection to the proposed modification, nothing further was heard from the government until the filing of the Motion for Reconsideration on the last possible day for filing the Motion, according to LR 7.10 of the Rules for the U.S. District Court for the Middle District of Pennsylvania. Of greater importance, the reconsideration motion was filed less than three working days before the June 30, 2011, proceeding.

This Brief is being submitted in opposition to the government's Motion for Reconsideration.

B.    STATEMENT OF FACTS

In the Declaration of Associate Warden Church, there is a failure to mention that at the conclusion of the evidence at the 2255, Mr. Hammer was returned to Terre Haute. At the time oral argument was presented, Mr. Hammer participated by videoconferencing and the same defense team member was with him. At that point in time Mr. Hammer's hands were not restrained and neither the AUSA nor the BOP requested Mr. Hammer be so restrained for "security reasons." There were no problems encountered.

The government has failed to offer any explanation why what occurred prior now needs to be changed.

The government contends that the "pertinent details" are those contained in the Declaration of Associate Warden Church submitted as Exhibit 1 to the government's Motion. However, the defense team does not believe that the Declaration of Associate Warden Church brings to the attention of the Court all of the "pertinent details." Omitted from the Declaration is any information concerning the behavior exhibited by Mr. Hammer during the course of the federal legal proceedings as well as in any of the Oklahoma proceedings which occurred in the courtroom.

As the Court is well aware, prior to this retrial, Mr. Hammer was involved in a trial during 1998 in Courtroom 1 of the Williamsport Federal Building. The

3

initial trial, from the start of jury selection through the return of the death recommendation on July 24, 1998, lasted approximately two full months. During the entirety of the trial Mr. Hammer was seated in a courtroom which undoubtedly had a larger "open space" and there existed no barriers. Defense counsel and other staff were seated in the immediate physical proximity of Mr. Hammer throughout the trial. At no time during the trial was Mr. Hammer restrained, insofar as his hands. At no time during the course of that two month trial did the Court find it necessary to admonish Mr. Hammer concerning his behavior or to impose hand restraints on Mr. Hammer.

In addition to the two months spent in the large courtroom, without hand restraints, there were a number of days spent in the courtroom with respect to pre-trial motions, as well as post-verdict motions. Undersigned counsel has no recollection of Mr. Hammer ever being subjected to hand restraints during any of those pre or post-trial hearings, which in total, probably account for another two weeks.

Although a direct appeal was initially filed from the conviction and sentence, on August 31, 2000, the Third Circuit Court of Appeals granted Mr. Hammer's Motion to dismiss his appeal. *United States vs. Hammer*, 226 F.3d 229 (3rd Cir. 2000). As part of this appeal process, on July 18, 2000, Mr. Hammer appeared via videoconferencing before the Third Circuit to offer argument in

support of his request to have the direct appeal dismissed. During his oral presentation to the Third Circuit, Mr. Hammer was being housed at Terre Haute. His hands were not restrained during this court appearance. In the decision authored by Judge Greenburg, it is set forth that during the argument presented by Mr. Hammer he, "...was calm and in total control of himself. Furthermore, he spoke respectfully towards the court, his attorneys, and the amicus curiae." at 233.

Although the direct appeal was dismissed, Mr. Hammer went through a lengthy evidentiary hearing under §2255, which lasted for a number of months. Throughout that lengthy evidentiary hearing, Mr. Hammer's hands were unrestrained. That lengthy evidentiary hearing took place for the most part in the largest courtroom in the Williamsport Federal Building, Courtroom 1. At no time did Mr. Hammer display any sort of conduct, threatening or otherwise, which led the Court to direct Mr. Hammer be placed in hand restraints.

Mr. Hammer reports to counsel that during his trials in the state of Oklahoma he was never subjected to hand restraints. Although undersigned counsel is unable to affirm that he has read the entire transcripts of the trials, he has read parts of the transcripts and nothing he has reviewed indicates that there was any acting out or misbehavior on the part of Mr. Hammer. From the facts known to undersigned counsel, it would not appear that Mr. Hammer has ever acted out in the courtroom, or has ever been anything but respectful to court staff and personnel

as part of any court proceeding he has attended, either in the state or federal system.

On June 28, 2011, counsel discussed the subject of the government's Motion with Mr. Hammer. Mr. Hammer advised that, as far as he knows, the individual who has submitted the Declaration has not been part of setting up the videoconference appearances made by Mr. Hammer. As far as Mr. Hammer understands, his unit team, and in particular his Counselor, makes the videoconferencing arrangements. If the Court is considering granting the government request for hand restraints, it is requested that the Court defer its decision in order to take testimony from Counselor John S. Edwards concerning the videoconference appearances by Mr. Hammer and others. It is believed that Mr. Edwards will confirm that William J. LeCroy and Chadrick Fulks, both death sentenced individuals housed at the SCU, participated in evidentiary hearings via videoconferencing from Terre Haute with no hand restraints. It is believed that the hearings in which these two individuals participated, without hand restraints, each lasted in excess of a week.

