UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 4:CR-96-0239 |
| | : | |
| v. | : | (Judge Slomsky) |
| | : | |
| DAVID PAUL HAMMER | : | **ELECTRONICALLY FILED** |

**UNITED STATES' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION FOR AN ORDER
DIRECTING THE MARSHAL'S SERVICE TO TRANSPORT
MR. HAMMER TO AND HOUSE HIM AT THE
FEDERAL DETENTION CENTER IN THE EASTERN
DISTRICT OF PENNSYLVANIA UNTIL THE COMPLETION
OF HIS RE-SENTENCING HEARING IN ORDER TO PROVIDE
COUNSEL SUFFICIENT ACCESS TO MR. HAMMER TO PREPARE
FOR THE RE-SENTENCING AND TO PERMIT MR. HAMMER TO APPEAR
<u>IN PERSON AT PRE-TRIAL HEARINGS</u>**

**Procedural History.**

Relevant procedural history for purposes of considering the issue raised herein begins on January 26, 2011.  At that time, this Court set a hearing pursuant to 18 U.S.C. § 3593(b) to begin with jury selection in April 2012.

On June 30, 2011, defendant, who participated via video conference, waived before this Court his right to venue for that proceeding and agreed, with the concurrence of the prosecution, that the capital re-sentencing hearing may be held in the United States District Court for the Eastern District of Pennsylvania at Philadelphia.

On July 22, 2011, defense counsel filed a motion and brief for an order directing the Marshal's Service to transport

Hammer to and house him at the federal detention center in Philadelphia.  Herewith presented is the prosecution's opposition to Hammer's request for relief as presented.

**Counter-Statement of Facts.**

Attached is Government Exhibit 1.  This references Hammer's latest violation of prison rules on May 14, 2010, as reflective of his character and the security dangers which he poses. Government Exhibit 2 is a listing of various facilities operated by the Bureau of Prisons on the East Coast.  Included therein are descriptions of the Philadelphia MDC and other facilities physically nearby.

Government Exhibit 3 is a statement from the Bureau of Prisons[1].  Recognizing some difficulties in visitation for defense counsel while defendant is housed at the Terre Haute SCU, prison officials are willing to place Hammer in an appropriate prison within the North Eastern Region of the Bureau of Prisons in October 2011.  Thereafter, as the hearing date approaches, Hammer will be placed in the Philadelphia MDC to facilitate further contact between defense and defendant.

**Issue.**

Whether this Court, eight (8) months before the start of a second death penalty hearing should require the United States

---

[1]  Government Exhibit 3 was not available at the time of this filing.  It will be filed after receipt from the Bureau of Prisons which is permitted under the local rules.

Marshal promptly to transport Hammer, a contract prisoner from Oklahoma serving a lengthy term of incarceration, and who has been held by the Bureau of Prisons in high security facilities for more than fifteen years, to a facility which is designed primarily for detainees facing trial and possible imprisonment to facilitate attorney-client communications.

**Argument.**

<u>Introduction</u>

Hammer's "modest request" to be sent presumably now to a specific prison near where his sentencing hearing will take place and near some of his attorneys, if said quickly almost sounds reasonable.  But there are many specific and meaningful details omitted, whether inadvertently or deliberately, which it is submitted render, as presented, the request for relief overwhelmingly flawed.

Initially, this pleading asks this Court to direct an order to the United States Marshal's Service.  But that agency did not have the responsibility to send Hammer, once he was convicted in 1998, to the ADX or later Terre Haute, nor were they responsible for his return in 2005 for § 2255 proceedings. At most that law enforcement entity will be in charge of security once Hammer arrives within the Philadelphia Federal Courthouse and the brief trips from a nearby jail to that building.  The request should have been directed to the Bureau of Prisons which has custody of

defendant prior to the beginning of any court proceeding and when defendant is not physically before this Court.

The actual dispute between the parties is over the <u>timing</u> of Hammer's return to the East Coast as well as the <u>location</u> where he will be housed substantially prior to the beginning of proceedings.  It is submitted that given the paucity of details supplied by the defense regarding why defendant should immediately be placed in the Philadelphia MDC, the broad discretion given to correctional officials regarding the pre-hearing placement of prisoners and the undisputable and substantial security problems inherent in placing Hammer in a facility primarily designed for those facing trial, this Court should allow the Bureau of Prisons to return defendant to the East Coast to make attorney visitation easier in the Fall while prior to the actual April 2012 hearing moving him to the Philadelphia MDC.

1.  HAMMER IS HARDLY A NORMAL PRE-TRIAL DETAINEE.

Hammer's attorneys allude to the fact that their client has a "present status as an unsentenced defendant."  (Motion ¶ 8.) This is half-truth at best since defendant has <u>at</u> <u>least</u> a 1200 year sentence from the State of Oklahoma which he is serving in Bureau of Prisons custody, pursuant to 18 U.S.C. § 5003.  *United States v. Hammer*, 404 F. Supp. 2d at 686 n.3.

