DISCIPLINE HEARING OFFICER REP    T  **FILE COPY**   BP-S304.052 MAY 94
U.S. DEPARTMENT OF JUSTICE   FEDERAL BUREAU OF PRISONS

| | | | | | |
|---|---|---|---|---|---|
| INSTITUTION | FCC Terre Haute, IN | INCIDENT REPORT NUMBER | 2020081 | | |
| INMATE NAME | HAMMER, David | REG NO | 24507-077 | UNIT | SCU |
| DATE OF INCIDENT | 05-14-2010 | DATE OF INCIDENT REPORT | Rewrite 7-01-2010 | | |
| OFFENSE/CHARGES | 297 | | | | |
| | 327 | | | | |
| SUMMARY OF CHARGES | USE OF TELEPHONE FOR ABUSES OTHER THAN CRIMINAL ACTIVITY | | | | |
| | UNAUTHORIZED CONTACT WITH THE PUBLIC | | | | |

## I. NOTICE OF CHARGE(S)

| | |
|---|---|
| A.  The DHO Hearing was held on (date) | 07-09-2010 |

## II. STAFF REPRESENTATIVE

| | | | | |
|---|---|---|---|---|
| A.  Inmate requested or was appointed staff representation | Yes | | No | X |

B.  Statement of Staff Representative:

N/A

## III. PRESENTATION OF EVIDENCE

| A.  Inmate | admits | X | denies | | neither | | the charges. |
|---|---|---|---|---|---|---|---|

B.  Summary of inmate statement:

I am guilty of having unauthorized contact with the public.  I talked to the radio host over the phone.  I thought it was my attorney.  I didn't know until I got on the phone.

C.  Witness(es):

| | | | | | |
|---|---|---|---|---|---|
| 1.  The inmate requested witness(es). | Yes: | | No: | X | |

2.  The following persons were called as witnesses at this hearing and appeared. (Include each witness's name, title, reg number and statement as appropriate.)

N/A

3.  The following persons requested were not called for the reason(s) given.

N/A

| | | | | | |
|---|---|---|---|---|---|
| 4.  Unavailable witnesses submit written statements and those statements received were considered. | Yes: | | No: | | N/A X |

N/A

D.  Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:

The inmate submit a written statement which was considered.

Evidence use by the DHO is listed in Section V.

E.  Confidential information was used by DHO in support of his findings, but was not revealed to the inmate.  The confidential information was documented in a separate report.  The confidential information has been (confidential informants have been) determined to be reliable because:

N/A

## IV. FINDINGS OF THE DHO

| | |
|---|---|
| X | A. The act was committed as charged. |
| | B. The following act(s) was committed: |

**Government Exhibit 1**
**Page 1 of 3**

DISCIPLINE HEARING OFFICER REP..T
U.S. DEPARTMENT OF JUSTICE

BP-S304.052 MAY 94
FEDERAL BUREAU OF PRISONS

| | C. No prohibited act was committed: Expunge according to Inmate Discipline PS. |

**V.  SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)**

The inmate's due process rights were reviewed by the DHO, during the hearing.  The inmate stated he understood his rights, did not submit documentary evidence, and did not request any witnesses or a staff representative.

Administrative notice is given that the incident report was initially written on May 25, 2010, after all the necessary facts were gathered to write the incident report.  The incident report was rewritten on July 1, 2010, to ensure the inmate had proper notice of the evidence regarding the charge against him.  The Warden has signed an approval for the UDC to be conducted past the fifth day after staff became aware of the misconduct.

As stated in the incident report, "This is a rewrite of an incident report written on 5-25-10.  On May 16, 2010 at approximately 9:45 p.m. I monitored a pre-recorded telephone call made from the Trufone account of inmate HAMMER #24507-077 (unassigned), unit SCU.  The call was placed on May 16, 2010 at 7:08 p.m. to telephone number (603) 661-0455.  During the call, the female other party asked inmate HAMMER, "I've been meaning to ask you, how do you do those interviews?  "HAMMER responds, "I really can't talk about it on this phone.  "Knowing that HAMMER had been restricted from giving interviews in the past, I sent a few emails inquiring if HAMMER had been authorized to give interviews.  On May 17, 2010 I was notified that HAMMER was not authorized to give any interviews and I was instructed to gather information about the interview and attempt to determine how and when it had taken place.  I was able to monitor a small part of the interview with Alex Jones from the internet and determined that an interview had in fact taken place.  At that time I was unable to determine the date and time of the interview.  I made some email inquiries and waited for responses.  Today on May 25, 2010 at approximately 9:00 a.m. I was able to determine that the interview had taken place on May 14, 2010.  In an email dated 5-14-2010, inmate HAMMER wrote to Regina Carr and stated, "I am tired rnyself," "Did an hour long live interview today." "It was the Alex Jones Show." "It aired on 60 radio stations and on the internet (or will be on the net at www.prisonplanet.com I think)." "It went well and was an easy interview, but I had no idea it was going to happen." "The opportunity presented itself and I went along for the ride so to speak."

