UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA                 :   Criminal Number. 4:CR-96-0239
                                         :
V.                                       :   Honorable Joel H. Slomsky
                                         :   United States District Judge
                                         :
DAVID PAUL HAMMER,                       :
                    Defendant,           :        CAPITAL CASE

FILED
SCRANTON

AUG 1 2 2011

PER _____
        DEPUTY CLERK

DEFENDANT'S REPLY TO

UNITED STATES' OPPOSITION TO

DEFENDANT'S MOTION FOR HYBRID REPRESENTATION

OR IN THE ALTERNATIVE

MOTION TO PROCEED PRO SE

The procedural history of this case is well known to the court and counsel, and will not be repeted here except to the extent required to address the issues raised for consideration by the court in these pleadings.

This Reply is submitted in response to the government's brief in opposition to Mr. Hammer's motion for hybrid representation or in the alternative, motion to proceed pro se. The following is respectfully submitted.

Counsel for the government has argued in their brief (Gov. Br.) that the defendant is not entitled to hybrid representation . Under the Introduction section they briefly outline what is alleged to be "the latest unusual chapter in this case". Id at  2.  It appears that the government takes exception with Mr. Hammer having exercised his Constitutional Rights to a trial by jury, an appeal, and post conviction remedies. Those issues have absolutely nothing to do with the issues raised in the defendant's pro se filings which are the subject of this reply.

The government then speculates as to why the defendant wants to have hybrid representation "this latest request to serve as attorney partner in these proceedings can be characterized as yet another instance in which defendant seeks to control

proceedings, garner attention, or both. This court should deny Hammer relief to proceed as hybrid counsel". Gov. Br. at 2-3. Such speculation is not evidence and provides no sufficient justification for denying defendant's request for hybrid representation.

We can not forget, that it is due in large part to prosecutorial misconduct that this case is back for a resentencing trial. The government not only ask this court to deny Mr. Hammer's request to act as co-counsel, they also request that he be limited to only two attorneys from this point forward. Gov. Br. at 8. That issue will be addressed at the end of this reply.

Mr. Hammer is not asking this court to act on his motion for hybrid representation without first conducting an ex parte hearing, which can be conducted by telephone, video conferencing or in person. That on the record hearing will allow for a probing colloquy between the court and the defendant. This requires no "leap of faith" by the court as argued by the government. Gov. Br. at 4. Such ex parte pocceeding held to resolve issues between a defendant and his counsel happen routinely.

Counsel for the government has now established a pattern of bringing up Mr. Hammer's past vacillations in this case. AUSA Martin did so during the hearing held on June 30, 2011 and they have done so again in their arguments against allowing hybrid counsel. See: Gov. Br. at 2-4 ("Defendant, in essence, thus requires this court to make a leap of faith which, given his past record of indecisiveness, would be extremely improvident to do.") Obviously, such arguments do not carry the day and are intended only as an attempt to prejudice this court against the defendant. That Mr. Hammer vacillated on decisions relating to whether or not he wanted to pursue appeals or other collateral review of his conviction and sentence is of no moment. Those decisions all date back to 2004 or before. He has been steadfast in his decisions since that time. After a passage of seven years without any vacill-

2.

ations by Mr. Hammer in this case, the government still attempts to argue that a defendant's indecisiveness about exercising his Constitutional Rights is a bar to a request to have hybrid counsel. However, they offer no legal authority for such an argument.

There is absolutely no claim or evidence that Mr. Hammer has ever caused a security concern in any court proceeding. Throughout all of the pretrial, trial, post-trial and post conviction hearings held in this case, Mr. Hammer conducted himself in a respectful, appropriate, and courteous manner. With the exception of the § 2255 evidentiary hearing, the defendant never had any restrains on during his many court proceedings. During the § 2255 hearing Mr. Hammer's feet were restrained, not because of any behavioral problems, but rather due to a change in the policy of the U.S. Marshal's Service. On November 4, 1998, immediately following Mr. Hammer being sentenced to death, he turned and shook the hand of AUSA Frederick Martin, the very man who had sucessfuly prosecuted him. Despite Mr. Hammer's courtroom behavior having been personally witnessed by AUSA Martin, counsel for the government make an argument that allowing hybrid representation would "pose additional security problems for the United States Marshal's Service which will be responsible for courtroom decorum." Gov. Br. at 4.

