# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
| | : | |
| v. | : | Honorable Joel H. Slomsky |
| | : | |
| DAVID PAUL HAMMER, | : | Capital Case |
| | : | |
| Defendant | : | |
| _____ | : | _____ |

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO MOVE MR. HAMMER TO THE FDC IN PHILADELPHIA PENDING HIS RESENTENCING HEARING SCHEDULED FOR APRIL, 2012

Mr. Hammer, through counsel, herein submits his *Reply Brief in Support of Motion to Move Mr. Hammer to the FDC in Philadelphia Pending his Resentencing Hearing Scheduled for April, 2012*, and in support thereof, states the following:

The government raises various misleading and inconsistent objections to Mr. Hammer's motion to transfer him to the FDC pending his resentencing hearing. For the reasons described below and in the prior submissions, this Court should reject those objections and issue an order directing that the Marshal's transport Mr. Hammer to the FDC Philadelphia forthwith to remain throughout the resentencing proceedings.

To hear the government describe it, Mr. Hammer's security status is something close to Osama Bin Laden, **it is not**; and that the FDC in Philadelphia is incapable of

housing Mr. Hammer during the now six months leading up to the resentencing proceedings, **it is**.  Indeed, the government does not contend that the FDC can *never* appropriately house Mr. Hammer, just that it cannot do so until some unspecified time shortly before the resentencing.

The government further offers its opinion regarding how much and how often counsel needs to communicate with Mr. Hammer, and what counsel needs to do to prepare for the resentencing proceedings, in support of its contention that Mr. Hammer need not be housed at the Philadelphia FDC until the trial commences.  The government, however, is not Mr. Hammer's counsel and is in no position to dictate what communication is necessary in order to ensure that Mr. Hammer receives adequate and effective counsel during the resentencing hearing.  In addition, contrary to the government's contention, preparation for the resentencing hearing in which Mr. Hammer's very life is on the line is not simply a matter of recycling what may have occurred in the past, and the government knows that.[1]  For the reasons described below, and those set forth in the prior submissions, this Court should reject the

---

[1]Indeed, while the government acknowledged during the oral argument that the evidence it expected to present against Mr. Hammer would change, it argued against providing Mr. Hammer or his counsel with any indication of how that evidentiary presentation would change, despite the Assistant United States Attorney's assurances that he does not believe in hiding the ball.  NT 6/30/11 at 131-32.

government's attempts to thwart counsels' ability to meaningfully communicate with their client and prepare for this life or death proceeding and direct that Mr. Hammer be transported to the FDC in Philadelphia.

**I.      Counsel is Ethically, Legally and Constitutionally Required to Have Meaningful Consultations with Mr. Hammer During these Critical Pretrial Months and Neither the Current Conditions Nor the Alternatives to FDC in Philadelphia Proposed by the Government Provide Counsel the Access Necessary to Comply with These Requirements.**

The ABA Guidelines charge counsel with a duty of "engag[ing] in a continuing interactive dialogue with the client concerning all matters that might reasonably be expected to have a material impact on the case." ABA GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN DEATH PENALTY CASES (February 2003) (hereinafter "Guidelines"), Guideline 10.5(c). Counsel is charged with the obligation to consult with their client on the pretrial investigation, the ongoing legal issues that arise throughout the pretrial proceedings; as well as consultation regarding the ongoing litigation deadlines and other case related events. Id. Guideline 10.5 (c) (1) - (7).

