IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

_____

UNITED STATES OF AMERICA,

         v.

DAVID PAUL HAMMER,

      Defendant.

_____

:
:
:
:
:
:
:
:
:
:
:
:

Criminal No. 4:CR–96-239
Judge Slomsky

Electronically Filed

**DEFENDANT DAVID PAUL HAMMER'S
MOTION FOR DISCOVERY PURSUANT TO FEDERAL RULES OF
CRIMINAL PROCEDURE 12(b)(3)(E) and 16**

Defendant, David Paul Hammer, through undersigned counsel, hereby submits this Motion for Discovery Pursuant to Federal Rules of Criminal Procedure 12(b)(3)(E) and 16, Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. Unites States, 405 U.S. 150 (1972) and the Fifth, Sixth and Eighth Amendments to the United States Constitution and in support thereof, states the following:

1.     This matter is before this Court for capital re-sentencing following the partial grant of section 2255 relief.  United States v. David Paul Hammer, 404 F. Supp. 2d 676, 800 (M.D. Pa. 2005).

2.     Following the above decision, the Department of Justice conducted a

review to determine whether or not it would elect to continue to pursue capital

prosecution or conversely would de-authorize the capital prosecution.  Defense

counsel provided submissions to both the United States Attorney for the Middle

District and the Department of Justice Capital Crimes Unit.  On January 7, 2011,

the government announced it's decision to continue this matter as a capital

prosecution when it filed a Motion for Penalty Phase Proceeding.  Doc. 1300.

3.      Part of the reason that the District Court granted 2255 relief was the

government's failure to provide the defense with witness statements (FBI form

302 reports) that it had prepared after it conducted interviews with relevant

witnesses in this matter. The Court found these 302 reports were directly relevant

to the penalty phase of Mr. Hammer's trial.

4.      The incident that gives rise to this matter occurred in April 1996.  The

trial took place in 1998.  Prior to trial the government provided defendant's trial

counsel with discovery including some *but not all* 302 reports.  Undersigned

counsel from the federal defenders office, however, did not enter their appearance

until 2004.[1]  During the 6 year period between the conclusion of trial in 1998 and

---

[1]Undersigned counsel Mr. Ronald Travis was counsel during the trial of this matter in 1998 but he was not counsel of record during the 2255 proceedings and the appeal therefrom. In late 2009, he was re-appointed to represent Mr. Hammer along with the federal defenders.

the entry of the federal defenders in 2004, Mr. Hammer was represented by no less than 3 different attorneys other than undersigned counsel.   In order to ensure that the defendant is in possession of all relevant discovery material to which he is entitled, the defense requests all discovery material provided to the defense by the government prior to the entry of the federal defenders in this matter in 2004.

5.      Attached to this *Motion* as Exhibit A is a list of all 302 reports and other witness statements that defendant, and his current counsel possess. Defendant requests an order requiring the government to provide to defendant forthwith any and all 302 reports generated by the FBI related to its investigation that are not contained in Exhibit A.

6.      The defense specifically requests any and all 302 reports summarizing all interviews with: Leonard Kahle, Daniel Cook, Bradley Hosselkus, Michael Cole and Matthew McShea.

7.      The defense has 302 reports indicating one interview took place with inmates Mark Jordan and Mathew Darby.  To the extent that any additional interviews took place with these witnesses the defense requests any and all additional 302 reports not provided to date.

8.      The FBI initiated a practice in the mid-1990s in which all 302 reports were reviewed by supervisory agents and that if they are deemed by those

supervisors to be <u>irrelevant</u> to the case, they are not placed in the "official" case file.  As to such documents, even the line-prosecutors are not advised of their existence. Instead, such reports are placed in a separate computer drive (the so-called "I" drive) maintained by the FBI.  The defense requests that the government search the "I drive" for any 302 reports that have not been previously provided to defendant and forthwith provide those  reports to the defense.

9.      The defense requests that in complying with said order, that the government search all relevant computer drives maintained by the FBI and/or the Justice Department to insure that all reports, whether part of the official case or not, be provided.

10.     As part of its search, the defense also requests that the government ascertain whether there are any written communications between law enforcement agents or the government and any former or current prisoner witness in this case, and to provide any such documents.

11.     The defense requests all internal memos and teletypes that were prepared by the FBI in this matter concerning inmates that were investigated by the government.  The assigned case agent, FBI Special Agent Anthony Malocu, testified that these documents were in fact prepared during the course of the investigation of this matter.  Tr. 9/20/05 at 137-39.

12.    Furthermore, the defense requests that it be provided with any and all witness statements and notes of government agents for witnesses the government interviewed in preparation of proving any and all statutory aggravating factors and non-statutory aggravating factors that it intends on pursuing at the re-sentencing proceeding.  The defense also requests any and all witness statements (302s) and notes of government agents that were prepared concerning the investigation and/or rebuttal of any mitigating factors for the upcoming re-sentencing.

