**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

_____

UNITED STATES OF AMERICA,

                v.

DAVID PAUL HAMMER,

        Defendant.

_____

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Criminal No. 4:CR–96-239
Judge Slomsky

Electronically Filed

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**DAVID PAUL HAMMER'S  MOTION FOR DISCOVERY PURSUANT TO**
**FEDERAL RULES OF CRIMINAL PROCEDURE12(b)(3)(E) and 16**

Defendant, David Paul Hammer, through undersigned counsel, submits this

Memorandum of Law in Support of Defendant's Motion for Discovery Pursuant to

Federal Rules of Criminal Procedure 12(b)(3)(E) and 16, *Brady v. Maryland*, 373

U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972) and the Fifth, Sixth

and Eighth Amendments to the United States Constitution.  For all of the

following reasons the defense requests that this Court enter an Order requiring the

government to provide to the defense the items specified in this Motion.

This matter is before this Court for capital re-sentencing following the

partial grant of section 2255 relief.  *United States v. David Paul Hammer*, 404 F.

Supp. 2d 676, 800 (M.D. Pa. 2005).  Following the above decision, the

Department of Justice conducted a review to determine whether or not it would elect to continue to pursue capital prosecution or conversely would de-authorize the capital prosecution.  Defense counsel provided submissions to both the United States Attorney for the Middle District and the Department of Justice Capital Crimes Unit.  On January 7, 2011, the government announced it's decision to continue this matter as a capital prosecution when it filed a Motion for Penalty Phase Proceeding.  Doc. 1300.

Part of the reason that the District Court granted 2255 relief was the government's failure to provide the defense with witness statements (FBI form 302) that it had prepared after it conducted interviews with relevant witnesses in this matter. The Court found these 302 reports were directly relevant to the penalty phase of Mr. Hammer's trial.   To avoid further failures to disclose highly relevant discovery material  –  the defense has prepared thorough, concise and finely tailored requests for discovery that are attached hereto in its Motion.  Justice and the law demand that this request be granted.

I.      **Legal Discussion**

In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt *or to punishment for the offense*, irrespective of

the good faith or bad faith of the prosecution." 373 U.S. at 87 (emphasis added).

Indeed, *Brady* itself was a capital case that involved the suppression of favorable

evidence related to the capital sentencing determination. Id. at 84-01 (affirming

state-court decision remanding for retrial as to penalty only).

It is well established that *Brady* material includes impeachment material.

*Giglio v. United States*, 405 U.S. 150 (1972). Questions regarding a prosecution

witness's credibility should be resolved by the jury; the prosecution should not

withhold "evidence that would have allowed defense counsel the means to test [a

prosecution witness]'s credibility in the crucible of cross-examination." *Nuckols

v. Gibson*, 233 F.3d 1261, 1267 (10th Cir. 2000).

Importantly, the "individual prosecutor has a duty to learn of any favorable

evidence known to others acting on the government's behalf in the case, including

the police." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). "In our adversary system

for determining guilt or innocence, it is rarely justifiable for the prosecution to

have exclusive access to a storehouse of relevant facts." *Dennis v. United States*,

384 U.S. 855, 873 (1966).

All of the items requested are relevant to the penalty phase portion of this

trial. As the Supreme Court has repeatedly held, the Eighth Amendment

"require[s] that the sentencer ... not be precluded from considering, as a *mitigating*

*factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982) (quoting *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (plurality op.) (emphasis in the original *Lockett* plurality opinion).

As recently as September 2011 in a capital penalty phase proceeding the government presented a BOP expert that gave expert testimony that included an analysis of statistics of violence in BOP facilities that had been compiled by the general counsel of the BOP. Specifically, this government expert testified to statistics concerning incidents of violence in United States Penitentiaries, incidents of violence committed by prisoners serving life sentences, incidents of violence committed by certified gang members in the BOP and incidents of homicides in the BOP. See United States v. Larry Lujan, No. Cr. 05-924, 9/27/11 at pp.41-55 (D. N. Mex. 2011). Clearly, therefore this information exists and is readily accessible to the government and should be provided to the defense.

To be sure, the requests set forth in this Motion are numerous and wide-ranging. But that reflects the extraordinary breadth of the factors that may be relevant to a capital jury's determination whether to impose the ultimate sentence of death. The information requested is relevant to the defense's analysis of

whether to present expert opinion testimony regarding prison conditions to Mr. Hammer's jury.  It will likely also be useful to provide necessary rebuttal evidence to the prosecution's claim in aggravation that Mr. Hammer should be sentenced to death on the ground that he would pose a danger to others in the future.  *See, Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (noting that "The ABA Guidelines provide that investigations into mitigating evidence 'should comprise efforts to discovery *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.")

