UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :   Criminal No. 4:96-CR-0239
                                :
        v.                      :   (Judge Slomsky)
                                :
 DAVID PAUL HAMMER              :   **ELECTRONICALLY FILED**

**UNITED STATES' BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR DISCOVERY PURSUANT TO
<u>FEDERAL RULES OF CRIMINAL PROCEDURE 12(b)(3)(E) and 16</u>**

**Procedural History.**

This case is pending before this Court for a hearing of the penalty phase of proceedings on April 4, 2012, pursuant to 18 U.S.C. § 3593(b).  Prior to that proceeding, this Court has scheduled a hearing on January 19, 2012, on defendant's request dated July 18, 2011, *inter alia* to exclude two prosecutors from participating in this case.

Defendant served a copy of the Request for Disclosure and supporting memorandum on November 4, 2011.  Counsel for the defense, in light of the many items sought in an email dated November 15, 2011, allowed the prosecution an additional thirty (30) days to gather materials or provide the basis for objections.  Herewith presented is the position of the United States on these objectionable discovery requests.

**Counter-Statement of Facts.**

It is well to remember several background factors in determining the need for release of information or previous discovery which has occurred.  They include the following:

On June 22, 1998, defendant entered his plea of guilty to first degree homicide.  It is submitted that many details which arguably may have been relevant for discovery in May 1998, no longer are pertinent.

Periodically the defense has asked for copies of aspects of David Paul Hammer's central file.  These were given to his attorneys, but with certain information deleted, the personal identifiers of visitors as well as names of inmates with whom Hammer had disputes or who may have cooperated with authorities in providing unfavorable information about defendant. See Government Exhibit 1.

Certain aspects of FBI files reflect requests to other offices to undertake investigation.  A representative of the "Lead" is attached to show their lack of relevance to future proceedings.  Government Exhibit 2.

The prosecution has not provided an affidavit from the Bureau of Prisons regarding the dangers of disclosing the details of some of its security programs.  Information in this respect will be provided, if thought necessary by this Court, at a hearing.  Likewise, prison officials can explain, if appropriate,

the burdensome nature of Hammer's various requests for information.

**Issues.**

1.    Whether Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 86 (1963), require the Bureau of Prisons to provide Hammer with wide-ranging materials to assist their expert on future dangerousness when they provide only speculation as to what favorable information will be provided.

2.    Whether defendant has presented any rationale or particular need for release of the entirety of the FBI or prosecution files, all grand jury materials, the complete personnel file of Bureau of Prisons' employees, and the like.

3.    Whether this Court should order the release of the particulars of Bureau of Prisons' security practices, including post orders, rosters, and other specific manners of dealing with difficult inmates, as well as years of statistical data, to counter the prosecution's claim that Hammer poses a future risk of dangerousness when release of this data publicly could harm on-going prison practices at high security facilities and constitutes a wholly unreasonable burden.

**Arguments.**

Introduction.

Defendant's argument is at best a duality.  Counsel assert in one instance that they have provided "concise and finely

tailored requests for discovery" but later concede that their pleadings represent "numerous and wide-ranging requests." (Compare Brief of Defendant at 2 with 4.)

Moreover, their legal arguments are largely generic with limited exceptions.  Counsel once again trot out *Kyles v. Whitely* 514 U.S. 419, 438 (1995), as well as *Brady v. Maryland*, 373 U.S. 86 (1963). (Brief of Defendant at 2-3.)  Additionally, Hammer's attorneys refer to decisional law about <u>pretrial</u> disclosure of *Jencks* material.  (Brief of Defendant at 5-6.)  But there already has been a trial in this case, as well as lengthy § 2255 proceedings.  Defendant has had in many instances at least thirteen (13) years to review the statements of most of the witnesses who will testify at the re-sentencing.

To be sure, there may be additional witnesses presented that were not called to testify either in 1998 or in 2005 but these are not likely to be many or cause any significant "wasting of time during [resentencing] while the documents are studied" particularly when defendant has four counsel to represent him. (Brief of Defendant at 5.)

