

**U.S. Depart ent of Justice**

*Peter J. Smith*
United States Attorney
Middle District of Pennsylvania

---

*William J. Nealon Federal Building*
*Suite 311*
*235 N. Washington Avenue*
*P.O. Box 309*
*Scranton, PA 18501-0309*
*(570) 348-2800*
*FAX (570) 348-2037/348-2830*

*Ronald Reagan Federal Building*
*Suite 220*
*228 Walnut Street*
*P.O. Box 11754*
*Harrisburg, PA 17108-1754*
*(717) 221-4482*
*FAX (717) 221-4493/221-2246*

*Herman T. Schneebeli Federal Building*
*Suite 316*
*240 West Third Street*
*Williamsport, PA 17701-6465*
*(570) 326-1935*
*FAX (570) 326-7916*

Please respond to:   __Williamsport__

April 27, 2011

Ronald C. Travis, Esquire
**RIEDERS, TRAVIS, HUMPHREY, HARRIS,**
   **WATERS, & WAFFENSCHMIDT**
161 West Third Street
P.O. Box 215
Williamsport, PA 17703-0215

       Re:  *United States v. Hammer*
            M.D. Pa. Crim. No. 4:CR-96-00239

Dear Mr. Travis:

     This is to acknowledge receipt of your letter dated April 14, 2011.  You requested five categories of information relating to the above-captioned case.  The following reply is provided.

     You sought your client's entire Central File.  This information has been provided to you over time since 1997 with very limited and specific redactions made such as the names of separatee inmates and personnel identifiers of proposed visitors. You claim that details have not been provided pursuant to provisions of the Freedom of Information Act.  That law has <u>never</u> been applied in determining what information should be released.

     You also claim that our U.S. Attorney recently suggested that these are the "types of documents which fall under the 'informational' summary of content as he described."  As understood by me, Mr. Smith's remarks about that term related to situations in which information was contained in documents that could not be released.  In Hammer's situation, details in the FOIA section have been released with specific omissions as previously described which eliminate the need for any information summary.  Having discussed your letter with our Criminal Chief, we believe that you have received all information within your client's Central File to which you are entitled.

**Government Exhibit 1**
**Page 1 of 4**

Ronald C. Travis, (  _uire
Re:  *United States  /.  Hammer*
April 27, 2011
Page 2


You also have asked for a copy of all FBI 302s which relate in any manner to this case.  This same request was made by Mr. Hammer's attorney in the § 2255 hearing and was resisted then. Judge Muir reviewed pertinent 302s of inmates and did not authorize the release of them all.  You already have received 302s from guilty and penalty phase witnesses.  You will receive, in due course, in accordance with *Jencks* Act and other legal principles, other 302s if further interviews of existing witnesses occur or if new witnesses are brought into this case.

You also seek reconsideration of our letter dated April 12, 2011, regarding your belief that some separate DHO files exist. This is based on your client's recollection that there existed "photographs, primarily of Mr. Hammer's wrists, which memorialize the fact that on occasions when he was written up for assaultive conduct with respect to the staff at Terre Haute. . . ."  With the specifics you have provided, we will undertake another request to determine if for whatever reasons the DHO has maintained those photographs or other documentation.

You are correct that the updated information provided to you did not contain photographs.  It is my understanding that the incidents to which you referred did not occur within the last two years.  In the event that the DHO does not have the photographs, we will ask Terre Haute officials to review Mr. Hammer's Central File regarding the specific assaultive incidents to which you allude to determine if that information may have been stored in that compendium.

The fourth item you seek is an "informational outline" of "the actual written submission" made by our office regarding "any and all contacts made by the government with the Marti family during the course of the reconsideration of whether this case should once again be authorized for death, and a summary of the position of the Marti family in that regard."  It is my understanding that Mr. Smith's remarks did not allude to the Department's death penalty protocol.  Moreover, any discussions with the family which relate to any penalty phase testimony will be presented to you.  After consulting with our Criminal Chief, our office takes the position, in accordance with decisional law to which you allude, that you are not entitled to discovery of that data.

**Government Exhibit 1**
**Page 2 of 4**

Ronald C. Travis, Esquire
Re: *United States v. Hammer*
April 27, 2011
Page 3


Finally, you seek an "informational outline" of our assessment of the case against Mr. Hammer "including the mitigating factors deemed applicable by the office." For the reasons previously stated, we do not think that you are entitled to any aspect of our "work product."

Please feel free to contact me if you have any questions about this response.

Very truly yours,

PETER J. SMITH
United States Attorney

FREDERICK E. MARTIN
Assistant United States Attorney

PJS:FEM:jmm
cc:     C. Patrick Austin, Special Agent
        S. Mellin, Esquire

**Government Exhibit 1**
**Page 3 of 4**

UNITED STATES GOVERNMENT
**memorandum**
United States Penitentiary
Lompoc, California 93436

DATE: April 4, 1995

REPLY TO
ATTN OF: P. W. KEOHANE, Warden

SUBJECT: Request for Transfer

TO: O. Ivan White, Jr., Regional Director
Western Region

ATTN: Correctional Services Administrator

1. <u>Name</u>: HAMMER, David        <u>Reg. No</u>: 24507-077 (M)

2. <u>Rationale for Redesignation</u>: On December 12, 1994, HAMMER was involved in a physical altercation with ████████. Specifically, ████████ entered HAMMER's cell and assaulted him with a razor blade. HAMMER retaliated by using a wooden shelf and striking ████████ numerous times on the head. During the altercation, ████████ assisted ████████ by attempting to restrain HAMMER. ████████ was administratively charged with Possessing a Dangerous Weapon and Assault. There was insufficient evidence to charge ████████. However, HAMMER has been separated from ████████. On March 21, 1995, HAMMER was found guilty by the Discipline Hearing Officer of Possessing a Dangerous Weapon, code 104 and Assault, code 224. One of the sanctions imposed was a disciplinary transfer recommendation. Additionally, on March 19, 1995, HAMMER tied bed sheets around his cellmate's neck, wrists, thighs, and ankle areas in the Special Housing Unit. HAMMER threatened to hurt his cell mate if his cellmate was not removed from the cell. On March 28, 1995, the DHO found HAMMER guilty of Threatening, code 203 and Assault without Serious Injury, code 224. One of the sanctions imposed was a disciplinary transfer. Due to the seriousness of the incidents he has been involved in a short period of time, HAMMER should be transferred to another facility commensurate with his security and custody needs.

3. <u>Proposed Transfer Code</u>: 309, Disciplinary.

# F.O.I. EXEMPT

**Government Exhibit 19 - 3**
**Page 4 of 4**