**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|                                  |   |                          |
|----------------------------------|---|--------------------------|
|                                  | : |                          |
| UNITED STATES OF AMERICA,        | : | No. 4:96-CR-00239        |
|                                  | : | Capital Case             |
| v.                               | : |                          |
|                                  | : | (Judge Slomsky)          |
| DAVID PAUL HAMMER,               | : |                          |
|                                  | : | (Electronically Filed)   |
| Defendant                        |   |                          |

**REPLY BRIEF TO GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO DIRECT THE GOVERNMENT TO PRODUCE EXHIBIT 2 TO THE
GOVERNMENT'S OPPOSITION, FILED "IN CAMERA," AND ALL OTHER
RELEVANT DVD VIDEOTAPES.**

Mr. Hammer, through counsel, herein submits his *Reply Brief in Support of
Motion to Direct The Government To Produce Exhibit 2 To The Government's
Opposition, Filed "In Camera," And All Other Relevant DVD Videotapes,* and in
support thereof, states the following:

On July 18, 2011, Mr. Hammer filed a motion to disqualify government
counsel and/or to suppress any evidence obtained as a result of Mr. Mellin and Mr.
Martin's search of Mr. Hammer's cell, indicating that counsel had learned that
government counsel took a tour of Terre Haute's death row and, in the course of that
tour searched Mr. Hammer's cell. Doc. 1380. In that Motion, Mr. Hammer also
requested an order directing the Bureau of Prisons to preserve any and all videotapes

of that date and time.  Id. at ¶ 11.

In response, the government filed an affidavit from Counselor Royer, acknowledging that he, Mr. Mellin and Mr. Martin had "stopped" at Mr. Hammer's cell during the tour and that Counselor Royer "was able to show them what a typical cell looked like for a SCU inmate"[1] because Mr. Hammer's cell "happened to be open."  Doc. 1390-1 at ¶ 2.[2]  Thus, the government acknowledged significant facts alleged by Mr. Hammer in his Motion, including: that the government attorneys had taken the tour; that Mr. Hammer's cell door was open; and, that the government attorneys viewed the contents of Mr. Hammer's cell.

The government also filed a DVD of a video under seal and *ex parte*, purporting to show the circumstances of Mr. Mellin and Mr. Martin's viewing of Mr. Hammer's cell.  The government asked this Court to deny Mr. Hammer's motion on the basis of the contents of that video – knowing that it had not disclosed that video to Mr. Hammer's counsel, even under any constraints of a protective order to preserve

---

[1]The government attorneys already had a view of "what a typical SCU cell looked like" from a number of sources, including the press coverage when Terre Haute was opened as well as the government's mental health evaluation video where the government doctors filmed their view of Mr. Hammer's cell – *after first obtaining prior consent and permission from Mr. Hammer*.  See § 2255 Govt. Exhibit 78

[2]Apparently, Mr. Hammer's cell door was left open – in direct violation of BOP policy and security procedures.

any security concerns.  Doc. 1390 at 8-9.  There is no question that reaching a decision regarding whether or not the prosecution violated Mr. Hammer's constitutional rights by "viewing" Mr. Hammer's cell (as the government characterizes it) on the basis of information that the government refuses to disclose to the defense offends the most basic principles of due process and confrontation.

Nor, as the government now contends, is the disclosure of the video somehow tied to a prerequisite that Mr. Hammer provide "affidavits," witness lists or witness notes.  If the government wishes this Court to consider the contents of that video in reaching its decision, disclosure is required by Mr. Hammer's Fifth and Sixth Amendment rights.  The government's insistence that any such review be tethered to a release of witness interview notes and summaries again misconstrues the term "parity."  Parity does not mean the prosecuting attorneys get to visit and search the cell of Mr. Hammer and then condition release of a videotape potentially documenting their activities on release of suspected witness interview notes.  See, e.g., Banks v. Dretke, 540 U.S. 668, 696 (2004) ("A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process").  Fairness suggests but one outcome:  undersigned counsel be given an  opportunity to fully review the videotape of what transpired at Mr. Hammer's cell on July 12, 2011.

Nor, as the government contends, does the Motion filed by Mr. Hammer somehow fail due to any failure to provide "affidavits" in support of his motion. Mr. Hammer proffered facts based upon information and belief. The government's answer presented further facts supporting Mr. Hammer's motion, and Mr. Hammer proffered further documentation in his reply.

While the government now complains that Mr. Hammer's allegations are unsubstantiated, the fact remains that the government *admits* that Mr. Mellin and Mr. Martin, accompanied by Mr. Royer, went directly to Mr. Hammer's cell, which, contrary to all known security protocol, was left open, and that, as admitted by the government, at least Mr. Royer himself entered Mr. Hammer's cell and displayed that cell to the government attorneys as an "example" of what a SCU cell looks like. The video will hopefully tell counsel if the government attorneys actually entered the cell, or what the government attorneys did outside the cell as Mr. Royer displayed that cell to them as part of the tour.

