**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | NO. 4:96-CR-00239 |
| | : | |
| v. | : | |
| | : | |
| DAVID PAUL HAMMER | : | |
| | : | |
| Defendant | : | (Electronically Filed) |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S OBJECTIONS AND OBSERVATIONS TO THE PROPOSED JURY QUESTIONNAIRE AND PRELIMINARY INSTRUCTIONS**

OVERVIEW

On February 17, 2012, the government filed its response to the proposed Jury Questionnaire and Preliminary Instructions filed by the defense. In the government filing, objections and observations were raised separately with respect to the proposed Jury Questionnaire and the proposed Preliminary Instructions.

In this response the defense will follow the manner in which the government set forth its objections and observations.

A.    PROPOSED JURY QUESTIONNAIRE

1.    The government's suggestion that it is unnecessary to inform the potential jurors that a sentence of death had previously been imposed and then reversed is unrealistic. Since the government has not yet provided an

Informational Outline relative to its claim of future dangerousness, the defense cannot state with certainty that the evidence presented by the government in support of its claim of future dangerousness will disclose to the jurors that Mr. Hammer was housed on federal death row for in excess of 10 years.  However, it is known that government counsel, on July 12, 2011, participated in a tour of the federal death row facilities, and in fact were in the immediate area of Mr. Hammer's cell and afforded the opportunity to observe the layout of the cell occupied by Mr. Hammer and the manner in which he had his personal property stored within that cell.  Counsel believe the taking of the tour supports the inference that the government's future dangerousness case will include a disclosure of the fact Mr. Hammer has been housed on federal death row for in excess of 10 years.  In other death penalty trials where the defendant was a federal inmate, the government has sought to introduce in support of the future dangerousness aggravating factor disciplinary write-ups which the defendant has received.  Proof concerning such incident reports would require testimony from institutional staff and identifying the staff as employees at the housing unit for inmates under a sentence of death.  Further, in the oral argument presented in June of 2011, as well as in its written briefs concerning the pre-trial motions, the government has maintained that Mr. Hammer's good conduct is "fake good" and also at least implied that his good conduct is a product of his current conditions of housing as

opposed to a reflection of any true change in Mr. Hammer. In reviewing the transcript of the penalty phase trial in *United States v. Thomas Hager*, 1:05-CR-00264-TSE (E.D. Va.), a trial in which AUSA Mellin was one of the prosecutors, although the killing for which Mr. Hager was on trial for his life occurred after he had completed the service of a federal sentence, the government presented evidence of incidents involving Mr. Hager during that prior federal period of incarceration to support the assertion that Mr. Hager represented a future danger. Against this background, it is submitted that the case in support of the claim of future dangerousness, as presented by the government, will make the jurors aware of Mr. Hammer spending a significant period of time housed on federal death row.

Irrespective of whether the government maintains it will not present any evidence concerning Mr. Hammer being housed on federal death row, the mitigation information which will be presented on behalf of Mr. Hammer will be replete with his status as a federal death row inmate. An important component of the case in mitigation will deal with the funds raised through a holiday card project and the disposition of those funds to various groups and organizations to assist at-risk children. As part of the monetary support extended to these various organizations, Mr. Hammer has developed a relationship with some of the children who have benefited from the donated funds. Mr. Hammer has repeatedly shared with the entities, as well as some of the at-risk children, his status as a death

3

sentenced individual and urged them to not make the same life mistakes that he has made which resulted in his death sentence.  While on death row Mr. Hammer was confirmed by the Archbishop of Indianapolis, and this confirmation ceremony occurred on federal death row, and information concerning this ceremony will be part of the mitigation case.  Since the government has implied that Mr. Hammer's conduct is "fake good," part of the mitigating information will be the good deeds and positive conduct Mr. Hammer engaged in while not actively seeking to set aside his sentence of death.

While housed on federal death row Mr. Hammer has had restrictions pertaining to his ability to hold employment as well as restrictions with respect to educational opportunities available to him.  Mitigation information will be presented concerning the limited employment opportunity afforded to him, and his willingness to work.  Mitigating information will also be presented concerning the fact Mr. Hammer has taken and completed every educational course available to him which serves to explain gaps in his educational pursuit.  Finally, mitigating information will be presented concerning the fact that Mr. Hammer has organized and served as the de facto law librarian for the death row unit.

Even if neither the government nor the defense would be presenting information during the trial which discloses Mr. Hammer having been housed on death row, the fact that the death of Mr. Marti was in April of 1996, and the guilty

plea was in June of 1998 and the jurors in 2013 will be hearing evidence and be asked to select a punishment will make it clear that Mr. Hammer had previously been under a sentence of death.

Since we believe that it is going to be clear to the jurors that Mr. Hammer was previously under a sentence of death, we believe that it is crucial that the jurors be informed of the reason the prior sentence was set aside, and the reason the matter is being retried is misconduct on the part of the government.

