**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | NO. 4:96-CR-00239 |
| | : | |
| v. | : | |
| | : | |
| DAVID PAUL HAMMER | : | |
| | : | |
| Defendant | : | (Electronically Filed) |

**EXHIBITS TO DEFENDANT HAMMER'S LETTER BRIEF ON
DISCOVERY**

**Exhibit 1** – Discovery Order Entered in *United States vs. Watland.*

respond factually nor rebut factually the argument that I made earlier that one of the reasons those are relevant is that they are distributed nationwide, including to the wardens of U.S.P. Beaumont and U.S.P. Florence.  And on that ground alone, I think they're relevant.  The Government doesn't dispute that.

Your Honor, again, Mr. Carey may be confused with respect to the staff duty reports.  I think his objection today is that these nationwide, and just because some other judge ordered it doesn't make them material here.

Your Honor, the staff duty officers and the lieutenants meeting reports that we have sought in this case, the requests are narrowly tailored to U.S.P. Florence, and I don't want there be to any confusion about that issue.

Your Honor, unless the Court has any other questions, I think that concludes my remarks today.  Thank you.

THE COURT:  Thank you.

There has been reference made by Ms. Johnson to the fact that at one time in my life I was a criminal defense attorney, and that is certainly true.  And it is also true that at one time, I was a deputy district attorney.  Both of those events occurred well more than 35 years ago, however.  And the present state, I did have some involvement with capital cases. But certainly, in those days, there no one who specialized in death penalty cases, to my awareness.  I didn't, that's for sure.  And besides that, the law has changed so much, and

society has changed, the Supreme Court opinions have changed so that my past experience in these matters truly is irrelevant to what is going on.

What I do think is relevant is the -- an experience I had in another case just last week, that bears somewhat on my thinking, although it isn't directly applicable to this case. And that's another death penalty case involving the habeas corpus petition of Nathan Dunlap that -- where a death penalty was imposed by the state of Colorado.

And what occurred is that the -- and I think what is relevant -- well, not relevant, but tangentially important to me -- that expenses of the federally appointed Criminal Justice Act attorneys to appear in entirely state clemency proceedings was authorized, and it -- there was a change in the statute that the -- those expenses were considered by the Court of Appeals. And then the statute was changed, and the matter was remanded to me to make those determinations of what is a reasonable expense under a federally funded criminal justice act for lawyers to appear in what is in what is, essentially, a non-legal proceeding, and that is a petition for clemency to the state governor, assuming that the habeas corpus petition is denied by the Tenth Circuit, and my decision in that case is affirmed, and then apparently, the CJA attorneys will be petitioning the state of Colorado's governor for clemency.

I think that what that suggests to me is the overall

judicial policy as set forth there and also in the Supreme Court opinions and, clearly, in opinions from circuit courts of appeal, that we are to leave no stone unturned in the discovery process of death penalty cases. And I can only say in that regard that the Government seeks the death penalty. That's the Government's right to do so in this case. But when that happens, it -- it sets forth a very -- veritable avalanche of information that defense counsel and their experts must have.

I, therefore, am granting the motion in every particular. But I want to point out a few things in that regard.

And that is that as to, the security objections can only be handled under these -- in this case by the protective order. And we have to trust in the judgment of defense counsel and experts that are employed for the defense, as to how these are used and with discretion. But I'm not about to enter an order saying that an individual charged in a capital case and facing a death penalty is not allowed to see them. That, to me, is -- I know of no such case in which that's happened. And if there is one, it won't be coming from me.

I think the defendant is the -- certainly the most interested person in the outcome of this case and has a right to know what is going on.

So the next thing is that the Government has to produce what has been requested. But if it doesn't have it,

then there is -- obviously, it can't produce it.  There is no -- apparently, the reference in two of these reports -- on the assaults to the prosecutorial guidelines is something that doesn't exist, other than in the minds or the behavior of FBI agents.  If that's the case, and they're not there, they don't exist.

