UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No. 4:96-CR-0239 |
| | : |
| v. | : (Judge Slomsky) |
| | : |
| DAVID PAUL HAMMER | : **ELECTRONICALLY FILED** |

GOVERNMENT'S INFORMATIONAL OUTLINES REGARDING
PROOF OF AGGRAVATING FACTORS AND NOTICE OF EXPERTS

In response to the Court's Order regarding Informational Outlines, the United States provides the following information as well as a list of possible government experts. The United States reserves the right to supplement this outline and does not intend for this outline to be a complete, exhaustive list of all information that the government will present at the sentencing hearing. It is merely an outline of the types of evidence the United States will rely upon to prove the various statutory and non-statutory aggravating factors in this case. In addition, the government will rely on the testimony of witnesses presented at the original trial and sentencing hearing in 1998 as well as the testimony of witnesses in the § 2255 hearing in 2005. Defense counsel are in possession of the transcripts of these hearings and are aware of the testimony of the government's witnesses.

**1. Gateway Intent Factors**

Regarding proof of the gateway intent factors, 18 U.S.C. § 3591(a)(2), in particular the specific intent to kill Andrew Marti, the United States will rely primarily on the following evidence:

- defendant's guilty plea and related statements made by the defendant at the time of his guilty plea;

- defendant's confessions and statements to law enforcement officials (BOP officials Weaver, Traxler, DeVane, Jones, Luhrman; FBI Special Agent Thompson);

- evidence related to the restraints placed on Andrew Marti;

- defendant's letters and statements to other inmates, including inmates Steve Classen, Leonard Yager, and Lenny Kahle;

- defendant's confessions and acknowledgments in his published books ("The Final Escape" and others) ;

- the autopsy report and the testimony of the medical examiner and physician assistant (Funke and Chaudri);

- statements of BOP staff regarding defendant's intent to cell with the victim.

## 2. Substantial Planning and Premeditation

Regarding the statutory aggravating factor of substantial planning and premeditation, the United States will rely on the evidence listed above regarding the gateway intent factors.[1]  In particular, the United States will be relying on the statements by the defendant to law enforcement personnel as well as inmates regarding his intent to kill Marti prior to the early

---

[1]The government will rely on the evidence introduced at the previous sentencing hearing to establish defendant's prior criminal convictions which establish the statutory aggravating factor of two or more prior State or Federal convictions involving the use or threatened use of a firearm.  18 U.S.C. 3592(c)(2).

2

morning hours of April 13, 1996. In addition, the government will rely on the testimony of the medical examiner regarding the manner and cause of death and the length of time that was required to strangle to death the victim. Additionally, the defendant's own statements regarding the manner in which he killed Marti and his statements regarding what Marti was doing during the length of time that he was staging the "hostage taking" as well as Marti's statements while the defendant was killing the victim. The defendant admitted that, during the incident, his shoulder "popped out" and he had to stop his hold on the unconscious Marti. After a break in time, the defendant continued to strangle Marti by using a cord wrapped around his neck. The marks on the hands and feet of the victim indicate that he struggled during the lengthy encounter. As the Medical Examiner testified, there is no evidence of recent anal intercourse, completely contradicting the new defense of erotic intercourse. Finally, after the killing, the defendant admitted, "given the opportunity, I will kill again." Defendant Hammer admitted to several inmates his murder plan and admitted his involvement in the killing, stating to Classen that "I'm sure you were surprised to learn that I had done what I told you I was going to do to Marti."

**3. Victim Impact Evidence**

The government will rely upon the prior evidence of victim impact evidence presented at the original sentencing hearing. Defense counsel have had an opportunity to cross examine the witnesses regarding victim impact and have copies of the transcripts of their testimony. In addition, the government will be presenting the testimony of the victim's father, Robert Marti, and his sister Pamela Marti. Both family members will present testimony about the victim's life

and how his death has affected their family.  In particular, the family members will describe how the family took repeated steps to help Andrew Marti given the physical and mental problems he faced after surviving hundreds of epileptic seizures when he was a young child.  Robert Marti testified previously and, on April 6, 2012, he testified in a videotaped deposition.  Defense counsel had the opportunity to cross examine Mr. Marti at that time.

