**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA   :
                    :    NO. 4:96-CR-00239
                    :
v.                    :
                    :    (Judge Slomsky)
DAVID PAUL HAMMER    :
                    :
Defendant         :    **ELECTRONICALLY FILED**

## MOTION FOR CLIENT'S HANDS TO BE UNRESTRAINED DURING DEFENSE TEAM VIDEOCONFERENCE CONSULTATIONS WITH CLIENT

AND NOW, this 5th day of October, 2012, comes Defendant Hammer, via counsel, and moves the Court for the entry of an Order directing the Bureau of Prisons to have his hands unrestrained during future defense team consultations with David Hammer, via videoconferencing, staring with the next scheduled videoconference consultation of October 25, 2012, at 11:00 a.m. In support of this request, defense counsel represents the following:

1.    In conjunction with the Hearing on Pretrial Motions which occurred on June 30, 2011, the Court initially entered an Order dated June 10, 2011,

allowing Mr. Hammer's participation in the hearing via videoconferencing with members of the legal team present.

2.    The Order of June 10, 2011, further provided that Mr. Hammer's restraints were to be removed in order to permit Mr. Hammer to write.

3.    On June 28, 2011, the United States sought reconsideration of Paragraph 2 of the June 10, 2011, Order, although identifying the Order as being dated June 13, 2011.

4.    In its opposition to Paragraph 2 of the June Order, the United States submitted a Declaration of Associate Warden Church executed on June 27, 2011.

5.    In the Church Declaration, in Paragraph 2, Associate Warden Church asserted that policy required Mr. Hammer to be in handcuffs at all times when out of his cell.

6.    The Church Declaration further asserted that since a member of the defense team would be physically present in the same room with Mr. Hammer that allowing Mr. Hammer's hands to be unsecured was a safety concern for the institution.

7.    On June 28, 2011, a brief in opposition to the Motion for Reconsideration was submitted and set forth the multiple occasions in both the federal system and the state of Oklahoma system when Mr. Hammer had appeared without restraints and without incident.

8.      After considering the positions of the respective parties, the Court ultimately modified Paragraph 2 to allow Mr. Hammer's dominant hand to be unrestrained throughout the course of the multi-hour proceeding which occurred on June 30, 2011.

9.      No incidents occurred as a result of Mr. Hammer's right hand being unrestrained and a defense team member being seated beside him.

10.      In the government's opposition to the restraint Order, at no time did the government assert that there was any concern that if Mr. Hammer's hands were unrestrained that he would damage the videoconferencing equipment in the videoconferencing room at the institution.

11.      During the extensive preparations for the hearing which will begin on February 5, 2013, various members of the defense team have made multiple trips to USP-Terre Haute for the purpose of conferring with Mr. Hammer with respect to multiple procedural and evidentiary matters which need to be addressed.

12.      As a result of other obligations the various defense team members have, the face-to-face contacts with the client have generally been conducted by less than all of the defense attorneys assigned to the case.

13.      Anytime one of the defense team members travels to Terre Haute for a face-to-face conference, significant expenses are incurred for flights, car rental, and overnight accommodations. Additionally, such trips essentially require at least

three days of time; one day traveling to, one day traveling from, and one day conferring with Mr. Hammer.

14. The defense team is aware that USP-Terre Haute has videoconferencing capabilities and also is aware that the United States District Court in Harrisburg, as well as the United States District Court in Williamsport, have videoconferencing capabilities.

15. After discussing with the appropriate personnel at the courthouses and at USP-Terre Haute, it was determined that videoconference visits with Mr. Hammer can be accommodated with advanced scheduling.

16. The videoconference visits enables Mr. Hammer to see the members of the defense team and to attain input from the members of the defense team on particular issues of concern, without the members of the defense team having to travel in mass to USP-Terre Haute.

17. The first such videoconferencing consultation was scheduled and occurred on September 24, 2012, at 11:00 a.m.

18. The defense team assumed that in light of the Order previously entered by the Court in conjunction with the June 30, 2011, proceeding that at the very least one of Mr. Hammer's hands would be free so that he could take notes, as well as display to the defense team various legal documents he brought to the conference with him.

4

19.    On September 24, 2012, at about 11:00 a.m., Mr. Hammer was escorted into the videoconference room with his hands restrained.

20.    Counselor Todd Royer accompanied Mr. Hammer into the videoconference room and, while Mr. Hammer was explaining to the defense team members that he was restrained, Mr. Royer left the videoconference room.

21.    Once it was learned that Mr. Hammer's hands were restrained with handcuffs, an attempt to reach Attorney Sierveld, the legal advisor to the federal complex at Terre Haute, was undertaken but was unsuccessful.

22.    Efforts to reach the Warden to discuss the restraint issue with the Warden were also unsuccessful.

23.    At the request of the defense lawyers, Mr. Hammer went to the door and called out that the defense lawyers would like to speak with Counselor Royer about the failure to remove the restraints.

24.    Counselor Royer did return to the videoconference room, and when asked to remove the handcuffs entirely or to at least remove the handcuff restraining Mr. Hammer's right hand, Counselor Royer declined to do so.

25.    Counselor Royer stated that Mr. Hammer's hand restraints would not be removed because of the valuable equipment in the room.

