IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| | : | NO. 96-239 |
| v. | : | |
| | : | |
| DAVID PAUL HAMMER, | : | |
| | : | |
| Defendant. | : | |

## OPINION

**Slomsky, J.**                                                                **November 2, 2012**

### I.     INTRODUCTION

Before the Court is Defendant David Paul Hammer's Motion for Discovery Pursuant to

Federal Rules of Criminal Procedure 12(b)(3)(E) and 16.  (Doc. No. 1407.)  For reasons that

follow, Defendant's Motion for Discovery will be granted in part and denied in part.[1]

### II.    FACTUAL BACKGROUND

On September 18, 1996, a Grand Jury returned an indictment against Defendant David

Paul Hammer.  (Doc. No. 1.)  Defendant was charged with killing Andrew Marti on April 13,

1996 at the Allenwood Federal Correctional Complex in White Deer, Pennsylvania, in violation

of 18 U.S.C. § 1111.  (Id.)  On April 9, 1997, the Government filed a notice of intent to seek the

death penalty.  (Doc. No. 93.)

---

[1] In deciding Defendant's Motion for Discovery Pursuant to Federal Rules of Criminal Procedure 12(b)(3)(E) and 16, the Court has considered the following: Defendant's Motion for Discovery Pursuant to Federal Rules of Criminal Procedure 12(b)(3)(E) and 16 and Memorandum of Law in support thereof (Doc. Nos. 1407, 1408), the Response of the United States to Defendant's Motion for Discovery and the Brief in support thereof (Doc. Nos. 1427, 1428), the arguments of the parties at the July 9, 2012 hearing (Doc. No. 1475) and Defendant's Letter Brief (Doc. No. 1478).

Trial commenced on June 2, 1998, following jury selection for both the guilt and penalty phases of the case, and continued until June 22, 1998. (Doc. Nos. 448, 489-503.) On June 22, 1998, after fourteen days of trial, Defendant Hammer withdrew his plea of not guilty and entered a plea of guilty, admitting that he killed Andrew Marti with premeditation and malice aforethought. (Doc. No. 504.) The late Judge Malcolm Muir presided over the trial and penalty phase hearing and continued as the judge assigned to the case until it was transferred on January 12, 2011 to this Court. (Doc. No. 1301.)

From June 30, 1998 to July 20, 1998, a hearing was held to determine whether the death penalty should be imposed, in accordance with 18 U.S.C. § 3593(b). (Doc. No. 553.) On July 21, 22 and 23, 1998, counsel presented closing arguments. (Doc. Nos. 565, 567.) On July 23, 1998, the jury began deliberating and on July 24, 1998 returned a verdict that the death penalty should be imposed. (Doc. No. 572.) On November 4, 1998, after denying motions for a new trial, Judge Muir imposed the death penalty. (Doc. No. 648.)

On November 12, 1998, Defendant Hammer filed a Notice of Appeal to the Third Circuit Court of Appeals. (Doc. No. 651.) Thereafter, the Third Circuit granted Defendant's motion for voluntary dismissal of his direct appeal, United States v. Hammer, 226 F.3d 229 (3d Cir. 2000), cert. denied, 532 U.S. 959 (2001), and also denied a petition seeking reinstatement of the appeal. See United States v. Hammer, 239 F.3d 302 (3d Cir. 2001), cert. denied, 534 U.S. 831 (2001).

On March 29, 2002, Defendant filed a habeas corpus petition pursuant to 28 U.S.C. § 2255. (Doc. No. 767.) Judge Muir held an evidentiary hearing on July 14, 2005 that continued intermittently until September 29, 2005. In an opinion dated December 27, 2005, Judge Muir denied Hammer's request to withdraw his guilty plea, but granted him a new penalty phase

hearing. United States v. Hammer, 404 F. Supp. 2d 676, 800-01 (M.D. Pa. 2005). This decision was essentially based on the Government's failure to disclose material information that Defendant was entitled to under Brady v. Maryland, 373 U.S. 83 (1963). Hammer, 404 F. Supp. 2d at 801. On July 9, 2009, Judge Muir ordered the Government to file a motion to have this case placed on a trial list for a new penalty phase hearing within sixty days. (Doc. No. 1245.)

