**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 4:96-CR-00239 |
| | : | |
| v. | : | |
| | : | (Honorable Joel H. Slomsky) |
| DAVID PAUL HAMMER | : | |
| | : | |
| | : | (Electronically Filed) |

**DEFENDANT'S REVISED PROPOSED PRELIMINARY INSTRUCTIONS**
**TO BE GIVEN WHEN PROSPECTIVE JURORS ASSEMBLE**
**PRIOR TO FILLING OUT JUROR QUESTIONNAIRE WITH DATES AND**
**TIMES INSERTED**

Ladies and gentlemen, I am Judge Joel H. Slomsky. We are all assembled here today to begin the courtroom component of the jury selection process in the case of *United States v. David Hammer*.

The government charged Mr. Hammer with the crime of first-degree murder and gave notice that if Mr. Hammer was convicted of first-degree murder; it intended to request that the jury impose a sentence of death. In a capital case in which the jury will decide between imposing a sentence of life imprisonment without the possibility of release or a sentence of death, the case normally involves two possible trials: first, a trial to determine if the accused is guilty or not guilty of first degree murder and, if the accused is found guilty of first degree murder, a

second sentencing trial before the same jury to determine sentence; either life imprisonment without the possibility of release or death.

Mr. Hammer was a prisoner incarcerated at the United States Penitentiary at Allenwood in 1996 when he committed first-degree murder. The question of his guilt is not in dispute, and he has admitted that he killed another human being with premeditation and malice, and that he committed the murder without any legal excuse or justification. He was not insane or acting under the heat of passion at the time of the murder. Therefore, the jurors impaneled in this case will be asked to determine his sentence. The only two alternative sentences available for a person guilty of first-degree murder are life imprisonment without the possibility of release and death.

The jury's decision is binding on the Court. I cannot change your decision.

As I have indicated, the sentencing choices are life imprisonment without the possibility of release or death. In order to eliminate any confusion or uncertainty, you must be aware and proceed in your decision-making with the knowledge that, in the federal system, there is no parole, and an individual sentenced to a term of life imprisonment without the possibility of release will spend the remainder of his or her life incarcerated in the Federal Bureau of Prisons.

## Sentencing Trial

A sentencing trial may look very similar to a normal trial because there is argument, evidence, and instructions of law, but there are a number of very significant differences that I wish to explain to you. The ultimate decision to impose a sentence of life imprisonment without the possibility of release or the death penalty upon Mr. Hammer is a judgment that each juror must make individually. In light of the responsibility each of the selected jurors will have, it is essential that you give me your undivided attention as I give you these preliminary instructions.

At the conclusion of a sentencing trial, the jury first determines whether the government proved beyond a reasonable doubt and unanimously to the twelve jurors that the person on trial acted with a particular mental intent in committing the homicide. A reasonable doubt is a fair doubt based on reason, logic, common sense, or experience. The fact that Mr. Hammer pled guilty to first-degree murder does not diminish or relieve the government of their burden of proving he acted with a particular mental intent when he killed Andrew Marti. If the government fails to prove a mental intent factor, the jury deliberations are over and the Court will impose the sentence of life imprisonment without the possibility of release.

If the government meets its burden to a unanimous jury regarding the mental intent factor, then the jury determines whether the government proved to all twelve

3

jurors the existence of at least one statutory aggravating factor. An "aggravating factor" also must be proved beyond a reasonable doubt. If the government proves the existence of the mental intent factor, but the jury does not unanimously find that the government has proven beyond a reasonable doubt the existence of at least one statutory aggravating factor, the deliberations are over and the Court will impose the sentence of life imprisonment without the possibility of release.

If the government proves the mental intent factor and at least one statutory aggravating factor, then the jury determines whether the government proved the existence of non-statutory (additional) aggravating factors and whether there exists any mitigating circumstances.

In order for any aggravating factor to be considered, all twelve jurors must agree that the factor has been proved beyond a reasonable doubt. The jury may not consider anything else as an aggravating factor.

Mitigating circumstances are circumstances about the crime, the defendant or anything else that would suggest, for any individual juror, that life imprisonment without the possibility of release rather than the death penalty is the appropriate penalty. Mitigating circumstances are not offered to justify or to excuse the crime. There is no requirement that there be any connection between a mitigating circumstance and the crime for which the individual was convicted. A mitigating

4

circumstance must be found by a preponderance of evidence, meaning more likely than not.

The consideration of mitigating circumstances is different from that of aggravating factors in several important respects. First, the standard of proof is lower than the standard of proof required for aggravating factors. Second, mitigating circumstances need not be unanimously found. Each juror is required to consider the mitigating circumstances for him or herself and any one juror, or more than one juror, may find a mitigating circumstance proven. Third, unlike aggravating factors, the jury should also consider and evaluate mitigating circumstances that jurors identify and that have not been presented to them by the court or counsel. Fourth and finally, a juror can consider and give weight to any mitigating circumstance that has been found by one or more jurors, whether or not that particular juror actually found the mitigating circumstance.

