**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
| | : | |
| v. | : | Honorable Joel H. Slomsky |
| | : | |
| DAVID HAMMER, | : | Capital Case |
| | : | |
| Defendant | : | |
| _____ | : | _____ |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO PRECLUDE THE ADMISSION OF IRRELEVANT AND CONSTITUTIONALLY IMPROPER EVIDENCE UNDER THE GUISE OF FUTURE DANGEROUSNESS**

Defendant, David Hammer, through counsel submits his Brief in Support of Defendant's Motion in Limine to Preclude the Government from Presenting Irrelevant and Constitutionally Improper Evidence Under the Guise of Future Dangerousness and, in support thereof, states the following:

The government's Informational Outline (hereinafter "IO") indicates its intent to admit a great deal of irrelevant and constitutionally impermissible evidence purporting to support the future dangerousness non-statutory aggravating factor. For the reasons described below, this evidence must be precluded.

**A.    Introduction.**

In order to justify the admission of evidence in a capital sentencing hearing, the

government must demonstrate a number of threshold requirements. Evidence purporting to support non-statutory aggravators must be "*particularly* relevant to the sentencing decision,' not merely relevant, in some generalized sense, to whether defendant might be considered a bad person." United States v. Gilbert, 120 F. Supp. 2d 147, 150-51 (D. Mass. 2000) (*citing* Gregg v. Georgia, 428 U.S. 153, 192 (1976)). See also United States v. Davis, 912 F. Supp. 938, 943 (E.D. La. 1996); United States v. Fell, 372 F. Supp. 2d 753, 763 (D. Vermont 2005); United States v. Concepcion Sablon, 555 F. Supp. 2d 1205, 1214 (D. Co. 2007); United States v. Stitt, 760 F. Supp. 2d 570, 583 (E.D. Va. 2010).

In addition, the proffered evidence must meet the heightened reliability standards required in capital cases. See Ford v. Wainwright, 477 U.S. 399, 411 (1986); Woodson v. North Carolina, 428 U.S. 280, 305 (1976). Because of the exceptional and irrevocable nature of the death penalty, "extraordinary measures" are required by the Eighth and Fourteenth Amendments to ensure the reliability in capital proceedings. Eddings v. Oklahoma, 455 U.S. 104, 118 (1982) (O'Connor, J., concurring). See also Beck v. Alabama, 447 U.S. 625, 637-38 (1980); Lockett v. Ohio, 438 U.S. 586, 604 (1978); and Gardner v. Florida, 430 U.S. 349, 357-58 (1977). Accordingly, "some information that might be admitted in a normal sentencing hearing will be insufficiently reliable for the jury to use in considering whether a defendant should be put to death." Gilbert, 120 F. Supp. 2d at 151.

Nor may the government rely on an unconstitutionally vague aggravating factor in order to meet the Fifth, Eighth and Fourteenth Amendmenets. Tuilaepa v. California, 512 U.S. 967, 972-75 (1994); Jurek v. Texas, 428 U.S. 262, 279 (1976). Aggravation must genuinely narrow the class of defendants eligible for death. Arave v. Creech, 507 U.S. 463, 474 (1993); Godfrey v. Georgia, 446 U.S. 420, 428 (1980).

Even if the government's proffered evidence meets the heightened relevance and reliability requirements, it is still inadmissible where the probative value "is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). "The balance of probative value and unfair prejudice must be weighed more carefully in a death penalty case than in normal cases." Gilbert, 120 F. Supp. 2d at 151.

In addition, where, as here, the jury's only sentencing choices are life without the possibility of parole or death, the government's future dangerousness evidence must be limited to evidence "relating to Defendant's future dangerousness in the context of life imprisonment." United States v. Rodriguez, 2006 WL 487117 at *5 (D.N.D. 2006); see also, Gilbert, 120 F. Supp. 2d at 154 (noting that the "prosecution concedes that the jury must evaluate defendant's 'future dangerousness' in the context of life in a prison setting" and rejecting certain evidence because it "lack[ed] any substantial relevance to defendant's dangerousness in a prison setting"); United States v. Llera Plaza, 179 F. Supp. 2d 464 (E.D. Pa. 2001) ("Lower courts have taken the

3

Supreme Court's discussion in [Simmons v. South Carolina, 512 U.S. 154 (1992)] to mean that, in the FDPA context government arguments regarding 'future dangerousness' should be limited to the dangers posed by the defendants while serving a life sentence in prison"); United States v. Hargrove, 2005 WL 2122310 *6 (D.Kan. 2005) ("evidence in support of defendant's future dangerousness should be limited to evidence indicative of how he might act in prison"); United States v. Duncan, 2008 WL 711603 *11 (D. Idaho 2008) (limiting the prosecution's evidence to "the context of life imprisonment").

