## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
| | : | |
| v. | : | Honorable Joel H. Slomsky |
| | : | |
| DAVID HAMMER, | : | Capital Case |
| | : | |
| Defendant | : | |
| _____ | :_____ | |

### BRIEF IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO PRECLUDE THE ADMISSION OF IRRELEVANT AND CONSTITUTIONALLY IMPROPER EVIDENCE UNDER THE GUISE OF VICTIM IMPACT EVIDENCE

Defendant, David Hammer, through counsel submits his Brief in Support of Defendant's Motion in Limine to Preclude the Admission of Irrelevant and Constitutionally Improper Evidence Under the Guise of Victim Impact Evidence and, in support thereof, states the following:

The government proffered the following testimony purporting to support the victim impact aggravator:

> In addition, the government will be presenting the testimony of the victim's father, Robert Marti, and his sister Pamela Marti. Both family members will present testimony about the victim's life and how his death affected their family. In particular, the family members will describe how the family took repeated steps to help Andrew Marti given the physical and mental problems he faced after surviving hundreds of epileptic seizures when he was a young child.

1

Doc. 1489 at 3-4.

For a number of reasons, this testimony is irrelevant, not proper victim impact evidence and its admission violates Mr. Hammer's Fifth, Sixth and Eighth Amendment rights.

**A.    The proffered testimony is not proper victim impact evidence under the Federal Death Penalty Act or <u>Payne v. Tennessee.</u>**

*1.    The Law*

In <u>Payne v. Tennessee</u>, 501 U.S. 808, 827 (1991), the Supreme Court held that the Eighth Amendment "erects no *per se* bar" to the admission of "evidence about the victim and about the impact of the murder on the victim's family."  In reaching this conclusion, the Court described the inequity between the defendant's ability to present unlimited relevant mitigation while "the State is barred from either offering 'a quick glimpse of the life' which a defendant 'chose to extinguish,'or demonstrating the loss to the victim's family and to society which has resulted from the defendant's homicide." <u>Id.</u> 501 U.S. at 822 (citations omitted).  The Court left it to the states to determine the manner in which victim impact evidence should be presented to a capital jury. <u>Id.</u> 501 U.S. at 827.

Determining that victim impact evidence is admissible under certain specific circumstances does not mean the 'floodgates have opened' for the government to present highly inflammatory, emotionally charged evidence regarding the decedent.

2

Indeed, the Payne Court recognized that due process prohibits evidence which "is so unduly prejudicial that it renders the trial fundamentally unfair." Payne, 501 U.S. at 825. As Justice O'Connor noted:

> We do not hold today that victim impact evidence must be admitted, or even that it should be admitted. We hold merely that if a State decides to permit consideration of this evidence, "the Eighth Amendment erects no *per se* bar." *Ante,* at 2609. *If, in a particular case, a witness' testimony or a prosecutor's remark so infects the sentencing proceeding as to render it fundamentally unfair, the defendant may seek appropriate relief under the Due Process Clause of the Fourteenth Amendment.*

Payne, 501 U.S. at 831 (O'Connor concurring).

When a defendant's life is at stake, courts must be "particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S. 153, 187 (1976). This heightened standard of reliability is "a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." Ford v. Wainwright, 477 U.S. 399, 411 (1986). See also Woodson v. North Carolina, 428 U.S. 280, 305 (1976) ("Because of that qualitative difference [between death and any other punishment], there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case"). Because of the exceptional and irrevocable nature of the death penalty, "extraordinary measures" are required by the Eighth and Fourteenth Amendments to ensure the reliability in capital proceedings. Eddings v. Oklahoma,

455 U.S. 104, 118 (1982) (O'Connor, J., concurring).  See also Beck v. Alabama, 447

U.S. 625, 637-38 (1980); Lockett v. Ohio, 438 U.S. 586, 604 (1978); and Gardner v.

Florida, 430 U.S. 349, 357-58 (1977).

Thus, the proposed evidence must be no more than a "quick glimpse" of the life

of the decedent, Payne 501 U.S. at 821, 830, and, in considering admissibility, there

must be exacting limits delineating the scope and nature of the testimony.

When it enacted the Federal Death Penalty Act (FDPA), Congress included a

provision specifically limiting victim impact evidence to:

> factors concerning the effect of the offense on the victim and the victim's
> family, and may include oral testimony, a victim impact statement that
> identifies the victim of the offense and the extent and scope of the injury
> and loss suffered by the victim and the victim's family, and any other
> relevant information.

