UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      : Criminal No. 4:96-CR-0239

                           :

         v.                       : (Judge Slomsky)

                           :

DAVID PAUL HAMMER          : **ELECTRONICALLY FILED**

GOVERNMENT'S CONSOLIDATED OPPOSITION TO DEFENDANT'S MOTIONS IN
LIMINE TO PRECLUDE THE ADMISSION OF IRRELEVANT AND
CONSTITUTIONALLY IMPROPER EVIDENCE UNDER THE GUISE OF VICTIM
IMPACT EVIDENCE, PRIOR CRIMINAL CONVICTIONS, AND FUTURE
DANGEROUSNESS AND DEFENDANT'S SECOND MOTION FOR
DISCOVERY (DOC. NO.'S 1524, 1526, 1528, AND 1530)

The United States submits this consolidated opposition to defendant's motions to

preclude the government from presenting evidence to establish the aggravating factors alleged in

this case and the defendant's further request for additional discovery. As the government has

already provided an enormous amount of discovery for this re-sentencing hearing, the

government has provided an informational outline addressing the defendant's concerns, and the

defendant has copies of the transcripts of the testimony of most, if not all, prospective witnesses,

the request for discovery should be denied summarily. Further, as the defendant seeks to

preclude the use of relevant, admissible evidence to prove the requisite aggravating factors, the

motions should be denied.

**A. Introduction**

This matter is before the Court for the re-sentencing of the defendant following his

conviction for the killing of his cell mate, Andrew Marti, in April 1996. The defendant pled

1

guilty to the offense and a jury originally sentenced him to death in 1998. In that proceeding, most, if not all, of the government's witnesses testified concerning the relevant aggravating factors. In 2005, the district court granted the defendant's Section 2255 request and ordered a new sentencing hearing. On October 1, 2012, in response to the Court's Order regarding Informational Outlines, the United States provided an informational outline and a list of possible government experts.

Relying on the government's informational outline, the defendant now seeks to exclude most, if not all, of the evidence identified in the outline, individually attacking each of the summaries of the topic areas covered by the outline. The defendant is essentially misusing the informational outline to require pretrial hearings on each aspect of the government's case or asking for a pretrial presentation of the entire government case. This misuse of the informational outline should not be permitted. The defendant is not entitled to a trial walk-through as a means of discovery or to preview the entirety of the government's evidence. *See United States v. Cooya*, 2011 WL 5878382 (M.D.Pa. Nov. 23, 2011) ("[d]efendants are not entitled to the Government's litigation playbook"; defendant's attempt to elicit the government's theory of the case is not the proper basis for an informational outline); *United States v. Solomon*, 513 F. Supp. 2d 528, 539 (W.D.Pa. 2007) (denying defendant's motion to require the government to provide factual basis to support aggravating factors and also denying defendant's request for a pretrial evidentiary hearing to rule on the sufficiency of the evidence); *United States v. Caro,* 461 F.Supp. 2d 459, 463 (W.D.Va. 2006) (denial of request for pretrial review of all victim impact evidence); *United States v. Taylor*, 316 F. Supp. 2d 730, 738 (N.D. Ind. 2004) (denying motion to strike notice of intent, noting that "determination as to whether the [aggravating] factor can be properly applied

to either defendant must await factual development at trial"); *United States v. Mayhew*, 380 F.

Supp. 2d 936, 943 (S.D. Ohio 2005) (same).  As the cases have clearly stated, the sentencing jury

should have more evidence, not less, to rely upon in order to reach the appropriate sentence in

this case.  *See generally Gregg v. Georgia*, 428 U.S. 153, 204 (1976) ("We think it desirable for

the jury to have as much information before it as possible when it makes the sentencing

decision."); *United States v. Fell,* 360 F.3d 135, 143 (2d Cir. 2004) ("*more* evidence, not less,

should be admitted on the presence or absence of aggravating and mitigating factors"); *Solomon*,

513 F.Supp. 2d at 527.

### B.  Legal framework

As an initial matter, the government must prove the existence of the necessary gateway

intent factor, or factors, as well as the existence of at least one statutory aggravating factor during

the "eligibility" phase.  Assuming the government satisfies that threshold, during the "selection"

phase, the government may present evidence of the non-statutory aggravating factors and the

defense may present any mitigating evidence.  Following that, the jury weighs the evidence of

aggravating factors and mitigating factors and renders its decision.  *See generally* 18 U.S.C. §

3591.

