## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,    )
        )
        )
      v.        )      CRIMINAL NO. 4:96-CR-0239
        )      (Judge Slomsky)
**DAVID PAUL HAMMER.**    )
      Defendant    )

### GOVERNMENT'S BRIEF CONCERNING
### THE APPROPRIATE SCOPE OF VOIR DIRE AND PRELIMINARY INSTRUCTIONS

COMES NOW, the United States of America, by and through the undersigned counsel, and respectfully submits this informative brief concerning the appropriate scope of voir dire and the preliminary instructions in this case.

A.  Appropriate Scope of Voir Dire

Voir dire must be adequate to assure the defendant a jury whose members are able impartially to follow the Court's instructions and evaluate the evidence. *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981).  The exact scope of questioning is committed to the broad discretion of the court.  *United States v. Tipton*, 90 F.3d 861, 877 (4th Cir. 1996)(citing *Rosales-Lopez*, 451 U.S. at 188 and *Ham v. South Carolina*, 409 U.S. 524, 527 (1973)); *accord* Fed. R. Crim. P., Rule 24(a).  With limited exceptions,[1] no particular questions are constitutionally required, unless a failure to ask them would "render the trial fundamentally unfair."  *See Mu'Min v. Virginia*, 500 U.S. 415, 425-26 (1991) (rejecting any requirement to ask questions about the content of pretrial publicity to which prospective jurors were exposed).

---

[1] For example, questions about racial bias may be required in certain cases.  *See Ham*, 409 U.S. at 526-27.

Certain areas of inquiry are required in capital cases.  Voir dire must consist of more than general fairness and "follow the law" questions.  *Morgan v. Illinois*, 504 U.S. 719, 734-35 (1992).  General inquiries are inadequate to determine if a venire member has views about the death penalty that would prevent him or her from following the law and considering all aggravating and mitigating evidence.  *See id*. at 735.  Upon a capital defendant's request, the court must ask if a venire member would automatically vote for the death penalty, regardless of the facts, if the defendant was convicted of a capital offense.  *Id*. at 726-27.  That inquiry is the converse of the *Witherspoon* inquiry. *See Witherspoon v. Illinois,* 391 U.S. 510 (1968).  Thus, the Court should permit direct questions to determine if prospective jurors would automatically vote for or against the death penalty.  *See Morgan*, 504 U.S. at 733-34,738; *Tipton*, 90 F.3d at 878 (stating the best method for determining if a prospective juror would automatically vote for the death penalty is to ask directly).

Where a juror's views on the death penalty would "prevent or substantially impair" his or her impartial application of the law to the facts of the instant case, he or she should be excused for cause. *Morgan v. Illinois*, 504 U.S. 719, 728 (1992); *Wainwright v. Witt*, 469 U.S. 412, 424 (1985).  This standard applies equally to venire members who strongly favor and strongly oppose capital punishment. *Morgan*, 504 U.S. at 734 n.7. The rule reflects the defendant's right to an impartial jury and the government's legitimate interest in administering constitutional capital sentencing procedures. *Witt*, 469 U.S. at 418, 423.

A juror's views would "prevent" impartial performance if he or she would "automatically" or "always" vote for or against the death penalty, regardless of the facts and the law. *Witt*, 469 U.S. at 422; *see also Morgan*, 504 U.S. at 733. The government agrees that the Court should not excuse prospective jurors "simply because they voiced general objections to the

death penalty or expressed conscientious or religious scruples against its infliction."
*Witherspoon*, 391 U.S. at 522. Likewise, a venire member is not partial merely because he or she states support, or even a preference, for capital punishment, so long as the prospective juror can distinguish between his personal views and what the law requires. *See Miniel v. Cockrell*, 339 F.3d 331, 339-40 (5th Cir. 2003). But, where a trial judge is left with a "definite impression" that a juror would not be able to impartially follow the law, the venire member should be excluded from capital jury service. *Witt*, 469 U.S. at 425-26.

