Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
- - -

UNITED STATES OF AMERICA,    :    4:96-cr-00239-JHS
      Plaintiff,             :    PHILADELPHIA, PA
                             :
   vs.                       :
                             :
DAVID PAUL HAMMER,           :    January 9, 2014
      Defendant.             :    4:35 a.m.

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JOEL H. SLOMSKY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:    JOHN C. GURGANUS, JR., AUSA
                      UNITED STATES ATTORNEY'S OFFICE
                      311 Federal Building
                      Scranton, PA 18501
                      (570) 348-2800
                      john.gurganus@usdoj.gov

                      AMANDA HAINES, AUSA
                      U.S. DEPARTMENT OF JUSTICE
                      CAPITAL CASE SECTION
                      1331 F Street N.W.
                      Washington, D.C. 20530
                      (202) 514-0175

For the Defendant:    RONALD C. TRAVIS, ESQ.
                      RIEDERS TRAVIS
                      161 W. Third Street
                      Williamsport, PA 17701
                      (570) 323-8711
                      rtravis@riederstravis.com

VERITEXT NATIONAL COURT REPORTING COMPANY
MID-ATLANTIC REGION
1801 Market Street - Suite 1800
Philadelphia, PA  19103
(888) 777-6690

APPEARANCES (continued):

For the Defendant:    JAMES J. McHUGH, ESQ.
                      JAMES MORENO, ESQ.
                      DEFENDER ASSOC. OF PHILADELPHIA
                      FEDERAL COURT DIVISION
                      CAPITAL HABEAS CORPUS UNIT
                      Curtis Building, Suite 545 West
                      Independence Square West
                      Philadelphia, PA 19106
                      (215) 928-0520
                      james_mchugh@fd.org
                      james_moreno@fd.org

                      ANNE L. SAUNDERS, ESQ.
                      FEDERAL PUBLIC DEFENDER'S OFFICE
                      100 Chestnut Street, Suite 300
                      Harrisburg, PA 17101
                      (717) 782-3843
                      anne_saunders@fd.org

JURY ADMINISTRATOR:  PAUL LOMBARDI

AUDIO OPERATOR:      CONNIE S. FLORES

TRANSCRIBER:         JUDI Y. OLSEN, RPR

(Proceedings recorded by electronic sound recording, transcript produced by transcription service.)

Page 3

                              I N D E X
                                                              PAGE

      COLLOQUY                                                  4




                           E X H I B I T S

      NUMBER       DESCRIPTION              MARKED      ADMITTED

      (None marked.)

- - -

THE COURT:  Sir, are you there?

MR. TRAVIS:  I'm here, Your Honor.

THE COURT:  All right.  We can hear you loud and clear.

This is the case of United States versus David Hammer, Criminal Number 96-239, arising in the Middle District of Pennsylvania.  And I scheduled today for a conference on jury questionnaires and preliminary instructions.

And I have read over document number 1536 in the record, which is a motion to modify the jury selection process; essentially to, at this point, mail out to approximately 500 jurors a questionnaire only concerning the issues of hardship and availability and then to get those back by a certain date.

And once they're returned, they will be distributed to all counsel, and hopefully, both sides can agree on eliminating a number of jurors so that we can make the process more efficient and less expensive and not cause -- needlessly cause jurors who would ordinarily be excused for hardship and availability and/or who might be -- might be -- be exempt from jury service for statutory reasons would

not have to come to the courthouse.

The -- I have reviewed the questionnaire that has been submitted. Part A deals with claims for undue hardship. Part B deals with claims of exemption from jury service.

And it seems to me that this would be an appropriate process. It was a process used in a case in front of Judge Kane, apparently, in the Middle District of Pennsylvania within the last year or two years, and I did not see any opposition from the Government to this process.

Mr. Gurganus, on behalf of the Government?

MR. GURGANUS: Your Honor, we discussed it. We went over it. And we thought that it would also make a lot of sense. So --

THE COURT: All right. So we will follow that process. I will enter an order granting defendant's motion to modify the jury selection process, document number 50 -- 50 -- 1536.

And present with us today is someone from our clerk's office. Why don't you state your name for the record.

MR. LOMBARDI: Hi. Paul Lombardi, jury administrator.

THE COURT:  So we have Mr. Lombardi here -- Mr. Lombardi here, the jury administrator.

Mr. Lombardi, do you have a copy of the -- the draft of the questionnaire?

MR. LOMBARDI:  I don't.  No, I don't.

THE COURT:  All right.  I will make it available to Mr. Lombardi.

Now, there's a cover sheet on it, which begins with the word "Greetings."  I assume that --

MR. TRAVIS:  Your Honor --

THE COURT:  Yes?

MR. TRAVIS:  -- that might be -- this is Mr. Travis.  I may be able to clear this up.

If you look at docket sheet 1573, my office inadvertently filed it without a cover sheet. But if you look at document 1574, it's a revised jury questionnaire.  The only revision was, we put a cover sheet on it.

THE COURT:  All right.  A few of these have been filed, and I don't have -- specifically have that one in front of me.  Let me just look in my --

MR. TRAVIS:  It's -- it's docket 1574. It was filed on September 24th.

THE COURT:  All right.

MR. TRAVIS: Oh, excuse me. That's the wrong one. I gave you the wrong number.

THE COURT: All right. We're dealing more with 1588.

MR. TRAVIS: Yes, you're -- you're right.

THE COURT: Is that the one you're --

MR. TRAVIS: It's number -- it's -- 1589 is the one with the cover sheet.

THE COURT: All right. I have 1589 in front of me. And is this the one that the parties have agreed to be mailed out?

INDISCERNIBLE SPEAKER: It is, Your Honor.

MR. TRAVIS: Yes, Your Honor.

THE COURT: All right. Now, there were some blanks on page 1, and I filled in 9:00 a.m. and 4:00 p.m. --

MR. TRAVIS: Okay.

THE COURT: -- in the two spots.

MR. TRAVIS: Okay.

THE COURT: Now, how will the jurors know when to return this once it's mailed out?

MR. TRAVIS: Again, Your Honor, this is Mr. Travis.

My recollection is -- of what occurred in the Ritz Williams case -- that's the one that Chief Judge Kane used the questionnaire in -- was, there was a cover sheet that -- like, a cover letter that went with it from the clerk's office that told them to be returned by a certain date.

If the Court prefers that a return date be inserted somewhere in the document, you know, I can always have my office make that change and -- and resubmit it.  But I'm satisfied doing it either way.  Whatever works best for the clerk's office or the Court is fine with me.

THE COURT:  Well, why don't you fax in to chambers a copy of the -- the letter.  The letter is fine with me.  Let me just look it over.  And I'll give it to Mr. Lombardi.

And when do we know who the 500 jurors are?  How does that work, Mr. Lombardi?

MR. LOMBARDI:  What we would have to do, Your Honor, is actually summons these jurors.

THE COURT:  Just speak loud.  You've got to really speak into the mic here.  I want to make sure you can be heard.

MR. LOMBARDI:  What we would have to do is -- is actually summons these jurors and actually

send them a summons with the questionnaire.

My -- my main question here is, how many jurors are required to be here on the first day of jury selection?  I know you had mentioned 500.  We're going to send out 500 of the questionnaires?

THE COURT:  Yeah, well, the cover letter -- the cover letter that will accompany the questionnaire will state that, you have been summoned for jury duty, I assume, and that you are to -- you may be required to appear on March 3rd or March 4th, but you must send back this questionnaire, let's say, by January 25th, or whatever the date is, and you will be notified subsequently whether to appear on the 3rd or the 4th.

And once we get these back, there will be -- copies have to be made by the clerk's office that the jurors return to us.  They have to be sent to -- to counsel for the -- for both sides.

And then counsel will review it -- review them and let you know which of the 500 they agree upon can be eliminated from the prospective panel.

And then we would know -- let's assume we're -- we're down to 350 at that point.  We can bring 175 each day to fill out a second

questionnaire.

That's the way the process would work. So we save the time of bringing in 150 potential jurors to the courthouse who otherwise would not be selected.

MR. LOMBARDI:  And this -- the -- the second questionnaire being the -- the -- the substantive -- the lengthy questionnaire?  I'm assuming that that's --

THE COURT:  Yes, yes.

MR. LOMBARDI:  Okay.  We've -- we've actually never -- I can't say never, but with -- within the past, I would say, 15 years or so on death penalty cases -- and we've had a few; we just had one last year -- we've actually not have [sic] sent out the initial questionnaire detailing all the aspects of the case with the fear that jurors receive this, they read it, and for some -- whatever reason, they will state that they cannot serve on this case.

That's why when you had mentioned that we would send out about 500 of these -- I don't know how many of the jurors will actually return this stating that, yes, they can do this, on such a high -- high-profile case of this nature.

THE COURT:  Well, I -- I understand your

concern. And -- and counsel have been confronted with this in the past, and both sides agree that this is a proper procedure. So I would ask the clerk's office to adopt it and conform to it. It seems to me it may save us a lot of time.

MR. LOMBARDI: If I may ask, would we only -- perhaps only those that were seeking an exemption would be required to send -- send it back in, rather than all 500.

And, Ron, is that how they did it on the other case, or does everyone have to respond and -- and send that back?

MR. TRAVIS: Again, this is -- this is Mr. Travis.

The way Chief Judge Kane did it, she had everyone send back in what I'm going to call the availability questionnaire. And we pretty much got, like, a 95 percent -- I don't have the exact numbers, but, like, a 95 percent return rate. And we actually sent out -- I believe it was 600 questionnaires in -- in -- in the Williams case. And she had everybody, whether they're asking for exemption or not asking for an exemption, send them back in.

And then they were distributed to both sides. We individually came up with excuse -- what

I'll call an excuse list, compared those, and then notified the Court, numbers, you know, 1, 17, 54, 93, whatever we agree, can be excused.

And both sides were also allowed to alert the Court that, for example, the Government thinks number 93 and 78 should be excused; the defense doesn't agree.  And we actually argued in front of Chief Judge Kane those there was a dispute about.

THE COURT:  You think we ought to send out 600 questionnaires?  I mean --

MR. TRAVIS:  No, I was just -- I was just -- I was more trying to alert, I guess, the clerk's office to the fact that, at least in the Middle District of Pennsylvania, the people that got them, which were numerically greater than what we're planning on sending out, did affirmatively respond pretty much, you know, en masse as far as returning them.

Your Honor, it does not -- it does not make that much difference to me whether we send out 500 or 600, but one of the -- one of the potential benefits of using the availability questionnaire, I think, is that we see how many we're going to lose without even bringing them to the courthouse, and

that might help inform us whether we need to supplement the original pool.

But as far as I'm concerned, sending out 600 might be a -- a safer process.  And if we don't, you know, use the additional hundred people, we don't use them.

THE COURT:  I'm assuming that what we -- the cover letter states, please fill out the questionnaire and return it in the envelope enclosed.

MR. TRAVIS:  Right.

THE COURT:  It's sent out by the clerk's office.

All right.  I'm -- I'm willing to do that and -- with 600, if there's a 95 percent return rate, if that's satisfactory to all the parties.

