**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
| | : | |
| v. | : | Honorable Joel H. Slomsky |
| | : | |
| DAVID HAMMER, | : | Capital Case |
| | : | |
| Defendant | : | |
| _____ | : | _____ |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO PRECLUDE THE ADMISSION OF ANY EVIDENCE REGARDING DEFENDANT'S CONSTITUTIONALLY INVALID DEATH SENTENCE AND/OR HIS INCARCERATION ON DEATH ROW**

Defendant, David Hammer, through undersigned counsel, submits this

*Brief in Support of his Motion in Limine to Preclude the Admission of Any Evidence Regarding Defendant's Constitutionally Invalid Death Sentence and His Incarceration on Death Row.* For all of the reasons set forth herein, the government should be precluded from informing the jurors to be selected in Mr. Hammer's re-sentencing trial that he received a death sentence in his initial trial and that, as a result of this unconstitutionally obtained death sentence, he has been housed on federal death row.

**I.     INTRODUCTION**

On September 18, 1996, a Grand Jury sitting in Williamsport, Pennsylvania,

returned an Indictment charging David Hammer with first degree murder arising from the April 13, 1996, death of Mr. Hammer's cellmate, Andrew Marti. Doc. 1. On April 9, 1997, the government filed a notice of its intent to seek the death penalty. Doc. 93. The trial began on May 5, 1998. On June 22, 1998, after the defense had rested and while the government was presenting its rebuttal case, Mr. Hammer entered a plea of guilty to the murder charge.

The penalty phase began on June 30, 1998. In support of death, the government sought to prove two statutory aggravating factors: that the defendant committed the murder after substantial planning and premeditation, 18 U.S.C. §3592(c)(9), and that the defendant had previously been convicted of a state or federal offense punishable by a term over one year that involved the use, or attempted or threatened use, of a firearm, 18 U.S.C. §3592(c)(2). On July 24, 1998 the jury returned a verdict of death.

In September 2002, Mr. Hammer filed a petition for writ of habeas corpus collaterally attacking his conviction and sentence pursuant to 28 U.S.C. §2255. The Court conducted an evidentiary hearing on his petition from July 14, 2005 through September 29, 2005. On the twenty-ninth day of the hearing, September 22, 2005, the government provided the defense with thirty-three previously undisclosed FBI 302 statements that summarized interviews with various prison inmates.

On December 27, 2005, the Court issued its decision vacating the 1998

2

sentence of death.  The Court found, in part, that, as a result of the government's misconduct for failing to disclose material exculpatory evidence, the prior sentencing proceeding was constitutionally defective.[1]  Specifically, the Court held that the government's failure to disclose four 302 witness statements that were "relevant and material" to the jury's penalty determination violated Brady v. Maryland, 373 U.S. 83 (1963).  United States v. Hammer, 404 F. Supp. 2d 676, 801 (M.D. Pa. 2006) (Muir, J.)  The Court then concluded as a matter of law that the failure of the government to disclose the 302 statements rendered "the penalty phase of the trial *defective*."  Id. (emphasis added).

For the reasons described below, informing the resentencing jury about the constitutionally invalid death verdict and that Mr. Hammer has been housed on federal death row – both of which were a direct by-product of the government's intentional misconduct – violates the Fifth, Sixth, and Eighth Amendments and the Federal Death Penalty Act ("FDPA").

## II.   ARGUMENT

This matter is now before this Court for capital resentencing.  As noted above, it was the government's misconduct that resulted in the constitutionally defective

---

[1]The Court also found that the jury's failure to find mitigating factors that had been conceded or undisputed by the government constituted constitutional error requiring reversal.  Hammer, 404 F. Supp. 2d at 801.

death sentence in 1998, and the subsequent housing of the defendant on federal death row. The government cannot now benefit from its own malfeasance by informing the 2014 jury that a prior jury concluded that death was the appropriate sentence for Mr. Hammer or that Mr. Hammer has been housed on death row.

If this were a case in which the defendant was facing a guilt/innocence retrial, there is no question that the jury would be precluded from hearing that a prior jury had found the defendant guilty. That principle arises from the defendant's right to a presumption of innocence as well as his right to a fair and impartial jury. See, e.g., Johnson v. Mississippi, 486 U.S. 578, 585 (1988) ("Since that conviction has been reversed, unless and until petitioner should be retried, he must be presumed innocent of that charge"). Here, injecting the knowledge that a prior jury sentenced Mr. Hammer to death would violate a number of clearly established capital constitutional principles, including: Mr. Hammer's right to a fair and impartial sentencing jury; his right to a jury determination based on the relevant facts and law; his right to have his jury give full and meaningful consideration to mitigation evidence presented; his right to a presumption of life; his right to heightened procedural safeguards required in capital cases; his right to a jury determination that is not arbitrary and capricious; and the standards of the FDPA.

