UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
|  | : |  |
| v. | : | Honorable Joel H. Slomsky |
|  | : |  |
| DAVID PAUL HAMMER, | : | Capital Case |
|  | : |  |
| Defendant | : |  |
| _____ | : | _____ |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION IN LIMINE TO PRECLUDE THE GOVERNMENT FROM SEEKING DEATH ON THE BASIS OF A PRIOR CONVICTION AND OTHER EVIDENCE THAT WAS THE PRODUCT OF PERJURED TESTIMONY**

Defendant, David Hammer, through counsel, herein submits his *Brief in Support of Motion in Limine to Preclude the Government from Seeking Death on the Basis of a Prior Conviction and Other Evidence that Was the Product of Perjured Testimony*.

The recent disclosures by the current government prosecutors demonstrate that: (1) the jury that found Mr. Hammer guilty of the 1984 convictions did so in reliance on perjured testimony by the key witness; (2) the government's original authorization decision and subsequent deauthorization determinations were based on convictions that resulted in a 1200 year sentence that were the product of perjured testimony; (3)

1

the jury that sentenced Mr. Hammer to death in 1998 relied on the 1984 convictions as a basis for finding that the government had met its burden as to 18 U.S.C. §3592(c)(2), without knowing that these convictions were the product of perjured testimony by a key witness; and, (4) the jury considered testimony from Mr. Upton in support of nonstatutory aggravation and as rebuttal to mitigation evidence without knowing that Mr. Upton had lied. Whatever reason Mr. Upton had for electing to lie in 1984 and 1998, the fact of the matter is that the government authorized this capital prosecution and Mr. Hammer was sentenced to death – and came close to execution – on the basis of perjured testimony. In light of these circumstances, and for the reasons described below and in the *Motion*, the admission of any evidence arising from the 1984 convictions violates Mr. Hammer's Fifth, Sixth and Eighth Amendment rights and the Federal Death Penalty Act ("FDPA").

## I.   INTRODUCTION.

On September 18, 1996, a Grand Jury returned an Indictment charging David Hammer with first degree murder arising from the April 13, 1996, death of Mr. Hammer's cellmate, Andrew Marti. Doc. 1. On April 9, 1997, the government filed a notice of its intent to seek the death penalty. Doc. 93. On June 22, 1998, Mr. Hammer entered a mid-trial plea of guilty to the murder charge.

The penalty phase began on June 30, 1998.  In support of death, the government sought to prove two statutory aggravating factors:  that the defendant committed the murder after substantial planning and premeditation, 18 U.S.C. §3592(c)(9), and that the defendant had previously been convicted of a state or federal offense punishable by a term of imprisonment of more than one year that involved the use, or attempted or threatened use, of a firearm against another person, 18 U.S.C. §3592(c)(2).

One of the two convictions relied on by the government in support of the prior firearms conviction aggravator under Section 3592(c)(2) was State v. Hammer, CRF-84-l3l0 (Okla.) (hereinafter "Upton case").  The Upton case involved charges that Mr. Hammer kidnapped Thomas Upton, robbed him with a firearm, and shot him with intent to kill.  Mr. Upton testified at two preliminary hearings and trial in that case. Although the details of some of his testimony varied, Upton consistently testified that, at the time of the incident, Mr. Hammer had approached Upton's car on the street brandishing a firearm and demanded that Upton drive to a motel.

Mr. Upton also testified that, inside the motel room, he fought with Mr. Hammer and that Mr. Hammer struck him multiple times during that fight.  Mr. Upton also testified that at one point Mr. Hammer locked him in the bathroom, during which time Mr. Hammer made two phone calls.  Upton also testified that Mr. Hammer had

forced him to drive to an area near some oil wells, ordered him to take off his clothes and lie on the ground, and then shot him multiple times with a large gun.  Mr. Upton testified that, after being shot, he got up and ran or walked away while Mr. Hammer screamed and then drove away in Upton's car.  See Exhibit 1.

