# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
| | : | |
| v. | : | Honorable Joel H. Slomsky |
| | : | |
| DAVID HAMMER, | : | Capital Case |
| | : | |
| Defendant | : | |

_____ : _____

### DEFENDANT'S BRIEF IN SUPPORT OF HIS MOTION IN LIMINE TO PRECLUDE/SUPPRESS THE TESTIMONY OF LEONARD YAGER

Defendant, David Hammer, through undersigned counsel, submits his *Brief in Support of His Motion in Limine to Preclude/Suppress the Testimony of Leonard Yager*.

The government sent Leonard Yager in to collect inculpatory evidence after Mr. Hammer had invoked his right to counsel and then failed to inform the defense that Yager had been an agent for the government. Whether or not the former prosecutor knew of Yager's status as an agent, and his comments during Classen's grand jury testimony indicate that he did, does not cure the constitutional errors arising from the government's use of the fruits of Yager's deployment as an agent to circumvent Mr. Hammer's clear invocation of his right to counsel. Whether or not the former prosecutor knew about Yager's status, he certainly should have known,

and had a duty to determine that status and disclose it to the defense since that information clearly had an impact on the reliability of Yager's testimony as well as the evidence surrounding the "kite" that Classen purportedly received. Not only did the prosecution fail to disclose these critical facts, but it relied on the fruits of the government's misconduct to support the government's theory of gateway intent and substantial planning and premeditation in support of a death sentence. The government cannot be permitted to repeat these constitutional errors arising from its own misdeeds in these resentencing proceedings.

**I.      AS YAGER WAS ACTING AS AN AGENT OF THE GOVERNMENT AT THE TIME HE ELICITED EVIDENCE AGAIN MR. HAMMER AFTER MR. HAMMER HAD INVOKED HIS RIGHT TO COUNSEL, HIS TESTIMONY VIOLATES THE FIFTH AND SIXTH AMENDMENTS.**

Shortly after the discovery of Mr. Marti's death, Mr. Hammer was interrogated by FBI and BOP investigative personnel. Mr. Hammer waived his rights and gave a statement. Exhibit 2. After Mr. Hammer indicated that he "had better get me a lawyer," the interrogation terminated. Id. There is no question that Mr. Hammer had clearly and unambiguously invoked his right to counsel. See McNeil v. Wisconsin, 501 U.S. 171, 178 (1991) (invocation of counsel under Miranda, requires "some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney"). Having done so, the government was required to cease all interrogation until counsel was provided. See Miranda v. Arizona, 384 U.S. 436,

474 (1966) (once counsel is requested, "the interrogation must cease until an attorney is present").  Indeed, "having expressed his desire to deal with the [investigators] only through counsel," Mr. Hammer was not "subject to further interrogation by the authorities until counsel [had] been made available to him, unless [Mr. Hammer] himself initiate[d] further communication, exchanges, or conversations with the [investigators]."  Edwards v. Arizona, 451 U.S. 477, 484 (1981).

Recognizing Mr. Hammer's clear statement as an invocation of his right to counsel, the investigators terminated the interrogation.  But rather than "scrupulously honoring"[1] Mr. Hammer's invocation of his right to counsel, the FBI recruited Leonard Yager as its agent to conduct further interrogation in violation of Mr. Hammer's rights.  The fact that the attempts to elicit inculpatory evidence were done by Yager as opposed to a law enforcement officer is of no moment under the constitution.  The FBI "sent" Yager in to interrogate him and obtain inculpatory evidence.  Yager asked Mr. Hammer specific questions about the death of Mr. Marti. Yager provided Mr. Hammer – whom the Bureau of Prisons had strategically isolated in an empty cell – with various supplies, including pencil and paper, that the prison had otherwise denied him.  Yager delivered notes to the government that purportedly had been generated by Mr. Hammer.  In short, in every way, Yager was acting as an

---

[1]Michigan v. Mosley, 423 U.S. 96, 104 (1975).

agent of the government.

