UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
| | : | |
| v. | : | Honorable Joel H. Slomsky |
| | : | |
| DAVID HAMMER, | : | Capital Case |
| | : | |
| Defendant | : | |
| _____ | : | _____ |

**DEFENDANT'S MOTION  IN LIMINE TO PRECLUDE THE ADMISSION OF PRIOR
TESTIMONY OF STEPHEN CLASSEN**

Defendant, David Hammer, through undersigned counsel, submits his *Motion
in Limine to Preclude the Admission of Prior Testimony of Stephen Classen*, and in
support thereof, states the following:

1.      On September 18, 1996, a Grand Jury sitting in Williamsport,
Pennsylvania, returned an Indictment charging David Hammer with first degree
murder arising from the April 13, 1996, death of Mr. Hammer's cellmate, Andrew
Marti. Doc. 1. On April 9, 1997, the government filed a notice of its intent to seek
the death penalty.  Doc. 93.  The trial began on May 5, 1998.  On June 22, 1998, after
the defense had rested and while the government was presenting its rebuttal case, Mr.
Hammer entered a plea of guilty to the murder charge.

2.      The penalty phase began on June 30, 1998.  In support of death, the government sought to prove two statutory aggravating factors:  that the defendant committed the murder after substantial planning and premeditation, 18 U.S.C. §3592(c)(9), and that the defendant had previously been convicted of a state or federal offense punishable by a term of imprisonment of more than one year that involved the use, or attempted or threatened use, of a firearm against another person, 18 U.S.C. §3592(c)(2).  On July 24, 1998 the jury returned a verdict of death.

3.      In September 2002, Mr. Hammer filed a petition for writ of habeas corpus collaterally attacking his conviction and sentence pursuant to 28 U.S.C. §2255.  The Court conducted an evidentiary hearing on his petition from July 14, 2005 through September 29, 2005.  On the twenty-ninth day of the hearing, September 22, 2005, the government provided the defense with thirty-three previously undisclosed FBI 302 statements that summarized interviews with various prison inmates.

4.      On December 27, 2005, the Court issued its decision vacating the 1998 sentence of death.  The Court found, in part, that, as a result of the government's misconduct for failing to disclose material exculpatory evidence, the prior sentencing

proceeding was constitutionally defective.[1]  Specifically, the Court held that the government's failure to disclose four 302 witness statements that were "relevant and material" to the jury's penalty determination violated Brady v. Maryland, 373 U.S. 83 (1963).  United States v. Hammer, 404 F. Supp. 2d 676, 801 (M.D. Pa. 2006) (Muir, J.)  The Court then concluded as a matter of law that the failure of the government to disclose the 302 statements rendered "the penalty phase of the trial defective."  Id.

5.     Stephen Classen was called by the prosecution during the initial trial to testify about his observations of Mr. Hammer while he was a cellmate; statements purportedly made by Mr. Hammer regarding Mr. Marti; and, a document Classen purportedly received from Mr. Hammer.  NT 6/9/98 at 178-94; NT 6/10/98 at 3-80. In the course of their preparation for the resentencing hearing, counsel have learned that Stephen Classen has died.  Presumably the government will seek to admit Classen's prior testimony.  Because the government withheld critical evidence relevant to the reliability of Classen's prior testimony the admission of that prior testimony violates the Fifth, Sixth and Eight Amendments.

6.     Classen testified that at some point after Mr. Marti's death, he found a

---

[1]The Court also found that the jury's failure to find mitigating factors that had been conceded or undisputed by the government constituted constitutional error requiring reversal.  Hammer, 404 F. Supp. 2d at 801.

document on the floor by the door of his cell. NT Vol. 6 at 17. Classen indicated that the letter would have been delivered by an orderly.  NT 8/28/96 at 14.  Classen testified that he did not immediately read the note and that when he did finally open it, he only read part of it.  NT 8/28/96 at 14-15; NT Vol. 6 at 17-18.  He then flushed the letter down the toilet without finishing reading it.  NT Vol. 6 at 18.  At trial, Classen never positively identified the letter offered by the government (government trial exhibit 35.2), as the one he had received that morning under his cell door.  NT Vol. 6 at 19 (indicating that exhibit 35.2 was not the letter he received); id. at 32 (indicating that as far as he was concerned, he had never received exhibit 35.2).

