# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
|  | : |  |
| v. | : | Honorable Joel H. Slomsky |
|  | : |  |
| DAVID HAMMER, | : | Capital Case |
|  | : |  |
| Defendant | : |  |

_____ : _____

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO PRECLUDE THE ADMISSION OF PRIOR TESTIMONY OF STEPHEN CLASSEN

Defendant, David Hammer, through undersigned counsel, submits this *Brief in Support of his Motion in Limine to Preclude the Admission of Prior Testimony of Stephen Classen* and, in support thereof states the following:

## I.    INTRODUCTION.

On September 18, 1996, a Grand Jury sitting in Williamsport, Pennsylvania, returned an Indictment charging David Hammer with first degree murder arising from the April 13, 1996, death of Mr. Hammer's cellmate, Andrew Marti.  Doc. 1.  On April 9, 1997, the government filed a notice of its intent to seek the death penalty. Doc. 93.  The trial began on May 5, 1998.  On June 22, 1998, after the defense had rested and while the government was presenting its rebuttal case, Mr. Hammer entered a plea of guilty to the murder charge.

The penalty phase began on June 30, 1998.   In support of death, the government sought to prove two statutory aggravating factors:  that the defendant committed the murder after substantial planning and premeditation, 18 U.S.C. §3592(c)(9), and that the defendant had previously been convicted of a state or federal offense punishable by a term of imprisonment of more than one year that involved the use, or attempted or threatened  use, of a firearm against another person, 18 U.S.C. §3592(c)(2).  On July 24, 1998 the jury returned a verdict of death.

In September 2002, Mr. Hammer filed a petition for writ of habeas corpus collaterally attacking his conviction and sentence pursuant to 28 U.S.C. §2255.  The Court conducted an evidentiary hearing on his petition from July 14, 2005 through September 29, 2005.  On the twenty-ninth day of the hearing, September 22, 2005, the government provided the defense with thirty-three previously undisclosed FBI 302 statements that summarized interviews with various prison inmates.

On December 27, 2005, the Court issued its decision vacating the 1998 sentence of death.  The Court found, in part, that, as a result of the government's misconduct for failing to disclose material exculpatory evidence, the prior sentencing proceeding was constitutionally defective.[1]  Specifically, the Court held that the

---

[1]The Court also found that the jury's failure to find mitigating factors that had been conceded or undisputed by the government constituted constitutional error requiring reversal.  Hammer, 404 F. Supp. 2d at 801.

2

government's failure to disclose four 302 witness statements that were "relevant and material" to the jury's penalty determination violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  <u>United States v. Hammer</u>, 404 F. Supp. 2d 676, 801 (M.D. Pa. 2006) (Muir, J.)  The Court then concluded as a matter of law that the failure of the government to disclose the 302 statements rendered "the penalty phase of the trial *defective*." <u>Id.</u> (emphasis added).

At the initial trial, Classen had testified that the only benefits he expected in exchange for his testimony was a recommendation for a reduced sentence and that Classen be housed at a facility other than a penitentiary. NT 6/10/98 at 4-5.  During the course of the resentencing proceedings, in response to discovery requests, the government disclosed for the first time correspondence between Classen and former Assistant United States Attorney Martin that had occurred both before and after Mr. Hammer's 1998 trial.  The previously undisclosed correspondence demonstrates that Classen expected, and received, additional benefits including responses to his complaints about his conditions of confinement, the location of his housing while he testified against Mr. Hammer, the location of his housing after he testified, and, assistance in obtaining an earlier release to a halfway house. <u>See</u> Exh.  A.  The correspondence also indicates that Classen felt comfortable referring to Mr. Martin and Agent Malocu by their first names and that Classen felt free to call Mr. Martin when he was having any difficulties with the institution and that he expected Mr.

3

Martin to intercede on his behalf.  Exhibit 5.

