UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
| | : | |
| v. | : | Honorable Joel H. Slomsky |
| | : | |
| DAVID HAMMER, | : | Capital Case |
| | : | |
| Defendant | : | |

DEFENDANT'S MOTION TO PRECLUDE THE CAPITAL PROSECUTION WHERE THE GOVERNMENT'S CAPITAL AUTHORIZATION DETERMINATION AND SUBSEQUENT DEAUTHORIZATION DETERMINATIONS RELIED ON CONVICTIONS AND EVIDENCE THAT WERE THE PRODUCT OF PERJURED TESTIMONY IN VIOLATION OF THE FIFTH AND EIGHTH AMENDMENTS

Defendant, David Hammer, through undersigned counsel, submits his *Motion to Preclude the Capital Prosecution Where the Government's Capital Authorization and Subsequent Deauthorization Determinations Relied on Convictions and Evidence that Were the Product of Perjured Testimony in Violation of the Fifth and Eighth Amendments*, and in support thereof, states the following:

1.    On September 18, 1996, a Grand Jury sitting in Williamsport, Pennsylvania, returned an Indictment charging David Hammer with first degree murder arising from the April 13, 1996, death of Mr. Hammer's cellmate, Andrew Marti.  Doc. 1.  On April 9, 1997, the government filed a notice of its intent to seek the death penalty.  Doc. 93.  The government's notice of intent to seek death was the

product of the government's authorization determination done in all capital cases. See United States Attorneys' Manual, Death Penalty Protocol. § 9-10.010 et seq. (hereafter Protocol).  Included in the factors the government considered in reaching a capital authorization decision is the defendant's prior record, id. at § 9-10.080.

2.     The trial began on May 5, 1998.  On June 22, 1998, after the defense had rested and while the government was presenting its rebuttal case, Mr. Hammer entered a plea of guilty to the murder charge.

3.     The penalty phase began on June 30, 1998.  In support of death, the government sought to prove two statutory aggravating factors:  that the defendant committed the murder after substantial planning and premeditation, 18 U.S.C. §3592(c)(9), and that the defendant had previously been convicted of a state or federal offense punishable by a term of imprisonment of more than one year that involved the use, or attempted or threatened use, of a firearm against another person, 18 U.S.C. §3592(c)(2).

4.     In September 2002, Mr. Hammer filed a petition for writ of habeas corpus collaterally attacking his conviction and sentence pursuant to 28 U.S.C. §2255.  The Court conducted an evidentiary hearing on his petition from July 14, 2005 through September 29, 2005.  On the twenty-ninth day of the hearing,

September 22, 2005, the government provided the defense with thirty-three previously undisclosed FBI 302 statements that summarized interviews with various prison inmates.

5.    On December 27, 2005, the Court issued its decision vacating the 1998 sentence of death.  The Court found, in part, that, as a result of the government's misconduct for failing to disclose material exculpatory evidence, the prior sentencing proceeding was constitutionally defective.[1]  Specifically, the Court held that the government's failure to disclose four 302 witness statements that were "relevant and material" to the jury's penalty determination violated Brady v. Maryland, 373 U.S. 83 (1963).  United States v. Hammer, 404 F. Supp. 2d 676, 801 (M.D. Pa. 2006) (Muir, J.)  The Court then concluded as a matter of law that the failure of the government to disclose the 302 statements rendered "the penalty phase of the trial defective."  Id.

6.    On April 23, 2010, Following the government's appeal, Mr. Hammer's cross-appeal, and the Third Circuit's dismissal of the appeal on the basis of no jurisdiction, Mr. Hammer submitted a request that the government de-authorize this

---

[1]The Court also found that the jury's failure to find mitigating factors that had been conceded or undisputed by the government constituted constitutional error requiring reversal.  Hammer, 404 F. Supp. 2d at 801.

capital prosecution.  On August 7, 2013, Mr. Hammer submitted a renewed request for de-authorization.

7.      One of the two convictions relied on by the government in support of the prior firearm conviction aggravator under Section 3592(c)(2) was State v. Hammer, CRF-84-l3l0 (Okla.) (hereinafter "Upton case").  That incident involved charges of kidnapping, robbery with a firearm, and shooting with intent to kill.  Once convicted, Mr. Hammer was sentenced to 1200 years by the jury.

