UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA                  :
                                          :
         -vs-                             :
                                          :    NO.    4:CR-96-239
DAVID PAUL HAMMER,                        :
                    Defendant             :

GOVERNMENT'S BRIEF IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF
DECISION TO EXCLUDE EVIDENCE OF ESCAPES

On February 28, 2014, this Court filed an opinion granting in part the Defendant's motion

in limine to exclude certain evidence.   The Court ruled inadmissible evidence related to the

Defendant's escapes in 1981, 1982 and 1983.   In its opinion, the Court stated that "should either

party desire reconsideration of the rulings, a motion should be filed with supporting exhibits

attached.   In the alternative, the Court will consider reconsideration requests at the hearing on the

evidence before re-sentencing."

With due respect to the Court's ruling, the United States believes that for the reasons stated

below, the Court should reconsider its ruling as it related to Hammer's escapes which the

Government seeks to offer in support of the non-statutory aggravating factor of future

dangerousness.

1.   **Facts of Defendant's Prior Escapes**.

The government seeks to offer evidence of the Defendant's prior escapes from prison.

That conduct can be summarized as follows:

Joseph Harp Correctional Center.   On October 16, 1981, the Defendant escaped from the

Joseph Harp Correction Center in Lexington, Oklahoma.   At approximately 10:30 p.m., Officer

D. Brents and Sgt. D. Hall discovered that Hammer was missing from his cell.   A dummy was

1

within the bed of that cell placed to look as though Hammer was asleep.   Officers discovered a hole cut in the outside and inside perimeter fence at zone 10.   Within the tool room, personnel discovered that a pair of line-man pliers were missing and believed to be utilized to cut the holes in the fence.   Shortly thereafter, a homemade knife was found in the area of zone 10.   A few days later, a plastic glove was found full of black pepper believed to have been dropped during the escape in an attempt to prevent dogs from tracking the escapee.   See Exh. 1.1.

Hammer was apprehended approximately 10 days later.   While in escape status, Hammer committed, and was later convicted of, other criminal conduct involving the Huddlestons.   With respect to those victims, Hammer used a ruse to get into the Huddlestons' home.   He then used a fireplace poker in a threatening manner and ultimately secured an automobile from the Huddlestons.   See Exh. 1.4.   Hammer wrote about these events in a short story entitled *Escape and Capture* and in a published book entitled *The Final Escape*.   See Exh. 1.8 and 1.9.   As a result, Hammer sustained the following criminal convictions in connection with the escape and his conduct while on fugitive status: (1) escape; (2) robbery by fear; and (3) larceny of an automobile. See Exh. 1.5, 1.6, and 1.7.   Though initially receiving twenty year concurrent sentences for the robbery by fear and larceny of an automobile, the Court of Criminal Appeals later modified those sentences to 10 years' imprisonment to run concurrently.   *Hammer v. State*, 671 P.2d 677 (1983). See Exh. 1.10.   It is notable that the opinion specifies that the offenses "were committed subsequent to appellant's escape from the Joseph Harp Correctional Center at Lexington, Oklahoma." *Id.*, at 678.

Oklahoma State Reformatory.   On October 27, 1983, Hammer escaped from the Oklahoma State Reformatory at Granite, Oklahoma. See Exh. 2.1.   To make good on his escape,

Defendant collected street clothing and dressed himself as a construction worker, obtained a pair of wire cutters, and wedged himself under a construction van that was parked on the prison yard. Once the unwitting construction crew moved the van to a civilian lot, Defendant crept from the van to a parked 1966 Chevy pickup truck which he "hotwired."    Hammer then drove the pickup out of the prison grounds and onwards to Hobart, Oklahoma, where he abandoned the vehicle.   In Hobart, Defendant stole another pickup truck and its contents, including a checkbook, a .22 pistol, and a box of shells.   From there, Hammer survived by purchasing goods with the stolen checks. See Exh. 2.5.   This escape resulted in the shooting of Thomas Upton on October 28, 1983, which is the subject of a number of motions recently filed by the defense.   Those motions will likely be the subject of an evidentiary hearing.1   Hammer was eventually arrested in Los Angeles, California, at the end of December 1983.   See Exh. 2.6.   As a result, Hammer sustained the following criminal convictions in connection with the escape and his conduct while on fugitive status: (1) kidnapping; (2) robbery with firearm; and (3) shooting with intent to kill.   See Exh. 2.6. Hammer received a 1200 year sentence for the events associated with the Upton shooting.   *Id.*   In an opinion, the Court of Criminal Appeals of Oklahoma noted that Hammer committed the above crimes while in escape.   *Hammer v. State*, 760 P.2d 200 (1988).   See Exh. 2.6.   It is notable that the opinion specifies that "Appellant escaped from custody and was arrested in California." *Id.*, at 202.

