**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | No. 4:96-CR-00239 |
| v. | : | |
| | : | JUDGE SLOMSKY |
| DAVID PAUL HAMMER, | : | |
| | : | Capital Case |
| Defendant | : | |

**DEFENDANT'S MOTION TO PRECLUDE ALL EVIDENCE OF AN
ALLEGED MARCH 19, 1995 INCIDENT THAT TOOK PLACE AT THE
UNITED STATES PENITENTIARY-LOMPOC DUE TO THE
GOVERNMENT'S FAILURE TO PRESERVE EXCULPATORY – OR AT
LEAST POTENTIALLY EXCULPATORY – EVIDENCE IN VIOLATION
OF THE FIFTH, SIXTH, AND EIGHTH AMENDMENTS**

Defendant, David Paul Hammer, through undersigned counsel, submits this Motion to Preclude all Evidence of an Alleged March 19, 1995, incident that took Place at the United States Penitentiary-Lompoc Due to the Government's Failure to Preserve Exculpatory – or at least Potentially Exculpatory – Evidence in Violation of the Fifth, Sixth, and Eighth Amendments, and in support thereof, states the following:

1. On September 18, 1996, a Grand Jury sitting in Williamsport, Pennsylvania, returned an Indictment charging David Hammer with first degree murder arising from the April 13, 1996, death of Mr. Hammer's cellmate, Andrew Marti. Doc. 1. On April 9, 1997, the government filed a notice of its intent to seek

the death penalty. Doc. 93. The trial began on May 5, 1998. On June 2, 1998, after the defense had rested and while the government was presenting its rebuttal case, Mr. Hammer entered a plea of guilty to the murder charge.

2.    The penalty phase began on June 30, 1998. In support of death, the government sought to prove two statutory aggravating factors: that the defendant committed the murder after substantial planning and premeditation, 18 U.S.C. §3592(c)(9), and that the defendant had previously been convicted of a state or federal offense punishable by a term of imprisonment of more than one year that involved the use, or attempted or threatened use, of a firearm against another person, 18 U.S.C. §3592(c)(2). On July 24, 1998, the jury returned a verdict of death.

3.    In September 2002, Mr. Hammer filed a petition for writ of habeas corpus collaterally attacking his conviction and sentence pursuant to 28 U.S.C. §2255. The Court conducted an evidentiary hearing on his petition from July 14, 2005, through September 29, 2005. On the twenty-ninth day of the hearing, September 22, 2005, the government provided the defense with thirty-three previously undisclosed FBI 302 statements that summarized interviews with various prison inmates.

4.    On December 27, 2005, the Court issued its decision vacating the 1998 sentence of death. The Court found, in part, that as a result of the government's

2

misconduct for failing to disclose material exculpatory evidence, the prior sentencing proceeding was constitutionally defective[1]. Specifically, the Court held that the government's failure to disclose four 302 witness statements that were "relevant and material" to the jury's penalty determination violated *Brady vs. Maryland*, 373 U.S. 83 (1963). *United States vs. Hammer*, 404 F. Supp. 2d 676, 801 (M.D. Pa. 2006) (Muir, J.). The Court then concluded as a matter of law that the failure of the government to disclose the 302 statements rendered "the penalty phase of trial defective." *Id.*

5.    Mr. Hammer's new sentencing hearing is currently scheduled to start June 2, 2014.

6.    The government has notified the defense that in support of the future dangerousness non-statutory aggravating factor it intends to introduce testimonial evidence from BOP employees of an alleged March 19, 1995, incident which occurred at the United States Penitentiary-Lompoc. The government may also seek to introduce documentary evidence in the form of BOP and/or FBI reports concerning this incident.

---

[1] The Court also found that the jury's failure to find mitigating factors that had been conceded or undisputed by the government constituted constitutional error requiring reversal. *Hammer*, 404 F. Supp. 2d at 801.

7. The government has mislabeled and misidentified the alleged incident as a "hostage situation." In the recently filed Binder the government labels Exhibit No. 3 as "March 19, 1995 Hostage Situation."

8. The misidentification of the nature of the incident is advanced by the government notwithstanding the fact that the documents which are part of Exhibit No. 3 show that the initial Incident Report filed against Mr. Hammer show that the Bureau of Prisons charges were alleged violation of Code 203 (threatening another person) and violation of §199 (conduct disruptive of security or orderly running of BOP facility Most Like: Taking Hostage).

9. Further, the documents constituting Exhibit No. 3 also show that after the Disciplinary Hearing, the hearing officer, J. L. Baker, after considering all of the submitted evidence, concluded Mr. Hammer had violated Code §203 (threatening another with bodily harm) and Code §224 (minor assault).

10. In handing down his decision, DHO Baker specifically found that Mr. Hammer was not holding the alleged victim hostage.

11. In the federal corrections system, when there has been an alleged violation of the Code of Conduct Rules, the filing of an Incident Report triggers an administrative hearing conducted by a specially trained Disciplinary Hearing Officer.

4

12. The specially trained Disciplinary Hearing Officer assesses the evidence presented by the staff as well as evidence presented by the inmate.

13. With respect to the Lompoc incident, the administrative adjudication found that based upon the evidence presented, Mr. Hammer had not taken the alleged victim hostage.

14. The government previously agreed it would not attempt to present acquitted conducted in support of the non-statutory aggravating factor of future dangerousness. Although the DOHO proceeding was administrative, the allegation that Mr. Hammer took a hostage constitutes acquitted conduct.

15. The government has notified the defense that the BOP officials videotaped the incident. The government has also notified the defense that it is unable to locate this videotape ("Lompoc videotape"). The government has not specified whether the Lompoc videotape was destroyed or lost. The government has also advised the defense that it is unable to locate a summary of an interview with the defendant conducted by FBI and BOP officials shortly after the Lompoc incident ("Lompoc 302"). The government has not specified whether the Lompoc 302 was destroyed or lost.

16. The failure by the government to preserve this critical and material exculpatory evidence denies the defendant his rights under the Sixth and Eighth Amendments to the United States Constitution. The government should therefore

5

be precluded from admitting any evidence concerning this incident at USP-Lompoc.

WHEREFORE, for these reasons, Mr. Hammer respectfully requests that this Court grant his Motion and preclude the government from presenting any evidence concerning the alleged incident at USP-Lompoc on March 19, 1995, or refer to that incident as a "hostage situation."

Respectfully submitted,

s/ Ronald C. Travis, Esquire
Ronald C. Travis, Esquire
Rieders, Travis, Humphrey, Harris,
Waters, Waffenschmidt & Dohrmann
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
(570) 323-8711 (telephone)
(570) 323-4192 (facsimile)
rtravis@riederstravis.com

/s/ Anne Saunders, Esquire
Anne Saunders, Esquire
Assistant Federal Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Ste. 300
Harrisburg, PA  17101
(717) 782-3843 (telephone)
(717) 782-3966 (facsimile)
Anne_Saunders@fd.org

/s/ James McHugh, Esquire
James McHugh, Esquire
James Moreno, Esquire
Federal Community Defender
Eastern District of Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA  19106
(215) 928-1100 (telephone)
(215) 928-0826 (facsimile)
James_McHugh@fd.org
James_Moreno@fd.org