**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | NO. 4:96-CR-00239 |
| | : | |
| v. | : | |
| | : | (Judge Slomsky) |
| DAVID PAUL HAMMER | : | |
| | : | (ELECTRONICALLY FILED) |
| Defendant | : | |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO PRECLUDE ALL EVIDENCE OF AN ALLEGED MARCH 19, 1995 INCIDENT THAT TOOK PLACE AT UNITED STATES PENITENTIARY-LOMPOC DUE TO THE GOVERNMENT'S FAILURE TO PRESERVE EXCULPATORY – OR AT LEAST POTENTIALLY EXCULPATORY – EVIDENCE IN VIOLATION OF THE FIFTH, SIXTH, AND EIGHTH AMENDMENTS**

A.    FACTUAL BACKGROUND

On September 18, 1996, a Grand Jury sitting in Williamsport, Pennsylvania, returned an Indictment charging David Hammer with first degree murder arising from the April 13, 1996, death of Mr. Hammer's cellmate, Andrew Marti. Doc. 1. On April 9, 1997, the government filed a notice of its intent to seek the death penalty. Doc. 93. The trial began on May 5, 1998. On June 22, 1998, after the defense had rested and the government was presented its rebuttal case, Mr. Hammer entered a plea of guilty to the murder charge.

The penalty phase began on June 30, 1998. In support of death, the government sought to prove two statutory aggravating factors: that the defendant committed the murder after substantial planning and premeditation, 18 U.S.C. §3592(c)(9), and that the defendant had previously been convicted of a state or federal offense punishable by a term of imprisonment of more than one year that involved the use, or attempted or threatened use, of a firearm against another person, 18 U.S.C. §3592(c)(2). On July 24, 1998, the jury returned a verdict of death.

In September 2002, Mr. Hammer filed a petition for writ of habeas corpus collaterally attacking his conviction and sentence pursuant to 28 U.S.C. §2255. The Court conducted an evidentiary hearing on his petition from July 14, 2005, through September 29, 2005. On the twenty-ninth day of the hearing, September 22, 2005, the government provided the defense with thirty-three previously undisclosed FBI 302 statements that summarized interviews with various prison inmates.

On December 27, 2005, the Court issued its decision vacating the 1998 sentence of death. The Court found, in part, that, as a result of the government's misconduct for failing to disclose material exculpatory evidence, the prior

sentencing proceeding was constitutionally defective[1]. Specifically, the Court held that the government's failure to disclose four 302 witness statements that were "relevant and material" to the jury's penalty determination violated *Brady vs. Maryland*, 373 U.S. 83 (1963). *United States vs. Hammer*, 404 F. Supp. 2d 676, 801 (M.D. Pa. 2006) (Muir, J.). The Court then concluded as a matter of law that the failure of the government to disclose the 302 statements rendered "the penalty phase of the trial defective." *Id.*

This matter is before the Court for capital resentencing following the grant of §2255 relief. Following the above decision, the Department of Justice conducted a review to determine whether or not it would elect to continue to pursue capital prosecution or conversely would de-authorize the capital prosecution. Defense counsel provided submissions to both the United States Attorney for the Middle District of Pennsylvania and the Department of Justice Capital Crimes Unit.

On January 7, 2011, the government announced its decision to continue this matter as a capital prosecution when it filed a Motion for Penalty Phase Proceeding. Doc. 1300. Mr. Hammer's new sentencing hearing is currently scheduled for June 2, 2014.

---

[1] The Court also found that the jury's failure to find mitigating factors that had been conceded or undisputed by the government constitute constitutional error requiring reversal. *Hammer*, 404 F. Supp. 2d at 801.

The government has notified the defense that in support of the future dangerousness non-statutory aggravating factor they intend to introduce testimonial evidence from BOP employees of an alleged March 19, 1995, incident that took place at the United States Penitentiary-Lompoc. The government may also seek to introduce documentary evidence in the form of BOP and FBI reports concerning the incident.

The government has notified the defense that BOP officials videotaped this incident. The government has also notified the defense it is unable to locate this videotape ("Lompoc videotape"). The government has not specified whether the Lompoc videotape was destroyed or lost. The government also advised the defense that it is unable to locate a summary of an interview with the defendant conducted by the FBI and BOP officials shortly after the Lompoc incident ("Lompoc 302"). The government has not specified whether the Lompoc 302 was destroyed or lost.

