**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | No. 4:96-CR-00239 |
| v. | : | |
| | : | JUDGE SLOMSKY |
| DAVID PAUL HAMMER, | : | |
| | : | Capital Case |
| Defendant | : | |

**BRIEF IN SUPPORT OF DEFENDANT HAMMER'S MOTION IN LIMINE**
**TO ADMIT THE TESTIMONY AT TRIAL OF MARK DONATELLI**

BACKGROUND

As set forth in the Motion, Attorney Donatelli functions as a member of the

Federal Death Penalty Resource Counsel, and while functioning in this role has

assumed responsibilities with respect to overseeing the defense of federal capital

cases where the defendant is an inmate.  In his position, Mr. Donatelli is familiar

with inmate cases where the Government has not sought a sentence of death, cases

where the Government initially filed a Notice of Intent which was subsequently

withdrawn, and the results of cases which have gone to trial as capital

prosecutions.

At trial, the defense would propose to present oral testimony of Mr. Donatelli which would explain the following:

1. That in the recently tried case of *United States vs. McCluskey*, No. 10-CR-2734, in the United States District Court for the District of New Mexico, the Government provided a list of 114 "prison murders" from December 14, 2001, through October 1, 2013.

2. Mr. Donatelli will identify those of the 114 cases where a Notice of Intent was filed.

3. Of the cases where a Notice of Intent was filed, Mr. Donatelli will identify those cases where the Notice of Intent was withdrawn by the Government before a sentencing verdict was reached.

4. Mr. Donatelli will testify that of the listed prison homicides, 19 were actually killings of inmates who were being housed at CCM and they were shot by non-inmates.

5. Mr. Donatelli will testify that of the inmate killings listed, the number which went to trial as a capital prosecution and the number of death verdicts returned.

6. Mr. Donatelli will also testify concerning the handling of the cases included in the list from the jurisdiction of the Middle District of Pennsylvania.

B.    ARGUMENT

## A.    THE TESTIMONY OF MR. DONATELLI IS ADMISSIBLE AT THE SELECTION PHASE

The Supreme Court has referred to mitigation as "potentially infinite" (*Ayers vs. Belmontes*, 549 U.S. 7, 21 (2006)) and as having "virtually no limits" (*Tennard vs. Dretke*, 542 U.S. 274, 285 (2004). Under *Tennard*, the ultimate question to be answered when the government makes an objection to the admissibility of mitigating evidence is "simply whether the evidence is of such a character that it might serve as a basis for a sentence less than death." Id. at 287. This broad definition of mitigating evidence has been incorporated into the Tenth Circuit's Pattern Jury Instruction 3.02 ("Mitigating factors reflect circumstances that tend to suggest a sentence of death should not be imposed") and 3.07 ("Mitigating factors are considerations that suggest that a sentence of death should not be imposed.") See also, *Eddings vs. Oklahoma*, 455 U.S. 104, 113-114 (1982) ("Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentence refuse to consider, as a matter of law, any relevant mitigating evidence."); *Dutton vs. Brown*, 812 F.2d 593, 602 (10th Cir. 1987) ("The Supreme Court has been exceedingly cautious to ensure that a person found guilty of a capital offense is given every opportunity to present potentially mitigating evidence that might form the basis for a sentence less than death.")

In addition, the Federal Death Penalty Act defines the defendant's right to presenting mitigating evidence in the broadest possible terms, including §3592(a) ("In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider *any* mitigating factor, *including* the following:...(8) Other factors. – Other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of a death sentence.")  See also, §3593(c) ("[I]nformation may be presented as to any matter relevant to the sentence, including *any* mitigating...factors.").  This language is broad enough to encompass the testimony of Mr. Donatelli which is designed to show that a death sentence in this case would be disproportionate to sentences received in the equally or more aggravated federal cases.  As explained in *United States vs. Davis*, 132 F.Supp.2d 455, 464 (E.D. La. 2001)

> The most notable aspect of the statute is the introductory statement.  The finder of fact (1) "shall" consider (2) "any mitigating factor, (3) including the following."  First, the jury "shall" or must consider the mitigating factors; it is obligatory, not discretionary. Second, the fact finder must consider "any" mitigating factor.  There is no qualification or limitation other than the factor "mitigate" against a sentence of death.  Third, "[i]ncluding the following" means the subsequent list is not exclusive, but is instead illustrative.  The eight identified factors are examples of specific factors that, if supported by the evidence, mitigate against the death penalty.  Most significantly for the issue here, subhead (8) which refers to other factors "in the defendant's background, record, or character or any other circumstance of the offense" is a sub category of "any mitigating factor" rather than being the outer boundaries of what may be considered as mitigating.  What 18 U.S.C.A. §3592 allows is

