UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA            :
                                    :
        -vs-                        :
                                    :        NO.  4:CR-96-239
DAVID PAUL HAMMER,                  :
                                    :
        Defendant                   :

GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION IN LIMINE TO ADMIT
THE TESTIMONY AT TRIAL OF MARK DONATELLI

Defendant moves the Court to admit testimony from Attorney Mark Donatelli, an employee of the Federal Death Penalty Resource Center.  The testimony would include (1) a statistical summary of the number of federal death eligible cases as compared to the small number of cases in which it has actually been imposed; (2) an analysis of the sentences imposed in the 114 prison murders which occurred from December 14, 2001, through October 1, 2013, including identifying those in which a Notice of Intent to seek a sentence of death was filed; and (3) a summary of "what occurred" in cases in this jurisdiction involving prison murders.   Mr. Donatelli's testimony can be classified as

1

"comparative proportionality" evidence. The testimony is not constitutionally required. It is also not relevant mitigation information. Accordingly, this Court should deny Defendant's motion.

## LAW AND ARGUMENT

Two concepts are at issue with the Defendant's motion. First, the Eighth Amendment requires a reasonable proportionality between an individual defendant's crime and the sentence he receives. *See, e.g., Coker v. Georgia*, 433 U.S. 584, 592 (1977) (holding that the death penalty is a grossly disproportionate punishment for the crime of raping an adult woman). However, the Supreme Court has drawn a clear distinction between this type of proportionality and what has been called "comparative proportionality," *see Pulley v. Harris*, 465 U.S. 37, 40 (1984), that is, "whether the penalty is . . . unacceptable in a particular case because [it is] disproportionate to the punishment inflicted on others convicted of the same crime." *Id.* at 43. In *Harris*, the Supreme Court was asked to determine "whether the Eighth Amendment, applicable to the States through the Fourteenth Amendment, requires a state appellate court, before it affirms a death sentence, to compare the sentence in the case before it with the sentences imposed in similar cases

2

if requested to do so by the prisoner." *Id.* at 43-44. The Court held that it did not, stating that "[t]here is . . . no basis in our cases for holding that comparative proportionality review by an appellate court is required in every case in which the death penalty is imposed and the defendant requests it." *Id.* at 50.

Second, the Eighth Amendment requires that a jury, or fact finder, in a capital case be able to consider and give weight to all relevant mitigating evidence. *See Boyde v. California*, 494 U.S. 370, 377 (1990); *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982). The Supreme Court has clearly established, however, that relevant mitigating evidence is evidence related to a defendant's background, character, or record, or the circumstances of his/her offense. *See Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (concluding the Eighth Amendment "require[d] that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death"); *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982) (holding evidence of a defendant's background, to wit: defendant's difficult family history and emotional disturbance, constituted "relevant mitigating

evidence"). Underlying *Lockett* and *Eddings* is the principle that punishment should be directly related to the personal culpability of the criminal defendant. *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989), *overruled on other ground by Atkins v. Virginia*, 536 U.S. 304 (2002).

Recently, the Sixth Circuit sitting en banc held: "Mitigation evidence . . . is not an empty concept to be filled by whatever a lawyer or court thinks might persuade a single juror in a particular case." *United States v. Gabrion*, 719 F.3d 511, 522 (6th Cir. 2013) (en banc). Similarly, the Second Circuit has held that the broad standards for admissibility of mitigating evidence do "not mean that the defense has carte blanche to introduce any and all evidence that it wishes." *United States v. Fell*, 531 F.3d 197, 219 (2nd Cir. 2008) (affirming exclusion of defendant's rejected plea agreement, which would have created a "confusing and unproductive inquiry"). Finally, the Seventh Circuit has stated: "A mitigating factor is a factor arguing against sentencing *this* defendant to death; it is not an argument against the death penalty in general." *United States v. Johnson*, 223 F.3d 665, 675 (7th Cir. 2000) (explaining that evidence about the existence of maximum security prisons with control units did not establish a proper mitigating factor).

