UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
| | : | |
| v. | : | Hon. Joel H. Slomsky |
| | : | |
| DAVID HAMMER, | : | THIS IS A CAPITAL CASE |
| | : | |
| Defendant | : | |
| | : | |

MOTION *IN LIMINE* TO PRECLUDE PRESENTATION OF
UNCONSTITUTIONALLY OBTAINED MENTAL HEALTH TESTIMONY

Defendant, David Hammer, through undersigned counsel, hereby moves *in limine* to preclude the government from presenting unconstitutionally obtained mental health testimony from its proposed expert, Dr. James K. Wolfson. In support thereof, he states the following:

1. On September 18, 1996, a grand jury sitting in Williamsport, Pennsylvania, returned an indictment charging David Hammer with first degree murder arising from the April 13, 1996, death of Mr. Hammer's cellmate, Andrew Marti. Doc. 1. On April 9, 1997, the government filed a notice of its intent to seek the death penalty. Doc. 93. The trial began on May 5, 1998. On June 22, 1998, after the defense had rested and while the government was presenting its rebuttal case, Mr. Hammer entered a plea of guilty to the murder charge.

2. The penalty phase began on June 30, 1998. In support of death, the

government sought to prove two statutory aggravating factors:  that the defendant committed the murder after substantial planning and premeditation, 18 U.S.C. § 3592(c)(9), and that the defendant had previously been convicted of a state or federal offense punishable by a term over one year that involved the use, or attempted or threatened  use, of a firearm, 18 U.S.C. § 3592(c)(2).  On July 24, 1998 the jury returned a verdict of death.

3.     In September 2002, Mr. Hammer filed a petition for writ of habeas corpus collaterally attacking his conviction and sentence pursuant to 28 U.S.C. § 2255.  The Court conducted an evidentiary hearing on his petition from July 14, 2005 through September 29, 2005.   On the twenty-ninth day of the hearing, September 22, 2005, the government provided the defense with thirty-three previously undisclosed FBI 302 statements that summarized interviews with various prison inmates.  On December 27, 2005, the Court issued its decision vacating the 1998 sentence of death.

4.     Prior to Mr. Hammer's 1998 trial, the defense served a pretrial notice of intent to pursue an insanity defense.  The government moved pursuant to 18 U.S. C. §§ 4242 and 4247 and Rule 12.2(c)(1) of the Federal Rules of Criminal Procedure for Mr. Hammer's commitment and evaluation by a government expert.  Mr. Hammer's competency was not raised as an issue by either trial counsel or the government.  Instead, the basis for the evaluation was to provide the government with a "fair

opportunity" to rebut the insanity defense.

5.    Without benefit of a hearing, written objections and response of defense counsel, or consideration of available alternatives, the Court accepted the averments of the government that the commitment was necessary and ordered that Mr. Hammer be committed for at least forty-five days for a "study" by government mental health experts.    The Court made no similar accommodations for the defense.    Nor has current counsel been able to obtain similar accommodations for the mental health experts retained on behalf of Mr. Hammer for these resentencing proceedings.

6.    As a result, Mr. Hammer was committed to the Springfield Medical Facility and subjected to twenty-four hour observation by Bureau of Prison ("BOP") staff and  twenty hours of sessions with the government's expert, Dr. Wolfson over eleven days.  The BOP staff were required to make notations of their observations and those notations were provided to Dr. Wolfson.    During trial, the government capitalized on its unilateral involuntary access to Mr. Hammer to argue that, by virtue of the length of the commitment, its expert's opinions were more reliable than those of the defense experts, who had been afforded far less time to evaluate and observe Mr. Hammer.

7.    By providing the government experts extensive and unfettered access to Mr. Hammer, while denying comparable access to the defense experts, the Court's commitment order violated Sections 4242 and 4247 or, alternatively, rendered the

sections unconstitutional as applied to Mr. Hammer.  The government's abuse of the commitment order as a prosecution tool also violated Mr. Hammer's rights to a fair trial, confrontation and cross-examination, due process, effective assistance of counsel, adequate expert assistance, and equal protection in violation of the Fifth, Sixth, and Eighth Amendments.  Moreover, the Court's failure to conduct the required hearing and consideration of available alternatives before subjecting Mr. Hammer to the extensive, unnecessary commitment while failing to provide defense experts similar access and evaluation placed the government at an unfair and unconstitutional advantage and denied Mr. Hammer the effective assistance of counsel, adequate expert assistance, confrontation and cross-examination, a fair trial, and due process under the Fifth, Sixth, and Eighth Amendments.

