## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
| | : | |
| v. | : | Hon. Joel H. Slomsky |
| | : | |
| DAVID HAMMER, | : | THIS IS A CAPITAL CASE |
| | : | |
| Defendant | : | |
| | : | |

### DEFENDANT'S BRIEF IN SUPPORT OF
### DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE PRESENTATION OF
### UNCONSTITUTIONALLY OBTAINED MENTAL HEALTH TESTIMONY

Defendant, David Hammer, through undersigned counsel, submits his *Brief in Support of Defendant's Motion in Limine to Preclude Presentation of Unconstitutionally Obtained Mental Health Testimony*, and in support thereof, states the following:

### I.      Background

This matter is before this Court for resentencing.  Prior to Mr. Hammer's 1998 trial, the defense served a pretrial notice of intent to pursue an insanity defense.  The government moved pursuant to 18 U.S. C. §§ 4242 and 4247 and Rule 12.2(c)(1) of the Federal Rules of Criminal Procedure for Mr. Hammer's commitment and evaluation by a government expert.  Mr. Hammer's competency was not raised as an issue by either trial counsel or the government.  Instead, the basis for the evaluation

was to provide the government with a "fair opportunity" to rebut the insanity defense – an issue that is in not present in this resentencing.

Without benefit of a hearing, written objections, and response of defense counsel and without consideration of available alternatives, the Court accepted the government's averments that the commitment was necessary and ordered that Mr. Hammer be committed for at least forty-five days for a "study" by government mental health experts. The Court made no similar accommodations for the defense, nor has current counsel been able to obtain similar accommodations for the mental health experts retained on behalf of Mr. Hammer for these resentencing proceedings. As a result of the order, Mr. Hammer was compelled to be a behavioral witness against himself without defense experts present to observe his mental condition or to verify or confront the purported observations of the prosecution witnesses.

As a result of the court's order, Mr. Hammer was committed to the Springfield Medical Facility and subjected to twenty-four hour observation by Bureau of Prison ("BOP") staff and twenty hours of sessions with the government's expert, Dr. Wolfson over eleven days. The BOP staff were required to make notations of their observations and those notations were provided to Dr. Wolfson. During trial, the government capitalized on its unilateral involuntary access to Mr. Hammer to argue that, by virtue of the length of the commitment, its expert's opinions were more reliable than those of the defense experts, who had been afforded far less time to

evaluate and observe Mr. Hammer.

By providing the government experts extensive and unfettered access to Mr. Hammer, while denying comparable access to the defense experts, the Court's commitment order violated Sections 4242 and 4247 or, alternatively, rendered the sections unconstitutional as applied to Mr. Hammer.  The government's abuse of the commitment order as a prosecution tool also violated Mr. Hammer's rights to a fair trial, confrontation and cross-examination, due process, effective assistance of counsel, adequate expert assistance, and equal protection in violation of the Fifth, Sixth, and Eighth Amendments.  Moreover, the Court's failure to conduct the required hearing and consideration of available alternatives before subjecting Mr. Hammer to the extensive, unnecessary commitment while failing to provide defense experts similar access and evaluation placed the government at an unfair and unconstitutional advantage and denied Mr. Hammer the effective assistance of counsel, adequate expert assistance, confrontation and cross-examination, a fair trial, and due process under the Fifth, Sixth, and Eighth Amendments.

Prior to these resentencing proceedings, the government indicated that Dr. Wolfson's testimony and its references to Dr. Wolfson's opinions would be limited to information obtained from interviews Dr. Wolfson had conducted with family or other witnesses.  However, the government breached that representation during the course of its cross-examination of Dr. Blumberg, questioning Dr. Blumberg about Dr.

3

Wolfson's conclusions obtained as a result of the prior commitment, in effect vouching for Dr. Wolfson's opinions based upon the length of time he purportedly had to observe Mr. Hammer during the period in which he was provided involuntary preferential access to the defendant.   See NT 6/12/14 at 20-21 (vouching for Dr. Wolfson's report as being a product of a court-ordered study); id. at 169 (vouching for Dr. Wolfson's conclusions after an "extensive study" that occurred over a period of "a few months").

