IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION |
| DAVID PAUL HAMMER, | NO. 4:96-CR-0239 |
| Defendant. | |

## FINAL VERDICT FORM FOR THE PENALTY PHASE

**Section I — Defendant's Age**

Did the government prove beyond a reasonable doubt that Defendant was 18 years of age or older at the time of Mr. Marti's death?

YES_____✓_____          NO _____

BY THE COURT:

Dated:  July 17, 2014

*Joel Slomsky*
JOEL H. SLOMSKY, J.

1

**Section II — Intent**

Did the government prove beyond a reasonable doubt that Defendant intentionally killed Andrew Marti?

YES____✓____          NO_____

BY THE COURT:

Dated:  July 17, 2014

*Joel Slomsky*
JOEL H. SLOMSKY, J.

**Section III — Statutory Aggravating Factors**

1. Did the government prove beyond a reasonable doubt that Defendant has been previously convicted of one or more State or Federal offenses punishable for a term of imprisonment of more than one year, involving the use, or attempted or threatened use, of a firearm?

    YES_____✓_____          NO_____

2. Did the government prove beyond a reasonable doubt that Defendant committed the murder of Mr. Marti after substantial planning and premeditation?

    YES_____✓_____          NO_____


                              BY THE COURT:


Dated:  July 17, 2014                 _Joel Slomsky_
                                      JOEL H. SLOMSKY, J.

**Section IV — Non-Statutory Aggravating Factors**

1. Did the government prove beyond a reasonable doubt that Defendant would pose a continuing and serious threat to the lives and safety of other persons by committing acts of violence in the future if sentenced to life without the possibility of parole?

    YES_____          NO_____✓_____

2. Did the government prove beyond a reasonable doubt that Defendant caused injury and loss to the victim, Andrew Marti, and his family?

    YES_____✓_____          NO_____

                                    BY THE COURT:

Dated:  July 17, 2014                _Joel Slomsky_
                                    JOEL H. SLOMSKY, J.

**Section V — Statutory Mitigating Factors**

The Court finds the following mitigating factors to have been proven by a preponderance of the evidence:

1. Defendant's capacity to appreciate the wrongfulness of Defendant's conduct or to conform conduct to the requirements of law was significantly impaired, regardless of whether his capacity was so impaired as to constitute a defense to the charge,

   YES____✓____          NO_____

2. Defendant committed the offense under severe mental or emotional disturbance, regardless of whether the disturbance was of such a degree as to constitute a defense to the charge.

   YES____✓____          NO_____

**Section VI — Non-Statutory Mitigating Factors**

The Court finds the following mitigating factors have been proven by a preponderance of the evidence:

**A.   ACCEPTANCE OF RESPONSIBILITY AND/OR REMORESEFULLNESS**

1. Defendant is remorseful for having caused the death of Andrew Marti.

   YES____✓____          NO_____

2. Defendant has accepted responsibility for causing the death of Andrew Marti.

   YES____✓____          NO_____

## B.  EXTENDED FAMILY HISTORY OF DYSFUNCTION, ABUSE, AND/OR MENTAL ILLNESS

3.  There is a history of poverty, physical or sexual abuse, child neglect, infidelity, and mental illness in Defendant's extended family, which had a negative impact on Defendant.

YES____✓____          NO_____

## C.  DYSFUNCTIONAL AND/OR ABUSIVE UPBRINGING

4.  Defendant's family experienced periods of extreme poverty, including times during which his parents struggled to provide adequate food and housing.

YES____✓____          NO_____

5.  Defendant's family often lived in cars or substandard homes without plumbing, electricity, or basic needs.

YES____✓____          NO_____

6.  Defendant's family moved frequently from place to place throughout his childhood to find work or because they could not pay the rent.

YES____✓____          NO_____

7.  Because of the frequent moves and his parents' neglect, Defendant and his siblings attended multiple different schools, over twenty in Defendant's case.

YES____✓____          NO_____

8.  The disruptive educational opportunities left Defendant socially isolated and prevented him from developing close friendships, school mentors, or other positive community relationships.

