## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:96-CR-239 |
| v. | : | Hon. Joel H. Slomsky |
| DAVID HAMMER, | : | THIS IS A CAPITAL CASE |
| Defendant | : |  |

### DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF THE GRANT OF A CERTIFICATE OF APPEALABILITY

Defendant, David Hammer, through undersigned counsel, submits his *Reply Memorandum in Support of the Grant of a Certificate of Appealability*, and in support thereof, states the following:

The government withheld material exculpatory evidence contained in FBI 302s for nine years, failed to disclose that Leonard Yager was acting as an agent for the government for eighteen years, failed to disclose the true nature of the benefits Stephen Classen expected in exchange for his testimony for at least fourteen years, and relied on perjured testimony during the grand jury, trial, and initial penalty hearing that resulted in a death sentence the government now seeks to reinstate.

Now, in seeking to deny Mr. Hammer a Certificate of Appealability ("COA"), the government asks that this court disregard the proper legal standard, apply bars that are not applicable and in some cases are waived, and rely on supposed "facts" that are neither evidence, testimony, nor facts at all but are merely the government's

representations of its view of various circumstances.  Nothing the government has presented provides a legitimate legal or factual basis for denying a COA.

The government also makes the remarkable contention that the claim arising from the initial sentencing jury's exposure to – and reliance on – perjured testimony in reaching a verdict of death is "irrelevant" because "[t]o the extent any error occurred, the error was cured by Judge Muir's decision to vacate the death sentence." BIO at 38 n.8.  But the only way Judge Muir's decision to vacate the death penalty cures anything is if the government concedes that the death penalty was vacated. Instead, the government has appealed Judge Muir's grant of penalty phase relief and seeks to reimpose a death sentence that it has acknowledged was tainted by perjured testimony.  The claim is highly "relevant" and the government knows it.

The government also contends that the mere fact that this Court denied relief is sufficient grounds for denying a COA.  *BIO* at 21.  That claim, too, is self-evidently erroneous.  If a ruling, by its mere existence, insulated itself from appeal, there could never be any appeal.  Further, there is no requirement that a petitioner demonstrate his entitlement to relief to qualify for a COA.  Miller-El v. Cockrell, 537 U.S. 322, 336, 337 (2003).  All that is required is that the issue be "debatable among jurists of reason"; that "a court could resolve the issue[] [in a different manner]"; or that "the question[] [is] adequate to deserve encouragement to proceed further."  Barefoot v. Estelle, 463 U.S. 880, 893, n.4 (1983).  Any doubt must be resolved "in favor of the petitioner."  Jones v. Warden, 402 F.2d 776 (5th Cir. 1968); accord Whitehead v.

Johnson, 157 F.3d 384, 386 (5th Cir. 1998).   Thus, this Court must reject the government's invitation to "decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief."   Miller-El, 537 U.S. at 337.

As described in the *Memorandum*, the same COA standard is applicable to procedural rulings.   See Doc. 1801 at 5-6; see also Gerber v. Varano, 512 Fed. Appx. 131, 133-34 (3d Cir. 2013) (per curiam).   The government contends that COA is not available on the denial of an evidentiary hearing on the constitutional claims that Mr. Hammer presented in his *Amended Motion*.   The government also contends that Mr. Hammer failed to specify the claims for which he was entitled to a hearing.   *BIO* at 44-45.   The government is wrong on all counts.

Mr. Hammer's request for a COA regarding the denial of an evidentiary hearing is directly related to the specific constitutional claims raised in his *Amended Motion*.   In his *Memorandum*, Mr. Hammer noted within the discussion of each claim raising constitutional violations how and why he was entitled to an evidentiary hearing.   Thus, Mr. Hammer's request for a COA on this issue is proper.

Indeed, the very case cited by the government did not conclude that COA was not warranted where, as in this case, the movant seeks an evidentiary hearing to present evidence supporting the constitutional violations.   Instead, it concluded that the denial of an evidentiary hearing for constitutional claims is to be "considered in conjunction with those claims."   Alix v. Quarterman, 309 Fed. Appx. 875, 878 (5th

Cir. 2009). That is precisely what Mr. Hammer has requested. For these reasons and those set forth in the *Memorandum*, the government's contention that a COA on the Court's failure to conduct an evidentiary hearing on Mr. Hammer's constitutional claims fails.

Moreover, as the government concedes, *BIO* at 8, Mr. Hammer did raise, and has already been granted COA on three ineffectiveness claims, two of which directly implicate counsel's failure to conduct a constitutionally adequate investigation and presentation of readily available guilt-phase defense evidence. The Third Circuit's order granting COA on these claims is law of the case. See Rowe v. Director, 111 Fed. Appx. 150, 151 (4th Cir. 2004) (concluding that prior denial of a COA on the same issue constitutes law of the case and bars a subsequent motion); United States v. Jones, 2012 WL 1158755 *2 (W.D. Pa. 2012) (denying COA where COA on the identical claim had been denied by the District Court and the Third Circuit in part on the basis of the law of the case).[1]

As described below and in the *Memorandum*, when Mr. Hammer's request for a COA is considered under the appropriate legal standard, it is clear that he has met

---

[1] The law of the case doctrine does not preclude this Court from granting a COA on the basis of Mr. Hammer's current challenge to his guilty plea. As demonstrated in the *Amended Motion* and *Memorandum*, as the facts and legal bases are significantly different (and significantly stronger), the prior denial of a COA does not meet the requirements for the law of the case doctrine. See In re Philadelphia, 158 F.3d 711, 718 (3d Cir. 1998) (noting that the law of the case doctrine is not applicable in cases involving new evidence).

that standard.

## I.     The Government's Procedural Contentions are Waived and Unavailing.

To avoid merits review of the claims arising from its presentation of, and reliance on, perjured testimony in seeking indictment and capitally prosecuting Mr. Hammer and its failure to disclose the true nature of Classen's expectations of benefits in exchange for his testimony, the government has abandoned one meritless procedural defense in favor of another. Previously, the government contended that Mr. Hammer's *Amended Motion* was barred as an improper successor. However, controlling authority demonstrates that it was not. <u>See</u> Doc. 1700 at 3-4. Apparently now recognizing this, the government abandons that meritless defense and now erroneously contends that the claims are time-barred. Once again, the government is wrong for a number of reasons.

First, it is the government's argument, not Mr. Hammer's claim, that is untimely. raised. A statute of limitations defense is not jurisdictional. It is an affirmative defense that is waived if not timely raised. The time for the government to raise it was in its answer/opposition to Mr. Hammer's *Amended Motion*. It did not do so. Its answer/opposition failed to mention, let alone address, any statute of limitations defense to any of the specific claims raised by Mr. Hammer. The only time it mentioned the statute of limitations at all was in stating the law regarding

Section 2255's one-year statute of limitations and the pleading requirements for amendments. (Doc. 1684 at 56.) Because the government failed to present any statute of limitations defense in its answer/opposition (let alone attempted to develop that defense), these contentions are waived.