During the telephone conversation with Mr. Hammer on June 28th, Mr. Hammer also reminded counsel that he participated in an evidentiary hearing in front of Chief Judge Rambo, from Terre Haute, after his death sentence had been imposed and during that evidentiary hearing he was not in hand restraints. The

evidentiary hearing in front of Chief Judge Rambo was held in conjunction with the case of *United States vs. O'Driscoll*.

Based upon what has occurred during prior videoconferencing where Mr. Hammer appeared either as a witness or as an observer, and based upon the lack of hand restraints being employed with respect to Mr. LeCroy and Mr. Fulks, there is no reason to revisit the Court's June 13, 2011, Order.

Counsel for Mr. Hammer will address the various points raised by the government out of an abundance of caution.

C.   BASED UPON MR. HAMMER'S BEHAVIOR IN COURT PROCEEDINGS, WITHOUT HAVING HIS HANDS RESTRAINED, THERE EXISTS NO LEGITIMATE BASIS FOR THE COURT TO RECONSIDER AND MODIFY ITS ORDER OF JUNE 13, 2011

1.   **Ability to Write.**

Although the government argues that keeping Mr. Hammer's hands in hand restraints will not hinder his ability to write, this an inaccurate representation based upon counsel's observations concerning the ability of Mr. Hammer and other clients to write if the clients are in hand restraints during a visit. In over 40 years of handling the defense of federal inmate cases, counsel has represented multiple individuals classified as "maximum custody" inmates. During the course of interacting with these inmates, when counsel has produced documents requiring the client's signature, it has been virtually impossible for the clients to affix a

7

signature to the document or documents to be signed from a seated position. In order to affix a signature to a release or some other document, it was always necessary for the client to stand up so that the document would be below the waist of the client in order for the client to be able to sign the document. While standing for the limit period of time necessary to sign the document may be acceptable, putting the client in a situation where he would have to stand for multiple hours while the June 30, 2011, hearing is held is unreasonable. This is especially true with respect to Mr. Hammer, who is having significant problems with his diabetes symptoms, especially with respect to his feet. Having Mr. Hammer in hand restraints during the hearing on June 30th will make it virtually impossible for Mr. Hammer to take notes during the hearing.

The fact that at some point in time in the future a transcript of what occurs on June 30, 2011, may be created does not obviate the need for Mr. Hammer to be able to take notes during the June 30th proceeding.

**2.    Presence of Defense Staff in the Room.**

Without offering any hint that Mr. Hammer would undertake any aggressive action towards the individual the defense team intends to have present in Indiana on June 30, 2011, the government and Associate Warden Church elude to the potential risk of harm to this individual. The individual who will be physically present in Indiana on June 30th is an individual who has had extensive contact with

8

Mr. Hammer since the Habeas Corpus Unit for the Middle District of Pennsylvania has been involved in the present case. This individual has had visits with Mr. Hammer at Terre Haute on multiple occasions. For individuals housed in the Special Confinement Unit, visitors have the option of visiting on a non-contact basis or signing a pre-printed BOP Release which allows for contact visits. This individual always elects to sign the Release form and to participate in her visits via contact visits. The suggestion that Mr. Hammer would be abusive or physically assaultive towards this defense team member is a figment of someone's very active imagination.

### 3. Security of Prison Staff.

In its brief, the government eludes to a hostage situation which occurred over 20 years ago while Mr. Hammer was housed at Lompoc. In referencing this incident, the government fails to disclose that this so-called "hostage" situation involved Mr. Hammer and his then cellmate. Although the government chooses to dredge up this 20 year old incident as a basis to suggest to the Court that there is a need to have Mr. Hammer in hand restraints for the purpose of the June 30th hearing, a review of the Notice of Intent filed by the government shows that this Lompoc incident is not identified as a basis for the jury to impose a sentence of death.

Without pointing to any factual basis which would support a conclusion that there is reason to believe that Mr. Hammer would attempt to become assaultive or otherwise physically interact with staff members, the government suggests that Mr. Hammer, with two free hands, although restrained by leg irons and experiencing restricted movement because of his diabetic symptoms, would represent a threat to staff. The assertion is based on his "status," but the same status has equal application to Inmates LeCroy and Fulks.

After the Third Circuit dismissed the appeals, a Motion filed with the Court for the reappointment of Attorney Travis into the case was heard in Williamsport. Mr. Hammer participated in that proceeding via videoconferencing and, during that proceeding, it is counsel's recollection that Mr. Hammer was seated at a wooden table and that one of the attorneys was seated next to him and seated on the opposite side next to him was the individual who will be present on June 30th. During that prior videoconferencing procedure there were two staff members in the room and one staff member outside the room, with the door unlocked. Absent from the Declaration of Associate Warden Church or the Motion or Brief submitted by the government are any contentions that Mr. Hammer engaged in any sort of assaultive conduct with respect to the defense team members seated at the table with him or with respect to the staff in the room with him.