Not surprisingly with the exception of brief stays at the Oklahoma Transport Center for Federal Prisoners, defendant always has been housed by the Bureau of Prisons in penitentiaries or even more secure facilities.  These included Leavenworth, Lompoc, Allenwood, the ADX in Florence, Colorado, the Terre Haute complex including its Special Confinement Unit, and Lewisburg (2005).  Of course, while serving the 1200 year plus sentence, Hammer killed his cellmate in the most secure portion of the Allenwood Penitentiary.  *Id*. at 680.

One would think that SCU would be able to keep defendant's security breaches to a minimum but facts suggest otherwise.  This Court can review Government Exhibit 1, his most recent violation of prison rules and draw the conclusion then advocated by Hammer that although he "talked to the radio [talk show] host [Alex Jones of Oklahoma] over the phone [whom he] thought . . . was [his] attorney [but] did not know [this] until [he] got on the phone."  But it is submitted that such a guileless characterization of his behavior ought not to be reached by this Court.  In short, David Paul Hammer's various prior Oklahoma convictions, his admitted killing of a federal inmate, and disciplinary record through 2010, demonstrate unequivocally that he presents a severe and on-going security threat to any prison where he may be held.

    2.    THE GENUINE NEEDS FOR ATTORNEY-CLIENT CONSULTATION AND ALTERNATIVE FORMS OF COMMUNICATION.

Defense counsel's string citation of generic decisional law or even reference to ABA Standards for capital cases is not particularly illuminating.[2]  (Brief of Defendant at 2-3.)  While it is not appropriate to diminish the need for personal consultation between Hammer and his defense team (Motion ¶ 13), nonetheless it is well to keep their <u>legitimate</u> needs in perspective in the circumstance of this case as well as existing other avenues of communication.

This death penalty proceeding has been limited in scope by Hammer's plea of guilty, which Judge Muir sustained in the § 2255 proceedings.  Consequently, the proceedings are far more focused on details following any finding of guilt by the triers of fact. 18 U.S.C. § 3593(b).  Moreover, this is a "do over."  Defense counsel are not working on a "*tabla rasa*."  Much work was done initially in 1998 by Attorneys Ruhnke and Travis.  Supplemental work, in bringing in diverse witnesses, expert and otherwise, occurred in 2005, by the rest of the defense team.  *See generally, United States v. Hammer,* 404 F. Supp. 2d *supra.*

---

[2]  One authority cited by Hammer, *Mann v. Reynolds*, 46 F.3d 1055 (10th Cir. 1995), did refer to death row inmates and their Sixth Amendment rights.  (Brief of Defendant at 3.)  While striking down an apparently arbitrary "no contact" visitation policy between attorneys and their clients, the Tenth Circuit observed that "the Supreme Court has left matters of security to the sound and principled discretion of prison administrators." *Id.* at 1060.

Beyond that, defense counsel in seeking to have the Attorney General de-certify the death penalty provided a three volume overview of the information which they may utilize in April 2012. This serves as a template for Hammer's re-sentencing presentation.  While Hammer's needs to confer with his attorneys may exist, they hardly are akin to those who are facing an initial and full scale trial of guilt as a prelude to a novel sentencing hearing.

Hammer's present attorneys continue to have the ability to speak with their client on unmonitored telephone lines.  28 C.F.R. § 540.103.  Likewise, pursuant to 28 C.F.R. §§ 540.18 and .19, defendant and his counsel can exchange information confidentially through the mail.  While face-to-face discussions may be useful and admittedly more onerous to achieve given the distance between Pennsylvania and Indiana, no significant details have been provided by the defense[3] which suggest that alternative means of communication presently are inadequate or that personal meetings are required now.

---

[3]  Defense counsel point to the twofold need for transfer to include his presence at "any pre-trial hearings" as well as "to adequately prepare for the resentencing." (Motion ¶ 6.)  Hammer has appeared via video from Terre Haute which again could be employed.  Moreover, the only present, legitimate pre-trial hearing would relate to defendant's alternative request -- to proceed *pro se* which, if successful, would diminish the need for attorney-client contact since Hammer would be master of his own fate legally.  With respect to the alternative basis defense counsel's use of conclusary terms should not prevail over legitimate security concerns.

3.    TIMING AND LOCATION OF PLACEMENT.

Nowhere in his pleadings does Hammer's attorneys indicate when transfer should occur.  Neither the motion nor the prayers for relief set forth any proposed placement date.  Consequently, the prosecution is assuming that the defense request is for the immediate future even though at least eight months will elapse before the first prospective juror is interviewed.  Particularly given the work already done in conjunction with the 1998 penalty phase trial, the 2005 § 2255 proceedings, and the 2010 decertification efforts, it is submitted that a stay of over half a year prior to the beginning of the re-sentencing hearing is unjustified.