The entire interview was now available on the internet and I monitored it.  At the very beginning, inmate HAMMER stated, "This is David Paul Hammer and I'm coming to you live from Federal death row in Terre Haute, Indiana."  During the interview, inmate HAMMER discussed various alleged conversations he had with Timothy McVeigh about the Oklahoma City bombing and he appeared to be advertising a book he recently wrote named Deadly Secrets.  It is not known whether this Live interview occurred during the legal call placed at 1:00 p.m. on May 14, 2010, or when the supposed attorney called back into the institution around 3:32 p.m.  It is know that inmate HAMMER engaged in a live interview during one of these calls.

Alex Jones is not on any approved telephone list to speak to inmate HAMMER.  The only way inmate HAMMER could have engaged in this interview is via unauthorized contact with the public utilizing the legal phone line.  Because inmate HAMMER conducted this interview via an unmonitored phone line (legal call line) he circumvented telephone monitoring procedures."

Inmate's statement noted above. I am guilty of having unauthorized contact with the public. I talked to the radio host over the phone. I thought it was my attorney. I didn't know until I got on the phone. The DHO considered this inmate's claim that he didn't know he was talking to the radio host until he got on the phone, but the fact remains that this inmate, once he knew who he was talking to, choose to remain on the phone and engaged in a lengthy live interview with a radio show host. As stated in the incident report HAMMER was speaking to a female on May 16, 2010, at 7:08 p.m. and she stated, "I've been meaning to ask you, how do you do those interviews." Hammer responded, "I really can't talk about it on this phone." Based upon this statement, the DHO believes that HAMMER was aware that this  phone call was going to take place and he did communicate with someone that is not on his approved telephone list.  The telephone line he used to conduct this interview is strictly to be used for legal purposes and not social calls.  Since he did use an unmonitored phone line the DHO believes he was circumventing phone monitoring procedures thus threatening the security of the institution.

Inmate's written statement:  Hammer states that an unknown person called in on the legal line and claimed to be my attorney, I was handed the receiver and then the person identified himself as a producer for the Alex Jones Show and asked me to do an interview. I did participate in an interview from approximately 1:15 – 2:25 p.m. I am guilty of Unauthorized Contact With the Public because the interview was not approved. I accept responsibility for the Code 327. Please consider the restrictions already imposed by the Warden regarding my telephone. The DHO considered this statement; however, as stated above, she believes this inmate did violate the telephone monitoring procedures as he had

Government Exhibit 1
Page 2 of 3

DISCIPLINE HEARING OFFICER REP. .T
U.S. DEPARTMENT OF JUSTICE

BP-S304.052 MAY 94
FEDERAL BUREAU OF PRISONS

no approval to speak to Alex Jones via the unmonitored phone line. She believes this incident report meets the elements for both codes for which he was charged.

Electronic mail message from Hammer to Regina states." I'm tired myself. Did an hour long live interview today. It was the Alex Jones show, it aired on 60 radio stations and on the internet. I went well and was an easy interview, but I had no idea it was going to happen. The opportunity presented itself and I went along for the ride, so to speak."

Based upon the greater weight of the evidence, the DHO finds this inmate committed the prohibited act of Code # 297, use of telephone for abuses other than criminal activity and Code #327, Unauthorized Contact With The Public.

## VI. SANCTION OR ACTION TAKEN

Code 297:
27 Days Disallowance of Good Conduct Time
15 Days Disciplinary Segregation
60 Days Commissary Restriction
60 Days Phone Restriction

327:
60 Days Visiting Restriction

## VII. REASON FOR SANCTION OR ACTION TAKEN

Inmates are provided an account number to enter into the Inmate Telephone System (ITS), to ensure that staff can identify inmates using the phone for illicit purposes. Inmates are not permitted to use the ITS for illicit purposes, such as unapproved contact with the media. The action on the part of any inmate to use the telephone in an unauthorized manner poses a serious threat to the ability of staff to control the use of the telephone and monitor whether inmates are making calls for prohibited or illegal purposes. It is indicative of the intent to participate in unauthorized activities that could lead to disruptive behavior. The use of telephones is a privilege for inmates to maintain contact with their family and to maintain ties with them and not for criminal use. The sanctions imposed by the DHO were taken to express the gravity of the infraction and let the inmate know that he, and he alone, will be held responsible for his actions at all times.

Unauthorized contact with the public hampers staff's ability to maintain a safe and secure environment for other inmates and staff. The sanctions imposed by the DHO were taken to express the seriousness of the infraction. Although not directly related to the infraction, privileges were taken to deter the inmate from this behavior in the future.

## VIII. APPEAL RIGHTS: The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.

| | | Yes | X | No | |
|---|---|---|---|---|---|

## IX. DISCIPLINE HEARING OFFICER

| Printed Name of DHO | Signature of DHO | Date |
|---|---|---|
| D. Lockett | D. Lockett | 08-24-2010 |
| Report delivered to inmate by: | | Date: 8/24/10 |

(This form may be replicated in WP)

Replaces BP-304(52) of JAN 88

**Government Exhibit 1**
**Page 3 of 3**