There is nothing in the record that lends any support to this argument advanced by the government. The U.S. Marshal's Service is required to provide security for all trials and other courtroom proceedings. They have done so with Mr. Hammer, including instances when he was appearing pro se in this case. There were no security issues created by the defendant. It is interesting to note that no such argument is made by the government when they detail their position on Mr. Hammer proceeding pro se if he so chooses. See: Gov. Br. at 5-8. How could allowing a criminal defendant to proceed pro se create less of a security concern than when allowing him

to act as co-counsel? The inconstancy  in the government's arguments only further demonstrates their lack of any real merit. Additionally, the government has failed to provide any legal authority supporting their reasoning or argument.

Since the government has characterized Mr. Hammer's request for hybrid counsel as another unusual chapter in this case in which the defendant is seeking to control the proceedings, garner attention, or both, it is incumbent upon him to provide some specific information in this reply.

One of the major reasons why Mr. Hammer is seeking hybrid counsel is because he **does not** trust the two government attorneys assigned to prosecute the rehearing. He has been hesitant to bring this to the Court's attention, but has been pushed into doing so by the government's opposition to this motion.

Messrs. Martin and Mellin both have a history of prosecutorial misconduct. In this case Mr. Martin, the only ASUA involved prior to trial, and who prosecuted Mr. Hammer, withheld Brady material as found by this court. See: **United States v. Hammer, 404 F.Supp.2d 676 (M.D.Pa. 2005).** Prior to the § 2255 hearing, when responding  to a discovery request made by Attorneys Foster and Long-Sharp (defendant's first 2255 counsel), for FBI 302's of interviews conducted with inmates, Mr. Martin responded that counsel were on a fishing expedition. To date, Mr. Martin refuses  to accept that his actions were wrong, even though he does not deny that he did withhold the materials intentionally. These FBI 302's formed the basis (in part) upon which this Court vacated the sentence of death and ordered a resentencing.

Mr. Mellin's past history is also worthy of consideration when evaluating Mr. Hammer's mistrust  of  government counsel. In 2004 Mr. Mellin was found by The United States District Court for the Eastern District of Virginia to have engaged in misconduct  which was intentional. See: **United States v. Lentz, Case No. CR. No. 01-150-A, 2004 U.S.Dist.LEXIS 29650 (January 29, 2004).** The court found in its Findings

4.

of Fact the misconduct it attributed to AUSA Steven Mellin . "The Court has traced the path of the black day planner using testimony of witnesses and finds that Mr. Mellin, the lead prosecutor, is responsible for the intentional submission of the black day planner, excluded evidence, to the jury. Mr. Mellin's demeanor and testimony demonstrates he was being less than candid with the Court...................... The Court concludes that after all of the lawyers and the courtroom clerk completed their review of the evidence, Mr. Mellin placed the unadmitted day planners in the evidence box. The unmarked black day planner, inadmissible evidence, did not emerge from the clear blue sky, and land in the jury room.................Mr. Mellin denies making a mistake, and fails to acknowledge any personal responsibility, or even the slightest contrition, for this grave situation. The Court concludes that Mr. Mellin's testimony indicates much more than a lack of credibility; rather his testimony demonstrates his intent to act outside the Orders of this Court and the confines of the law. In sum, the Court finds that Mr. Mellin's actions with the day planners suggest that his conduct was not a benign act or negligent error. Rather this action was reckless, and it was intentional." Id.

Mr. Hammer's counsel, all officers of the court, have faith and trust in our system of justice and they expect that defense attorneys and prosecutors will abide by the law and the Court's orders. The defendant has no such expectations or confidence in these particular prosecutors, and with good reason. This is but one of the defendant's disagreements with some of his counsel.

The recent actions of Mr. Mellin and Mr. Martin cannot be ignored. On June 30, 2011 Mr. Mellin announced to the Court and counsel that he had recently traveled to see the Marti family, that he went alone without an agent or investigator and that there was no report of his interview with the Marti family.

On July 11, 2011 during the deposition of a potential defense witness, Mr. Mellin

5.

ask questions which he knew were barred under the law of the case doctrine. He inquired of the witness about Mr. Hammer's prior sentences totaling 1232 years; and he ask questions relating to the stricken non-statory aggravating factor of vulnerable victim. His actions were intentional and disregarded prior findings by this Court. He raised the 1232 year sentences despite arguments made in government responses to pending motions relating to the indictment. There the government admits that even allowing the grand jury to hear about the 1232 year sentence would have been error.