Obviously recognizing the need for meaningful attorney/client consultation, the appointment statute requires that capital counsel "*shall have free access to the accused at all reasonable hours.*" 18 U.S.C. § 3005. Likewise, counsel's performance at capital sentencing must be evaluated in light of the fundamental principle that a capital defendant has "a right – indeed, a constitutionally protected

right – to provide the jury with the mitigating evidence." Williams v. Taylor, 529 U.S. 362, 393 (2000). Similarly, heightened, not reduced, procedural safeguards and reliability are required in capital cases. Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

**II.    Transfer to the FDC in Philadelphia Resolves the Ongoing Problems Arising from USP-TH's Failure to Provide Counsel with the Statutorily Required Reasonable Access and Obstructing Counsel from Discharging Their Duties to Have Meaningful Pretrial Consultations with Their Capital Client.**

During the past four months, the pretrial litigation has increased substantially with the filing of the pretrial motions, the discovery of additional constitutional violations by the government and other litigation issues. Throughout this time-period, counsel have been unable to have a face-to-face meeting with Mr. Hammer on short notice, and have had some difficulties obtaining timely legal calls, despite the cooperation of the staff at the Terre Haute facility.

In order to obtain a face-to-face legal visit with Mr. Hammer, counsel must schedule the visit in advance, arrange travel, and block out two to three days to allow for the travel as well as the limited day-time visitation requirements of Terre Haute. Legal visits are restricted to between the hours of 8:00 am and 3:00 pm with no movement between 10:30 am and 12:30 pm. There are no evening hours available. In order for counsel to arrange a visit, they must also allot two and a half days for a

six and a half hour visit[2] to include the time for travel, not to mention the time and expense of obtaining reasonable flights and housing arrangements. Even when counsel have attempted to comply with these limitations, in at least one circumstance over the past three months, counsel was not able to obtain a legal visit for the time in which counsel was available because the legal visiting area had been booked.

Legal calls also must be scheduled in advance and, at least on one occasion in the past three months, counsel was unable to schedule a legal call with Mr. Hammer in order to discuss a pleading prior to its due date. Thus, while the staff have been more than cooperative, due to circumstances beyond their control, Mr. Hammer has been denied the reasonable access necessary in order to adequately consult with his counsel even during these pretrial proceedings.[3]

---

[2]There is always a delay going through security and waiting for an escort to the visitation area that averages about a half hour total.

[3]The government's reliance on confidential legal calls and legal mail as a basis for not bringing Mr. Hammer to FDC Philadelphia prior to three months before his resentencing is unavailing for a number of reasons. First, as noted above, there have been times when counsel was unable to schedule a call in a timely fashion to accommodate deadlines. Second, as the case progresses, the need for face-to-face meetings increases and the ability to obtain the meaningful consultation to which Mr. Hammer is entitled through the legal call decreases substantially. Nor is this adequately addressed through the legal mail process. The time-constraints become even more burdensome. Because of the various litigation deadlines, counsel have been forced to fed-ex, rather than send via regular mail, various materials in the hopes it would provide Mr. Hammer with sufficient time to receive and review the material prior to the deadline. Moreover,

Legal visits for the FDC in Philadelphia, on the other hand, are quite different. First, counsel would not have to obligate two and a half days for a six hour legal visit because the travel is minimal for counsel in Philadelphia, as well as Mr. Hammer's Harrisburg counsel.[4]  Second, the visitation hours are from 6:00 am until 8:00 pm with legal visits obtaining first priority (as opposed to the Terre Haute visitation policy).  Unlike the present situation, (or the alternatives suggested by the government), these conditions meet the statutory requirements that counsel be provided free access to their client at all reasonable hours and also provide the means by which counsel can fulfill their ethical and constitutional obligations to have meaningful consultations with their client throughout the six-month pretrial period.

## III.   The Philadelphia FDC is Capable of Housing Mr. Hammer for the Six Months Pretrial Period.

The government contends that, while the Philadelphia FDC is capable of housing Mr. Hammer at some unspecified time shortly before the resentencing, it is

contrary to the government's contentions, even when counsel have complied with all requirements to designate mail "legal mail," the institution has processed that mail as regular mail, thus violating the attorney/client privilege, something counsel can certainly avoid if Mr. Hammer is at the FDC-Philadelphia by simply handing the documents to him.