13.    The defense also requests any and all grand jury notes of testimony as well as copies of all grand jury exhibits.

14.    The defense requests a list of all inmates residing in the SHU at USP-Allenwood on 4/13/96.  The defense also requests the names of all cell mates of Andrew Marti during his time in BOP custody.

15.    The defense requests any and all forensic expert reports prepared by the government in preparation for the 1998 trial and the re-sentencing – including hand writing analysis and any laboratory reports and results prepared or received by the government.

16.    The defense requests any and all information including but not limited to reports that summarize the review and inspection of any all laboratories used to analyze evidence in this case from 1995 to the present.

17. The defense requests any and all oral or written communication including but not limited to letters or motions written or filed by the government on behalf of Leonard Yager, Stephen Clausen and Michael Cole that relate in any way to their testimony against Mr. Hammer.

18. The defense requests any and all documents from the Office of Inspector General regarding David Hammer.

19. The defense specifically requests grand jury exhibits attached to the July 24, 1996 grand jury testimony of Agent Malocu and described as #1 Note handwritten by Mr. Hammer; #2 Letter from Mr. Hammer to Rock; #3 Letter from Mr. Hammer to Mr. Kahle; and #4 Letter from Mr. Hammer to Mr. Claussen. This grand jury testimony was attached as Government Exhibit 2 to *Brief in Opposition to Defendant's Motion to Bar Capital Prosecution Because the Government Failed to Indict on Either the Statutory Intent Factors or the Statutory Aggravating Factors.*

20. The defense requests complete criminal histories for all witnesses that the government anticipates calling during the re-sentencing hearing.

21. The defense requests a complete copy of the criminal history for the decedent Andrew Marti.

22. The defense requests all information or documents relating to any

payments made by the Department of Justice or any other government entity to any of the family members of the victim or to any other witness called at the original trial in 1998 or whom may be called at the re-sentencing.

23.    The defense requests any and all notes or reports prepared when Assistant United States Attorney Steven Mellin interviewed the family members of the decedent Andrew Marti prior to the arguments held before this Court in Scranton, Pennsylvania on June 30, 2011. The defense also requests the notes and or reports prepared by any government agent or attorney concerning the interview of any member of the Marti family from July 1, 1998 to the present.

24.    The defense requests copies of the complete personnel files maintained by the BOP for witnesses that the government intends to call that are presently employed by the BOP.  The defense also requests the complete personnel file for Mark Traxler who was a witness at the previous trial.  The defense also requests the complete personnel file for any other former employee of the BOP that may testify at the re-sentencing.

25.    The defense requests copies of all videos and photographs of any and all incidents that occurred in a BOP facility that will be discussed in any way by counsel for the government or a witness during the re-sentencing proceeding.

26.    The defense requests access to and a copy of the complete BOP file

for inmate David Hammer.  In the past, counsel has been provided access to *portions* of this file but never the entire file.  Specifically, counsel's request includes access to, and a copy of, those portions of the file designated FOIA EXEMPT.  The defense also requests access to, and a copy of, those portions of the file that involve in any way the Special Investigation Services Unit.  The defense also requests it be provided with color photographs of any photographs contained in this file.

27.    The defense also requests the names of all BOP personnel, i.e. lieutenants and correctional officers, that provided security for Mr. Hammer when he was removed from USP - Terre Haute for medical reasons.  These trips occurred between December 2005 to the present.  The defense also requests the dates of these trips and the duration of these trips. The defense also requests any information concerning the decision of whether to use or not use a stun device or other similar security measures during these transports.

28.    Upon information and belief, the above material concerning the transporting of Mr. Hammer for medical care is kept in the normal course of business by the Correctional Services Department at USP - Terre Haute.   This information is clearly relevant to the issue of Mr. Hammer's future dangerousness.

29.    The defense requests the After-Action Review of the homicide

involving David Hammer at USP-Allenwood.

30.   The defense requests  an up to date disciplinary record for David Hammer.

31.   The defense requests any and all records compiled or generated as a result of incident reports involving David Paul Hammer including Disciplinary Hearing Officer("DHO") records, reports, statements including those of officers, staff members, and inmates, as well as photographs, medical records or reports, and any other documents involving these incident reports.  This request includes but is not limited to incident numbers: 234542, 244151, 255435, 256524, 256626, 281446, 301694, 338556, 397894, 455269, 460336, 460340, 585790, 599418, 972241, 993523, 1012704, 1016843, 1094884, 1117598, 1119707, 1157922, 1167571, 1167710, 1310643, 1531022, 1531280, 1579531, 1600139, 1801151, 1792337, 202008.