To the extent that the government alleges that these materials consist of Jencks material the defense  requests that this material be turned over forthwith so that the defense may adequately investigate and prepare for this re-sentencing.  In United States v. Goldberg, Judge Fullam justified an order requiring the pretrial delivery of witness statements to the defendant by noting that such a procedure would prevent the wasting of time during trial while the documents are studied, and assure better pretrial preparation by counsel for the government.  United States v. Goldberg, 336 F. Supp. 1, 2 (E.D. Pa. 1971); see also U.S. v. Golden, No. 85-233, 1985 WL 2625, at *1 (E.D. Pa. Sept. 6, 1985)(granting, in part, defendant's motion for early disclosure of Jencks Act material).

Similarly, the court in United States v. Narciso, ordered pretrial delivery of

Jencks material, and cited criticism of the "sporting theory" of discovery that is embodied by the Jencks Act as "inappropriate in light of the high stakes involved in criminal litigation . . . ."  United States v. Narciso, 446 F. Supp. 252, 264 (E.D. Mich. 1976).  In the present case the stakes cannot be higher – literally life or death.  Furthermore, the defense anticipates that the trial of this matter will be complex and lengthy.  Certainly, the fact that this is a capital case – requiring heightened reliability –  weighs heavily in favor of early disclosure.  Thus, Mr. Hammer requests early disclosure of all Jencks material pursuant to the reasoning of Goldberg and Narciso, as well as that of United States v. Achtenberg, 459 F.2d 91 (8th Cir. 1972).

Furthermore, United States v. Goldberg, 425 U.S. 94 (1976) and United States v. Vella, 562 F.2d 275 3rd Cir. 1977), stand for the proposition that the rough interview notes of FBI agents are discoverable Jencks material.  The defense maintains that to the extent that such notes record a witness statement in a "substantially verbatim" fashion, 18 U.S.C. § 3500(a)(2), these notes are covered by the Jencks Act.  Therefore, the instant Motion includes a request for all such material.

Experience with the modern federal death penalty amply demonstrates that capital jurors may consider the type of material sought herein–such as that relating

to BOP prison conditions and other characteristics to be mitigating factors that could support the imposition of a sentence less than death.  For example, the following mitigating factors have been found by capital jurors:

*United States v. William Sablan*:

- "The circumstances that led to Joey Estrella's death at least in part, because of the failure(s) by BOP officials to properly do their job(s)."

- "Prior to Joey Estrella's death, correctional officer Fuller failed to respond to one or more duress alarms from cell 124 despite his duties to the contrary."

- "Prior to Joey Estrella's death, inmate Arthur Peck told correctional officer Forsythe that Rudy Sablan was choking Joe Estrella, but Forsythe did not intervene despite his duties to the contrary."

- "Prior to Joey Estrella's death, inmate Arthur Peck told correctional officer Forsythe that the occupants of cell 124 were fighting, but Forsythe did not intervene despite his duties to the contrary."

- "Prior to Joey Estrella's death, correctional officers were aware that the occupants of cell 124 were drinking hooch, but did not intervene despite their duties to the contrary."

- "Upon William Sablan's arrival at the United States Penitentiary-Florence, the BOP failed to conduct a psychological/medication evaluation despite the fact that his transfer papers indicated mental concerns and recommended that BOP officials 'review *PSY/MED* on arrival."[1]

*United States v. Rudy Sablan*:

---

[1] Verdict form attached hereto as Exhibit 1.

- "Upon William Sablan's arrival at the United States Penitentiary-Florence, the Bureau of Prison ("BOP") placed him in cell 124, the Special Housing Unit, along with Rudy Sablan and Joey Estrella, despite the fact that the cell was designed to house only 2 people."

- "The circumstances that led to Joey Estrella's death existed, at least in part, because of the failure(s) by BOP officials to properly do their job(s), by allowing alcohol and weapons in the cell."

- "The BOP, [*sic*] didn't do their job by faulty logic of putting William and Rudy in the same cell."

- "Joey died because the guards failed to do 30-minute rounds."[2]

*United States v. Barry Byron Mills*:

- "Daily life for inmates in a federal penitentiary is dangerous and violent."

- "Daily life for inmates in a federal penitentiary is particularly dangerous for white inmates, as they are a minority in the system."[3]

*United States v. Ellis Joseph Mosher*:

- "There are no options for weakness in prison."

- "Ellis Joseph Mosher can comply with institutional rules."

- "Ellis Joseph Mosher spent the last ten years in some form of solitary confinement."

- "Ellis Joseph Mosher responded well to supermax prison conditions."

---

[2]Verdict form attached hereto as Exhibit 2.

[3]Verdict form attached hereto as Exhibit 3.