The difficulty in responding to Hammer's requests comes from the fact that, except for referring to the "future dangerousness" issue (Brief of Defendant at 4-5), this same pleading would have been filed in <u>any</u> death penalty case.  Consequently, the prosecution first will focus on the lack of specific authority

upholding disclosure which the defense presents in this matter, as well as decisional law regarding similar defense efforts. Thereafter, reference will be made to particular areas sought by Hammer and the proper legal standard for determining whether release should occur.  It is submitted that when this occurs, this Court will conclude that Hammer should not receive the documentation he seeks.

1.    **NEITHER *BRADY V. MARYLAND*, NOR FEDERAL RULE OF CRIMINAL PROCEDURE 16, AUTHORIZE DISCLOSURE OF THE OBJECTIONABLE MATERIALS WHICH HAMMER SEEKS.**

In *Brady*, the Supreme Court announced that the Due Process clause requires the government to disclose "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment."  373 U.S. at 87. Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682.  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  *Id*.

*Brady* requests cannot be used as discovery devices.  *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010), citing, *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one.").  Further, "the *Brady* rule does not

apply if the evidence in question is available to the defendant from other sources." *United States v. Wilson*, 901 F.2d 378, 380 (4th Cir. 1990).

Defendant also has posited his request under Rule 16. It is not clear that Rule 16 would apply to this stage of the capital sentencing hearing, *see United States v. Beckford*, 962 F. Supp. 748, 754 (E.D. Va. 1997). It is also instructive to note that discovery under Rule 16 applies only to materials possessed or controlled by the prosecuting attorney or "governmental investigatory agenc[ies] closely connected" to the prosecuting attorney. *United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003). While certainly it would encompass the Federal Bureau of Investigation and United States Attorney's Offices, that may not be true of the Office of Inspector General for the Bureau of Prisons or that agency generally.

Notably, similar requests for discovery of BOP information in federal capital cases in which the Government alleged future dangerousness have been routinely denied. *See United States v. Caro*, 461 F. Supp.2d 478, 481 (W.D. Va. 2006) *affirmed by,* 597 F.3d 608, 619-622 (4th Cir. 2010); *United States v. Umana*, No. 08-CR-134, Doc. 997, slip copy (W.D.N.C. April 4, 2010) (Exhibit 1); *United States v. Troya*, No. 06-80171-Cr, Doc. 492, slip copy (S.D. Fla. Oct. 9, 2008) (Exhibit 2).

In *Caro*, the Fourth Circuit held:

> The district court denied Caro's motion upon finding no indication that the information requested by Caro would support Cunningham's [expert] testimony. The information was relevant to future dangerousness and might have allowed Cunningham to formulate scientifically more reliable opinions about Caro and to test various government allegations, e.g., that gang membership made Caro more dangerous. However, Caro presented no facts whatsoever indicating that the information would have actually helped prove his defense. *See* United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir.1990) ('Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense.').

*United States v. Caro*, 597 F.3d at 621. Hammer's counsel provide the same speculative and insubstantial allegations as occurred in *Caro* (Brief of Defendant at 4-5), and for that reasons should be denied.

Further at issue is whether the requested materials are within the possession or control of the Government.  In fact, they are not.   While the murder occurred at a Bureau of Prisons facility, that fact is undisputed given Hammer's guilty plea. Thus, it is questionable whether the materials, especially from facilities other than Allenwood or national statistics, would be outside the scope of Rule 16(a)(1)(E) for discovery purposes. Moreover, much of the material sought insofar as statistical data or general policy statements is not subject to Brady because it is information generally available directly from BOP.  These same

7

conclusions were drawn by the district court in *Troya*, *supra*, at 4.

The Defendant has not cited any cases where a court has granted the extensive type of discovery he now requests.  He has also not made a sufficient showing of materiality to require disclosure under *Brady*.  In fact, he has not even shown that the information is favorable to him.  As with *Caro*, *Umana*, and *Troya*, the Defendant's claim that the requested information would be favorable is purely speculative.  *See Caro*, 597 F.3d at 619; *Umana*, *supra*, at 5; *Troya*, *supra*, at 6.  This is especially so given that the Government will not use anything along the lines of the requested information in its case-in-chief.