Far from mere coincidence or "happenstance," this so-called "guided tour" took place while Mr. Hammer was on a legal visit with a member of his current defense team, Ms. Janel Trivelpiece. As is the case with all legal visits, this meeting was scheduled in advance of July 12, 2011. Moreover, as discussed in the Motion, Ms. Trivelpiece personally witnessed Mr. Mellin and Mr. Martin on the row while she

was at the institution on July 12, 2011.

Notably, since its initial BIO, the Government has not repeated its argument that Mr. Mellin and Mr. Martin were on a "fact-finding mission" based upon this Court's questions during oral argument concerning Mr. Hammer's conditions of confinement. Indeed, a fact-finding mission about conditions of confinement and arriving at Mr. Hammer's open cell by "happenstance" are wholly inconsistent.

Finally, Mr. Hammer has not, and is not, seeking information about "the details" of the Bureau of Prisons videotaping system. This is yet another smoke screen as Mr. Hammer merely seeks an opportunity to review a videotape depicting what may have transpired at his cell when Mr. Mellin and Mr. Martin arrived to inspect it. Neither Mr. Hammer nor undersigned counsel have any interest in where the camera was located or learning details of the BOP taping system.

The government also contends that, although there were other video views of the incident, they were not preserved because Mr. Hammer failed to make a request for their retention.  Doc. 1422 at 2.  Nothing could be further from the truth.  As noted above, counsel specifically requested an order directing the Bureau of Prisons to preserve all videotapes in his Motion filed on July 18, 2011.  Counsel also sent, via facsimile, a letter to the Warden of Terre Haute on the same date.  See Exhibit 1. Indeed, counsel was informed by letter from the Warden that the request to preserve

5

the video tapes "was submitted to the appropriate office."  Exhibit 2.  Counsel is unaware of what office the warden considered the "appropriate office," but presumes there was at least notification to government counsel in this case.  Nevertheless, government counsel was clearly on notice from Mr. Hammer's motion on July 18, 2011.  The question thus becomes, why were the tapes not preserved, at least until this Court had an opportunity to act on Mr. Hammer's motion for an order to preserve those tapes?

Accordingly, not only is the government's contention that counsel failed to request that the tapes be preserved wrong, but the government's admission that tapes were not retained, despite full and complete notice regarding preservation of those tapes, creates yet another question regarding the government's conduct in this case and further bases to disclose the video.  If the retained video is sufficient to address the constitutional violations raised in Mr. Hammer's Motion, that question is resolved.  However, counsel cannot make that determination without viewing the retained video.

This matter was set for hearing on January 19, 2012, but this date was cancelled due to the unavailability of the Court.  Left open was the question of fixing a new date for such hearing.  Since the video has been withheld from the defense, and, in light of the government's recent revelations that other videos were not

retained despite the defense notification and request, at this point the defense must ask for a new hearing date to be set.  Disclosure of the retained video may well convince the defendant and the lawyers that no such hearing is needed. Thus the concept of judicial economy supports the court entering an order, with or without protective order, for the video to be made available to the defense team.

WHEREFORE, Mr. Hammer, through his counsel, respectfully requests that this Court grant his motion to direct the government to produce the ex parte and under seal exhibit as well as any and all other videos.

Respectfully submitted,

/S/  RONALD C. TRAVIS
Ronald C. Travis
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
570-323-8711 (telephone)
570-323-4192 (facsimile)
rtravis@riederstravis.com

/S/ ANNE SAUNDERS
Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
anne_saunders@fd.org

/S/ JAMES MORENO
James Moreno
Assistant Federal Defender
James J. McHugh, Jr.
Assistant Federal Defender
Federal Community Defender
Eastern District Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA 19106
215-928-1100 (telephone)
215-928-0826 (facsimile)
james_mchugh@fd.org
james_moreno@fd.org

December 27, 2011

## CERTIFICATE OF SERVICE

I, Anne Saunders, do hereby certify that on this date I served a copy of the foregoing via Electronic Case Filing, or by placing a copy in the United States mail, first class addressed to the following:

Frederick E. Martin, Esquire
United States Attorney's Office
Federal Building, Room 217
228 Walnut Street
Harrisburg, PA 17108

Steven Mellin, Esquire
United States Department of Justice
Criminal Division, Capital Case Unit
1331 F. Street, N.W.
Washington, D.C. 20530

Dated: December 27, 2011

   /s/ Anne Saunders
Anne Saunders, Esquire