The relevant portions of the Proposed Juror Questionnaire are as follows:

## INTRODUCTION

This jury questionnaire is part of the process of selecting a sentencing jury in a federal criminal case in which the jury will determine whether to impose a sentence of life imprisonment without the possibility of release or a sentence of death. On April 13, 1996, the defendant, David Hammer was an inmate at the United States Penitentiary at Allenwood in White Deer, Pennsylvania, when he killed Andrew Marti by strangulation. Andrew Marti was also an inmate and shared a cell with Mr. Hammer in the Special Housing Unit, commonly referred to as "the SHU" or a "jail within a jail." At the time Mr. Marti's body was discovered, his arms and legs were individually tied to a bunk bed.

On June 22, 1998 Mr. Hammer entered a plea of guilty to first degree murder. A sentencing trial was then held in which the jury sentenced Mr. Hammer to death. After these proceedings were held the trial court learned that the sentencing trial had been flawed because important information had not been presented to the sentencing jury. The trial court discovered that the government unfairly withheld evidence. The sentence imposed in that sentencing trial was therefore reversed and a new sentencing trial will commence in April 2012. The jury selected in this new sentencing trial will now have the opportunity to hear all of the relevant evidence and will then be directed to determine whether Mr. Hammer is eligible for consideration of the death penalty, and if so, whether he shall be sentenced to life imprisonment without the possibility of release or death.

At a sentencing trial the decision whether to impose a sentence of life imprisonment without the possibility of release or to impose a sentence of death is one the law leaves entirely to the jury. The law never requires any member of the jury to vote for a sentence of death. I want to be very clear about this. A death sentence is never required by law, and a juror is never required to impose a sentence of death. In the federal system, parole has been abolished. Therefore an individual who is sentenced to life imprisonment without the possibility of release will spend the rest of his life in prison and never be released.

The explanation requested in the Introduction as well as in the inclusion of Questions 87 and 109 is designed to make sure that the potential jurors understand why there is a penalty phase retrial and that they are not dealing with a situation where there was a properly imposed sentence of death and slick lawyering by defense counsel found a loophole to have that sentence set aside.

6

87.     A jury in 1998, unanimously and based on the evidence presented at that trial, decided that David Hammer should be sentenced to death.  That decision was set aside by the trial judge who found that the government withheld evidence from the defense. The jury did not hear this evidence, the trial was considered unfair, and a new sentencing trial was ordered.  Do you have any concerns that your knowledge that a jury fourteen years earlier sentenced Mr. Hammer to death may unduly influence your evaluation of this case?

Yes _____     No _____

Why or why not?  _____

_____

_____

_____


109.    If you are selected as a juror in this sentencing trial, you will be asked to decide the punishment for a defendant, serving a federal prison sentence, who pled guilty to first degree murder and who was previously sentenced to death by another jury.  Does this in any way affect your ability to be completely objective and impartial as to the appropriate punishment in this case?

Yes _____     No _____

IF YES, please explain:  _____

_____


It is critical that prospective jurors are informed that the proceedings in 1998 were

fundamentally unfair and that the jury that imposed a sentence of death in 1998 did

not receive important information.  Otherwise, prospective jurors will believe Mr.

Hammer is more death-worthy or death-eligible because another jury already

evaluated the evidence in the case and sentenced him to death.  Only by providing

accurate information and explaining that information had been withheld from the

7

prior jury can this "responsibility-reducing" issue be addressed. Furthermore, if prospective jurors are not advised about the prior proceedings, they will speculate that (1) Mr. Hammer may have undeservedly benefited from some "legal technicality" and his death sentence was in fact a fair, just, and appropriate sentence, and (2) when a jury returns a death sentence it is likely or probable that it will not be carried out.

The language proposed by the defense addresses these issues. "After these proceedings were held the trial court learned that the sentencing trial had been flawed because important information had not been presented to the sentencing jury." Doc. 1441-1 at 2.

Questions 87 and 109 elicit information from prospective jurors to learn if their knowledge of the prior proceedings and death sentence – that they will undoubtedly learn about during the presentation of evidence in the new sentencing trial – will influence their sentencing decision.

2.    The government's objection to the jurors being told that one or more votes for life will result in a life sentence should be overruled. The objected to language is that which is commonly used in both the preliminary instructions and the final instructions given to federal juries. As this response is being created, jury selection in *United States v. Brian Richardson*, 1:08-cr-00139 (N.D. Ga. 2012) is

going on.    The Richardson Joint Jury Questionnaire, as agreed to by the government, on Page 17 contains the following language,

> No juror is ever required to vote for a sentence of death, even after a determination that aggravating factors may outweigh mitigating factor(s).  Each juror must come to his or her own individual decision as to whether to impose the death penalty after consideration of all of the aggravating factors and all of the mitigating factors.  The law also gives jurors the discretion to consider mercy in reaching their individual decisions regarding Mr. Richardson's sentence.
>
> To impose the death penalty, all jurors individually must agree to impose the death penalty. You should know, however, that if each juror decides to impose the death penalty on Brian Richardson, this Court is required to sentence that defendant to death. If the jury decides to impose a sentence of life imprisonment without the possibility of release, the Court is required to impose that sentence. In other words, the Court cannot change your decision.
>
> 17

Similar language was part of the questionnaire used in *United States v. Phillips*, 2:07-cr-00549-JCD (E.D. Pa. 2010).