What my concern was when I raised the issue was, if it were -- and apparently it's not -- a document of the Department of Justice itself, with prosecutorial guidelines, that I wanted to figure out whether that was part of an attorney's work product and protect it there.  But that doesn't seem to be the case either.

So if the Government says these things don't exist, that's -- as we have to trust defense counsel to use their better judgment in how to handle this information they get, we have to trust the prosecution as well.  And it is not by any means a perfect system, but I accept the representation that has been given that these guidelines don't exist.

That raises the next issue, and that is that redacted copies are not responses that are acceptable.  And any redacted copies have to be withdrawn and the full copies presented to defense counsel.

If there is a particular special need, and it would have to be an of extraordinary nature, of a specific line item in a document where the Government desires redaction, you're

going to have to file a special motion for that. But, otherwise, just -- I've seen too many of these documents that are black lined from top to bottom, and that's not acceptable. It isn't even acceptable under the various -- I can't remember the acronym of the cases we did involving security classified documents, to redact everything. This isn't -- to redact in toto or in major part is the same as not sending anything in, and it becomes a mere formality, and I will not accept that. So the redacted copies have to be resubmitted.

The next request I think is quite reasonable, given the volume of information that we have. And that is if the Government is saying that a document or a photo or any other kind of discovery has previously been provided to defense counsel, that response should identify where it is. I can't answer the question about the Bates stamps and where they are, but if the Government says they don't exist and it's a lacuna in the numbering system, then I accept that. If they have the documents, they will provide them.

With those restrictions, the motion is granted.

Now, this, of course, never ends the controversy, because, if, indeed, there are -- yes, one other thing with regard to Request 77. If that unit has been remodeled, the Government may provide the plans and drawings showing the location of the cameras in the walls and other things as they existed before the remodel and show the drawings after, and

that will satisfy that discovery request.  So that touring something that is no longer in existence or that has been changed is not necessary if those drawings, plans, and specifications can be shown.

As to Request 74 -- we covered that, excuse me.  As to the presentence reports from everywhere, I think there is an adequate explanation given by Mr. Carey that there is no real objection except that the Bureau of Prisons received those reports to be used solely by the Bureau of Prisons, and they feel that they can't go beyond that without a court order.  And they have the court order.  The presentence reports are discoverable in this case.  They will be subject to a protective order.  And it's not necessary for defense counsel to go before each and every sentencing judge, if still alive, around the country to obtain that permission.  It's a legitimate request and will be honored and subject to the protective order.

One of the reasons for this pervasive discovery is mitigation.  And I am trying to remain as objective as possible about whatever verdict or verdicts a jury might render in this case.  But at the same time, I -- I would hate to think that all of us would go through all of this work and then have the matter -- and all the expense, and then have the matter set aside because there was an insufficient provision of materials necessary for especially the mitigation aspect, if the case

goes to the second stage of determining the death penalty.

Whatever it is, I want to proceed with -- certainly with caution, but also bearing in mind that the present state of the law with respect to what can and cannot be offered and what defense counsel are required pursuant to the Constitution to -- and the decisions of the Supreme Court to make inquiry about are fully available to the defense in the case.

So that's the order on that.

Let's take the next matter up, which is the motion, Document 99, for release of grand jury materials and the related motion for disclosure of grand jury materials, Document No. 100 and Document 112.

The Government's motion is granted, to disclose that material.

Is there anything else that you need to say on this motion, Ms. Johnson?

Mr. Chambers.

MR. CHAMBERS: Your Honor, we have in our division of labor, I was assigned to handle the grand jury issues. And Ms. Johnson is going to handle the ministerial --

THE COURT: Okay.

MR. CHAMBERS: Your Honor correctly noted that our initial motion was Document 99, where we moved pursuant to Rule 6(e)(3)(E)(i), production of grand jury materials. And the Government's objection relies primarily on a case from the