**4.  Future Dangerousness**

The government will rely upon the evidence presented previously to prove the killing of Andrew Marti as direct evidence of defendant's future dangerousness.  At the time the defendant killed Marti, he was serving a sentence of more than 1,200 years.  While incarcerated, he lured his cell mate into engaging in a fake "hostage taking" so that he could kill Marti.  This prison killing by an inmate serving essentially several life sentences clearly shows his future danger in a prison setting.  Further, the United States will rely on evidence of his prior escapes and his prior threats to kill judges and prosecutors as set forth previously in the original trial.  Additionally, the United States will rely upon portions of the published books by the defendant in which he admits the lengths to which he will go to escape and seek revenge on individuals whom he believes have wronged him.  Moreover, the United States will rely on the testimony of the shooting victim and the defendant's statements to others, including a reporter, regarding his desire to kill the surviving victim whom he shot when he escaped from prison.  In a recorded interview, the defendant admitted that had he known the victim would survive the head wounds, defendant Hammer would "have reloaded the gun and shot him six more times."

In 1981, the defendant escaped from a medium security facility in Oklahoma.  In 1982, he attempted to escape by crawling through a fence. In 1983, he escaped and in 1986, he held a correctional officer hostage.  In 1989, he informed the Warden that he had a person outside the prison plant two bombs in the Oklahoma City Courthouse and the State Capitol.  In 1993, the defendant took a prison physician hostage.  In addition, the United States will rely on the evidence regarding the reasons behind the defendant's transfer from Oklahoma custody to federal custody and the lengths to which the State of Oklahoma went to attempt to protect the safety of staff and others from the defendant.  Ultimately, the State essentially gave up and sought the defendant's transfer to federal custody.

On March 19, 1995, in the United States Penitentiary, Lompoc, the defendant tied up an inmate in a situation very similar to the facts of this case.  Defendant Hammer admitted that he waited for the inmate to fall asleep and then tied his hands and feet.  The victim awoke to the defendant holding an object to the victim's throat and the defendant threatening him.  Defendant Hammer told the victim that he had a knife to his throat.

The government will concede that the defendant has not committed the types of serious acts in his past while he has been housed on Death Row and this appeal has been pending. Although the defendant has chosen to not attempt to escape or kill another inmate "while on display" pending his appeals, he has not been a model inmate and has received several reports for assaulting officers and other inappropriate conduct.  He has assaulted BOP personnel and caused minor disruptions in the prison environment for his own benefit.  Further, he has not had the opportunity to kill another cell mate since this case has been pending as he has been housed in a single cell on Death Row in Terre Haute, Indiana.  Several BOP personnel (Stan Sandusky,

Bruce Ryherd, T. Ray Henry, and Debbie Moore, among others) will testify that the defendant is a "master of manipulation" and that he has a quick temper and can become very violent extremely quickly.

**5. Notice of Experts**

The United States provides this list of possible of government experts but reserves the right to supplement or amend this notice to add additional rebuttal experts in response to the defense case.

- Dr. Saralee Funke - Medical examiner

- Mohammed Chaudri - Physician Assistant

- Jeannette Bunch - Handwriting Expert

- Dr. Daniel Martell - Mental Health Expert

- Dr. Daryl Matthews - Mental Health Expert

- Dr. James Wolfson - Mental Health Expert

- Dr. John Mitchell - Mental Health Expert

- Dr. Steve Eckert - Mental Health Expert

- Dr. Stephen Karten - Mental Health Expert

- Dr. William N. Elliott - Mental Health Expert

Respectfully submitted,


PETER J. SMITH
United States Attorney

/s/ John C. Gurganus, Jr.

_____
JOHN C. GURGANUS Jr.
Assistant United States Attorney



STEVEN D. MELLIN
Trial Attorney For the
Capital Case Unit
1331 F Street, N.W.
Washington, D.C. 20530


Dated: October 1, 2012

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     : Criminal No. 4:96-CR-0239
                        :
        v.               : (Judge Slomsky)
                        :
DAVID PAUL HAMMER        : **ELECTRONICALLY FILED**

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing

GOVERNMENT'S INFORMATIONAL OUTLINES REGARDING
PROOF OF AGGRAVATING FACTORS AND NOTICE OF EXPERTS

to be electronic filing and electronic mail on October 1, 2012, to:

ADDRESSEES:

Ronald C. Travis, Esquire
rtravis@riederstravis.com
Michael Wiseman, Esquire
Michael_Wiseman@fd.org

James J. McHugh, Jr., Esquire
James_McHugh@fd.org

James Moreno, Esquire
James_Moreno@fd.org

Anne Saunders, Esquire
Anne_Saunders@fd.org

/s/ John C. Gurganus, Jr.

_____
JOHN C. GURGANUS, JR.
Assistant United States Attorney

8