26.    Counselor Royer told the defense team that the decision not to remove the restraints had been made by his supervisor, without naming the person who had made the decision.

27.    Counselor Royer was asked to contact his supervisor and request his supervisor come to the videoconferencing room so that the issue of hand restraints could be discussed.

28.    Counselor Royer left the videoconferencing room and, although the videoconference lasted for approximately an additional one hour and thirty minutes, the Supervisor who purportedly made the decision that Mr. Hammer would remain in restraints never did appear.

29.    The fact that Mr. Hammer remained in restraints throughout the course of the videoconferencing, did serve to significantly disrupt the videoconference session, made it impossible for Mr. Hammer to take notes, and interfered with Mr. Hammer's ability to display to the defense team legal documents he had brought to the conference with him.

30.    As a result of the failure to remove the restraints during the videoconference session on September 24, 2012, defense counsel forwarded to Attorney Sierveld an e-mail addressing the issue and inquiring as to whether the Bureau of Prisons would agree that with respect to future video phone calls, including the one currently scheduled for October 25, 2012, at 11:00 a.m., Mr.

Hammer would be afforded the same restraint removal which the Court had directed in conjunction with the June 30, 2011, Hearing.

31.    Attorney Sierveld was asked to respond by September 28, 2012, concerning the position of the BOP concerning this request.

32.    As of the date of the dictation of this Motion, the BOP has not responded.

33.    As a result of the BOP not responding to the request that the future video phone calls be handled in the same manner as was the video participation of Mr. Hammer on June 30, 2011, the defense team sent an e-mail to AUSA Mellin advising him of the situation and asking whether he concurred or did not concur in the instant Motion.

34.    As of the date of the dictation of this Motion, AUSA Mellin has not responded concerning the question of concurrence, and therefore it is assumed that the United States does not concur in the request.

35.    Under the Local Rules of the United States District Court for the Middle District of Pennsylvania, the United States has fourteen days after service of the Brief in Support of the instant motion to file a Brief in Opposition.

36.    Since the next scheduled videoconference phone call is October 25, 2012, Mr. Hammer requests that the United States be given only seven days after service of the Motion and Brief in Support to file any Brief in Opposition so that

the Court has ample opportunity to consider the positions of the two parties and enter an appropriate Order.

WHEREFORE, David Hammer requests the Court enter an Order directing that all future videoconference phone calls with the defense team be held with his hands free from restraint and also requests the Court enter an Order expediting the filing of any Brief in Opposition by the Government.

Respectfully submitted,

/s/ Ronald C. Travis, Esquire
Ronald C. Travis, Esquire
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
(570) 323-8711 (telephone)
(570) 323-4192 (facsimile)
rtravis@riederstravis.com

/s/ James McHugh, Esquire
James McHugh, Esquire
James Moreno, Esquire
Federal Community Defender
Eastern District of Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA  19106
(215) 928-1100 (telephone)
(215) 928-0826 (facsimile)
James_McHugh@fd.org
James_Moreno@fd.org

/s/ Anne Saunders, Esquire
Anne Saunders, Esquire
Assistant Federal Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Ste. 306
Harrisburg, PA  17101
(717) 782-3843 (telephone)
(717) 782-3966 (facsimile)
Anne_Saunders@fd.org

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 4:96-CR-00239 |
| | : | |
| v. | : | |
| | : | (Judge Slomsky) |
| DAVID PAUL HAMMER | : | |
| | : | |
| Defendant | : | **ELECTRONICALLY FILED** |

### CERTIFICATE OF NON-CONCURRENCE

AUSA Mellin was contacted via e-mail and asked whether the Government would concur in the instant Motion. No response to the request for concurrence has been received and therefore defense counsel is acting on the assumption that the United States does not concur in the Motion.

RIEDERS, TRAVIS, HUMPHREY, HARRIS,
WATERS & WAFFENSCHMIDT
/s/ Ronald C. Travis, Esquire

Ronald C. Travis, Esquire
Attorney for Defendant
PA ID#: 08819
161 West Third Street
PO Box 215
Williamsport, PA 17703-0215
(570) 323-8711 (telephone)
(570) 323-4192 (facsimile)
rtravis@riederstravis.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :
                              :      NO. 4:96-CR-00239
                              :
           v.                     :
                              :      (Judge Slomsky)
DAVID PAUL HAMMER         :
                              :
       Defendant            :      **ELECTRONICALLY FILED**

## CERTIFICATE OF SERVICE

AND NOW, comes Ronald C. Travis, Esquire, attorney for Defendant Hammer, and certifies that a copy of the foregoing Motion for Client's Hands to be Unrestrained During Defense Team Videoconference Consultations with Client has been served upon AUSA Steven D. Mellin and AUSA John C. Gurganus, via electronic filing, this 5th day of October, 2012.

RIEDERS, TRAVIS, HUMPHREY, HARRIS,
WATERS & WAFFENSCHMIDT

/s/ Ronald C. Travis, Esquire
Ronald C. Travis, Esquire
Attorney for Defendant
PA ID#: 08819
161 West Third Street
PO Box 215
Williamsport, PA 17703-0215
(570) 323-8711 (telephone)
(570) 323-4192 (facsimile)
rtravis@riederstravis.com