After being awarded a new penalty phase hearing, Defendant Hammer submitted a request to the Department of Justice to reconsider its decision to seek the death penalty. A review was conducted. (Doc. Nos. 1289, 1293, 1297, 1300.) The review concluded on January 6, 2011 when Attorney General Eric Holder authorized the prosecution to seek the death penalty against Defendant Hammer. (Doc. No. 1300.) On January 7, 2011, the Government filed a motion requesting that the case be placed on the trial list for a new penalty phase hearing. (Id.) The outcome of the penalty phase hearing will result either in the imposition of the death penalty or a sentence of life imprisonment.

Defendant's attorneys then filed a series of discovery motions and supporting briefs. (Doc. Nos. 1326-1478.) On December 1 and 9, 2011, the Court disposed of all but one of Defendant's motions. (Doc. Nos. 1411-1419, 1421.) The remaining motion pending before this Court is Defendant's Motion for Discovery Pursuant to Federal Rules of Criminal Procedure 12(b)(3)(E) and 16 ("Motion for Discovery"), filed on November 4, 2011, along with an accompanying memorandum of law. (Doc. Nos. 1407, 1408.) On December 19, 2011, the Government filed a Response to Defendant's Motion for Discovery and a Brief in Opposition to Defendant's Motion for Discovery Pursuant to Federal Rules of Criminal Procedure 12(b)(3)(E) and 16. (Doc. Nos. 1427, 1428.) Thereafter, the parties attempted to resolve the discovery

requests on their own.

On July 9, 2012, a hearing was held on the discovery requests which the parties could not agree upon.[2] During the hearing, the Court ruled on all but eleven of Defendant's requests. (Hr'g Tr. 9:7, 12:23, 13:11-12, 19:6-7, 24:25, 28:20-21, 30:8-9, 32:1-2, 49:24, 65:7, 68:7, 68:25, July 9, 2012.)[3] The remaining ones were taken under advisement. (Hr'g Tr. 39:8, 57:8, 65:7, 65:16, 70:8, July 9, 2012.) On July 16, 2012, Defendant submitted a Letter Brief to the Court in further support of the remaining discovery requests. (Doc. No. 1478.) This Opinion addresses Defendant's eleven remaining requests for discovery, which pertain to Defendant's future dangerousness.

## III.    DISCUSSION

### A.  Defendant's Discovery Requests

During the penalty phase of a capital murder case, the Government is permitted to present evidence of aggravating factors relevant to sentencing. See 18 U.S.C. § 3593(c). For example, the Government may present as an aggravating factor evidence that, if not executed, the defendant poses a risk of future danger to other inmates and prison staff. The defendant is then permitted to "present any information relevant to a mitigating factor." See id. Evidence that Defendant does not pose a future risk of dangerousness may be offered. Defendant's pending discovery requests relate to evidence sought to mitigate the aggravating factor of Defendant's

_____

[2] The July 9, 2012 hearing was held on the record in Chambers at the United States Courthouse in Philadelphia. Assistant United States Attorney Steven D. Mellin and counsel for Defendant, James J. McHugh, were present in Chambers for the hearing. Defendant's co-counsel, Ronald C. Travis, participated by telephone.

[3] During the hearing, counsel informed the Court that most of the discovery requests had already been satisfied. (Hr'g Tr. 5:5, 36:15-16, July 9, 2012.)

potential threat to staff and inmates in the future if he does not receive the death penalty.

According to Defendant, in order to rebut the Government's allegation of future dangerousness, it is common for the defense to present expert testimony about the Bureau of Prison's ("BOP's") ability to confine an inmate and eliminate the potential of future danger. (Doc. No. 1478 at 2.) Defendant contends prosecutors challenge such defense experts by cross-examining them about other incidents of violence and/or murder by incarcerated individuals in high security prison units. (Id. at 2-3.) Defendant produced eight different trial transcripts that show the Government utilizes this strategy. (Doc. No. 1478, Exs. 3-5.)

Defendant asserts that in using this tactic, the Government frequently questions defense experts about three separate prison murders. First, in the early 1980's, two federal inmates each killed a correctional officer at the United States Penitentiary in Marion, Illinois. (Id. Ex. 3.) Second, in 1998, two Aryan Brotherhood leaders ordered their members to go to war with another prison gang, resulting in the killing of two inmates at the United States Penitentiary at Lewisburg, Pennsylvania. (Id. Ex. 4.) Finally, in 2005, two murders occurred at the Administrative Maximum Facility in Florence, Colorado. (Id. Ex. 5.) Defendant anticipates that the Government is likely to engage in a similar line of questioning of his expert. (Id. at 5.) Accordingly, Defendant seeks to examine evidence from the BOP that may help him counter such cross-examination. (Id.)