After considering the aggravating factors unanimously found proven beyond a reasonable doubt and the mitigating circumstances found proven by a preponderance of the evidence by one or more jurors, the jurors then assign the significance each feels is appropriate to the aggravating factors and mitigating circumstances. Jurors then determine whether the aggravating factors so sufficiently outweigh the mitigating circumstances to justify the sentence of death,

or, in the absence of any mitigating circumstance, whether the aggravating factors alone are sufficient to justify a sentence of death.

In carrying out this weighing and balancing process, the members of the jury are not mere fact-finders. Instead, jurors are called upon to make a unique, individualized judgment about the appropriateness of sentencing another human being to life imprisonment without the possibility of release or death. This is not a mechanical process. Neither is the decision determined by raw numbers. Members of the jury at the sentencing trial do not simply count factors. Instead, individual jurors consider such factors qualitatively, assessing the weight and value of each factor. A single mitigating circumstance may outweigh several aggravating factors; or, any one aggravating factor proved, if sufficiently serious, may outweigh several mitigating circumstances. In short, what is called for in weighing the various considerations is not arithmetic, but an individual juror's careful, considered, and mature judgment.

No juror is ever required to vote for a sentence of death, even after a determination that aggravating factors may outweigh mitigating factors. Each juror must come to his or her own individual judgment as to whether to impose the death penalty after consideration of all of the aggravating factors and all of the mitigating factors. The law also gives jurors the discretion to consider mercy in reaching their individual decisions regarding Mr. Hammer's sentence.

If one or more jurors find that a sentence of life imprisonment without the possibility of release is the appropriate sentence, the Court is required to impose a sentence of life imprisonment without the possibility of release. If, but only if, all twelve jurors unanimously find that the proven aggravating factors so sufficiently outweigh the mitigating circumstances and find that death is the appropriate sentence, the Court is required to impose a death sentence. After deliberating, there are three possible outcomes: A unanimous verdict for life imprisonment without release, a unanimous verdict for death, or no unanimous decision, which results in a sentence of life imprisonment without the possibility of release.

The law never requires any member of any jury, even in a case where the accused has entered a guilty plea to first-degree murder, to vote for a sentence of death. The decision on the appropriate punishment – life imprisonment without the possibility of release or death – is something that the law leaves up to each of the twelve individual jurors.

Citizens in our community hold a wide variety of views and have different life experiences that inform their feelings and views on different topics. Of course, this is also true of prospective jurors. We are genuinely interested in learning your views and feelings on a variety of issues and questions. There are no right or wrong answers to these questions.

Jury service is one of the most important duties a citizen can be called on to perform. You will be fulfilling your civic duty by responding completely and honestly during jury selection. Your participation and cooperation in this process is greatly appreciated.

Process and Schedule

At the conclusion of this orientation session, the panel members who have no hardship will be advised by the court staff of a date to return to the courthouse for individual questioning by the Court and by counsel for the parties. In order for each of you to determine whether you have a potential hardship based on issues of health, planned vacations, employment demands, or for any other reason, it is necessary for you to have a general understanding of how the trial in this case will proceed from this date forward.

In terms of timing, I cannot estimate with any precision just how long the jury selection process or the trial itself will last. After conferring with counsel, it is our best estimate that the jury selection will occur in March and probably continue through April. Trial will begin the first week of June and will last approximately two months. Individual questioning of possible jurors will begin on March 11, 2013. Other than today, before the jury selection process is finalized, I expect that you will only have to appear at the courthouse on two other dates, which will be given to you before you leave today. Depending on how matters have progressed

with the individuals who appear on the dates before you appear, and where within the group reporting you fall, it is possible that in addition to the reporting date, you may have to return the next scheduled court date in the event we do not reach you for individual questioning on the report date you are given. The court and counsel will make every effort to ensure your individual questioning is completed on the report date you are given. After you have been through the individual questioning process, you will be either excluded from any further obligation with respect to this case, or you will be advised that you are on a standby basis and will be notified of the next date you need to return to the courthouse. Once you receive your report date today and once you have concluded your individual questioning, you will be free to go about your business without regard to the continuing jury selection that will be going on in the case.

Once the trial actually starts in June, court will be in session four days a week, Monday through Thursday from approximately 9:00 a.m. to 4:30 p.m. As the trial progresses, there may be additional days when trial will not be held for reasons beyond the control of the court. The court will attempt to give you as much advance notice of these occasions when court will not be in session or will be in session. The court does observe all federal holidays so if any federal holidays fall within the timeframe of this trial, there will be no court on the federal holiday.