Moreover, duplicative aggravating factors have "a tendency to skew the weighing process and create[] the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally." United States v. McCullah, 76 F. 3d 1087, 1111 (10th Cir. 1996). See also United States v. Bin Laden, 126 F. Supp. 2d 290, 299 (S.D.N.Y. 2001) ("an aggravating factor that is necessarily and wholly subsumed by a different aggravator . . . is invalid *per se*"); United States v. Williams, 2004 WL 2980027 at *16 (S.D.N.Y. 2004) ("an aggravating factor must not be duplicative of or 'necessarily subsumed' by another aggravating factor") (*citing* Bin Laden, 126 F. Supp. 2d at 298).

Finally, clearly established Sixth Amendment law precludes the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for

cross-examination."   Crawford v. Washington, 541 U.S. 36, 53-54 (2004). "Testimonial statements" are those which have a "primary purpose" of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." Davis v. Washington, 547 U.S. 813, 822 (2006).

As Ring v. Arizona, 536 U.S. 584 (2002);  Apprendi v. New Jersey, 530 U.S. 466 (2000);  United States v. Booker, 543 U.S. 220 (2005);  and Blakely v. Washington, 542 U.S. 296 (2004), all stand for the proposition "that the existence of all the aggravating factors [statutory and non-statutory] are constitutionally significant facts that should be found by a jury," the Confrontation Clause applies to both the eligibility and selection phases of the penalty hearing. Concepcion Sablan, 555 F. Supp. 2d 1205, 1220 (D. Colo. 2007). See also id. 555 F. Supp. 2d at 1228 (barring testimonial evidence on the basis that it violated the Confrontation Clause); United States v. Mills, 446 F. Supp. 2d 1115, 1136 (C.D. Cal. 2006) (barring admission of portions of presentence report that included descriptions of a robbery offense that relied on "investigative reports" of that robbery); id. at 1137 (precluding the admission of various Institution Discipline Committee reports deemed testimonial).  As described below, the proffered evidence must be excluded.

**B.     The Admission of Any Evidence Regarding, or Reference to, Mr. Hammer's 1200 Year Sentence is Barred.**

In the IO, the government proffers the admission of evidence regarding Mr.

Hammer's 1200 year sentence. Doc. 1489 at 4.[1]  During the initial sentencing proceedings, the Court barred the government from referencing the sentence. See NT 7/1/98 at 71.  This evidence is barred under principles of the law of the case and collateral estoppel and its admission violates Mr. Hammer's Fifth, Eighth and Fourteenth Amendment rights.  See Ashe v. Swenson, 397 U.S. 436, 443 (1970) (collateral estoppel); Smalis v. Pennsylvania, 476 U.S. 140, 144 (1986) (double jeopardy); Hamilton v. Leavy, 322 F.3d 776, 786-87 (3d Cir. 2003) (law of the case).

**C.    Aggravation Evidence Regarding Prior Offenses and Conduct in Oklahoma is Constitutionally Prohibited and Violates the FDPA.**

In its IO, the government describes, in very general terms, various prior offenses from Oklahoma it intends to admit in support of the future dangerousness aggravating factor:

> In 1981, the defendant escaped from a medium security facility in Oklahoma.  In 1982, he attempted to escape by crawling through a fence.  In 1983, he escaped and in 1986, he held a correctional officer hostage.  In 1989, he informed the Warden that he had a person outside the prison plant two bombs in the Oklahoma City Courthouse and the State Capitol.  In 1993, the defendant took a prison physician hostage.

Doc. 1489 at 5.  For a number of reasons, this evidence must be excluded.

---

[1]It should be noted that at the time of Mr. Marti's death, Mr. Hammer was actually serving a 5 year sentence.