18 U.S.C. 3593 (a).   Thus, under the FDPA, the only evidence relevant to the

sentencing jury's consideration is testimony regarding "the effect of the offense on the

victim and the victim's family" or "the extent and scope of the injury and loss suffered

by the victim and the victim's family."  These limitations are consistent with Payne's

determination that "[a] state may legitimately conclude that evidence about the victim

and about the impact of the murder on the victim's family is relevant to the jury's

decision as to whether or not the death penalty should be imposed." Payne, 501 U.S.

at 827.

2.      *The proffered evidence is inadmissible under* Payne *and the* FDPA.

The government's proffer far exceeds that which the FDPA provides constitutes victim impact evidence. Testimony "describ[ing]how the family took repeated steps to help Andrew Marti given the physical and mental problems he faced after surviving hundreds of epileptic seizures when he was a young child" is neither relevant nor material to the "effect of the offense on the victim and the victim's family" or "the extent and scope of the injury and loss suffered by the victim and the victim's family." While the testimony may be relevant to the impact of Mr. Marti's epilepsy on the family, it has no relevance to the effect of the murder on either the victim or the victim's family. As the government is precluded from admitting any evidence other than testimony about "the effect of the offense on the victim and the victim's family" or "the extent and scope of the injury and loss suffered by the victim and the victim's family," the admission of the proffered evidence violates the Eighth Amendment and the FDPA and must be precluded.

Similarly, any other testimony the government intends to present that is not relevant to either the effect of the murder on the victim and the victim's family, or the extent and scope of the injury and loss suffered by the victim and the victim's family is also precluded. For example, during the deposition of Mr. Robert Marti, in addition to eliciting evidence regarding the efforts Andrew Marti's parents made regarding his

5

health, the government also elicited a lengthy history of Mr. Marti's educational, military and work history.  See Exhibit A (Deposition of Robert Marti, April 6, 2012) at 4-7.  The government also elicited a history of the educational and employment history of Robert Marti's other children.  Id. at 8.  The government also elicited extensive evidence about the circumstances of Andrew Marti's birth.  Id. at 11-12. The government also elicited testimony about an unrelated incident in which Andrew Marti had been shot, (id. at 15), another unrelated incident in which Andrew Marti had been assaulted while at a completely different prison by a completely different person, (id. at 16), and the contents of a letter Robert Marti had written to the warden in an effort to ensure that Andrew Marti was protected and received adequate treatment (id. at 17-21).  Finally, the government elicited testimony from Robert Marti that he never received a letter from Mr. Hammer apologizing for the death of Andrew Marti.  Id. at 26.

Like the testimony regarding what efforts the family made to assist Andrew Marti, none of this evidence is even remotely relevant to "the effect of the offense on the victim and the victim's family" or "the extent and scope of the injury and loss suffered by the victim and the victim's family."  Accordingly, the admission of this testimony violates the FDPA and the Fifth, Eighth and Fourteenth Amendments and must be precluded.

**B.     Admission of the Proffered Testimony Violates the Constitutionally Required Individualized Capital Sentencing Determination.**

Since reinstatement of the death penalty, the Supreme Court has made clear that capital sentencing decisions must be based on individualized determinations. Eddings v. Oklahoma, 445 U.S. 104, 110 (1982) (to be constitutional, a system of capital punishment must be "at once consistent and principled but also humane and sensible to the uniqueness of the individual."); Woodson v. North Carolina, 428 U.S. 280, 304 (1976). The constitutionally required "individualized determination" pertains to the offender, not the victim. See, e.g., Kennedy v. Louisiana, 554 U.S. 407, 435-36 (2008). The Supreme Court in Kennedy noted it had historically "insisted, to ensure restraint and moderation in use of capital punishment, on judging the 'character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.'" Id., at 436 (emphasis added) (quoting Woodson, 428 U.S. at 304); see also Tuilaepa v. California, 512 U.S. 967, 972-73 (1994) ("[w]hat is important . . . is an individualized determination on the basis of the character of the individual and the circumstances of the crime," (quoting Zant v. Stephens, 462 U.S. 862, 879 (1983)); California v. Brown, 479 U.S. 538, 544 (1987) (O'Connor, J., concurring) ("the individualized assessment of the appropriateness of the death penalty is a moral inquiry into the culpability of the defendant."); Weaver v. Bowersox, 438 F.3d 832,

841 (8th Cir. 2006) ("States must ensure that 'capital sentencing decisions rest on [an] individualized inquiry,' under which the 'character and record of the individual offender and the circumstances of the particular offense' are considered.") (emphasis added) (quoting Romano v. Oklahoma, 512 U.S. 1, 17 (1994) (quoting McCleskey v. Kemp, 481 U.S. 279, 303 (1987)).