During the eligibility phase, the government is required to prove that the defendant

intended to kill Andrew Marti.  18 U.S.C. §§ 3591(a), 3593(a).  As part of the proof of this

gateway intent factor, the government will seek to introduce portions of the books written by the

defendant, within which, the defendant admits that he intentionally killed Marti.  This direct

evidence of his intent, his own admissions, is certainly relevant, admissible evidence.  18 U.S.C.

§ 3593(c).  Contrary to the defendant's claims, these admissions directly prove the necessary

intent factors in this case.  They are not simply "threatening words or bravado" as claimed by the defendant; the statements in his autobiographies are party admissions and are direct evidence of his intentions and desires.  The evidence is likewise not more prejudicial than probative.  Party admissions are highly probative of a defendant's motives and intentions.  As such, they are direct evidence of the gateway intent factors as well as evidence the jury may consider to determine the existence of the defendant's substantial planning and premeditation as well as future dangerousness.

### C.  Statutory Aggravating Factors

Regarding proof of the statutory aggravating factor of a previous conviction of violent felony involving a firearm, 18 U.S.C. § 3592(c)(2), the defendant objects to the testimony of Louis Keel, the former prosecutor, and the testimony of the shooting victim, Thomas Upton.  To the extent that the defense claims that this testimony is barred by the Confrontation Clause, the defendant already confronted the witnesses during the first trial.  He had an opportunity to cross examine the witness at that time and did, in fact, confront the witness.  Further, to the extent that the witness is called again to testify in this hearing, the defendant will have the ability to confront the witness again.  The evidence of the prior conviction is certainly relevant and the prosecutor can certainly testify that the defendant was convicted of the offense in question and the victim can testify about the circumstances of the offenses.  *See generally Crawford v. Washington*, 541 U.S. 36 (2004).

### D.  Non-statutory Aggravating Factors

While the government agrees with the defendant that hearsay evidence is not admissible during the eligibility phase, hearsay evidence is allowed during the presentation of evidence

regarding non-statutory aggravating factors during the selection phase.  18 U.S.C. § 3593(c ); *see United States v. Fell*, 360 F.3d 135, 144-45 (2d Cir. 2004), and *United States v. Higgs*, 353 F.3d 281, 329 (4th Cir. 2003); *United States v. Jordan*, 357 F. Supp. 2d 889 (E.D.Va. 2005).   Both Victim Impact evidence and Future Dangerousness evidence relate to non-statutory aggravating factors and, as such, the government may rely upon hearsay evidence to establish those factors. 18 U.S.C. § 3593(c).

The defendant cites to a district court opinion from Colorado for the proposition that the Confrontation Clause applies at both the eligibility and selection phases, *United States v. Sablan*, 555 F. Supp. 2d 1205, 1220 (D. Colo. 2007), while ignoring the weight of authority from numerous circuit courts and the FDPA allowing for the introduction of hearsay evidence during the selection phase.  *See United States v. Fields*, 483 F.3d 313 (5th Cir. 2007); *United States v. Brown*, 441 F.3d 1330 (11th Cir. 2006); *Fell*, 360 F.3d at 144; *Higgs* 353 F.3d at 329; *Jalowiec v. Bradshaw*, 2008 WL 312655 (N.D. Ohio 2008); *United States v. Johnson*, 378 F.Supp. 2d 1051 (N.D. Iowa 2005).

### 1.  Victim Impact Evidence

The defendant is asking the Court to essentially exclude all of the evidence of victim impact in this case, claiming it is irrelevant and unfairly prejudicial.  The opinions of the United States Supreme Court and various other courts as well as the expressed intent of Congress in 18 U.S.C. § 3593(a), clearly stand for the proposition that victim impact evidence is relevant and appropriate for the jury's consideration.  *See Payne v. Tennessee*, 501 U.S. 808 (1991).

In determining the appropriate sentence, the jury may consider "the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement

that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information."  18 U.S.C. § 3593(a).

In *Payne v. Tennessee*, 501 U.S. 808 (1991), the United States Supreme Court held that "victim impact evidence serves entirely legitimate purposes."  *Id*. at 825.  As the Tenth Circuit noted in *United States v. McVeigh*, 153 F.3d 1166, 1220-21 (10th Cir. 1998), "poignant and emotional" victim impact evidence does not violate the limits set forth in *Payne*.