Further, juror bias need not be proven with "unmistakable clarity." *Witt*, 469 U.S. at 424. While the phrase "prevent or substantially impair" sets the legal standard, "[r]elevant voir dire questions addressed to this issue need not be framed exclusively" in such words. *Id.* at 433-34 (affirming excusal for cause of juror whose views would "interfere" with her sitting in a capital case); *see also Darden v. Wainright*, 477 U.S. 168 (1986) (finding juror properly excused, who had such strong religious, moral, or conscientious principles in opposition to the death penalty that he would be unable without violating those principles to vote for the death penalty). Indeed, where there is ambiguity in a prospective juror's answers, the trial court is entitled to resolve the ambiguity in favor of the government. *See Uttecht v. Brown*, 551 U.S. 1, 7 (2007), *Witt*, 469 U.S. at 434.

B.  Case of Fact Specific Questions

In the instant case, the defense is seeking to ask questions which arguably seek to have the evidence as well as the aggravating and mitigating factors prejudged by the jury.  Question pertaining to the weight prospective jurors would give to evidence, or that ask how jurors would vote when faced with certain evidence or facts should be prohibited. Such inquiries would improperly force prospective jurors to voice positions on hypothetical scenarios, which would

3

confuse and mislead venire members regarding their duty to weigh and consider the evidence. *See United States v. Fulks*, 454 F.3d 410, 429 (4th Cir. 2006)(noting an instance of confusion from fact-specific voir dire).

An additional problem with such inquiries is that it requires prospective jurors to pre-judge the penalty issue based on a summary of the mitigating and aggravating evidence likely to be presented. Case-specific predisposition questions, pre-commitment questions, and questions calling for speculation on the part of jurors should be prohibited because *Morgan* does not allow defendants to pre-determine jurors' views of the appropriate punishment for the particular crime charged. *United States v. McVeigh*, 153 F.3d 1166, 1208 (10th Cir. 1998), *disapproved of on other grounds in Hooks v. Ward*, 184 F.3d 1206, 1227 (10th Cir. 1999).

Additionally, questions are objectionable when predicated on facts specific to the case at issue or upon speculation as to what facts may or may not be proven at trial. *McVeigh*, 153 F.3d at 1207; *cf. Richmond v. Polk*, 375 F.3d 309, 330 (4th Cir. 2004) (holding that *Morgan* does not permit inquiry to determine what a prospective juror's sentencing decision will be on a specific set of evidence or circumstances).  As the Tenth Circuit stated in *McVeigh*,

> *Morgan* was written as a reciprocal case to *Witherspoon*, and is designed to identify potential jurors who would automatically impose the death penalty for conviction of a capital offense. When a defendant asks a juror to speculate or pre-commit on how that juror might vote based on any particular facts, the question strays beyond the purpose and protection of *Morgan*.

153 F.3d at 1207 (emphasis added).

Similarly, the Supreme Court in *Witherspoon* noted that:

> [A] prospective juror cannot be expected to say in advance of trial whether he would in fact vote for the extreme penalty in the case before him. The most that can be demanded of a venireman in this regard is that he be willing to *consider* all of the penalties provided by . . . law, and that he not be irrevocably committed, before the

4

trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings.

391 U.S. at 522, n.21 (emphasis in original); *see also United States v. McCullah*, 76 F.3d 1087, 1114 (10th Cir. 1996) (holding that general questions are sufficient to protect defendant's rights and trial court did not err in refusing to allow specific questions on mitigators); *but cf. United States v. Johnson*, 366 F. Supp.2d 822, 842-43 (N.D. Iowa 2005) (discussing various approaches to case-specific questioning and permitting certain case-specific questions).

> C.     No Right to Inform Jurors of Consequence of Inability to Agree

The questions and instructions also impermissibly suggest the consequences of the jury's inability to agree on a verdict.  The Court should not, however, permit voir dire designed to inform jurors of a power to nullify or as to the consequences of a failure to reach a unanimous decision.  Fundamentally, it should be obvious that such questions, or rather, statements, are not designed to ferret out whether potential jurors can be impartial and constitutionally consider whether the death penalty is an appropriate sanction.  Rather, such information is calculated to encourage a lack of unanimity and to advocate an unwillingness to consider the death penalty as an appropriate sanction.

Moreover, any proposed voir dire discussing or informing the prospective jurors of the consequences of their failure to agree on a sentence is arguably inconsistent with the language of the Federal Death Penalty Act itself.  18 U.S.C. 3593(e) provides:

> [T]he jury, or if there is no jury, the court, shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death. Based *upon this consideration, the jury by unanimous vote*, or if there is no jury, the court, shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence.