Mr. Travis --

MR. TRAVIS:  That's -- that is satisfactory to the defense, Your Honor.

THE COURT:  All right.  Mr. Gurganus, we can agree?

MR. GURGANUS:  That would be satisfactory, Judge.

THE COURT:  All right.  Now, how soon can this be done?  Let's assume you -- you fax the letter in -- you draft a letter.  You have one.

Maybe you can form -- conform it to this case, send a copy to Mr. Gurganus, fax in a copy to the Court. And I'll look it over, and by tomorrow, I can have it in Mr. Lombardi's hands, and he can proceed forthwith.

Is that possible?

MR. TRAVIS:  That -- that is possible from -- from my end Your Honor.  I will -- when the call is completed, I will dictate the letter.  I think the Williams file is -- is closed, and so it's out of my office, but I've got a -- a concept of what it said.

And it covered the points that you had raised; this is the first step in the process, you might ultimately be called and have to report on, you know, a later date, and, you know, return this -- please complete the questionnaire and return it in the enclosed envelope.

And I'll -- I'll get that typed up and, you know, electronically sent out tomorrow morning first thing.

MR. MORENO:  Judge, can I ask a question?

THE COURT:  Yes.  Speak -- try to --

MR. MORENO:  I'm sorry.

THE COURT:  -- speak into the mic.

MR. MORENO:  This is Jim Moreno.

In the letter, is it going to include the date by which the jurors have to --

MR. TRAVIS:  Yes.  It will tell them to return it by X date -- excuse me; this is Mr. Travis -- by X date.

And the Judge had mentioned January 25th, and I don't know if that -- that date is a sufficient -- is a satisfactory date for the Government or not.  I -- I -- you know, so that's why I -- I'm not using the January 25th.

The January 25th date is certainly fine as far as the defense is concerned.

THE COURT:  Is that a -- a date we can -- we can follow, Mr. Lombardi?  Today is January 9th.  Do you want make it February 1st?

MR. LOMBARDI:  Yeah, I mean, we -- assuming, you know, I receive the -- the cover letter that will be attached to the questionnaire tomorrow, we can probably have these sent out by Monday.

THE COURT:  So Monday is --

MR. LOMBARDI:  The 13th.

THE COURT:  -- January --

MR. LOMBARDI:  The 13th.

THE COURT:  -- 13th?

MR. MORENO:  It would be exactly two weeks.  The 25th is a Saturday, two weeks later.

THE COURT:  The 25th of January is a Saturday?

MR. MORENO:  Yes.

THE COURT:  So we should make it the following --

MR. MORENO:  Monday.

THE COURT:  -- Monday, which is January --

MR. MORENO:  27th.

THE COURT:  -- 27th.

MR. GURGANUS:  Just based upon what the jury person is saying, the only question I think we should consider, all of us, is whether we should include on that -- in that first paragraph whether -- that it's a death penalty case.

That's something that we may -- it was not done in the Ritz Williams case, I do not believe, and that may be an area that we should think about.

THE COURT:  Well, it says here -- if I'm looking at it, it says, in the federal system, if somebody is convicted of first-degree murder, the only possible sentence is a life imprisonment without

the possibility of release or a sentence of death.

MR. GURGANUS:  Right.

THE COURT:  So they would know.  You know, they would know, I think --

MR. TRAVIS:  Yes.

THE COURT:  -- what this case is about.

MR. MORENO:  We could also put before that sentence, you know, such and such says this is a -- you know, a capital case.

MR. GURGANUS:  But do we want to do that in -- in -- in this case to -- in order to make sure we get all the appropriate -- it's -- it's an issue of hardship.  It's not an issue at this point of how they feel about the case.

What is the benefit in sending this out that we tell them it's -- that Mr. Hammer has pleaded guilty, and you're going to be deciding whether it's a sentence of life or a sentence of death?

In light of -- of, you know, the concern, it was -- I don't believe it was done in the Ritz Williams case, that they went specific, where all we're concerned about is, you know, hardship, whether they can, you know, report and sit for a trial on the dates.

That -- that line or that aspect of it

we may want to reconsider in light of what the -- the jury person is saying.

THE COURT:  Let me ask you this question.

It says in the first line, you have been identified as one of multiple individuals who may be qualified to serve as potential jurors in the sentencing/retrial of United States versus David Paul Hammer.

I'm going to venture to say that 99 percent will probably Google David Paul Hammer --

MR. GURGANUS:  Right.

THE COURT:  -- to find out what this is all about.

MR. GURGANUS:  And it may be --

THE COURT:  And what's going to come up? I'm sure a capital case will come up.

MR. MORENO:  A lot of stuff will come up.

THE COURT:  I mean, a tremendous amount comes up.  Now, how do we prevent -- how -- how do we prevent that from happening?

MR. MORENO:  [Indiscernible] --

MR. McHUGH:  The caption and the name of the case?

MR. MORENO:  Just leave it, you've been summoned for jury duty.

MR. GURGANUS:  It strikes me if what we're doing is trying to identify jurors that are not going to be gone -- you know, will not -- will return these things and we can find out if they're available and if they have any issues, it may be the name, until you can give them instructions, they're not to look at anything, properly, Judge, and the nature of the case may be something we should -- we should keep out in light of -- of the concern of the jury --

MS. SAUNDERS:  Well, they're going to see the name in the front of it.

INDISCERNIBLE SPEAKER:  Right.

MS. SAUNDERS:  We'll have to change the caption or --

INDISCERNIBLE SPEAKER:  [Indiscernible]?

MS. SAUNDERS:  There we go.  Yeah, I'm not -- I'm not saying we can't.  We could -- we could take the caption off and just call it --

THE COURT:  This is Ms. Saunders speaking?

MS. SAUNDERS:  I'm sorry, Your Honor.

THE COURT:  I'm going to ask --

MS. SAUNDERS:  This is Anne Saunders

speaking.

We could just take the -- the -- the caption off and just say, ability to serve questionnaire, and then, you've been asked to serve as a juror, period.  And then skip the next paragraph, take that out completely, and then just talk about --

THE COURT:  Yeah.

MS. SAUNDERS:  Then I think that's all of it, right?  Well, and then take his name out on the bottom paragraph.

THE COURT:  Yeah.  Mr. Travis, Mr. Gurganus's question has a broader implication, as you're hearing.

So that if there's any identification at all of who this defendant is or that it's a death sentence case or a capital case, then we may not be able to control what people know about it before they actually come into is the courthouse and hear from the judge.

MR. TRAVIS:  I -- Your Honor, it -- it's Mr. Travis again.

And I -- I -- I understand and appreciate that.  As you'll see, the last -- the last paragraph of the first page, the greeting page, tells

them that they're not supposed to --

THE COURT:  I have no faith that's going to be sufficient.

MR. TRAVIS:  Okay.  I don't -- for that reason, Your Honor, I -- you know, we, as a defense, have a greater -- have a serious concern about them not Googling for a number of reasons.

THE COURT:  Sure.

MR. TRAVIS:  So I don't have any -- any problems with making the adjustments as suggested by Ms. Saunders, although she's going to have to get those to me at a later point in time so I know what to take out.

MS. SAUNDERS:  Okay.

MR. TRAVIS:  But I agree with you.  The last thing we want is people Googling David Paul Hammer's name.

MR. MORENO:  Well, we'll have to take out of paragraph 6 also the reference, I believe, to Mr. Hammer.  So we'd have to go through the whole thing and resubmit a new one, just sanitizing it in that aspect.

THE COURT:  Right.  Also, what comes up if your law firm is Googled, Mr. Travis?

MR. TRAVIS:  Nothing -- nothing will --

I -- I don't know what will come up.

THE COURT:  First of all, your -- you have your name in here and your law firm.  So if --

MR. TRAVIS:  Yeah.

THE COURT:  If your name is Googled, what --

MR. TRAVIS:  I mean, I -- I assume that our website will come up.  I -- I've never Googled either myself or the firm.

THE COURT:  Well, you ought to try it.

MR. TRAVIS:  Okay.  I don't really know.

THE COURT:  I think -- let me cut through this.  I think we're all on the same wavelength.

All we want to do is send out a preliminary questionnaire to jurors telling them they may be summoned to the courthouse for jury duty on March 3rd and 4th of 2014, not give them the name of the case, the name of the defendant, and/or any other information that could possibly reveal that this is a capital case or the nature of the case.

MR. TRAVIS:  Okay.

THE COURT:  And even -- obviously, if you -- if you just have on here, the U.S. Attorney's office, Middle District of Pennsylvania, the

Department of Justice, that's not going to reveal anything. Your name might. Putting my name down as the trial judge is not going to reveal anything.

But you know, check -- check what happens if you Google your name and the law firm.

And I think counsel can work this out, let's say, by Monday. And get us a -- an ability-to-serve questionnaire cover sheet, the letter, and the -- and the questionnaire.

And we'll -- we'll send it out -- the clerk's office will send it out to 600 potential jurors, and we'll -- we'll try to get a return date two weeks after it goes out. It could be the 27th, 28th, 29th, whatever date the -- the clerk thinks is appropriate.

MR. LOMBARDI: Your Honor, what is the -- Paul Lombardi -- the plan for non-responses? Say of the 600, we only receive 400 back.

THE COURT: All right. Well, we'll -- we'll make a decision then whether we want to send out any more or just live with that -- that number and see where it takes us.

All right? And I'm going to leave that up to counsel, based on their experience, as to whether or not -- to a large extent, leave it up to

counsel, whether or not you think we ought to expand the panel.

MR. MORENO:  Can I ask a question of Mr. Lombardi?

THE COURT:  Yeah.

MR. MORENO:  In your experience here in Pennsylvania -- I know it was the -- the Kaboni Savage case that was tried last year --

MR. LOMBARDI:  Correct, correct.

MR. MORENO:  -- and was co-defendants. What was the return rate, if you recall?

MR. LOMBARDI:  We didn't do it this way. What we -- what we did in that case was, we brought in pools of jurors.  We brought in pools of jurors. So, for example, we brought in a pool of 300 jurors on the first date.

MR. MORENO:  I see.

MR. LOMBARDI:  We distributed this very simple, four-question hardship-and-disability questionnaire.  There was nothing on the questionnaire about the case, death penalty, and so forth.

And this just basically -- are you presently taking medication; does anyone in your family require assistance; are you a primary

caregiver; and is there any other reason why you cannot serve on a six-to eight-week case?

They were collected.  They were scanned, reviewed by counsel.  And approximately half of them were excused based on the hardship -- these hardships alone.

Following that, they were given the substantive questionnaire to complete.  They were scanned, and they were then told to return back in -- I believe it was groups of eight to ten on different days.

MR. MORENO:  Okay.

MR. LOMBARDI:  And we did that -- we did that four times.  So we had about 1,200 jurors that reported to the courthouse.  That's how many we needed in that particular case to impanel 18 jurors, 12 and 6 alternates.

MR. MORENO:  Okay.  Thank you.

THE COURT:  It seems to me that when I have the jurors first in front of me, I'm going to have to instruct them not to do any independent research about the case.