No legal basis exists for informing the jury that a prior jury reached a death verdict and any testimony from the prior sentencing hearing can easily and non-

4

prejudicially be referenced as "the prior proceedings." In addition, rather than referring to Mr. Hammer's housing as "federal death row," witnesses and the parties can just as easily refer to the housing as "the Terre Haute federal prison." These cautionary measures are required in order to protect and preserve Mr. Hammer's statutory and constitutional rights.

There is no question that the fact that Mr. Hammer had been sentenced to death by another group of twelve jurors will have an adverse and unconstitutional impact on the new jury's sentencing determination. Although the prior verdict is a legal nullity that carries absolutely no weight or relevance to this jury's sentencing determination, there is an unreasonable and unconstitutional risk that, confronted with the fact that a prior jury found death the appropriate sentence, this jury will find that the government has met its burden on the intent and aggravating factors on less than the required proof beyond a reasonable doubt and/or fail to give meaningful consideration and weight to relevant mitigation evidence. No instruction can cure the constitutional errors arising from the jury learning that Mr. Hammer was previously sentenced to death or that he has been housed on death row.

Permitting the government to reap the benefits of its own misconduct by informing the resentencing jury that Mr. Hammer was previously sentenced to death and has been housed on death row violates the Fifth, Sixth, and Eighth Amendments and the Federal Death Penalty Act ("FDPA").

**A.   Informing the Jury of the Prior Death Verdict and that Mr. Hammer Has Been Housed on Death Row Violates Mr. Hammer's Fifth, Sixth and Eighth Amendment Rights to a Fair and Impartial Jury.**

It is well settled that the Fifth and Sixth Amendments "guarantee a defendant on trial for his life the right to an impartial jury." Ross v. Oklahoma, 487 U.S. 81, 85 (1988); Irvin v. Dowd, 366 U.S. 717, 722 (1961).  "[T]he decision whether a man deserves to live or die must be made on scales that are not deliberately tipped toward death." Witherspoon v. Illinois, 391 U.S. 510, 523, n. 20 (1968).  Accordingly, in capital cases, the Sixth Amendment right to an impartial jury is violated whenever a jury is empaneled that is "uncommonly willing to condemn a man to die." Witherspoon v. Illinois, 391 U.S. at 521.  Similarly, clearly established federal due process law has long required that the jury's "verdict must be based upon the evidence developed at the trial," as opposed to any outside influences.  Irvin, 366 U.S. at 722.  See also Turner v. Louisiana, 379 U.S. 466, 472 (1965).

The prior verdict is a legal nullity that has no relevance to this jury's sentencing determination.  On the other hand, there is no more powerful factor favoring a death sentence than the knowledge that another twelve individuals had been presented with the same question of whether the same defendant should be sentenced to life or death for the same murder and had decided that death was the appropriate punishment. E.g., Woollely, 793 N.E. 2d 519, 524 (Ill. 2002) (finding that informing the jury of

the prior death sentence at resentencing was prejudicial and inflammatory).   In short, all hopes for juror impartiality are destroyed and no amount of instructions can cure the constitutional errors.   For these reasons, permitting the jury to learn about the invalid death verdict violates the Fifth, Sixth, and Eighth Amendments.

**B.      Informing the Jury of the Prior Death Verdict and that Mr. Hammer Has Been Housed on Death Row Violates Mr. Hammer's Fifth, Sixth and Eighth Amendment Rights to a Jury Determination Based Solely on the Relevant Evidence and Law.**

Due process affords a criminal defendant the "right to a verdict based solely upon the evidence and the relevant law." Chandler v. Florida, 449 U.S. 560, 574 (1981); see also Irvin v. Dowd, 366 U.S. 717, 722 (1961) (noting that the jury's "verdict must be based upon the evidence developed at the trial," as opposed to any outside influences).   That right is protected not just by due process, but by the Sixth Amendment.   United States v. Gaudin, 515 U.S. 506, 514 (1995).   And when a defendant is on trial for his life, the Eighth Amendment requires the State to "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" Godfrey v. Georgia, 446 U.S. 420, 428 (1980).   Because the State "has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty," id., a death sentence that is based on the consideration of extraneous evidence or arguments that are outside the

scope of the applicable law is unconstitutionally arbitrary and capricious.