Mr. Upton's importance in the government's case for death against Mr. Hammer is underscored by the fact that he was the first witness the government called in the prior penalty hearing.  NT Vol. 15 (6/30/98) at 5.  Mr. Upton adopted and authenticated his preliminary hearing testimony from the Oklahoma case.  See NT Vol. 15 (6/30/98) at 6.  He also provided live testimony as to various aspects of the incident that was consistent with his prior testimony in Oklahoma.  See id. at 8 (indicating that Mr. Hammer assaulted him); id. at 9 (indicating that Mr. Hammer brandished a large gray weapon and ordered Upton to take him where he wanted to go); id. at 10 (indicating that Mr. Hammer forced Upton to accompany him to a motel room).

The government also presented testimony from the prosecutor in the Upton case, William Louis Keel.  During that testimony, the government elicited testimony that Mr. Hammer had been convicted of kidnapping, shooting with intent to kill, and robbery.  NT Vol. 16 (7/1/98) at 66.  The government also admitted into evidence the certified convictions.  See Tr. Govt. Exh. 4001.

The prosecution argued in its closing and in rebuttal that the jury should consider both the fact of the Upton convictions and the specific circumstances of the underlying incident in determining whether the government had proven its submitted aggravating factors, as a basis for rejecting Mr. Hammer's mitigation, and in finding that the government's reasons for death outweighed Mr. Hammer's reasons for life. See NT Vol. 27 at 62-63 (arguing the jury should find the prior conviction aggravator on the basis of these convictions); id. at 67 ("Mr. Upton was minding his own business in a truck on Classen Avenue . . . he was on Classen Avenue in Oklahoma City when Mr. Hammer with a firearm came up to him and basically commandeered his truck. He took him to a motel . . ."); NT Vol. 29 (7/23/98) at 19 (arguing that the jury should consider the convictions in aggravation); id. at 41 (arguing the Oklahoma incident and trial as a basis for rejecting mitigation evidence); id. at 56 (arguing the Oklahoma incident as support for escalation of violence).

The prosecution employed various aspects of Upton's version of events to bolster its theory of how Mr. Marti was killed. For example, it invoked Mr. Hammer's purported kidnapping and confinement of Mr. Upton as a "hostage theme" that was prevalent in Mr. Marti's death. Id. at 67 ("[I]t's always nice to have a hostage around. Again, you'll hear this hostage theme repeated, repeated and repeated"). The government argued that Mr. Hammer had used "deceit" and "lulled"

Mr. Upton into believing he would not be hurt so as to get Mr. Upton to remove his clothes. Id. at 67-68. The prosecutor then employed the very same terms to describe what the government contended Mr. Hammer had done to Mr. Marti. Id. at 85.

In September 2002, Mr. Hammer filed a petition for writ of habeas corpus collaterally attacking his conviction and sentence pursuant to 28 U.S.C. §2255. The Court conducted an evidentiary hearing on his petition from July 14, 2005 through September 29, 2005. On the twenty-ninth day of the hearing, September 22, 2005, the government provided the defense with thirty-three previously undisclosed FBI 302 statements that summarized interviews with various prison inmates.

On December 27, 2005, the Court issued its decision vacating the 1998 sentence of death. The Court found, in part, that, as a result of the government's misconduct for failing to disclose material exculpatory evidence, the prior sentencing proceeding was constitutionally defective.[1] Specifically, the Court held that the government's failure to disclose four FBI 302 witness statements that were "relevant and material" to the jury's penalty determination violated Brady v. Maryland, 373 U.S. 83 (1963). United States v. Hammer, 404 F. Supp. 2d 676, 801 (M.D. Pa. 2006) (Muir, J.) The Court then concluded as a matter of law that the failure of the

---

[1] The Court also found that the jury's failure to find mitigating factors that had been conceded or undisputed by the government constituted constitutional error requiring reversal. Hammer, 404 F. Supp. 2d at 801.

government to disclose the FBI 302 statements rendered "the penalty phase of the trial defective." Id.