This was not a situation in which the government fortuitously obtained inculpatory statements from Mr. Hammer "by luck or happenstance." Maine v. Moulton, 474 U.S. 159, 176 (1985). Here, the government deliberately deployed an agent who would have a pretext for having contact with Mr. Hammer, and orchestrated the events to obtain statements and evidence it could use against him. It short, it obtained inculpatory evidence by "knowingly circumventing" Mr. Hammer's previously invoked right to counsel. Id.

The government's clandestine employment of Yager as its agent to obtain inculpatory information from Mr. Hammer was in patent disregard of Mr. Hammer's invocation of his right to counsel. All evidence obtained as a result of the government's use of Yager as an agent, including Classen's testimony regarding the purported letter he received some time after Mr. Marti's death and all of Yager's testimony, is inadmissible under the Fifth and Sixth Amendments.

II. **PERMITTING THE GOVERNMENT TO BENEFIT FROM ITS OWN MISCONDUCT IN LIGHT OF THE HISTORY OF PROSECUTORIAL DISREGARD FOR ITS CONSTITUTIONAL DUTIES AND MR. HAMMER'S CONSTITUTIONAL RIGHTS VIOLATES THE FIFTH, SIXTH AND EIGHTH AMENDMENTS.**

The disclosure by current government counsel on March 14, 2014 was the first time that Mr. Hammer or his counsel were aware that the government had used Yager as an agent to circumvent Mr. Hammer's invocation of his right to counsel. There is

4

no question that the prosecution knew about this arrangement, in light of Yager's statement that the "FBI" had "sent" him in to conduct his interrogation. Moreover, AUSA Martin's comment during Classen's grand jury testimony about the government's "strange and mysterious" ways – combined with the circumstances in which the government obtained the note purportedly sent to Classen on April 14, 1996, shows that Mr. Martin was aware of at least some of the arrangement with Yager and strongly suggests that he knew the full situation.

Even if the government prosecutors did not have actual knowledge of Yager's activities on their behalf, the FBI and/or BOP investigators who were part of the same prosecution team were fully aware that Yager had been sent in as an agent of the government to circumvent Mr. Hammer's invocation of his right to counsel. Accordingly, the government was obliged under Brady to disclose that information to Mr. Hammer pretrial. See United States v. Risha, 445 F. 3d 298, 305 (3d Cir. 2006).

The government concealed this information pretrial, during trial, at the time Mr. Hammer entered his guilty plea, and this suppression continued throughout Mr. Hammer's post-trial proceedings and the Section 2255 evidentiary hearing. Had the government disclosed this information, Mr. Hammer would have challenged the admissibility of Yager's testimony and all other fruits of the government's misconduct, including the Classen testimony described above, obtained as a result of

its clandestine deployment of Yager as an agent to circumvent Mr. Hammer's invocation of his right to counsel.   As set forth above, the Fifth and Sixth Amendments would have required the Court to suppress this evidence, amply satisfying the requirement that Mr. Hammer demonstrate a reasonable probability that he would have succeeded with such a challenge.

Yager's involvement with the FBI constituted material exculpatory evidence that should have been disclosed to Mr. Hammer prior to his trial under Brady v. Maryland, 373 U.S. 83, 87 (1963).  See also Giglio v. United States, 405 U.S. 150, 153-56 (1972); United States v. Bagley, 473 U.S. 667, 676 (1985); Kyles v. Whitley, 514 U.S. 419, 437 (1995).  "Favorable evidence" under Brady includes evidence that impeaches the prosecution's theory or witnesses.  Bagley, 473 U.S. at 676; Napue v. Illinois, 360 U.S. 264, 269 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence");see also Breakiron v. Horn, 642 F.3d 126, 133-34 (3d Cir. 2011) (noting that impeachment evidence, including evidence that the key prosecution witness "was a suspect in another criminal investigation pending" at the time of trial was clearly exculpatory under Brady); Simmons v. Beard, 590 F.3d 223, 235 (3d Cir. 2009) (prosecution's failure to disclose multiple items of impeachment evidence violated Brady); Wilson v. Beard, 589 F.3d 651, 662 (3d Cir. 2009) (same).