7.      During his grand jury appearance, when AUSA Martin presented the purported document for identification, Classen testified that he "did not know that [the government] had [the note]" and that he "thought it came right to [him]."  NT 8/28/96 at 15.  Mr. Martin responded that "[w]e work in strange and mysterious ways." Id.

8.      On March 14, 2014, current government counsel provided a disclosure regarding former inmate Leonard Yager.  Yager had been a prison orderly at the time Classen received the purported document, and as an orderly, Yager was free to move about the block, speak with inmates through the cell doors, and receive and/or deliver various items from or to inmates.  NT Vol. 4 at 82.  Current government counsel's

notice indicated that "at the time of the offense, the FBI 'sent [Yager] in' to talk to Mr. Hammer." See Exhibit 1.

9. At or around 6:24 am on April 13, 1996, after the discovery of Mr. Marti's death, Mr. Hammer was interrogated by FBI Special Agent Carlyle Thompson and BOP investigative personnel. See Exhibit 2. Mr. Hammer initially waived his rights and gave a statement. Id. After Mr. Hammer indicated that he "had better get me a lawyer," the interrogation was terminated. Id. Following his interrogation and invocation of his right to counsel, the authorities moved Mr. Hammer to a separate, empty cell. Mr. Hammer had no supplies available to him in that cell. See NT Vol. 4 at 97-98.

10. Following his interrogation of Mr. Hammer, Special Agent Thompson, accompanied by BOP SIS investigators Mark Traxler and Ron Jury, interviewed inmate Leonard Yager. See Exhibit 3. After his April 13, 1996, interview with the authorities, Yager went to Mr. Hammer's cell door and spoke with him on a number of occasions, engaging Mr. Hammer in conversation about the murder and asking him various questions, including "why he did it." Id. at 97-98. At some point, Mr. Hammer requested paper and pencil. Yager left and returned with the supplies. NT Vol. 4 at 97-98. When Yager asked Mr. Hammer again why Mr. Marti was killed, id. 102, Mr. Hammer told Yager to come back later. Yager claimed that when he

returned, Mr. Hammer slipped a note to him through the door.  <u>Id.</u>

11.    On April 17, 1996, FBI Special Agent Anthony Malocu and BOP SIS investigator Traxler again interviewed Yager.  During this interview, Yager turned over a letter purportedly from Mr. Hammer that listed reasons for killing Mr. Marti.  <u>See</u> Exhibit 4.  At trial, Yager identified government Exhibit 32.1 as the note that Mr. Hammer passed to him, <u>id.</u> at 103, and then read various portions of Exhibit 32.1 that purported to be reasons for killing Mr. Marti.  <u>Id.</u> at 105-09; <u>see also</u> NT 7/24/96 at 25-27.

12.    After the government's recent disclosure concerning Yager's activities on its behalf, the government's "ways" are no longer "strange" or "mysterious" with regard to the document Classen thought he had destroyed.  Obviously, Yager was secretly providing various documents to the investigators so that they could copy them and retain them as evidence.  In Classen's case, it is not clear whether the document Yager delivered to the government was a copy of the actual document that had been placed under Classen's door or was some other document that Yager hoped would ensure that he (Yager) received the benefits he was seeking from the government.  Regardless, the government's clandestine deployment of Yager as its

agent in the development of the evidence presented during Classen's testimony deliberately circumvented Mr. Hammer's invocation of his right to counsel, constitutionally taints that testimony, and requires relief.

13.     Classen also testified that, other than his expectations for a letter of cooperation from Mr. Martin in support of a Rule 35 motion for his prosecution in Oregon and a recommendation to the Bureau of Prisons ("BOP"), that Classen be housed in an institution other than a penitentiary, there were no agreements in exchange for his testimony.  NT 6/10/98 at 4-5.