In addition, during the 2255 proceedings, Mr. Classen sent letters to Mr. Hammer containing veiled threats that he could help or hurt Mr. Hammer in his testimony during those proceedings and at various times asking for money and/or a portion of the proceeds from Mr. Hammer's book.  Exhibit 6.  Finally, counsel were just notified by current government counsel that Lenoard Yager, the individual who was delivering various documents between inmates after Mr. Marti's death, including the document Classen purportedly received under his cell door, was acting as a government agent to circumvent Mr. Hammer's invocation of his right to counsel.

Counsel have also learned that Mr. Classen died.  Presumably, the government will seek to admit Mr. Classen's prior testimony at the resentencing.  For the reasons described below, the admission of Classen's prior testimony violates the Fifth, Sixth and Eighth Amendments and the Federal Death Penalty Act ("FDPA").

## II.    ARGUMENT.

Due Process requires a prosecutor to disclose favorable evidence to the accused that is material to either guilt or punishment.  Brady v. Maryland, 373 U.S. 83, 87 (1963); Giglio v. United States, 405 U.S. 150, 153-56 (1972); United States v. Bagley, 473 U.S. 667, 676 (1985); Kyles v. Whitley, 514 U.S. 419, 437 (1995).  A prosecutor's duty to disclose is especially important in a capital case. Kyles, 514 U.S.

at 422.  "Favorable evidence" under Brady includes evidence that impeaches the prosecution's theory or witnesses.  Bagley, 473 U.S. at 676; Napue v. Illinois, 360 U.S. 264, 269 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence"); see also Wilson v. Beard, 589 F.3d 651, 662 (3d Cir. 2009); Simmons v. Beard, 590 F.3d 223, 235 (3d Cir. 2009); Breakiron v. Horn, 642 F.3d 126, 133-34 (3d Cir. 2011).  Likewise, the use of false, inaccurate or misleading prosecutorial testimony or argument deprives a defendant of a fair trial.  Napue v. Illinois, 360 U.S. 264, 271 (1959); Giglio v. United States, 405 U.S. 150 (1972); Carter v. Rafferty, 826 F.2d 1299 (3d Cir. 1987).

Similarly, it is clearly established Sixth Amendment law that, "the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal."  Pointer v. Texas, 380 U.S. 400, 405 (1965).  See also Barber v. Page, 390 U.S. 719, 721 (1968) (citing Pointer, 380 U.S. at 405).  As the United States Supreme Court noted over two centuries ago, the heart of this constitutional guarantee provides the accused with

> [A]n opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

Mattox v. United States, 156 U.S. 237, 242-43 (1895).  See also, Crawford v. Washington, 541 U.S. 36, 43 (2004) (noting that, while the confrontation right has

5

roots stemming as far back as ancient Rome, the framers's "immediate source" for incorporating the confrontation requirement in the Sixth Amendment was the English common law "tradition [] of live testimony in court subject to adversarial testing." (citing 3 W. Blackstone, Commentaries on the Laws of England 373-374 (1768)).

For these reasons, clearly established Sixth Amendment law precludes the admission of prior testimony unless the defendant had been provided "an opportunity for effective cross-examination." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (*per curiam*). See also, Pointer v. Texas, 380 U.S. 400, 407 (1965) (recognizing the Confrontation Clause requirement that the defendant be provided "a complete and adequate opportunity to cross-examine" the unavailable witness at the prior proceeding in order for the prior testimony to be admissible); Crawford, 541 U.S. at 59 ("Our cases have thus remained faithful to the Framers' understanding: Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine").