8.      The victim of that incident was Thomas Upton.  Mr. Upton testified at two preliminary hearings and trial in Oklahoma.  He contended that on the date of the incident, Mr. Hammer approached his (Upton's) car on the street brandishing a firearm and demanded that Upton drive to a motel.  Mr. Upton also testified that inside the motel room, he fought with Mr. Hammer and was struck multiple times by Mr. Hammer during that fight.  Mr. Upton also testified that at one point Mr. Hammer locked Mr. Upton in the bathroom and then made two phone calls.  Upton also testified that Mr. Hammer forced Mr. Upton to drive to an area near some oil wells, ordered Upton to take off his clothes and lay on the ground and then shot Mr. Upton multiple times with a large gun.  Mr. Upton got up and ran or walked away while Mr. Hammer screamed and then drove away in Mr. Upton's car.  See Exhibit 1.

9.      From the start of this capital prosecution, the government has repeatedly highlighted these convictions and the 1200-year sentence and argued that they are

4

highly relevant evidence that Mr. Hammer should be sentenced to death. The government first presented evidence relating to these convictions and the 1200-year sentence to the Grand Jury. NT 9/18/96 at 5. At trial, the government unsuccessfully sought to inform the jury that Mr. Hammer had received a 1200-year sentence as a result of those convictions, see NT 7/1/98 at 71, and despite having being barred from presenting that evidence at the initial sentencing continued to pursue its admission during these resentencing proceedings. See Consolidated Opposition to Mr. Hammer's Motions in Limine (Doc. 1550) at 11 (arguing that this Court should reconsider the prior ruling precluding the admission of evidence of the 1200-year sentence).

10. Mr. Upton's importance in the government's case for death against Mr. Hammer is underscored by the fact that he was the first witness the government called in the prior federal capital sentencing proceeding. NT Vol. 15 (6/30/98) at 5. Specifically, during the federal capital sentencing proceeding, Mr. Upton adopted and authenticated his preliminary hearing testimony from the Oklahoma case. See NT Vol. 15 (6/30/98) at 6. He also provided live testimony as to various aspects of the incident that was consistent with his prior testimony in Oklahoma. See id. at 8 (indicating that Mr. Hammer assaulted him); id. at 9 (indicating that Mr. Hammer brandished a large gray weapon and ordered Upton to take him where he wanted to go); id. at 10 (indicating that Mr. Hammer forced Upton to accompany him to a motel

5

room).  The government also presented testimony from the prosecutor in the Upton case, William Louis Keel.  During that testimony, the government elicited testimony that Mr. Hammer had been convicted of kidnapping, shooting with intent to kill, and robbery.  NT Vol. 16 (7/1/98) at 66.  The government also admitted into evidence the certified convictions for this case.  See Tr. Govt. Exh. 4001.

11.     The government argued in both closing and rebuttal that the jury should consider both the circumstances of the Upton incident as well as the fact of the convictions arising from this incident in reaching its determination of the submitted aggravating factors and in weighing aggravation and mitigation.  See NT Vol. 27 at 62-63 (arguing the jury should find the prior conviction aggravator on the basis of these convictions); id. at 67 ("Mr. Upton was minding his own business in a truck on Classen Avenue . . . he was on Classen Avenue in Oklahoma City when Mr. Hammer with a firearm came up to him and basically commandeered his truck. He took him to a motel . . ."); NT Vol. 29 (7/23/98) at 19 (arguing that the jury should consider the convictions in aggravation); id. at 41 (arguing the Oklahoma incident and trial as a basis for rejecting mitigation evidence); id. at 56 (arguing the Oklahoma incident as support for escalation of violence).  On July 24, 1998 the jury returned a verdict of death.

12.     In September 2002, Mr. Hammer filed a petition for writ of habeas corpus collaterally attacking his conviction and sentence pursuant to 28 U.S.C.

§2255.  The Court conducted an evidentiary hearing on his petition from July 14, 2005 through September 29, 2005.  On the twenty-ninth day of the hearing, September 22, 2005, the government provided the defense with thirty-three previously undisclosed FBI 302 statements that summarized interviews with various prison inmates.

13.    On December 27, 2005, the Court issued its decision vacating the 1998 sentence of death.  The Court found, in part, that, as a result of the government's misconduct for failing to disclose material exculpatory evidence, the prior sentencing proceeding was constitutionally defective.[2]  Specifically, the Court held that the government's failure to disclose four 302 witness statements that were "relevant and material" to the jury's penalty determination violated Brady v. Maryland, 373 U.S. 83 (1963).  United States v. Hammer, 404 F. Supp. 2d 676, 801 (M.D. Pa. 2006) (Muir, J.)  The Court then concluded as a matter of law that the failure of the government to disclose the 302 statements rendered "the penalty phase of the trial defective." Id.