---

1 Given that the defense has moved to exclude Upton's testimony and the conviction arising from that incident, the Government anticipates that admissibility of this evidence will be resolved as a result of those pretrial motions.   The Government intends to file a consolidated brief on this issue and the others recently raised by the defense.   Accordingly, the Government will provide the Court with all pertinent documents regarding the Upton matter in connection with those motions.

2.  **Discussion.**

In general, the Supreme Court has established that a capital sentencing scheme must channel the jury's discretion by narrowing the class of death-eligible defendants and by assisting the jury in reaching an individualized sentencing decision based on the facts of the crime and the character and background of the offender. *See Kansas v. Marsh*, 548 U.S. 163 (2006); *Zant v. Stephens*, 462 U.S. 862, 878 (1983).   Further, the Court has generally expressed itself in favor of allowing more, rather than less information in capital sentencing hearings. *See Gregg v. Georgia*, 428 U.S. 153, 204 (1976) ("We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision."). The FDPA fully comports with these constitutional dictates.   It essentially codifies the two step process prescribed by the Supreme Court for death penalty sentencing by (1) narrowing the sentencer's discretion through eligibility factors (i.e., gateway intent factors under § 3591(a)(2) and the statutory aggravating factors under § 3592(c)); and (2) individualizing the sentencing determination through the liberal introduction of information relevant to the final decision.

In this Court's opinion, the Court indicated that the escapes would not be admissible unless violence is associated with an escape.   The Court further noted that there was no evidence proffered that the escapes were accomplished through violent acts aimed at prison personnel; that the escapes occurred over thirty years ago; and that they were not sufficiently related to the Defendant's future dangerousness in the context of life in prison.

The government argues here that the Defendant's prior prison escapes should be considered by this Court in determining whether Hammer presents a future threat of violence. The

4

evidence is directly relevant to the Defendant's history and his potential future danger even where the Defendant faces the strict restrictions associated with life imprisonment.   Though Hammer faces significant restriction imposed by a high security prison, Hammer nonetheless is in contact with medical staff, psychological staff, and could have access to outside hospital care.

The fact of the escapes will meet the heightened standards of reliability.   Hammer would not seriously be able to challenge that he engaged in the escape conduct.   As reflected above, Court opinions concerning crimes committed by Hammer note his escape status, and Hammer has written extensively about the conduct.

Moreover, the escapes at issue were serious.   As reflected in the statement of facts, they were prison breaks with later associated violence.   Thus, unlike a prison walkaway, the prison breaks at issue here are of a much different character.   As the Third Circuit stated in *United States v. Luster*, 305 F. 3d 199 (3d Cir. 2002),

> Escape is a continuing crime; it does not end when the escapee completes the act of leaving a correctional facility. Rather, the escapee must continue to evade police and avoid capture. As the Tenth Circuit noted, an escapee "is likely to possess a variety of supercharged emotions, and in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow escapees. Consequently violence could erupt at any time." *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir.1994). Thus, "every escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so." Id.

*Id.*, at 201.

While this Court may be constrained to determining whether Defendant poses a risk of future dangerousness in a prison setting, the Government submits it should not be restricted in its consideration only to prison misconduct in accessing the future dangerousness factor.

5

The future dangerousness factor requires the factfinder to make an inference based on evidence of Defendant's past behavior.   In order to assess whether it believes Defendant will pose a future danger, the factfinder should consider such unique acts as the Defendant's escaping from prison on two prior occasions during which he committed additional violent crimes.   The Government submits that Defendant's past conduct of escapes informs the factfinder of his risk of future dangerousness, even in a high security prison setting.