The failure by the government to preserve this critical and material exculpatory evidence -- the Lompoc videotape and the Lompoc 302 -- denies the defendant his right under the Fifth, Sixth and Eighth Amendments to the United States Constitution. The circumstances of the missing evidence in the Lompoc incident, standing alone, requires the government be precluded from presenting evidence of that incident against Mr. Hammer in these resentencing proceedings.

4

Moreover, given the government's track record in this case of failing to disclose numerous material and exculpatory 302's at the time of trial and given the fact that it has now revealed that it has either lost or destroyed additional critical and exculpatory evidence, provides further support for Mr. Hammer's request that the government be precluded from admitting *any evidence* concerning this alleged incident at USP-Lompoc.

## ARGUMENT

The government's failure to preserve the videotape of the alleged incident at USP-Lompoc and the summary of the defendant's interview taken shortly after the incident, violated defendant's clearly established federal constitutional rights. *Arizona vs. Youngblood*, 488 U.S. 51 (1988). The Lompoc videotape and the Lompoc 302 are critical for this Court to review and consider in order to determine if the incident has been proven, and if proven, what weight, if any, should be given to this incident as supportive of the non-statutory aggravating factor of future dangerousness. The loss/destruction of the Lompoc videotape and the Lompoc 302 deprives Defendant Hammer of the very type of potentially exculpatory evidence that is discussed in *Youngblood*.

To demonstrate entitlement to relief, defendant must establish that the destroyed evidence was potentially exculpatory, that the prosecution acted in bad faith, and that the destruction of evidence was prejudicial. *Youngblood*, 488 U.S.

5

at 57-58. The *Youngblood* Court found no bad faith in the prosecutor's destruction of semen samples in a rape case because: the prosecution had disclosed all relevant police reports, testing reports, and notes; a defense expert had been provided pretrial access to the physical evidence and the opportunity to conduct his own testing; the manner in which the police stored the evidence had never been concealed from the defense; and the faulty storage had, at best, been negligent. *Id* 488 U.S. at 58. Each of the factors absent in *Youngblood* are present here, and relief is required.

In this case no member of the defense team, including the Defendant, has ever seen the Lompoc videotape. Furthermore, no member of the defense team, including the Defendant, has ever seen the Lompoc 302. Neither have ever been provided to the defense.

There is no dispute, however, that the alleged victim was not injured in any way and did not require any medical attention.

Furthermore, this incident was thoroughly investigated by both the FBI and the BOP. Whenever a federal inmate engages in conduct which violates BOP rules, the inmate is subject to administrative discipline within the institution and may have the incident brought to the attention of the FBI for possible criminal prosecution in the federal criminal justice system. In this case, the FBI was notified of the incident, and conducted an interview of Mr. Hammer, and

presumably other staff or inmate witnesses. The FBI presumably would have also been able to have reviewed the missing video concerning the incident. After conducting its investigation, the FBI declined to file criminal charges arising from this incident.

After the FBI declined to prosecute Mr. Hammer, the matter was returned to Lompoc for administrative handling. In the federal system whenever a federal inmate violates an institution rule, an Incident Report is created and this report is handled administratively for determination of what misconduct occurred, and assuming a finding of misconduct, what administrative punishment should be imposed.

Although the government has consistently mislabeled the Lompoc incident as a "hostage situation," this assigned label is clearly a misrepresentation. The March 19, 1995, incident was handled administratively through a disciplinary hearing conducted by a Discipline Hearing Officer (hereinafter "DHO"). According to the DHO report, the write-up Mr. Hammer received concerning the March 19, 1995, incident was for a violation of §203 (threatening another person) and an alleged violation of §199 of the Code (conduct disruptive to security or orderly running of BOP facility) Most Like: taking hostage. However, when he secured and reviewed the evidence, the Disciplinary Officer concluded that the evidence did not support the §199 Most Like charge and specifically concluded: "I

7

believe you were *not holding him hostage*." DHO Report at 3 (emphasis added). The Officer also found Mr. Hammer to have committed the Code 203 violation (threatening another) and the Code 224 violation (assaulting any person [minor assault]). Accordingly, nothing about the incident or the adjudications following the incident supports any characterization that this was a "hostage situation."