4

substantially broader than what the Supreme Court has declared to be the minimal requirements under the Constitution. According to the Supreme Court, the Eighth Amendment demands consideration only for those mitigating factors that concern the defendant's "character or record and any of the circumstances of the offense..." *Lockett vs. Ohio*, 438 U.S. 586, 604 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Under the statute, on the other hand, the Supreme Court's constitutional minimum is simply subhead (8) of a non-exclusive list. The statute demands the fact finder consider "any mitigating" factor...period.

Although Courts have questioned *Davis's* broad reading of the statute [Doc. 1060 at 20-23], there is no denying the fact that *Davis* is an "often cited case" (Id.) and that there is a split of authority regarding the meaning of the statute. The Tenth Circuit has not yet addressed this split, although, as noted above, the Tenth Circuit's Pattern Instructions broadly define mitigation consistent with both *Tennard* and *Davis*. In these circumstances, and especially because the death penalty is at issue, Mr. Hammer is entitled under the rule of lenity to the interpretation of the statute that is least likely to lead to his execution. See, *United States vs. Manatau*, 647 F.3d 1048 (10th Cir. 2011) ("After all, the rule of lenity teaches that if, after seizing everything from which aid can be derived an ambiguity still persists, courts should interpret federal criminal statutes – including, we have said, the sentencing guidelines – to avoid an increase in the penalty prescribed for the offense.") (internal quotations and citations omitted).

As far as Mr. Hammer can discern, neither the Supreme Court nor any circuit court has concluded that the type of proportionality evidence offered here is not constitutionally relevant evidence, although in one case the First Circuit upheld a district court's exclusion of a very broad proffer of such evidence under §3593(c). See, *United States vs. Sampson*, 486 F.3d 13, 44-45 n. 7 (1st Cir. 2007) ("This determination renders it unnecessary for us to address the government's alternative argument that this evidence did not in any event qualify as mitigating evidence.")

The district court in that case, using the broader definition of mitigation sanctioned in *Tennard* and *Davis*, concluded that "proportionality evidence was, as a matter of law, properly a mitigating factor in an FDPA sentencing hearing. *United States vs. Sampson*, 335 F.Supp.2d 166, 196 (D.Mass. 2004)[1]. Importantly, the district court also reached the same conclusion under the narrower statutory definition of mitigation adopted by this Court, namely, " 'any mitigating factor' must be similar in nature to the listed seven specific factors." [Doc. 1060 at 21]. As explained in *Sampson*,

---

[1] The district court ultimately rejected the defendant's proffer of proportionality evidence in that case primarily because it was simply too broad and would take too much time. See, *Sampson*, 335 F.Supp.2d at 196 ("The defense proposes to present to the jury, via the testimony of Kevin McNally, Esquire, of the Federal Death Penalty Resource Counsel Project, the verdicts reached in every federal death penalty case tried to date…In order to determine which of the many other cases are sufficiently similar to this case to bear on the question of proportionality, the jury would have had to hear a large amount of evidence. In effect, the court would have had to conduct many mini-trials of other FDPA cases, since a jury would be unable to perform meaningful proportionality review based on brief summaries of other cases.") Here, the proffer is much narrower in scope and the need for mini-trials will be eliminated by offering only uncontested facts of the relatively small number of cases described above and by relying on the government's description of the prison murder cases in its prior filing.

The defendant's proffered evidence was intended to enable the jury to take into account considerations of comparative proportionality in determining the appropriate sentence in this case. Proportionality considerations were recognized as valid mitigating factors by Congress and the President when they enacted the FDPA. See 18 U.S.C. §3592(a)(3) – (4) (listing as mitigating factors relatively minor participation in the offense and lack of death sentences for equally or more culpable co-defendants). As Judge Leonard Sand wrote in *United States vs. Bin Laden*, 156 F.Supp.2d, 369 (S.D.N.Y. 2001) (footnote omitted):