4

The testimony Defendant proposes to introduce from Mr. Donatelli is "comparative proportionality" evidence.  He wants to compare the facts of this case to other capital cases or prison cases in order to argue that Defendant should not be sentenced to death because death sentences are rare and other defendants in other cases that Defendant thinks were more aggravated were not sentenced to death.  This evidence is not related to Defendant's background, character, or record, or the circumstances of his offense.

A similar motion to admit testimony from Kevin McNally, the Director of the Federal Death Penalty Resource Counsel, regarding "comparative proportionality" testimony was denied in both *United States v. Taylor*, 583 F. Supp.2d 923, 933-36 (E.D. Tenn. 2008) and most recently, in *United States v. John McCluskey*, Cr. No-2734  (D. N. M. Nov. 18, 2013) (Memorandum Opinion and Order, attached hereto).   In *Taylor*, for example, the defendant sought to admit Mr. McNally's testimony on (1) similar or worse federal capital cases where the death penalty was neither sought nor imposed and (2) the race of other federal capital defendants and their victims and the outcome of these cases.  *Id.* at 933.  Applying a view of the scope of mitigating evidence and

statutory construction of the Federal Death Penalty Act ("FDPA"), the district court excluded Mr. McNally's testimony.

The court held in pertinent part:

> The outcomes of other cases and the races of victims and defendants in other cases have nothing to do with the defendant in this case or the circumstances of his offense or any of the mitigating factors in § 3592(a). Therefore, the Court concludes comparative proportionality review with defendants unconnected to this case is not a proper task for the jury. Within its collective knowledge, the jury will be aware of some circumstances and outcomes of other cases, but its decision on life or death must turns on its understanding of this case, the offenses involved, and this defendant, not on the specifics of other cases and other defendants. To hold otherwise would necessitate turning the trial into a series of mini-trials over the facts and circumstances of other prosecutions, in a situation where the specific facts and circumstances and the exact reason the juries reached their decisions in those other prosecutions are not available to the parties. Such information has no probative value and would confuse and mislead the jury with irrelevant information.

*Id.* at 935-36 (internal citations omitted). *See also United States v. Regan*, 221 F. Supp.2d 659, 660-61 (E.D. Va. 2002) (holding proportionality evidence relating to the harm done in other espionage cases could not be used as mitigating evidence because it lacked probative value and there was a significant danger of confusing the

6

issues and misleading the jury); *United States v. Umana*, Case No. 08-134, 2010 WL 1740487, *4 (W.D.N.C. Apr. 28, 2010) (rejecting mitigating factors that would amount to proportionality review because evidence was "irrelevant to [defendant's] character or the circumstances of the offense, and is likely to confuse and mislead the jury").

Likewise, the government's motion to prohibit defense counsel from presenting comparative proportionality *argument* was granted in *United States v. Caro*, 461 F. Supp.2d 459, 464-65 (W.D. Va. 2006).  Caro argued that neither the FDPA nor case law precluded him from referring to the "egregious disparities and arbitrary nature of federal death penalty litigation." *Id.* at 465.  The district court disagreed.  It held: "allowing the defendant during closing argument to reference totally unrelated cases in which the death penalty was not sought or the defendant was not sentenced to death, would lead to a confusion of the issues and mislead the jury, nonetheless." *Id.*  The court also explained that the Department of Justice protocol for selection of cases for capital prosecution was "not relevant" to Defendant's position that he should be permitted to make a comparative proportionality argument.  *Id.* ("If I

7

were to allow such an argument, the trial would effectively become a referendum on this process.").

Applying the above-framework, this Court should deny Defendant's motion to admit Mr. Donatelli's testimony. The testimony is not relevant to Defendant's background, character, or record, or the circumstances of the offense. It serves only to confuse the issues and potentially lead to "separate mini-trials on whether the Government should have sought the death penalty in certain cases." *Regan*, 221 F. Supp.2d at 660.