8.     Prior to these resentencing proceedings, the government indicated that Dr. Wolfson's testimony and its references to Dr. Wolfson's opinions would be limited to information obtained from interviews Dr. Wolfson had conducted with family or other witnesses.  However, the government breached that representation during the course of its cross-examination of Dr. Blumberg, questioning Dr. Blumberg about Dr. Wolfson's conclusions obtained as a result of the prior commitment, in effect vouching for Dr. Wolfson's opinions based upon the length of time he purportedly had to observe Mr. Hammer during the period in which he was provided involuntary preferential access to the defendant.   See NT 6/12/14 at 20-21

(vouching for Dr. Wolfson's report as being a product of a court-ordered study); id. at 169 (vouching for Dr. Wolfson's conclusions after an "extensive study" that occurred over a period of "a few months"). More recently, the government has indicated to counsel that it intends to call Dr. Wolfson to purportedly rebut Mr. Hammer's social history and also to offer and explain his diagnoses.[1]

9.     During his habeas proceedings, Mr. Hammer argued the unfair advantage to the government and the unconstitutionality of the court's ordering a lengthy commitment that provided the government's experts unfettered, one-sided access to Mr. Hammer while at the same time denying Mr. Hammer's mental health experts meaningful – let alone comparable – access. See Doc.    . The District Court denied relief on this claim, but did so through the lens of ineffective assistance of counsel. United States v. Hammer, 404 F. Supp. 2d 676, 800-801 (M.D. Pa. 2005). Mr. Hammer appealed the Court's denial of relief on those grounds and the Third Circuit granted Mr. Hammer's Certificate of Appealability on this very issue. See Exhibit 1 (Order, Nov. 22, 2006). By definition, this amounted to a determination by the Circuit that Mr. Hammer's challenge to his counsel's effectiveness in failing to preclude Dr. Wolfson's testimony because the pretrial commitment order placed Mr.

---

[1]To the extent the government intends to call Dr. Wolfson to testify that Mr. Hammer has Anti-Social Personality Disorder, that testimony is not proper rebuttal since the defense expert evidence acknowledged that Mr. Hammer suffers from this mental illness.

Hammer at an unfair and unconstitutional disadvantage in violation of the Fifth, Sixth, and Eighth Amendments was "debatable among jurists of reason"; "a court could resolve the issue[] [in a different manner]"; or "the question[] [is] adequate to deserve encouragement to proceed further." Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983).

10.    Moreover, the issue currently before this Court is not raised and need not be decided through the lens of ineffective assistance of counsel.  Mr. Hammer need not cross any threshold of counsel's deficient performance as an indispensable precondition to merits review.  Now, the government once again attempts to argue that its expert's opinions are superior to those of the defense by virtue of the comparatively greater access its mental health expert had to Mr. Hammer.  To the extent that the quality and accuracy of a diagnosis is related to the quantity of observation, that argument and testimony is the unconstitutional by-product of violations of the Fifth, Sixth, and Eighth Amendments.  Simply put, the government may not be permitted to reap as a trial benefit the unfair and unconstitutional advantage it obtained from its extensive preferential access to Mr. Hammer while his experts were being denied similar access, and were being prevented both from observing Mr. Hammer's mental condition and from confronting the government witnesses' assertions as to what they purportedly observed.

11.    For each of these reasons, and those set forth in the accompanying Brief

in Support, Mr. Hammer respectfully requests that this Court strike the cross-examination of Dr. Blumberg that referenced Dr. Wolfson's "lengthy" examination and preclude the government from presenting any evidence arising from Dr. Wolfson's evaluation.

WHEREFORE, for each of these reasons, and those set forth in Mr. Hammer's

*Brief in Support*, this Court should grant Mr. Hammer's Motion.


Respectfully submitted,


/s/  RONALD C. TRAVIS                        /s/ JAMES MCHUGH
Ronald C. Travis                             James J. McHugh, Jr.
Rieders, Travis, Humphrey, Harris,           /s/ JAMES MORENO
Waters & Waffenschmidt                       James Moreno
161 West Third Street                        Federal Community Defender
PO Box 215                                   Eastern District Pennsylvania
Williamsport, PA  17703-0215                 Suite 540 – The Curtis Center
570-323-8711 (telephone)                     Philadelphia, PA 19106
570-323-4192 (facsimile)                     215-928-1100 (telephone)
rtravis@riederstravis.com                    215-928-0826 (facsimile)
                                             james_mchugh@fd.org
                                             james_moreno@fd.org


/s/ ANNE SAUNDERS
Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
anne_saunders@fd.org


Dated: June 18, 2014

# CERTIFICATE OF SERVICE

I, Anne Saunders, Esquire, do hereby certify that on this date I served a

copy of the foregoing by Electronic Case Filing, or by placing a copy in the United

States mail, first class addressed to the following:

John C. Gurganus, Jr. Esquire
United States Attorneys Office
Middle District of Pennsylvania
235 N. Washington Street, Suite 311
PO Box 309
Scranton, PA. 18501

Amanda Haines, Esquire
United States Department of Justice
Criminal Division
1331 F. Street, N.W.
Washington, D.C. 20530

/S/ANNE SAUNDERS, ESQUIRE
Anne Saunders, Esquire

Dated: June 18, 2014

/S/ANNE SAUNDERS, ESQUIRE
James Moreno, Esquire

Dated: January 30, 2014