During his habeas proceedings, Mr. Hammer argued the unfair advantage to the government and the unconstitutionality of the court's ordering a lengthy commitment that provided the government's experts unfettered, one-sided access to Mr. Hammer while at the same time denying Mr. Hammer's mental health experts meaningful – let alone comparable – access.  The District Court denied relief on this claim, but did so through the lens of ineffective assistance of counsel.  United States v. Hammer, 404 F. Supp. 2d 676, 800-801 (M.D. Pa. 2005).  Mr. Hammer appealed the Court's denial of relief on those grounds and the Third Circuit granted Mr. Hammer's Certificate of Appealability on this very issue.  See Exhibit 1 (Order, Nov. 22, 2006).  By definition, this amounted to a determination by the Circuit that Mr. Hammer's challenge to his counsel's effectiveness in failing to preclude Dr. Wolfson's testimony because the pretrial commitment order placed Mr. Hammer at an unfair and unconstitutional disadvantage in violation of the Fifth, Sixth, and Eighth

Amendments was "debatable among jurists of reason"; "a court could resolve the issue[] [in a different manner]"; or "the question[] [is] adequate to deserve encouragement to proceed further." Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983).

The issue before this Court is not raised and cannot be decided through the lens of ineffective assistance of counsel. Mr. Hammer need not cross any threshold of counsel's deficient performance as an indispensable precondition to merits review. Now, the government once again attempts to argue that its expert's opinions are superior to those of the defense by virtue of the comparatively greater access its mental health expert had to Mr. Hammer. To the extent that the quality and accuracy of a diagnosis is related to the quantity of observation, that argument and testimony is the unconstitutional by-product of violations of the Fifth, Sixth, and Eighth Amendments. Simply put, the government may not be permitted to reap as a trial benefit the unfair and unconstitutional advantage it obtained from its extensive preferential access to Mr. Hammer while his experts were being denied similar access, and were being prevented both from observing Mr. Hammer's mental condition and from confronting the government witnesses' assertions as to what they purportedly observed.

## II.   Argument

The purpose and intent of Sections 4242 and 4247 is to provide the government

with an opportunity to challenge expert evidence supporting an insanity defense. See In re Newchurch, 807 F.2d 404, 411 (5th Cir. 1986) ("Congress has decided that the government is entitled to . . . a fair opportunity to have experts examine [the defendant] in order to contest his [insanity] plea"); see also S. REP. 98-225, 1984 U.S.C.C.A.N. 3182, at 3421 ("The examination [pursuant to Section 4242] is triggered by the government motion since it is the government which would dispute the insanity defense and would want an independent psychiatric evaluation of the defendant"). As a result, Rule 12.2 requires pretrial notice by the defense of intent to seek the insanity defense and access to the defendant for an evaluation upon the government's request. See FED. R. CRIM. PRO. 12.2, Advisory Committee Notes ("This rule requires pretrial notice to the government of an insanity defense, thus permitting it to prepare to meet the issue"). While a commitment to provide access to the defendant for evaluation is permitted, the duration and scope of the commitment is intentionally limited to that which is "demonstrably necessary" to the evaluation. See In re Newchurch, 807 F.2d at 411 (the intent of §§ 4242 & 4247 "*demands only a reasonable opportunity* to make such an examination [to contest insanity] and *a fair chance* to rebut the defense").

What Congress did *not* do in enacting Sections 4242 and 4247 was afford the prosecution an *unreasonable opportunity* to conduct a sanity evaluation under conditions that confer an *unfair advantage* in rebutting the defense – and indeed here

6

in rebutting penalty-phase mitigation defenses wholly unrelated to guilt-stage questions of sanity.  Any construction of the statute as requiring (or even permitting) unfettered one-sided access that results in unfair advantage to the government at the expense of the defendant's right to a fair trial renders those provisions unconstitutional.[1]

By subjecting Mr. Hammer to the extensive "study" and evaluation through a forty-five day commitment, the Court transformed the government's "fair opportunity" into an unfair advantage.  As a result, the government is able to present an expert who spent over twenty hours "studying" Mr. Hammer over a forty-five day period; had a complete staff that was charged with observing Mr. Hammer on a twenty-four hour basis during the forty-five day commitment and instructed to note observations relevant to Dr. Wolfson's study and evaluation; and who met with an evaluation team daily to review reports, discuss observations, and make determinations – and all of this while the defense experts were being prevented both

---

[1]   The Supreme Court has recognized that the purpose of allowing the government to conduct any mental health evaluation at all is to protect the integrity of the adversarial process, which would be "undermine[d by] allowing a defendant to provide the jury, through an expert operating as proxy, with a one-sided and potentially inaccurate view of his mental state." Kansas v. Cheever, 134 S. Ct. 596, 601 (2013).  The adversarial process is just as equally – and, in addition, unconstitutionally – undermined when the prosecution is allowed, by virtue of extended court-ordered unilateral access to a defendant, to provide the factfinder "through an expert operating as proxy, with a one-sided and potentially inaccurate view of [the defendant's] mental state."

from observing Mr. Hammer's mental condition at those times and from confronting the government witnesses' assertions as to what they purportedly observed.  NTT 6/17/98 at 148-51.  The defense experts, in addition to being excluded from the government's observations, did not have anywhere close to comparable access to Mr. Hammer.