YES____✓____          NO_____

6

9.  Throughout his developmental and adolescent years, Defendant did not have stability and predictability in his life.

    YES____✓____          NO_____

10. Defendant had no positive adult role model in his life for any meaningful period of time.

    YES____✓____          NO_____

11. When he was a child, Defendant's parents forced him and his siblings to commit scams and thefts for money.

    YES____✓____          NO_____

12. Defendant's mother beat Defendant with her hands or fists and other items, such as a switch, extension cord, broom, or ashtrays.

    YES____✓____          NO_____

13. Defendant was raised in a household in which incest and sexual abuse were prevalent.

    YES____✓____          NO_____

14. Defendant was raised in a household where physical abuse was unpredictable and commonplace.

    YES____✓____          NO_____

15. Defendant suffered sexual abuse beginning from as early as age 5 and extending into his adolescence.

    YES____✓____          NO_____

16. Defendant's mother would dress him up in girl's clothes and makeup. Defendant tolerated this demeaning behavior because it was one of the few times his mother showed him any affection. This negatively affected Defendant.

YES_____✓_____          NO_____

17. Beginning when he was a young boy, Defendant's mother forced Defendant to engage in sexual acts on her.

YES_____✓_____          NO_____

18. Defendant's mother anally raped Defendant over a period of years with enemas containing hot water and/or Tobasco sauce and other irritants and told him she was "burning the evil out of him."

YES_____✓_____          NO_____

19. Defendant felt he had to do what his mother forced him to do in order to obtain her love.

YES_____✓_____          NO_____

20. Defendant's father forced Defendant to have sexual contact, including sexual intercourse, with his sister.

YES_____✓_____          NO_____

21. Defendant and his brother witnessed his father raping his sister, Diana.

YES_____✓_____          NO_____

22. Martin Hammer, the brother of Defendant, witnessed his father forcing Defendant and Diana to have sex and when he told his mother about it, she did nothing and angrily denied the abuse.

YES_____✓_____          NO_____

8

23. As a young boy, Defendant was sexually abused by his Uncle Albert.

YES____✓____    NO_____

24. While spending summers living out of the family car at Lake Cobb, Defendant was sexually victimized by an older man, Ray Sheridan.

YES____✓____    NO_____

## D.    MENTAL, EMOTIONAL, AND/OR COGNITIVE IMPAIRMENTS

25. Defendant struggled with symptoms of depression and anxiety as a child.

YES____✓____    NO_____

26. The history of severe physical, emotional, and sexual abuse impaired Defendant's capacity to regulate his mood and develop healthy relationships.

YES____✓____    NO_____

27. Defendant suffered overwhelming guilt, self-hatred, and/or hopelessness as a result of the abuse inflicted on him by his parents and/or caretakers.

YES____✓____    NO_____

28. Defendant's history of drug abuse and addiction, starting by the age of 14, was a form of self-medication to cope with the overwhelming pain, anxiety, and/or depression arising from his childhood abuse and neglect.

YES____✓____    NO_____

29. Between 1974, when Defendant was sixteen years old, and 1996, Defendant had been prescribed at least six different anti-psychotic medications, medication for depression, mood stabilization, and anxiety.

YES____✓____    NO_____

30. After he was no longer living with his parents, Defendant sought and received out-patient mental health treatment at seventeen years of age.

YES____✓____                    NO_____

31. In 1976, Defendant was diagnosed as suffering from Borderline Schizophrenia, a diagnosis that was later re-classified as Borderline Personality Disorder.

YES____✓____                    NO_____

32. Defendant currently suffers from, and at the time of the offense suffered from, Borderline Personality Disorder.

YES____✓____                    NO_____

33. Defendant's Borderline Personality Disorder is characterized by an unstable personality structure and/or self-image, instability in interpersonal relationships, moodiness, agitation, depression, and marked impulsivity.

YES____✓____                    NO_____

34. Defendant suffers from Cognitive Disorder Not Otherwise Specified.

YES____✓____                    NO_____

35. The damage to Defendant's brain is consistent with organic causes.

YES____✓____                    NO_____

36. Defendant's cognitive deficits are located on the right side of his brain spanning the frontal, parietal, and/or temporal lobes.