Moreover, the government's contentions are meritless. Section 2255 provides for a one-year statute of limitations. 28 U.S.C. § 2255. One trigger date for calculating the one-year time-period is the culmination of direct appeal (here, October 1, 2001). But the statute also provides two other relevant trigger dates: "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed," 28 U.S.C. § 2255(f)(2), and "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4); See, e.g., Wims v. United States, 225 F. 3d 186, 191 (2d Cir. 2001) (section 2255(f) "resets the limitations period's beginning date, moving it from the time when the conviction became final, *see* § 2255(1), to the later date on which the particular claim accrued"). Section 2255(f)(4) does not require "the maximum feasible diligence, only 'due' or reasonable diligence." Wims, 225 F.3d at 190 n.4.

The government attempts to blame Mr. Hammer for not uncovering the perjury in advance of Upton's ultimate admission to an FBI Special Agent and Assistant United States Attorney that he had lied about critical aspects of the circumstances that

6

led to Mr. Hammer's convictions and sentences in the Oklahoma case.  That attempt is unavailing.  Contrary to the government's contentions, Mr. Hammer did not sit on his rights.  He aggressively and consistently challenged Upton's version of events throughout the litigation of the case in Oklahoma.

Despite extensive cross-examination, Upton stuck to his false story during two preliminary hearings and again at trial.  See RS Def. Exhs. 18-20.  Mr. Hammer challenged his convictions and sentences on direct appeal, in two post-conviction petitions, in a federal habeas petition, and in a petition for a writ of certiorari.  See State v. Hammer, 760 P. 2d 200 (Okla. 1988) (direct appeal); Hammer v. State, (District Court No:  CRF-84-1310; Court of Crim. App. No. F-85-672) (June 6, 1986 *Application for Post-Conviction Relief*); Hammer v. State, District Court No. 84-1310 (September 15, 1989, *Application for Post-Conviction Relief*); Hammer v. Saffle, 986 F. 2d 1427 (10th Cir. 1993); Hammer v. Saffle, 510 U.S. 952 (1993).  When Upton testified fourteen years later in the initial sentencing hearing, he repeated his prior perjury.  Indeed even when he was recently questioned by an FBI Special Agent and Assistant United States Attorney, Upton still initially stuck to his false story.  Based on the government's own disclosures, Upton did not admit that he had lied until members of law enforcement who had the power to take action against Upton apparently confronted him with the obvious contradictions and inconsistencies and

informed him of the consequences of testifying falsely.[2]

It is "not enough to suggest that a petitioner could have learned [of the facts supporting a claim] by happenstance" to show a lack of due diligence. Wilson v. Beard, 426 F. 3d 653, 660 (3d Cir. 2005). Nothing in the record suggests that Mr. Hammer could have reasonably expected Upton to admit to him that he had falsely testified in this trial after Upton had repeatedly refused to make such an admission for years during the Oklahoma litigation. Nothing in the record suggests that Mr. Hammer could have reasonably determined that the trial prosecutor in his initial capital proceedings knew or should have known that Upton was lying. Mr. Hammer was duly diligent and the time for calculating the statute of limitations did not begin until the government's disclosures in March 2014.

Moreover, as noted in the prior submissions, the government (falsely) assured both the defense and the Court pretrial, post-trial, and even during the pre-hearing Section 2255 proceedings that it had provided the defense all evidence required under

---

[2] Petitioner by no means concedes that a similar confrontation did not occur prior to his initial sentencing hearing. Mr. Upton told the government during the resentencing proceedings that someone in authority had confronted him about his version of events and, as demonstrated in the *Amended Motion*, the record of the penalty hearing, including what questions the prosecutor did – and more importantly did not – ask Mr. Upton supports a conclusion that the prosecutor believed parts of Upton's story were false but nevertheless did not disclose that to the defense. See Doc. 1642 at 79-80. Mr. Hammer sought, but was denied, an evidentiary hearing to allow him to further develop these facts. Nevertheless, once again, that confrontation was between Upton and a federal prosecutor and/or law enforcement.

Brady and its progeny.  Judge Muir relied on the government's (mis)representations in denying Mr. Hammer's pre-hearing motion for discovery.  See Hammer, 404 F. Supp. 2d at 781 ("There is no indication that the Government has not complied with the requirements of *Brady* or its progeny").  As became evident during the closing days of the Section 2255 hearing, and more recently during the pre-resentencing proceedings, those assurances were far from true.  For each of these reasons, Mr. Hammer meets the requirements of Section 2255(f)(2) and Section 2255(f)(4) and there are no procedural bars.

Even if these claims were somehow time-barred (but, they are not),  28 U.S.C. § 2242 provides that a habeas application "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."  See also Habeas Rule 11 (rules of civil procedure apply to extent not inconsistent with habeas rules); Advisory Committee Note to Habeas Rule 5 ("civil rule 15(a) may be used to allow the petitioner to amend his petition"); Withrow v. Williams, 507 U.S. 680, 696 n.7 (1993) ("Rule 15 applies in habeas actions").  Under Rule 15(a)(2), "[t]he court should give leave [to amend] when justice so requires."

Mr. Hammer could not have developed the facts supporting the claims raised in the *Amended Motion* prior to current government counsel's recent disclosures. Accordingly, amendment is appropriate in the interests of justice.  See 28 U.S.C. § 2255(f)(2); 28 U.S.C. § 2255(f)(4); Rule 15(a)(2); see also Riley v. Taylor, 62 F.3d

86, 92 (3d Cir. 1995) (recognizing "Rule 15(a)'s command that amendments should be freely allowed when justice so requires").

Except in situations involving bad faith on the part of the movant, which are clearly not present here, justice generally requires that leave to amend be granted. Riley, 62 F.3d at 90; Williams v. Lockhart, 849 F.2d 1134, 1140 (8th Cir. 1988). This is particularly appropriate in a capital case. Moore v. Balkcom, 716 F.2d 1511, 1526 (11th Cir. 1983) ("Certainly in a capital case, the district court should be particularly favorably disposed toward a petition's motion to amend"); see also Riley, 62 F.3d at 90 ("On the record now before us, we believe Riley's not insignificant risk of losing the opportunity to litigate the issues he raises in his proposed amended petition conflicts with the strong presumption of the Federal Rules of Civil Procedure favoring decisions on the merits").