A suggestion that if Mr. Hammer's hands are unrestrained during the proceeding on June 30, 2011, he will undertake some sort of action which creates a threat as far as BOP staff is not a factually based concern.

### 4.    Prior Courtroom Behavior.

As previously set forth, Mr. Hammer has demonstrated that as far as Court proceedings are concerned, he acts appropriately and presents no danger with respect to others in the room with him, be they defense team members or BOP staff.  In fact, during the lengthy evidentiary hearing there were multiple lawyers and defense staff in the immediate physical proximity of Mr. Hammer, including the individual who will be physically present on June 30th.

Although Mr. Hammer's hands remained unrestrained during the prior proceedings in this case, in the same courtroom where Mr. Hammer was allowed to participate with his hands not restrained, Judge Muir and the late Judge McClure treated other inmates on trial differently.  In the case of *United States vs. O'Driscoll*, a capital prosecution for Federal Inmate O'Driscoll charged with killing another federal inmate, involved Inmate O'Driscoll wearing leg shackles which were bolted to the courtroom floor.  In addition to the leg shackles, Mr. O'Driscoll was outfitted with a stun belt.  In *United States vs. Georgacarakos*, another inmate murder case which was not pursued as a capital prosecution, Mr. Georgacarakos attended the trial in leg shackles which were bolted to the floor and,

11

even when he assumed the witness stand and testified, he did so in leg shackles which were bolted to the floor of the witness box. The difference in how Mr. Hammer has been secured in the courtroom during his trial from the security precautions taken for Defendants O'Driscoll and Georgacarakos certainly supports a conclusion that allowing Mr. Hammer to participate in the June 30th matter without hand restraints is not the security threat which the government would have the Court believe.

**5.    Mental Health Testing of Inmates Housed in the Special Confinement Unit.**

As part of the §2255 proceeding Mr. Hammer underwent various tests which required that his hands not be restrained so that the testing could be carried out. These tests were undertaken by both defense experts and experts retained by the government. Counsel is unaware of any improper, assaultive, or threatening actions undertaken by Mr. Hammer during the timeframe when his hands were free.

Although counsel has not been present for testing of any other inmates confined in the Special Confinement Unit, it is counsel's understanding that multiple of these other individuals have also undergone mental health testing, both by defense experts and government retained experts, and in conjunction with this testing, their hands have been unencumbered by handcuffs.

**6.   Mr. Hammer's Current Health Issues.**

Although the government mentions that Mr. Hammer's handcuffs will be affixed to the front, it fails to mention that Mr. Hammer is currently under a Medical Status Order that makes it mandatory that his hands be cuffed to the front because of chronic shoulder problems.  As a result of his shoulder problems, as well as a degenerative disc in this back, being restrained for a long period of time exacerbates the shoulder and back conditions and causes physical pain.  Thus, not only will the hand restraints encumber Mr. Hammer's ability to take notes, it will also exacerbate his shoulder and back problems.

**7.   Alternatives to Mr. Hammer's Hands Remaining Restrained.**

Although the defense team believes that the Order of June 13, 2011, is an appropriate Order which should not be reconsidered and modified, if the Court is inclined to consider a modification of the June 13, 2011, Order, there are reasonable alternatives to requiring Mr. Hammer's hands to remain handcuffed during the course of the June 30th hearing.

One alternative "safety" feature would be to secure Mr. Hammer's ankle restraints to the floor which would prevent Mr. Hammer from moving even if he chose to stand up.  Another safety feature which could be added would be to strap Mr. Hammer to the chair in which he will be seated so that if he chose to stand up, he would either be prevented from getting off the chair or the chair would arise

with him. These "safety" features would prevent Mr. Hammer from engaging in any aggressive or inappropriate conduct.

The defense team does not believe that any of this "additional security" is necessary and these suggested alternatives ways to enhance the security are preferable to having Mr. Hammer's hands in restraints during the course of the June 30th proceeding.

## CONCLUSION

For the reasons as more fully set forth herein, the Court should deny the government's request for reconsideration and affirm its Order of June 13, 2011.

Respectfully submitted,

/s/ Ronald C. Travis, Esquire
Ronald C. Travis, Esquire
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
(570) 323-8711 (telephone)
(570) 323-4192 (facsimile)
rtravis@riederstravis.com

## Certificate of Service

I, Ronald C. Travis, hereby certify that the foregoing was served upon counsel for the government concurrently with its filing, by filing the same with this Court's ECF system.

/s/ Ronald C. Travis, Esquire
Ronald C. Travis, Esquire
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
(570) 323-8711 (telephone)
(570) 323-4192 (facsimile)
rtravis@riederstravis.com