While ambiguous as to duration, defense counsel unequivocally focus on where they want their client to be housed -- the Philadelphia MDC.  (Motion ¶ 10.)  Of course, Hammer has never been at that facility before even when the same defense team ably represented him in 2005.  Moreover, Hammer has counsel stationed not only in Philadelphia, but also Harrisburg (Ms. Saunders) and Williamsport (Mr. Travis).

No one is disputing that attorney-client visitation is made more difficult by Hammer's present incarceration at the SCU in Terre Haute.  (Motion ¶¶ 14-16.)  But it is one thing to say that and quite another to request specific placement at the MDC.  As Government Exhibit 2 indicates, the facilities' descriptions

primary purpose of the MDC is to house pre-trial detainees

("Security Level: Administrative/Male, Female:), who are facing

criminal charges with the possibility of imprisonment for

violating the law.  The only genuine certainty for David Paul

Hammer in contrast is that he will never be released from prison

regardless of whether he is serving his Oklahoma State sentences

or any federal punishment.

Logically, under the circumstances, administrative sanctions

have less impact on this defendant.  There are far less "tools"

available to the Bureau of Prisons to insure that Hammer as a

prisoner follows its rules.  Moreover, defendant would not

reasonably likely share the attitudes and hopes of pre-trial

detainees which makes them as a whole more easily subject to

control.

4.   APPLICABLE LEGAL PRINCIPLES.

The Bureau of Prisons does not believe it is appropriate to

place defendant at the MDC at this time due to undisputed

security concerns.  That Hammer wishes to be placed in that

particular facility is, as Third Circuit precedent indicates, is

of no moment.  *Johnson v. Watson*, 303 Fed. Appx. 79, 81 (3d Cir.

2008); *Franco v. BOP*, 207 Fed. Appx. 145, 145-46 (3d Cir. 2006);

and *Young v. Quinlan*, 960 F.3d 351, 358 Fn. 16 (3d Cir. 1992).

Placement of defendant at the Lewisburg Penitentiary as

occurred in 2005 during the § 2255 proceedings is available or at

other appropriate prisons on the East Coast closer to counsel beginning this Fall.  Sufficient attorney-client meetings can occur there as well as later at the MDC-Philadelphia.

**Conclusion.**

The prosecution submits that defense counsel's request for an order directing the Marshal's Service to move Hammer promptly to the Metropolitan Detention Center in Philadelphia should be denied as presented.  That facility is best equipped for pre-trial detainees which status Hammer simply does not share.  His Oklahoma convictions, admitted killing of another federal inmate, and disciplinary record demonstrate that additional security is required to house him.  Preliminarily this can occur at a more appropriate prison on the East Coast, where there would be somewhat easier attorney-client access.  This Court is respectfully urged not to second-guess the Bureau of Prisons' discretionary authority in this respect.

Respectfully submitted,

PETER J. SMITH
United States Attorney


By s/Frederick E. Martin
FREDERICK E. MARTIN
Assistant United States Attorney
PA ID 57455
Herman T. Schneebeli Federal Bldg.
240 West Third Street, Suite 316
Williamsport, PA 17701-6465
Tele: (570) 326-1935
FAX: (570) 326-7916
Electronic Mail:
Fred.Martin@usdoj.gov

                                        Steven D. Mellin
                                        Trial Attorney For the
                                        Capital Case Unit
                                        Texas ID 13920380
                                        1331 F Street, N.W.
                                        Washington, D.C. 20530
                                        Tele: 202-514-1224
                                        Electronic Mail:
                                        Steve.Mellin2@usdoj.gov

Dated: August  11  , 2011

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :    Criminal No. 4:CR-96-0239
                                  :
         v.                       :    (Judge Slomsky)
                                  :
 DAVID PAUL HAMMER                :    **ELECTRONICALLY FILED**

## CERTIFICATE OF SERVICE

     I hereby certify that I caused a true and correct copy of the foregoing

**UNITED STATES' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR AN ORDER DIRECTING THE MARSHAL'S SERVICE TO TRANSPORT MR. HAMMER TO AND HOUSE HIM AT THE FEDERAL DETENTION CENTER IN THE EASTERN DISTRICT OF PENNSYLVANIA UNTIL THE COMPLETION OF HIS RE-SENTENCING HEARING IN ORDER TO PROVIDE COUNSEL SUFFICIENT ACCESS TO MR. HAMMER TO PREPARE FOR THE RE-SENTENCING AND TO PERMIT MR. HAMMER TO APPEAR IN PERSON AT PRE-TRIAL HEARINGS**

to be electronically mailed on ___August 11_____, 2011, to:

ADDRESSEES:     Ronald C. Travis, Esquire
                rtravis@riederstravis.com

                Michael Wiseman, Esquire
                Michael_Wiseman@fd.org

                James J. McHugh, Jr., Esquire
                James_McHugh@fd.org

                James Moreno, Esquire
                James_Moreno@fd.org

                Anne Saunders, Esquire
                Anne_Saunders@fd.org


                       S/Frederick E. Martin
                    FREDERICK E. MARTIN
                    Assistant United States Attorney