Last, but certainly not least is Messrs. Martin and Mellin's trip to the federal death row unit and their stop at Mr. Hammer's cell. Assuming for the sake of argument that the tour of federal death row was a fact finding mission, what legitiment purpose was served by going to the defendant's cell? The cells are the same. Cells on the lower tiers were readily available for inspection or viewing by the prosecutors. The prosecutors have not submitted to the court the results or details obtained during their "tour". Why not? At this point, absent evidence to the contrary, their actions appear supicious.  At the very least, their is also an appearence of impropriety.

As co-counsel, Mr. Hammer will be in a position to raise objections and concerns he has, to the court. He is not confident that his counsel will do so if they are in disagreement with him over any particular issue.

Defendant Hammer recently waived his presence at the depositions taken here in Terre Haute, Indiana on July 11, 2011. While viewing a DVD of Mr. Martin's cross examination of Sister Rita Clare Gerardot, SP, Mr. Hammer observed  Mr. Martin in action as he tried to impeach an 85 year old Catholic Nun with a ten  year old misdemeanor conviction for tresspassing on a military base during     a peaceful protest in Fort Benning, Georgia (which housed the School of the Americas). Such questioning was improper and violated all norms of decency and the rules governing  hearings held pursuant to     U.S.C.A. § 3593. See: § 3593 (C).

6.

The prior actions and tactics taken by government counsel is justification to grant defendant's request for hybrid representation. This is a case where the ultimate punishment is being sought. The opposition brief down plays this fact and even attempts to compare it to a case where a lengthly prison sentence is involved. As the United States Supreme Court has announced time and time again, "Death is Different".

Mr. Hammer has twice before been allowed to have hybrid representation. In the United States District Court for the Western District of Oklahoma, Case No. CIV-90-478-D, Mr. Hammer was challenging his Oklahoma State convictions pursuant to a Section 2254 petition. He was represented by Jarome Kearney, an Assistant Federal Public Defender. During the course of an evidentiary hearing in that case, Mr. Hammer was allowed to participate in oral arguments and supplemental questioning with his counsel. This hybrid representation did not create any security concerns. In fact the U.S. Magistrate Judge who conducted the hearing commented on how respectful and appropriately  Mr. Hammer had  conducted himself. This hearing occurred  in 1991 at the United States Courthouse  in Oklahoma City, Oklahoma.

In November of 1986 Mr. Hammer, acting as co-counsel in the District Court of Pittsburg County, State of Oklahoma, was acquitted by a jury,  after having been charged with kidnapping. Mr. Hammer's co-counsel was Ronnie May of McAlester, Oklahoma. The case was presided over by the Honorable Stephen Taylor (who is now the Chief Judge of the Oklahoma Supreme Court). Judge Taylor allowed hybrid counsel and Mr. Hammer participated in all aspects of the trial, with the exception of jury selection. This case involved the alleged kidnapping of a correctional officer at the Oklahoma State Penitentiary. Despite the nature of the case, there were no security concerns and Judge Taylor has commented on Mr. Hammer's courtroom decorum. He did so in the Terry Nichols' state case in 2004 (Nichols was convicted of killing 160 civilian victims

7.

in the bombing of the Alfred P. Murrah Federal Building in Oklahoma City. Nichols' attorneys requested authorization from the court to call Mr. Hammer as a witness in that case to testify as to his conversations with Timothy McVeigh. State prosecutors objected, but Judge Taylor ruled that Mr. Hammer's testimony would be allowed as re-buttal if the state called certain witnesses. During the course of the hearing while responding to state prosecutors' attack upon Mr. Hammer's credibilty as a witness,the Judge explained how Mr. Hammer had appeared in his court and how he had conducted himself in an exemplary manner. The Nichols trial was held in the spring of 2004 and Mr. Hammer was awaiting his June 8, 2004 execution date. Ultimately, the defense did not call Mr. Hammer as a witness.)

## LEGAL AUTHORTIES AND ARGUMENTS --- HYBRID REPRESENTATION

The government and the defendant totally agree on one thing... this Court has the discretion to grant or deny hybrid representation in this case. See: Gov. Br. at 3., Def. Br. at 1 and 3. It is well settled that the defendant has no Constitutional Right to hybrid representation. In **United States v. Davis,** 269 F.3d 514, 319-320 (5th Cir. 2001) the court addressed the issue of hybrid representation. The government argued that the case involved "hybrid representation of a sort that the Supreme Court has strongly implied is permissible -but not required under **Faretta (v. California,** 422 U.S. 806, 95 S. Ct. 2525, 45 L.Ed. 2d 562 (1975)." ).