[4]Indeed, it is actually as close and more cost effective (in light of the train access) for Harrisburg counsel to travel to the FDC in Philadelphia than Lewisburg federal prison, an alternative suggested by the government.  Thus, three of the four attorneys would have much more ready access to Mr. Hammer.

somehow not capable of doing so for six months prior to the resentencing.  This contradiction, in and of itself, is a reason to reject the government's objections and grant Mr. Hammer's motion.

Characterizing Mr. Hammer as "hardly a normal pre-trial detainee" the government relies on Mr. Hammer's Oklahoma sentence and one incident report of a telephone violation to support its contention that Mr. Hammer's security risk precludes housing him at the Philadelphia FDC for the now six months prior to the resentencing hearing.    The government's contentions are overreaching and unavailing.

The FDC-Philadelphia is classified by the BOP as an Administrative facility. See http://www.bop.gov/locations/institutions/phl/index.jsp.  Based on the BOP's own guidelines, an administrative facility is designed and charged "with special missions, such as the detention of pretrial offenders; the treatment of inmates with serious or chronic medical problems; or *the containment of extremely dangerous, violent, or escape-prone inmates*."[5]  Exhibit A.

The FDC *routinely* houses inmates that are by the government's own description considered "Armed Career Criminals"  and "Career Offenders" with extensive criminal histories who are charged with multiple counts of violent crimes

[5]See also http://www.bop.gov/locations/institutions/index.jsp.

such as robberies, drug dealing and assaultive acts. Indeed, the Philadelphia FDC is capable of housing such notorious pretrial detainees as Kaboni Savage and Robert Merritt, co-defendants in a multi-count murder, racketeering and arson case. Exhibit B. Nor is that facility, as the government would like this Court to believe, restricted to pretrial detainees only. For example, the Philadelphia FDC has housed Kareem Alverest for over a year, despite his guilty plea to third degree murder in Philadelphia County and his guilty plea to weapons violations in federal court. See United States v. Alverest, 2:08-cr-00151.

Nor is it unusual to house individuals similarly situated to Mr. Hammer (convicted but pending resentencing) in other administrative facilities, like the Philadelphia FDC. For example, Ronell Wilson[6] (UDNY No. 1:04-CR-01016-NGG), whose death sentences were reversed in 2010, is currently housed at MDC Brooklyn, an administrative facility, like Philadelphia FDC, (see Doc. 1392, Govt. Exh. 2 at 2),despite his own incident reports for telephone abuse.[7] Indeed, three other capital inmates whose sentences were reversed were or are being housed in non-federal

---

[6]Mr. Wilson was convicted of the execution-style murders of two New York police detectives.

[7]Indeed, Mr. Wilson has been transferred to that facility even though there has not yet been a trial date scheduled. See United States v. Wilson, (UDNY No. 1:04-CR-01016-NGG).

facilities, either county or state institutions pending resentencing.  See United States v. Aquila Barnette No. 3:97CR23-P (W.D.NC.); United States v. Richard Stitt, No. 2:98-CR-47 (E.D. Va.); United States v. John Johnson No. 2:04-CR-00017-HGB-SS (E.D.LA).  Finally, three current capitally sentenced inmates are housed outside of USP-TH.   See United States v. Joseph Ebron, No. 1:08-cr-00036-MAC-ESH-1 (currently housed at USP Florence-Administrated Maximum Facility (ADMAX)); United States v. Angela Johnson, No. 3:01-cr-03046-MWB-1 (currently housed at the Federal Medical Center (FMC) at Carswell);  United States v. Lisa Montgomery, No. 5:05-cr-06002-GAF (FMC Carswell).  Thus, the government's contention that the Philadelphia FDC is incapable of handling the security needs of Mr. Hammer is belied by the placement of other similar defendants at that facility; the placement of similarly situated defendants at similar facilities; and, the placement of individuals (unlike Mr. Hammer) who are currently under a sentence of death at facilities outside USP-TH.