32.   The defense requests for each year from 1990 to date, a list of the homicides of inmates and staff that have occurred in the BOP with the date of occurrence, institution where perpetrated, method of homicide, victim name, and defendant name.  (Note: Names may be redacted if necessary for the protection of BOP security interests.)

33.   The defense requests the number of individuals that are currently in

BOP custody that have committed murders while in a county, state or federal prison. Also provide the number of inmates incarcerated in the BOP serving life sentences for murder, their age, where they are housed and security level of the facility.

34. The defense requests a list of all cases since 1996 where the government argued the defendant would pose a future danger during the sentencing phase of a capital proceeding where thereafter the inmate did in fact commit an act of serious physical violence after the sentencing proceeding. For each such incident please provide the date, time and place of the conduct and a description of the conduct engaged in and the name of the individual that engaged in the violent conduct. For any federal defendant tried for first degree murder and found to be a future danger by the jury please provide a list of acts of non-serious physical violence engaged in by the defendant since the finding of future dangerousness. With respect to each such incident please state the date of the conduct, what the conduct consisted of, the identification of the individual who engaged in the conduct and the facility where the individual was housed at the time of the conduct.

35. The defense requests a list of all incident reports for inmates in the SCU at USP-Terre Haute for the past five years. Names are not necessary only the

number of reports and what the incidents involved.  Also provide the average inmate population of the SCU broken down monthly over the past five years.

36.    The defense requests all post orders for all housing units including SHU and any other type of inmate housing for ADX Florence, USP Terre Haute, FCI Terre Haute and USP Canaan.

37.    The defense requests  Correctional Services Department rosters both daily and quarterly.  Also provide one blank current copy of each from ADX Florence, USP- Terre Haute, FCI -Terre Haute and USP-Canaan.

38.    The defense requests inmate personal property supplements and inmate accountability supplements for ADX Florence, USP- Terre Haute, FCI - Terre Haute and USP-Canaan.

39.    The defense requests a list of BOP's Special Management Units and also provide the number of BOP inmates currently subject to Special Administrative Measures ("SAMs").

40.    For inmates under SAMs, provide the Regulations, Programs statements,  Institution Supplements, and/or other sources that govern inmate-to-inmate contact, inmate-to-staff contact, mail, magazines/books, phones calls, visits, attorney contacts, legal mail, and legal communications.

41.    The defense requests the number of inmates subject to SAMs who are

currently detained and/or incarcerated at ADX Florence.  For these inmates, list date arrived at ADX Florence, and date SAMs originally implemented.

42.    The defense requests  program statement, etc., regarding the Communication Management Units (i.e. CMU) in BOP (e.g., FCI Terre Haute & USP Marion) including location, number of inmates in each CMU, criteria for placement and release.

43.    The defense requests  an overview description of ADX Florence and its various units including General Population, Transitional, Intermediate, Control, Special Security, Special Housing, and Range 13.

44.    The defense requests all documents describing the step down process from the ADX including but not limited to institution supplements.

45.    The defense requests any document that compares and contrasts each unit in ADX Florence relating to such factors as recreation, cell size, movement, meals, showers, mail, phone

46.    The defense requests  the number of inmates presently detained and/or incarcerated at ADX Florence, as well as the number of inmates presently detained and/or incarcerated in each specific unit at ADX Florence.

47.    The defense requests  the most recent edition of Inmate Information Handbook for ADX  inmates as well as inmates at USP- Terre Haute, FCI- Terre

Haute and USP Canaan.

48.    The defense requests the Regulations, Program Statements, Institution Supplements, Operations Memoranda and/or other sources that govern the management of each ADX Unit and the placement of prisoners there.

49.    The defense requests the number of inmates that have been released from ADX each year from 2005 to present, and how long each of those inmates had been detained and/or incarcerated at ADX Florence at time of the inmates release.

50.    The defense requests the number of inmates released from ADX Florence since 2005 who have since been returned to the custody of ADX Florence.

51.    For each inmate released from the ADX since 2005 please identify any acts of serious physical violence engaged in by any of the released inmates. With respect to each such incident, please identify when the act occurred, the facility at which the act occurred, the nature of the act and the identify of the inmate who engaged in the conduct.

52.    The United States Department of Justice, Inspector General 2006 Report (The Federal Bureau of Prisons' Monitoring of Mail for High-risk Inmates) cited improper communications by certain ADX inmates to individuals outside

ADX.  Since that time, if BOP and/or ADX Florence officials are aware of other improper communications, provide details of each additional instance.

53.    Specify the procedures and practices that have since changed at ADX Florence as a result of the Inspector General 2006 Report cited above, including but not limited to mail, phone, and contacts with inmates, staff, and visitors.