8

- "Ellis Joseph Mosher completed programs of self-improvement."[4]

*United States v. Michael O'Driscoll*:

- "The Federal Bureau of Prisons is capable of fashioning conditions of confinement that will isolate and punish Mr. O'Driscoll for the murder of Robert Frankhouser."[5]

*United States v. Mark Isaac Snarr*:

- "Gabriel Rhone made threats to Mark Isaac Snarr."[6]

In light of these verdict forms and the current standard of practice in BOP homicide cases that are authorized for federal capital prosecutions, defense counsel would risk someday being found to have provided constitutionally ineffective assistance of counsel to Mr. Hammer if they did not obtain, and make good use of, the type of information and materials sought by the specific requests set forth in this Motion.

In a recent unpublished opinion for the U.S. District Court of Wyoming, the Honorable Clarence Brimmer vacated a death sentence in part due to trial counsel's failure to investigate and present mitigating evidence regarding, *inter alia*, a confrontation between the defendant and the victim in prison, the victim's

---

[4]Verdict form attached hereto as Exhibit 4.

[5]Verdict form attached hereto as Exhibit 5.

[6]Verdict form attached hereto as Exhibit 6.

threat towards the defendant, and the victim's violent reputation.  *See* "Order Granting, In Part, Petitioner's Writ of Habeas Corpus on Condition That The State Provide A New Trial Within A Reasonable Time," *James Martin Harlow v. Michael Murphy*, U.S. District Court for the District of Wyoming Case No. 05-CV_309-B at 38-45.  As Judge Brimmer noted, such evidence "would have supported a defense theme that Mr. Harlow is not a dangerous person, but he is in a dangerous place."  Id. at 44.

## II.    Rule 16 Request

In addition to *Brady* and its progeny, Mr. Hammer also makes the requests contained in this Motion pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure–in particular, Rule 16(a)(1)(E)(I), which requires the government, upon a defendant's request, to produce discovery of items that are "material to the preparation of the defense."  The items of discovery requested herein are material to the preparation of Mr. Hammer's defense of at the penalty phase of the trial.

## III.    Specific Discovery And *Brady* Requests

Although defense counsel has set forth in its Motion a number of specific discovery and *Brady* requests, we are mindful of the Supreme Court's admonition that "[a] rule . . . declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."

*Banks v. Dretke*, 540 U.S. 668, 696 (2004); *see also Douglas v. Workman*, 560 F.3d 1156, 1172 (10th Cir. 2009)  By making such specific requests, Mr. Hammer in no way seeks to lessen the affirmative obligation of the prosecution to provide discovery and *Brady* material as required by Rule 16(a) and the Due Process Clause of the Fifth Amendment, respectively.

Throughout this Motion, the term "documents" includes, without limitation, and whether in electronic or paper format, the following:  correspondence, email communications, memoranda, reports, handwritten notes, photographs, electronic computer entries, audio recordings, video recordings, audiovisual recordings, spreadsheets and other compilations of data, slideshows and/or PowerPoint presentations, as well as drafts and final versions of each of these items.

## IV.   Conclusion

For all of the reasons set forth above in this Memorandum of Law and for

the reasons set forth in the Motion the defendant respectfully requests that the

Court order the government to provide the requested discovery forthwith.


Respectfully Submitted,


/s/   James J. McHugh, Jr.                          /s/ Anne L. Saunders
James J. McHugh, Jr.                                 Anne L. Saunders
James Moreno                                         Assistant Federal Defender
Ass't. Federal Defender                              Federal Public Defender
Federal Defender Office                              Capital Habeas Corpus Unit
Suite 540 West – The Curtis Building                 100 Chestnut Street, Suite 306
Philadelphia, PA 19106                               Harrisburg, PA 17101
215-928-1100                                         717-782-3843


/s/ Ronald C. Travis
Ronald C. Travis
Rieders, Travis, Humphrey, Harris,
Waters & Waternschmidt
161 West Third Street
PO Box 215
Williamsport, PA 17703-0215
470-323-8711
                Counsel for Defendant, David Paul Hammer

Dated:        November 4, 2011
              Philadelphia, PA

# CERTIFICATE OF SERVICE

I, James J. McHugh, Jr., Esquire, do hereby certify that on this date I served a copy of the foregoing *Memorandum of Law in Support of Defendant David Paul Hammer's Motion for Discovery Pursuant to Federal Rules of Criminal Procedure 12(b)(3)(E) and 16* via Electronic Case Filing, or by placing a copy in the United States mail, first class addressed to the following:

Frederick E. Martin, Esquire
United States Attorney's Office
Federal Building, Room 217
228 Walnut Street
Harrisburg, PA 17108

Steven Mellin, Esquire
United States Department of Justice
Criminal Division, Capital Case Unit
1331 F. Street, N.W.
Washington, D.C. 20530

s/ James J. McHugh, Jr.
JAMES MCHUGH,  ESQUIRE

DATE:         November 4, 2011