The Defendant offers minimal factual support for the information he requests other than to allude to another death penalty case (Brief of Defendant at 4) and he does not create a nexus with any specificity between the general information he seeks and his defense of the future dangerousness factor.  *Troya*, *supra*, at 6 ("Defendant does not state how, when or why the information would be material.").  He merely states that the information will help the "defense's analysis of whether to present expert opinion testimony regarding prison conditions to Mr. Hammer's jury" and "will likely be useful to provide necessary rebuttal evidence to the prosecution's claim in aggravation . . . [of] . . . a danger to others in the future."

(Brief of Defendant at 5.)  But the defense at the first trial presented this information from former Wardens Bill Story and Patrick Keohane and others without requesting all of these details.  *See* TT July 13, 1998, and July 14, 1998, at 54-157. These bald claims do not satisfy the high standard for materiality under *Brady*.  This case is not distinguishable from the cases cited above merely because the Defendant's requests may be narrower.  But even so they seem more numerous than those advanced in *Troya*.  Slip. Op. at 2-4.  He still does not establish materiality.  *Umana*, *supra*, at 5.

The United States tied it future dangerousness allegations in both *Umana* and *Caro* to those respective defendants' gang participation and the courts still denied the discovery requests as immaterial.  *Id*.; *United States v. Caro*, 597 F.3d at 621. Hammer's future dangerousness primarily relates to his post-murder note and behavior in the Oklahoma Department of Corrections, neither of which relate to his many requests for information.

In sum, the Defendant is now couching a general request for discovery under the constitutional umbrella of *Brady*.  However, he has not met the standards for a *Brady* claim and his motion, which requests a broad and burdensome undertaking by another federal agency, is nothing more than a fishing expedition.

The defense attaches six exhibits from various death penalty cases all of which refer to mitigating factors in different death penalty cases.  (Defendant Exhibits 1-6.)  These reflect wide-ranging judicial interpretations of what constitutes under 18 U.S.C. § 3592(a) "other [mitigating] factors" rather than what forms of documentation should be disclosed pursuant to Federal Rule of Criminal Procedure 12 and 16.  Similarly reference to *Eddings v. Oklahoma*, 455 U.S. 104 (1982) (Brief of Defendant at 4), is not particularly useful.  *Eddings* sets the parameters of what information jurors may consider, it does not relate to discovery of materials.  The primary source of information in that respect is the testimony of witnesses, which can occur without wholesale disclosure of documentation and which, in fact, took place in the initial penalty phase which Hammer faced when he presented testimony from present or retired Bureau of Prisons' employees.

## 2.    ITEMS REQUESTED ARGUABLY WITHIN PROSECUTION FILES.

As stated in argument 1 *infra*, the Bureau of Prisons, while part of the Justice Department, simply is not part of the "prosecution" within the meaning of Federal Rule of Criminal Procedure 16.  Consequently, the United States will refer first to those items within its files or intended exhibits to determine of particular items sought by Hammer's counsel should be

10

disclosed.  The test for release varies to a degree with the information sought.

(a)  Grand Jury Records.  Defendant seeks release of all grand jury records.  Those relating to witnesses who have testified at trial have been released.  Moreover, even exhibits which the defense previously received prior to the last trial but without grand jury stickers, have again been released to the defense.  Not all grand jury materials have been released but, if requested by this Court, will be provided for *in camera* review. It is submitted that residual material is of no use or relevance to Hammer's defense.

The issue is controlled by Federal Rule of Criminal Procedure 6(e)(3)(E)(1) which requires that there be stated a "particularized need" for the material.  As enumerated in *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979), Hammer's attorneys must demonstrate that the material sought is:

> [N]eeded to avoid a possible
> injustice in another judicial
> proceeding, that the need for
> disclosure is greater than the need
> for continued secrecy, and that
> their request is structured to
> cover only material so needed. . .
> . [Moreover,] in considering the
> effects of disclosure on grand jury
> proceedings, the courts must
> consider not only the immediate
> effects upon a particular grand
> jury, but also the possible effect

11

> upon the functioning of future
> grand juries.

Defense counsel's bare allegations that "death is different" and the like simply do not suffice.

    (b)    <u>Entirety of Federal Personnel Records</u>.