> If there is a sentencing phase in this case, each individual juror has the power and duty to decide whether Mr. Phillips will live or die. In making this decision, each juror, after listening to all of the evidence and deliberating with his or her fellow jurors, must use his or her own judgment. Even if all the jurors agree on the facts, it remains for each juror to individually decide which sentence is just, life in prison without the possibility of parole or release or a sentence of death.  Even if the jury did not find any mitigating factors, it would still have to be persuaded unanimously that the aggravating factor or factors were themselves sufficient to justify a sentence of death.
>
> 41

Juror Number _____

In sum, no juror is ever required to impose a sentence of death upon a defendant. Imposing the death penalty is not mandatory. You should know, however, that if the jury does unanimously decide to impose the death penalty, this Court would be required to impose that sentence. Similarly, if you decide to impose life imprisonment without the possibility of parole or release – an option that would also be available to you – the Court would be required to impose that sentence. In other words, the Court could not change your decision. The above is only an overview of the law applicable to a jury's consideration of the death penalty. If this case were ever to require a sentencing hearing – and remember that each defendant is presumed innocent of all charges that have been brought against him – the Court will instruct the jury in more detail about its duties, at that time.

3.    The objection regarding the explanation of the eligibility portion of the sentencing trial is well taken and language should be added to this portion of the Introduction that the government must also prove the defendant was 18 years of age or older at the time of the commission of the offense.  It is suggested the words "was 18 years of age at the time of the commission of the offense and that he" be added at the start of the fourth line.

---

<u>Eligibility Portion of Sentencing Trial</u>

The first part of the jury's consideration is what is commonly called the "eligibility" portion of the trial. During the eligibility portion of the trial the government has the burden of proving beyond a reasonable doubt and unanimously to the twelve jurors that the person on trial acted with a particular mental intent in committing the homicide. The fact that Mr. Hammer pled guilty to first degree murder does not diminish or relieve the government of their burden of proving he acted with a particular mental intent when he killed Andrew Marti. Additionally, the government has the burden of proving one statutory aggravating factor.  An "aggravating factor" is a factor that could support a sentence of death and it must be proved beyond a reasonable doubt. A reasonable doubt is a fair doubt based on reason, logic, common sense, or experience.

**was 18 years of age or older at the time of the commission of the offense and that he**

*United States v. David Hammer (Cr. No. 96-239)*      3      _____

Juror Last Name

---

4.    The wording of Paragraphs 61 and 62 do not suggest erotic asphyxia was the cause of death.

---

61.    Erotic asphyxiation or breath control play is the intentional restriction of oxygen to the brain for sexual arousal. Consensual bondage is the use of restraints for the sexual pleasure of the parties involved.

Some individuals have a difficult time reviewing and discussing unconventional sexual activities. Do you have any concerns about being a juror in a case in which evidence of these sexual activities is presented?

Yes _____    No _____

IF YES, please explain: _____

_____

_____

62.    You will learn as part of the evidence in this case that witnesses, the victim and the defendant have engaged in consensual bondage and erotic asphyxia during anal and oral sex with each other and other men in prison. Would this evidence affect your ability to remain completely objective and impartial?

Yes _____    No _____

IF YES, please explain: _____

_____

_____

---

During the penalty phase trial there will be evidence presented of erotic asphyxia as a sexual practice.  Asking the potential jurors whether the evidence which will be heard concerning erotic asphyxia will be so troubling to the potential juror that the juror would not be able to remain bias free does not suggest that the jurors should conclude this was the cause of Mr. Marti's death.  The questions in 61 and 62 are similar to questions asked about gruesome photographs and they are designed solely for the purpose of identifying individuals who, for whatever

reason, would find that listening to testimony concerning erotic asphyxia would prevent them from serving as fair and unbiased jurors.

5.   Defense counsel does not believe the wording of Question 67 is awkward.   However, if government counsel has suggested alternative wording, defense counsel will be more than willing to consider the alternative suggestion.

---

67.   (a)   Do you have, or have you ever had, a family member or someone close to you in prison?

Yes _____   No _____

IF YES, please explain: _____

_____

_____

(b)   Have you ever visited a prison for any reason?   Yes _____   No _____

IF YES, please explain: _____

_____

_____

*United States v. David Hammer (Cr. No. 96-239)*      24

_____
Juror Last Name

(c)   Please describe your overall perception of prison life and how prisoners are treated?

_____

_____

_____

---

Similar questions were included in the Jury Questionnaire in *Richardson*.

---

### CASE-SPECIFIC

81.  The charge in this case is premeditated murder. This charge arose out of an incident which occurred on July 8, 2007, at the federal prison in Atlanta, and that resulted in the death of Steven Obara.

a.    Have you seen or heard anything about the alleged offense from the news media or from any other sources, including family or friends? Yes_____    No _____

If yes, please describe the information, how you obtained it, and how it may have affected you: _____

_____

_____

b.    Do you have any personal knowledge of the facts or charges in this case?