To aid him in this regard, Defendant requests certain information or statistical data from the Government. First, he seeks information about inmates released from 2005 to the present in the following requests:

49.    The defense requests the number of inmates that have been released from

ADX[4] each year from 2005 to present, and how long each of those inmates had been detained and/or incarcerated at ADX Florence at time of the inmates release.[5]

50. The defense requests the number of inmates released from ADX Florence since 2005 who have since returned to the custody of ADX Florence.

61. List the number of inmates that have been released from the H-Unit[6] each year since 2005.

67. List the number of inmates that have been released from the B-Unit[7] each year since 2005.

(Doc. No. 1407 ¶¶ 49, 50, 61, 67.) Second, Defendant seeks information related to the number of

homicides, "incidents" and "acts of serious physical violence" committed by inmates within the

prison system in the following requests:

32. The defense requests for each year from 1990 to date, a list of the homicides of inmates and staff that have occurred in the BOP with the date of occurrence, institution where perpetrated, method of homicide, victim name and defendant name. (Note: Names may be redacted if necessary for the protection of BOP security interests.)

33. The defense requests the number of individuals that are currently in BOP custody that have committed murders while in a county, state or federal prison. Also provide the number of inmates incarcerated in the BOP serving life sentences for murder, their age, where they are housed and security level of the facility.

---

[4] "ADX" is the Administrative Maximum Facility in Florence, Colorado." (Hr'g Tr. 41:19-21.)

[5] The Court assumes that this request concerns inmates that have been released from ADX Florence, the most secure federal correctional institution in the U.S. Bureau of Prisons, to a facility with a lower security ranking.

[6] The "H-unit" is "the special security unit within ADX." (Hr'g Tr. 64:21-25.)

[7] The "B-Unit" is the control unit in which inmates remain in extended daily confinement. (Hr'g Tr. 65:11-16.)

-6-

34.    The defense requests a list of all cases since 1996 where the government argued the defendant would pose a future danger during the sentencing phase of a capital proceeding where thereafter the inmate did in fact commit an act of serious physical violence after the sentencing proceeding. For each such incident please provide the date, time and place of the conduct and a description of the conduct engaged in and the name of the individual that engaged in the violent conduct. For any federal defendant tried for first degree murder and found to be a future danger by the jury please provide a list of acts of non-serious physical violence engaged in by the defendant since the finding of future dangerousness. With respect to each such incident please state the date of the conduct, what the conduct consisted of, the identification of the individual who engaged in the conduct and the facility where the individual was housed at the time of the conduct.

35.    The defense requests a list of all incident reports for inmates in the SCU[8] at USP-Terre Haute for the past five years. Names are not necessary only the number of reports and what the incidents involved. Also provide the average inmate population of the SCU broken down monthly over the past five years.

51.    For each inmate released from the ADX since 2005 please identify any acts of serious physical violence engaged in by any of the released inmates. With respect to each such incident, please identify when the act occurred, the facility at which the act occurred, the nature of the act and the identify [sic] of the inmate who engaged in the conduct.

66.    The defense requests the incident reports received each year for inmates designated to the B-Unit at ADX Florence.

77.    The defense requests the incident reports for all Serious Assaults (Prohibited Act 101) that have occurred at ADX Florence from 2005 to present, as well as the housing designation records indicating the unit where the offending inmate was housed when the assault occurred.

(Id. ¶¶ 32, 33, 34, 35, 51, 66, 77.) Defendant argues that these requests are material to his defense at sentencing and the Government is required to disclose them under Brady v. Maryland, 373 U.S. 83 (1963) and Federal Rule of Criminal Procedure 16.

---

[8] "SCU" is an acronym for Security Confinement Unit and "USP" is an acronym for United States Penitentiary. (Hr'g Tr. 42:9-16.)