On dates when court is in session, the Court will endeavor to start hearing testimony at 9:00 a.m. each day. Because of matters in this case or other matters before the Court, there may be slight delays in when the testimony actually starts, but you should plan your schedule so that you report to the courthouse to allow the taking of testimony to start at 9:00 a.m. Throughout the day, the court will usually take a mid-morning break, a longer lunch break and a mid-afternoon break and will endeavor to conclude testimony by 4:30 p.m. each day. The mid-morning and mid-afternoon breaks will usually be 15 minutes, unless it is determined that a 15-minute break is insufficient to accommodate the jurors and the parties. The Court will be flexible with respect to the timing of the breaks and the length of the breaks, as necessary. So that you are able to schedule other aspects of your life, the Court will endeavor to conclude your services by 4:30 p.m. each day the court is in session. However, depending on the status of the testimony, we may occasionally work longer than the projected time of conclusion in order to complete a witness's testimony, but before doing so the Court will check with the jury members to make sure that staying beyond the projected conclusion time does not create a significant hardship for any of the jurors. There is no plan to sequester the jury, and this means you will be able to go about your normal business at the end of each trial day and of course on any days off and weekends.

<u>Instructions Not to Talk About, Seek Out Information About,</u>
<u>Otherwise Learn Any Information About the Case</u>

There has been some media attention with respect to this case. Since all of you are now potential jurors in this case, I am hereby ordering that, until you know whether or not you are going to be on the jury in this case, you not read, listen to, or view anything about this case, whether it is by newspaper, radio, television or the internet. Do not conduct any research – including internet research -- on me, the attorneys, Mr. Hammer, or this case. Additionally, do not discuss this case with anyone, and that includes other prospective jurors here today, and if anyone approaches you to discuss the case, you must report that contact to the Court. You may, of course, tell your employer and family members that you are involved in jury-selection, but you are ordered not to view or read anything about this case in any form of media or the internet, or to discuss the particulars of the case with anyone, including your employer and family members. If at any time outside the courtroom you unintentionally or inadvertently overhear or view any information about Mr. Hammer or this case, you have a legal obligation to immediately notify the Court.

During the course of the trial, while arriving at the courthouse or leaving the courthouse or during breaks, there may be occasions when you find yourself in the same physical area as one of the attorneys or even one of the witnesses. If that situation arises, you should not engage in any conversations with the lawyer or the

witness. As a final matter, I am going to have the participants in the trial introduce themselves to you. You should pay attention to the identity of these individuals, because at a later point in time you will be asked whether you know any of the individuals involved in the case, or are related to any of them by blood or marriage. All of the defense attorneys you are about to meet have been appointed by the court to serve as counsel in this matter and will be compensated for their services by the court.

Introductions of Parties and Defendant

Will counsel for the government please rise and introduce themselves as well as any others seated at counsel table?

Will defense counsel please rise and introduce themselves as well as the client?

This completes my preliminary remarks. You will now be provided with multi-page questionnaires for you to complete and return to the courtroom personnel. When you have completed filling out the questionnaire, the questionnaire should be turned in to the courtroom personnel who will provide you with information concerning when you should next return. If you believe you have a hardship, based upon employment, preplanned vacations, medical factors, or for any other reason, you should bring that to the attention to the courtroom personnel when turning in your completed questionnaire. If you have no hardship request,

once you receive a date to return, you are free to leave and we will next see you on your scheduled return date.  If you indicate to the court personnel that you believe you have a hardship, you should remain, and the Court will address with you and counsel your hardship request.

I again remind you that in filling out the jury questionnaires there are no right or wrong answers, only honest answers.

Respectfully submitted,

/s/ Ronald C. Travis, Esquire
Ronald C. Travis, Esquire
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
(570) 323-8711 (telephone)
(570) 323-4192 (facsimile)
rtravis@riederstravis.com

/s/ Anne Saunders, Esquire
Anne Saunders, Esquire
Assistant Federal Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Ste. 306
Harrisburg, PA  17101
(717) 782-3843 (telephone)
(717) 782-3966 (facsimile)
Anne_Saunders@fd.org

/s/ James McHugh, Esquire
James McHugh, Esquire
James Moreno, Esquire
Federal Community Defender
Eastern District of Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA  19106
(215) 928-1100 (telephone)
(215) 928-0826 (facsimile)
James_McHugh@fd.org
James_Moreno@fd.org

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA   :
                    :  NO. 4:96-CR-00239
                    :
        v.             :
                    :  (Judge Slomsky)
DAVID PAUL HAMMER       :
                    :
    Defendant         :  **ELECTRONICALLY FILED**

## CERTIFICATE OF SERVICE

AND NOW, comes Ronald C. Travis, Esquire, attorney for Defendant Hammer, and certifies that a copy of the foregoing Defendant's Revised Proposed Preliminary Instructions to be Given When Prospective Jurors Assemble Prior to Filling Out Questionnaire with Dates and Times Inserted has been served upon all involved AUSA's, via electronic filing, this 29th day of November, 2012.

              RIEDERS, TRAVIS, HUMPHREY, HARRIS,
                  WATERS & WAFFENSCHMIDT

              /s/ Ronald C. Travis, Esquire
              Ronald C. Travis, Esquire
              Attorney for Defendant
              PA ID#: 08819
              161 West Third Street
              PO Box 215
              Williamsport, PA  17703-0215
              (570) 323-8711 (telephone)
              (570) 323-4192 (facsimile)
              rtravis@riederstravis.com