> 1. *The admission of evidence of offenses and conduct that occurred between twenty and thirty years ago violates the Fifth, Eighth and Fourteenth Amendments and the FDPA.*

Each of these incidents occurred between twenty and thirty-two years ago. Offenses involving alleged conduct that occurred decades ago are hardly "particularly relevant" to the question of whether or not Mr. Hammer will be a future danger if sentenced to life imprisonment without the possibility of parole. Nor has the government demonstrated that the evidence it intends to present in support of these offenses meets the heightened reliability requirements of the Fifth, Eighth and Fourteenth Amendments and, in light of the age of these offenses, there is little likelihood that any testimony would meet these standards. Moreover, in light of the age of the offenses, the inherent unreliability of any evidence supporting these offenses after twenty to thirty years have passed, the minimal probative value of the evidence is far outweighed by the danger of prejudice, confusing the issues and misleading the jury.

As these offenses are "too remote in time to be sufficiently relevant and reliable." Concepcion Sablan, 555 F. Supp. 2d at 1224, the admission of this evidence violates the Fifth, Eighth and Fourteenth Amendments and the FDPA and must be excluded. See also Gilbert, 120 F. Supp. 2d at 153 (testimony regarding incident that occurred 13 years prior to the sentencing hearing "not reliable enough to be used at a capital sentencing hearing"); United States v. Rudy Sablon, 2008 WL

7

700172 at *4 (D. Colo. 2008) (incident that occurred 21 years prior to the sentencing proceedings excluded).

> 2.  *Evidence of incidents that culminated in an acquittal and/or a dismissal is precluded.*

In addition, on November 12, 1986, Mr. Hammer was acquitted of the 1986 incident alleging he held a correctional officer hostage. See Exhibit   (Bill of Information and Court Minute November 14, 1986, State v. Hammer, No. F-86-205 (recording November 12, 1986 verdict of not guilty)).  As the circumstances relied on by the government are the very same circumstances upon which the jury found Mr. Hammer not guilty in 1986, this evidence is barred under principles of collateral estoppel and double jeopardy and must be excluded. Delap v. Dugger, 890 F. 2d 285, 317 (11th Cir. 1989) United States v. Stitt, 760 F. Supp. 2d 570, 584 (E.D. Va. 2010) ("In the death penalty arena, prior acquitted conduct cannot be used as an aggravating factor in a capital case").  See also Ashe v. Swenson, 397 U.S. 436, 443 (1970); Smalis v. Pennsylvania, 476 U.S. 140, 144 (1986).

Similarly, because the 1986 jury has already rejected the evidence regarding this incident, the government's proffered evidence cannot meet the heightened reliability requirements. See Johnson v. Mississippi, 486 U.S. 578 (1988) (jury's consideration of a prior conviction subsequently deemed invalid and constitutionally improper); Delap, 890 F. 2d at 317 ("Eighth Amendment values – i.e., the need for

reliability and the need to reduce the risk that a death sentence will be imposed arbitrarily – are implicated when a death sentence is based in part on the commission of a felony of which the defendant has been acquitted").

Nor is evidence of allegations for which Mr. Hammer has been acquitted "particularly relevant" to the jury's sentencing determination. Instead, it is entirely irrelevant. Any probative value of an offense for which Mr. Hammer was acquitted – and there is none – is substantially outweighed by the danger of creating unfair prejudice, confusing the issues, and, most particularly, misleading the jury. For each of these reasons, admission of evidence surrounding the 1986 incident violates the Fifth, Eighth and Fourteenth Amendments and the FDPA.

Similarly, the 1983 escape charges were dismissed at the preliminary hearing on the basis of the State's failure to prosecute. See Exhibit  (State v. Hammer, No. CRF 83-36 (Order of Dismissal, November 27, 1984). The government has not provided any proffer of what evidence it intends to present to establish this incident. However, given the fact that the charges were dismissed in 1984 on the basis of the State's failure to prosecute as well as the "remoteness in time," any witness' testimony about this puported incident would not meet the heightened reliability requirements and its admission would result in substantial prejudice. See Concepcion Sablan, 555 F. Supp. 2d at 1224 (concluding that "[g]iven the remoteness in time" the burglary victim's testimony was "not sufficiently reliable and would be unduly

prejudicial").