Neither Payne nor the FDPA provisions permitting the admission of victim impact testimony diminishes this fundamental requirement. Admission of evidence – like the testimony proffered by the government – that exceeds that which was contemplated under Payne and the FDPA and would result in the jury's consideration of evidence not relevant to any statutory or non-statutory aggravator would violate Mr. Hammer's right to an individualized sentencing determination and, as a consequence, render the sentencing proceeding fundamentally unfair in violation of the Fifth, Eighth and Fourteenth Amendments.

C.    **Admission of the Proffered Testimony Violates the Court's Ruling Precluding the Vulnerable Victim Aggravator.**

During the initial sentencing, the government noticed its intent to pursue the statutory aggravator that Mr. Marti was particularly vulnerable. After the evidentiary presentation, the Court found the government's evidence was insufficient and precluded its submission to the jury. United States v. Hammer, 25 F. Supp. 2d 518, 521, n.3 (D.C. Pa. 1998). As described above, testimony that "will describe how the

family took repeated steps to help Andrew Marti given the physical and mental problems," is not even remotely relevant to proper victim impact evidence under Payne or the FDPA. It does, however, bear a striking resemblance to the aggravating factor that has been precluded by the Court. The government cannot "back-door" that which it is precluded from admitting through the front-door. This evidence and testimony are barred under principles of the law of the case, collateral estoppel and constitutional double jeopardy and its admission violates Mr. Hammer's Fifth, Eighth and Fourteenth Amendment rights. See Ashe v. Swenson, 397 U.S. 436, 443 (1970) (collateral estoppel); Smalis v. Pennsylvania, 476 U.S. 140, 144 (1986) (double jeopardy); Hamilton v. Leavy, 322 F.3d 776, 786-87 (3d Cir. 2003) (law of the case).

**D.      Admission of the Proffered Testimony Violates 18 U.S.C. § 3593(c).**

Evidence is inadmissible under Section 3593(c) when its probative value is outweighed by the prejudicial impact. See 18 U.S.C. § 3593(c) ("information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury"). None of the proffered evidence would tend to prove any element of proper victim impact evidence under the FDPA or Payne. As a result, there is no probative value whatsoever and the prejudice of diverting the jurors' consideration from its constitutionally mandated individualized determination to irrelevant considerations of struggles the victim's family may have

suffered as a result of Mr. Marti's purported impairments is substantial.  As the proffered testimony is not contemplated by the statute and irrelevant to any of the factors deemed relevant under the FDPA and Payne, it is not relevant or admissible under the rules of evidence.

WHEREFORE, Mr. Hammer requests the Court enter an Order precluding the Government from presenting this evidence.

Respectfully submitted,


/S/  RONALD C. TRAVIS
Ronald C. Travis
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
570-323-8711 (telephone)
570-323-4192 (facsimile)
rtravis@riederstravis.com

/S/ JAMES MORENO
James J. McHugh, Jr.
Federal Community Defender
Eastern District Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA 19106
215-928-1100 (telephone)
215-928-0826 (facsimile)
james_mchugh@fd.org
james_moreno@fd.org


/S/ ANNE SAUNDERS
Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
anne_saunders@fd.org

**CERTIFICATE OF SERVICE**

I, Anne L. Saunders, Esquire, do hereby certify that on this date I served a copy of the foregoing by Electronic Case Filing, or by placing a copy in the United States mail, first class addressed to the following:

Steven Mellin, Esquire
United States Department of Justice
Criminal Division, Capital Case Unit
1331 F. Street, N.W.
Washington, D.C. 20530

John C. Gurganus, Jr. Esquire
United States Attorneys Office
Middle District of Pennsylvania
235 N. Washington Street, Suite 311
PO Box 309
Scranton, PA. 18501

S/ ANNE SAUNDERS
ANNE SAUNDERS, ESQUIRE

DATE: April 3, 2013