In *United States v. O'Driscoll*, 2003 WL 1401819 (M.D.Pa 2003), Judge Muir reviewed the various forms of victim impact evidence introduced in *McVeigh* and denied the defendant's request to require victim impact evidence to be produced by videotape.  In *McVeigh*, the government presented live testimony from 38 witnesses (26 relatives of deceased victims, three injured survivors, one employee of the building, and eight rescue and medical workers).  The evidence included testimony relating to last contacts with victims, efforts to discover the fate of victims, victim histories, and the impact on the families.  All of this testimony was approved by the Tenth Circuit as relevant to "understanding the uniqueness of the life lost and the impact of the death on each victim's family."  *O'Driscoll*, 2003 WL 1401819 at 2.  As expressed by Judge Muir, "[v]ictim impact evidence cannot be divorced from all emotion.  Some emotion is 'part and parcel' of that type of evidence."  *Id*. at 3.

In *McVeigh*, the Tenth Circuit approved of the testimony regarding the history of the victims.  "Numerous witnesses . . . testified about the professional and personal histories of victims who perished in the bombing, including reflections on the admirable qualities of the deceased."  *McVeigh*, 153 F.3d at 1219.  Further, the court affirmed the introduction of the testimony regarding a little girl asking a police dog, "Mr. Police Dog, will you find my friends?"

As the Tenth Circuit noted, "if love and innocence are particular qualities of the affected children, then informing the jury of that fact is not improper." *Id.* at 1220.

*Payne* certainly allows the introduction of victim impact to permit the jury to understand the consequences of the crime committed. As Justice Souter noted in a concurring opinion in *Payne*, "[m]urder has foreseeable consequences. . . . Just as defendants know that they are not faceless human ciphers, they know that their victims are not valueless fungibles. . . . The fact that the defendant may not know the details of a victim's life and characteristics, or the exact identities and needs of those who may survive, should not in any way obscure the further facts that . . . harm to some groups of survivors is a consequence of a successful homicidal act . . . ." *Payne*, 501 U.S. at 838 (Souter, J., concurring).

The defendant now claims that evidence regarding the life of Andrew Marti and the struggles his family endured raising him and the love they showed in dealing with his problems is somehow irrelevant to the issue of victim impact. As the cases cited above illustrate, this evidence is admissible victim impact evidence.

Further, in a last ditch effort to exclude victim impact evidence, the defendant asserts that the evidence violates an individualized sentencing and is precluded because Judge Muir excluded the vulnerable victim aggravator. There is no basis in case law to support these arguments.

The courts are very clear that evidence of victim impact does not violate a defendant's individualized sentencing determination. As the United States Supreme Court stated in *Jones v. United States*, 527 U.S. 373 (1999), "[e]ven though the *concepts* of victim impact and victim vulnerability may well be relevant in every case, *evidence* of victim vulnerability and victim impact in a particular case is inherently individualized. And such evidence is surely relevant to

the selection phase decision, given that the sentencer should consider all of the circumstances of the crime in deciding whether to impose the death penalty." *Id*. at 401-02; *United States v. Willliams*, 2013 WL 1335599 (M.D.Pa. Mar. 29, 2013).

As Judge McVerry noted in *Solomon*, "the victim impact factor serves to characterize Defendant and individualize his sentence." *Solomon*, 513 F. Supp. 2d at 535; *United States v. Regan*, 228 F. Supp. 2d 742, 753 (E.D.Va. 2002). The victim impact evidence helps to inform the jury about the individual circumstances of the case and consequently the defendant's claim is baseless.[1]

### 2. Future Dangerousness

Regarding future dangerousness, the defendant objects to the evidence identified in the government's informational outline, claiming that the evidence is not relevant to the defendant's dangerousness in the context of life imprisonment, is too remote in time, or duplicative. As the evidence is directly relevant to the jury's consideration of the defendant's history and his potential future danger in a prison setting, the request should be denied.

First, regarding the length of time between some of the defendant's past criminal acts and today, the jury certainly has a right to consider all of the evidence of the defendant's past conduct to render the just decision based on a proper consideration of all relevant evidence. *See Williams v. New York*, 337 U.S. 241, 247 (1949) ("[t]he possession of the fullest information possible concerning the defendant's life characteristics" is essential for the selection of a proper sentence).

---

[1]The defendant argues that the exclusion of the "vulnerable victim" aggravator renders testimony about Andrew Marti irrelevant or unduly prejudicial. That is simply not the case and not relevant to a determination of what evidence is appropriate to prove victim impact. The exclusion of one aggravator does not restrict the victim's family from describing the extent of the harm caused by the defendant's conduct.

In fact, several federal courts have allowed conduct from decades earlier to be considered by a sentencing jury. *United States v. Pleau*, 2013 WL 1673109 (D.R.I. April 17, 2013) (argument that crimes that occurred 14 years prior to charged conduct were too remote was rejected in light of the fact that defendant was incarcerated for 13 of the 14 years); *United States v. Henderson*, 485 F. Supp. 2d 831, 869 (S.D. Ohio 2007).