5

18 U.S.C. 3593(e)(emphasis added).  Accordingly, by its express terms, the FDPA requires

unanimity for either a verdict of death or a non-capital sentence.

The United States Supreme Court considered this issue in *Jones v. United States*, 527

U.S. 373, 379 (1999).  In that case, the defendant argued that he was entitled to an instruction as

to the consequences of a jury deadlock on the issue of sentencing.  The defendant asked for, and

did not receive, the following instruction:

> In the event, after due deliberation and reflection, the jury is unable to agree on a
> unanimous decision as to the sentence to be imposed, you should so advise me and I will
> impose a sentence of life imprisonment without possibility of release. . . .
>
> . . . . .
>
> In the event you are unable to agree on [a sentence of] Life Without Possibility of
> Release or Death, but you are unanimous that the sentence should not be less than Life
> Without Possibility of Release, you should report that vote to the Court and the Court will
> sentence the defendant to Life Without the Possibility of Release.

*Jones*, 527 U.S. at 379.  The defendant argued alternatively that the Eighth Amendment required

the trial court to instruct the jury as to the effect of their inability to agree and that the Supreme

Court should invoke its supervisory power over the federal courts and require that such an

instruction be given.  In affirming the trial court's refusal to give the requested instruction, the

Court held:

> The truth of the matter is that the proposed instruction has no bearing on the jury's role in
> the sentencing process. Rather, it speaks to what happens in the event that the jury is
> unable to fulfill its role -- when deliberations break down and the jury is unable to
> produce a unanimous sentence recommendation. Petitioner's argument, although less than
> clear, appears to be that a death sentence is arbitrary within the meaning of the Eighth
> Amendment if the jury is not given any bit of information that might possibly influence
> an individual juror's voting behavior. That contention has no merit. We have never
> suggested, for example, that the Eighth Amendment requires a jury be instructed as to the
> consequences of a breakdown in the deliberative process. On the contrary, we have long
> been of the view that "the very object of the jury system is to secure unanimity by a
> comparison of views, and by arguments among the jurors themselves." *Allen* v. *United*

*States*, 164 U.S. 492, 501, 41 L. Ed. 528, 17 S. Ct. 154 (1896).  We further have recognized that in a capital sentencing proceeding, the Government has "a strong interest in having the jury express the conscience of the community on the ultimate question of life or death." *Lowenfield* v. *Phelps*, 484 U.S. 231, 238, 98 L. Ed. 2d 568, 108 S. Ct. 546 (1988) (citation omitted). We are of the view that a charge to the jury of the sort proposed by petitioner might well have the effect of undermining this strong governmental interest.

*Id*. at 382.  In fact, the Supreme Court took pains to state that "[i]t is not insignificant that the Courts of Appeals to have addressed this question, as far as we are aware, are uniform in rejecting the argument that the Constitution requires an instruction as to the consequences of a jury's inability to agree. *See, e.g.*, *Coe* v. *Bell*, 161 F.3d 320, 339-340 (6th Cir. 1998); *Green* v. *French*, 143 F.3d 865, 890 (4th Cir. 1998); *United States* v. *Chandler*, 996 F.2d 1073, 1088-1089 (11th Cir. 1993); *Evans* v. *Thompson*, 881 F.2d 117, 123-124 (4th Cir. 1989)." *Id*.at 382 fn. 6.

In *United States v. Chandler*, 996 F.2d 1073, 1088-89 (11th Cir. 1993) the defendant argued that federal law as well "the constitutional requirement that the jury not be misinformed or coerced during a capital sentencing require that the jury be instructed that the failure to reach unanimity would result in Chandler receiving some non-death sentence as determined by the court."   In rejecting the defendant's position, the Court held:

> We find the reasoning of the second set of authorities persuasive and hold that the district court is not required to instruct the jury on the consequence of the jury's inability to reach a unanimous verdict. There is no requirement that instructions to the jury duplicate the statutory language. Section 848(l) is an instruction to the court and not for the jury. Our holding is further supported by the general interest the criminal justice system has in unanimous verdicts. Asking the jury to return a unanimous verdict forces jurors to examine their views on the case and engage in discussions and deliberations as they attempt to resolve their differences.