And at the time they're -- when they come back for individual questioning -- remind me -- I want to ask each of them, have you done any

individual research, just to make sure that they're not subject to outside influence.

All right?  I -- I assume that -- by Monday at some point, you'll send to us a final -- final version of what the clerk is going to send out?

If it needs to be -- I'm just trying to figure out the best way to get this without fax numbers on the top or the bottom.

MR. GURGANUS:  Electronically emailed.

MS. SAUNDERS:  I mean, we can -- we could just actually just file it, and you can -- it will pop up on ECF for you.  Right?

THE COURT:  Yes.

MS. SAUNDERS:  And then, I mean, we can email between each other about --

MR. GURGANUS:  But there's going to be --

MS. SAUNDERS:  Oh, yeah, yeah.

MR. GURGANUS:  They're going to want a clean copy.

MS. SAUNDERS:  I can email it to you. How's that?

THE COURT:  Yeah.  Why don't you do that?

MS. SAUNDERS:  Okay.

Page 27

THE COURT:  But I just want to take one last look at --

MS. SAUNDERS:  Oh, yeah.  Oh, yeah.

THE COURT:  -- whatever goes out.

MS. SAUNDERS:  Okay.

THE COURT:  And I assume it's going to go out on the stationary of the clerk of the court, whatever stationary you use.

MR. LOMBARDI:  The cover letter --

THE COURT:  Yes.

MR. LOMBARDI:  -- for the questionnaire?

THE COURT:  Yes.

All right.  So that deals with the -- with that issue.  I have --

MS. HAINES:  Your Honor, I'm sorry.

THE COURT:  Yes?

MS. HAINES:  I have just one housekeeping question.

THE COURT:  Yes.  This is --

MS. HAINES:  This is Amanda Haines --

THE COURT:  -- Amanda Haines.

MS. HAINES:  -- for the Government.

In Ritz Williams, they also included a self-addressed, stamped envelope for the jurors to respond, and I don't know if we've covered that --

THE COURT:  Yeah.

MS. HAINES:  -- with the clerk's office.

How are the jurors going to -- are they going to be given an envelope with a stamp to respond?

THE COURT:  Mr. Lombardi, we send out also a self-addressed, stamped envelope of some sort?

MR. LOMBARDI:  We do for the jurors to respond to the summons.  But depending on how lengthy the questionnaire is, we may have to provide a larger envelope.

THE COURT:  At Government expense, it would come back?  You would put the stamp on it?

MR. LOMBARDI:  Sure.

THE COURT:  All right.

MR. LOMBARDI:  Of course.

THE COURT:  All right.

MS. HAINES:  Thank you, Your Honor.

THE COURT:  Now, there are other open motions that -- that I have and one is a motion for additional peremptory challenges for the defendant, which is document number 1558.  And I have read the motion, and I have read the response.

And the rules allow 20 peremptories for each side as far as the initial panel of -- of 12

Page 29

jurors is concerned.  And we only have one defendant here and not multiple defendants, and I am going to deny a motion for additional peremptory challenges for above the 20.

The -- as far as alternates are -- are concerned, how many alternates do we need?  How many did you have in the Williams case?

MR. TRAVIS:  We -- we actually got a withdrawal of the death -- seek death the day before jury selection started, so we didn't -- so we didn't have alternates.

My recollection -- and, again, for the record, it's Mr. Travis.

My recollection is that when we tried this case the first time, as well as when we tried United States versus O'Driscoll up here -- I believe we had six alternates.

THE COURT:  All right.  And so if there's six alternates, there's three peremptories on each side under Rule 24(c)(4)(C) of the Federal Rules of Criminal Procedure.  So I have no objection to having six alternates.

Mr. Gurganus?

MR. GURGANUS:  No objection, Your Honor.

THE COURT:  All right.  So we'll --

Page 30

we'll -- we'll have six alternates.  So after we select the initial 12, we'll -- we'll deal with the alternates.  All right?  So we'll have 18 jurors sitting in the jury box.

All right?  So you'll see two orders enter the -- enter the docket, one granting the Government's motion to modify the jury selection process and one denying the motion for additional peremptory challenges.

Now, I've had sent in as part of the record Government's requested preliminary instructions to be given to jurors assembled to fill out the questionnaire.  And this -- this is a little premature at this point until we reach that point. That's document 1592.

I recollect that previously filed in this case were -- was something similar from the defense, from --

MR. TRAVIS:  Your Honor, it's Mr. Travis again.

Back on January 30, 2012 at docket 1440, I filed two things, one, the original jury -- larger jury questionnaire, and two, the proposed preliminary instructions.

The Government filed objections at

Page 31

docket 1449 on February 17, 2012.

At docket 1454 on March 2, 2012, we filed a response to those objections.

Then in -- in -- November 12th, at docket number -- yeah, November 26th of 2012, at docket number 1504, I filed revised proposed jury instructions, and at 1550, I revised -- a revised jury questionnaire, and then at docket 1574, on September 24th of this year -- or last year -- excuse me -- a revised jury questionnaire and -- so that we had -- we had the -- the prior papers on the record for some period of time.

And then in the last couple of days -- well, I guess seven o'clock last night, the Government filed the document that you're referencing.

And it's my understanding, although I had not yet seen it because I was out of the office all day, apparently the Government filed something else this morning concerning jury selection.

MR. MORENO:  That was the proposed preliminary --

INDISCERNIBLE SPEAKER:  Yes.

MR. MORENO:  -- instructions that I think the Judge was referencing a moment ago.

MR. TRAVIS:  Okay.

MR. MORENO:  What got filed last night was more of a --

THE COURT:  Yeah.  I have also Government's brief concerning the appropriate scope of voir dire and preliminary instructions.

I'm assuming they just want to educate me as to --

MR. MORENO:  Or miseducate you.

What we would ask, Judge -- that did come in last night, and we would ask for two weeks to respond to it, if we may.

THE COURT:  All right.  Well, which -- both of them?

MR. MORENO:  Yeah, sure, both of the -- I guess that would be cleaner, just do it -- do you two documents, or would you like us --

THE COURT:  Well, you know, it's -- Mr. Travis gave us a laundry list of -- of things I was looking at very carefully a year ago, before this case was continued again.

And the question I have is, how can we sort of expedite that process at this point.

MR. MORENO:  Well, we did have a conversation --

THE COURT:  I thought -- I thought, to some extent, that was being worked out.  I could be wrong.

MR. MORENO:  No, no.

THE COURT:  It's been a long time.

MR. MORENO:  And so earlier this week, we did have a conversation with our colleagues on the other side and discussed -- we went through the questionnaire.  And we came to agreement on some questions.  We agreed to some changes on others.  And then we agreed to disagree on a number of questions as well that, you know, we would then take to you.

THE COURT:  So I'm assuming that the documents referred to by Mr. Travis from about a year ago have been somehow modified or are currently by agreement.

MR. MORENO:  Yes, although we haven't formally changed the document.  I think the one we were working off of was the one that was filed in September of '13.

MS. SAUNDERS:  December.  It's the 1574.

MR. MORENO:  1574.

MS. SAUNDERS:  1574 is the document we were working off.

THE COURT:  When do you --

MR. MORENO:  Which was filed in November -- September of '13.

MS. SAUNDERS:  Right.

THE COURT:  Knowing that we have jurors coming in on March 3rd and 4th to complete the questionnaire that we're talking about now, when do you think you would have a final copy that you agree on and disagree on?

MR. MORENO:  Well, we can -- we could certainly provide the Court with the questions that we disagree on and set up a time to discuss those, if you'd like.

And we can also, you know, hammer out the language on the things we have agreed on.  Most of those, I think, are pretty -- pretty easy.

And I know Ms. --

Haine, Haines, Heinz?

MS. HAINES:  Haines.

MR. MORENO:  -- Haines, okay, provided us with some proposed language yesterday.  We've looked at it.  We're working with that as well as some of our own suggestions, which, you know, we will continue to work with the Government on that.

And we can get that language down and make those changes to the document that we agree on

and then, again, provide the Court with the areas that we -- that we disagree on.

MR. GURGANUS:  We had about -- Judge, this is John Gurganus on the record -- about 20 of the questions that we were struggling with and trying to fix and might need Court intervention on as well as some of the areas on the preliminary instructions that you would give the jurors before they filled out the questionnaire.

We submitted our arguments that will cover, like, the 20 questions that we're having trouble with, and we also submitted a -- a separate type of instruction for the jurors that is more straightforward -- well, not as -- not as objectionable to the Government, because there's certain areas that we have concerns about.  And that's why we submitted that alternative for the Court.

Ultimately, Judge, it's your decision, your discretion on -- on what the jurors fill out and what you tell them when they fill out the jury questionnaire.

THE COURT:  Well, why don't we do this. Why don't you file by February 15th -- let's say by February 15th, a document somehow entitled, agreed

Page 36

upon voir dire -- well, agreed upon questions for the questionnaire, and each side file a document saying, we want to supplement it with the following questions.  And, you know, give me the exact format, and I will rule on it.

MR. MORENO:  And that would be separate from our response to the motion they filed last night?

THE COURT:  Yes, because --

MR. MORENO:  The brief, the brief they filed last night.  I'm sorry.

THE COURT:  Let's see.  The one they filed last night is -- is requested preliminary instructions to be given to jurors assembled to fill out questionnaire.

Yeah, I'm not referring -- I'm just referring to the questionnaire now.

MR. MORENO:  Okay.

THE COURT:  And I do recall getting a year ago, this.  When I say "this," preliminary instructions from both sides.  And I -- I recall discussing it, I think, with counsel at some point.  I'm not sure.

MR. MORENO:  I'm not sure we had a detailed discussion about it.

THE COURT:  But I -- all right.  Maybe we didn't.  But I remember -- I remember working on it and putting Xs and Ys and Zs on it somehow and --

MR. MORENO:  Xs would be on the [indiscernible].

THE COURT:  And maybe my law clerk can file those -- find those and -- but why don't you submit to me what you think should be told preliminarily.  The defense should submit to me what you think should be told to the jurists preliminarily when they're -- before they fill out the questionnaires.

MR. MORENO:  And we did at one point in time.

THE COURT:  And then I'll -- I know you did.  I -- I --

MS. SAUNDERS:  Yeah.

THE COURT:  Mr. Travis referred to these things on the --

MR. MORENO:  Yeah, yeah.  Now, in terms of our response to their brief, when would you like that by?

THE COURT:  This brief?

MR. MORENO:  Two weeks?

MS. SAUNDERS:  We said two weeks.

MR. MORENO:  Oh, we said two weeks already?  Okay.

MS. SAUNDERS:  We said two weeks.

THE COURT:  Now, I have two briefs.  I have one which I'll call the -- the educational motion -- the educational brief?

MULTIPLE SPEAKERS:  Informative brief.

THE COURT:  Informative brief.  All right.  You can respond to that.

MR. MORENO:  Yeah, we'll respond to it.

THE COURT:  Maybe you think I should be educated with additional --

MR. MORENO:  Yes, we do.

THE COURT:  All right.  And then the second one is the requested preliminary instructions.