The prior death verdict is a legal and factual nullity that has absolutely no relevance to this jury's sentencing determination. See, e.g., Johnson, 486 U.S. at 585-86 (finding an invalid conviction irrelevant to the jury's sentencing consideration); People v. Woollely, 793 N.E. 2d 519, 524 (Ill. 2002) (finding the prior death verdict irrelevant to the resentencing proceeding). Injecting the constitutionally invalid verdict into the jury's sentencing consideration violates Mr. Hammer's Fifth, Sixth, and Eighth Amendment rights to a jury determination based solely on the relevant evidence and law.

Moreover, treating an invalid prior sentence and the conditions of confinement to which Mr. Hammer was subjected as a result of that invalid sentence as though it were somehow a relevant consideration in the 2014 resentencing would result in a sentence based upon inaccurate and unreliable evidence, in violation of due process and the Eighth Amendment. Johnson v. Mississippi, *supra*; Townsend v. Burke, 334 U.S. 736, 741 (1948) (due process violated when "prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue"); United States v. Tucker, 404 U.S. 443, 447 (1972); Roberts v. United States, 445 U.S. 552, 556 (1980) (reaffirming that due process precludes "sentences imposed on the

basis of 'misinformation of constitutional magnitude'").[2]

### C. Informing the Jury of the Prior Death Verdict and that Mr. Hammer Has Been Housed on Death Row Violates Mr. Hammer's Statutory and Constitutional Right to a Presumption of Life.

Both the statutory framework of the FDPA and the Fifth and Eighth Amendments require a presumption of life. Permitting the jury to learn about and consider the fact that a prior jury found death violates the statutory and constitutional presumption of life.

The FDPA specifically articulates what findings the jury must make and provides that, even where it finds no mitigating circumstances, the jury must still make a determination of whether or not "the aggravating factor or factors alone are sufficient to justify a sentence of death." 18 U.S.C. § 3593(e). Thus, the statute specifically requires that the jury presume life unless the government has provided

---

[2]See also United States v. Levy, 865 F.2d 551, 559-60 (3d Cir. 1989) (en banc) (vacating sentence imposed because "sentencing on the basis of materially untrue assumptions violates due process"), *aff'd after remand sub nom.* Gozlon-Peretz v. United States, 498 U.S. 395 (1991); United States v. Kerley, 838 F.2d 932, 940 (7th Cir. 1988) (Posner, J.) ("a sentence predicated on misinformation cannot stand"); King v. Hoke, 825 F.2d 720, 724 (2d Cir. 1987) ("It is well established that . . . material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process."); United States v. Ruster, 712 F.2d 409, 412 (9th Cir. 1983) (due process violated when sentencer "relies on materially false or unreliable information in sentencing a defendant").

sufficient evidence to "justify a sentence of death."[3]

Other aspects of the statutory framework demonstrate a requirement for a presumption of life. Under the FDPA, if the jury fails to unanimously find an aggravating factor a life sentence must be imposed. 18 U.S.C. § 3593(d). The statute further requires that if the jury unanimously finds at least one statutory aggravating circumstance, it must then determine whether or not the aggravating factor or factors unanimously found "sufficiently outweigh" mitigating circumstances "to justify a sentence of death." 18 U.S.C. § 3593(d). If the jury is in equipoise – that is, the evidence of aggravation and mitigation are of equal weight – or if any single juror believes that life is the appropriate sentence, a life sentence must be imposed. 18 U.S.C. § 3593(e).

The government must prove aggravating factors beyond a reasonable doubt (see § 3593©), and the jury's determination regarding aggravating factors must be

---

[3]The presumption of life is even stronger under the federal statute than it is in some states that have recognized the existence of a statutory presumption. Pennsylvania's statute, for example, does not require the jury to determine whether or not a finding of the presence of aggravation but no mitigation would "justify a sentence of death." Nevertheless, the Pennsylvania Supreme Court has held that its sentencing statute requires a presumption of life. See Commonwealth v. Eichinger, 915 A.2d 1122, 1138 (Pa. 2007) ("we recognize that life has intrinsic value and should not be taken by the state without good cause, proven to our highest standard, whereas life imprisonment remains our default punishment for capital cases"); Commonwealth v. Marinelli, 910 A.2d 672, 682 (Pa. 2006); Commonwealth v. Travaglia, 467 A.2d 288, 300 (Pa. 1983). Under the FDPA, however, that presumption is clearly articulated in the statute.

unanimous (see § 3593(d)).  The defense, on the other hand, need only prove mitigation by a preponderance of the evidence (see § 3593(c)), and the statute permits the jury to weigh in mitigation any circumstance one or more jurors find to be mitigating, whether or not other jurors accept that evidence as mitigating (see § 3593(d)).  This disparate treatment of aggravation and mitigation further demonstrates the statutory requirement for a presumption of life.