In its Informational Outline the government noticed its intent to again proceed with the prior firearms conviction aggravator under Section 3592(c)(2) and rely on the Upton case as support for that aggravator. See Doc. 1489 at 2, n.1.

On March 11, 2014, counsel received a notice from current government counsel pursuant to Brady v. Maryland, 373 U.S. 83 (1963) that on March 10, 2014, Mr. Upton had admitted facts to Capital Crimes Section Trial Attorney Haines and Special Agent Coyle demonstrating that he had testified falsely against Mr. Hammer in 1984 and 1998. Specifically, the notice indicated that Upton had admitted that he had voluntarily accompanied Mr. Hammer to the motel; that Mr. Hammer had not brandished a weapon and forced Mr. Upton to accompany him; that Mr. Upton was neither kidnapped nor carjacked; and that Mr. Upton had not been locked into the bathroom in the motel, although he did go into the bathroom so that Mr. Hammer could make a phone call. See Exhibit 2.

On March 13, 2014, the government provided counsel with an FBI 302 recounting further details of the interview, including multiple instances in which Ms. Haines and/or Agent Coyle confronted Mr. Upton with the contradictions in his version of events. See Exhibit 3. On March 14, 2014, current government counsel

sent Mr. Hammer's counsel an email that provided a further clarification of Mr.

Upton's disclosures during the March 10, 2014 meeting. Exhibit 4.

The recently provided 302 also revealed that at or around the time of Mr.

Hammer's trial, a person Upton believed to have been from the United States

Attorney's Office had challenged Upton concerning his testimony in the Oklahoma

trial. Id. Mr. Upton's revelation that he had been confronted by someone possibly

from the United States Attorney's office demonstrates that the government knew or

should have known that Mr. Upton had committed perjury in his Oklahoma testimony

against Mr. Hammer.

A review of the trial prosecutor's direct examination of Mr. Upton provides

further evidence that the government at a minimum viewed Mr. Upton's testimony

about critical facts of the Oklahoma incident as questionable. During his direct

examination, the prosecutor had Mr. Upton identify his preliminary testimony from

the Oklahoma case. Other than a single question as to whose decision it was to go to

the motel room (NT Vol. 15 at 10), the prosecutor asked no questions about how Mr.

Hammer came to be with Mr. Upton prior to the actual shooting. The prosecutor

asked nothing about Mr. Hammer accosting Mr. Upton's car at an intersection

brandishing a firearm. He asked nothing about what Mr. Hammer purportedly told

Mr. Upton in the car ride to the motel. He asked nothing about Mr. Upton being

locked into the bathroom.  Instead, the prosecutor skipped all of these circumstances altogether and limited his examination to questions about the shooting itself and what Mr. Upton had meant when he had indicated that Mr. Hammer had "schized out." NT Vol. 15 at 6-12.  Thus, the prosecutor managed to avoid directly eliciting any of the false testimony, but was able to rely on that false testimony through the Oklahoma preliminary hearing transcript in arguing that Mr. Hammer should be put to death.

## II.    ARGUMENT.

Mr. Upton's current admissions of providing false testimony regarding critical details of the incident that formed the basis for the 1984 convictions, Mr. Hammer's 1200 year sentence, the government's original capital authorization determination in this case, and the government's aggravation evidence in 1998, as well as the circumstances of the March 10, 2014 interview, demonstrate that the convictions and evidence arising from that incident are inherently and constitutionally unreliable. While Mr. Upton continues to maintain that Mr. Hammer shot him, that does not cure the constitutional errors arising from Mr. Upton's perjury.