Favorable evidence is material, and its non-disclosure prejudicial, "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." Cone v. Bell, 556 U.S. 449, 469-70 (2009). This "does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine[ ] confidence in the outcome of the trial.'" Smith v. Cain, 132 S. Ct. 627, 630 (2012) (quoting Kyles, 514 U.S. at 434).   When there is a reasonable probability that the withheld evidence, if presented, could have provided a "reasonable doubt" about Petitioner's guilt, he is entitled to relief. Kyles, 514 U.S. at 434; California v. Trombetta, 467 U. S. 479, 485 (1984); see also Hinton v. Alabama, 134 S. Ct. 1081, 1089 (2014) (describing the identical standard applicable in cases of ineffective assistance of counsel, as "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt").

At trial, Yager portrayed himself (and the government portrayed Yager) as a confident of Mr. Hammer, who – by mere coincidence – happened to come across the information that the government presented in support of its theory of premeditation for murder, as well the penalty-phase intent gateway factors and substantial planning aggravating circumstance.  As the recent disclosures demonstrate, nothing could be further from the truth.  Instead, Yager was acting as an agent of the government and

made affirmative efforts to elicit information that would advance the prosecution's case on guilt and penalty.

Yager's direct involvement as an agent of the FBI substantially alters the degree of his bias in favor of the government and substantially diminishes the reliability of his testimony, as well as the purported documents he claimed to have received from Mr. Hammer (government's Exhibit 32.1), and/or passed on to Classen (government's Exhibit 35.2).  Clearly, had the prior jury been aware of just how vested Yager was in obtaining information helpful to the government, it would have viewed Yager's testimony differently and there is a reasonable probability that the results of the sentencing hearing would have been different.

While Mr. Hammer now faces a resentencing hearing, and current government counsel, to their credit, have finally disclosed that which should have been disclosed over 17 years ago, that does not diminish the constitutional taint arising from the government's use of Yager as its agent to circumvent Mr. Hammer's constitutional rights.  The history of this case demonstrates a pattern of disregard for Mr. Hammer's constitutional rights and the prosecution's constitutional duties.  The Court granted a new sentencing hearing on the basis of the government's failure to disclose material exculpatory evidence.  There, the government fought disclosure until the twenty-ninth day of the Section 2255 hearing.  Now, it appears that there was even additional exculpatory evidence that goes to the heart of the government's case for guilt, the

intent factors and statutory and non-statutory aggravation.  The government cannot benefit from its own misconduct.  For this reason as well, this Court should preclude Yager's testimony and the admission of Classen's prior testimony.

For each of these reasons, and those set forth in Mr. Hammer's *Motion in Limine to Preclude/Suppress the Testimony of Leonard Yager*, Mr. Hammer respectfully requests that following discovery, an evidentiary hearing and/or argument, that this Court Grant Mr. Hammer's motion.

 Respectfully submitted,

/S/  RONALD C. TRAVIS
Ronald C. Travis
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
570-323-8711 (telephone)
570-323-4192 (facsimile)
rtravis@riederstravis.com


/S/ ANNE SAUNDERS
Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
anne_saunders@fd.org
April 2, 2014

/S/ JAMES MCHUGH
James J. McHugh, Jr.
/S/ JAMES MORENO
James Moreno
Federal Community Defender
Eastern District Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA 19106
215-928-1100 (telephone)
215-928-0826 (facsimile)
james_mchugh@fd.org
james_moreno@fd.org

9

# CERTIFICATE OF SERVICE

I, Anne Saunders, Esquire, do hereby certify that on this date I served a copy of the foregoing by Electronic Case Filing, or by placing a copy in the United States mail, first class addressed to the following:

John C. Gurganus, Jr. Esquire
United States Attorneys Office
Middle District of Pennsylvania
235 N. Washington Street, Suite 311
PO Box 309
Scranton, PA. 18501

Amanda Haines, Esquire
United States Department of Justice
Criminal Division
1331 F. Street, N.W.
Washington, D.C. 20530

/S/ANNE SAUNDERS, ESQUIRE
Anne Saunders, Esquire

Dated: April 2, 2014