14.     During the course of these pretrial proceedings, as a result of counsel's discovery requests, the government provided a number of documents regarding Classen, including letters exchanged between Mr. Martin and Classen prior to and after Mr. Hammer's initial trial.  See Exhibit 5. This correspondence provides a clearer picture of Classen's expectations regarding what he would receive from the government should he provide helpful testimony for the prosecution of Mr. Hammer and the assistance provided by Mr. Martin on Classen's behalf for a sentence reduction.

15.     Moreover, the correspondence also indicates that Classen sought, and apparently received, Mr. Martin's assistance regarding where he was housed both before and after Mr. Hammer's trial.  It also demonstrates that Mr. Martin not only

assisted in obtaining a shorter sentence, he also intervened when Classen was not scheduled to be moved to the halfway house as quickly as he desired and obtained an earlier release date for Classen to the halfway house. In short, rather than merely recommending a sentence reduction and housing in a facility that was not a penitentiary, the correspondence demonstrates that Mr. Martin provided much more to Classen and, more importantly, that Classen believed these additional benefits were part of the original cooperation agreement. Although some of this correspondence occurred prior to trial, the government failed to disclose it to counsel pretrial in violation of Mr. Hammer's Fifth, Sixth and Eighth Amendment rights.

16. In addition, Classen wrote letters to Mr. Hammer during the Section 2255 proceedings seeking money and other benefits from Mr. Hammer in exchange for favorable testimony. See Exhibit 6.

17. As counsel had none of the correspondence and did not have the information regarding Yager's role as an agent of the government, there was no opportunity to fully cross-examine Classen regarding the full extent of his expectations for benefits in exchange for his cooperation during the initial trial, the extent of Classen's willingness to provide favorable testimony in exchange for benefits and the polluted source of the document Classen purportedly received in light of Yager's status as the block runner.

18.     Under these circumstances, permitting the government to admit the prior testimony of Classen violates Mr. Hammer's Fifth, Sixth and Eighth Amendment rights to confrontation, cross-examination, a fair trial and the heightened procedural safeguards required in capital cases and the requirements under the Federal Death Penalty Act.  For each of these reasons, Mr. Hammer respectfully requests that this Court preclude the government from admitting Classen's prior testimony.

WHEREFORE, for each of these reasons, and those set forth in Mr. Hammer's *Brief in Support of his Motion in Limine to Preclude the Admission of Prior Testimony of Stephen Classen*, Mr. Hammer respectfully requests that, following discovery, an evidentiary hearing and/or argument, that this Court Grant Mr. H Hammer's motion.

Respectfully submitted,


/s/  RONALD C. TRAVIS                          /s/ JAMES MCHUGH
Ronald C. Travis                              James J. McHugh, Jr.
Rieders, Travis, Humphrey, Harris,            /s/ JAMES MORENO
Waters & Waffenschmidt                        James Moreno
161 West Third Street                         Federal Community Defender
PO Box 215                                    Eastern District Pennsylvania
Williamsport, PA  17703-0215                  Suite 540 – The Curtis Center
570-323-8711 (telephone)                      Philadelphia, PA 19106
570-323-4192 (facsimile)                      215-928-1100 (telephone)
rtravis@riederstravis.com                     215-928-0826 (facsimile)
                                              james_mchugh@fd.org
                                              james_moreno@fd.org


/s/ ANNE SAUNDERS
Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
anne_saunders@fd.org



Dated:  April 2, 2014

## CERTIFICATE OF SERVICE

I, Anne Saunders, Esquire, do hereby certify that on this date I served a copy of the foregoing by Electronic Case Filing, or by placing a copy in the United States mail, first class addressed to the following:


John C. Gurganus, Jr. Esquire
United States Attorneys Office
Middle District of Pennsylvania
235 N. Washington Street, Suite 311
PO Box 309
Scranton, PA. 18501

Amanda Haines, Esquire
United States Department of Justice
Criminal Division
Capital Case Section
1331 F. Street, N.W.
Washington, D.C. 20530


/S/ANNE SAUNDERS, ESQUIRE
James Moreno, Esquire


Dated:  April 2, 2014