In addition, the government's evidence must meet the heightened reliability standards required in capital cases. See Ford v. Wainwright, 477 U.S. 399, 411 (1986); Woodson v. North Carolina, 428 U.S. 280, 305 (1976). Because of the exceptional and irrevocable nature of the death penalty, "extraordinary measures" are required by the Eighth and Fourteenth Amendments to ensure the reliability in capital

proceedings. <u>Eddings v. Oklahoma</u>, 455 U.S. 104, 118 (1982) (O'Connor, J., concurring). <u>See also</u> <u>Beck v. Alabama</u>, 447 U.S. 625, 637-38 (1980); <u>Lockett v. Ohio</u>, 438 U.S. 586, 604 (1978); and <u>Gardner v. Florida</u>, 430 U.S. 349, 357-58 (1977). Accordingly, "some information that might be admitted in a normal sentencing hearing will be insufficiently reliable for the [factfinder] to use in considering whether a defendant should be put to death." <u>United States v. Gilbert</u>, 120 F. Supp. 2d 147, 151 (D. Mass. 2000). Even if the government's proffered evidence meets the heightened relevance and reliability requirements, it is still inadmissible where the probative value "is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593©. "The balance of probative value and unfair prejudice must be weighed more carefully in a death penalty case than in normal cases." <u>Gilbert</u>, 120 F. Supp. 2d at 151.

**A.** **The Admission of the Prior Testimony Where the Government Had Failed to Disclose Material Exculpatory/Impeachment Evidence Prior to Classen's Trial Testimony Violates Due Process.**

As described above, because the government did not disclose correspondence between Mr. Martin and Classen that had occurred before trial, counsel did not have bases to challenge Classen's and the government's contention at trial that the only benefits that Classen would receive in exchange for his testimony was the government's recommendation that Classen receive a reduced sentence and

placement at a less-restrictive federal prison in exchange for his testimony. As the letters demonstrate, Classen believed that the government would assist him in his conditions of confinement, with his encounters with "SIS" investigators, with his early placement in a halfway house and other benefits. The correspondence also demonstrates that by the time of trial, Classen felt free to refer to Mr. Martin and Agent Malocu by their first names and expected that Mr. Martin would respond to his requests for special arrangements.

Similarly, the government failed to disclose Lenoard Yager's status as an agent of the government at the time he was serving as a runner and delivering a document purportedly from Mr. Hammer to Classen. As the newly disclosed evidence regarding Yager taints the reliability of correspondence purportedly sent to Classen, it also was exculpatory evidence that should have been disclosed pretrial.

Counsel was unable to confront Classen with this evidence and these additional benefits because the government failed to disclose the correspondence and failed to notify counsel pretrial that Yager was acting as an agent of the government at the time he obtained certain documents in violation of <u>Brady</u> and its progeny and the government also failed to correct Classen's misleading testimony in violation of <u>Napue</u>, and its progeny. Permitting the government to admit the prior testimony in light of its failure to discharge its constitutional obligations violates the Fifth Amendment. The government should not be permitted to benefit from its own

misconduct. For these reasons, this Court should preclude the admission of the prior testimony.

**B. The Prior Testimony Should Be Precluded Because Mr. Hammer Did Not Have a Full and Fair Opportunity to Cross-examine Classen.**

As noted above, counsel did not have critical facts prior to cross-examining Classen at trial that would have destroyed Classen's reliability and credibility, in part because the government once again failed to disclose material exculpatory evidence. Even if there were no constitutional violations arising from the government's failure to disclose the correspondence between Mr. Martin and Classen pretrial, and there was, counsel was never able to cross-examine Classen about the contents of that correspondence as well as the post-trial correspondence with Mr. Martin – demonstrating that the arrangement was more than that disclosed at the time of trial and also demonstrating that the writing purporting to have come from Mr. Hammer were tainted – nor did counsel have the opportunity to confront Classen with the contents of the letters Classen sent to Hammer indicating his proclivity and desire to tailor his testimony in exchange for benefits he demanded from Mr. Hammer.

While the prior jury may have had some knowledge of Mr. Classen's unreliability the evidence known to the jury pales in comparison with what is now known about the true nature of Mr. Classen's biases and motives and how the

document he claimed to have received from Mr. Hammer was compromised. In short, the totality of the undisclosed evidence and previously unavailable correspondence paints a picture of an individual willing to barter his testimony to the highest bidder.