14.    In its Informational Outline the government noticed its intent to again proceed with the prior firearms conviction aggravator under Section 3592(c)(2) and

---

[2]The Court also found that the jury's failure to find mitigating factors that had been conceded or undisputed by the government constituted constitutional error requiring reversal.  Hammer, 404 F. Supp. 2d at 801.

rely on the Upton case as support for that aggravator.  See Doc. 1489 at 2, n.1.

15.     On March 11, 2014, counsel received a notice from current government counsel pursuant to Brady v. Maryland, 373 U.S. 83 (1963).  That notice indicated that, during an interview with Capital Crimes Section Trial Attorney Haines and Special Agent John Coyle on March 10, 2014, Mr. Upton disclosed that he lied during his preliminary hearing and trial testimony in Oklahoma in 1984 and during his testimony at the federal capital sentencing proceeding in 1988.  Specifically, he now admits that he voluntarily accompanied Mr. Hammer to the motel; that Mr. Hammer had not brandished a weapon and forced Mr. Upton to accompany him; that Mr. Upton was neither kidnapped nor carjacked; nor was Mr. Upton locked into the bathroom in the motel, although he did go into the bathroom so that Mr. Hammer could make a phone call.  See Exhibit 2.

16.     On March 13, 2014, the government provided counsel with an FBI 302 providing further details of the interview, including multiple instances of exchanges in which Ms. Haines and/or Agent Coyle confronted Mr. Upton with the flaws in his version of events.  See Exhibit 3.  On March 14, 2014, current government counsel sent Mr. Hammer's counsel an email that provided a further clarification of Mr. Upton's disclosures during the March 10, 2014 meeting.  See Exhibit 4.

17.     The recently provided 302 also revealed that at or around the time of Mr. Hammer's first federal trial, a person Upton believed to have been from the United

8

States Attorney's Office had challenged Upton concerning his testimony in the Oklahoma trial. Id. Mr. Upton's revelation that he had been confronted by someone possibly from the United States Attorney's office demonstrates that the government knew or should have known that Mr. Upton had committed perjury in his Oklahoma testimony against Mr. Hammer.

18.    Given the emphasis the government has placed on these convictions and the 1200-year sentence at every stage in which any other fact-finder was to make a decision about this case, there is no question that the government considered – and most likely applied great weight to – these convictions and Mr. Hammer's 1200-year sentence when it reached its initial decision to authorize the penalty and its two subsequent determinations not to deauthorize this capital prosecution. Indeed, its own protocols for capital authorization stress that it must considered as a reason favoring pursuing the death penalty "[w]hether the defendant is already serving a substantial sentence such that an additional sentence of incarceration would have little punitive impact." United States Attorneys' Manual, Death Penalty Protocol § 9-10.130 D(7) (hereafter Protocol).[3]

---

[3]These protocols are published on the Department of Justice's website at http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/10mcrm.htm#9 -10.010.

19.     The government's consideration of convictions and a 1200-year sentence that were procured by and the product of perjured testimony in its decisions first to authorize and then not deauthorize the death penalty in this case violated the Fifth, Sixth, and Eighth Amendments.

WHEREFORE, for each of these reasons, and those set forth in Mr. Hammer's *Brief in Support of his Motion Preclude the Capital Prosecution Where the Government's Capital Authorization and Subsequent Deauthorization Determinations Relied on Convictions and Evidence that Were the Product of Perjured Testimony in Violation of the Fifth and Eighth Amendments*, Mr. Hammer respectfully requests that following discovery, an evidentiary hearing and/or argument that this Court Grant Mr. Hammer's motion.

Respectfully submitted,


/s/  RONALD C. TRAVIS

Ronald C. Travis
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
570-323-8711 (telephone)
570-323-4192 (facsimile)
rtravis@riederstravis.com


/s/ ANNE SAUNDERS

Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
anne_saunders@fd.org

/s/ JAMES MCHUGH

James J. McHugh, Jr.

/s/ JAMES MORENO

James Moreno
Federal Community Defender
Eastern District Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA 19106
215-928-1100 (telephone)
215-928-0826 (facsimile)
james_mchugh@fd.org
james_moreno@fd.org


Dated:  April 2, 2014

# CERTIFICATE OF SERVICE

I, Anne Saunders, Esquire, do hereby certify that on this date I served a copy of the foregoing by Electronic Case Filing, or by placing a copy in the United States mail, first class addressed to the following:

John C. Gurganus, Jr. Esquire
United States Attorneys Office
Middle District of Pennsylvania
235 N. Washington Street, Suite 311
PO Box 309
Scranton, PA. 18501

Amanda Haines, Esquire
United States Department of Justice
Criminal Division
1331 F. Street, N.W.
Washington, D.C. 20530

/S/ANNE SAUNDERS, ESQUIRE
James Moreno, Esquire

Dated: April 2, 2014