In *United States v. Allen*, 247 F.3d 741, 788 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002), the Eighth Circuit held that due process does not require an express limitation on "future dangerousness" evidence where the jury is informed of the defendant's ineligibility for parole. *Id.* at 788-89. ("A defendant in prison for life is still a risk to prison officials and to other inmates, and even though a life sentence without the possibility of parole greatly reduces the future danger to society from that particular defendant, there is still a chance that the defendant might escape from prison or receive a pardon or commutation of sentence," and holding that a "non-statutory aggravating factor" of "future dangerousness" was properly submitted, even without a limitation to future dangerousness in prison); *accord United States v. Fields*, 516 F.3d 923, 942-43 (10th Cir. 2008) (agreeing with *Allen* that due process did not require limitation of the evidence of "future dangerousness" to "future dangerousness in prison," where the jury was informed of the defendant's ineligibility for parole).   In *Fields*, the Tenth Circuit approved a future dangerousness factor that was predicated upon defendant's continuing pattern of violence (including the double-murder charged in that case) and lack of remorse. *See Fields*, 516 F.3d at 941.   The defendant's pattern of violence was not a pattern of prison violence.   Further, the *Fields* court made clear that as long as the jury was aware that a life sentence, if imposed, carried

6

no possibility for parole, the government was not limited to arguing the defendant's future dangerousness only in a prison setting.   *See id.* at 942, citing *Allen*, 247 F.3d at 788, and *United States v. Bernard*, 299 F.3d 467, 482 (5th Cir. 2002).

If evidence of Defendant's criminal misconduct outside of prison supports the allegation that he is likely to be a future danger, even in a secure prison setting, escapes with violence by the Defendant while in that status should be considered in determining this issue.

While the Court has expressed concern over the remoteness of the prior escapes, those escapes occurred within 15 years of the death of Andrew Marti.   And while there has been an additional time span between the Defendant's past criminal acts and today, the factfinder certainly has a right to consider all of the evidence of the Defendant's past conduct to render the just decision based on a proper consideration of all relevant evidence.   *See Williams v. New York*, 337 U.S. 241, 247 (1949) ("[t]he possession of the fullest information possible concerning the defendant's life characteristics" is essential for the selection of a proper sentence).   Federal courts have allowed conduct from decades earlier to be considered by a sentencing jury.   *United States v. Pleau*, 2013 WL 1673109 (D.R.I. Apr.17, 2013) (argument that crimes that occurred 14 years before charged conduct were too remote was rejected in light of the fact that defendant was incarcerated for 13 of the 14 years) .   In *United States v. Sablan,* 555 F. Supp. 2d 1205 (D. Colo. 2006), the district court found that a 20-year old conviction (a 1985 armed robbery conviction) was not too remote in time for the jury's consideration.   As the court stated, "[t]hese are violent crimes against persons that are highly probative to the issue of whether Defendant will be a future threat in prison to other inmates or prison officials.   The crime shows that if given an opportunity, Defendant may commit a violent crime against another person in prison."   *Id.* at 1226.

For all these reasons, this Court should consider the escapes in determining whether Hammer will be a future danger to others.

Pursuant to the Court's February 29, 2014 opinion, the Government is attaching the written records, documents and statements it intends to rely upon in establishing these two escapes as well as a hostage incident in March 1995.   The Government also intends to call witnesses with non-hearsay information about these matters.

WHEREFORE, the United States requests this Court to grant reconsideration of its Order ruling inadmissible the evidence of prior escapes.

Respectfully submitted,

PETER J. SMITH
United States Attorney

/s/ John C. Gurganus, Jr.
JOHN C. GURGANUS, JR.
Assistant U.S. Attorney

AMANDA HAINES
Trial Attorney
Department of Justice

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on April 15, 2014, he served a copy of the attached:

GOVERNMENT'S BRIEF IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF DECISION TO EXCLUDE EVIDENCE OF ESCAPES

by electronic filing on counsel for the defendant.

Ronald C. Travis, Esquire
rtravis@riederstravis.com

James J. McHugh, Jr., Esquire
James_McHugh@fd.org

James Moreno, Esquire
James_Moreno@fd.org

Anne Saunders, Esquire
Anne_Saunders@fd.org


                                      /s/ John C. Gurganus, Jr.

April 15, 2014    _____
Date    JOHN C. GURGANUS, JR.
                                       Assistant U.S. Attorney