The circumstances here are diametrically different from *Youngblood* and the government's bad-faith is demonstrated in the overall circumstances surrounding the prosecution. The original death verdict was vacated due, in part, to the government's failure to turn over numerous 302s at the time of trial. Now the government has mislabeled what occurred at Lompoc on March 19, 1995, in an apparent effort to convince the Court that the only appropriate punishment to be imposed on Mr. Hammer is a sentence of death. The government undertakes this effort even though it has lost or destroyed critical exculpatory evidence contained in the video and the 302. Additionally, the government undertakes this effort notwithstanding the fact that what has been marked as Exhibit No. 3 of the recently filed government binder shows that the FBI conducted an investigation and declined prosecution, and further shows that according to the DHO paperwork, Mr. Hammer was not charged with taking a hostage and in fact was acquitted of the disruptive conduct write-up for the alleged violation of Code §199.

Specifically, the government seeks to have this Court find that Mr. Hammer took a hostage with the intent to injure that person and to have this Court weigh this incident in support of the non-statutory aggravating factor of future dangerousness even though the exculpatory video and the FBI 302 are unavailable. *Youngblood* clearly prevents such an abuse of due process.

Prejudice arising from the loss/destruction of the video and 302 is clear. At the time the video was available, the FBI declined to institute prosecution. The government asks this Court, however, to assess the materiality of the Lompoc incident – and reach a determination of whether Mr. Hammer should live or die – without the benefit of this critical evidence. Absent this evidence, there is no way to determine critical questions or reliability and credibility with regard to the true circumstances of the incident. Thus, prejudice is demonstrated and this Court should find that the government's failure to preserve exculpatory evidence requires the preclusion of any evidence regarding the Lompoc incident.

In addition, as previously noted by the Court, the government has conceded the inappropriateness of attempting to prove future dangerousness via acquitted conduct. (Doc. No. 1550 at 11). Mr. Hammer was acquitted of the Code §199 Most Like: taking a hostage. For this reason as well, this Court should preclude the government from admitting any evidence regarding the Lompoc incident.

In the event the Court is not inclined to preclude the government from presenting information with respect to the Lompoc incident, the Court should nonetheless preclude the government from mislabeling this incident as a hostage taking, a label placed on the incident at the time of the initial trial and the label affixed to the incident by the government divider immediately preceding Exhibit No. 3 in the recently filed binder.

Moreover, even if evidence of the Lompoc incident were admissible, and it is not, the Court will need to determine whether the evidence the government has proffered constitutes prohibited testimonial or hearsay evidence that does not satisfy the standard of the high level of relevance and reliability required in capital cases.

## CONCLUSION

For the reasons described above and those set forth in the Motion, this Court should grant Mr. Hammer's Motion.

Respectfully submitted,

s/ Ronald C. Travis, Esquire
Ronald C. Travis, Esquire
Rieders, Travis, Humphrey, Harris,
Waters, Waffenschmidt & Dohrmann
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
(570) 323-8711 (telephone)

/s/ Anne Saunders, Esquire
Anne Saunders, Esquire
Assistant Federal Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Ste. 300
Harrisburg, PA  17101
(717) 782-3843 (telephone)

(570) 323-4192 (facsimile)
rtravis@riederstravis.com

(717) 782-3966 (facsimile)
Anne_Saunders@fd.org


/s/ James McHugh, Esquire
James McHugh, Esquire
James Moreno, Esquire
Federal Community Defender
Eastern District of Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA  19106
(215) 928-1100 (telephone)
(215) 928-0826 (facsimile)
James_McHugh@fd.org
James_Moreno@fd.org

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :

            :     NO. 4:96-CR-00239

            :

       v.           :

            :     (Judge Slomsky)

DAVID PAUL HAMMER     :

            :     (ELECTRONICALLY FILED)

Defendant             :

## CERTIFICATE OF SERVICE

AND NOW, comes Ronald C. Travis, Esquire, attorney for Defendant Hammer, and certifies that a copy of the foregoing Defendant's Brief in Support of Motion to Preclude All Evidence of an Alleged March 19, 1995, Incident that took place at the United States Penitentiary-Lompoc Due to the Government's Failure to Preserve Exculpatory – or at least Potentially Exculpatory – Evidence in Violation of the Fifth, Sixth and Eighth Amendments, has been served upon all counsel of record via ECF this 15th day of May, 2014.

         RIEDERS, TRAVIS, HUMPHREY, HARRIS,
         WATERS, WAFFENSCHMIDT & DOHRMANN

         /s/ Ronald C. Travis, Esquire

         Ronald C. Travis, Esquire
         Attorney for Defendant
         PA ID#:  08819
         161 West Third Street
         PO Box 215
         Williamsport, PA  17703-0215
         (570) 323-8711 (telephone)
         (570) 323-4192 (facsimile)
         rtravis@riederstravis.com