> Congress' deliberate inclusion of this factor [18 U.S.C. §3592(a)(4)] in the legislative scheme calls for a more broad interpretation of the range of permissible non-statutory mitigating factors than the Government suggests. The circumstance that others who are equally culpable will not be subject to the death penalty is a comparative factor which reflects a determination by proportionality and equity when they are evaluating whether a death sentence is appropriate. See *United States vs. Beckford*, 962 F.Supp. 804, 811-16 (E.D. Va. 1997) (analyzing 21 U.S.C. §848(m)(8)) (explaining that "proportionality, equity, and fairness" are the goals "which underlie" the mitigating factor regarding equally culpable defendants.) By permitting them to engage in such a comparison, Congress provided jurors with a means of improving the likelihood that the death penalty would not be administered in an arbitrary or random manner, *Cf. Pully vs. Harris*, U.S. 37, 45, 104  S.Ct. 871, 79 L.Ed.2d 29 (1984) (noting that general comparative proportionality review provides an

"additional safeguard against arbitrary or capricious sentencing").

Judge Sand describes Congress' choice as a deliberate one because "[a] review of competing draft versions of the death penalty legislation makes clear that the decision to include this factor was contested." Id. at 369 n. 12.

Proportionality is generally regarded as important to sentencing. It is the foundation of the current regime of sentencing under the United States Sentencing Guidelines. The Guidelines use nationwide statistics to promote proportional sentences throughout the United States. It would be anomalous if the choice between a life sentence and a death sentence were the only sentencing decision in the federal system in which proportionality is not a proper consideration. Unlike many state statutes, the FDPA makes no explicit provision for judicial proportionality review. The various courts of appeals or the Supreme Court may, nevertheless, decide to perform such review. See [*United States vs. Sampson*], 275 F.Supp.2d [49], 96.    Thus, the government's argument that the sentencer in a capital case is not permitted to consider proportionality was not persuasive in principle.

(Id. at 195)

In addition to proportionality serving as a basis for allowing the testimony by Mr. Donatelli, it is submitted that the sentencing procedures in non-capital cases as set forth in 18 U.S.C. §3553(a) supports such testimony.  Pursuant to §3553(a), the sentencing court is called upon to impose "a sentence sufficient, but not greater than necessary."  Furthermore, pursuant to (6) of §3553(a), the sentencing court is to attempt to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.  If sentencing disparity concern is a factor to be considered and weighed in a non-capital sentence, disparity avoidance is certainly an appropriate factor for considering whether a sentence of death should be imposed.  The proposed testimony of Mr. Donatelli will show numerous inmate killings which factually are at least as equal or even more aggravated than the death of Mr. Marti, and in a number of these prosecutions the United States did not direct that a sentence of death be sought if a conviction for first-degree murder was achieved.

C.    CONCLUSION

For the reasons as more fully set forth in the Motion and this brief, the Court should find that the proposed testimony of Mr. Donatelli will be permitted at the resentencing hearing.

Respectfully submitted,

s/ Ronald C. Travis, Esquire
Ronald C. Travis, Esquire
Rieders, Travis, Humphrey, Harris,
Waters Waffenschmidt & Dohrmann
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
(570) 323-8711 (telephone)
(570) 323-4192 (facsimile)
rtravis@riederstravis.com

/s/ James McHugh, Esquire
James McHugh, Esquire
James Moreno, Esquire
Federal Community Defender
Eastern District of Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA  19106
(215) 928-1100 (telephone)
(215) 928-0826 (facsimile)
James_McHugh@fd.org
James_Moreno@fd.org

/s/ Anne Saunders, Esquire
Anne Saunders, Esquire
Assistant Federal Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Ste. 300
Harrisburg, PA  17101
(717) 782-3843 (telephone)
(717) 782-3966 (facsimile)
Anne_Saunders@fd.org

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :

                              :      NO. 4:96-CR-00239

                              :

v.                            :

                              :      (Judge Slomsky)

DAVID PAUL HAMMER        :

                              :

Defendant                      :

## CERTIFICATE OF SERVICE

AND NOW, comes Ronald C. Travis, Esquire, attorney for Defendant Hammer, and certifies that a copy of the foregoing Brief in Support of Defendant's Motion in Limine to Admit the Testimony at Trial of Mark Donatelli, Esquire, has been served upon all counsel of record via ECF this 20th day of May, 2014.

RIEDERS, TRAVIS, HUMPHREY, HARRIS, WATERS, WAFFENSCHMIDT & DOHRMANN

/s/ Ronald C. Travis, Esquire

Ronald C. Travis, Esquire
Attorney for Defendant
PA ID#: 08819
161 West Third Street
PO Box 215
Williamsport, PA 17703-0215
(570) 323-8711 (telephone)
(570) 323-4192 (facsimile)
rtravis@riederstravis.com