Defendant's reliance on *Tennard*, is also misplaced. *Tennard* simply does not stand for the broad-reaching definition of relevant mitigating evidence Defendant purports it does. The Sixth Circuit distinguished *Tennard* at length in its en banc opinion in *Gabrion*, and the Government refers this Court to the *Gabrion* opinion for this purpose. *See Gabrion*, 719 F.3d at 522-23 (concluding "the definition of mitigating . . . was not the issue in *Tennard*," but rather the issue "was the definition of *relevance*"). To read *Tennard* as Defendant suggests "would be to transform mitigation from a moral concept to a predictive one, and make a caricature of the law." *Id.* at 522.

For the reasons set forth above, the United States requests that this Court deny Defendant's motion in limine to admit the testimony of Mr. Mark Donatelli.

PETER J. SMITH
UNITED STATES ATTORNEY

/s/ John C. Gurganus, Jr.

JOHN C. GURGANUS, JR.
Assistant United States Attorney

/s/ Amanda Haines

AMANDA HAINES
Trial Attorney For the
Capital Case Section
1331 F Street, N.W.
Washington, D.C. 20530

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 30th day of May, 2014 he served a true and correct copy of the foregoing

## GOVERNMENT'S RESPONSE IN OPPOSTION TO DEFENDANT'S MOTION IN LIMINE TO ADMIT THE TESTIMONY AT TRIAL OF MARK DONATELLI

via electronic filing:

ADDRESSEES:

Ronald C. Travis, Esquire
rtravis@riederstravis.com

James J. McHugh, Jr., Esquire
James_McHugh@fd.org

James Moreno, Esquire
James_Moreno@fd.org

Anne Saunders, Esquire
Anne_Saunders@fd.org


/s/ John C. Gurganus, Jr.

JOHN C. GURGANUS, JR.
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                                             Cr. No. 10-2734 JCH

JOHN CHARLES McCLUSKEY,

Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant McCluskey's Motion in Limine To Admit Testimony of Kevin McNally*. [Doc. No. 1393, filed 11/11/13]  The Government filed a Response. [Doc. No. 1410, filed 11/13/13]

The Court has reviewed the pleadings and the relevant caselaw.  The Court concludes that the Motion should be denied.

## BACKGROUND

On October 7, 2013, the jury returned its verdict in the guilt phase.  The eligibility phase was held from October 21 to November 5, 2013; on November 5, 2013, the jury found McCluskey eligible for the death penalty.  The selection phase began the next day, November 6.

## LEGAL STANDARDS

The Tenth Circuit set out the trial court's approach in a capital sentencing proceeding. Under § 3593(c), "the threshold limitation on introducing information at a capital sentencing is that such information must be 'relevant' to sentencing." *United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010).  The same standard of relevancy applies under § 3593(c) as under Federal

Rule of Evidence 401. *Id.* "Thus, under § 3593(c), information is admissible at a capital sentencing if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the [information].'" *Id.* (quoting Fed. R. Evid. 401).

"Under the Eighth Amendment, 'the sentencer in capital cases must be permitted to consider any relevant mitigating factor.'" *United States v. McVeigh*, 153 F.3d 1166, 1211 (10th Cir. 1998) (quoting *Eddings v. Oklahoma*, 455 U.S. 104 (1982), *disapproved of and limited on other grounds by Hooks v. Ward*, 184 F.3d 1206, 1227 (10th Cir. 1999)). "Similarly, under the federal death penalty statute, 'The defendant may present any information relevant to a mitigating factor.'" *Id.* (quoting § 3593(c)). The *McVeigh* court emphasized the breadth of the capital defendant's right, quoting Supreme Court caselaw holding that "in all but the rarest kind of capital case" the defendant cannot be precluded from presented "any aspect of a defendant's character or record and any of the circumstances of the offense." *Id.* at 1212.