Although the court has limited discretion in ordering an evaluation, it does have discretion in determining whether or not *commitment* is necessary in order to obtain that evaluation.  See In re Newchurch, 807 F.2d 404, 410 (5th Cir. 1986) ("Read in context, the statutory language [of Sections 4242 and 4247] commands the district court to order an examination but permits it either to commit the defendant to the custody of the Attorney General for that purpose or to order that the examination be made in some other manner").  In determining whether or not commitment is required, the court must balance the needs of the government for its "fair opportunity" to contest the insanity defense against the defendant's constitutional rights.  For example, in In re Newchurch, the Fifth Circuit found that the District Court erred in ordering pretrial commitment to the custody of the Attorney General following the defendant's service of notice of an insanity defense because the court failed to balance the government's need to challenge an insanity plea against the deprivation of the defendant's constitutional liberty rights.  Id., 807 F.2d at 411.

None of these protections were afforded Mr. Hammer before the Court ordered

commitment in this case.  While the right to liberty was not at stake in Mr. Hammer's case since he was already in the custody of the Attorney General, the Court was required to balance numerous other constitutional protections against the government's need to prepare to challenge the insanity defense.  These included the right to a fair trial, due process, confrontation and cross-examination, effective assistance of counsel, adequate mental health assistance, the right to present a defense, and – in this capital case – the Eighth Amendment requirement of heightened reliability.

The Fifth Circuit held that commitment, as envisioned in the statute, is not "demonstrably necessary" unless the district court finds:

> on the basis of evidence submitted by the government, subject to cross-examination, and to rebuttal by the defendant, that the government cannot adequately prepare for trial on the insanity issue by having the defendant examined as an outpatient.

Newchurch, 807 F.2d at 411.

Here, the Court relied on general assertions by the government that, in the opinion of the Bureau of Prisons Medical Coordinator – based on concerns for security relating to Mr. Hammer and the availability of psychiatrists in the Medical Center in the Springfield, Missouri facility and the Mental Health Unit in the Butner, North Carolina facility – commitment to one of those two institutions was necessary.

The government's motion did not address what specific "security concerns"

were present.   This unsupported allegation is especially suspect in light of absence of any incident during any of the three defense expert evaluations conducted in the Allenwood facility.  The allegation that the availability of mental health professionals at the Butner and Springfield facilities necessitated transport and commitment in one of those facilities for forty-five days is equally suspect:  the question was not whether where a mental health evaluation would be most convenient for the government.  The government did not argue that it could *not* conduct an appropriate evaluation at Allenwood; did not allege that it was unable to obtain a non-institutional mental health professional to conduct the forensic evaluation at Allenwood; or argue that it could not arrange to have one or more of the available psychiatrists from either Springfield or Butner travel to Allenwood to conduct the forensic evaluation there.[2] Thus, the "reasons" proffered by the government were unsupported by any fact of record and suspect on their face.  Had the Court conducted an evidentiary hearing with the benefit of cross-examination and presentation of contradictory evidence, the defense would have been able to expose the questionable bases for the commitment

---

[2]  While cost cannot be a consideration in the determination, see Newchurch, 807 F.2d at 412 ("The expense of local examination compared to the cost of commitment to a government institution is not a controlling consideration"), it would appear likely that the cost of transporting Mr. Hammer to Springfield, Missouri and subjecting him to the forty-five day commitment was more than what would have been necessary to retain an expert or transport an expert to Allenwood for a forensic evaluation.

and show that such a commitment was not "demonstrably necessary."