YES____✓____                    NO_____

37. Defendant's cognitive deficits impact impulsivity and judgment, and exacerbate the impulse control problems brought on by his Borderline Personality Disorder.

YES____✓____                    NO_____

38. Defendant suffers from, and at the time of the offense suffered from, Major Depressive Disorder.



YES ✓            NO

39. Defendant suffers from, and at the time of the offense suffered from, Posttraumatic Stress Disorder.

YES ✓            NO

40. Consistent with his diagnosis of Posttraumatic Stress Disorder, Defendant has suffered from impulsivity, anger control problems, difficulty concentrating, and/or hypervigilance.

YES ✓            NO

41. At the time of the offense, Defendant suffered from a major mental disease or defect, regardless of whether his capacity was so impaired as to constitute a defense to the charge.

YES ✓            NO

**E.    MENTAL HEALTH TREATMENT AND PRISON CONDITIONS**

42. Unaccompanied by either parent or an adult, Defendant first sought mental health treatment at the age of fourteen.



YES ✓            NO

43. Although the treating psychologist, Dr. Arlene Schaffer, found that Defendant's problems were serious and required treatment, Defendant's parents failed to follow through on mental health counseling recommended for Defendant when he was fourteen years old.

YES ✓            NO

44. During the time Defendant was incarcerated in the Oklahoma State Penitentiary, the physical conditions in which Defendant lived were abysmal, and Defendant was adversely affected by those deficiencies.

YES____✓____         NO_____

45. During the time Defendant was incarcerated in the Oklahoma State Penitentiary, the mental health treatment was constitutionally inadequate and Defendant was adversely affected by those deficiencies.

YES____✓____         NO_____

46. Prior to Mr. Marti's death, USP-Allenwood housed roughly 1,100 inmates with a mental health staff consisting of two full-time staff psychologists and one contract psychiatrist, who was available only once a month, which adversely affected Defendant.

YES____✓____         NO_____

47. At the time he arrived at USP-Allenwood, Defendant was suffering from mental illness, including Intermittent Explosive Disorder with periods of rage.

YES____✓____         NO_____

48. BOP records reflect that Defendant was having difficulty controlling his anger and impulsivity.

YES____✓____         NO_____

49. On March 20, 1996, the contract psychiatrist prescribed for Defendant 250 mg of Depakote to be taken daily which Defendant stopped taking prior to the murder and this may have adversely affected Defendant.

YES____✓____         NO_____

12

**F.    IF SENTENCED TO LIFE IMPRISONMENT WITHOUT PAROLE, ASSESSMENT OF WHETHER DAVID HAMMER WOULD BE A FUTURE DANGER TO STAFF, INMATES, OR THE COMMUNITY**

50.    Defendant has a number of serious, chronic medical illnesses and his health has been deteriorating steadily for many years.

YES____✓____            NO_____

51.    Defendant has Diabetes mellitus, type II, diabetic polyneuropathy, diabetic retinopathy, and/or diabetic macular edema.

YES____✓____            NO_____

52.    Defendant has severe coronary atherosclerosis disease and hyperlipidemia.

YES____✓____            NO_____

53.    Defendant has degenerative disc disease, nerve pain, neuralgia, and/or sciatica.

YES____✓____            NO_____

54.    As a result of his diabetic neuropathy, Defendant's balance and gait are impaired.

YES____✓____            NO_____

55.    As a result of his diabetic macular edema and/or his retinopathy, Defendant's eyesight is deteriorating.

YES____✓____            NO_____

56.    Even if Defendant were to follow all doctor recommendations and take all medications, his condition would not improve.

YES____✓____            NO_____

57.    The Bureau of Prisons has classified Defendant as a medical "CARE level 3" (of four possible levels), which means he is considered by the BOP to be fragile.

YES____✓____            NO_____



58. The Bureau of Prisons presently considers Defendant's potential for harm to others to be low.

YES____✓____          NO_____

59. Since April 13, 1996, Defendant has not engaged in any serious violence while in prison.

YES____✓____          NO_____

60. Although he has been transported from USP-Terre Haute to other institutions and medical facilities numerous times since April 13, 1996, Defendant has made no attempt to escape and/or cause harm to correctional officers or the community during these transports.