Moreover, leave to amend is appropriate to permit a petitioner to assert claims that were not previously available. Riley, 62 F.3d at 91 (reversing denial of leave to amend where petitioner sought to add two new claims and strengthen arguments in support of existing claims); Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991) (reversing denial of petitioner's motion to amend § 2255 petition to include "potentially meritorious claim which he said he did not know about and which arguably was unavailable when the original petition was filed"); Love v.Jones, 923 F.2d 816, 818 (11th Cir. 1991) (amended petition filed after magistrate appointed

counsel to represent *pro se* petitioner); United States v. Weintraub, 871 F.2d 1257, 1259 (5th Cir. 1989) (amendment permitted after new information revealed in discovery). As demonstrated above, in the *Memorandum*, and in the *Amended Motion*, despite due diligence, Mr. Hammer could not have developed the facts supporting the claims until the recent disclosures.

In his timely *Amended Motion to Vacate and Set Aside Conviction and Sentence Pursuant to 28 U.S.C. 2255 By a Person in Custody*, Doc. 785, filed on September 20, 2002, Mr. Hammer raised claims involving the government's failure to disclose material exculpatory evidence, see Doc. 785, Grounds VI, VII, XIV, and claims involving the presentation of materially misleading and false evidence, id. The Court previously accepted Mr. Hammer's Third Amended Motion, see Doc. 1042, and the Court accepted (and ultimately granted) Mr. Hammer's Fourth Amended Motion raising additional grounds arising from the government's failure to disclose material exculpatory evidence. See Docs. 1172, 1216. The same reasoning, analysis, and results apply to the issues raised in Mr. Hammer's *Amended Motion* and nothing in the cases cited by the government disputes that. Indeed, in United States v. Thomas, 221 F. 3d 430, 438 (3d Cir. 2000), the Third Circuit reversed the District Court's failure to grant leave to amend. The same result applies here. The government's contentions fail. As there are no procedural bars to merits review, there are certainly no procedural bases to deny COA on Mr. Hammer's

11

claims.

At a minimum, Mr. Hammer is entitled to a COA on the question of whether or not any procedural defenses apply. The same "threshold inquiry" applies. Gerber v. Varano, 512 Fed. Appx. 131, 133-34 (3d Cir. 2013) (per curiam). "[A] COA should issue when . . . jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484; Gonzalez v. Thaler, 132 S.Ct. 641, 648 (2012); United States v. Cepero, 224 F.3d 256, 262 (3d Cir. 2000) (en banc).

## II.   Mr. Hammer Has Demonstrated His Entitlement to a COA

The government's attempts to (mis)characterize Mr. Hammer's claims as nothing more than a "recycling" of various facts (see *BIO* at 20-21) misperceives and misconstrues the true nature of the constitutional violations arising from the government's pattern and history of non-disclosure, misconduct, and presentation of perjured testimony. That some facts are relevant as proof of multiple constitutional violations does not render those facts or those constitutional violations any less significant or even a basis for denying COA. In fact, the opposite it true. The facts discovered over the course of the post-trial, Section 2255, and resentencing proceedings demonstrate the unreliability of the entire capital prosecution in 1998 and that, from pretrial to the penalty hearing and everything in between, the proceedings were constitutionally tainted. At a minimum, these facts establish Mr.

Hammer's entitlement to a COA.

**1.   A COA is Warranted on the Court's Summary Denial of Mr. Hammer's Claim that – as a Result of the Government's Failure to Disclose Exculpatory Evidence, Its Use of an Inmate-Agent to Obtain Inculpatory Statements in Violation of Mr. Hammer's Invocation of His Right to Counsel, and Its Reliance on Materially Misleading and Perjured Testimony – His Mid-Trial Guilty Plea was Constitutionally Invalid.**

As described more fully in the *Memorandum,* Mr. Hammer entered his guilty plea mid-trial, long after the prosecution was required to disclose material exculpatory evidence, after the prosecution had presented its case-in-chief, after the defense case, and after the government had begun its rebuttal.  See NT 6/22/98 at 111-13.  Also as described in the *Memorandum*, over the course of the post-trial, Section 2255, and resentencing proceedings, a number of constitutional errors came to light arising from the government's repeated failure to disclose material exculpatory evidence and its reliance on perjured testimony.  Individually and/or cumulatively, these constitutional errors rendered Mr. Hammer's guilty plea unconstitutionally obtained.  Doc. 1801 at 6-11; Doc. 1642 at 49-69.

The evidence Mr. Hammer did not know – as a direct result of prosecutorial misconduct and suppression – changes the entire context of the defense case and its ability to raise reasonable doubt based upon attacks on the accuracy, veracity, and reliability of the government's guilt-phase case.  Armed with this evidence, Mr. Hammer would have been able to present a strong reasonable doubt defense to guilt

of first degree murder. And, armed with this information, Mr. Hammer would not have pled guilty. The totality of the circumstances demonstrates that, but for the misconduct, Mr. Hammer would not have entered a guilty plea.

The government contends that this claim is barred by Teague v. Lane, 489 U.S. 288 (1989). Doc. 1806 at 28-29. That argument, however, is both waived and meritless. While the government said a great deal in is opposition to Mr. Hammer's *Amended Motion*, it did not once attempt to impose any bar on the basis of Teague. Like any other affirmative defense, the Teague non-retroactivity defense must be properly raised at the first opportunity – in this case in the government's answer to the petition for habeas corpus. See Wilmer v. Johnson, 30 F.3d 451, 454-55 (3d Cir. 1994) (Becker, J.) ("[T]he appropriate time for arguing that Teague barred consideration of petitioner's double jeopardy claim *was in the answer to the habeas petition*. . . . We hold that respondent's failure to raise the issue in the district court constitutes a waiver of any Teague defense.")

Perhaps the government failed to raise its (meritless) Teague defense because it recognized that this Court had rejected similar contentions with regard to the claims for which the Court granted penalty phase relief. See Doc. 1684 at 36. Nevertheless, even if this procedural defense were held not to have been waived (but, it is waived), the government's reliance on Teague is unavailing for one very simple reason: the standards on which Mr. Hammer relies to show that his guilty plea is constitutionally

14

invalid were clearly set forth by the United States Supreme Court long-before his 1998 mid-trial guilty plea.  See Johnson v. Zerbst, 304 U.S. 458 (1938); Napue v. Illinois, 360 U.S. 264, 269 (1959); Brady v. Maryland, 373 U.S. 83 (1963); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 757 (1970); Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Indeed, the government's attempt to characterize Mr. Hammer's reliance on an objective test for determining the validity of his guilty plea as a "new rule" would have been news to the Court in Hill, for the "objective test" is precisely the standard that Hill indicated was required.  Hill, 474 U.S. at 59-60 (noting that, as in the Strickland ineffectiveness inquiry, the determination of whether error prejudiced the defendant and caused him to enter a guilty plea "should be made objectively").  It would also be news to government counsel in Ferrara v. United States, 456 F.3d 278, 291 (1st Cir. 2006), who argued that "a reasonable defendant in the petitioner's situation would not have rejected the benefits obtained from pleading guilty even if he had known of the exculpatory evidence."