This Court clearly has the authority to allow hybrid counsel. The government's argument that such joint representation should only be granted in "Rare and Except-ional Circumstances" is not borne out by the cases where hybrid representation has been allowed.

One example of such a case is **United States v. Peter N. Georgacarakas,** Case Number 4:CR-02-0034-02, United States District Court for the Middle District of Penn-

8.

the Attorney General did not authorize the case to proceed as a capital prosecution and where the maximum punishment was life in prison. Here, Mr. Hammer is facing a

In addition to the cases cited in Defendant's Brief which support hybrid representation, the following legal authority addresses hybrid representation in a variety of circumstances. See: **United States v. Chamberlain,** 329 Fed. Appx. 630 (3rd Cir 2009) (at trial standby counsel questioned the defendant during his testimony, gave closing statement, and participated in Rule 11 conference. The defendant conducted the rest of the trial.) (case was reversed due to improper waiver of counsel); **Banks v. Horn,** 271 F. 3d 527 (3rd Cir. 2001) (defendant was represented by counsel, but allowed to perform some task such as cross-examination of some witnesses); **Davis,** 269 F.3d at 517 (defendant was allowed to question witnesses, make arguments and give a closing argument); **United States v. Chavis,** 461 F. 3d 1201, 1206-1207 (10th Cir. 2006) (defendant allowed to have co-counsel while proceeding pro se); **Page v. Burger,** 406 F 3d 489, 491-495 (8th Cir. 2005) (court held that a trial court may approve hybrid representation--- where a defendant acts as co-counsel, but it is at the trial court's discretion); **United States v. Einfeldt,** 138 F. 3d 373, 378 (8th Cir. 1998) (same); **United States v. Leggett,** 81 F.3d 220, 226 (D.C. Cir. 1996) (defendant was allowed to cross-examine some witnesses, pose questions to some defense witnesses and made his own closing argument after his counsel's closing argument. "The district court's accomodation of Leggett's request for a hybrid form of representation reflects a careful balancing of interests at stake.").

Based on the facts of this case and in the interest of justice, this Court should allow Mr. Hammer to have hybrid representation in this matter. It is requested that an ex parte hearing or conference be conducted so that the defendant can provide his reasons for requesting hybrid counsel. See: **Leggett,** 81 F.3d at 224-226 (the court spoke ex parte with the defendant and separtely with his counsel, at 224, later the same morning the court held an ex parte conference with the defendant and his counsel to access the hybrid arrangements, at 225).

10.

## LEGAL AUTHORITIES AND ARGUMENTS --- PRO SE REPRESENTATION

Mr. Hammer has a constitutional right to self representation pursuant to **Faretta v. California,** 422 U.S. 806 (1974); **United States v. Jones,** 452 F.3d 223. 228-229 (3rd Cir. 2006); **United States V. Stubbs,** 281 F. 3d 109, 116 (3rd Cir. 2002).

Inorder to ensure that the record is clear, Mr. Hammer is making a clear and intentional request to proceed pro se in this case, if in fact his motion for hybrid representation is denied. To be sure, the defendant prefers to proceed with hybrid counsel, however, he stands ready to proceed pro se if need be.

A defendant must be allowed to represent himself "even if it works ultimately to his own detriment." **United States v. Peppers,** 302 F. 3d 109, 116 (3rd Cir 2002).

Before allowing a defendant to proceed pro se the court bears the weighty responsibility of conducting a sufficiently penetrating inquiry to satisfy itself that the defendant's waiver of counsel is knowing, understanding and voluntary. Id. at 130-131; **Stubbs,** 281 F. 3d at 118.

As the government has conceded Mr. Hammer's competency to waive his right to counsel is not in question. Gov. Br. at 6. In fact the defendant has previously had pro se status in this case in the district court and in the Third Circuit.

After a hearing on this matter, the defendant must be allowed to represent himself once the court has taken a valid waiver of counsl. Also see: 28 U.S.C. § 1654 (1976).

## CONCLUSION

One last matter must be addressed here. The government has ask this court to limit Mr. Hammer's counsel to two. See: Gov. Br. at 8. Such a request has no place in this motion for hybrid representation. The matter of how many attorneys Mr. Hammer has is for the court to decide, not the government. If the government wants to challenge the number of counsel in this capital case they must do so by way of a formal motion, not some back door approach like they have attempted here.

11.