The government's contention that, with the exception for some brief stays at the Oklahoma Transfer Center, Mr. Hammer has been housed by the BOP in penitentiaries or even more secure facilities (Doc. 1392 at 3), is simply false.  The government ignores that Mr. Hammer was transferred from USP-Allenwood to FCI-Allenwood (a medium security facility), after April 13, 1996, where he remained for

approximately six months. The government also conveniently ignores the lengthy periods of time that Mr. Hammer spent at the U.S. Medical Center for Federal Prisoners (USMCP) at Springfield pretrial, and during the competency assessment post-trial. Perhaps the government failed to acknowledge Mr. Hammer's placement there because, like the Philadelphia FDC, USMCP-Springfield is designated as an "Administrative" facility.

The government's attempt to categorize Mr. Hammer as some sort of "super security concern" is similarly unavailing. That a telephone violation was the best that the government could present to this Court as an example of its security concerns speaks volumes.[8] Moreover, as described more fully in Mr. Hammer's post-argument submission, Mr. Hammer's security designation at USP-TH is "one-man escort," meaning that only one guard is needed to escort Mr. Hammer, (without leg restraints), throughout the SCU. This is the lowest security level with other inmates designated anywhere from a "two-man" escort up to a "three-man" escort with lieutenant and

[8]The government's contention that, because the call was on the legal line and, "unmonitored," heightened security concerns exist for Mr. Hammer is also unavailing as the call was, according to the BOP's own documents, broadcast live on the radio and uploaded onto the internet. The government was well-aware of the contents of the call and noted that in their own documents. Nevertheless, this one incident hardly constitutes a basis for denying Mr. Hammer's pretrial transfer to an institution, like FDC Philadelphia, that is designed to house "extremely dangerous, violent, or escape-prone inmates."

batons.  That the BOP considers Mr. Hammer such a low security level that only one guard is needed to escort him – ***even after he received the telephone violation incident report*** – directly contradicts the government's attempts to (mis)characterize Mr. Hammer as some great security concern.

The government's most recent submission, the affidavit from Associate Warden Blackmon is perplexing and, in any event, of no help to bolster the government's contentions.  Initially, it bears note that the affiant is discussing Mr. Hammer's case as if he were a death sentenced prisoner.  He is not.  He is pending resentencing.  The affidavit also provides no specifics regarding what "information" was provided to Warden Blackmon, nor does it state with any detail how, if at all, the Philadelphia-FDC is incapable of managing Mr. Hammer's security level pretrial, but can do so during trial.  To the extent that this Court intends to credit any of the broad, qualified statements contained within this affidavit, counsel request a hearing and the right to cross-examine Mr. Blackmon.[9]  However, counsel submits that the details provided above directly dispute the broad, qualified statements offered by Mr. Blackmon and also directly dispute the government's reliance on that affidavit as a basis for concluding that the Philadelphia FDC is incapable of housing Mr. Hammer

---

[9]Should the Court order a hearing, Mr. Hammer is willing to appear via videoconferencing, for this hearing only, so long as his hands are free.

for six months prior to the resentencing, but capable of housing him during the resentencing hearing.

## IV. The Alternative(s) Suggested by the Government Fail to Provide the Necessary Access.

The government appears to suggest moving Mr. Hammer to either USP-Lewisburg or some other facility in or near Pennsylvania for the next few months and then transferring him to Philadelphia FDC at some unspecified time before the resentencing. It contends that, because Mr. Hammer was located in Lewisburg during the Section 2255 proceedings, that should be sufficient. For a number of reasons, the government is wrong.

First, Mr. Hammer was placed in Lewisburg because his Section 2255 proceedings were scheduled in Williamsport, Pennsylvania and Judge Muir had issued an order directing that Mr. Hammer be moved to an institution within 60 miles of Williamsport.[10] See Doc. 922 (directing the United States Marshal to transport Mr. Hammer to an institution within 60 mile radius of Williamsport Pennsylvania).[11]

---

[10]Indeed, and contrary to the government's contention, Judge Muir apparently had the authority to direct Mr. Hammer's transfer and to direct that the United States Marshals effectuate that transfer.