54.    The defense requests the number of inmates presently detained and/or incarcerated in the  Special Security Unit (i.e., H-Unit) at ADX Florence, and the designation records of anyone presently designated to the H-Unit.

55.    The defense requests the Regulations, Program Statements, Institution Supplements, and/or other sources governing the management of H-Unit and the designation of inmates to H-Unit.

56.    For each present Special Security (i.e., H-Unit) inmate, list date of first arrival at  ADX, amount of time in H-Unit (years/months).

57.    The defense requests incident reports received for all H-Unit inmates, 2008 to present.

58.    The defense requests all regulations and program statements discussing recreation activities  permitted for H-Unit inmates.

59.    The defense requests the criteria for being released from the H-Unit.

60.    If a Step-down Program exists for H-Unit, provide written policies,

criteria for inclusion, and description of such program.

61.    List the number of inmates that have been released from the H-Unit each year  since 2005.

62.    The defense requests the number of inmates currently in the Control Unit at ADX

Florence, and  the criteria for being placed in the Control Unit at ADX Florence.

63.    The defense requests the criteria for being released from the Control Unit (i.e., B- Unit) at ADX  Florence.

64.    If a Step-down Program exists for B-Unit, provide written policies, criteria for  inclusion, and description of such program.

65.    For inmates presently in the Control Unit (i.e., B-Unit), list date of first arrival at  ADX Florence, and amount of time in the Unit (years/months).

66.    The defense requests the incident reports received each year for inmates designated to the B- Unit at ADX Florence.

67.    List the number of inmates that have been released from the B-Unit each year  since 2005.

68.    The defense requests the number of inmates presently designated to the Special Housing Unit  (i.e., Z-Unit) of ADX Florence.

69.    The defense requests the criteria for being designated to the Z-Unit,

including, but not limited to, the Regulations and/or source documents regarding such criteria.

70.    The defense requests documents describing the policy for release from Z-Unit.

71.    The defense requests documents describing the purpose, physical layout, policies inmate-staff contact, daily activities, movement, and privileges for inmates on Range 13 at ADX Florence

72.    The defense requests documents describing the criteria for being placed in Range 13 at ADX Florence including but not limited to Institutional Supplements and BOP Program Statements.

73.    The defense requests documents describing the policy regarding release of inmates from Range 13.

74.    The defense requests documents describing the current policy for ADX Florence inmates receiving newspapers, magazines and books in general population as well as for H-Unit, Control Unit (B-Unit), and Special Housing Unit (Z-Unit).

75.    In light of the two homicides at ADX Florence in 2005, provide the policies, procedures, and practices that were changed and any documents pertaining to these changes.

76.    The defense requests the incident reports and the After-Action Reports for all Killings (Prohibited Act 100) that have occurred at ADX Florence from 2005 to present.

77.    The defense requests the incident reports for all Serious Assaults (Prohibited Act101) that have occurred at ADX Florence from 2005 to present, as well as the housing designation records indicating the unit where the offending inmate was housed when the assault occurred.

WHEREFORE, defendant requests that the Court order the government to provide the above requested discovery forthwith.


Respectfully Submitted,



/s/   James J. McHugh, Jr.                          /s/ Anne L. Saunders
James J. McHugh, Jr.                                Anne L. Saunders
James Moreno                                        Assistant Federal Defender
Ass't. Federal Defender                             Federal Public Defender
Federal Defender Office                             Capital Habeas Corpus Unit
Suite 540 West – The Curtis Building                100 Chestnut Street, Suite 306
Philadelphia, PA 19106                              Harrisburg, PA 17101
215-928-1100                                        717-782-3843

/s/ Ronald C. Travis
Ronald C. Travis
Rieders, Travis, Humphrey, Harris,
Waters & Waternschmidt
161 West Third Street
PO Box 215
Williamsport, PA 17703-0215
470-323-8711

Counsel for Defendant, David Paul Hammer

Dated:      November 4, 2011
            Philadelphia, PA

18

# CERTIFICATE OF SERVICE

I, James J. McHugh, Jr., Esquire, do hereby certify that on this date I served a copy of the foregoing *Defendant David Paul Hammer's Motion for Discovery Pursuant to Federal Rules of Criminal Procedure 12(b)(3)(E) and 16* via Electronic Case Filing, or by placing a copy in the United States mail, first class addressed to the following:

Frederick E. Martin, Esquire                    Steven Mellin, Esquire
United States Attorney's Office                  United States Department of Justice
Federal Building, Room 217                       Criminal Division, Capital Case Unit
228 Walnut Street                                1331 F. Street, N.W.
Harrisburg, PA 17108                             Washington, D.C. 20530



                                s/ James J. McHugh, Jr.
                                JAMES MCHUGH,  ESQUIRE


DATE:  NOVEMBER 4, 2011