The Supreme Court thirty-six years ago recognized, in *Wolff v. McDonnell*, 418 U.S. 539, 562 (1974), as follows: "Guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting." Indeed, one can infer from Hammer's transfer to federal custody from the Oklahoma Department of Corrections where he was serving in excess of 1200-years of sentences that the situation between defendant and his jailers now in the Bureau of Prisons has not improved.

Personnel files contain, among other details, personal identifying information protected by 5 U.S.C. § 552a, base salary, any promotions, time and attendance records, selections for life and health insurance, as well as other mundane miniate which do not bear on a prison employee's credibility.

The prosecution is aware of its obligations under *Giglio v. United States*, 405 U.S. 150 (1972). To the extent that disciplinary actions have been taken against prospective witnesses who will testify at the resentencing hearing and which relate to their credibility, these will be provided to defense counsel. *See United States v. Henthorn*, 931 F.2d 29, 30-31 (9th Cir. 1999). In the event the determinations only questionably

relate to the witnesses' believability, this material will be provided to this Court for its *in camera* consideration. *See United States v. Dent*, 149 F.3d 180, 191 (3d Cir. 1998). However, other than information reflecting on the integrity of any employee, given the admonition in *Wolff v. McDonnell, supra*, this Court should not provide defendant or his attorney with an opportunity to engage in a "fishing expedition" in a prison official's personnel file. *United States v. Reed*, 726 F.2d 570, 577 (9th Cir.), *cert. denied*, 469 U.S. 871 (1984); *United States v. Dale*, 155 F.R.D. 149 (S.D. Miss. 1994).

In this same vein, Hammer sought the entirety of files from the Department of Justice, Office of Inspector General (OIG) for the Bureau of Prisons. Some of those details include addresses and personal identifiers of prison staff against whom Hammer lodged complaints with that office. An individual's personal privacy, it is submitted, does not evaporate merely when Hammer complains about that official.

(c) The Entirety of Hammer's Central Inmate File.

As Government Exhibit 1 indicates, the defense periodically has received copies with minimal deletions. These generally are personal identifies of Hammer's visitors and the names of inmates who either are to be separated from Hammer or who have provided details confidentially to prison officials regarding his misdeeds in custody. This same practice occurred

before the trial in 1998 and yet it did not surface as the basis

of a complaint in Hammer's far-ranging collateral attack in

proceedings.

 If those who visit Hammer wish to share personal

identifiers such as dates of birth, social security numbers, and

the like, they may provide defendant or his attorneys with this

data directly.  Thus, there is no need for the prosecution to do

so.

 As to non-disclosure of cooperating inmates' names or

"separatees" (those inmates who should not be housed near Hammer

due to the possibility of direct or indirect retaliation against

them), the Supreme Court has recognized that the government

enjoys a privilege "to withhold from disclosure the identity of

persons who furnish information of violations of law to officers

charged with enforcement of that law."

 In light of *Wolff v. McDonnell, supra*, this rationale

would apply with equal force to correctional personnel who have a

duty of safekeeping to those in prison.  *Roviaro v. United

States*, 353 U.S. 53, 59 (1957). This privilege, sometimes

referred to as the "informant's privilege," is intended to serve

the public's interest in effective law enforcement by protecting

the anonymity of citizens who carry out their obligation to

communicate knowledge of criminal activity to law enforcement

officials. *United States v. Sanchez*, 988 F.2d 1384, 1391 (5th

14

Cir. 1993). Applying *Roviaro* to the context of criminal discovery, courts have held that in certain circumstances, the prosecution may, pursuant to the privilege, refrain from disclosing a confidential informant's identity to the defendant. *See United States v. Fields*, 113 F.3d 313, 324 (2d Cir. 1997); *United States v. Jiles*, 658 F.2d 194, 196 (3d Cir. 1981); *United States v. Diaz*, 655 F.2d 580, 586 (5th Cir. 1981).

The government's privilege to withhold the identity of an informant is not absolute, however, and it is qualified by the defendant's fundamental right to a fair trial. *United States v. Sharp*, 778 F.2d 1182, 1185 (6th Cir. 1985). The defendant therefore may compel the prosecution to disclose an informant's identity by showing that the disclosure would be "relevant and helpful" to his defense. *Bender*, 5 F.3d at 269; *see also Miller v. United States*, 273 F.2d 279, 280 (5th Cir. 1960) (noting the court may dismiss the prosecution if informant's identity is withheld after order of disclosure). The burden is on the defendant to make this showing of need. *United States v. Jiles*, 658 F.2d 194, 197 (3d Cir. 1981). To carry this burden, the defendant must offer more than "mere speculation about the usefulness of an informant's testimony." *United States v. Scafe*, 822 F.2d 928, 933 (10th Cir. 1987).