Yes_____    No _____    If yes, please explain: _____

_____

_____

c.    Would the information that you heard, received, or read from any source affect your ability to be fair and impartial in this case? Yes _____    No _____

If yes, please describe how: _____

_____

82.  Are you familiar with the federal prison in Atlanta, Georgia?

Yes _____    No _____    If yes, please explain: _____

_____

_____

---

14

6.    Question 73 in the Proposed Juror Questionnaire:

---

**PART III: QUESTIONS CONCERNING PUNISHMENT**

Mr. Hammer has pled guilty to first degree murder.  The jury will consider the appropriate punishment for Mr. Hammer if, and only if, all jurors find that Mr. Hammer is eligible for consideration of the death penalty; that is, that the government has proven both that the killing was committed with the required mental intent and the existence of one aggravating factor beyond a reasonable doubt.  The decision between life imprisonment without the possibility of release and the death penalty is a decision made by each juror individually.  Thus, it is important that we know your opinions and feelings regarding punishment. Please answer the following questions completely and honestly, always remembering that there are no right or wrong answers.

The question of Mr. Hammer's guilt is not in dispute. He pled guilty to intentional, premeditated, with malice murder without any legal excuse or justification. You will be instructed that he was not insane or acting under the heat of passion at the time of the murder. During the punishment portion, you will be asked to determine the sentence after consideration of aggravating factors and mitigating circumstances.

73.    In general what are your views on the death penalty for an inmate who intentionally kills another with premeditation and malice and without any legal excuse or justification?

_____

_____

_____

_____

_____

74.    How long have you held these views on the death penalty?  _____

_____

_____

(a) How have your views about the death penalty changed in the last 10 years?

More in favor _____          Less in favor _____          No change _____

(b) Why did your views change, if they did?  _____

_____

_____

_____

---

15

Defense counsel believes that Question 73 is a properly worded question. The wording of this question is substantially the same as Question 59 in *United States v. Barnes*, No. 7:04-CR-00186 (S.D. N.Y.),

| | |
|---|---|
| 59. | Please describe your opinions and beliefs about the death penalty for a person guilty of intentional murder. |

This Question is also supported by Question 7 in the jury questionnaire in *United States v. Williams* filed in the United States District Court for the District of Hawaii to No. 06-00079 DAE-KSC, a case where AUSA Mellin is the trial attorney.

| | |
|---|---|
| 7. | Would the fact that this trial involves the death of a child affect your ability to consider the evidence with an open mind or to render a fair and impartial verdict?<br><br>Yes ☐    No ☐<br><br>If yes, please explain: |

7.    Question 75 in the Proposed Juror Questionnaire:

Case 4:96-cr-00239-JHS   Document 1440-1   Filed 01/30/12   Page 28 of 41

75.    What purpose, if any, does the death penalty serve in our society?

_____

_____

_____

Defense counsel believes that the question identified as 75 is a question which commonly appears in jury questionnaires which have been used in prior federal death penalty cases.   The defense does not deem this question to be either inappropriate or unnecessary.

8.    The Court should reject the government's objections to Questions 77, 78, 80, 81(a) and 82-85:

77.    In what kinds of intentional premeditated murder cases do you feel that the penalty of life imprisonment without the possibility of release is appropriate?

_____

_____

_____

_____

78.    In what kinds of intentional premeditated murder cases do you feel that the death penalty is appropriate?

_____

_____

_____

_____

*United States v. David Hammer (Cr. No. 96-239)*        28

_____
Juror Last Name

80.    If a person is sentenced to life imprisonment without the possibility of release in a federal prison, do you believe in fact that person will spend the rest of his or her life in prison?

Yes _____    No _____    Unsure _____

Please explain: _____

_____

_____

_____

81.    Is there anything about a sentence of life imprisonment without the possibility of release that bothers you?

Yes _____    No _____

Please explain: _____

_____

_____

_____

(a) Do you think life imprisonment without the possibility of release is a severe punishment?

Yes _____    No _____

Please explain: _____

_____

_____

*United States v. David Hammer (Cr. No. 96-239)*    29    _____
Juror Last Name

82.  Based on your feelings and values, would life without the possibility of release be a severe enough sentence for an inmate, already serving a prison sentence, who intentionally kills another inmate?

Yes _____    No _____

Please explain: _____

_____

_____

_____

83.  Are your views such that you would have difficulty voting for life imprisonment without the possibility of release for an individual who was already serving a prison sentence and then intentionally kills an inmate with premeditation and malice?

Yes _____    No _____

Please explain: _____

_____

_____

_____

84.  Does the fact that the defendant, David Hammer was serving time in a federal penitentiary when he intentionally killed lead you to believe the death penalty is the only appropriate punishment in this case?

Yes _____    No _____

Please explain: _____

_____

_____

_____

85.  What, if anything, would be important to you in deciding whether an inmate who killed another inmate should receive the punishment of life imprisonment without the possibility of release rather than the death penalty?