### B. Brady and Federal Rule of Criminal Procedure 16(a)(1)(E)(I)

Defendant argues that Brady v. Maryland, 373 U.S. 83 (1963) requires the disclosure of evidence relating to future dangerousness.  In Brady, the Supreme Court held that the Due Process Clause requires the Government to disclose evidence "favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment."  Id. at 87.  Favorable evidence is only material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).  Brady requests, however, "cannot be used as discovery devices. . . . [because] [t]here is no general constitutional right to discovery in a criminal case, and Brady did not create one."  United States v. Caro, 597 F.3d 608, 619 (4th Cir. 2010) (internal citation and quotations omitted).

Federal Rule of Criminal Procedure 16 is broader in scope than Brady.  See Caro, 597 F.3d at 620 (citing United States v. Baker, 453 F.3d 419, 424 (7th Cir. 2006) ("Rule 16 . . . is broader than Brady.")); United States v. Conder, 423 F.2d 904, 911 (6th Cir. 1970) ("We are . . . of the view that the disclosure required by Rule 16 is much broader than that required by the due process standards of Brady.").  Rule 16 establishes what discovery a defendant is entitled to, stating, in pertinent part, as follows:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense . . .

Fed. R. Crim. P. 16(a)(1)(E)(i).  A court in this District has defined materiality to the preparation of the defense within the meaning of Rule 16(a)(1)(E)(I) as:

> more than that the evidence in question bears some abstract logical relationship to the issues in the case. There must be some indication that the pretrial disclosure of the disputed evidence would . . . enable the defendant significantly to alter the quantum of proof in his favor.

United States v. Young, No. 05-56, 2007 U.S. Dist. LEXIS 16495, at *5 (E.D. Pa. Mar. 7, 2007) (internal quotations and citations omitted); see also United States v. RMI Co., 599 F.2d 1183, 1187 (3d Cir. 1979).

### C. Application of Brady and Rule 16 to Discovery Requests

The Government argues that the Court should not grant in this death penalty case the discovery requested above by the Defendant because it is not material or even relevant to the issue of future dangerousness, citing various cases in support of their position.  See, e.g., United States v. Caro, 597 F.3d 608, 621 (4th Cir. 2010) (affirming the district court's denial of defendant's discovery request pursuant to Rule 16 on the ground that the defendant "presented no facts whatsoever indicating that the information would have actually helped prove his defense"); United States v. Lujan, No. 2:05-CR-00924 at 5 (D. N.M. Sept. 7, 2011) ("Defendant has presented nothing to indicate that the statistical evidence would significantly alter the quantum of proof in his favor"); United States v. Umana, No. 08-CR-134 at 5 (W.D. N.C. Apr. 4, 2010) (defendant did not make "a sufficient showing of materiality to require disclosure under [Rule 16]"); United States v. Troya, No. 06-80171 at 6 (S.D. Fla. Oct. 9, 2008) (defendant did not state "how, when, or why the information would be material").  In this case, however, Defendant has produced transcripts from other trials which serve as convincing evidence that the Government is

-9-

likely to question a defense expert about homicides committed by other inmates to establish the future dangerousness of Defendant. Any such attack on the defense expert may be countered by Defendant with evidence material to the issue of future dangerousness. Several discovery requests would permit Defendant to meet this challenge.

Thus, the Court is not persuaded that all of the discovery requests are immaterial in a death penalty case. The concept of lack of future dangerousness as mitigating evidence can only be interpreted as broad in scope. The parameters are hard to define before the death penalty hearing and, given the defense evidence of the government's approach to future dangerousness in other death penalty cases, there is a strong likelihood that it will be necessary for a defense expert on future dangerousness to counter the Government's hearing strategy. Although the Government posited at the hearing held on July 9, 2012 that it does not intend to take positions that would require the disclosure of such evidence, its position hinges on exactly what the defense expert testifies to and there is no way for this Court to predict at this juncture the contours of the different approaches that the Defendant and Government may take on future dangerousness. Suffice it to say, this Court has concerns about future prison security in ordering the Government to turn over certain requested information. Accordingly, this Court will review each request because, ultimately, it is the requirements of Brady and Rule 16 that controls. Brady and Rule 16, however, are not incompatible with the security concerns of the Government in this case.

Requests 49, 50, 61, and 67 do not seek the disclosure of the name of inmates or any identifying information. They request only data in terms of numbers of inmates and length of their detention. Information about the release of inmates from the ADX in Florence, Colorado

-10-

and/or the unit in which they were housed since 2005 to a lower ranking security institution may be of assistance to Defendant Hammer in countering the Government's claim of future dangerousness.