Nor is evidence of allegations that were dismissed for the State's failure to prosecute "particularly relevant" to the jury's sentencing determination. Instead, it is entirely irrelevant. Any probative value of an offense that was ultimately dismissed – and there is none – is substantially outweighed by the danger of creating unfair prejudice, confusing the issues, and, most particularly, misleading the jury. For each of these reasons, admission of evidence surrounding the 1983 incident violates the Fifth, Eighth and Fourteenth Amendments and the FDPA.

> 3.    *The government's reliance on records or other hearsay to establish these incidents violates the Fifth, Sixth and Eighth Amendments.*

The government's IO fails to specify what evidence it intends to present in support of this aggravation. During the initial sentencing, the government called Agent Malocu and had him read from various prison records and other documents to establish various events. See NT 7/7/98 at 10-14. The government's reliance on this evidence violates the Confrontation Clause, the Fifth, Eighth and Fourteenth Amendments' heightened reliability requirements and the FDPA.

To the extent the government intends to admit evidence of these incidents in some other manner, Mr. Hammer requests that this Court direct the government to provide a more detailed proffer so that the Court can ensure that the evidence meets the threshold requirements for admission. Mr. Hammer reserves the right to file

10

supplemental objections once that proffer has been provided.

**D.     The Admission of Aggravation Evidence Surrounding the Circumstances of the Death of Mr. Marti Is Duplicative, Constitutionally Prohibited and Violates the FDPA.**

In its IO, the government avers the following in support of the future dangerousness aggravator:

> The government will rely upon evidence presented previously to prove the killing of Andrew Marti as direct evidence of defendant's future dangerousness.  At the time  the defendant killed Marti, he was serving a sentence of more than 1200 years.  While incarcerated, he lured his cell mate into engaging in a fake "hostage taking" so that he could kill Marti.  This prison killing by an inmate serving essentially several life sentences clearly shows his future danger in a prison setting.

Doc. 1489 at 4.  The government has also noticed its intent to pursue the substantial planning and premeditation statutory aggravating factor and, in support of that aggravation describes the government's intent to rely on the circumstances of the death of Mr. Marti, including the "hostage ruse," and the details of the murder of Mr. Marti in the prison setting.  Id. at 2-3.

As noted previously, any reference to, or evidence of, Mr. Hammer's sentence is prohibited.  See Section B.  Moreover, as evidence regarding the circumstances of the death of Mr. Marti is duplicative of, and "necessarily subsumed" by the substantial planning and premeditation statutory aggravator, it is constitutionally prohibited. Bin Laden, 126 F. Supp. 2d at 299 (S.D.N.Y. 2001) ("an aggravating factor that is necessarily and wholly subsumed by a different aggravator . . . is invalid

11

*per se*"); United States v. Williams, 2004 WL 2980027 at *16 (S.D.N.Y. 2004) ("an aggravating factor must not be duplicative of or 'necessarily subsumed' by another aggravating factor") (*citing* Bin Laden, 126 F. Supp. 2d at 298).

In addition, permitting the jury to consider invalid aggravation violates the constitutional heightened reliability requirements in capital cases. In light of the constitutional impact of presenting duplicative aggravation to the jurors, the probative value of admitting this evidence is substantially outweighed by the danger of creating unfair prejudice, confusing the issues, and, misleading the jury. For each of these reasons, admission of this evidence in support of the future dangerousness aggravator violates the Fifth, Eighth and Fourteenth Amendments and the FDPA.

**E.      The Admission of Aggravation Evidence Regarding Statements Purportedly Made By Mr. Hammer in Books, Other Media and/or Other Sources is Constitutionally Prohibited and Violates the FDPA.**

In its IO, the government proffers the following in support of the future dangerousness aggravator:

> Additionally, the United States will rely upon portions of the published books by the defendant in which he admits the lengths to which he will go to escape and seek revenge on individuals whom he believes have wronged him.

Doc. 1489 at 4. The government's proffer of non-specific references and unidentified statements in published books by Mr. Hammer purporting to threaten escape and revenge fails to meet the threshold constitutional requirements or the requirements

12

of the FDPA.  As the <u>Davis</u> Court noted:

> Threatening words and warped bravado, without affirmative acts, are simply too slippery to weigh as indicators of character; too attenuated to be relevant in deciding life or death; and whatever probative value they might have is far outweighed by the danger of unfair prejudice and confusion of the issues.