The defendant claims that his prior escapes from incarceration during the 1980's and his criminal actions during the 1980s and 1990s are too remote in time for the jury's consideration of the appropriate punishment for his 1996 killing of Andrew Marti. In support for this proposition, the defendant ignores completely the cases cited above and instead places great reliance on the district court opinion in *United States v. Sablan,* 555 F. Supp. 2d 1205 (D. Colo. 2006). A close reading of this opinion does not provide a safe harbor for the defendant. Indeed, even in *Sablan*, the district court found that a 20-year old conviction (a 1985 armed robbery conviction) was not too remote in time for the jury's consideration. As the court stated, "[t]hese are violent crimes against persons that are highly probative to the issue of whether Defendant will be a future threat in prison to other inmates or prison officials. The crime shows that if given an opportunity, Defendant may commit a violent crime against another person in prison." *Id.* at 1226. Another robbery in 1996 that occurred approximately ten years prior to the court's decision was also ruled admissible to show future dangerousness. *Id*. at 1228-29.[2]

---

[2]To the extent that the *Sablan* court was troubled by the remote reporting of crimes in that case or the possibility of Confrontation Clause issues, those concerns do not arise in this case. The prior criminal acts were timely reported to the police and the defense has already been given a chance to confront the witnesses during the 1998 trial.

The defendant claims that the government is precluded from presenting evidence of the defendant's "inappropriate conduct" as the evidence is not relevant and not probative to whether he is a future danger. *Sablan*, the case repeatedly cited by the defense, stands directly for the contrary position. In *Sablan*, the court found that evidence of institutional violence or lack of conformity to the rules is probative of future dangerousness. *Id*. at 1230-1236. The *Sablan* court noted that "if given the opportunity Defendant poses a threat to correctional officers and/or staff. This is because he does not obey orders that are meant to ensure the safety of the staff, *i.e.*, remaining in restraints." *Id*. at 1231. Further, the court noted that Sablan's verbal assaults and throwing coffee on staff were also indicative of future dangerousness. *Id*. at 1232, 1235. The exact same logic applies in this case and the result should be the same.

Any failure to follow commands and assaultive or threatening conduct by the defendant should be admissible and relevant evidence that the jury may consider. Defendant claims that evidence that he was "a difficult prisoner in the Oklahoma state prison over twenty years ago has little, if any, relevance" to whether he poses a future danger. The government completely disagrees. This evidence when considered with all of the other evidence in this case including the killing of his own cell mate in 1996 shows that the defendant is and has been a future danger while incarcerated and the jury can certainly rely on this evidence to find that he will be a future danger to others.

To the extent the defendant is arguing that his recent conduct in prison renders his prior violent conduct irrelevant, the government disagrees with that argument. While the defendant may certainly argue that point to the jury, all of his conduct should be considered by the jury. As the Fifth Circuit noted in *United States v. Davis*, 609 F.3d 663, 675 (5th Cir. 2010), "evidence of

Davis's past dangerousness is not negated by non-violent conduct in prison during a time when he is 'on display'" while the appeal of his death sentence is pending."

Further, the defendant claims that acquitted conduct may not be considered by the jury in this case. In particular, the defendant notes that he was acquitted of a 1986 hostage taking of a correctional officer and escape charges from 1983 were dismissed based on a failure to prosecute. Upon review of the case law, the government will agree to not present evidence of any charge for which the defendant was acquitted. The government does intend on presenting evidence of any unadjudicated conduct. As the *Pleau* district court recently stated, "federal courts have allowed the government to use past unadjudicated crimes to support non-statutory aggravators." *Pleau*, 2013 WL 1673109 at 5; *see United States v. Corley*, 519 F.3d 716, 723-25 (7th Cir. 2008); *United States v. Sablan*, 555 F. Supp. 2d at 1192-95.

Defendant claims that the government is precluded from mentioning the length of time the defendant is currently serving based on an alleged ruling by Judge Muir in 1998. The government would ask this Court to reconsider that ruling as it is certainly relevant to the jury what sentence the defendant was currently serving when he acted out and killed Andrew Marti. It is certainly an appropriate argument that the defendant did not conform his behavior while previously serving what amounts to a life sentence so there is no reason for the jury to conclude based on his actions that the imposition of another life sentence will protect the corrections staff or inmates from the defendant in the future. The jury is permitted to consider his past criminal acts while incarcerated to rebut any claim that a life sentence in this case is sufficient to conform his conduct. *See Sablan*, 555 F. Supp. 2d at 1239 (jury should consider future dangerousness in prison, especially violent and dangerous behavior that occurs in prison).