> We reject the suggestion that the instructions or verdict form in some way coerced the jury into a recommendation of death. Similar instructions are given during the guilt stage of criminal proceedings. That an *Allen* type charge was given in the present case does not create any coercion. Although the instruction stated that jurors should "not hesitate to re-examine your own opinion, and to change your mind if you become convinced that you are wrong," it also admonished, "do not give up you honest beliefs . . . solely because the others think differently or merely to get the case over with." RXV-87. When this

instruction is coupled with the court's statement that Chandler would receive the death penalty only if all jurors unanimously agreed to recommend death, we conclude the *Allen* charge was not coercive.

*Chandler*, 996 F.2d at 1088-89.

In deciding *Jones*, the Supreme Court specifically cited *Allen* v. *United States*, 164 U.S. 492, 501, 41 L. Ed. 528, 17 S. Ct. 154 (1896), and reaffirmed the principle that "the very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves." That guiding principle is the very antithesis of what a defendant seeks when he argues for, or informs a jury of, the consequences of an inability to agree on a capital sentence *or* to hold out to preserve a defendant's life. In *Allen*, a capital defendant argued that it was error for the trial court to give a lengthy instruction to the jury after they announced difficulty in reaching agreement. That instruction was as follows:

> [I]n a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgement which was not concurred in by the majority.

In affirming the correctness of the instruction, the Supreme Court held:

> While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the juryroom. The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury-room with a blind determination that the verdict shall represent his opinion of the

case at that moment; or, that he should close his ears to the arguments of men who are equally honest and intelligent as himself. There was no error in these instructions.

*Allen*, 164 U.S. at 501.

Indeed, the United States Supreme Court has approved the use of an *Allen* charge in the penalty phase of a contemporary capital prosecution. *Lowenfield v. Phelps*, 484 U.S. 231, 238-9 (1988). In that case, the defendant argued that the giving of an *Allen* charge in the penalty phase of a capital prosecution presented a particular danger of coercion in the case because the Louisiana statute at issue called for the imposition of a life sentence in the event of a hung jury, the same as the Federal Death Penalty Act. In rejecting that challenge, the Court held:

> The difference between the division of function between the jury and judge in this case and the division in *Allen* obviously weighs in the constitutional calculus, but we do not find it dispositive. The State has in a capital sentencing proceeding a strong interest in having the jury "express the conscience of the community on the ultimate question of life or death." *Witherspoon v. Illinois*, 391 U.S. 510, 519, 88 S. Ct. 1770, 1775, 20 L. Ed. 2d 776 (1968). Surely if the jury had returned from its deliberations after only one hour and informed the court that it had failed to achieve unanimity on the first ballot, the court would incontestably have had the authority to insist that they deliberate further. This is true even in capital cases such as this one and *Allen*, even though we are naturally mindful in such cases that the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S. Ct. 2954, 2964, 57 L. Ed. 2d 973 (1978).

*Lowenfield*, 484 U.S. at 238-39. Clearly then, even in the context of a capital proceeding, the government has a strong interest in unanimity in the penalty phase of a prosecution. Accordingly, a defendant's repeated and excessive identification of the consequences of a deadlock in the penalty phase of a capital prosecution undermines that principle. At a minimum, a defendant has no constitutional right to continually and excessively advise a prospective juror of the consequences of a deadlock and encourage such outcome.

D.      No Right to Argue/Advise/Advocate a Power to Nullify

The government submits that excessive statements to prospective jurors concerning their ability and right to hold out for a life sentence to preserve the defendant's life is akin to an improper argument and/or advocacy of a right to nullify.  The government concedes that the defendant has a right under *Morgan v. Illinois*, 504 U.S. 719, 728 (1992) to ask, directly or through the Court, if a venire member would automatically vote for the death penalty, regardless of the facts, if the defendant was convicted of a capital offense.  *Id*. at 726-27.  The government also notes that while jurors must be willing to generally "consider" mitigation evidence, Supreme Court jurisprudence does not require inquiries about specific information.  *See Buchanan v. Angelone*, 522 U.S. 269, 276 (1998); *Eddings v. Oklahoma*, 455 U.S. 104, 114-15 (1982). Nothing in the Supreme Court's jurisprudence, however, requires or allows a party to ask questions in a way that is a thinly veiled attempt to seek or encourage nullification.