MR. MORENO:  Right.

THE COURT:  All right?  You want until the 15th also to respond to this?  You want to do it sooner?

MS. SAUNDERS:  That's fine.

MR. MORENO:  That's fine.

MS. SAUNDERS:  We could do that on the 15th as well --

THE COURT:  Yeah.

MS. SAUNDERS:  -- since that's when

we're submitting our suggestions.

THE COURT:  I probably won't be looking at it before then --

MR. MORENO:  Okay.

MS. SAUNDERS:  Okay.

THE COURT:  -- all right, given the -- the volume of work we have around here.  All right?

Now, there are other open motions, and I'm not going to rule upon them today.  And we do have motions, briefs, reply from the Government, and -- response from the Government, and reply.

One is document 1527, defendant's motion in limine to preclude the admission of irrelevant and constitutionally improper evidence under the guise of victim impact.

Defendant -- document 1523, which is defendant's motion in limine to preclude the admission of irrelevant and constitutionally improper evidence in support of the prior criminal convictions involving use of the threat of violence, aggravated, 18 U.S.C. Section 39 -- 3592(c)(2).

And 1527 -- 1526 -- I'm sorry -- which is a motion in limine to preclude the admission of irrelevant and constitutionally improper evidence under the guise of future dangerousness.

Page 40

Is that the one I said before, or did I --

MS. SAUNDERS:  No.  The first one was victim impact.

THE COURT:  Victim impact.

So there's three open motions that I will deal with in due course and enter orders about. I think they're pretty self-explanatory.

I have a sense that some of them may somehow be covered by other -- other rulings I made when I first got into this case and I had a litany of about 10 or 11 motions.

MR. MORENO:  I don't know if there's much open on that.

MS. SAUNDERS:  No, I -- I think this is sort of the -- this is -- this is sort of the continuation.  There were -- there was information that we didn't have initially that we had, and these motions in limine sort of arise from the Government's informational outline.

THE COURT:  Okay.

MS. SAUNDERS:  And the Court withheld final determination of some that we had raised -- some motions in limine we had raised until we had that processed.

Page 41

THE COURT:  All right.  So I will have to then go back and look at my prior rulings that I made probably in October/November 2011 or so.

MR. TRAVIS:  November -- Mr. Travis here.

THE COURT:  Yes.

MR. TRAVIS:  [Indiscernible] 2012.

THE COURT:  November 2012?

MR. TRAVIS:  No, that's the discovery motion.  I'm sorry.

THE COURT:  It would have to be, I think, 2011.  I think it's 2011.

MS. SAUNDERS:  I think it was 2011.

MR. TRAVIS:  Yeah.

THE COURT:  I issued about --

MR. TRAVIS:  We argued it in June --

THE COURT:  Right.

MR. TRAVIS:  -- but I think you decided it in the -- in the fall.  And part of it was, certainly, informational outlines were to be given to us, and these motions are in response to the content -- primarily in response to the content of the informational outlines that were provided.

THE COURT:  I understand.  And I thank everyone for that clarification.

Is there anything else anyone wants to discuss today?

MR. McHUGH:  Your Honor, there was as of -- as a result of those informational outlines -- this is Jim McHugh.

We kind of touched on it at the last conference call that we had with the Court.  There was a discovery motion that the defense had filed, supplemental discovery motion.  I know Mr. Gurganus said he was going to get a chance to look at that and -- I don't think the Government has responded yet formally.

MR. GURGANUS:  Yes, I have responded.

MR. McHUGH:  Well, it basically was tracking the informational outlines.  I think it included some SIS files, but it wasn't the one that specified just SIS files.

It tracked the informational outlines as far as the incidents and things of that nature, and I'm pretty sure it's outstanding, and I'm not sure you've yet filed a written response to it.  So --

THE COURT:  Well -- well, what's on the record that I haven't mentioned is document number 1530, motion for discovery, defendant David Hammer's second motion for discovery pursuant to Federal Rule

Page 43

of Civil Procedure 12(b)(3)(E) and 16, and also document 1564, which is a motion for SIS investigative reports.

             So those two motions I don't believe have been responded to.

             MR. GURGANUS:  No.  We're trying to work -- work on those, though they've become moot.

             MR. McHUGH:  The SIS motion, I -- we definitely had significant discussions as far as that.  I think that first motion, the 1530, goes beyond just SIS files.  So hopefully, you'll take a look at that, and we'll hear from the Government as far as their position on that soon.

             THE COURT:  All right.

             MR. MORENO:  And we have talked about -- I'm sorry, Your Honor.  I didn't mean to interrupt you.

             THE COURT:  I'm just saying, can we get that resolved by February 15th --

             MR. McHUGH:  Hopefully, yes.

             MR. MORENO:  Yeah.

             THE COURT:  -- those two motions?

             MR. GURGANUS:  Yes, Your Honor.

             MR. MORENO:  Mr. Gurganus and I have talked about us getting together, sitting down, and

Page 44

going over these discovery motions.

THE COURT:  And I'm -- I'm also going to need something -- Ms. Haines, you replaced Mr. Mellin in the case?

MS. HAINES:  I wouldn't say replaced, Your Honor.  Supplement.

THE COURT:  Supplement.  So he may show up in the future?

MS. HAINES:  He may.

THE COURT:  All right.

MR. McHUGH:  Season three he comes back.

THE COURT:  All right.  So try to work out those -- those two motions.  All right.

MR. MORENO:  Your Honor, Mr. Mellin turned this down to be in Hawaii.

THE COURT:  He's in Hawaii?

MR. MORENO:  Well, that's where he's going to be, right?  That's a case that conflicts with this one.

MS. SAUNDERS:  Yes.  He's trying a death penalty case in Hawaii right now.

THE COURT:  All right.

MS. SAUNDERS:  And he says it's very difficult, so --

THE COURT:  Okay.  What -- what else is

necessary to be discussed here?  Anything?

INDISCERNIBLE SPEAKER:  I can't think of anything right now.

MR. LOMBARDI:  I have a question, Your Honor.

THE COURT:  Yes, Mr. Lombardi.

MR. LOMBARDI:  Paul Lombardi.

Based on the instructions here and the questionnaire, the jurors who are required to appear to complete the substantive questionnaire, they will not appear prior to March the 3rd; is that correct?

THE COURT:  Yes.

MR. LOMBARDI:  Okay.  Because once we send out these -- these questionnaires, in our system, in our management system, we have to indicate a first day of appearance, in other words, a summons date.  But they physically won't receive a summons.

INDISCERNIBLE SPEAKER:  Right.

MR. LOMBARDI:  So it will be March the 3rd.  And on that day, normally what we do is, we -- we -- we give the -- the perspective jurors an orientation, which usually takes about an hour or so.  So I'm assuming --

THE COURT:  All right.  Now, let -- let me just alert you to -- let's assume we have a panel

of 450, for example.  We're only bringing in 225 on the 3rd and then 225 on the 4th.  We're not bringing in --

MR. LOMBARDI:  Correct.

THE COURT:  -- the -- and so you'll have to send out another notice to them telling them what day they have to appear.

MR. LOMBARDI:  Correct.

THE COURT:  Right?

MR. LOMBARDI:  Correct.  What I'm saying is, on that first day, whether it's March the 3rd or the 4th, we'll have to give them our orientation to go over their attendance fees, the reimbursement procedures, that sort of thing, prior to --

THE COURT:  I'm assuming we're going to have them assemble in the ceremonial courtroom.

MR. LOMBARDI:  Correct.  March the 3rd is a Monday, I assume.

MR. TRAVIS:  Yes.

MS. SAUNDERS:  Yes.  Yes, it is.

MR. LOMBARDI:  It would -- it would have to be the ceremonial courtroom due to the jury assembly room being used for other civil/criminal matters on that day.

THE COURT:  All right.  So you have them

report to that -- that room.

MR. LOMBARDI:  The ceremonial courtroom.

THE COURT:  Somehow in your mailing, you'll have to tell them what room to report to.

MR. LOMBARDI:  Okay.

THE COURT:  Yeah.  Modify it so they don't go to the regular jury assembly room.

MR. LOMBARDI:  Okay.

THE COURT:  All right?

MR. LOMBARDI:  So March the 3rd.  Okay.

THE COURT:  And we'll have to notify the U.S. Marshall somehow about the volume of people that will be coming into the courtroom that day if other judges are selecting a jury on that day, too.

MR. LOMBARDI:  Now that I'm thinking about it, Your Honor -- and don't quote me on this -- I understand the ceremonial courtroom is going to be renovated.  They're undergoing renovations for six to eight -- six- to eight-week period, from what I understand.  I don't know when it's going to begin, but it could be around that time.  It could be.  I'd have to check with our administrative services people.  I'm -- I'm thinking it's right around that time.

THE COURT:  All right.  Let's find out.

MR. LOMBARDI:  That's the other issue, where are we going to put these people --

THE COURT:  All right.  Let's --

MR. LOMBARDI:  -- especially if it's a larger group.

THE COURT:  Let's find out.  If not, we'll -- may have to use Mr. Travis's office or Mr. Gurganus's office.

INDISCERNIBLE SPEAKER:  Or additional days, I guess.

THE COURT:  Well, that's a possibility, too.  But it's going --

MR. MORENO:  Send them over to the Defender.  We'd treat them real well.

THE COURT:  Well, your office -- I mean, your office, too.  But we -- when we have this kind of volume of people, we have to, you know, make sure that we can accommodate them.

All right.  So Mr. Lombardi, look into that.

And if any -- any counsel has any questions about this process, don't hesitate to call Mr. Lombardi, because he is the world's greatest expert --

MR. LOMBARDI:  So they say.

Page 49

THE COURT:  -- about -- about bringing jurors into the courthouse.  So don't hesitate to -- to call him if you have any procedural questions you want --

INDISCERNIBLE SPEAKER:  Okay.  Thank you.

THE COURT:  -- you want answered.

All right?  Anything else anyone wants to put on the record?

Now, I'm -- I'm not going to enter an order on February 15th to respond to the -- the two discovery motions.  Why don't you work it out and somehow figure out how to -- how to -- what to put on the record to cover those motions, because they are listed as open motions on the record.

MR. MORENO:  Okay.

THE COURT:  We've got to make sure that we cover all the motions.

MR. McHUGH:  Judge, did you want to have another conference on the 15th?

THE COURT:  Well, we should, shouldn't we, set up another conference?

MR. MORENO:  Yeah.  Maybe shortly after the 15th, after you've had a chance to look at everything that's been --

THE COURT:  Yeah, why don't we --

MR. TRAVIS:  Excuse me, Mr. Moreno.  Remember, I'm not available during that time frame.

THE COURT:  What --

MR. TRAVIS:  This is Mr. Travis.

THE COURT:  What's your schedule between the 15th and the first of the month?

MR. TRAVIS:  Between the 15th of February?

THE COURT:  Yes, and the first of March.

MR. TRAVIS:  Yeah, I'll -- I'll be back -- I'll be back in the United States on the 17th.

THE COURT:  All right.  So --

INDISCERNIBLE SPEAKER:  17th of?

MS. SAUNDERS:  February.