In addition, there is a constitutional presumption of life in capital cases.  "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary and its enforcement lies at the foundation of the administration of our criminal law." Coffin v. United States, 156 U.S. 432, 453 (1895).  In Ring v. Arizona, 536 U.S. 584, 609 (2002), the Supreme Court held that aggravating circumstances "operate as 'the functional equivalent of an element of a greater offense.'"  Justice Scalia later explained that "for purposes of the Sixth Amendment's jury-trial guarantee, the underlying offense of 'murder' is a distinct, lesser included offense of 'murder plus one or more aggravating circumstances.'" Sattazahn v. Pennsylvania, 537 U.S. 101, 112 (2003); id. ("'murder plus one or more aggravating circumstances' is a separate offense from 'murder' *simpliciter*").

If the penalty phase is a trial for a separate, greater offense than murder *simpliciter* for purposes of what the prosecution must prove to a jury beyond a reasonable doubt, it is necessarily a separate offense for purposes of who bears the

11

burden of persuasion as to whether the defendant has been proven guilty of death. Thus, the Fifth, Sixth, and Eighth Amendments compel a presumption of life in the penalty phase consistent with the presumption of innocence in the guilt/innocence phase of the trial.

There is no question that informing a jury in a retrial on guilt/innocence that a prior jury had convicted the defendant would constitute a violation of the defendant's right to a presumption of innocence. See, e.g., Johnson, 486 U.S. at 585 ("Since that conviction has been reversed, unless and until petitioner should be retried, he must be presumed innocent of that charge"). Indeed, it is standard practice not to mention to the jury that there had been a prior verdict or even a prior trial in cases in which a defendant obtains grant of a new trial. Instead, the parties refer to prior testimony as testimony in a "prior proceeding." The same constitutional error exists if the resentencing jury is told that a prior jury found death; and the same protections are required and can just as easily be effected.

> **D.**      **Informing the Jury of the Prior Death Verdict and that Mr. Hammer Has Been Housed on Death Row Violates Mr. Hammer's Rights to Heightened Procedural Safeguards in this Capital Case By Diminishing the Jury's Sense of Responsibility for Determining the Appropriate Sentence, in Violation of the Fifth and Eighth Amendments.**

The United States Supreme Court has long recognized that, because of its unparalleled severity and irrevocability, death differs fundamentally from any other

punishment.  See Ford v. Wainwright, 477 U.S. 399, 411 (1986); Woodson v. North Carolina, 428 U.S. 280, 305 (1976).  It also "has repeatedly said that under the Eighth Amendment 'the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination.'" Caldwell v. Mississippi, 472 U.S. 320, 328-29 (1985) (citation omitted); Woodson, 428 U.S. at 305; Eddings v. Oklahoma, 455 U.S. 104, 118 (1982) (O'Connor, J., concurring) (because of the exceptional and irrevocable nature of the death penalty, due process and the Eighth Amendment require "extraordinary measures" to ensure the reliability of capital proceedings).  This proposition, which applies equally to the guilt and penalty phases of a capital trial, see, e.g., Beck v. Alabama, 447 U.S. 625, 637-38 (1980) (guilt); Lockett v. Ohio, 438 U.S. 586, 604 (1978) (penalty), is one of the most clearly established principles of Eighth Amendment law.  See also Gardner v. Florida, 430 U.S. 349, 357-58 (1977) (plurality opinion); id. at 363-64 (White, J., concurring); Lockett, 438 U.S. at 604; Godfrey v. Georgia, 446 U.S. 420, 427-28 (1980); Beck, 447 U.S. at 637-38; Zant v. Stephens, 462 U.S. 862, 884-85 (1983); California v. Ramos, 463 U.S. 992, 998-99 & n.9 (1983); Ake v. Oklahoma, 470 U.S. 68, 78 (1985); id. at 87 (1985) (Burger, C.J., concurring); Caldwell v. Mississippi, 472 U.S. 320, 328-29 (1985); Turner v. Murray, 476 U.S. 28, 36-37 (1986); Ford v. Wainwright, 477 U.S. 399, 411 (1986); Mills v. Maryland, 486 U.S. 367, 383-84 (1988); Johnson v. Mississippi, 486 U.S. 578, 584-85 (1988).