Permitting the government to pursue this capital prosecution on the basis of any evidence surrounding that incident in light of the recent disclosures violates Mr. Hammer's Fifth, Sixth, and Eighth Amendment Rights and the Federal Death Penalty Act ("FDPA"), for a number of reasons.  It violates the Fifth Amendment prohibition

against verdicts based on an invalid conviction.  It violates the Fifth Amendment prohibition against verdicts based on false or misleading evidence.  It violates Mr. Hammer's Fifth, Sixth, and Eighth Amendment rights to a verdict based on competent, reliable evidence.  It violates Mr. Hammer's Eighth Amendment right to heightened procedural safeguards in this capital case.  It violates the Fifth and Eighth Amendment prohibition against an arbitrary and capricious sentencing determination. As any probative value of prior convictions arising from perjured testimony is far "outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the [factfinder]," it violates the FDPA.  18 U.S.C. § 3593(c).

A. **The Admission of Any Evidence Surrounding Convictions that Were the Product of Perjury as Support for Aggravation Evidence Violates the Fifth and Eighth Amendment Prohibition Against A Sentencing Verdict Based on False, Materially Misleading and/or Inaccurate Testimony.**

A sentence based upon false, inaccurate, and unreliable evidence, violates due process and the Eighth Amendment.  Johnson v. Mississippi, 486 U.S. 578, 586 (1988);  Townsend v. Burke, 334 U.S. 736, 741 (1948) (due process violated when "prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue"); United States v. Tucker, 404 U.S. 443, 447 (1972)); Roberts v. United States, 445 U.S. 552, 556 (1980) (reaffirming that due process precludes "sentences imposed on the basis of 'misinformation of constitutional

magnitude'"). <u>See also</u>, <u>United States v. Levy</u>, 865 F.2d 551, 559-60 (3d Cir. 1989) (en banc) (vacating sentence imposed because "sentencing on the basis of materially untrue assumptions violates due process"), *aff'd after remand sub nom.* <u>Gozlon-Peretz v. United States</u>, 498 U.S. 395 (1991); <u>United States v. Kerley</u>, 838 F.2d 932, 940 (7th Cir. 1988) (Posner, J.) ("a sentence predicated on misinformation cannot stand"); <u>King v. Hoke</u>, 825 F.2d 720, 724 (2d Cir. 1987) ("It is well established that . . . material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process."); <u>United States v. Ruster</u>, 712 F.2d 409, 412 (9th Cir. 1983) (due process violated when sentencer "relies on materially false or unreliable information in sentencing a defendant").

The 1984 convictions the government seeks to admit in support of the 3592(c)(2) aggravating factor as well as non-statutory aggravation are the product of perjured testimony. Admission of any evidence surrounding these convictions violates the Fifth and Eight Amendment prohibition against a verdict based on false, materially misleading and/or inaccurate evidence.

**B. The Admission of the Invalid Convictions as Support for Aggravation Evidence that Were the Product of Perjured Testimony Violates The Fifth Amendment.**

An aggravating factor cannot be based in whole or in part on a conviction that is itself either invalid or nonexistent. <u>Johnson v. Mississippi</u>, 486 U.S. 578, 586

(1988) (where petitioner's death sentence was based in part on reversed conviction, death sentence vacated because the prior conviction "provided no legitimate support for the death sentence"); see also Duest v. Singletary, 967 F.2d 472, 480 (11th Cir.) (sentencer's consideration of a vacated conviction in support of Florida prior conviction of violent felony aggravating factor was Eighth Amendment error), vacated on other grounds, 507 U.S. 1048 (1992), after remand, 997 F.2d 1336 (11th Cir. 1993); Harris ex rel. Ramseyer v. Blodgett, 853 F. Supp. 1239, 1277 (W.D. Wash. 1994) (sentence vacated where aggravating circumstance was supported by conviction that had been dismissed prior to sentencing proceedings), aff'd on other grounds, 64 F.3d 1432 (9th Cir. 1995); Ward v. State, 827 S.W.2d 110, 114-15 (Ark. 1992) (introduction of unsubstantiated allegations of prior offenses invalidated previous conviction aggravating factor).