While Mr. Hammer can certainly admit these letters into evidence, that does not remedy the Confrontation Clause error because the factfinder is deprived of an opportunity to fully and adequately judge Classen's demeanor, credibility and liability. Under these circumstances, admission of his prior testimony violates the Sixth Amendment.

C.    **Admission of the Prior Testimony in Light of the Previously Undisclosed and Subsequent Correspondence Violates the Heightened Procedural Safeguards Required in Capital Cases.**

The admission of the prior testimony also violates Mr. Hammer's Eighth Amendment right to heightened procedural safeguards in this capital resentencing. The clear picture of Mr. Classen from the evidence and correspondence – not available to Mr. Hammer at the time of his prior testimony – demonstrates that Classen was willing to do whatever was necessary in order to obtain various benefits, including providing false or misleading testimony and also demonstrates that whatever correspondence he claimed to have obtained from Mr. Hammer shortly after Mr. Marti's death was constitutionally tainted. Thus, while it may have been a mere question regarding whether or not Classen's testimony was unreliable and incredible

at the time of trial, that question has now been answered in the affirmative. In light of the revelations, Classen's testimony is completely unreliable and not worthy of the factfinder's consideration. Under these circumstances, his testimony falls into that category of evidence that is "insufficiently reliable for the [factfinder] to use in considering whether a defendant should be put to death," Gilbert, 120 F. Supp. 2d at 151, and its admission would violate the Eighth Amendment.

**D.      Admission of the Prior Testimony Violates the FDPA.**

In light of the previously undisclosed and subsequent correspondence, it is clear that Classen's testimony was motived by his own self-interest as opposed to providing accurate and truthful testimony and that, if provided with the proper incentive, Classen was willing to alter that testimony. In light of the government's recent disclosures about Yager's role as a government agent deployed for the purpose of circumventing Mr. Hammer's invocation of his right to counsel, the reliability of the government's contention that the document in its possession was the actual document passed to Classen is compromised. Where, as here, the prior testimony holds no indicia of reliability, the prejudice from the factfinder's consideration of such testimony in reaching a life or death decision is far outweighed by the prejudicial impact. For this reason as well, this Court should preclude the admission of Classen's prior testimony.

## E.   CONCLUSION.

For each of these reasons, and those set forth in Mr. Hammer's *Motion in Limine to Preclude the Admission of Prior Testimony of Stephen Classen*, Mr. Hammer respectfully requests that following discovery, an evidentiary hearing and/or argument, that this Court Grant Mr. Hammer's motion.

Respectfully submitted,

/s/  RONALD C. TRAVIS
Ronald C. Travis
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
570-323-8711 (telephone)
570-323-4192 (facsimile)
rtravis@riederstravis.com


/s/ ANNE SAUNDERS
Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
anne_saunders@fd.org

/s/ JAMES MCHUGH
James J. McHugh, Jr.
/s/ JAMES MORENO
James Moreno
Federal Community Defender
Eastern District Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA 19106
215-928-1100 (telephone)
215-928-0826 (facsimile)
james_mchugh@fd.org
james_moreno@fd.org

Dated:      April 2, 2014

12

## CERTIFICATE OF SERVICE

I, Anne Saunders, Esquire, do hereby certify that on this date I served a copy of the foregoing by Electronic Case Filing, or by placing a copy in the United States mail, first class addressed to the following:

John C. Gurganus, Jr. Esquire
United States Attorneys Office
Middle District of Pennsylvania
235 N. Washington Street, Suite 311
PO Box 309
Scranton, PA. 18501

Amanda Haines, Esquire
United States Department of Justice
Criminal Division
Capital Case Section
1331 F. Street, N.W.
Washington, D.C. 20530


/S/ANNE SAUNDERS, ESQUIRE
James Moreno, Esquire

Dated:  April 2, 2014