Mitigation evidence "encompasses both culpability and character, all to the extent relevant to the defendant's 'personal responsibility and moral guilt.'" *United States v. Gabrion*, 719 F.3d 511, 522 (6th Cir. 2013) (on reh'g en banc) (quoting *Enmund v. Florida*, 458 U.S. 782, 801 (1982)), *pet. for cert. filed* (Oct. 25, 2013). "In summary: mitigation evidence is evidence relevant to 'a reasoned moral response to the defendant's background, character, and crime.'" *Id.* (quoting *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989) (emphasis omitted), *overruled on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002)). Acknowledging that the Supreme Court has stated that mitigation evidence includes evidence that "'the sentencer could reasonably find . . . warrants a sentence less than death,'" the Sixth Circuit stated that the key word was "reasonably"—which means evidence relevant to "'a reasoned moral response to the defendant's

2

background, character, and crime.'" *Id.* (quoting *Tennard v. Dretke*, 542 U.S. 274, 284 (2004), and *Penry*, 492 U.S. at 319). Mitigation evidence "is not an empty concept to be filled by whatever a lawyer or court thinks might persuade a single juror in a particular case." *Id.* "Otherwise, for example, the Eighth Amendment would compel admission of evidence regarding the positions of the planets and moons at the time of the defendant's offense—so long as he can show that at least one juror is a firm believer in astrology." *Id.*

As the Tenth Circuit observed, if the court finds that information proffered by a capital defendant is both relevant and mitigating, the court should admit the information unless it concludes that its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. *Lujan*, 603 F.3d at 854. "Section 3593(c) provides the district court with <u>greater discretion to exclude unfairly prejudicial or confusing information</u> than the district court has during the guilt phase." *Id.* (emphasis added). This is because § 3593(c) only requires that the danger of prejudice "outweigh" the information's probative value, while Federal Rule of Evidence 403 permits exclusion only when the countervailing interests "substantially outweigh" the probative value. *Id.*

## DISCUSSION

On November 11, 2013, McCluskey filed the Motion in Limine requesting the Court to allow testimony from Kevin McNally, the Director of the Federal Death Penalty Resource Counsel Project. McNally monitors "all federal capital prosecutions throughout the United States in order to assist in the delivery of adequate defense services to indigent capital defendants," and "maintains a comprehensive list of federal death penalty prosecutions and information regarding Department of Justice practices in these cases." [Doc. No. 1393, pp. 2-3] McCluskey proposes to present, through McNally's testimony:

3

(1) a statistical summary of the number of federal death eligible cases as compared to the small number of cases in which it has actually been imposed, as indicated in Exhibit A herein;

(2) a brief summary of the facts of a select group of recent multiple murder federal murder cases which are equally or more aggravated than Mr. McCluskey's case in which the death penalty has not even been sought, as indicated in Exhibit B herein, and

(3) a brief description of the fact that of the 112 prison murders listed on the government's filing at Doc. 1367-1, only 7 of them have resulted in death verdicts, as indicated in Exhibit C herein.

[Doc. No. 1393, pp. 3-4]

Citing phrases without context, McCluskey asserts that mitigation is "'potentially infinite'" and has "'virtually no limits.'" [Doc. No. 1393, p. 4 (quoting *Ayers v. Belmontes*, 549 U.S. 7, 21 (2006); and *Tennard v. Dretke*, 542 U.S. 274, 285 (2004))] But McCluskey's right to present information is not unlimited; the information must actually be mitigating (i.e., supporting a "reasoned moral response"), it must be relevant, and it must be admissible under the standard of § 3593(c). In *Tennard*—cited by McCluskey to support his assertion of a virtually unlimited right—the Supreme Court first stated that information must be both mitigating and relevant: "Relevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could <u>reasonably</u> deem to have mitigating value." *Tennard*, 542 U.S. at 284 (internal quotation marks omitted; emphasis added). "Thus, a State cannot bar the consideration of . . . evidence if the sentencer could <u>reasonably</u> find that it warrants a sentence less than death." *Id.* (internal quotation marks omitted; emphasis added). "Once this low threshold for relevance is met, the Eighth Amendment requires that the jury be able to consider and give effect to a capital defendant's mitigating evidence." *Id.* (internal quotation marks omitted). It is only after stating these threshold requirements that McCluskey's quoted phrase "virtually no limits" appears in *Tennard*, in a parenthetical—and then it is used to refer