The circumstances in which the mental health evaluations in the Section 2255 proceedings were conducted further undermine the validity of the reasons the government asserted as the basis for its commitment motion. As in the commitment motion, the government requested an opportunity to evaluate Mr. Hammer. Nothing in that motion suggested that security concerns relating to Mr. Hammer required that the evaluation occur in any outside institution, and the government did not have any problem obtaining forensic evaluators to conduct the evaluation or arranging for those evaluators to conduct their evaluation at the institution in which Mr. Hammer was housed. Thus, what the government easily arranged in conducting its mental health evaluation during the Section 2255 proceedings conclusively demonstrates the invalidity of the grounds advanced in its motion for commitment and that commitment was not demonstrably necessary (and in fact was *unnecessary*) to obtain a "fair opportunity" to respond to the insanity defense at trial.

Moreover, in the commitment motion, the government referred to the need to conduct a "study," not a forensic evaluation. The use of the term "study" is telling and telegraphs the government's actual intent. The government from the outset sought much more than a "fair opportunity" to challenge the defense expert. Rather, it wished to subject Mr. Hammer to observation and study for a sufficiently long period of time that it could use the conditions of observation to bolster and vouch for

11

the credibility of its experts, while strategically diminishing the credibility of the defense expert.  As the record demonstrates, that was exactly what happened.

Had the Court conducted the required evidentiary hearing with the benefit of cross-examination and witness presentation, the defense would have been able to demonstrate the unconstitutional impact of the prosecution's proposal.  It would have been able to expose the abject disparity in access to Mr. Hammer (with predictable implications for expert witness credibility) that would be inherent in permitting one side to conduct a lengthy "study" with a team of forensic and prison personnel, guided by the prison psychiatrist, while denying remotely comparable access to the defense.  Further, unlike the evaluations in the Section 2255 proceedings, in which the taping of the evaluations protected Mr. Hammer's confrontation rights, the commitment procedures sought and obtained by the government for its extended "sanity study" simultaneously increased the government's opportunities to observe without creating or preserving any record with which the defense could challenge the reliability of those observations or confront the expert opinion ostensibly arising from them.

In short, an evidentiary hearing would have demonstrated that an out-patient[3]

---

[3] Of course, "out-patient" in this case refers to a forensic evaluation conducted in Allenwood prison in the same manner that defense experts conducted their evaluation as opposed to transporting Mr. Hammer to an outpatient mental health facility.

forensic evaluation would have been possible and sufficient to provide the government with the required "fair opportunity" to rebut the defense expert evidence. At the very least, an evidentiary hearing would have demonstrated that if the commitment was required, and it was not, that similar resources and accommodations for the defense were required to protect Mr. Hammer's constitutional rights.

The Fifth and Sixth Amendments guarantee all "criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986).[4]  See also Britt v. North Carolina, 404 U.S. 266, 277 (1971) (Indigent defendant entitled to the "basic tools of an adequate defense").  That right is grounded in the Due Process, Compulsory Process, and Confrontation Clauses. See Crane, 476 U.S. at 690 (1986); Washington v.Texas, 388 U.S. 14, 23 (1967); Davis v. Alaska, 415 U.S. 308 (1974); In re Oliver 333 U. S. 257, 273 (1948).  Because of the "qualitative difference of death from all other punishments," California v. Ramos, 463 U.S.  992, 998-999 (1983), the Eighth Amendment requires heightened procedural safeguards in capital cases. E.g., Ake v. Oklahoma, 470 U.S. 68 (1985); Beck v. Alabama, 447 U.S. 625 (1980); Lockett v. Ohio, 438 U.S. 586, 604 (1978).

---

[4]  Citing Grannis v. Ordean, 234 U.S. 385, 394 (1914); In re Oliver, 333 U.S. 257, 273 (1948); Washington v. Texas, 388 U.S. 14, 22-23 (1967); Chambers v. Mississippi, 410 U.S. 284 (1973); Davis v. Alaska, 415 U.S. 308 (1974); United states v. Cronic, 466 U.S. 648, 656 (1984); Strickland v. Washington, 466 U.S. 668, 684-85 (1984); California v. Trombetta, 467 U.S. 479, 485 (1984).

Likewise, "the Constitution requires that an indigent defendant have access to the psychiatric examination and assistance <u>necessary to prepare an effective defense</u>." <u>Ake v. Oklahoma</u>, 470 U.S. 68, 70 (1985); <u>see also</u> <u>Starr v. Lockhart</u>, 23 F.3d 1280 (8th Cir. 1994) ("As <u>Ake</u> explains, due process requires access to an expert who will conduct, not just any, but an appropriate examination").