YES____✓____          NO_____

61. Defendant was classified as out of cell status "TWO staff cover" in July of 2004 and he is currently designated as "ONE staff cover."

YES____✓____          NO_____

62. If a sentence of life imprisonment without parole is imposed, Defendant will be housed in a high security Federal prison.

YES____✓____          NO_____

63. The Bureau of Prisons is capable of providing conditions of confinement that would make it unlikely for Defendant to commit acts of violence in the future.

YES____✓____          NO_____

## G.    RELATIONSHIPS, GOOD WORKS, AND SELF IMPROVEMENT

64.    Defendant is an important person to his brother, Martin, his son Scott, his uncle, Ron, his aunts Betty and Lynda, and his cousin Kathy, and his family loves him.

YES____✓____          NO_____

65.    Defendant is an important person to Sister Camille, and she loves him.

YES____✓____          NO_____

66.    Defendant's family and friends will suffer grief and loss if he is executed.

YES____✓____          NO_____

67.    Defendant's assistance with fundraising provided financial contributions to the Mercy Center in Brooklyn, New York, Mercy Home in Brooklyn, New York, Hour Children in Long Island City, New York, Gibault School in Terre Haute, Indiana, Ryves Hall Youth Center in Terre Haute, Indiana, Providence Food Bank in Terre Haute, Indiana, Woods Day Care at St. Mary-of-the-Woods in Indiana, Miracle Place in Indianapolis, Indiana, the Alpha Boys Home in Jamaica and/or St. John Bosco Boy's Home in Jamaica.

YES____✓____          NO_____

68.    Defendant's assistance with fundraising provided financial contributions to St. Bartholomew Friends of Haiti that has helped children and families in Haiti, including Luckner Mompoint, Francilo Cherubin, and Jenny Philemond.

YES____✓____          NO_____

69.    Defendant's assistance with fundraising resulted in financial contributions to the Mercy Medical Mission that provides medical assistance for children in developing countries including Haiti, Peru, Guyana, and Kenya.

YES____✓____          NO_____

70.    Defendant has sent written communications to at-risk children counseling them against

engaging in criminal conduct.

YES____✓____          NO_____

71.    Defendant participates in spiritual/religious counseling with his spiritual advisor and

Defendant has displayed genuine spiritual growth since 1998.

YES____✓____          NO_____

72.    While incarcerated, Defendant obtained his GED.

YES____✓____          NO_____

73.    While housed at USP-Terre Haute, Defendant has enrolled in and successfully passed

educational and recreational programs he was eligible to take.

YES____✓____          NO_____

**Additional Mitigating Factors Found by a Preponderance of the Evidence:**

The Court finds multiple circumstances that, taken together, warrant a sentence of life imprisonment without the possibility of parole, including Defendant's acceptance of responsibility and remorsefulness; his extended family history of dysfunction, abuse, and mental illness; his dysfunctional and abusive upbringing; his mental, emotional, and cognitive impairments; his mental health treatment and prison conditions, and his relationships, good works, and self-improvement.

BY THE COURT:

Dated:  July 17, 2014

*Joel Slomsky*
JOEL H. SLOMSKY, J.

**Section VI — Determination of the Sentence**

Based upon consideration of whether the statutory and/or non-statutory aggravating factors which were found to have been proven beyond a reasonable doubt sufficiently outweigh mitigating factors found to have been proven by a preponderance of the evidence, the Court finds that the appropriate sentence shall be:

_____✓_____    Life Without the Possibility of Parole

_____    Death

BY THE COURT:

Dated:  July 17, 2014

*Joel Slomsky*
JOEL H. SLOMSKY, J.

**Section VII — Certification**

The Court certifies that race, color, religious beliefs, national origin, or sex of the defendant or the victim was not a consideration in reaching the sentencing determination and that the Court would have made the same sentencing determination regardless of the race, color, religious beliefs, national origin, or sex of the defendant or the victim.

BY THE COURT:

Dated:  July 17, 2014

JOEL H. SLOMSKY, J.

19