Contrary to the government's contentions, when a court applies to the facts longstanding constitutional principles of general applicability, Teague is not implicated.  The Court made this point clearly in Terry Williams v. Taylor, 529 U.S. 362, 391 (2000).  In Williams, the Court interpreted the operative portions of 28 U.S.C. § 2254(d) – the habeas corpus statute related to state convictions – which, the

15

Court noted, codified Teague. Id. at 380 ("It is perfectly clear that AEDPA codifies Teague to the extent that Teague requires federal habeas courts to deny relief that is contingent upon a rule of law not clearly established at the time the state conviction became final."). The habeas petitioner in Williams raised an ineffective assistance of counsel claim. The Court stated:

> It is past question that the rule set forth in Strickland qualifies as clearly established Federal law, as determined by the Supreme Court of the United States. That the Strickland test *of necessity requires a case-by-case examination of the evidence . . . obviates neither the clarity of the rule nor the extent to which the rule must be seen as established by this Court*.

> In the context of this case, we also note that, as our precedents interpreting Teague has demonstrated, rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule.

> *If the rule in question is one which of necessity requires a case-by-case examination of the evidence, then we can tolerate a number of specific applications without saying that those applications themselves create a new rule. . . .* Where the beginning point is a rule of this general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, *it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent*.

Williams, 529 U.S. at 391, 382.

Thus, when a court applies prior legal principles to a new set of facts, *i.e.*, conducts a "case-by-case examination of the evidence," that application does not create a new rule within the meaning of Teague. Like Strickland, the standards for determining the voluntariness of a guilty plea and the prosecution's failure to disclose

16

material exculpatory evidence involve "generalized" standards, which "requires a case-by-case examination of the evidence" that does not "[it]self create a new rule."

The government also contends that a COA is not warranted because Mr. Hammer purportedly cannot show cause and prejudice to overcome a procedural default engendered by his waiver of direct appeal and guilty plea. Once again, the government confuses and conflates the different standards that apply to determining cause and prejudice for Mr. Hammer's various constitutional claims arising from Brady v. Maryland, Napue v. Illinois, and prosecutorial misconduct/overreaching and asks this Court to apply a standard for prejudice that even the United States Supreme Court has refused to apply.

Relying on a distorted view of the Supreme Court's decision in United States v. Frady, 456 U.S. 152 (1982), the government contends that to establish cause and prejudice sufficient to overcome a procedural bar, the petitioner must prove "super prejudice," as opposed to the quantum of prejudice that would establish his entitlement to relief for the constitutional violation that formed the basis for his underlying substantive claim. *BIO* at 25-26. The government is wrong.

In Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974), the Supreme Court explained that there are two distinct types of constitutional violations: generic due process violations and those that implicate "a specific provision of the Bill of Rights." To prove prejudice from a generic violation, a defendant must show that the

17

combination of errors "so infected the trial with unfairness as to make the resulting conviction [or sentence] a denial of due process." Id.  Prejudice is established for specific constitutional violations based upon the substantive standard of prejudice set forth by the Court for each constitutional provision.

To the extent there was any constitutional violation at issue in Frady, it was the former type of error.  A District of Columbia petitioner had filed a collateral attack on the basis of an improper jury instruction that had not been preserved on appeal. The Court of Appeals applied a "plain error" standard, while the Supreme Court held that the proper standard was cause and prejudice.  Frady had not raised his counsel's ineffectiveness, nor did he contend that the waiver of the issue on direct appeal had been the result of governmental interference or suppression.   Under those circumstances, the Court held that Frady had not proven prejudice from this ordinary trial error because he had failed to demonstrate a "substantial likelihood the erroneous malice instructions prejudiced Frady's chances with the jury."  Frady, 446 U.S. at 174.

Nothing in Frady changes the prejudice standard for cause and prejudice arising from the government's suppression of exculpatory evidence, presentation of materially false and misleading evidence, and the other misconduct presented in Mr. Hammer's claims implicating specific provisions of the Bill of Rights.

Indeed, the Supreme Court has applied the underlying substantive standard of

prejudice to satisfy the cause and prejudice inquiry overcoming procedural default when specific constitutional violations were in issue.  In <u>Banks v. Dretke</u>, 540 U.S. 668, 691 (2004), the Supreme Court held that, for claims arising under <u>Brady</u>, "prejudice within the compass of the 'cause and prejudice' requirement exists when the suppressed evidence is 'material' for <u>Brady</u> purposes."  <u>See also</u> <u>Slutzker v. Johnson</u>, 393 F.3d 373, 385 (3d Cir. 2004) ("The analysis of prejudice for the procedural default of a *Brady* claim is identical to the analysis of materiality under *Brady* itself") (*citing* <u>Strickler v. Greene</u>, 527 U.S. 263, 282 (1999); <u>Banks v. Dretke</u>, 540 U.S. 668 (2004)); <u>Johnson v. Folino</u>, 705 F. 3d 117, 128 (3d Cir. 2013) ("To demonstrate prejudice excusing the procedural default of a <u>Brady</u> claim, a habeas petitioner must show that the undisclosed evidence is material"); <u>id.</u> (noting that "cause and prejudice," which excuse procedural default, mirror the last two elements of a <u>Brady</u> violation").  Similarly, where the basis for cause and prejudice arises from counsel's ineffectiveness, the standard for prejudice is the same as the <u>Strickland</u> prejudice standard.  <u>See</u> <u>Hodge v. United States</u>, 554 F.3d 372, 381 (3d Cir. 2009) (applying the <u>Strickland</u> prejudice standard to determine the prejudice prong of cause and prejudice for overcoming the default); <u>Becht v. United States</u>, 403 F.3d 541, 546 (8th Cir. 2005) (applying the <u>Strickland</u> prejudice standard to determine whether or not counsel's ineffectiveness constituted cause and prejudice to excuse default).

Likewise, where the cause is not a constitutional violation, but is analogous to

19

one (as in the ineffective assistance of post-conviction counsel in failing to raise trial counsel's ineffectiveness), the Court has imported the prejudice standard of the underlying substantive claim.  E.g., Martinez v. Ryan, 132 S. Ct. 1309, 1318-19 (2012).   To the extent that any other requirement is added to proof of the constitutional violation, the Court has said that the petitioner must establish that the underlying constitutional claim "is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."  Id. at 1319.  This is certainly not an onerous requirement, for the Court cited its relatively generous case law on certificates of appealability to explain what it meant by "some merit."  Id. (citing Miller–El v. Cockrell, 537 U.S. 322 (2003) (the issue is adequate to deserve encouragement for further review)).