A review of federal capital cases will reveal that many defendants have had multiple attorneys in excess of two. Futhermore,18 U.S.C.  § 3005 states in relevant part  "whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a judge thereof, shall promptly, upon the defendant's request, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases." Additionally 18 U.S.C. § 3599 states in relevant part  at (a)(1) (A) and (B) " Notwithstanding any other provision of law to the contrary, in every criminal action in which a defendant is charged with a crime which may be punishable by death, a defendant who is or becomes financially unable to obtain adequate representation .... shall be entitled to    the appointment of one or more attorneys". (emphasis added).

There is nothing in the federal statutes which barrs Mr. Hammer from having the assistance of counsel currently in place. The government has provided no legal authority to the contrary.

Therefore, for all of the reasons provided in his motion, brief and this reply, the defendant respectfully requests that his motion for hybrid representation  or in the alternative his motion for pro se representation be granted.

August 8, 2011

Respectfully Submitted,

David Paul Hammer, Pro Se
Reg. No. 24507-077
Federal Death Row
USP-Terre Haute
P.O. Box 33
Terre Haute, IN 47808-0033

12.

Case 4:96-cr-00239-JHS   Document 1394   Filed 08/12/11   Page 12 of 14

## DECLARATION OF MAILING

I David Paul Hammer, do hereby state and declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746 that the original of Defendant's Reply to United States' Opposition to Defendant's Motion for Hybrid Representation or in the Alternative Motion to Proceed  Pro Se was sent by First Class  Mail  to the Clerk of the Court for filing,On this 12, day of August, 2011. Copies of the same reply were sent by First Class mail to the individuals below. This mail was provided to the Special Confinement Unit officer for mailing as is the prosedure  for outgoing Special/Legal Mail at USP-Terre Haute.

Executed this 8th day of August, 2011 at Terre Haute, Indiana.

David Paul Hammer

Frederick E. Martin
Assistant U.S. Attorney
Federal Building
240 West Third Street, Suite 316
Williamsport, PA 17701-6465

Ronald C. Travis, Attorney
161 West Third Street
Williamsport, PA  17701

Anne Saunders, Assistant Federal Public Defender
100 Chestnut Street, Suite 300
Harrisburg. PA 17101

Michael Wiseman
James McHugh
James Moreno
Federal Community Defender
Eastern District of Pennsylvania
Suite 540- Curtis Center
Philadelphia, PA 19106

David Paul Hammer

13.

Clerk of the Court
United States District Court
Middle District of Pennsylvania
Federal Building/ U.S. Courthouse
235 N. Washington
Scranton, PA   18501

August 8, 2011

Re: United States v. David Paul Hammer
    Criminal No. 4:cr-96-0239

Dear Clerk,

   Please find enclosed the original of Defendant's Reply to the United States'

Opposition to Defendant's Motion for Hybrid Representation  or in the Alternative

Motion to Proceed Pro Se, for filing with the court.

   Thank you for your time and consideration in this matter.

Sincerely,

David Paul Hammer, Defendant
Reg. No. 24507-077
Federal Death Row
USP-Terre Haute
P.O. Box 33
Terre Haute, IN 47808-0033





# PRIORITY® MAIL

## UNITED STATES POSTAL SERVICE

# Flat Rate
# Mailing Envelope

**For Domestic and International Use**

*Visit us at usps.com*

Any amount of mailable material may be enclosed, as long as the envelope is not modified, and the contents are entirely confined within the envelope with the adhesive provided as the means of closure.

**INTERNATIONAL RESTRICTIONS APPLY:**

**4-POUND WEIGHT LIMIT ON INTERNATIONAL APPLIES**

Customs forms are required. Consult the *International Mail Manual* (IMM) at *pe.usps.gov* or ask a retail associate for details.

## SPECIAL MAIL
## 28 C.F.R. § 540.18.19

**From:** /*Expéditeur:*

David Paul Hammer, #24507-077
FCC Terre Haute
P. O. Box 33
Terre Haute, IN 47808

R
SC
PER ___

**To:** /*Destinataire:*

Clerk of the Court
United States District Cou
Middle District of Pennsyl
Federal Building/ U.S. Cou
235 N. Washington
Scranton, PA 18501

**Country of Destination:** /*Pays de destination:*



INMAT
IDENTIFIC/
CONFIRM



USPS packaging products have been awarded Cradle to Cradle Certification℠ for their ecologically-intelligent design. For more information go to mbdc.com/usps
Cradle to Cradle Certified℠ is a certification mark of MBDC.


Recycled Paper

*Please recycle.*

082708_PM_EP14F   OCT 2008