[11]If this Court were to issue a similar order here, it appears that the most logical facility would still be the Philadelphia FDC as the only other institutions meeting the geographic requirements are either medium, (FCC Fairton) or low (FCI Fort Dix) security facilities.

Once Mr. Hammer arrived at Lewisburg, counsel was forced to engage in correspondence, and then litigation, in order to obtain reasonable access to Mr. Hammer. See Doc. 940. Moreover, based on prior experience, absent a court order, legal visits at the Lewisburg facility must occur between 8:00 am and 3:00 pm and legal calls must be set up in advance at a time when staffing is available. These conditions, particularly in light of the distance for two of the four current attorneys, are not sufficient to provide the statutorily required reasonable access and counsel should not have to engage in litigation, as they did during the Section 2255 proceedings, in order to obtain sufficient access to Mr. Hammer during these critical pretrial months. Finally, contrary to the government's contention, as noted previously, placing Mr. Hammer at USP-Lewisburg is not more convenient than Philadelphia FDC for the Harrisburg counsel, and it certainly is not close for Mr. Hammer's Philadelphia counsel. Thus, nothing about USP-Lewisburg addresses or resolves the statutory requirements for reasonable access or counsel's ethical and constitutional obligations to conduct meaningful consultations.

For these reasons, if Mr. Hammer's choice is USP-Lewisburg – or some other as yet unidentified institution– pretrial and then transfer to Philadephia FDC shortly before the resentencing is scheduled to begin, Mr. Hammer requests that he remain at USP-TH until such time as the government transports him to Philadelphia-FDC for

13

the resentencing hearing.    Each transfer involves a complicated process of determining what materials he is able to send to the new institution and how those materials are transferred.  Often times, these materials are lost in transit or otherwise damaged.  Thus, it would be simpler – and avoid the risk of Mr. Hammer losing legal materials – to move him once and only once.  In light of these considerations, as well as those described above demonstrating that transfer to some other institution will not actually remedy the current obstacles to counsel's access to Mr. Hammer, to the extent the Court accepts the government's contentions, (and as described above, there are a number of reasons demonstrating that the Court should not), Mr. Hammer respectfully requests that this Court issue an order directing that he remain at USP-TH until such time as he is transported to Philadelphia-FDC for his resentencing.

## V.    Conclusion.

For the reasons described above and in the prior submissions, Mr. Hammer, by his counsel, respectfully requests that this Court reject the government's objections and grant his motion to forthwith transport him to the Philadelphia-FDC pending and throughout his resentencing hearing.

Respectfully submitted,

/s/     Ronald C. Travis                          /s/ James J. McHugh, Jr.

Ronald C. Travis                                 James J. McHugh, Jr.
Rieders, Travis, Humphrey, Harris,               James Moreno
Waters & Waffenschmidt                           Federal Community Defender
161 West Third Street                            Eastern District Pennsylvania
PO Box 215                                       Suite 540 – The Curtis Center
Williamsport, PA  17703-0215                     Philadelphia, PA 19106
570-323-8711 (telephone)                         215-928-1100 (telephone)
570-323-4192 (facsimile)                         215-928-0826 (facsimile)
rtravis@riederstravis.com                        Michael_Wiseman@fd.org
                                                 James_McHugh@fd.org
/s/     Anne Saunders                            James_Moreno@fd.org

Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
Anne_Saunders@fd.org

Dated:        August 24, 2011
              Philadelphia, PA

## Certificate of Service

I, Anne Saunders, hereby certify that the foregoing was served upon counsel for the Government concurrently with its filing, by filing the same with this Court's ECF system and by email.

Respectfully submitted,

Date:  August 24, 2011                    s/ Anne L. Saunders
                                          ANNE L. SAUNDERS, ESQUIRE