The defense simply has provided no details to sustain their burden of disclosure of all information within Hammer's

15

central file.  Consequently, the disclosure of cooperating inmates' names or "separatees" ought not be ordered disclosed by this Court.

        (d)   <u>Entirety of Investigatory Files</u>.

        The prosecution has agreed to release of all 302s or all statements of witnesses interviewed by that agency.  While that is not the entirety of that component's files, the remainder, merely because it exists, need not be disclosed although such appears to be the defense position.  *United States v. Amlani*, 111 F.3d 705, 713 (9th Cir. 1997) (not all investigator's records are disclosable).

        In Government Exhibit 2, the prosecution has provided this Court with an example of a "lead" or "insert."  It is a communication or request from one office to another.  The document itself simply is not relevant as are all communications between the case agent and others within that organization. Indeed, Federal Rule of Criminal Procedure 16(a)(2) exempts from disclosing "reports, memoranda, or other internal government documents made by . . . by [an] other government agent in connection with investigating or prosecuting the case."

        The prosecution is mindful of its disclosure obligations.  *Gov't of Virgin Islands v. Fahie*, 419 F3d 249, 257-58 (3d Cir. 2005).  To that end, if requested, the balance of inserts and other information will be supplied to this Court for

its *in camera* review.  *United States v. Dent, supra.*  However, absent some specific suggestion from Hammer that information other than witness statements, which have been released, amassed by the FBI in its investigation contains favorable information, this Court should deny relief.

Similar observations are applicable to the files of the Office of Inspector General for the Bureau of Prisons.  Hammer complained about law enforcement personnel over many years. Those details are being released to the defense.  However, the inner workings of OIG or even the result reached are immaterial. To be sure, if a finding of wrongdoing is made of a staff member who provides testimony, such details will be provided.  *United States v. Hawthorn, supra*.  Particularly when no rationale has been provided for total disclosure of the OIG's files (Motion ¶ 18), his exploratory request should be denied.

(e) <u>Reviews of FBI Laboratories</u>.

Hammer's, modest but stock, request No. 16, while perhaps making more sense had it been advanced in 1998, is wholly based upon unnecessary speculation.  At the risk of repetition, the defense has known of the lab results and even testimony from experts for more than 13 years.  These related primarily to handwriting and DNA.

Hammer's attorneys offer no suggestion why those laboratory or expert results appear to be incorrect.  The defense

augmented the original DNA analysis with Bode Laboratories in 2005. Absent some <u>specific</u> questions raised about the accuracy of the results presented in 1998, this Court should find their interest in obtaining 16 years of laboratory inspections to be a wholly unjustified, burdensome, and irrelevant effort.

(f) <u>Prosecution's Notes And All Correspondence With Witnesses</u>.

Hammer seeks the notes of the prosecutor who spoke with the Marti family. But these are shielded from discovery and their release would be immaterial regardless. As previously stated, Federal Rule of Criminal Procedure 16(a)(2) exempts "reports, memoranda, or other internal government documents made by an attorney for the government . . . in connection with . . . prosecuting the case." In effect, counsel's notes constitute a "work product" which need not be disclosed. *United States v. Armstrong*, 517 U.S. 456, 463 (1996); *United States v. Koskerides*, 877 F.2d 1129, 1133-34 (2d Cir. 1989); and *United States v. Marr*, 61 F.3d 326, 331 (5th Cir. 1995).

Even so, this Court already has fashioned an alternative remedy which makes disclosure unnecessary. That is, the prosecution is required to provide an "informational outline" by previous order dated December 1, 2011, to include "victim impact." To the extent that the Mellin interviews produced

18

significant details on that subject, the defense will learn of them in that fashion.