_____

_____

_____

_____

19

Contrary to the assertion by the government, these questions are not unnecessarily repetitive, are not too case specific, and are not unnecessary. These questions are consistent with questions asked in jury questionnaires submitted in other federal death penalty cases. Question 77 and 78 are similar to Question 65 in the Questionnaire in *United State v. Fell,* 2:01-CR-00012 (D. Vt).

65.    (a) In what kinds of murder cases do you feel that the penalty of life imprisonment without the possibility of parole is appropriate?

_____

_____

(b) In what kinds of murder cases do you feel that the death penalty is appropriate?

_____

_____

Question 80 is similar to Question 124 in *United States v. Lujan,* 2:05-cr-00924-RB (D. N.M). Question 81(a) is similar to Question 125 in the *Lujan* Questionnaire.

124. When a defendant is sentenced to life in prison without the possibility of release, do you believe the defendant actually spends the rest of his life in prison?

❏ Yes        ❏ No        ❏ Unsure

(a)    Please explain your beliefs in regard to this question:

_____

_____

125. Do you think that life imprisonment without release is a severe punishment?

❏ Yes        ❏ No

(a)    Please explain:

_____

_____

Question 83 is supported by Question 130 in the *United States v. Phillips* Questionnaire, Question 90 in *United States v. McGriff*, and Question 62 in *United States v. Barnes*, 7:04-CR-00186 (S.D. N.Y.)

130. Are your views on the death penalty such that you would find it difficult to vote for a life sentence for someone convicted beyond a reasonable doubt of <u>more</u> than one deliberate murder?        Yes _____    No _____

(a)    Please explain:

_____

_____

_____

_____

90. Are your views on the death penalty such that you would find it difficult to vote for a life sentence for someone convicted beyond a reasonable doubt of <u>more</u> than one deliberate murder?

❏ YES  ❏ NO

Please explain:

_____

_____

91. What would be important to you in deciding whether a person found guilty of committing an intentional murder should receive the punishment of life in prison without the possibility of release?

_____

_____

62. Are your views on the death penalty such that you would find it difficult to vote for a life sentence for someone convicted beyond a reasonable doubt of <u>more</u> than one deliberate murder?

❏ YES  ❏ NO

Please explain:

_____

_____

_____

_____

_____

22

Question 84 is supported by Question 113 in the *Lujan* Questionnaire, Question 88

in the *McGriff* Questionnaire, and Question 60 in the *Barnes* Questionnaire.

Case 2:05-cr-00924-RB   Document 762-4   Filed 04/12/11   Page 24 of 30

**Juror No.**

113.   In your opinion, is the death penalty the only appropriate sentence for someone who has been proven guilty beyond a reasonable doubt of killing another person intentionally, without any legal excuse or justification?

☐ Yes        ☐ No

(a)    Please tell us why you feel this way:

_____

_____

88.   In your opinion, is the death penalty the only appropriate sentence for a defendant who has been proven guilty beyond a reasonable doubt of deliberately and intentionally killing another person if, as here, the alternative sentence is life imprisonment without possibility of release?

☐ YES      ☐ NO

Please tell us why you feel this way:

_____

_____

60.   In your opinion, is the death penalty the only appropriate sentence for a defendant who has been proven guilty beyond a reasonable doubt of deliberately and intentionally killing another person?

☐ YES   ☐ NO

Please tell us why you feel this way:

_____

_____

_____

Question 85 is supported by Question 91 in the *McGriff* Questionnaire.

91.   What would be important to you in deciding whether a person found guilty of committing an intentional murder should receive the punishment of life in prison without the possibility of release?

_____

_____

The defense believes these questions are appropriate, highly relevant, and will elicit information from prospective jurors that will assist the Court, government, and defense in learning the juror's views about the critical issues in this case. These questions are designed to elicit information to assist the government and defense in identifying extreme, clearly impaired jurors that the parties can agree to strike before voir dire (thus making the voir dire process more efficient because the obviously impaired jurors do not have to be voir dired). These questions will also help the parties ask more relevant questions during the voir dire and this will likewise make the process more productive and efficient.

24

9.    Question 86 in the Proposed Juror Questionnaire:

> 86.    During this sentencing trial, the defense may present evidence to the jury about the defendant's childhood and background. Are you interested in learning about the defendant's childhood and background and giving it consideration when making a decision about punishment?
>
> Yes _____    No _____
>
> Why or why not? _____
>
> _____
>
> _____
>
> _____

Question 86 does not seek an inappropriate preview of the juror's weighing of mitigation evidence; rather, it is a question designed to determine whether the prospective juror is willing and capable of considering mitigation related to Mr. Hammer's childhood in light of the fact that Mr. Hammer was approximately 40 years of age at the time of the death of Mr. Marti, and is currently in his 50s. The defense clearly is entitled to present for consideration the atrocities visited on Mr. Hammer during his childhood and formative years. If, because of his current age, jurors are not willing to listen to and consider this mitigation information, they are mitigation impaired and therefore should be dismissed for cause.