The information requested is material because Defendant has presented evidence to this Court that in other cases the Government has argued, during sentencing, that defendants who are initially housed in ADX, may be moved three years later to open population as part of a step down process. (Hr'g Tr. 51:15-52:21.) Information about the release of inmates could assist Defendant in mitigating the Government's claim that once moved to open population, there is an increased likelihood of future dangerousness. Moreover, data about the number of inmates released from ADX Florence and thereafter returned to that institution could lead to an inference that the Bureau of Prisons has a means to protect inmates and staff from the future dangerousness of Defendant.

Unlike the data sought in Requests 49, 51, 60 and 67, Defendant's requests for information about incidents and acts of serious violence seek information that is broad in scope and not material to future dangerousness. Other requests are narrowly tailored and material. In Request 32, Defendant requests the Government to disclose for each year from 1990 to date, a list of the homicides of inmates and staff that have occurred with the date of occurrence, institutions where perpetrated and method of homicide. Defendant acknowledges that the names of the defendants and victims may be redacted and the Court will require that the redaction be done. This information is material because any Government argument that Defendant will be a future danger to other inmates and staff may be mitigated by data showing that homicides in prison are statistically infrequent. Request 33 is similar to Request 32 except it seeks

-11-

information of those inmates currently in the custody of the Bureau of Prisons. This information is also material and should be made available to the defense.

Request 34 in some aspects is too broad. First, Defendant already has in his possession information requested in paragraph 34 and will obtain additional information through compliance by the Government with the requests in paragraphs 32 and 33. Moreover, if a defendant serving a life sentence committed a serious violent act toward another while in prison, such information would be material. This information should be provided for all cases since 1996, without the names of inmates or where they were housed when the incident took place because it could implicate security concerns. The critical factor here is that a defendant is serving a life sentence. It is not material what the Government argued in other cases or the finding of a jury on this issue. What is material is the violent acts of those inmates already serving life sentences and this information should be disclosed to Defendant.

Request 35 either does not request relevant evidence or, if read expansively, requests information that will be provided in the earlier requests discussed herein. Incident reports in general for other inmates are not a predictor of future dangerousness. In the information requested above, the Court is liberally construing materiality to include within the concept of future dangerousness incidents of serious physical conduct of those serving a life sentence. To extend the list to incident reports at USP -Terre Haute for the past five years for all inmates regardless of offenses or whether they are serving a life sentence would require the disclosure of evidence that is not material.

The Court again will interpret Request 51 as seeking information about acts of violence by inmates released since 2005 from ADX to a less secure institution. The Court will require the

-12-

Government to identify when the act occurred and the nature of the act only for inmates serving a life sentence.  Given this limitation, it appears that this information coincides with the information sought in earlier requests. The Court will not require the Government to provide the names of inmates and facilities where the acts occurred.  To the extent Request 51 seeks information on inmates not serving a life sentence, the information is not material.

Request 66 appears to seek information about inmates who have served or are serving a life sentence and housed in the B-Unit of ADX Florence.  It appears that the Court has already granted this request.  Again, this Court will limit the obligation of the Government to turning over information on those inmates who have served or are serving a life sentence housed in the B-Unit at ADX Florence.

Request 77 also requests information that the Court has already granted.  The Court reiterates that the Government's obligation is limited to providing information on those inmates who have served or are serving a life sentence.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the remaining discovery requests in Defendant's Motion for Discovery Pursuant to Federal Rules of Criminal Procedure 12(b)(3)(E) and 16.  (Doc. No. 1407.)  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| | : | NO. 96-239 |
| v. | : | |
| | : | |
| DAVID PAUL HAMMER, | : | |
| | : | |
| Defendant. | : | |

## ORDER

**AND NOW**, this 2nd day of November 2012, it is **ORDERED** that the remaining

requests in Defendant's Motion for Discovery Pursuant to Federal Rules of Criminal Procedure

12(b)(3)(E) and 16 (Doc. No. 1407), requests: 32, 33, 34, 35, 49, 50, 51, 61, 66, 67 and 77 will

be **GRANTED in part and DENIED in part** for the reasons stated in the Opinion

accompanying this Order.  Counsel for the Government and Defendant shall confer on the date

the information will be made available by the Government and if counsel are unable to agree this

Court will make a decision as to the date.

BY THE COURT:

JOEL H. SLOMSKY, J.