<u>Davis</u>, 912 F. Supp. at 945.  Nothing provided by the government demonstrates how this proffered evidence is particularly relevant to the sentencing decision as opposed to "generalized" evidence regarding "whether defendant might be considered a bad person."  <u>Gilbert</u>, 120 F. Supp. 2d at 150-51.  Nor has the government demonstrated how evidence of words that amount to little more than warped bravado and involve no affirmative acts meets the heightened reliability standards.

Moreover, even if there were some probative value to this evidence, and there is none in light of the absence of any escapes by Mr. Hammer since his commitment to the federal system,[2] it is far outweighed by the danger of creating unfair prejudice, confusing the issues, and, misleading the jury.  For each of these reasons, the admission of this evidence violates the Fifth, Eighth and Fourteenth Amendments and

---

[2]<u>See</u> <u>United States v. Duncan</u>, 2008 WL 711603 at * 11 (D.Idaho 2008) (noting that government's "argument that there is a possibility that the Defendant may escape from prison is illusory and too speculative to justify expanding the scope of this evidence"), *citing* <u>Rodriguez</u>, 2006 WL 487117 at *5.

the FDAP and must be excluded.[3]

### F.   The Admission of Evidence Regarding the 1983 Shooting Incident Is Constitutionally Prohibited and Violates the FDPA.

In the IO, the government proffered:

Moreover, the United States will rely on the testimony of the shooting victim and the defendant's statements to others, including a reporter, regarding his desire to kill the surviving victim whom he shot when he escaped from prison.  In a recorded interview, the defendant admitted that had he known the victim would survive the head wounds, defendant Hammer would "have reloaded the gun and shot him six more times."

Doc. 1489 at 4.  While the government does not specify, counsel presumes this proffer refers to the shooting incident involving Mr. Upton in 1983.  For a number of reasons the testimony regarding this 1983 shooting incident, and purported statements by Mr. Hammer regarding the incident are precluded by the Fifth, Eighth and Fourteenth Amendments and the FDPA.

First, testimony regarding the circumstances of a shooting incident that occurred outside the prison setting is not particularly relevant to Mr. Hammer's

---

[3]The government's failure to articulate with any degree of specificity what "portions of the published books by the defendant" it intends to present makes it difficult for Mr. Hammer to determine the full nature of that evidence; adequately prepare a defense; or adequately challenge the admission of the unspecified statements in violation of Mr. Hammer's Fifth, Sixth and Eighth Amendment rights.  Thus, to the extent the Court determines exclusion of any and all statements is premature, and it is not, Mr. Hammer would request that the Court order the government to provide a detailed proffer so that Mr. Hammer can fully address each "portion" the government intends to admit more specifically.

14

"future dangerousness in the context of life imprisonment," Rodriguez, 2006 WL 487117 at *5, and is precluded by the Fifth and Eighth Amendments and the FDPA. Second, as both the incident and the statements made by Mr. Hammer occurred thirty years ago, those circumstances and statements fail to meet the particularly relevant standard for admissibility, nor do they meet the heightened reliability requirements for capital cases. Concepcion Sablan, 555 F. Supp. 2d at 1224; Gilbert, 120 F. Supp. 2d at 153; Rudy Sablon, 2008 WL 700172 at *4. Any probative value is far outweighed by the danger of creating unfair prejudice, confusing the issues, and, most particularly, misleading the jury.

The government also intends to rely on this conviction in support of the 3592(c)(2) statutory aggravating factor (prior conviction for an offense involving the use or threatened use of a firearm). Accordingly, this aggravation evidence under the rubric of future dangerousness is duplicative and constitutionally prohibited and permitting the jury to consider this invalid aggravation violates the heightened reliability requirements for capital cases. In light of the constitutional impact of presenting duplicative aggravation to the jurors, the probative value of admitting this evidence is substantially outweighed by the danger of creating unfair prejudice, confusing the issues, and, misleading the jury. For each of these reasons, the admission of this evidence violates the Fifth, Eighth and Fourteenth Amendments and the FDPA.