Finally, the defendant seeks further discovery of precisely what witness will testify concerning the proof of the past criminal acts committed by the defendant.  This is precisely the type of elaboration that this Court did <u>not</u> require the government to provide and is precisely the type of information that the defendant is not entitled to at this stage.  *See United States v. Cooya*, 2011 WL 5878382 at 2 (M.D.Pa. Nov. 23, 2011) ("[d]efendants are not entitled to the Government's litigation playbook"; defendant's attempt to elicit the government's theory of the case is not the proper basis for an informational outline).  Once again, the defendant wants an exact copy of the government's litigation playbook and strategy.  He is simply not entitled to that.

### 3.  Aggravators are not duplicative

The defendant claims that evidence regarding the victim's death is duplicative.  This argument is simply not correct.  The evidence of Mr. Marti's death is necessary to prove not only the gateway intent factors but also to prove separate and distinct aggravating factors.  Not one case cited by the defendant stands for his distorted reasoning.

Further, the defendant asserts that the government may not rely on the evidence of the shooting of Thomas Upton in 1983 after his escape from prison as evidence to support the statutory aggravating factor of prior conviction of violent felony involving a firearm and also use that evidence in support of other evidence showing the defendant's future dangerousness and conduct when incarcerated.

While certain cases have held that an aggravating factor that is "necessarily and wholly subsumed by a different aggravator" may not be pursued, the case law is crystal clear that the government may pursue separate and distinct aggravating factors, and may certainly rely on the same evidence to prove the separate factors.  "The two factors must entirely replicate each other

and not just overlap in some response in order to be impermissibly duplicative.  Even if one factor is relevant to another and involves either a common method of proof or some of the same evidentiary support, the factors are not impermissibly duplicative." *Solomon*, 513 F. Supp. 2d at 537; see *United States v. Bin Laden*, 126 F. Supp. 2d 290, 299 (S.D.N.Y. 2001) (applying the duplication principle, but admitting all relevant evidence, stating, "we stress that the striking of such a duplicative aggravating factor does nothing to exclude the *evidence* that would otherwise have been proffered in support of the rejected factor"); *see also Cooks v. Ward*, 165 F.3d 1283, 1289 (10th Cir. 1998) (In holding that 'continuing threat' and 'prior conviction' aggravators were both valid, the court states that, "[t]he test we apply is not whether certain evidence is relevant to both aggravators, but rather, whether one aggravating circumstance 'necessarily subsumes' the other."). "The same facts can support different inferences that form different aggravators." *United States v. Purkey*, 428 F.3d 738, 762 (8th Cir. 2005).  All of the aggravating factors alleged in this case are separate and distinct and there is no concern that one aggravator is subsumed by another aggravator.

**CONCLUSION**

For the foregoing reasons, the United States asks the Court to deny the defendant's

motions to preclude the introduction of evidence as the defendant's re-sentencing and asks the

Court to deny the defendant's motion for discovery.

Respectfully submitted,

PETER J. SMITH
United States Attorney

JOHN C. GURGANUS JR.
Assistant United States Attorney

/s/ Steven D. Mellin

_____

STEVEN D. MELLIN
Trial Attorney For the
Capital Case Unit
1331 F Street, N.W.
Washington, D.C. 20530

Dated: July 22, 2013

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No. 4:96-CR-0239 |
| | : |
| v. | : (Judge Slomsky) |
| | : |
| DAVID PAUL HAMMER | : **ELECTRONICALLY FILED** |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the foregoing

**GOVERNMENT'S CONSOLIDATED OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE TO PRECLUDE THE ADMISSION OF IRRELEVANT AND CONSTITUTIONALLY IMPROPER EVIDENCE UNDER THE GUISE OF VICTIM IMPACT EVIDENCE, PRIOR CRIMINAL CONVICTIONS, AND FUTURE DANGEROUSNESS AND DEFENDANT'S SECOND MOTION FOR DISCOVERY**

to be filed by electronic filing and by email  electronically mailed on July 22, 2013, to:

ADDRESSEES:

Ronald C. Travis, Esquire
rtravis@riederstravis.com

Michael Wiseman, Esquire
Michael_Wiseman@fd.org

James J. McHugh, Jr., Esquire
James_McHugh@fd.org

James Moreno, Esquire
James_Moreno@fd.org

Anne Saunders, Esquire
Anne_Saunders@fd.org

/s/ John C. Gurganus, Jr.

_____
JOHN C. GURGANUS, JR.
Assistant United States Attorney

15