The First Circuit has consistently upheld the rule that a court and counsel may not inform the jury, directly or indirectly, of its power to nullify. *United States v. Manning*, 79 F.3d 212, 219 (1st Cir. 1996).  Counsel for the defendant in that case sought to elicit on direct examination the penalty for the crime as well as to argue to the jury their power to nullify the verdict.  In affirming the trial court's refusal to permit nullification argument, the First Circuit stated that "we have consistently held that a district court may not instruct the jury as to its power to nullify" and an "attorney's attempt to achieve the same end indirectly, by arguing the severity of the punishment to the jury, is equally impermissible." *Id*.  While the government recognizes that voir dire will necessarily involve discussions about potential punishments, indeed constitutionally it must do so, nevertheless, the defendant should not be allowed to make arguments encouraging nullification at sentencing or during voir dire.  Inquiry into whether the

jurors will be substantially impaired in considering both a death sentence and its alternative is a far cry from allowing, wholesale, a party to inform the jury of the consequences of a deadlock or advocating for that outcome.

E.      The Weighing Process Is a One-Step Process and this Court Should Prohibit
        References to Mercy or Additional Jury Discretion After Weighing Is Concluded

The preliminary instructions suggested by the defense improperly instruct on the jury's consideration of mercy in the weighing process.  Under the FDPA, the weighing decision is a single process and decision.  The FDPA provides that a "defendant who has been found guilty of [a capital offense] *shall* be sentenced to death if, after consideration of the factors set forth in section 3592 in the course of a hearing held pursuant to section 3593, it is determined that imposition of a sentence of death is justified."  18 U.S.C. § 3591(a) (emphasis added).  Thus, this Court should restrict any attempts by the defense to suggest the jury somehow retains discretion to choose an alternative sentence even if it finds in the weighing process that a sentence of death is justified.

In *United States v. Allen*, 247 F.3d 741 (8th Cir. 2001), *vacated on other grounds* 536 U.S. 953, the defendant asserted that a capital sentencing jury is required to make two decisions: first, whether a sentence of death is justified and second, whether a sentence of death should actually be imposed.  *Id*. at 780.  The court found that this interpretation was inconsistent with the FDPA as a whole, *id*., and would allow jurors to disregard a unanimous determination that a sentence of death was justified.  *Id*. at 781.  The court also noted that the FDPA precludes the jurors from arbitrarily disregarding its unanimous determination that a sentence of death is justified.  *Id*.  While *Allen* has been vacated on other grounds, the Eighth Circuit has repeated its holding on this issue multiple times, most recently in *United States v. Montgomery*, 635 F.3d

11

1074, 1099 (8th Cir. 2011) (holding the FDPA "requires" imposition of the death penalty "once a jury makes a final unanimous determination that a sentence of death is justified").

Other courts have also followed this approach. In *United States v. Caro*, 483 F. Supp.2d 513, 517-18 (W.D. Va. 2007), the district court rejected the defendant's proposed "mercy instruction." The court held the proposed instruction was "improper because it would have told the jury that it could base its determination on factors not specified in the FDPA." *Id.*; *see also United States v. Sampson*, 335 F Supp.2d 166, 239 (D. Mass. 2004) ("The statute does not identify any other permissible considerations. To permit the jury to consider matters other than the relative weight of aggravating and mitigating factors found during jury deliberations risks the arbitrary and capricious imposition of death sentences based on unspecified criteria.").[2]

Rather than instructing (or "educating" the prospective jurors during voir dire) that the weighing process is a prerequisite to imposing the death penalty based on some additional, undefined criteria, the Court should instruct (and limit the parties to stating) that the weighing process *is* the criteria by which they are to determine if death is the appropriate sentence. *Sampson*, 335 F. Supp.2d at 240.

Based on the above, this Court should prohibit any questioning during voir dire that suggests the jury retains discretion to decide the sentence even after it has found in the weighing process that a sentence of death is justified. This would include suggesting that the concept of "mercy" may alter the outcome after the weighing process is completed. While jurors may

---

[2] The *Sampson* court also tellingly pointed out that the FDPA is markedly different on this issue than 18 U.S.C. § 848, the drug kingpin statute on which the FDPA was modeled and which was the primary means of seeking the death penalty in federal court prior to the passage of the FDPA in 1994. *See Sampson*, 335 F. Supp.2d at 239. The court explained that section 848(k) expressly stated that, "'The jury . . . regardless of its findings with respect to aggravating and mitigating factors, is never required to impose a death sentence and the jury shall be so instructed.'" *Id.* (quoting 18 U.S.C. § 848(k)).

consider "mercy" when evaluating what weight to give the aggravating and mitigating factors, they may not apply mercy after the weighing process is complete.  *See Allen*, 247 F.3d at 781; *Caro*, 483 F. Supp.2d at 518.  After the jury decides that a death sentence is justified, or should be imposed, the jury does not ask a second question of whether it will actually impose it.  To do so would inject arbitrariness into the capital decision-making process.