MR. TRAVIS:  February.

MS. SAUNDERS:  February.

THE COURT:  Let me just get my calendar, and we'll --

                    -  -  -

(Whereupon, the audio recording ends.)

                    -  -  -

C E R T I F I C A T I O N

I, Judi Y. Olsen, do hereby certify that the foregoing is a true and correct transcript from the electronic sound recordings of the proceedings in the above-captioned matter.

_____          _____
Date                                Judi Y. Olsen

VERITEXT NATIONAL COURT REPORTING COMPANY
888-777-6690  ~  215-241-1000  ~  610-434-8588  ~  302-571-0510

**A**

ability 20:3
ability-to-serve 23:8
able 6:13 20:18
above-captioned 51:6
accommodate 48:18
accompany 9:7
additional 13:5 28:21 29:3 30:8 38:12 48:9
adjustments 21:10
administrative 47:22
administrator 2:11 5:25 6:2
admission 39:13,18 39:23
ADMITTED 3:8
adopt 11:4
affirmatively 12:17
aggravated 39:20
ago 31:25 32:20 33:15 36:20
agree 4:20 9:21 11:2 12:3,7 13:20 21:15 34:7,25
agreed 7:12 33:10 33:11 34:14 35:25 36:1
agreement 33:9,16
alert 12:5,13 45:25
allow 28:24
allowed 12:4
alternates 25:17 29:5,6,11,17,19 29:22 30:1,3
alternative 35:17
Amanda 1:13 27:20,21
AMERICA 1:3
amount 18:20
and/or 4:24 22:19
Anne 2:8 19:25
anne_saunders@...

2:10
answered 49:7
apparently 5:8 31:19
appear 9:10,13 45:9,11 46:7
appearance 45:16
APPEARANCES 1:9 2:1
appreciate 20:24
appropriate 5:7 17:12 23:15 32:5
approximately 4:14 25:4
area 16:21
areas 35:1,7,16
argued 12:7 41:16
arguments 35:10
arising 4:7
asked 20:4
asking 11:22,22
aspect 17:25 21:22
aspects 10:16
assemble 46:16
assembled 30:12 36:14
assembly 46:23 47:7
assistance 24:25
ASSOC 2:3
assume 6:9 9:9,23 13:24 22:7 26:3 27:6 45:25 46:18
assuming 10:9 13:7 15:19 32:7 33:13 45:23 46:15
attached 15:20
attendance 46:13
Attorney's 1:10 22:24
audio 2:12 50:22
AUSA 1:10,13
availability 4:16,24 11:17 12:23
available 6:7 19:6 50:3
a.m 1:6 7:17

**B**

B 3:7 5:4
back 4:16 9:11,15 11:8,12,16,23 23:18 25:9,24 28:13 30:21 41:2 44:11 50:12,12
based 16:14 23:24 25:5 45:8
basically 24:23 42:14
begins 6:9
behalf 5:12
believe 11:20 16:20 17:20 21:19 25:10 29:16 43:4
benefit 17:15
benefits 12:23
best 8:11 26:7
beyond 43:11
blanks 7:17
bottom 20:11 26:8
box 30:4
brief 32:5 36:10,10 37:21,23 38:6,7,8
briefs 38:4 39:10
bring 9:25
bringing 10:3 12:25 46:1,2 49:1
broader 20:13
brought 24:13,14 24:15
Building 1:11 2:4

**C**

C 1:10,17 51:1,1
calendar 50:19
call 11:16 12:1 14:9 19:20 38:5 42:7 48:22 49:3
called 14:15
capital 1:14 2:4 17:9 18:17 20:17 22:21
caption 18:24 19:16,20 20:3
carefully 32:20

caregiver 25:1
case 1:14 4:6 5:7 8:2 10:17,19,24 11:11,21 14:1 16:18,20 17:6,9 17:11,14,21 18:17 18:25 19:10 20:17 20:17 22:19,21,21 24:8,13,21 25:2 25:16,22 29:7,15 30:17 32:21 40:11 44:4,18,21
cases 10:14
cause 4:22,22
ceremonial 46:16 46:22 47:2,17
certain 4:17 8:6 35:16
certainly 15:13 34:10 41:20
certify 51:3
challenges 28:21 29:3 30:9
chambers 8:14
chance 42:10 49:24
change 8:9 19:15
changed 33:18
changes 33:10 34:25
check 23:4,4 47:22
Chestnut 2:9
Chief 8:3 11:15 12:8
Civil 43:1
civil/criminal 46:23
claims 5:3,4
clarification 41:25
clean 26:20
cleaner 32:16
clear 4:5 6:13
clerk 23:14 26:5 27:7 37:6
clerk's 5:22 8:5,11 9:16 11:3 12:14 13:11 23:11 28:2
closed 14:10

colleagues 33:7
collected 25:3
COLLOQUY 3:2
come 5:1 18:16,17 18:18 20:19 22:1 22:8 25:24 28:13 32:11
comes 18:21 21:23 44:11
coming 34:5 47:13
COMPANY 1:23
compared 12:1
complete 14:17 25:8 34:5 45:10
completed 14:9
completely 20:6
concept 14:11
concern 11:1 17:20 19:11 21:6
concerned 13:3 15:14 17:22 29:1 29:6
concerning 4:15 31:20 32:5
concerns 35:16
conference 1:7 4:9 42:7 49:20,22
conflicts 44:18
conform 11:4 14:1
confronted 11:1
CONNIE 2:12
consider 16:16
constitutionally 39:14,18,24
content 41:22,22
continuation 40:17
continue 34:23
continued 2:1 32:21
control 20:18
conversation 32:25 33:7
convicted 16:24
convictions 39:19
copies 9:16
copy 6:3 8:14 14:2 14:2 26:20 34:7

**CORPUS** 2:4
**correct** 24:9,9 45:11 46:4,8,10 46:17 51:4
**counsel** 4:19 9:18 9:19 11:1 23:6,24 24:1 25:4 36:22 48:21
**couple** 31:13
**course** 28:16 40:7
**court** 1:1,23 2:3 4:2 4:4 5:17 6:1,6,11 6:19,25 7:3,7,10 7:16,20,22 8:7,12 8:13,21 9:6 10:10 10:25 12:2,5,10 13:7,11,19,23 14:2,24 15:1,15 15:22,24 16:1,4,7 16:10,13,22 17:3 17:6 18:3,13,16 18:20 19:21,24 20:8,12 21:2,8,23 22:2,5,10,12,23 23:19 24:5 25:19 26:13,23 27:1,4,6 27:7,10,12,16,19 27:21 28:1,6,12 28:15,17,19 29:18 29:25 32:4,13,18 33:1,5,13,25 34:4 34:10 35:1,6,18 35:23 36:9,12,19 37:1,6,15,18,23 38:4,8,11,14,17 38:24 39:2,6 40:5 40:21,22 41:1,6,8 41:11,15,17,24 42:7,22 43:14,18 43:22 44:2,7,10 44:12,16,22,25 45:6,12,24 46:5,9 46:15,25 47:3,6,9 47:11,25 48:3,6 48:11,15 49:1,7 49:17,21 50:1,4,6 50:10,14,19

**courthouse** 5:1 10:4 12:25 20:19 22:17 25:15 49:2
**courtroom** 46:16 46:22 47:2,13,17
**cover** 6:8,15,17 7:9 8:4,4 9:6,7 13:8 15:19 23:8 27:9 35:11 49:14,18
**covered** 14:13 27:25 40:10
**co-defendants** 24:10
**criminal** 4:7 29:21 39:19
**currently** 33:15
**Curtis** 2:4
**cut** 22:12

———————————
**D**
———————————
**D** 3:1
**dangerousness** 39:25
**date** 4:17 8:6,7 9:12 14:16 15:4,6 15:7,9,10,13,15 23:12,14 24:16 45:17 51:8
**dates** 17:24
**David** 1:5 4:7 18:8 18:11 21:16 42:24
**day** 9:3,25 29:9 31:19 45:16,20 46:7,11,24 47:13 47:14
**days** 25:11 31:13 48:10
**deal** 30:2 40:7
**dealing** 7:3
**deals** 5:3,4 27:13
**death** 10:13 16:18 17:1,18 20:16 24:21 29:9,9 44:20
**December** 33:21
**decided** 41:18
**deciding** 17:17

**decision** 23:20 35:19
**defendant** 1:6,17 2:2 20:16 22:19 28:21 29:1 39:16 42:24
**defendants** 29:2
**defendant's** 5:19 39:12,17
**Defender** 2:3 48:14
**DEFENDER'S** 2:8
**defense** 12:7 13:18 15:14 21:5 30:18 37:9 42:8
**definitely** 43:9
**deny** 29:3
**denying** 30:8
**Department** 1:14 23:1
**depending** 28:9
**DESCRIPTION** 3:8
**detailed** 36:25
**detailing** 10:16
**determination** 40:23
**dictate** 14:9
**difference** 12:21
**different** 25:10
**difficult** 44:24
**dire** 32:6 36:1
**disagree** 33:11 34:8 34:11 35:2
**discovery** 41:9 42:8 42:9,24,25 44:1 49:12
**discretion** 35:20
**discuss** 34:11 42:2
**discussed** 5:14 33:8 45:1
**discussing** 36:22
**discussion** 36:25
**discussions** 43:9
**dispute** 12:8
**distributed** 4:19 11:24 24:18
**District** 1:1,1,8 4:8

5:9 12:15 22:25
**DIVISION** 2:3
**docket** 6:14,23 30:6 30:21 31:1,2,5,6,8
**document** 4:11 5:20 6:16 8:8 28:22 30:15 31:15 33:18,23 34:25 35:25 36:2 39:12 39:16 42:23 43:2
**documents** 32:17 33:14
**doing** 8:10 19:4
**draft** 6:4 13:25
**due** 40:7 46:22
**duty** 9:9 19:2 22:17
**D.C** 1:15

———————————
**E**
———————————
**E** 3:1,7 51:1
**earlier** 33:6
**easy** 34:15
**ECF** 26:12
**educate** 32:7
**educated** 38:12
**educational** 38:5,6
**efficient** 4:21
**eight** 25:10 47:19
**eight-week** 25:2 47:19
**either** 8:10 22:9
**electronic** 2:24 51:5
**electronically** 14:20 26:9
**eliminated** 9:21
**eliminating** 4:20
**email** 26:15,21
**emailed** 26:9
**en** 12:18
**enclosed** 13:9 14:18
**ends** 50:22
**enter** 5:18 30:6,6 40:7 49:10
**entitled** 35:25
**envelope** 13:9

14:18 27:24 28:4 28:7,11
**especially** 48:4
**ESQ** 1:17 2:2,2,8
**essentially** 4:13
**everybody** 11:21
**evidence** 39:14,19 39:24
**exact** 11:18 36:4
**exactly** 16:2
**example** 12:5 24:15 46:1
**excuse** 7:1 11:25 12:1 15:6 31:9 50:2
**excused** 4:23 12:3,6 25:5
**exempt** 4:25
**exemption** 5:5 11:8 11:22,23
**expand** 24:1
**expedite** 32:23
**expense** 28:12
**expensive** 4:22
**experience** 23:24 24:6
**expert** 48:24
**extent** 23:25 33:2