For this very reason, the Court has determined that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." Caldwell v. Mississippi, 472 U.S. 320, 328-29 (1985); see also Woollely, 793 N.E. 2d at 524 (informing the jury of the prior death verdict at resentencing reversible error because it "may have diminished the jury's sense of responsibility in determining whether defendant *should* be sentenced to death"). The Court's "Eighth Amendment jurisprudence has taken as a given that capital sentencers would view their task as the serious one of determining whether a specific human being should die at the hands of the State." Caldwell, 427 U.S. at 329. Diminishing the jury's sense of responsibility creates a constitutionally unacceptable risk of "substantial unreliability as well as bias in favor of death sentences." Id. at 330.

Those are the precise risks created by informing the jury that Mr. Hammer was sentenced to death by a prior jury and has been incarcerated on death row. Informing a resentencing jury that a prior jury has already sentenced the same defendant to death for the same crime assures the resentencing jury that it is appropriate for it to make exactly the same choice. This is much more than a "suggestion" that the jury "may shift its sense of responsibility" elsewhere. This necessarily diminishes the resentencing jury's sense of responsibility for its own selection of death over life.

It tells the jury directly, rendering the sentencing proceeding unreliable and creating a clear bias in favor of death in violation of the Eighth Amendment.

Under these circumstances, informing the jury of the constitutionally invalid death verdict, permitting the jury to speculate regarding how and why the prior jury reached that verdict, and allowing the current jury to consider that invalid verdict in determining whether or not the government has met its burden on aggravation or whether the aggravation outweighs mitigation clearly violates the heightened reliability requirements in this capital case.   Moreover, that diminution of responsibility would not only deny Mr. Hammer the heightened procedural safeguards the constitution requires, given the invalidity of the death sentence previously imposed in this case, it would even further diminish the reliability of the sentencing process in this retrial.

**E.    Informing the Jury of the Prior Death Verdict and that Mr. Hammer Has Been Housed on Death Row Will Impair the Jury's Ability to Give Full and Meaningful Consideration to Mr. Hammer's Mitigation Evidence in Violation of the Fifth, Sixth, and Eighth Amendments.**

It is "well-established" that, because of the unique nature of capital proceedings, the "Eighth Amendment require[s] individualized sentencing determinations in death penalty cases." Stringer v. Black, 503 U.S. 222, 230 (1992); Sumner v. Shuman, 483 U.S. 66, 75 (1987) (describing "constitutional mandate of

15

individualized determinations in capital-sentencing proceedings"); Lockett v. Ohio, 438 U.S. 586, 605 (1978) ("each defendant in a capital case [must be treated] with that degree of respect due the uniqueness of the individual").  The government may not impair the jury's consideration of "compassionate or mitigating factors," Woodson, 428 U.S. at 304, regarding the individual defendant's character, background, or record, or the circumstances of the offense that "would humanize [him] or allow the [jury] to accurately gauge his moral culpability," Porter v. McCollum, 130 S. Ct. 447, 454 (2009); Lockett, 438 U.S. at 601-05; Eddings v. Oklahoma, 455 U.S. 104, 110-12 (1982); see also Brewer v. Quarterman, 550 U.S. 286, 288-89 (2007); Abdul-Kabir v. Quarterman, 550 U.S. 233, 246-48 (2007); Smith v. Texas, 543 U.S. 37, 38, 43-49 (2004); Tennard v. Dretke, 542 U.S. 274, 285 (2004); Penry v. Johnson, 532 U.S. 782, 797 (2001) ("Penry II"); McKoy v. North Carolina, 494 U.S. 433, 442 (1990); Penry v. Lynaugh, 492 U.S. 302, 307, 319 (1989) ("Penry I"); Mills, 486 U. S. at 374-75; Hitchcock v. Dugger, 481 U.S. 393, 394 (1987); Skipper v. South Carolina, 476 U.S. 1, 4-5 (1986).

Hearing that a prior jury rejected Mr. Hammer's mitigating evidence, or at least considered it lacking sufficient weight to warrant sparing his life, denigrates his mitigating evidence at the same time that knowledge of the prior death sentence and Mr. Hammer's incarceration on death row artificially and misleadingly inflates the government's case in aggravation.  This impairs the jury's ability to fulfill its

16

statutorily and constitutionally required functions of considering and giving full effect to relevant mitigating evidence in several important respects.

First, knowing that the prior jury previously did not credit Mr. Hammer's mitigating evidence may lead the jury to reject some or all of his mitigating evidence altogether, unconstitutionally impairing its ability to *find* constitutionally relevant mitigating evidence. Second, aware of the prior sentencing outcome, the jury may give less weight to constitutionally relevant mitigating evidence, impairing its ability to *give effect* to relevant mitigating evidence. Third, aware of the both the prior outcome and the aggravating implications of Mr. Hammer's incarceration on death row, the jury may inflate the weight of aggravating evidence, comparatively impairing its consideration of mitigation. And, finally, the skewing of the jury's consideration of mitigation at every prior stage of the sentencing process would materially impair the weighing of aggravation and mitigation.