Current government counsel's recent disclosure demonstrates that the convictions that the government seeks to admit in support of the Section 3592(c)(2) aggravator were the product of perjury and, as a result, were – and are – constitutionally invalid.  Mr. Upton admits committing perjury, but continues to maintain that the portion of his testimony regarding the shooting itself was truthful. That, however, does not diminish the constitutional violations arising from the jury's reliance upon the convictions and Mr. Upton's tainted testimony as grounds to take

Mr. Hammer's life.  First, Mr. Upton's admitted perjury with respect to substantial, critical aspects of this incident renders the remainder of his testimony, including the version of the shooting to which he testified, constitutionally unreliable.  Second, the government's evidentiary presentation and argument during the prior penalty hearing was not limited solely to the fact that Mr. Hammer was convicted of the shooting. Instead, the government elicited, and the jury considered, the convictions for kidnapping and robbery that were a direct product of Mr. Upton's false testimony. NT Vol. 16 at 66 (eliciting from former prosecutor Keel that Mr. Hammer had been convicted of kidnapping and robbery as a result of the Upton incident).

Nor (even assuming the validity of these convictions) did the government confine its presentation of evidence and argument to the fact that Mr. Hammer had been convicted of all these charges.  Instead, the government presented Upton's prior (perjured) testimony that falsely described the circumstances leading up to the shooting.  Then it argued that the jury should consider purported similarities between those circumstances and the government's theory with regard to the circumstances of the death of Mr. Marti.  For example, the government invoked Upton's perjured testimony regarding Mr. Hammer's purported kidnapping and confinement of Mr. Upton to falsely argue that the two cases shared a "hostage theme" that was prevalent in Mr. Marti's death.  Id. at 67 ("[I]t's always nice to have a hostage around.  Again,

you'll hear this hostage theme repeated, repeated and repeated"). The government then invoked more of Upton's perjured testimony to tell the jury that Mr. Hammer had used "deceit" and "lulled" Mr. Upton into believing he would not be hurt, so as to get Mr. Upton to remove his clothes. Id. at 67-68. The prosecutor then employed the very same terms to describe what the government contended Mr. Hammer had done to Mr. Marti. Id. at 85.

Thus, even if the Court were to believe Mr. Upton's current contention that he lied about virtually everything else but still told the truth about the manner in which the shooting occurred, that would not obviate the need for preclusion. The prosecution's reliance on any aspect of Mr. Upton's perjured testimony as evidence of what Mr. Hammer purportedly did in this case, its reliance on any aspect of his perjured testimony as evidence of Mr. Hammer's death-eligibility or death-worthiness, its reliance on any aspect of his perjured testimony to rebut Mr. Hammer's mitigating evidence, and its reliance on any aspect of his perjured testimony to find that reasons for death outweigh reasons for life each violate the Fifth and Eighth Amendments.

**C.    The Admission of Any Evidence Surrounding Convictions that Were the Product of Perjury as Support for Aggravation Evidence Violates Mr. Hammer's Fifth, Sixth, and Eighth Amendment Rights to a Verdict Based on Competent, Reliable Evidence.**

Due process affords a criminal defendant the right to a verdict based on competent, reliable evidence and the law. Chandler v. Florida, 449 U.S. 560, 574 (1981); see also Irvin v. Dowd, 366 U.S. 717, 722 (1961). That right is protected not just by due process, but by the Sixth Amendment. United States v. Gaudin, 515 U.S. 506, 514 (1995). And when a defendant is on trial for his life, the Eighth Amendment requires the State to "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" Godfrey v. Georgia, 446 U.S. 420, 428 (1980). Because the government "has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty," id., a death sentence that is based on the consideration of perjured and/or materially misleading or false testimony or arguments that are outside the scope of the applicable law is unconstitutionally arbitrary and capricious.

Thus, the admission of convictions that arose from perjured testimony violates Mr. Hammer's Fifth, Sixth and Eighth Amendment rights to a reliable verdict and the admission of that evidence should be precluded.