only to information that has been determined to be both relevant and mitigating: "We have held that a State cannot preclude the sentencer from considering any relevant mitigating evidence that the defendant proffers in support of a sentence less than death . . . . [V]irtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances." *Id.* (internal quotation marks omitted). McCluskey's broad assertions about a virtually unlimited right to present information in the selection phase overstate the principle. As the Tenth Circuit stated, before the Court admits McCluskey's information, the Court must determine that the information is relevant, mitigating, and admissible under the standard set by § 3593(c).

As McCluskey acknowledges, the Court has already explained its disagreement with the very broad statements McCluskey relies on in *United States v. Davis*, 132 F. Supp. 2d 455, 464 (E.D. La. 2001). [*See* this Court's Memorandum Opinion and Order, Doc. No. 1060, filed 6/26/13, pp. 20-23] The *Davis* court took a very broad view of mitigating factors, stating that there was no qualification or limitation on mitigating factors and a defendant is entitled to present "any mitigating factor . . . period." *Davis*, 132 F. Supp. at 464. The Court is instead persuaded by the Tenth Circuit's statements, together with the analysis of the district court in *Taylor* and Chief Judge Batchelder's separate opinion in *Gabrion*. *United States v. Taylor*, 583 F. Supp. 2d 923, 943-44 (E.D. Tenn. 2008); *United States v. Gabrion*, 648 F.3d 307, 353-64 (6th Cir. 2011) (Batchelder, C.J., concurring in part and dissenting in part), *reh'g en banc granted and opinion vacated*, 719 F.3d 511 (6th Cir. 2013), *pet. for cert. filed* (Oct. 25, 2013).

The *Taylor* court first acknowledged broad statements in the caselaw that the Eighth Amendment requires that the jury be permitted to consider any relevant mitigating factor. *Taylor*, 583 F. Supp. 2d at 933. *See, e.g., Abdul-Kabir v. Quarterman*, 550 U.S. 233, 247-48 (2007).

Looking to the FDPA, the initial sentence of § 3592(a) states that the jury shall consider "any mitigating factor," including the eight listed factors. In interpreting whether the quoted phrase allows virtually any information the defendant wishes to present, the *Taylor* court applied traditional principles of statutory interpretation—considering the language of the statute as a whole, in light of its overall structure and purpose. *Taylor*, 583 F. Supp. 2d at 934. The court disagreed with the approach of cases like *Sampson*, 335 F. Supp. 2d at 194-95, and *Davis*, 132 F. Supp. 2d at 463-64, stating that these cases failed to utilize the traditional tools of statutory construction in reaching their conclusion that mitigation evidence is virtually unlimited. *Taylor*, 583 F. Supp. 2d at 934.

First, under the canon of *ejusdem generis*, "any mitigating factor" must be similar in nature to the listed seven specific factors; although the list of seven factors is not exclusive, the description of "[o]ther factors" in § 3592(a)(8) does not allow for factors of an entirely different nature than the culpability, participation, and punishment of other defendants. *Taylor*, 583 F. Supp. 2d at 935. Second, to read "any mitigating factor" broadly would render § 3592(a)(8) superfluous; there would be no need for a "catchall" provision in (a)(8) if "any mitigating factor" were intended as a broader "catchall" provision. Third, the use of "any" in "any mitigating factors" does not show that Congress intended to greatly expand the definition of mitigating factors over those required by the Constitution; "any mitigating factor" in (a)(8) is virtually the same as the constitutional requirement of "any relevant mitigating factor." *Id.* (internal quotation marks omitted). The *Taylor* court concluded that the FDPA sets limitations on mitigating evidence, and does not allow any evidence that any juror might find mitigating.