By ordering that Mr. Hammer be subjected to a forty-five day commitment with twenty-four hour observation and access to a team of government mental health professionals for "study" and evaluation while failing to provide similar access and resources for the defense, the Court denied Mr. Hammer each of these fundamental rights. The resulting prejudice is clearly demonstrated in the trial record. NT 6/17/98 at 148-51. Similarly, the prosecutor capitalized upon the disparity between the government's extensive study and the defense experts' much-less extensive forensic evaluations in the prior penalty-phase. NT 7/23/98 at 39. .

Thus, by failing to follow the required procedures in determining whether an extensive 45-day commitment of Mr. Hammer for evaluation and study was "demonstrably necessary" to provide the government a "fair opportunity" to rebut the insanity defense, the Court exceeded the scope of evaluation permitted by Sections 4242 and 4247. And if those provisions could be construed as permitting such an extensive, unfair, and one-sided commitment (and there is no reason for them to be so construed), then the statute as applied to Mr. Hammer is unconstitutional.

14

The government's intended use of the unfair advantage it garnered from its extra-statutory opportunity to "study" Mr. Hammer further illustrates the unconstitutionality of its proposed testimony and argument. As the questioning of Dr. Blumberg during cross-examination in these resentencing proceedings indicates, the government intends to argue that its expert is more credible and his diagnoses more accurate specifically because he had more extensive access to Mr. Hammer over a longer period of time, and in circumstances in which the defense experts were being denied similar access, were being prevented from observing Mr. Hammer's mental condition, and were being prevented from confronting the government witness' assertions as to what he purportedly observed. To the extent that there is any relationship between the quantity of observation on the one hand and the quality and accuracy of a diagnosis on the other, the government's argument and testimony is the unconstitutional by-product of the predicate violations of the Fifth, Sixth, and Eighth Amendments.

Simply put, the government may not be permitted to reap as a trial benefit the unfair and unconstitutional advantage it obtained from its extensive preferential access to Mr. Hammer. To do so would be to unconstitutionally "undermine the adversarial process" by allowing the prosecution to provide this Court "through an expert operating as proxy, with a one-sided and potentially inaccurate view of [Mr. Hammer's] mental state." Kansas v. Cheever, 134 S. Ct. 596, 601 (2013). When

15

unequal access is permitted to masquerade as enhanced reliability, more than just the adversarial process is destroyed. Due process and the right to confront government witnesses are violated and the Eighth Amendment requirement of heightened reliability in capital cases is obliterated. The only remedy is to preclude the government from relying on that "study" or evaluation during cross-examination and/or any rebuttal evidentiary presentation and in the arguments for death it will ultimately make to this Court.

## III.    Conclusion

For each of these reasons, and those set forth in the Motion, Mr. Hammer respectfully requests that this Court strike the cross-examination of Dr. Blumberg that referenced Dr. Wolfson's "lengthy" examination and preclude the government from presenting any further evidence or argument arising from Dr. Wolfson's evaluation.

Respectfully submitted,


/S/  RONALD C. TRAVIS
Ronald C. Travis
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
161 West Third Street
PO Box 215
Williamsport, PA  17703-0215
570-323-8711 (telephone)
570-323-4192 (facsimile)
rtravis@riederstravis.com



/S/ ANNE SAUNDERS
Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
anne_saunders@fd.org

Dated: June 17, 2014

/S/ JAMES MCHUGH
James J. McHugh, Jr.
/S/ JAMES MORENO
James Moreno
Federal Community Defender
Eastern District Pennsylvania
Suite 540 – The Curtis Center
Philadelphia, PA 19106
215-928-1100 (telephone)
215-928-0826 (facsimile)
james_mchugh@fd.org
james_moreno@fd.org

## CERTIFICATE OF SERVICE

I, Anne Saunders, Esquire, do hereby certify that on this date I served a

copy of the foregoing by Electronic Case Filing, or by placing a copy in the United

States mail, first class addressed to the following:

John C. Gurganus, Jr. Esquire
United States Attorneys Office
Middle District of Pennsylvania
235 N. Washington Street, Suite 311
PO Box 309
Scranton, PA. 18501

Amanda Haines, Esquire
United States Department of Justice
Criminal Division
1331 F. Street, N.W.
Washington, D.C. 20530

/S/ANNE SAUNDERS, ESQUIRE
Anne Saunders, Esquire

Dated: June 17, 2014