Each of the claims raised by Mr. Hammer easily satisfy the "cause" requirement of an impediment external to the defense – they arise from facts and evidence not previously disclosed by the government.  This previously undisclosed evidence includes:  (1) evidence demonstrating that Upton committed perjury in Oklahoma and before this Court; (2) evidence demonstrating that Yager was acting as an agent for the government at the time he elicited purported statements from Mr. Hammer after Mr. Hammer had clearly and unequivocally invoked his right to counsel; and (3) evidence of the true nature of Classen's cooperation and expectations in exchange for his testimony on behalf of the government tainted all aspects of the

government's capital prosecution and resulted in multiple constitutional violations.[3]

Contrary to the government's assertions, the fact that Mr. Hammer waived his direct appeal also does not create any bar to merits review. Mr. Hammer's decision to waive his appeal was based upon his assessment of the evidence as it had come in at trial and was predicated on the (false) belief "that he had a fair though not a perfect trial" and slim chances of winning an appeal on the record as it stood. United States v. Hammer, 226 F.3d 229, 233 (3d Cir. 2000). The Third Circuit found the waiver appropriate because Mr. Hammer "not only pleaded guilty but also obtained what he believes was a fair trial on the penalty phase of the case." Id. at 237. As the allegations in the *2255 Motion* demonstrate, the previously undisclosed evidence indicates that Mr. Hammer's belief was not just wrong, but materially uninformed, as very little about the government's entire capital prosecution, from authorization, to pretrial, to trial, to the capital sentencing was "fair."

The entire proceedings were tainted and polluted with perjury, false testimony, presentation of evidence purportedly elicited from Mr. Hammer by deploying an agent of the government, and testimony that misled Mr. Hammer, the Court, and the jury regarding the nature and extent of expectations an inmate witness had in

---

[3] At a minimum, Mr. Hammer was entitled to an evidentiary hearing to demonstrate cause and prejudice. See Holloway v. Horn, 355 F.3d 707, 716 (3d Cir. 2004); Cristin v. Brennan, 281 F.3d 404, 412-13 (3d Cir. 2002).

exchange for his testimony.   The misconduct, false and misleading testimony and argument, and the undisclosed evidence regarding Upton, Yager and Classen rendered Mr. Hammer's waiver of his appeal involuntary, just as it rendered Mr. Hammer's guilty plea involuntary.

The government's contention that the guilty plea precludes Mr. Hammer from raising constitutional claims directly impacting the voluntariness of his guilty plea, *BIO* at 27, is circular, misses the point and begs the question.  As demonstrated in the *Amended Motion* and the *Memorandum*, constitutional violations arising from the government's non-disclosure, misconduct and presentation of perjury rendered Mr. Hammer's guilty plea involuntary.   Certainly a COA arising from a claim involving the constitutional invalidity of a guilty plea is not precluded by a guilty plea.  Thus, the government's contention that because Mr. Hammer entered a guilty plea he is barred from challenging the voluntariness of that plea is meritless.

The government also contends that United States v. Ruiz, 536 U.S. 622 (2002) imposes a bar to the determination of whether the pattern and history of misconduct, non-disclosure, and presentation of perjured testimony rendered Mr. Hammer's guilty plea constitutionally invalid.  That argument is similarly unavailing for a number of reasons.

Ruiz dealt with a completely different situation, in which the defendant had entered a "fast-track" guilty plea well in advance of trial.  Here, far from the "fast

22

track," Mr. Hammer entered his guilty plea at a stage in the case that was well after the time in which the government was required to have disclosed all exculpatory and impeachment evidence. As noted by the Tenth Circuit:

> By holding in <u>Ruiz</u> that the government committed no due process violation by requiring a defendant to waive her right to impeachment evidence before indictment in order to accept a fast-track plea, the Supreme Court did not imply that the government may avoid the consequence of a <u>Brady</u> violation if the defendant accepts an eleventh-hour plea agreement while ignorant of withheld exculpatory evidence in the government's possession.

<u>United States v. Ohiri</u>, 133 Fed. Appx. 555, 562 (10th Cir. 2005). Mr. Hammer's plea was well beyond the eleventh hour and long after the government had been required to disclose material exculpatory evidence. The consequences of the government's <u>Brady</u> violations in this case render Mr. Hammer's guilty plea involuntary.

Moreover, the constitutional violations that render Mr. Hammer's guilty plea involuntary extend well beyond the mere failure to disclose impeachment evidence in <u>Ruiz</u>. Instead, the pattern of misconduct demonstrates that the prosecution not only withheld mere impeachment evidence, but it also failed to disclose evidence directly undermining the prosecution's theory of guilt and aggravation; directly undermining the prosecution's at-trial arguments mischaracterizing Yager's role; directly undermining the prosecution's at-trial arguments misrepresenting the nature and extent of Classen's expectations for benefits in exchange for his testimony; and proving that Upton's testimony was false. These non-disclosures permeated all

23

aspects of the pretrial (indictment), trial, and penalty proceedings and rendered the result of those proceedings inherently unreliable and a miscarriage of justice.  For these reasons, there is no similarity between the circumstances of Mr. Hammer's case and Ruiz and any limitations on "fast track" pleas created by the Ruiz decision are not applicable.   See United States v. Fisher, 711 F.3d 460, 465 (4th Cir. 2013) (distinguishing Ruiz and finding prosecutorial misconduct rendered guilty plea involuntary);  Ferrara v. United States, 456 F.3d 278, 291 (1st Cir. 2006) ("Under limited circumstances, however – everything depends on the context –  the prosecution's failure to disclose evidence may be sufficiently outrageous to constitute the sort of impermissible conduct that is needed to challenge the validity of a guilty plea").

Further, Ruiz addressed a defendant's right to receive Brady material related to "impeachment" (i.e., material that would be disclosable at trial pursuant to Giglio v. United States, 405 U.S. 150, 153-56 (1972)).   The material at issue in Mr. Hammer's case relates to much more, including actual innocence of capital murder. Ruiz recognizes the critical distinction between mere impeachment material and evidence of actual innocence, and the resulting constitutional requirements for disclosure, even in the setting of a negotiated plea bargain.   It noted that the "proposed plea agreement at issue here specifies, the Government will provide 'any information establishing the factual innocence of the defendant' regardless.  That fact,

along with other guilty plea safeguards . . . diminishes the force of Ruiz's concern, in the absence of impeachment information, innocent individuals, accused of crimes, will plead guilty." Ruiz 536 U.S. at 631;[4] see also Miller v. Angliker, 848 F.2d 1312, 1323 (2d Cir. 1988) (withheld evidence implicating another sufficient to undermine the validity of plea of guilty by reason of insanity).