Finally, the defense seeks all communications between prosecution witnesses and attorneys for the government.  To the extent that prosecutors provided things of value to witnesses, or other details which relate to their testimony or credibility, that correspondence surely would be disclosable.  However, absent some rationale for release, the mere exchange of letters not touching upon testimony or inducements to testify simply need not be disclosed.  *United States v. Gov't of Virgin Islands v. Fahie*, 419 F.3d at 257.

### 3.   THE MINUTIAE OF BUREAU OF PRISONS' SECURITY PROVISIONS AND STATISTICAL DETAILS OF THE ADX OR FEDERAL PRISON SYSTEM.

The issue of "future dangerousness" is presented in this case, if for no other reason than Hammer's post-murder note declaring in part that "If given the opportunity, I will kill again."  To be sure, for the last fifteen (15) years, defendant has not engaged in another murder whether as a result of a change of mind, the security provided by the Bureau of Prisons, possibly other factors or a combination of them all.  No definitive rationale for this inaction can be given by any expert regardless of the amount of information one may possess on federal prison practices.

19

The prosecution has provided generally available materials to the defense from the Bureau of Prisons.  However, certain of their requests, such as for rosters and post-orders, and details of SAMs, are wholly inappropriate for release to the defense and should be denied by this Court.

Courts have also recognized a qualified privilege protecting other information regarding criminal investigations. Known variously as the "investigative techniques privilege," the "investigatory files" privilege, and the "law enforcement privilege," the privilege bestows qualified authority to withhold information about sensitive investigative techniques, such as the type and precise location of equipment used in electronic surveillance, *see United States v. Van Horn*, 789 F.2d 1492, 1507-08 (11th Cir. 1986); *United States v. Cintolo*, 818 F.2d 980, 1002 (1st Cir. 1987), information concerning the location of posts used by surveillance agents, *see United States v. Harley*, 682 F.2d 1018, 1020-21 (D.C. Cir. 1982); *United States v. Green*, 670 F.2d 1148, 1155 (D.C. Cir. 1981), an agency's investigatory files or information regarding those files, *see*, *e.g.*, *Raz v. Mueller*, 389 F. Supp. 2d 1057, 1061-62 (W.D. Ark. 2005), reports made by undercover agents, *see In re The City of New York*, 607 F.3d 923, 928-29 (2d Cir. 2010), and other aspects of law enforcement operations.

As the Second Circuit has stated, the purpose of the privilege "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988); *see also Tuite v. Henry*, 181 F.R.D. 175, 176-77 (D.D.C. 1998) (same); *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 64 (1st Cir. 2007) (extending privilege to "'law enforcement techniques and procedures'" (quoting *In re Dep't of Investigation*, 856 F.2d at 484)). Courts have viewed this privilege as analogous to the informant's privilege and based primarily on the same policy of preserving the efficacy of law enforcement operations.  *See*, *e.g.*, *Green*, 670 F.2d at 1155 ("[j]ust as the disclosure of an informer's identity may destroy his future usefulness in criminal investigations, the identification of a hidden observation post will likely destroy the future value of that location for police surveillance"); *Cintolo*, 818 F.2d at 1002 n.13.

Like the informant's privilege, this privilege is qualified and "will give way if the defendant can show need for the information." *Van Horn*, 789 F.2d at 1508. The government bears the initial burden of showing that the law enforcement

21

privilege applies to the materials at issue, *In re The City of New York*, 607 F.3d at 944, and the courts then apply a balancing test in determining whether disclosure is required. *Van Horn*, 789 F.2d at 1508 ("[w]e stress that the necessity determination requires a case by case balancing process"); *and see United States v. Winner*, 641 F.2d 825, 831-32 (10th Cir. 1981). The court will essentially consider the defendant's "need [for] the evidence to conduct his defense and [whether] there are . . . adequate alternative means of getting at the same point. The degree of the handicap [to the defendant] must then be weighed by the trial judge against the policies underlying the privilege." *Harley*, 682 F.2d at 1020; *and see Cintolo*, 818 F.2d at 1002 (the question is "whether the [defendant] demonstrate[s] an authentic 'necessity,' given the circumstances, to overbear the qualified privilege"); *United States v. Foster*, 986 F.2d 541, 543 (D.C. Cir. 1993) (balancing defendant's need for information against importance of government's interest in avoiding disclosure).