Question 86 is supported by Questions 130 and 131 from the *Lujan* Questionnaire.

130. Do you believe that the personal circumstances and background of a defendant should be taken into account in making the decision on whether to impose a sentence of death? Yes ☐  No ☐

   (a)      Please explain:

_____

_____

131. If Mr. Lujan is found guilty of kidnapping resulting in death, without any legal excuse or justification, the defense may present evidence during the sentencing phase of the trial about Larry Lujan's childhood and background in support of a sentence other than the death penalty. Would you be able to consider such evidence when making a decision about his punishment for capital murder?

☐ Yes          ☐ No

This question is also supported by Question 100 from the jointly submitted *Richardson* Questionnaire and Question 13 from the *Williams* Hawaii case which asks, "Do you believe that the personal circumstances and background of a defendant should be taken into account in making a decision on whether to impose a sentence of death?"

100.    A person's background does not matter when it comes to whether he should be sentenced to death for a murder:

      _____     Strongly Agree
      _____     Agree Somewhat
      _____     Disagree Somewhat
      _____     Strongly Disagree

> 13. Do you believe that the personal circumstances and background of a defendant should be taken into account in making the decision on whether to impose a sentence of death?
>
> Yes ☐      No ☐

10. Contrary to the government's assertion, the defense does not "assume" a judicial ruling in Question 88 in the Proposed Juror Questionnaire:

> 88. You will not hear evidence about the sentence that Mr. Hammer was serving when he killed Mr. Marti and you will be directed that you cannot speculate about that sentence. Do you have any concerns about your ability not to speculate and not let the lack of information unduly influence your evaluation of this case?
>
> Yes _____      No _____
>
> Why or why not? _____
>
> _____
>
> _____
>
> _____

During the prior resentencing, the Court ruled that evidence that Mr. Hammer was serving a 1200 year sentence was precluded. NT 7/1/98 at 70-71; id. at 77. There is nothing to "litigate" with respect to this issue as the issue was previously litigated, has been decided, and represents the law of the case.

11. Question 95 in the Proposed Juror Questionnaire:

> 95. Under the law, Mr. Hammer has the right not to testify during the sentencing trial. If Mr. Hammer does not testify, you may not consider that fact, in any way, in reaching a sentencing decision.
>
> Given the nature of the case, would you expect that Mr. Hammer testify?
>
> Yes _____    No _____
>
> Do you have any concerns about applying this principle if Mr. Hammer does not testify?
>
> Yes _____    No _____
>
> Please explain: _____
>
> _____

This question finds support in Questions 34 and 35 of the *Williams* case in Hawaii:

> 34. Do you believe the defendant should have to testify even though the law does not require him to do so?
>
> Yes ☐    No ☐
>
> 35. Do you believe that a defendant in a criminal case should be required to prove his or her innocence as opposed to having the government bear the burden of proving guilt beyond a reasonable doubt?
>
> Yes ☐    No ☐

12. Question 96 in the Proposed Juror Questionnaire is not repetitious.

> 96. The law never requires a juror to vote for a sentence of death even in cases involving the intentional and premeditated killing of an inmate by another inmate in a federal penitentiary.
>
> Do you have any concerns about applying this principle?    Yes _____    No _____
>
> Please explain: _____
>
> _____

Although the legal principle was made known to the jurors as part of the Introduction, they were not asked whether they would be able to apply this legal principle. This question specifically asks whether they would be able to apply the legal principle.

13. The government objection is based upon a misunderstanding of the language in Question 97.

97.    Each juror must decide for him or herself whether a mitigating circumstance has been proven and, if proven, the weight or significance to assign to the mitigating circumstance. Some jurors may agree a circumstance is mitigating, some may not agree and some may identify their own mitigating circumstances. If any juror finds a mitigating circumstances by a preponderance of the evidence, it must be considered in favor of a life sentence.

Do you have any concerns about applying this principle?    Yes _____    No _____

Please explain: _____

_____

The question does not compel any juror to accept a mitigating circumstance found by another juror. This question seeks to elicit information regarding the ability of potential jurors to individually consider mitigating evidence – to establish that they could truly independently consider and evaluate it – is distinct in form and intent from an inquiry into how jurors would weigh particular evidence at trial. The latter approach, to which the labels "staking out," "pre-commitment" or "loaded questioning" are frequently applied, is often prohibited. *See United States v. Lancaster*, 96 F.3d 734 (4th Cir. 1996) (overruling *United States v. Evans*, 917 F.2d 800 (4th Cir. 1990)) (no error to disallow question whether juror would give more

weight to testimony of a law enforcement official than that of ordinary citizen);

*State v. Southerland*, 316 S.C. 377, 382, 447 S.E.2d 862, 866 (S.C. 1994) ("[a]n

inquiry as to the weight a juror would give one kind of witness over another

invades the province of the jury').[1]

In contrast, Mr. Hammer does not seek to ask prospective jurors to assess the

weight they would give certain substantive evidence or the weight they would give

to evidence presented by certain classes of people.  As Chief Judge Bennett ruled

in *United States v. Johnson*, 366 F.Sup.2d 822,845 (N.D. Iowa 2005).