**G.**     **Evidence Regarding Various Prison Misconducts**.

The IO also indicates that the government intends to admit evidence of a March 19, 1995 incident at USP-Lompoc and other prison misconducts by Mr. Hammer. The government does not indicate how it intends to present evidence of the USP-Lompoc incident, however during the initial sentencing proceeding, the government relied on witnesses reading from the prison disciplinary records.  Such hearsay testimony is constitutionally barred.  <u>Concepcion Sablan</u>, 555 F. Supp. 2d at 1228 (barring testimonial evidence on the basis that it violated the Confrontation Clause); <u>Mills</u>, 446 F. Supp. 2d at 1136(barring admission of portions of presentence report that included descriptions of a robbery offense that relied on "investigative reports" of that robbery); <u>id.</u> at 1137 (precluding the admission of various Institution Discipline Committee reports deemed testimonial).  Moreover, as with the Oklahoma incidents, this incident is too remote in time to meet the constitutional and statutory requirements.  <u>See</u> Section C.1.

Moreover, the government's IO fails to articulate what prison disciplinary incidents it intends to present, other than to say that Mr. Hammer:

> has not been a model inmate and has received several reports for assaulting officers and other inappropriate conduct.  He has assaulted BOP personnel and caused minor disruptions in the prison environment for his own benefit.

*                              *                              *

> Several BOP personnel . . . will testify that the defendant is a "master of manipulation" and that he has a quick temper and can become very violent extremely quickly.

Doc. 1489 at 5-6. Not all prison misconduct incidents meet the constitutional and statutory threshold requirements for admission. For example, the Concepcion Sablon Court struck an incident in which the defendant removed his restraints and threatened to assault prison staff during a transport to a community hospital. Concepcion Sablon, 555 F. Supp. 2d at 1236. Noting that the conduct "involv[ed] a mere threat of violence where no one was actually hurt" and that there was no "real risk that someone could be harmed" the incident was precluded. Id. Cf. United States v. Jackson, 549 F. 3d 963, 977, n.14 (5th Cir. 2008) (noting that prison write-up incidents involving "acts of mischief (e.g., falsely triggering fire sprinklers) or insubordination (e.g., refusing to follow instructions from prison officials)" were not "remotely relevant" to prisoner/victim's propensity for violence).

The government's failure to provide any specificity regarding which incidents it intends to present makes it difficult for Mr. Hammer to determine the full nature of that evidence; adequately prepare a defense; or adequately challenge the admission of the unspecified statements in violation of Mr. Hammer's Fifth, Sixth and Eighth Amendment rights. As the decision in Concepcion Sablon demonstrates, what the government may view as a proper prison misconduct incident for purposes of a capital sentencing determination does not necessarily meet the constitutional and

17

statutory requirements.  Accordingly, Mr. Hammer requests that this Court direct the government to specify which incidents it intends to admit and what evidence it intends to present in support of those incidents.

Moreover, allegations and incidents regarding "other inappropriate conduct" are clearly not particularly relevant to the jury's sentencing determination or the question of whether or not Mr. Hammer would be a future danger in the federal prison system.  That Mr. Hammer may or may not have followed various prison rules does not mean that he poses a future danger.  Evidence about unrelated misconducts holds no probative value and is substantially outweighed by the danger of unfair prejudice, confusing the issues, and, misleading the jury.  Nor can the admission of such highly irrelevant evidence meet the heightened reliability requirements in capital cases. For each of these reasons, the admission of this evidence violates the Fifth, Eighth and Fourteenth Amendments and the FDPA.

Nor is testimony by prison staff that in their view Mr. Hammer is a "master of manipulation" particularly relevant to the jury's sentencing determination or the question of whether or not Mr. Hammer would be a future danger in the federal prison system.  Such bad-character opinion testimony bears no relevance to the questions before the sentencing jury, holds no probative value whatsoever, and admission of such evidence would result in a substantial danger of unfair prejudice, confusing the issues, and, misleading the jury.  Nor does this "evidence" meet the heightened

18

reliability standards required in capital cases.  For each of these reasons, the admission of this evidence violates the Fifth, Eighth and Fourteenth Amendments and the FDPA.

At a minimum, Mr. Hammer is entitled to a specific proffer of the evidence and/or an evidentiary hearing so that this Court can assess the evidence and determine pretrial what does or does not comply with the constitutional and statutory requirements.