F.      No Burden to Prove that Aggravators Outweigh Mitigators Beyond a Reasonable Doubt

The parties should not be permitted to argue or inform the prospective jurors that the government must prove that the aggravators outweigh the mitigators beyond a reasonable doubt. Seven circuits have decided this issue, and all seven have rejected capital defendants' claims that the "beyond a reasonable doubt" burden of proof applies to the weighing process.  *See United States v. Gabrion*, 719 F.3d 511, 28 (6th Cir. 2013) (en banc) (citing cases). That precise issue was decided by the First Circuit Court of Appeals in *United States v. Sampson*, 486 F.3d 13, 38 (1st Cir. 2007).  In that case, the defendant argued that "the instructions (i) erroneously invited jurors to apply their own idiosyncratic standards to the weighing process and (ii) failed to require that they find beyond a reasonable doubt that aggravating factors outweighed mitigating factors before voting to impose the death penalty."  In rejecting both claims, the Court held:

> Sampson tries to circumvent this logic by pointing out that the weighing determination itself is essential to imposing a death sentence. He repeatedly refers to Justice Scalia's statement "that all facts essential to imposition of the level of punishment that the defendant receives -- whether the statute calls them elements of the offense, sentencing factors, or Mary Jane -- must be found by the jury beyond a reasonable doubt." *Ring*, 536 U.S. at 610 (Scalia J., joined by Thomas, J., concurring). This argument founders, however, because it assumes, without the slightest support, that the weighing of aggravating and mitigating factors is a *fact*. This assumption is incorrect. As other courts have recognized,  the requisite weighing constitutes a process, not a fact to be found. *See United States* v. *Purkey*, 428 F.3d 738, 750 (8th Cir. 2005) (characterizing the weighing process as "the lens through which the jury must focus the facts that it has found" to reach its individualized determination), *cert. denied*, 127 S. Ct. 433, 166 L. Ed. 2d 307

13

(2006); *see also Ford* v. *Strickland*, 696 F.2d 804, 818 (11th Cir. 1983); *Gray* v. *Lucas*, 685 F.2d 139, 140 (5th Cir. 1982) (per curiam). The outcome of the weighing process is not an objective truth that is susceptible to (further) proof by either party. Hence, the weighing of aggravators and mitigators does not need to be "found." We hold, therefore, that the district court's instructions were free from *Apprendi* error.

*Sampson*, 486 F.3d at 47-48.  Accordingly, it would be improper to inform the jury that they must find that the aggravating factors outweigh the mitigating factors beyond a reasonable doubt before imposing a sentence of death.

Respectfully submitted,

PETER J. SMITH
United States Attorney

/s/ John C. Gurganus, Jr.

JOHN C. GURGANUS Jr.
Assistant United States Attorney

AMANDA HAINES
Trial Attorney
U.S. Department of Justice

Dated: January 8, 2014

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No. 4:96-CR-0239 |
| | : |
| v. | : (Judge Slomsky) |
| | : |
| DAVID PAUL HAMMER | : **ELECTRONICALLY FILED** |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the foregoing

**GOVERNMENT'S BRIEF CONCERNING**
**<u>THE APPROPRIATE SCOPE OF VOIR DIRE AND PRELIMINARY INSTRUCTIONS</u>**

to be electronic filing on January 8, 2014, to:

ADDRESSEES:

Ronald C. Travis, Esquire

rtravis@riederstravis.com

James J. McHugh, Jr., Esquire

James_McHugh@fd.org

James Moreno, Esquire

James_Moreno@fd.org

Anne Saunders, Esquire

Anne_Saunders@fd.org

/s/ John C. Gurganus, Jr.

JOHN C. GURGANUS, JR.
Assistant U.S. Attorney

15