———————————
**F**
———————————
**F** 1:15 51:1
**fact** 12:14
**faith** 21:2
**fall** 41:19
**family** 24:25
**far** 12:18 13:3 15:14 28:25 29:5 42:19 43:9,13
**fax** 8:13 13:24 14:2 26:7
**fear** 10:17
**February** 15:17 31:1 35:24,25 43:19 49:11 50:9 50:16,17,18
**federal** 1:11 2:3,8 16:23 29:20 42:25

**feel** 17:14
**fees** 46:13
**figure** 26:7 49:13
**file** 14:10 26:11
  35:24 36:2 37:7
**filed** 6:15,20,24
  30:16,22,25 31:3
  31:6,15,19 32:2
  33:19 34:1 36:7
  36:11,13 42:8,21
**files** 42:16,17 43:11
**fill** 9:25 13:8 30:12
  35:20,21 36:14
  37:11
**filled** 7:17 35:8
**final** 26:4,5 34:7
  40:23
**find** 18:13 19:6
  37:7 47:25 48:6
**fine** 8:12,15 15:13
  38:20,21
**firm** 21:24 22:3,9
  23:5
**first** 9:3 14:14,21
  16:17 18:5 20:25
  22:2 24:16 25:20
  29:15 40:3,11
  43:10 45:16 46:11
  50:7,10
**first-degree** 16:24
**fix** 35:6
**FLORES** 2:12
**follow** 5:18 15:16
**following** 16:8 25:7
  36:3
**foregoing** 51:4
**form** 14:1
**formally** 33:18
  42:12
**format** 36:4
**forth** 24:22
**forthwith** 14:5
**four** 25:14
**four-question**
  24:19
**frame** 50:3
**front** 5:8 6:21 7:11

  12:8 19:13 25:20
**future** 39:25 44:8

———————————
          **G**
———————————
**getting** 36:19 43:25
**give** 8:16 19:8
  22:18 35:8 36:4
  45:21 46:12
**given** 25:7 28:4
  30:12 36:14 39:6
  41:20
**go** 19:18 21:20 27:7
  41:2 46:13 47:7
**goes** 23:13 27:4
  43:10
**going** 9:5 11:16
  12:24 15:3 17:17
  18:10,16 19:5,12
  19:24 21:2,11
  23:1,3,23 25:20
  26:5,16,19 27:6
  28:3,4 29:2 39:9
  42:10 44:1,2,18
  46:15 47:17,20
  48:2,12 49:10
**Google** 18:11 23:5
**Googled** 21:24 22:5
  22:8
**Googling** 21:7,16
**Government** 5:11
  5:13 12:5 15:11
  27:22 28:12 30:25
  31:15,19 34:23
  35:15 39:10,11
  42:11 43:12
**Government's** 30:7
  30:11 32:5 40:19
**granting** 5:18 30:6
**greater** 12:16 21:6
**greatest** 48:23
**greeting** 20:25
**Greetings** 6:9
**group** 48:5
**groups** 25:10
**guess** 12:13 31:14
  32:16 48:10
**guilty** 17:17

**guise** 39:14,25
**Gurganus** 1:10
  5:12,14 13:19,21
  14:2 16:14 17:2
  17:10 18:12,15
  19:3 26:9,16,19
  29:23,24 35:3,4
  42:9,13 43:6,23
  43:24
**Gurganus's** 20:13
  48:8

———————————
          **H**
———————————
**H** 1:7 3:7
**HABEAS** 2:4
**Haine** 34:17
**Haines** 1:13 27:15
  27:17,20,20,21,22
  28:2,18 34:17,18
  34:18,19 44:3,5,9
**half** 25:4
**hammer** 1:5 4:7
  17:16 18:9,11
  21:20 34:13
**Hammer's** 21:17
  42:24
**hands** 14:4
**happening** 18:22
**happens** 23:5
**hardship** 4:15,23
  5:4 17:13,22 25:5
**hardships** 25:5
**hardship-and-dis...**
  24:19
**Harrisburg** 2:9
**Hawaii** 44:15,16,21
**hear** 4:4 20:19
  43:12
**heard** 8:23
**hearing** 20:14
**Heinz** 34:17
**help** 13:1
**hesitate** 48:22 49:2
**Hi** 5:24
**high** 10:24
**high-profile** 10:24
**Honor** 4:3 5:14

  6:10 7:14,15,24
  8:20 12:20 13:18
  14:8 19:23 20:21
  21:5 23:16 27:15
  28:18 29:24 30:19
  42:3 43:16,23
  44:6,14 45:5
  47:16
**HONORABLE** 1:7
**hopefully** 4:19
  43:11,20
**hour** 45:22
**housekeeping**
  27:18
**How's** 26:22
**hundred** 13:5

———————————
          **I**
———————————
**identification**
  20:15
**identified** 18:6
**identify** 19:4
**impact** 39:15 40:4
  40:5
**impanel** 25:16
**implication** 20:13
**imprisonment**
  16:25
**improper** 39:14,18
  39:24
**inadvertently** 6:15
**incidents** 42:19
**include** 15:3 16:17
**included** 27:23
  42:16
**Independence** 2:5
**independent** 25:21
**indicate** 45:15
**indiscernible** 7:13
  18:23 19:14,17,17
  31:23 37:5 41:7
  45:2,18 48:9 49:5
  50:15
**individual** 25:24
  26:1
**individually** 11:25
**individuals** 18:6

**influence** 26:2
**inform** 13:1
**information** 22:20
  40:17
**informational**
  40:20 41:20,23
  42:4,15,18
**Informative** 38:7,8
**initial** 10:16 28:25
  30:2
**initially** 40:18
**inserted** 8:8
**instruct** 25:21
**instruction** 35:13
**instructions** 4:10
  19:8 30:12,24
  31:7,24 32:6 35:7
  36:14,21 38:15
  45:8
**interrupt** 43:16
**intervention** 35:6
**investigative** 43:3
**involving** 39:20
**irrelevant** 39:13,18
  39:24
**issue** 17:12,13
  27:14 48:1
**issued** 41:15
**issues** 4:15 19:7

———————————
          **J**
———————————
**J** 2:2
**JAMES** 2:2,2
**james_mchugh...**
  2:6
**james_moreno@...**
  2:7
**January** 1:5 9:12
  15:8,12,13,17,24
  16:4,11 30:21
**Jim** 15:2 42:5
**JOEL** 1:7
**John** 1:10 35:4
**john.gurganus@...**
  1:12
**JR** 1:10
**judge** 1:8 5:8 8:3

11:15 12:8 13:22 14:22 15:8 19:9 20:20 23:3 31:25 32:10 35:3,19 49:19
**judges** 47:14
**Judi** 2:13 51:3,8
**June** 41:16
**jurists** 37:10
**juror** 20:5
**jurors** 4:14,20,22 7:22 8:17,20,25 9:3,17 10:4,17,22 15:4 18:7 19:4 22:16 23:12 24:14 24:14,15 25:14,16 25:20 27:24 28:3 28:8 29:1 30:3,12 34:4 35:8,13,20 36:14 45:9,21 49:2
**jury** 2:11 4:9,13,25 5:5,19,24 6:2,16 9:4,9 16:15 18:2 19:2,11 22:17 29:10 30:4,7,22 30:23 31:6,8,10 31:20 35:21 46:22 47:7,14
**Justice** 1:14 23:1

### K

**Kaboni** 24:7
**Kane** 5:8 8:3 11:15 12:8
**keep** 19:10
**kind** 42:6 48:16
**know** 7:23 8:8,17 9:4,20,23 10:21 12:2,18 13:5 14:16,16,20 15:9 15:11,19 17:3,4,4 17:8,9,19,22,23 19:5 20:18 21:5 21:12 22:1,11 23:4 24:7 27:25 32:18 33:12 34:13

34:16,22 36:4 37:15 40:13 42:9 47:20 48:17
**Knowing** 34:4

### L

**L** 2:8
**language** 34:14,20 34:24
**large** 23:25
**larger** 28:10 30:22 48:5
**laundry** 32:19
**law** 21:24 22:3 23:5 37:6
**leave** 19:1 23:23,25
**lengthy** 10:8 28:9
**letter** 8:4,14,14 9:7 9:7 13:8,25,25 14:9 15:3,19 23:9 27:9
**let's** 9:11,23 13:24 23:7 35:24 36:12 45:25 47:25 48:3 48:6
**life** 16:25 17:18
**light** 17:19 18:1 19:11
**limine** 39:13,17,23 40:19,24
**line** 17:25 18:5
**list** 12:1 32:19
**listed** 49:15
**litany** 40:11
**little** 30:13
**live** 23:21
**Lombardi** 2:11 5:24,24 6:1,2,3,5 6:7 8:16,18,19,24 10:6,11 11:6 15:16,18,23,25 23:16,17 24:4,9 24:12,18 25:13 27:9,11 28:6,8,14 28:16 45:4,6,7,7 45:13,19 46:4,8 46:10,17,21 47:2

47:5,8,10,15 48:1 48:4,19,23,25
**Lombardi's** 14:4
**long** 33:5
**look** 6:14,16,21 8:15 14:3 19:9 27:2 41:2 42:10 43:12 48:19 49:24
**looked** 34:21
**looking** 16:23 32:20 39:2
**lose** 12:24
**lot** 5:16 11:5 18:18
**loud** 4:5 8:21

### M

**mail** 4:14
**mailed** 7:12,23
**mailing** 47:3
**main** 9:2
**making** 21:10
**management** 45:15
**March** 9:10,10 22:18 31:2 34:5 45:11,19 46:11,17 47:10 50:10
**marked** 3:8,9
**Market** 1:24
**Marshall** 47:12
**masse** 12:18
**matter** 51:6
**matters** 46:24
**McHUGH** 2:2 18:24 42:3,5,14 43:8,20 44:11 49:19
**mean** 12:11 15:18 18:20 22:7 26:10 26:14 43:16 48:15
**medication** 24:24
**Mellin** 44:3,14
**mentioned** 9:4 10:20 15:8 42:23
**mic** 8:22 15:1
**Middle** 1:1 4:8 5:8 12:15 22:25
**MID-ATLANTIC**

1:23
**miseducate** 32:9
**modified** 33:15
**modify** 4:12 5:19 30:7 47:6
**moment** 31:25
**Monday** 15:21,22 16:9,10 23:7 26:4 46:18
**month** 50:7
**moot** 43:7
**Moreno** 2:2 14:22 14:25 15:2,2 16:2 16:6,9,12 17:7 18:18,23 19:1 21:18 24:3,6,10 24:17 25:12,18 31:21,24 32:2,9 32:15,24 33:4,6 33:17,22 34:1,9 34:19 36:6,10,18 36:24 37:4,13,20 37:24 38:1,10,13 38:16,21 39:4 40:13 43:15,21,24 44:14,17 48:13 49:16,23 50:2
**morning** 14:20 31:20
**motion** 4:12 5:19 28:20,23 29:3 30:7,8 36:7 38:6 39:12,17,23 41:10 42:8,9,24,25 43:2 43:8,10
**motions** 28:20 39:8 39:10 40:6,12,19 40:24 41:21 43:4 43:22 44:1,13 49:12,14,15,18
**multiple** 18:6 29:2 38:7
**murder** 16:24