The net result of such an imbalanced weighing process is a "decision whether [Mr. Hammer] deserves to live or die . . . made on scales that are [ ] deliberately tipped toward death." Witherspoon, 391 U.S. at 523 n.20. A jury that has been biased in that manner is not impartial; rather, it has been predisposed to be "uncommonly willing to condemn [him] to die." Witherspoon v. Illinois, 391 U.S. 510, 521 (1968). Thus, exposing the jury to the inflammatory fact of the constitutionally invalid death sentence and his resulting improper incarceration on

death row pursuant to an invalid death sentence substantially impairs the jury's ability to consider and give effect to his mitigating evidence and likewise impairs its ability to conscientiously consider the life-sentencing option. Accordingly, informing the jury about the invalid verdict violates Mr. Hammer's Fifth, Sixth, and Eighth Amendment rights to an individualized sentencing determination that includes full and meaningful consideration of relevant mitigation evidence.

> **F.   Informing the Jury of the Prior Death Verdict and that Mr. Hammer Has Been Housed on Death Row Violates the Fifth and Eighth Amendment Prohibition Against an Arbitrary and Capricious Sentencing Determination.**

When a defendant is on trial for his life, the Eighth Amendment requires the government to "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" Godfrey, 446 U.S. at 428. "It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." Gardner v. Florida, 430 U.S. 349, 358 (1977). Because the government "has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty," id., a death sentence that is based on the consideration of factors that are outside the scope of the applicable law is unconstitutionally arbitrary and capricious.

18

Mr. Hammer's constitutionally invalid death sentence and his status as a death row inmate are not relevant to either the gateway intent factor or any of the statutory or non-statutory aggravating factors proposed by the government. Even if a prior death sentence or incarceration on death row could be deemed relevant in any theoretical sense, such evidence is inherently arbitrary and unreliable when the sentence about which the jury is informed was unconstitutionally obtained as a result of the prosecution's deliberate misconduct, and the defendant's incarceration on death row was a direct and necessary consequence of that misconduct and constitutionally invalid sentence. Permitting the jury to consider the fact that a prior jury (unconstitutionally) reached a death verdict would be the height of arbitrariness and would render the resulting sentencing proceeding unconstitutionally arbitrary and capricious, based on emotion rather than the requirements of the federal death penalty statute, in violation of Mr. Hammer's Fifth and Eighth Amendment rights.

**G.    Informing the Jury of the Prior Death Verdict and that Mr. Hammer Has Been Housed on Death Row Violates the FDPA.**

To justify admission of evidence in a capital sentencing hearing, the government must first meet a number of threshold requirements. Evidence of non-statutory aggravators must be "'*particularly* relevant to the sentencing decision,' not merely relevant, in some generalized sense, to whether defendant might be considered a bad person." United States v. Gilbert, 120 F. Supp. 2d 147, 150-51 (D. Mass. 2000)

19

(citing <u>Gregg v. Georgia</u>, 428 U.S. 153, 192 (1976)); <u>see also</u> <u>United States v. Stitt</u>, 760 F. Supp. 2d 570, 583 (E.D. Va. 2010); <u>United States v. Sablon</u>, 555 F. Supp. 2d 1205, 1214 (D. Co. 2007); <u>United States v. Fell</u>, 372 F. Supp. 2d 753, 763 (D. Vt. 2005); <u>United States v. Davis</u>, 912 F. Supp. 938, 943 (E.D. La. 1996).

Even if the proffered evidence is both relevant and reliable, it is still inadmissible if its probative value "is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). "The balance of probative value and unfair prejudice must be weighed more carefully in a death penalty case than in normal cases." <u>Gilbert</u>, 120 F. Supp. 2d at 151.

For all the reasons discussed above, a prior jury's unconstitutional imposition of a death penalty in a previous penalty proceeding in which the government improperly withheld material evidence that rebutted its case in aggravation has absolutely no relevance as proof of the intent gateway factor or any statutory or non-statutory aggravating factor. It likewise is irrelevant to whether any aggravation properly found by the jury outweighs the evidence it has found in mitigation, and is not even remotely relevant as a consideration justifying a sentence of death. If anything the opposite is true.