**D.    The Admission of Any Evidence Surrounding Convictions that Were the Product of Perjury as Support for Aggravation Evidence Violates Mr. Hammer's Fifth and Eighth Amendment Rights to Heightened Reliability Standards.**

The United States Supreme Court has long recognized that, because of its unparalleled severity and irrevocability, death differs fundamentally from any other punishment.  See Ford v. Wainwright, 477 U.S. 399, 411 (1986); Woodson v. North Carolina, 428 U.S. 280, 305 (1976).  It also " has repeatedly said that under the Eighth Amendment 'the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination.'"  Caldwell v. Mississippi, 472 U.S. 320, 328-29 (1985) (citation omitted); Woodson, 428 U.S. at 305; Eddings v. Oklahoma, 455 U.S. 104, 118 (1982) (O'Connor, J., concurring) (because of the exceptional and irrevocable nature of the death penalty, due process and the Eighth Amendment require "extraordinary measures" to ensure the reliability of capital proceedings).  This proposition, which applies equally to the guilt and penalty phases of a capital trial, see, e.g., Beck v. Alabama, 447 U.S. 625, 637-38 (1980) (guilt); Lockett v. Ohio, 438 U.S. 586, 604 (1978) (penalty), is one of the most clearly established principles of Eighth Amendment law.  See also Gardner v. Florida, 430 U.S. 349, 357-58 (1977) (plurality opinion); id. at 363-64 (White, J., concurring); Lockett, 438 U.S. at 604; Godfrey v.

Georgia, 446 U.S. 420, 427-28 (1980); Beck, 447 U.S. at 637-38; Zant v. Stephens, 462 U.S. 862, 884-85 (1983); California v. Ramos, 463 U.S. 992, 998-99 & n.9 (1983); Ake v. Oklahoma, 470 U.S. 68, 78 (1985); id. at 87 (1985) (Burger, C.J., concurring); Caldwell v. Mississippi, 472 U.S. 320, 328-29 (1985); Turner v. Murray, 476 U.S. 28, 36-37 (1986); Ford v. Wainwright, 477 U.S. 399, 411 (1986); Mills v. Maryland, 486 U.S. 367, 383-84 (1988); Johnson v. Mississippi, 486 U.S. 578, 584-85 (1988).

A conviction based on perjured testimony not only fails to meet the heightened reliability standards, it fails to meet any reliability standard and the government should not be able to present any evidence arising from convictions that were the product of perjured testimony.

**E.     The Admission of Evidence of Convictions that Were the Product of Perjury Violates the Fifth and Eighth Amendment Prohibition Against an Arbitrary and Capricious Sentencing Determination.**

When a defendant is on trial for his life, the Eighth Amendment requires the government to "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" Godfrey, 446 U.S. at 428. "It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion."

Gardner v. Florida, 430 U.S. 349, 358 (1977). Because the government "has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty," id., a death sentence that is based on the consideration of factors that are outside the scope of the applicable law is unconstitutionally arbitrary and capricious.

Perjured testimony and convictions that were the product of perjured testimony are clearly not proper considerations for whether someone should live or die under the FDPA or the constitution.  Injecting evidence of the circumstances surrounding these convictions in light of Mr. Upton's admissions that he committed perjury in 1984 and 1998 violates the Eighth Amendment prohibition against arbitrary and capricious sentencing determinations.

**F.      Admitting Any Evidence Arising from Prior Convictions that Were the Product of Perjury Violates the FDPA.**

To justify admission of evidence in a capital sentencing hearing, the government must first meet a number of threshold requirements.  Evidence of non-statutory aggravators must be "*'particularly* relevant to the sentencing decision,' not merely relevant, in some generalized sense, to whether defendant might be considered a bad person." United States v. Gilbert, 120 F. Supp. 2d 147, 150-51 (D. Mass. 2000) (citing Gregg v. Georgia, 428 U.S. 153, 192 (1976)); see also United States v. Stitt,

760 F. Supp. 2d 570, 583 (E.D. Va. 2010); <u>United States v. Sablon</u>, 555 F. Supp. 2d 1205, 1214 (D. Co. 2007); <u>United States v. Fell</u>, 372 F. Supp. 2d 753, 763 (D. Vt. 2005); <u>United States v. Davis</u>, 912 F. Supp. 938, 943 (E.D. La. 1996).