Chief Judge Batchelder concluded in *Gabrion* that the greater weight of authority is with cases like *Taylor* and against *Davis*'s broad view that there are essentially no limits to mitigating

information under the FDPA. *Gabrion*, 648 F.3d at 362 (C.J. Batchelder, concurring and dissenting). A view as broad as *Davis*'s would arguably allow presentation of tenuous, tangential, or speculative argument by a capital defendant—for example, that the Pope condemns the death penalty. *Id.*

McCluskey also argues that the rule of lenity supports his very broad view of what information he may present in the selection phase. [Doc. No. 1393, p. 7] But the rule of lenity only applies if ambiguity persists "after seizing every thing from which aid can be derived." *United States v. Manatau*, 647 F.3d 1048, 1055 (10th Cir. 2011) (internal quotation marks omitted). As the Court's brief summary of *Taylor* shows, principles of statutory interpretation lead to the conclusion that the FDPA does place limits on the information that a capital defendant may present: that information must be relevant and must lead to a reasoned moral response. The Court concludes that the rule of lenity is inapplicable, because § 3592(a) does not remain ambiguous. And the Tenth Circuit itself concluded that there are limits on mitigating information—stating that mitigating evidence must meet the same relevance standard set by Rule 401 and the standard set by § 3593(c). *Lujan*, 603 F.3d at 854.

McCluskey relies on the district court opinion in *Sampson*—though recognizing that the *Sampson* court refused to admit the proportionality evidence offered—through the same witness proffered by McCluskey, Kevin McNally. *United States v. Sampson*, 335 F. Supp. 2d 166, 196 (D. Mass. 2004), *aff'd*, 486 F.3d 13 (1st Cir. 2007). *Sampson* concluded that evidence of the outcome of other cases was both relevant and mitigating—relying on a very broad view of mitigation as set forth in *United States v. Davis*, 132 F. Supp. 2d 455, 463-64 (E.D. La. 2001). Although concluding that such evidence was admissible in principle, the *Sampson* court determined that the probative value of this evidence was outweighed by the danger of misleading

the jury and confusing the issues. *Id.* at 196-97. The defendant's proposal was that McNally would present the verdicts in every federal death penalty case tried to date, with brief summaries of the circumstances. But the *Sampson* court concluded that the jury would have to hear a large amount of evidence in order to determine which of all those cases were sufficiently similar to bear on the question of proportionality. *Id.* at 196. "In effect, the court would have had to conduct many mini-trials of other FDPA cases, since a jury would be unable to perform meaningful proportionlity review based on brief summaries of other cases." *Id.* The amount of time required—which might be weeks or months—would divert the jury's focus from the facts and circumstances of Sampson's crimes. *Id.*

The *Sampson* court suggested that a narrower proffer might be admissible, because it might have greater probative value and might have less danger of confusing the issues and misleading the jury. *Id.* at 197. The defendant then narrowed his proffer to 47 cases in which the defendant was found to have committed more than one murder, but the court again concluded that the evidence was inadmissible because its probative value was still outweighed by the danger of misleading the jury and confusing the issues. *Id.* at 198. The court concluded that the 47 cases still could not be compared "in any meaningful way" unless those 47 cases were effectively retried to the jury; the court again excluded McNally's testimony on the ground that it would "mislead the jury and create prejudicial confusion." *Id.*