Nor, as the government contends, *BIO* at 33, does Mr. Hammer claim that the District Court is precluded from considering Mr. Hammer's statements during the guilty plea colloquy. Indeed, those statements support, rather than refute, the involuntariness of Mr. Hammer's guilty plea in light of the non-disclosures. Mr. Hammer noted that he used the ropes for different purposes; he indicated that his statement was not true in material respects; he indicated that the decision for Mr. Marti to cell with him was a mutual one; and, his response to the Court's direct question about Mr. Marti's death was that his hands had killed him. NT Vol. 11 at 114. All of these statements are completely consistent with a defense of less than

---

[4] The government criticizes Mr. Hammer for what it characterizes as misstating the nature of the plea in Ruiz in a prior pleading. *BIO* at 32, n.6. While the defendant in Ruiz did enter an non-negotiated plea, the question before the Court was whether or not the Ninth Circuit had erred in finding that the government's refusal to disclose impeachment evidence before entering into a binding plea agreement was improper. See Ruiz, 536 U.S. at 625 ("In this case we primarily consider whether the Fifth and Sixth Amendments require federal prosecutors before entering into a binding plea agreement with a criminal defendant, to disclose [impeachment evidence]"). Accordingly, the government is wrong once again.

capital murder, and all of these statements are supported and corroborated by the withheld evidence. Thus, the government's attempts to characterize the guilty plea as voluntary – despite the government's non-disclosure and other misconduct – because of some statement Mr. Hammer made during that guilty plea fails.

Once again, the government contends that there is no violation of Brady because, in its view, Mr. Hammer had "equal access" to the information it suppressed. *BIO* at 34. As a factual matter, the government is wrong that Mr. Hammer "knew or had reason to know" of any of the exculpatory evidence the government suppressed as Judge Muir expressly held with regard to the previously undisclosed FBI-302s:

> In the present case the information the Government failed to disclose primarily relates to statements of third parties regarding what they knew or observed about Mr. Hammer. The Government presented no evidence during the section 2255 hearing indicating that prior to trial in 1998 Mr. Hammer knew that Messrs. Johnson, Fowler, Ball and Guerrero were interviewed by the FBI. Also, the Government presented no evidence that Mr. Hammer knew what those inmates' observations were regarding Mr. Hammer's behavior or what they had told the FBI regarding his statements or conduct.

United States v. Hammer, 404 F. Supp. 2d 676, 798 (2006).

The same analysis applies to the most recent disclosures. The government does not, and it cannot, argue that Mr. Hammer had any way of knowing, or even suspecting, that Yager was deployed by the government as its agent to circumvent his clear invocation of his right to counsel, nor can the government seriously argue that Mr. Hammer should have known, or suspected, that Classen's expectations regarding

26

benefits in exchange for his testimony were far more extensive than that disclosed by the prosecution. The government contends that, because Mr. Hammer had to know that Upton was lying, there was no constitutional error. *BIO* at 39. Of course, that is not the constitutional standard. Indeed, taking the government's contention to its logical conclusion, the prosecution would not be required to disclose any exculpatory evidence, particularly where the accused is innocent, because the accused knows he is innocent and, therefore, must also know that anything the government presents supporting his conviction is false.[5]

The government's contention that Mr. Hammer has failed to demonstrate that the trial prosecutor knew or should have known that Upton's testimony was false (*BIO* at 38) is similarly flawed. As described above and previously, Upton indicated that a government prosecutor had confronted him about the veracity of his testimony. Also as described above and previously, the prosecutor's limited examination of Upton supported the view that the prosecutor was aware that some aspects of Upton's version of events was false. The government can deny the obvious inferences arising from these factors, but that does not make it so. Only an evidentiary hearing can definitively answer that question. Thus, the government's own contentions

---

[5] As the government has already acknowledged that its recent disclosure of Upton's perjury was "pursuant to [the government's] obligations under Brady v. Maryland," Doc. 1642-1, its contention that this information was not Brady material is unavailing.

27

demonstrate that Mr. Hammer is at least entitled to a COA regarding the appropriateness of this Court's summary dismissal.

The government's contentions regarding Yager similarly demonstrate that Mr. Hammer is entitled to a COA on the basis of the Court's failure to grant an evidentiary hearing. The government relies on Yager's purported vacillation regarding who asked him to conduct the inquiry to obtain the inculpatory evidence and cites this Court's credibility determination – based on paper alone – that Yager's first statement that he had been deployed by the government was questionable. *BIO* at 40. Statements, factual averments, and even affidavits (not present here) are not evidence. Where, as here, the government's contentions rest on not-of-record allegations, a hearing was required. See Machibroda v. United States, 368 U.S. 487, 494 (1962); United States v. Costanzo, 625 F.2d 465, 470 (3d Cir. 1980) (finding a hearing was required because affidavits presented by the government were not part of the record and "not conclusive against the movant"). Thus, the government's contentions demonstrate that Mr. Hammer is at least entitled to a COA on the basis of the failure to grant an evidentiary hearing.

Moreover, the government is wrong as a matter of law. Controlling Supreme Court precedent forecloses any such "constructive knowledge" Brady exception. In both Strickler v. Greene, 527 U.S. 263, 285 (1999), and Banks v. Dretke, 540 U.S. 668 (2004), the Supreme Court rejected the very argument the Government makes

here.  In <u>Strickler</u>, the warden argued that its failure to disclose did not violate <u>Brady</u> "because the factual basis for the assertion of a <u>Brady</u> claim was available to state habeas counsel." 527 U.S. at 284 (noting respondent's argument that there was no <u>Brady</u> violation for failure to turn over reports of additional interviews with a witness because defense counsel should have been aware of those additional interviews).  The Court rejected this argument:

> [I]f a prosecutor asserts that he complies with <u>Brady</u> through an open file policy, defense counsel may reasonably rely on that file to contain all materials the State is constitutionally obligated to disclose under <u>Brady</u>.
>
> If it was reasonable for trial counsel to rely on, not just the presumption that the prosecutor would fully perform his duty to disclose all exculpatory materials, but also the implicit representation that such materials would be included in the open files tendered to defense counsel for their investigation, we think such reliance by counsel appointed to represent petitioner in state habeas proceedings was equally reasonable.

<u>Id.</u> at 283-84.