Some courts have held that once the government has established the applicability of the law enforcement privilege, the public's interest in minimizing disclosure creates a "pretty strong presumption against lifting the privilege," a presumption that may be rebutted only if the party seeking discovery shows a compelling need. *See In re The City of New York*, 607 F.3d at 945; *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th

Cir. 1997); *cf. Black v. Sheraton Corp. of Am.*, 564 F.2d 531, 545 (D.C. Cir. 1977) (beginning analysis "with the proposition that there is indeed a public interest in minimizing disclosure of documents that would tend to reveal law enforcement investigative techniques or sources").

Unlike details of completed investigation, which may over time lessen the government's interest in nondisclosure, *In Re United States Dep't of Homeland Sec.*, 459 F.3d at 571, the interest in this case is strong as it effects dissemination of techniques to be used <u>presently</u> by federal prison officials and in the <u>future</u> to ensure the security of the prison, as well as the safety of inmates and staff.  Moreover, common sense suggests that these techniques may change or evolve over time.  Stated alternatively, if the procedures are not working, as reflected by defendant's request No. 75 that two murders occurred at the ADX which necessitated a re-evaluation of procedure, there is no reason for total disclosure of any post-homicide procedural changes which may necessitate further evolution of practices that are exposed to the public, including federal inmates currently in custody.

An additional aspect of Hammer's wide-ranging requests for information relate to amassing statistical data about murders, disciplinary actions, program successes or failures, and the like.  Counsel claims that much of this "information exists

and is readily accessible to the government and should be provided to the defense" since a representative of the Bureau of Prisons testified in the *Lujan* case, one of the unreported decisions attached as an exhibit to the case."  (Brief of Defendant at 4.)  But if that is the case, Hammer's attorneys can secure a transcript of that testimony.  Any defense expert can rely upon that information. *See e.g. Stevens v. Cessna Aircraft Co.,* 643 F. Supp. 137, 142-43 (E.D. Pa. 1986), *aff'd*, 806 F.2d 254 (3d Cir. 1986).  Consequently, there is no need for the prosecution to provide it in the first instance.

**Conclusion.**

Hammer has provided no direct decisional law or persuasive rationale for his extremely broad requests for disclosure even though he could have done so.  Under the circumstances, this

Court is respectfully urged to deny the release of materials

which have been the subject of opposition by the prosecution.

                              Respectfully submitted,

                              PETER J. SMITH
                              United States Attorney



                              By s/Frederick E. Martin
                              FREDERICK E. MARTIN
                              Assistant United States Attorney
                              PA ID 57455
                              Herman T. Schneebeli Federal Bldg.
                              240 West Third Street, Suite 316
                              Williamsport, PA 17701-6465
                              Tele: (570) 326-1935
                              FAX: (570) 326-7916
                              Electronic Mail:
                              Fred.Martin@usdoj.gov

                              Steven D. Mellin
                              Trial Attorney For the
                              Capital Case Unit
                              Texas ID 13920380
                              1331 F Street, N.W.
                              Washington, D.C. 20530
                              Tele: 202-514-1224
                              Electronic Mail:
                              Steve.Mellin2@usdoj.gov


Dated:   December 19    , 2011

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA        :  Criminal No. 4:96-CR-0239
                                :
          v.                    :  (Judge Slomsky)
                                :
 DAVID PAUL HAMMER              :  **ELECTRONICALLY FILED**


### CERTIFICATE OF SERVICE

     I hereby certify that I caused a true and correct copy of the foregoing

**UNITED STATES' BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR DISCOVERY PURSUANT TO
FEDERAL RULES OF CRIMINAL PROCEDURE 12(b)(3)(E) and 16**

to be electronically mailed on ___December 19___, 2011, to:

ADDRESSEES:     Ronald C. Travis, Esquire
                rtravis@riederstravis.com

                Michael Wiseman, Esquire
                Michael_Wiseman@fd.org

                James J. McHugh, Jr., Esquire
                James_McHugh@fd.org

                James Moreno, Esquire
                James_Moreno@fd.org

                Anne Saunders, Esquire
                Anne_Saunders@fd.org



                          S/Frederick E. Martin
                         FREDERICK E. MARTIN
                         Assistant United States Attorney


26