> It is a misconception to assume that any 'case-specific' question
> is necessarily a 'stake-out' question…While any 'case-specific'
> question that asks how a prospective juror would vote on life or
> death, if presented with proof of certain facts, is a 'stake-out'
> question, and does not attempt to 'pre-commit' the juror to a
> certain position, a properly framed case-specific question does
> not necessarily do any of these things.  For example, a question
> about whether a juror 'could (not would) find' that certain facts
> establish a legal requirement for imposition of the death
> penalty,…, or that a prospective juror could fairly consider either
> a death or life sentence, notwithstanding proof of certain facts,
> commits a juror to no other position than fair consideration of the
> appropriate penalty in light of all of the facts and the court's
> instructions.

Therefore, as Judge Bennett recognized was proper in *Johnson*, Mr. Hammer

simply seeks to find out whether each juror will actually be able to consider and

---

[1] Nonetheless, many federal courts allow this type of questioning.  *Lancaster*, 96 F.3d at 747-49 (dissent);
*see, e.g., United States v. Quinones*, 511 F.3d 289, 297-300 (2d. Cir. 2007); *Brown v. United States*, 338
F.2d 543 (D.C. Cir.1964); *United States v. Martin*, 507 F.2d 428, 432-33 (7th  Cir. 1974); *United States v.
Baldwin*, 607 F.2d 1295 (9th Cir. 1979); *United States v. Gelb*, 881 F.2d 1155, 1164-65 (2d Cir. 1989);
*United States v. Victoria-Peguero,* 920 F.2d 77, 84 (1st Cir. 1990); *United States v. Amerson*, 938 F.2d
116, 117-18 (8th Cir. 1991); *United States v. Nielson*, 1 F.3d 855, 859 (9th Cir. 1993).

weigh all of the evidence presented. Rather than an improper "preview," such inquiry is a necessary and constitutionally sanctioned *view* into whether a juror is already biased. This category-specific penalty bias remains a basis for disqualification even if the juror, in the hypothetical capital case, could consider a penalty less than death. *Morgan v. Illinois*, 504 U.S. 719 (1992).

Eliciting a prospective juror's views about his or her ability to individually consider mitigating factors gets to the relevant and critical issue without inappropriately committing the juror to any particular vote or outcome in the actual case before them, and, without asking the juror to assess the weight the jury would give to particular mitigation or aggravation.[2]

14. As set forth in the response to the objection to Preliminary Instruction, the defense believes Question 98 should be included in the questionnaire, and the language on Page 5 of the "Introduction" should remain.

---

[2] This exploration of mitigation and punishment bias is very similar to the exploration of a prospective juror's potential bias against the law enforcement witnesses or a government prosecution that utilizes witnesses who have entered plea agreements with the government. These types of potential bias are routinely explored in capital and non-capital trials in a manner that avoids pre-committing jurors to weighing evidence in any particular manner or to any given verdict.

> 98.  If the jury is unanimous for life imprisonment without the possibility of release or for a death sentence, that sentence will be imposed. If the jurors are not unanimous about the appropriate punishment then a sentence of life imprisonment without the possibility of release is imposed. In other words, if one juror votes to impose a sentence of life imprisonment without the possibility of release that sentence will be imposed.
>
> Do you have any concerns about applying this principle?    Yes _____    No _____
>
> Please explain: _____
>
> _____
>
> *United States v. David Hammer (Cr. No. 96-239)*        34
>
> _____
> Juror Last Name

This question finds support in Question 133 of the *Lujan* Questionnaire.

> 133.  If there is a sentencing phase of the trial, where the jury is asked to decide between a penalty of life without the possibility of release, or the death penalty, our law says that if the jury is not unanimous, the judge will impose a sentence of life without the possibility of release. If the jury is not unanimous on the question of punishment, would you feel that the jury had not "done its job"?
>
> ❏ Yes        ❏ No
>
> (a)    If yes, please explain:
>
> _____
>
> _____

The question is not repetitive.

Question 110 in the Proposed Juror Questionnaire is a generic question that deals with matters other than the specifics addressed in Question 109.

110.   Is there anything at all about the nature of the charges, the facts of the case or the sentencing trial as they have been explained to you thus far that would affect your ability to be a completely objective and impartial juror in this case?

Yes _____     No _____

IF YES, please explain: _____

_____

111.   Do you know of any reason at all why you might not be able to serve as a completely objective and impartial juror in this case?

Yes _____     No _____

IF YES, please explain: _____

_____

15.   It is anticipated that as part of the selection process complete witness lists will be provided to the prospective jurors.  It is the defense position that all witnesses should be identified as a relationship with or being familiar with any of the witnesses, Philadelphia-based or not, is important information for the parties to have.

B.   PRELMINARY INSTRUCTIONS

After reviewing the government's objections to Paragraphs 17 and 18, the defense does not agree that there is any need for any changes in the wording.