**H.    The Admission of Hearsay, Speculation and Improper Character/Opinion Evidence Arising from Mr. Hammer's Transfer to Federal Custody Violates the Fifth, Sixth, Eighth and Fourteenth Amendments and the FDPA**.

In the IO, the government indicates its intent to admit:

> evidence regarding the reasons behind defendant's transfer from Oklahoma custody to federal custody and the lengths to which the State of Oklahoma went to attempt to protect the safety of staff and others from the defendant.  Ultimately the State essentially gave up and sought the defendant's transfer to federal custody.

The government does not indicate by what means it intends to introduce these factors. To the extent the government intends to rely on documents and/or other hearsay, that evidence is precluded by the Sixth and Eighth Amendments. Concepcion Sablan, 555 F. Supp. 2d at 1228 (barring testimonial evidence on the basis that it violated the Confrontation Clause); Mills, 446 F. Supp. 2d at 1136-37.  Moreover, as with the Oklahoma incidents, these incidents are too remote in time to meet the constitutional

19

and statutory requirements.  See Section C.1.

Other than the fact that Mr. Hammer was transferred to the federal prison system at the request of Oklahoma Department of Corrections – which may be relevant as historical process – nothing in the IO demonstrates that the circumstances leading up to Mr. Hammer's transfer to the federal system meets the constitutional requirements for capital cases.  The questioned conduct occurred over twenty years ago in a state prison system.  That Mr. Hammer may have been a difficult prisoner in the Oklahoma state prison over twenty years ago has little, if any, relevance to whether or not he would pose a future danger should he be sentenced to life imprisonment.

Even if the remoteness in time does not exclude all incidents leading up to the transfer to the federal system in 1993, and it does, the government must also demonstrate that each incident it intends to admit is particularly relevant to the question of whether or not Mr. Hammer poses a future danger should he be sentenced to life imprisonment.  The government also must demonstrate that the nature of the evidence it intends to admit meets the heightened reliability standards under the Eighth Amendment.  Nothing in the IO establishes these requirements and absent a more detailed proffer, it is difficult for Mr. Hammer to address these issues; except to say that any reliance on hearsay, speculation or conjecture is barred by the

20

Confrontation Clause and the government's general description fails to meet the threshold constitutional and statutory requirements for admission. For each of these reasons, this evidence is prohibited by the Fifth, Sixth, Eighth and Fourteenth Amendments and the FDPA. At a minimum, Mr. Hammer is entitled to a more detailed proffer and/or a hearing.

WHEREFORE, Mr. Hammer requests the Court enter an Order precluding the government from presenting this evidence or, in the alternative, direct the government to provide a more specific proffer of the expected evidence it intends to admit and, following subsequent briefing, order an evidentiary hearing.

Respectfully submitted,


/S/  RONALD C. TRAVIS
Ronald C. Travis
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
570-323-8711 (telephone)
570-323-4192 (facsimile)
rtravis@riederstravis.com

/S/ ANNE SAUNDERS
Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
anne_saunders@fd.org

/S/ JAMES MORENO
James J. McHugh, Jr.
Federal Community Defender
Eastern District Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA 19106
215-928-1100 (telephone)
215-928-0826 (facsimile)
james_mchugh@fd.org
james_moreno@fd.org

## CERTIFICATE REGARDING LR 7.8(b)(2)

I, Anne L. Saunders, Esquire, hereby certify that this brief consists of 4841 words, as determined by the word processing system used to prepare the brief.


/S/ ANNE L. SAUNDERS
Anne L. Saunders

Dated: April 3, 2013

## CERTIFICATE OF SERVICE

I, Anne L. Saunders, Esquire, do hereby certify that on this date I served a copy of the foregoing by Electronic Case Filing, or by placing a copy in the United States mail, first class addressed to the following:

Steven Mellin, Esquire
United States Department of Justice
Criminal Division, Capital Case Unit
1331 F. Street, N.W.
Washington, D.C. 20530

John C. Gurganus, Jr. Esquire
United States Attorneys Office
Middle District of Pennsylvania
235 N. Washington Street, Suite 311
PO Box 309
Scranton, PA. 18501

s/ ANNE SAUNDERS
ANNE SAUNDERS, ESQUIRE

Dated: April 3, 2013