### N

**N** 3:1 51:1
**name** 5:23 18:24

19:7,13 20:10 21:17 22:3,5,18 22:19 23:2,2,5
**NATIONAL** 1:23
**nature** 10:24 19:9 22:21 42:19
**necessary** 45:1
**need** 13:1 29:6 35:6 44:3
**needed** 25:16
**needlessly** 4:22
**needs** 26:6
**never** 10:12,12 22:8
**new** 21:21
**night** 31:14 32:2,11 36:8,11,13
**non-responses** 23:17
**normally** 45:20
**notice** 46:6
**notified** 9:13 12:2
**notify** 47:11
**November** 31:4,5 34:2 41:4,8
**number** 3:8 4:7,11 4:20 5:20 7:2,8 12:6 21:7 23:21 28:22 31:5,6 33:11 42:23
**numbers** 11:18 12:2 26:8
**numerically** 12:16
**N.W** 1:15

### O

**O** 51:1
**objection** 29:21,24
**objectionable** 35:15
**objections** 30:25 31:3
**obviously** 22:23
**occurred** 8:1
**October/Novemb...** 41:3
**office** 1:10 2:8 5:22

6:15 8:5,9,11 9:16 11:4 12:14 13:12 14:11 22:25 23:11 28:2 31:18 48:7,8 48:15,16
**Oh** 7:1 26:18 27:3 27:3 38:1
**okay** 7:19,21 10:11 21:4,14 22:11,22 25:12,18 26:25 27:5 32:1 34:19 36:18 38:2 39:4,5 40:21 44:25 45:13 47:5,8,10 49:5,16
**Olsen** 2:13 51:3,8
**once** 4:18 7:23 9:15 45:13
**open** 28:19 39:8 40:6,14 49:15
**OPERATOR** 2:12
**opposition** 5:10
**order** 5:18 17:11 49:11
**orders** 30:5 40:7
**ordinarily** 4:23
**orientation** 45:22 46:12
**original** 13:2 30:22
**ought** 12:10 22:10 24:1
**outline** 40:20
**outlines** 41:20,23 42:4,15,18
**outside** 26:2
**outstanding** 42:20
**o'clock** 31:14
**O'Driscoll** 29:16

_____

**P**

**PA** 1:3,11,18,24 2:5 2:9
**page** 3:1 7:17 20:25 20:25
**panel** 9:22 24:2 28:25 45:25
**papers** 31:11
**paragraph** 16:17

20:6,11,25 21:19
**part** 5:3,4 30:10 41:19
**particular** 25:16
**parties** 7:11 13:15
**Paul** 1:5 2:11 5:24 18:8,11 21:16 23:17 45:7
**penalty** 10:14 16:18 24:21 44:21
**Pennsylvania** 1:1 4:8 5:9 12:15 22:25 24:7
**people** 12:15 13:5 20:18 21:16 47:12 47:23 48:2,17
**percent** 11:18,19 13:14 18:11
**peremptories** 28:24 29:19
**peremptory** 28:21 29:3 30:9
**period** 20:5 31:12 47:19
**person** 16:15 18:2
**perspective** 45:21
**Philadelphia** 1:3 1:24 2:3,5
**physically** 45:17
**Plaintiff** 1:3,10
**plan** 23:17
**planning** 12:17
**pleaded** 17:16
**please** 13:8 14:17
**point** 4:14 9:24 17:13 21:12 26:4 30:14,14 32:23 36:22 37:13
**points** 14:13
**pool** 13:2 24:15
**pools** 24:14,14
**pop** 26:12
**position** 43:13
**possibility** 17:1 48:11
**possible** 14:6,7 16:25

**possibly** 22:20
**potential** 10:3 12:22 18:7 23:11
**preclude** 39:13,17 39:23
**prefers** 8:7
**preliminarily** 37:9 37:10
**preliminary** 4:10 22:16 30:11,23 31:22 32:6 35:7 36:13,20 38:15
**premature** 30:14
**present** 5:21
**presently** 24:24
**pretty** 11:17 12:18 34:15,15 40:8 42:20
**prevent** 18:21,22
**previously** 30:16
**primarily** 41:22
**primary** 24:25
**prior** 31:11 39:19 41:2 45:11 46:14
**probably** 15:21 18:11 39:2 41:3
**problems** 21:10
**procedural** 49:3
**procedure** 11:3 29:21 43:1
**procedures** 46:14
**proceed** 14:4
**proceedings** 2:24 51:5
**process** 4:13,21 5:7 5:7,11,18,20 10:2 13:4 14:14 30:8 32:23 48:22
**processed** 40:25
**produced** 2:25
**proper** 11:3
**properly** 19:9
**proposed** 30:23 31:6,21 34:20
**prospective** 9:21
**provide** 28:10 34:10 35:1

**provided** 34:19 41:23
**PUBLIC** 2:8
**pursuant** 42:25
**put** 6:17 17:7 28:13 48:2 49:9,13
**putting** 23:2 37:3
**p.m** 7:18

_____

**Q**

**qualified** 18:7
**question** 9:2 14:23 16:15 18:4 20:13 24:3 27:18 32:22 45:4
**questioning** 25:24
**questionnaire** 4:15 5:2 6:4,17 8:3 9:1 9:8,11 10:1,7,8,16 11:17 12:23 13:9 14:17 15:20 20:4 22:16 23:8,9 24:20,21 25:8 27:11 28:10 30:13 30:23 31:8,10 33:9 34:6 35:9,22 36:2,15,17 45:9 45:10
**questionnaires** 4:9 9:5 11:20 12:11 37:12 45:14
**questions** 33:10,11 34:10 35:5,11 36:1,4 48:22 49:3
**quote** 47:16

_____

**R**

**R** 51:1
**raised** 14:14 40:23 40:24
**rate** 11:19 13:15 24:11
**reach** 30:14
**read** 4:11 10:18 28:22,23
**real** 48:14
**really** 8:22 22:11
**reason** 10:18 21:5

25:1
**reasons** 4:25 21:7
**recall** 24:11 36:19 36:21
**receive** 10:17 15:19 23:18 45:17
**recollect** 30:16
**recollection** 8:1 29:12,14
**reconsider** 18:1
**record** 4:12 5:23 29:13 30:11 31:11 35:4 42:23 49:9 49:14,15
**recorded** 2:24
**recording** 2:24 50:22
**recordings** 51:5
**reference** 21:19
**referencing** 31:16 31:25
**referred** 33:14 37:18
**referring** 36:16,17
**REGION** 1:23
**regular** 47:7
**reimbursement** 46:13
**release** 17:1
**remember** 37:2,2 50:3
**remind** 25:24
**renovated** 47:18
**renovations** 47:18
**replaced** 44:3,5
**reply** 39:10,11
**report** 14:15 17:23 47:1,4
**reported** 25:15
**REPORTING** 1:23
**reports** 43:3
**requested** 30:11 36:13 38:15
**require** 24:25
**required** 9:3,10 11:8 45:9
**research** 25:22

26:1
**resolved** 43:19
**respond** 11:11
  12:17 27:25 28:5
  28:9 32:12 38:9
  38:10,18 49:11
**responded** 42:11
  42:13 43:5
**response** 28:23
  31:3 36:7 37:21
  39:11 41:21,22
  42:21
**resubmit** 8:10
  21:21
**result** 42:4
**return** 7:23 8:7
  9:17 10:22 11:19
  13:9,14 14:16,17
  15:6 19:5 23:12
  24:11 25:9
**returned** 4:18 8:6
**returning** 12:18
**reveal** 22:20 23:1,3
**review** 9:19,20
**reviewed** 5:2 25:4
**revised** 6:16 31:6,7
  31:7,10
**revision** 6:17
**RIEDERS** 1:17
**right** 4:4 5:17 6:6
  6:19,25 7:3,6,10
  7:16 13:10,13,19
  13:23 17:2 18:12
  19:14 20:10 21:23
  23:19,23 26:3,12
  27:13 28:15,17
  29:18,25 30:3,5
  32:13 34:3 37:1
  38:9,14,16,17
  39:6,7 41:1,17
  43:14 44:10,12,13
  44:18,21,22 45:3
  45:18,24 46:9,25
  47:9,23,25 48:3
  48:19 49:8 50:14
**Ritz** 8:2 16:20
  17:21 27:23

**Ron** 11:10
**RONALD** 1:17
**room** 46:23 47:1,4
  47:7
**RPR** 2:13 51:8
**rtravis@riederst...**
  1:19
**rule** 29:20 36:5
  39:9 42:25
**rules** 28:24 29:20
**rulings** 40:10 41:2

_____
**S**

**S** 2:12 3:7
**safer** 13:4
**sanitizing** 21:21
**satisfactory** 13:15
  13:18,22 15:10
**satisfied** 8:10
**Saturday** 16:3,5
**Saunders** 2:8 19:12
  19:15,18,21,23,25
  19:25 20:9 21:11
  21:14 26:10,14,18
  26:21,25 27:3,5
  33:21,23 34:3
  37:17,25 38:3,20
  38:22,25 39:5
  40:3,15,22 41:13
  44:20,23 46:20
  50:16,18
**Savage** 24:8
**save** 10:3 11:5
**saying** 16:15 18:2
  19:19 36:2 43:18
  46:10
**says** 16:22,23 17:8
  18:5 44:23
**scanned** 25:3,9
**schedule** 50:6
**scheduled** 4:8
**scope** 32:5
**Scranton** 1:11
**Season** 44:11
**second** 9:25 10:7
  38:15 42:25
**Section** 1:14 39:21

**see** 5:10 12:24
  19:13 20:24 23:22
  24:17 30:5 36:12
**seek** 29:9
**seeking** 11:7
**seen** 31:18
**select** 30:2
**selected** 10:5
**selecting** 47:14
**selection** 4:13 5:19
  9:4 29:10 30:7
  31:20
**self-addressed**
  27:24 28:7
**self-explanatory**
  40:8
**send** 9:1,5,11 10:21
  11:8,8,12,16,23
  12:10,21 14:1
  22:15 23:10,11,20
  26:4,5 28:6 45:14
  46:6 48:13
**sending** 12:17 13:3
  17:15
**sense** 5:16 40:9
**sent** 9:17 10:15
  11:20 13:11 14:20
  15:21 30:10
**sentence** 16:25
  17:1,8,18,18
  20:17
**sentencing/retrial**
  18:8
**separate** 35:12
  36:6
**September** 6:24
  31:9 33:20 34:2
**serious** 21:6
**serve** 10:19 18:7
  20:3,4 25:2
**service** 2:25 4:25
  5:5
**services** 47:22
**set** 34:11 49:22
**seven** 31:14
**sheet** 6:8,14,15,18
  7:9 8:4 23:8