Given the constitutional invalidity of the prior death sentence and Mr. Hammer's resultant improper incarceration on death row, employing the fact of his prior death sentence and the fact of his incarceration on death row as a consideration

20

in favor of death would be materially misleading to the jury – indeed, unconstitutionally so.  (See Johnson; Townsend, *supra*.)  Setting aside the fact that using such false evidence as a reason for death is inherently misleading, informing the jury of the outcome of prior sentencing proceedings (even if those proceeding bore indicia of reliability that Mr. Hammer's unconstitutional prior sentence lacks) confuses the issues before the jury by suggesting it may treat the prior jury's resolution of the issues before it as relevant, and perhaps a guidepost, to the fact-finding and weighing determinations that the 2014 resentencing jury will have to make.  Indeed, that is in part why informing the jury of the prosecution's unconstitutional fruits of the prior poisoned penalty phase unconstitutionally diminishes the jury's sense of responsibility in this case.  (See Caldwell, *supra*.)  And allowing the jury to consider such inflammatory facts when both the prior death sentence and death-row incarceration it produced were a direct result of intentional prosecutorial misconduct calculated to impair Mr. Hammer's cases for life in the prior trial is the very definition of "unfair prejudice."

The highly prejudicial evidence with which the government wishes to pollute the jury's penalty determination cannot meet the statutory requirement that it must be "particularly relevant" to aggravation to be admissible.  It holds absolutely no probative value to the jury's sentencing determination.  Even if there were some remote probative basis for admitting this information as a consideration in favor of

imposing the death penalty, and there is not, it is far outweighed by the clear and present "danger of creating unfair prejudice, confusing the issues, or misleading the jury," 18 U.S.C. § 3593(c), and from the multiple constitutional and statutory violations described above.

> **H.    The Government is Estopped from Benefitting From Its Own Misconduct By Admitting Evidence that A Prior Jury Found Death Following an Unconstitutional Sentencing Proceeding and/or that Mr. Hammer has Been Housed on Death Row As a Result.**

The admission of evidence of the prior jury's invalid imposition of a death sentence upon Mr. Hammer, and the fact that he was incarcerated for fifteen years on death row as a direct consequence of that constitutionally invalid sentence are also barred by collateral and equitable estoppel and the doctrine that court's should not assist wrongdoers in benefitting from their misconduct.

In his first trial, Mr. Hammer was sentenced to death by a jury whose determinations regarding both reasons for death and reasons for life, and its subsequent weighing of those considerations and determination of sentence, were constitutionally invalid. United States v. Hammer, 404 F. Supp. 2d at 801.

Mr. Hammer argued in his post-conviction proceedings under 28 U.S.C. § 2255 that the government withheld evidence that was material to the prosecution's proof of the intent factor and aggravating circumstances and that the jury improperly performed its duties with respect to the finding and weighing of mitigating

22

circumstances. The government opposed both grounds for relief.

Faced with these allegations and the government's arguments in opposition, the Court found as a fact that Mr. Hammer "has proved by a preponderance of the evidence that the Government failed to disclose relevant and material information to which he was entitled relating to the appropriate penalty to be imposed in this case in violation of Brady v. Maryland, 373 U.S. 83 (1963)." Hammer, 404 F. Supp. 2d at 801 (parallel citation omitted).[4] It concluded as a matter of law that "[a]s a result of the Brady violations, Mr. Hammer is entitled to a retrial of the penalty phase." The Court also found as a fact that the jury gave "defective answers with respect to mitigating factors," which also "render[ed] the penalty phase of the trial defective." Id. It concluded as a matter of law that "[a]s a result of the jury's defective answers with respect to mitigating factors, Mr. Hammer is entitled to a retrial of the penalty phase." Id.

Judge Muir's determinations of these issues constitute resolutions of ultimate fact. Those findings and conclusions of law are the law of this case, and are *res judicata* in these resentencing proceedings. See Ashe v. Swenson, 397 U.S. 436, 443 (1970) ("when an issue of ultimate fact has once been determined by a valid and final

---

[4] The Court specifically found that "[f]ailure of the prosecutor to disclose the 302 statements of Albert Ray Johnson, Jr., Royce Lee Fowler, Gaylon Don Ball and Martin Guerrero render[ed] the penalty phase of the trial defective." Id.

judgment, that issue cannot again be litigated between the same parties in any future lawsuit"); United States v. Webb, 2011 WL 1226120, *14 (E.D. Pa. Mar. 29, 2011); Hopkins v. New Day Financial, 643 F. Supp. 2d 704, 714 (E.D. Pa. 2009) (Slomsky, J.) ("The Court is mindful of the law of the case doctrine and agrees with Judge Pollack's conclusion.")