Even if the proffered evidence is both relevant and reliable, it is still inadmissible if its probative value "is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the [factfinder]." 18 U.S.C. § 3593(c). "The balance of probative value and unfair prejudice must be weighed more carefully in a death penalty case than in normal cases." <u>Gilbert</u>, 120 F. Supp. 2d at 151.

For all the reasons discussed above, admission of any evidence surrounding the prior convictions that were the product of perjury has absolutely no relevance as proof of the intent gateway factor or any statutory or non-statutory aggravating factor. It likewise is irrelevant to whether any aggravation properly found by the jury outweighs the evidence it has found in mitigation, and is not even remotely relevant as a consideration justifying a sentence of death. If anything the opposite is true.

Given the constitutional invalidity of the prior convictions, employing the fact of those convictions or any aspect of the circumstances surrounding those convictions as a consideration in favor of death would be materially misleading to the factfinder – indeed, unconstitutionally so. (<u>See</u> <u>Johnson</u>; <u>Townsend</u>, *supra*.)

19

The highly prejudicial evidence cannot meet the statutory requirement that it must be "particularly relevant" to aggravation to be admissible. It holds absolutely no probative value to the sentencing determination. Even if there were some remote probative basis for admitting this information as a consideration in favor of imposing the death penalty, and there is not, it is far outweighed by the clear and present "danger of creating unfair prejudice, confusing the issues, or misleading the jury," 18 U.S.C. § 3593(c), and from the multiple constitutional and statutory violations described above.

**G.    Conclusion**.

For each of these reasons, and those set forth in Mr. Hammer's *Motion in Limine to Preclude the Government from Seeking Death on the Basis of a Prior Conviction and Other Evidence that Was the Product of Perjured Testimony,* Mr. Hammer respectfully requests that, following discovery, an evidentiary hearing and/or argument, that this Court Grant Mr. Hammer's motion.

.

Respectfully submitted,


/s/  RONALD C. TRAVIS

Ronald C. Travis

Rieders, Travis, Humphrey, Harris,

Waters & Waffenschmidt

161 West Third Street

PO Box 215

Williamsport, PA  17703-0215

570-323-8711 (telephone)

570-323-4192 (facsimile)

rtravis@riederstravis.com


/s/ ANNE SAUNDERS

Anne Saunders

Assistant Federal Defender

Federal Public Defender

Middle District Pennsylvania

100 Chestnut Street, Suite 300

Harrisburg, PA 17101

717-782-3843 (telephone)

717-782-3966 (facsimile)

anne_saunders@fd.org


Dated:  April 2, 2014

/s/ JAMES MCHUGH

James J. McHugh, Jr.

/s/ JAMES MORENO

James Moreno

Federal Community Defender

Eastern District Pennsylvania

Suite 540 – The Curtis Center

Philadelphia, PA 19106

215-928-1100 (telephone)

215-928-0826 (facsimile)

james_mchugh@fd.org

james_moreno@fd.org

# CERTIFICATE OF SERVICE

I, Anne Saunders, Esquire, do hereby certify that on this date I served a copy of the foregoing by Electronic Case Filing, or by placing a copy in the United States mail, first class addressed to the following:


John C. Gurganus, Jr. Esquire
United States Attorneys Office
Middle District of Pennsylvania
235 N. Washington Street, Suite 311
PO Box 309
Scranton, PA. 18501

Amanda Haines, Esquire
United States Department of Justice
Criminal Division
Capital Case Section
1331 F. Street, N.W.
Washington, D.C. 20530


/S/ANNE SAUNDERS, ESQUIRE
James Moreno, Esquire


Dated: April 2, 2014