On appeal, the First Circuit held that there was "ample reason" for the district court to exclude McNally's evidence of other prosecutions under § 3593(c). *Sampson*, 486 F.3d at 45. The First Circuit rejected the defendant's reliance on *Tennard*, 542 U.S. at 287-85, for the proposition that there is no restriction on mitigation information: "This argument cannot be literally true; if it were, a capital defendant would have an unrestricted license to introduce the

8

most confusing or misleading evidence as long as it was marginally relevant.  We reject so absolutist a view." *Sampson*, 486 F.3d at 45.  Observing that the district court found that the quantity of evidence involved "would saturate the record with largely extraneous material and create a grave risk of juror confusion," the First Circuit affirmed the court's conclusion that the evidence was of limited probative value and should be excluded under § 3593(c).  *Id.*  The First Circuit did not reach the government's alternate argument that evidence of other prosecutions did not qualify as mitigating evidence.  *Id.* n.15.

McCluskey's reliance on *Sampson* is misplaced, both because *Sampson* did not allow the evidence of other prosecutions and because district court in *Sampson* took a broad view of mitigation, with which this Court does not agree.  McCluskey also cites *Bin Laden*, but again his reliance is misplaced because *Bin Laden* ruled admissible some information relating to sentences of <u>co-defendants</u> charged in connection with the same offense—not information about other <u>defendants</u> charged with <u>unconnected</u> offenses.

*Bin Laden* concerned the 1998 bombing of the American Embassy in Dar es Salaam. *United States v. Bin Laden*, 156 F. Supp. 2d 359 (S.D.N.Y. 2001).  In *Bin Laden*, the district court held that the defendant could present as a mitigating factor the decision of the Constitutional Court of South Africa that South African immigration officials should not have released the defendant to American authorities without obtaining agreement from the United States that he would not face the death penalty.  *Id.* at 370-71.  The court determined that a broad reading of § 3592(a) was required—in particular, by the inclusion in § 3592(a)(4) as a mitigating factor that "[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death."  *Id.* at 369.  Other defendants charged in connection with the same bombing were extradited from other countries, under terms not allowing them to receive the

9

death penalty. *Id.* at 370. The *Bin Laden* court limited its decision to the specific facts of the case: "The decision to permit Khalfan Mohamed to present the decision of the Constitutional Court as a mitigating factor is largely informed by the particular facts of this case." *Id.* The court stated that the mitigation evidence bore "a direct relationship to the personal circumstances of the defendant." *Id.* at 370-71. Since § 3592(a)(4) allowed comparison with the punishment of other "equally culpable defendants," and these other defendants were facing similar charges for the same bombing, the court ruled in favor of the defendant's request. *Id.* The *Bin Laden* case is distinguished by its emphasis on the particular facts of the case, with other defendants on the same charges not eligible for the death penalty. In contrast, in Defendant's case, any comparison to other possible defendants is attenuated.

Confronted with the issue of comparative proportionality evidence from Kevin McNally, the district court in *Taylor* ruled inadmissible testimony from McNally on similar or worse federal capital cases in which the death penalty was neither sought nor imposed. *United States v. Taylor*, 583 F. Supp. 2d 923, 933, 935-36 (E.D. Tenn. 2008). The court concluded that "comparative proportionality review with defendants <u>unconnected</u> to this case is not a proper task for the jury." *Id.* at 935 (emphasis added). The jury's decision on the appropriate sentence must focus on "its understanding of this case, the offenses involved, and this defendant, not on the specifics of other cases and other defendants." *Id.* To hold otherwise would turn the trial into a series of mini-trials over the facts and circumstances of other prosecutions, when all facts and circumstances and the exact reason the other juries reached their decisions were not known. *Id.* at 936. Citing § 3593(c), the court held: "Such information has no probative value and would confuse and mislead the jury with irrelevant information." *Id.* at 936. The *Taylor* court recognized that *Sampson* had rejected McNally's testimony, but had also suggested that a