In <u>Banks</u> the state argued that Banks's lack of diligence in investigating the undisclosed matters foreclosed <u>Brady</u> relief. 540 U.S. at 695.  Unlike <u>Strickler</u>, the prosecutor in <u>Banks</u> did not maintain an open file policy, but did assert in state post-conviction proceedings that "'nothing was kept secret from the defense.'" <u>Id.</u> at 683. <u>Banks</u> emphatically rejected the state's argument:

> We rejected a similar argument in <u>Strickler</u>.  There, the State contended that examination of a witness' trial testimony, alongside a

29

letter the witness published in a local newspaper, should have alerted the petitioner to the existence of undisclosed interviews of the witness by the police. 527 U.S., at 284, and n. 26. We found this contention insubstantial. In light of the State's open file policy, we noted, "it is especially unlikely that counsel would have suspected that additional impeaching evidence was being withheld." Id., at 285. *Our decisions lend no support to the notion that defendants must scavenge for hints of undisclosed* Brady *material when the prosecution represents that all such material has been disclosed.* As we observed in Strickler, defense counsel has no "procedural obligation to assert constitutional error on the basis of mere suspicion that some prosecutorial misstep may have occurred." 527 U.S., at 286-287.

The State here nevertheless urges, in effect, that the prosecution can lie and conceal and the prisoner still has the burden to . . . discover the evidence, so long as the potential existence of a prosecutorial misconduct claim might have been detected. *A rule thus declaring "prosecutor may hide, defendant must seek," is not tenable in a system constitutionally bound to accord defendants due process.*

\*          \*          \*

In summary, Banks's prosecutors represented at trial and in state postconviction proceedings that the State had held nothing back. . . . It was not incumbent on Banks to prove these representations false; rather, Banks was entitled to treat the prosecutor's submissions as truthful.

540 U.S. at 695-96, 698 (internal quotation marks omitted).

In this case, the prosecution also represented that it had held nothing back, to the extent that it convinced the Court to deny Mr. Hammer's request for disclosure. Contrary to the Government's suggestion, "[i]t was not incumbent on [Mr. Hammer] to prove these representations false; rather, [Mr. Hammer] was entitled to treat the prosecutor's submissions as truthful." Banks, 540 U.S. at 698.

30

Indeed, if anything, the prosecution's conduct here was one step <u>more</u> egregious than that confronted by the Supreme Court in <u>Banks</u> and <u>Strickler</u>, because here the prosecutor compounded the impact of his suppression by capitalizing on it in his closing argument.  <u>Cf.</u> <u>Napue v. Illinois</u>, 360 U.S. 264 (1959); <u>Paxton v. Ward</u>, 199 F.3d 1197, 1216-18 (10th Cir. 1999).

In light of the foregoing authority it is clear that the rule sought by the government is contrary to controlling Supreme Court precedent.   However, even the cases the government *does* cite in support of its "constructive knowledge exception" do not support its application to Mr. Hammer's case.  None applied such an exception to comparable facts.  Three involved non-disclosure where the relevant facts were known both by *defense counsel and the defendant*, <u>United States v. Diaz</u>, 922 F.2d 998, 1007 (2d Cir. 1990); <u>Fullwood v. Lee</u>, 290 F.3d 663, 686 & n.13 (4th Cir. 2002); <u>United States v. Pelullo</u>, 399 F.3d 197, 214 (3d Cir. 2005).  A fourth refused to apply any "constructive knowledge exception" because the relevant facts were not known by defense counsel.  <u>United States v. Perdomo</u>, 929 F.2d 967, 973 (3d Cir. 1991); <u>cf.</u> <u>Strickler</u>, 527 U.S. at 283-85 (defense excused from advancing <u>Brady</u> claim because "trial counsel were not aware of the factual basis," the state impeded "trial counsel's access to the factual basis," "petitioner's lawyers . . . [may not] have known" of the suppressed records, and "it is especially unlikely that counsel would have suspected that additional impeaching evidence was being withheld").  Here, of course, neither

31

Mr. Hammer nor counsel knew of the recently disclosed exculpatory evidence in the government's possession and knowledge. A fifth case relied on by the government is simply inapposite. No undisclosed material ever was identified, and the court found it "plain that what West wants is discovery as to *whether* the prosecution had such evidence." West v. Johnson, 92 F.3d 1385, 1399 n.20 (5th Cir. 1996).

For each of these reasons, and those presented in the *Memorandum*, Mr. Hammer has demonstrated that reasonable jurists would disagree with regard to the question of whether the government's non-disclosure, misconduct, and presentation of perjury rendered Mr. Hammer's guilty plea constitutionally invalid. At a minimum, Mr. Hammer has demonstrated that reasonable jurists would resolve "in a different manner" the issue of whether there is a reasonable probability that an evidentiary hearing was required and that "the question[] [is] adequate to deserve encouragement to proceed further, Barefoot, 463 U.S. at 893 n.4.

> **2. Mr. Hammer's Claim Arising from The Government's Use of Inmate Yager as Its Agent to Circumvent Mr. Hammer's Unequivocal Invocation of His Right to Counsel Meets the Standard for a COA.**

As described in the *Memorandum* and *Amended Motion*, the government disclosed just prior to the resentencing evidence demonstrating that Yager was acting at the behest of the government at the time he obtained the inculpatory evidence from Mr. Hammer shortly after Mr. Marti's death. See Doc. 1642 at 41-49; Doc. 1801 at

15-19. Also as described in the *Memorandum*, Mr. Hammer has also demonstrated that reasonable jurists would disagree regarding whether Mr. Hammer had invoked his right to counsel prior to Yager's deployment as the government's agent to obtain inculpatory evidence; whether the government's unlawful deployment of an agent to obtain incriminating evidence after the invocation of the right to counsel is limited to FBI investigators; and whether the government's factual proffers required an evidentiary hearing as opposed to summary denial.

The government does not raise any time-bar or other procedural defense to this claim. Instead, the government continues to allege purported "facts" that have not been presented at a hearing subject to cross-examination and contends that these purported facts demonstrate that relief is not warranted. *BIO* at 40-41. The government's continued proffer of not-of-record "facts" demonstrates that, at a minimum, Mr. Hammer is entitled to a COA regarding the Court's failure to grant an evidentiary hearing. See Machibroda, 368 U.S. at 494; Costanzo, 625 F.2d at 470.

### 3. THE GOVERNMENT'S FAILURE TO DISCLOSE MATERIAL EXCULPATORY EVIDENCE AND ITS RELIANCE ON MATERIALLY MISLEADING AND FALSE TESTIMONY VIOLATED THE FIFTH, SIXTH, AND EIGHTH AMENDMENTS.

As described more fully in the *Memorandum*, reasonable jurists would disagree regarding whether the prosecution's failure to disclose a substantial amount of material exculpatory evidence and the prosecution's presentation of perjured and

33

materially misleading testimony and argument directly affecting the voluntariness of Mr. Hammer's guilty plea and the reliability of the sentencing verdict violated the Fifth, Sixth, and Eighth Amendments. Also as described in the *Memorandum*, Mr. Hammer had demonstrated that reasonable jurists would disagree as to whether Mr. Hammer was entitled to an evidentiary hearing.