The government raises various objections concerning the proposed Preliminary Instructions which advise the prospective jurors that the law never

requires a vote for a sentence of death, that the verdict is binding on the court and the effect of the lack of unanimity.   In raising these objections, the government either overlooks or ignores the multiple trials where various courts have given such preliminary instructions to potential jurors prior to the voir dire process.   For example, in *United States v. Williams*, No. 1:00-CR-1008 (S.D.N.Y. 2005), part of the preliminary instructions advised the potential jurors as follows:   "[N]o juror is ever required to impose a death sentence.   Any juror always has discretion under the law to vote for a sentence other than death if he or she decides that it is appropriate…. It is very important for you to remember that regardless of the juror's findings with respect to aggravation and mitigating evidence, a sentence of death is never required…[T]here are no characteristics of a murder that makes death the only allowable or appropriate sentence.   Life is always a possible sentence."   In *United States v. Young*, No. 3:98-CR-00038 (M.D. Tenn. 2009), the potential jurors were told, "[Y]ou, as a Juror, are never required to impose a sentence of death"; "Jurors are never required to return a sentence of death, even after determination that aggravating factors may outweigh mitigating factors….In sum, the Jury is never required to impose a sentence of death upon a defendant." These preliminary instructions were given by the court in January of 2009.   In the last federal capital trial in the Middle District of Pennsylvania, *United States v. O'Driscoll*, No. 4-CR-01-277 (M.D. Pa. 2002), Judge Muir ruled that, "As part of

the court's preliminary instructions given at the time of jury selection, the court will advise the potential jurors that they are never required to impose a sentence of death.  The court will also include such an instruction in its closing charge to the jury."  As part of the preliminary instructions given in *United States v. Barnes*, No. 7:04-CR-00186 (S.D. N.Y.), the potential jurors were advised that they were never required to return a verdict of death, that no juror is ever required by the law to impose a death sentence, the decision as to what the sentence should be is an individual decision by each juror, and whatever findings were made with respect to aggravating factors and mitigating circumstances the jurors were never required to impose a sentence of death."  With respect to the objection to the comments concerning the lack of unanimity for death resulting in a sentence of life, the explanation of why such an explanation is appropriate as set forth in *United States v. Sampson*, 335 F. Supp. 2d 166, 240-241 (D. Mass. 2004), is instructive.

The defense has reviewed multiple prior transcripts of preliminary instructions given to potential jurors in multiple district courts throughout the United States to create the proposed Preliminary Instructions which have been submitted to ensure those individuals who will be subjected to the voir dire procedures in this case have a clear understanding of the deliberative process which will be employed during the sentencing trial.  Only if the potential jurors have an understanding of the deliberative process which will be followed at the

close of the evidence will the parties be able to ascertain whether the individuals will be able to follow and employ those procedures in the trial of the instant case.

It is respectfully suggested that the Court should reject the proposed objections of the government.

CONCLUSION

Except for adding the proof of being in excess of 18 years of age, the objections and observations of the government should be rejected both with respect to the Jury Questionnaire and the proposed Preliminary Instructions.

Respectfully submitted,

/s/ Ronald C. Travis, Esquire
Ronald C. Travis, Esquire
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
(570) 323-8711 (telephone)
(570) 323-4192 (facsimile)
rtravis@riederstravis.com

/s/ Anne Saunders, Esquire
Anne Saunders, Esquire
Assistant Federal Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Ste. 300
Harrisburg, PA  17101
(717) 782-3843 (telephone)
(717) 782-3966 (facsimile)
Anne_Saunders@fd.org

/s/ James McHugh, Esquire
James McHugh, Esquire
James Moreno, Esquire
Federal Community Defender
Eastern District of Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA  19106
(215) 928-1100 (telephone)
(215) 928-0826 (facsimile)
James_McHugh@fd.org
James_Moreno@fd.org

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | NO. 4:96-CR-00239 |
| | : | |
| v. | : | |
| | : | (Judge Slomsky) |
| DAVID PAUL HAMMER | : | |
| | : | |
| Defendant | : | (Electronically Filed) |

**<u>CERTIFICATE OF SERVICE</u>**

AND NOW, comes Ronald C. Travis, Esquire, attorney for Defendant Hammer, and certifies that a copy of the foregoing Defendant's Response to Objections and Observations to Proposed Jury Questionnaire and Preliminary Instructions filed by the  United States has been served upon AUSA Steven D. Mellin, and John Gurganus, Jr., via electronically filing, this 2nd day of March, 2012.

> RIEDERS, TRAVIS, HUMPHREY, HARRIS,
>     WATERS & WAFFENSCHMIDT
> /s/ Ronald C. Travis, Esquire
> _____
> Ronald C. Travis, Esquire
> Attorney for Defendant
> PA ID#:  08819
> 161 West Third Street
> PO Box 215
> Williamsport, PA  17703-0215
> (570) 323-8711 (telephone)
> (570) 323-4192 (facsimile)
> rtravis@riederstravis.com