**shortly** 49:23
**show** 44:7
**sic** 10:15
**side** 28:25 29:20
  33:8 36:2
**sides** 4:19 9:18 11:2
  11:25 12:4 36:21
**significant** 43:9
**similar** 30:17
**simple** 24:19
**Sir** 4:2
**SIS** 42:16,17 43:2,8
  43:11
**sit** 17:23
**sitting** 30:4 43:25
**six** 29:17,19,22
  30:1 47:18,19
**six-to** 25:2
**skip** 20:5
**SLOMSKY** 1:7
**somebody** 16:24
**soon** 13:23 43:13
**sooner** 38:19
**sorry** 14:25 19:23
  27:15 36:11 39:22
  41:10 43:16
**sort** 28:7 32:23
  40:16,16,19 46:14
**sound** 2:24 51:5
**speak** 8:21,22
  14:24 15:1
**SPEAKER** 7:13
  19:14,17 31:23
  45:2,18 48:9 49:5
  50:15
**SPEAKERS** 38:7
**speaking** 19:22
  20:1
**specific** 17:21
**specifically** 6:20
**specified** 42:17
**spots** 7:20
**Square** 2:5
**stamp** 28:4,13
**stamped** 27:24
  28:7
**started** 29:10

**state** 5:22 9:8 10:19
**states** 1:1,3,8,10
  4:6 13:8 18:8
  29:16 50:12
**stating** 10:23
**stationary** 27:7,8
**STATUS** 1:7
**statutory** 4:25
**step** 14:14
**straightforward**
  35:14
**Street** 1:15,18,24
  2:9
**strikes** 19:3
**struggling** 35:5
**stuff** 18:18
**subject** 26:2
**submit** 37:8,9
**submitted** 5:3
  35:10,12,17
**submitting** 39:1
**subsequently** 9:13
**substantive** 10:8
  25:8 45:10
**sufficient** 15:10
  21:3
**suggested** 21:10
**suggestions** 34:22
  39:1
**Suite** 1:24 2:4,9
**summoned** 9:8
  19:2 22:17
**summons** 8:20,25
  9:1 28:9 45:16,17
**supplement** 13:2
  36:3 44:6,7
**supplemental** 42:9
**support** 39:19
**supposed** 21:1
**sure** 8:23 17:11
  18:17 21:8 26:1
  28:14 32:15 36:23
  36:24 42:20,20
  48:17 49:17
**system** 16:23 45:15
  45:15

VERITEXT NATIONAL COURT REPORTING COMPANY
215-241-1000   ~  302-571-0510   ~   610-434-8588   ~   888-777-6690

| **T** | | | | |
|---|---|---|---|---|

**T** 3:7 51:1,1
**take** 19:20 20:2,6 20:10 21:13,18 27:1 33:12 43:11
**takes** 23:22 45:22
**talk** 20:7
**talked** 43:15,25
**talking** 34:6
**tell** 15:5 17:16 35:21 47:4
**telling** 22:16 46:6
**tells** 20:25
**ten** 25:10
**terms** 37:20
**thank** 25:18 28:18 41:24 49:5
**thing** 14:21 21:16 21:21 46:14
**things** 19:6 30:22 32:19 34:14 37:19 42:19
**think** 12:10,24 14:10 16:15,21 17:4 20:9 22:12 22:13 23:6 24:1 31:25 33:18 34:7 34:15 36:22 37:8 37:10 38:11 40:8 40:15 41:12,12,13 41:18 42:11,15 43:10 45:2
**thinking** 47:15,23
**thinks** 12:6 23:14
**Third** 1:18
**thought** 5:15 33:1,1
**threat** 39:20
**three** 29:19 40:6 44:11
**time** 10:3 11:5 21:12 25:23 29:15 31:12 33:5 34:11 37:14 47:21,24 50:3
**times** 25:14
**today** 4:9 5:21 15:16 39:9 42:2

**told** 8:5 25:9 37:8 37:10
**tomorrow** 14:3,20 15:20
**top** 26:8
**touched** 42:6
**tracked** 42:18
**tracking** 42:15
**TRANSCRIBER** 2:13
**transcript** 1:7 2:25 51:4
**transcription** 2:25
**Travis** 1:17,17 4:3 6:10,12,13,23 7:1 7:5,8,15,19,21,24 7:25 11:13,14 12:12 13:10,16,17 14:7 15:5,7 17:5 20:12,21,22 21:4 21:9,15,24,25 22:4,7,11,22 29:8 29:13 30:19,19 32:1,19 33:14 37:18 41:4,4,7,9 41:14,16,18 46:19 50:2,5,5,8,11,17
**Travis's** 48:7
**treat** 48:14
**tremendous** 18:20
**trial** 17:24 23:3
**tried** 24:8 29:14,15
**trouble** 35:12
**true** 51:4
**try** 14:24 22:10 23:12 44:12
**trying** 12:13 19:4 26:6 35:5 43:6 44:20
**turned** 44:15
**two** 5:9 7:20 16:2,3 23:13 30:5,22,23 32:11,17 37:24,25 38:1,3,4 43:4,22 44:13 49:11
**type** 35:13
**typed** 14:19

| **U** | | | | |
|---|---|---|---|---|

**ultimately** 14:15 35:19
**undergoing** 47:18
**understand** 10:25 20:23 41:24 47:17 47:20
**understanding** 31:17
**undue** 5:4
**UNIT** 2:4
**United** 1:1,3,8,10 4:6 18:8 29:16 50:12
**use** 13:5,6 27:8 39:20 48:7
**usually** 45:22
**U.S** 1:14 22:24 47:12
**U.S.C** 39:21

| **V** | | | | |
|---|---|---|---|---|

**venture** 18:10
**VERITEXT** 1:23
**version** 26:5
**versus** 4:6 18:8 29:16
**victim** 39:15 40:4,5
**violence** 39:20
**voir** 32:6 36:1
**volume** 39:7 47:12 48:17
**vs** 1:4

| **W** | | | | |
|---|---|---|---|---|

**W** 1:18
**want** 8:22 15:17 17:10 18:1 21:16 22:15 23:20 25:25 26:19 27:1 32:7 36:3 38:17,18 49:4,7,19
**wants** 42:1 49:8
**Washington** 1:15
**wasn't** 42:16
**wavelength** 22:14
**way** 8:10 10:2

11:15 24:12 26:7
**website** 22:8
**week** 33:6
**weeks** 16:3,3 23:13 32:11 37:24,25 38:1,3
**went** 5:15 8:5 17:21 33:8
**West** 2:4,5
**we'll** 19:15 21:18 23:10,10,12,12,19 23:20 29:25 30:1 30:1,2,2,3 38:10 43:12 46:12 47:11 48:7 50:20
**we're** 7:3 9:4,24,24 12:16,24 17:22 19:4 22:13 34:6 34:21 35:11 39:1 43:6 46:1,2,15
**we've** 10:11,11,14 10:15 27:25 34:20 49:17
**Williams** 8:2 11:21 14:10 16:20 17:21 27:23 29:7
**Williamsport** 1:18
**willing** 13:13
**withdrawal** 29:9
**withheld** 40:22
**word** 6:9
**words** 45:16
**work** 8:18 10:2 23:6 34:23 39:7 43:7,7 44:12 49:12
**worked** 33:2
**working** 33:19,24 34:21 37:2
**works** 8:11
**world's** 48:23
**wouldn't** 44:5
**written** 42:21
**wrong** 7:2,2 33:3

| **X** | | | | |
|---|---|---|---|---|

**X** 3:1,7 15:6,7

**Xs** 37:3,4

| **Y** | | | | |
|---|---|---|---|---|

**Y** 2:13 51:3,8
**yeah** 9:6 15:18 19:18 20:8,12 22:4 24:5 26:18 26:18,23 27:3,3 28:1 31:5 32:4,15 36:16 37:17,20,20 38:10,24 41:14 43:21 47:6 49:23 50:1,11
**year** 5:9 10:15 24:8 31:9,9 32:20 33:14 36:20
**years** 5:10 10:13
**yesterday** 34:20
**Ys** 37:3

| **Z** | | | | |
|---|---|---|---|---|

**Zs** 37:3

| **1** | | | | |
|---|---|---|---|---|

**1** 7:17 12:2
**1st** 15:17
**1,200** 25:14
**10** 40:12
**100** 2:9
**11** 40:12
**12** 25:17 28:25 30:2
**12th** 31:4
**12(b)(3)(E)** 43:1
**13** 33:20 34:2
**13th** 15:23,25 16:1
**1331** 1:15
**1440** 30:21
**1449** 31:1
**1454** 31:2
**15** 10:13
**15th** 35:24,25 38:18,23 43:19 49:11,20,24 50:7 50:8
**150** 10:3
**1504** 31:6
**1523** 39:16
**1526** 39:22

**1527** 39:12,22
**1530** 42:24 43:10
**1536** 4:12 5:20
**1550** 31:7
**1558** 28:22
**1564** 43:2
**1573** 6:14
**1574** 6:16,23 31:8 33:21,22,23
**1588** 7:4
**1589** 7:8,10
**1592** 30:15
**16** 43:1
**161** 1:18
**17** 12:2 31:1
**17th** 50:13,15
**17101** 2:9
**175** 9:25
**17701** 1:18
**18** 25:16 30:3 39:21
**1800** 1:24
**1801** 1:24
**18501** 1:11
**19103** 1:24
**19106** 2:5

---
**2**

**2** 31:2
**20** 28:24 29:4 35:4 35:11
**2011** 41:3,12,12,13
**2012** 30:21 31:1,2,5 41:7,8
**2014** 1:5 22:18
**202** 1:16
**20530** 1:15
**215** 2:6
**225** 46:1,2
**24th** 6:24 31:9
**24(c)(4)(C)** 29:20
**25th** 9:12 15:9,12 15:13 16:3,4
**26th** 31:5
**27th** 16:12,13 23:13
**28th** 23:14
**29th** 23:14

---
**3**

**3rd** 9:10,14 22:18 34:5 45:11,20 46:2,11,17 47:10
**30** 30:21
**300** 2:9 24:15
**311** 1:11
**323-8711** 1:19
**348-2800** 1:12
**350** 9:24
**3592(c)(2)** 39:21
**39** 39:21

---
**4**

**4** 3:2
**4th** 9:10,14 22:18 34:5 46:2,12
**4:00** 7:18
**4:35** 1:6
**4:96-cr-00239-JHS** 1:3
**400** 23:18
**450** 46:1

---
**5**

**50** 5:20,20
**500** 4:14 8:17 9:4,5 9:20 10:21 11:9 12:22
**514-0175** 1:16
**54** 12:2
**545** 2:4
**570** 1:12,19

---
**6**

**6** 21:19 25:17
**600** 11:20 12:11,22 13:4,14 23:11,18

---
**7**

**717** 2:10
**777-6690** 1:25
**78** 12:6
**782-3843** 2:10

---
**8**

**888** 1:25

---
**9**

**9** 1:5
**9th** 15:17
**9:00** 7:17
**928-0520** 2:6
**93** 12:2,6
**95** 11:18,19 13:14
**96-239** 4:7
**99** 18:10