The prior death sentence imposed upon Mr. Hammer in 1998 is constitutionally invalid and a nullity, and the government is collaterally estopped from arguing the contrary.[5]  And collaterally estopped from arguing its validity, the government has no basis to assert that this invalid legal nullity has any probative value as a basis to establish any statutory or nonstatutory aggravating circumstance it wishes to present or to rebut any mitigating circumstance Mr. Hammer may present in this case.

Further, it has long been recognized that "playing 'fast and loose with the courts' . . . [is] as an evil the courts should not tolerate." Scarano v. Central R. Co. of N. J., 203 F.2d 510, 513 (3d Cir. 1953).  As Justice Brandeis stated in his famous dissent in Olmstead v. United States, 277 U.S. 438, 483-85 (1928), explaining the long settled principle that the Court will not aid one who seeks its assistance with unclean hands:

---

[5]As the Court noted in Ashe, "collateral estoppel has been an established rule of federal criminal law" for a century – "at least since this Court's decision [in 1916] in United States v. Oppenheimer, 242 U.S. 85 [(1916)]." Id.

The maxim of unclean hands comes from courts of equity.  But the principle prevails also in courts of law.  Its common application is in civil actions between private parties.  Where the government is the actor, the reasons for applying it are even more persuasive.  Where the remedies invoked are those of the criminal law, the reasons are compelling.

The door of a court is not barred because the plaintiff has committed a crime.  The confirmed criminal is as much entitled to redress as his most virtuous fellow citizen; no record of crime, however long, makes one an outlaw.  The court's aid is denied only when he who seeks it has violated the law in connection with the very transaction as to which he seeks legal redress.  Then aid is denied . . . in order to maintain respect for law; in order to promote confidence in the administration of justice; in order to preserve the judicial process from contamination.  The rule is one, not of action, but of inaction. . . . The court protects itself.

Here, the government had in its possession and deliberately suppressed evidence that was material to the jury's sentencing determination in this case.  By its misconduct, it unconstitutionally persuaded the jury to sentence Mr. Hammer to death and caused him to be incarcerated on federal death row for fifteen years.  Despite the controlling ruling of this Court that this death penalty was "defective" because of the prosecution's violation of Brady, Hammer, 404 F. Supp. 2d at 801, and despite the invalidity and nullity of that unconstitutional sentence, the same government that violated the law in connection with obtaining this death sentence seeks in the very same case permission to bring the fruits of its illegal conduct (but not its illegal conduct) to the attention of the resentencing jury.  It wants to inform the jury that Mr. Hammer was previously sentenced to death and incarcerated on federal death row

25

because it wants the jury to believe (falsely) that Mr. Hammer was previously fairly sentenced, that Mr. Hammer has continuously been fairly incarcerated, and the sentence was death and confinement prior to execution on death row.

Principles of equity counsel that this Court should decline to assist the government in this strategical misrepresentation. There is no good-faith basis to inform the jury that Mr. Hammer was previously sentenced to death – any suggestion that he was validly sentenced to death is false. There is no good-faith basis to inform the jury that Mr. Hammer has been incarcerated on federal death row – any information to that effect also falsely suggests that he was validly sentenced to death. What the government really seeks is this Court's imprimatur permitting it to reap on resentencing fruits from its misconduct in the first trial. And, as Justice Brandeis explained, that is something federal courts will not do. See also Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 814-15 (1945); Galloway v. Finley, 37 U.S. 264, 297 (1838).

Respectfully submitted,


/s/  RONALD C. TRAVIS
Ronald C. Travis
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
570-323-8711 (telephone)
570-323-4192 (facsimile)
rtravis@riederstravis.com


/s/ ANNE SAUNDERS
Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
anne_saunders@fd.org

/s/ JAMES MCHUGH
James J. McHugh, Jr.
/s/ JAMES MORENO
James Moreno
Federal Community Defender
Eastern District Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA 19106
215-928-1100 (telephone)
215-928-0826 (facsimile)
james_mchugh@fd.org
james_moreno@fd.org


Dated:        January 30, 2014

# CERTIFICATE OF SERVICE

I, Anne Saunders, Esquire, do hereby certify that on this date I served a copy of the foregoing by Electronic Case Filing, or by placing a copy in the United States mail, first class addressed to the following:

John C. Gurganus, Jr. Esquire
Amanda Haines, Esquire
United States Attorneys Office
Middle District of Pennsylvania
235 N. Washington Street, Suite 311
PO Box 309
Scranton, PA. 18501


/S/ANNE SAUNDERS, ESQUIRE
James Moreno, Esquire

Dated: January 30, 2014