10

narrower proffer might be admissible; the *Sampson* court then rejected the proffer of 47 cases as not narrow enough. In *Taylor*, the defendant offered to limit McNally's testimony to 10 or 15 cases, "but this would decrease the reliability of the information, while still needlessly occupying time, and in any event the Court concludes comparative proportionality evidence is not admissible." *Id.*

In *Caro*, the defendant wanted to present a proportionality argument to the jury, without presenting proportionality evidence. *United States v. Caro*, 461 F. Supp. 2d 459, 464 (W.D. Va. 2006). Relying in part on the district court opinion in *Sampson*, the *Caro* court concluded that argument on "totally unrelated cases in which the death penalty was not sought or the defendant was not sentenced to death" was inadmissible because it would confuse the issues and mislead the jury. *Id.* at 465. Permitting proportionality evidence would inevitably require separate mini-trials on other cases. *Id.*

In *Regan*, the district court denied the defendant's discovery request for information on unrelated espionage cases. *United States v. Regan*, 221 F. Supp. 2d 659, 660 (E.D. Va. 2002). The defendant, convicted of espionage, wanted information to enable comparison of his case with cases of others also convicted of espionage. The *Regan* court concluded that the FDPA allowed evidence of the sentences of co-defendants, co-conspirators, or accomplices of the defendant in the same crime—not in any unconnected crime alleged to be similar. *Id.* "Permitting the submission of evidence of totally unrelated espionage cases would lead to a confusion of the issues or mislead the jury," and "would inevitably amount to separate mini-trials" on those other cases. *Id.* The *Regan* court concluded that such evidence was irrelevant and also that any probative value would be substantially outweighed by the dangers of confusion of the issues and misleading the jury. *Id.*

11

The Court is persuaded by the analysis of the *Taylor* court. Presentation of comparative proportionality information on unrelated cases, even if it were relevant, is inadmissible under § 3593(c) because its probative value is limited while it presents a very great danger of confusing the issues and misleading the jury. Comparative proportionality information would also require a series of time-consuming mini-trials, in which both parties would present additional information and argument about whether other cases were sufficiently similar to be probative.

McCluskey suggests limiting to limit the focus to "a brief summary of the facts of a select group of recent" cases [Doc. 1393, p. 4] and a narrow proffer "offering only unconstested facts of the relatively small number of cases described" along with the prison murder cases [Doc. 1393, p. 8 n.2]. But such a limitation "would decrease the reliability of the information," as observed by the *Taylor* court. *Taylor*, 583 F. Supp. 2d at 936. It would be necessary to determine whether the cases selected by McCluskey presented a fair representation of all capital cases that might be similar, and this inquiry would undoubtedly lead to consideration of many other cases and their facts and circumstances—again leading to numerous mini-trials and confusion of the issues and misleading of the jury. Information on selected cases would only be relevant if it represented cases truly and fairly similar to McCluskey's. Under § 3593(c), the Government would be entitled to present further information on the facts and circumstances of those select cases in an effort to show that those other defendants were less blameworthy. In addition, the Government would be entitled under § 3593(c) to rebut any presentation by McCluskey of a limited selection of cases by presenting information on additional cases selected by the Government to show that a death sentence for McCluskey would be proportional.

## CONCLUSION

A broad presentation by McNally of other cases would be inadmissible under § 3593(c). And McCluskey's proposal to limit the presentation to a few cases selected by him as representing cases sufficiently similar to McCluskey's would not solve the problem of mini-trials and confusion of the issues and misleading of the jury. The Court concludes that testimony by McNally on a selected subset of other cases is inadmissible under § 3593(c). The probative value of a selected few cases is limited because of the decreased reliability of the information, and that probative value is outweighed by the danger of confusing the issues and misleading the jury.

**IT IS THEREFORE ORDERED** that *Defendant McCluskey's Motion in Limine To Admit Testimony of Kevin McNally* [Doc. No. 1393] is **DENIED.**

_____
UNITED STATES DISTRICT JUDGE