The government does not specifically respond to this claim. To the extent the government relies on its procedural and substantive contentions regarding the propriety of a COA for Mr. Hammer's claim arising from the involuntary guilty plea, Mr. Hammer relies on the above discussion by way of reply. For those reasons and those set forth in the *Memorandum*, a COA is warranted.

4. **THE GOVERNMENT'S PRESENTATION OF CONVICTIONS AND SENTENCES THAT WERE THE PRODUCT OF PERJURY AND MATERIALLY FALSE/ MISLEADING EVIDENCE TO THE GRAND JURY AND ITS FAILURE TO INFORM THE GRAND JURY OF YAGER'S STATUS AS ITS AGENT DEPLOYED FOR THE PURPOSE OF CIRCUMVENTING MR. HAMMER'S RIGHT TO COUNSEL VIOLATED THE FIFTH AND EIGHTH AMENDMENTS.**

As described in the *Memorandum*, Mr. Hammer has demonstrated that reasonable jurists would disagree regarding whether the government's reliance on perjured, false, and misleading testimony and evidence and its failure to inform the grand jury of Yager's status as an agent of the government for the purpose of circumventing Mr. Hammer's right to counsel violated the Fifth and Eighth Amendments. At a minimum, Mr. Hammer demonstrated that the reasonable jurists

34

would disagree regarding the propriety of denying an evidentiary hearing.

The government once again relies on its skewed and erroneous Teague bar contention. *BIO* at 43-44. For the reasons described above, the government's Teague defense is waived and meritless. The constitutional principles upon which Mr. Hammer relies in support of this claim were clearly established long before Mr. Hammer's trial. See United States v. Calandra, 414 U.S. 338, 343 (1974); United States v. Williams, 504 U.S. 36, 39 (1992); Bank of Nova Scotia, 487 U.S. 250, 256 (1988); Caldwell v. Mississippi, 472 U.S. 320, 328-29 (1985); Beck v. Alabama, 447 U.S. 625, 637-38 (1980); Lockett v. Ohio, 438 U.S. 586, 604 (1978). As noted previously, when a court applies longstanding constitutional principles of general applicability to a new set of facts, Teague is not implicated. Williams v. Taylor, 529 U.S. at 382, 391. Thus, the government's Teague contentions fail.

For these reasons and those presented in the *Memorandum*, Mr. Hammer is entitled to a COA. At a minimum, in light of the government's proffers of "facts" not of record demonstrates that Mr. Hammer is entitled to a COA on question of whether an evidentiary hearing was required.

**5.    THE JURY'S CONSIDERATION OF CONVICTIONS AND EVIDENCE THAT WERE THE PRODUCT OF PERJURY IN REACHING ITS SENTENCING DETERMINATION VIOLATED THE FIFTH, SIXTH, AND EIGHTH AMENDMENTS.**

As described in the *Memorandum*, Mr. Hammer has demonstrated that

reasonable jurist would disagree as to whether the jury's consideration of convictions and evidence that were the product of perjury violated (1) the Fifth and Eighth Amendment prohibition against a death sentence based in whole or part on an invalid conviction, Johnson v. Mississippi, 486 U.S. 578, 586 (1988), and a sentencing verdict based on false, materially misleading, and/or inaccurate testimony, Tuggle v. Netherland, 516 U.S. 10, 14 (1995); Clemons v. Mississippi, 494 U.S. 738, 754 n.5 (1990); Townsend v. Burke, 334 U.S. 736, 741 (1948); United States v. Tucker, 404 U.S. 443, 447 (1972); Roberts v. United States, 445 U.S. 552, 556 (1980); (2) the Fifth and Sixth Amendment requirement that a verdict be based on competent, reliable evidence, Chandler v. Florida, 449 U.S. 560, 574 (1981); Irvin v. Dowd, 366 U.S. 717, 722 (1961); United States v. Gaudin, 515 U.S. 506, 514 (1995); (3) the Eighth Amendment requirement that the government "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death,'" Godfrey v. Georgia, 446 U.S. 420, 428 (1980); and (4) the Fifth and Eighth Amendment heightened procedural requirements in capital cases, Ford v. Wainwright, 477 U.S. 399, 411 (1986); Woodson v. North Carolina, 428 U.S. 280, 305 (1976); Beck v. Alabama, 447 U.S. 625, 637-38 (1980); Lockett v. Ohio, 438 U.S. 586, 604 (1978); Godfrey, 446 U.S. at 427-28.  Also as described in the *Memorandum*, in light of the government's multiple not-of-record proffers,

reasonable jurists would resolve the question of whether or not an evidentiary hearing was required.

The government does not discuss this claim separately. To the extent the government relies on its procedural defenses, for the reasons described above, those defenses are waived and meritless. To the extent the government relies on its remarkable contention that Judge Muir's grant of a new penalty hearing renders this claim "irrelevant" or somehow cured, see *BIO* at 38 n.8, id. at 41 n.9, that also fails in light of the government's notice of appeal challenging Judge Muir's grant of penalty phase relief. For these reasons and those presented in the *Memorandum*, a COA is warranted.

## D.    Conclusion

For the reasons described above and in the prior submissions, Mr. Hammer is

entitled to a COA.

Respectfully submitted,


/S/  RONALD C. TRAVIS                              /S/ JAMES MORENO
Ronald C. Travis                                  James Moreno
Rieders, Travis, Humphrey, Harris,                James J. McHugh, Jr.
Waters & Waffenschmidt                            Federal Community Defender
161 West Third Street                             Eastern District Pennsylvania
PO Box 215                                        Suite 540 – The Curtis Center
Williamsport, PA  17703-0215                      Philadelphia, PA 19106
570-323-8711 (telephone)                          215-928-1100 (telephone)
570-323-4192 (facsimile)                          215-928-0826 (facsimile)
rtravis@riederstravis.com                         james_mchugh@fd.org
                                                  james_moreno@fd.org


/S/ ANNE SAUNDERS
Anne Saunders
Assistant Federal Defender
Federal Public Defender
Middle District Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
717-782-3843 (telephone)
717-782-3966 (facsimile)
anne_saunders@fd.org


Date: December 31, 2014

## CERTIFICATE OF SERVICE

I, Anne Saunders, Esquire, do hereby certify that on this date I served a copy of the foregoing by Electronic Case Filing, or by placing a copy in the United States mail, first class addressed to the following:

John C. Gurganus, Jr. Esquire
United States Attorneys Office
Middle District of Pennsylvania
235 N. Washington Street, Suite 311
PO Box 309
Scranton, PA. 18501

Amanda Haines, Esquire
United States Department of Justice
Criminal Division
1331 F. Street, N.W.
Washington, D.C. 20530

/S/ANNE SAUNDERS, ESQUIRE
Anne Saunders, Esquire

Dated: December 31, 2014